.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALVE CORPORATION,

     Petitioner,

  v.

624 INDIVIDUAL CLAIMANTS,

     Respondents.

No. 2:24-cv-1717

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
PETITION TO ENJOIN
ARBITRATIONS**

**NOTE ON MOTION CALENDAR:
NOVEMBER 22, 2024**

**ORAL ARGUMENT REQUESTED**

MEMORANDUM IN SUPPORT OF PETITION
TO ENJOIN ARBITRATIONS
Case No. 2:24-cv-1717

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

158149660.1

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................2

I.      INTRODUCTION AND RELIEF REQUESTED .......................................1

II.     STATEMENT OF FACTS ................................................................4

     A.     Valve and Steam Users Agree to the SSA, Which at One Time Included an Arbitration Provision.......................................................4

     B.     Plaintiffs in *Wolfire* Commence  Consumer Antitrust Class Action Against Valve...................................................................4

     C.     Bucher Law Commences Mass Arbitration Under the Superseded SSA ........................................................................4

     D.     Bucher Law Seeks and Obtains Arbitrator Rulings that the Arbitration Agreement in the Superseded SSA Is Unenforceable...5

     E.     Bucher Law Files Consumer Antitrust Class Action in This Court.5

     F.     Valve Removes the Arbitration Agreement from the SSA..............6

     G.     Bucher Law Represents to This Court that the Current SSA Applies to All Respondents ..........................................................7

     H.     Bucher Law Continues to Prosecute Arbitrations...........................7

III.    THE CURRENT SSA CONTROLS; VALVE AND RESPONDENTS ARE NOT REQUIRED TO ARBITRATE ................................................7

     A.     Supreme Court Authority Requires That The  Court Decide Which Agreement Is Controlling .................................................7

     B.     The Current SSA Is Valid and Fully Enforceable ..........................8

        1.     Valve Properly Provided Widespread and Repeated Notice of the Current SSA....................................................9

        2.     Respondents Agreed to The Current SSA .........................11

     C.     Under the Current SSA, Disputes Between Respondents and Valve Must be Resolved in Court ............................................................12

IV.     THE COURT SHOULD ENJOIN THE ARBITRATIONS.....................14

     A.     Valve Will Face Irreparable Harm If Forced To Arbitrate............15

     B.     The Parties' Interests Favor An Injunction....................................17

     C.     The Public Interest Favors An Injunction......................................19

V.      CONCLUSION ...........................................................................19

MEMORANDUM IN SUPPORT OF PETITION
TO ENJOIN ARBITRATIONS – 1

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>CASES</u>                                                                                       <u>Page(s)</u>

3

4
*Allstate Insurance Co. v. Elzanaty,*
    929 F. Supp. 2d 199 (E.D.N.Y. 2013) ...........................................................17

5
*Allstate Insurance Co. v. Tvildiani,*
    2015 WL 13048729 (E.D.N.Y. Apr. 14, 2015) ...............................................16

6

7
*American Pipe & Construction Co. v. Utah,*
    414 U.S. 538 (1974).........................................................................................18

8

9
*In re Am. Express Fin. Advisors Sec. Litig.,*
    672 F.3d 113 (2d Cir. 2011)............................................................................14

10
*AT&T Mobility LLC v. Bernardi,*
    2011 WL 5079549 (N.D. Cal. Oct. 26, 2011)................................................17

11

12
*AT&T Mobility LLC v. Smith,*
    2011 WL 5924460 (E.D. Pa. Oct. 7, 2011)....................................................17

13

14
*Briggs v. Serv. Corp. Int'l,*
    2023 WL 2075958 (W.D. Wash. Feb. 17, 2023).............................................11

15
*Coinbase, Inc. v. Suski,*
    602 U.S. 143 (2024)........................................................................3, 7, 8, 14, 16

16

17
*Dasher v. RBC Bank (USA),*
    745 F.3d 1111 (11th Cir. 2014) ......................................................................12

18

19
*Dlugolecki v. PeopleConnect, Inc.,*
    2020 WL 13587803 (C.D. Cal. Nov. 9, 2020)................................................11

20
*Elliott v. Valve Corporation,*
    No. 2:24-cv-01218 (W.D. Wash. filed Aug. 9, 2024) ............................... *passim*

21

22
*Enderlin v. XM Satellite Radio Holdings, Inc.,*
    2008 WL 830262 (E.D. Ark. Mar. 25, 2008) .................................................13

23

24
*GEICO v. Mayzenberg,*
    2018 WL 6031156 (E.D.N.Y. Nov. 16, 2018).................................................16

25
*Goetsch v. Shell Oil Co.,*
    197 F.R.D. 574 (W.D.N.C. 2000)...................................................................13

26

---

MEMORANDUM IN SUPPORT OF PETITION
TO ENJOIN ARBITRATIONS – 2

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Goldman, Sachs & Co. v. City of Reno*,
 747 F.3d 733 (9th Cir. 2014) ........................................................14

*Grant v. T-Mobile USA, Inc.*,
 2024 WL 3510937 (W.D. Wash. July 23, 2024) ...........................8, 9

*Ingram Micro Inc. v. Signeo International, Ltd.*,
 929 F. Supp. 2d 199 (E.D.N.Y. 2013) ...........................................13

*Laster v. T-Mobile USA, Inc.*,
 2008 WL 5216255 (S.D. Cal. Aug. 11, 2008) ...............................13

*LAWI/CSA Consolidators, Inc. v. Wholesale & Retail Food Distribution, Teamsters Local 63*,849 F.2d 1236 (9th Cir. 1988) ...............................................15

*Microsoft Corp. v. Motorola, Inc.*,
 696 F.3d 872 (9th Cir. 2012) ........................................................18

*Morgan Keegan & Co. v. McPoland*,
 829 F. Supp. 2d 1031 (W.D. Wash. 2011)............................16, 17, 19

*Morgan Stanley & Co. v. Couch*,
 134 F. Supp. 3d 1215 (E.D. Cal. 2015)..................................14, 15, 17

*In re National Football League's Sunday Ticket Antitrust Litigation*,
 2021 WL 2350814 (C.D. Cal. Apr. 20, 2021) .................................13

*Open Book Theatre Co. v. Brown Paper Tickets, LLC*,
 2024 WL 4230479 (S.D. Cal. Sept. 18, 2024).............................9, 11

*Oppenheimer & Co. v. Mitchell*,
 2023 WL 2428404 (W.D. Wash. Mar. 9, 2023) .................3, 15, 16, 17, 19

*Resource Grp. Int'l Ltd. v. Chishti*,
 91 F.4th 107 (2d Cir. 2024) ..........................................................16

*Sadlock v. Walt Disney Co.*,
 2023 WL 4869245 (N.D. Cal. July 31, 2023)............................8, 9, 11

*Textile Unlimited, Inc. v. A..BMH & Co.*,
 240 F.3d 781 (9th Cir. 2001) ........................................................14

*United Fin. Cas. Co. v. Coleman*,
 173 Wash. App. 463 (2012)..............................................................8

*West v. Uber Technologies*,
 2018 WL 5848903 (C.D. Cal. Sept. 5, 2018) ................................12

MEMORANDUM IN SUPPORT OF PETITION
TO ENJOIN ARBITRATIONS – 3

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1

## I.   INTRODUCTION AND RELIEF REQUESTED

2

3    Valve brings this petition to enjoin Respondents from continuing to pursue arbitrations

4    before the American Arbitration Association ("AAA") because there is no agreement to arbitrate

between the parties.

5    The 624 Respondents are users of Valve's video game platform, Steam. Valve is forced to

6    bring this petition by the actions of Bucher Law PLLC ("Bucher Law"), a small law firm founded

7    by William Ward Bucher IV.[1] Looking to build his business, Mr. Bucher engaged in a widespread

8    marketing campaign to convince Steam users to bring antitrust claims against Valve related to

9    Steam. As Mr. Bucher told an investor he was recruiting to fund his scheme, his strategy was to

10   "weaponize[]" an arbitration provision in the user agreement between Valve and Steam users to

11   leverage a settlement from Valve. (Fuchs Decl., Ex. 1 at 3.)[2] Mr. Bucher claimed that bringing

12   thousands of arbitrations on behalf of Steam users would force Valve into a settlement without

13   ever reaching the merits of any claims because "[a]ggregating claims makes [Valve's] entrance

14   fee to just defend [arbitrations] prohibitively expensive." (*Id.*)

15   Steam users were merely pawns in this scheme; Mr. Bucher promised huge returns for a

16   litigation funder willing to front the costs of convincing users to bring claims against Valve,

17   reducing each Steam user to an "acquisition" cost. (Ex. 1 at 5.) Mr. Bucher estimated a "spend of

18   $3.75 million to recruit 75,000 clients at $50 an acquisition" and a "1874% ROI on $6.5 million

19   investment." (*Id.* at 9.) The plan was simple: Convince tens of thousands of Steam users to bring

20   claims against Valve, then use their numbers to extort a windfall settlement by threatening Valve

21   with thousands of arbitrations that would cause Valve to incur substantial arbitration fees. Some

22

23   [1] Mr. Bucher founded Bucher Law after he was terminated by another law firm, Zaiger LLC. Zaiger LLC is now suing Mr. Bucher, claiming among other things that he aided and abetted fraud, committed misappropriation, and tortiously interfered with client relationships. *See* Complaint, *Zaiger LLC v. Bucher Law PLLC*, No. 154124-2023 (Sup. Ct.

24   N.Y. Cnty. May 9, 2023) (Ex. 7). The complaint is available at: https://fingfx.thomsonreuters.com/gfx/legaldocs/znvnzwglqvl/frankel-valvevzaiger--zaigercomplaintvbucher.pdf.

25   [2] All references to "Ex." followed by a numbered exhibit refer to exhibits filed in connection with the Fuchs Declaration. All references to "Ex." followed by a lettered exhibit refer to exhibits filed in connection with the

26   Declaration of Scott Lynch ("Lynch Decl.").

MEMORANDUM IN SUPPORT OF PETITION
TO ENJOIN ARBITRATIONS – 1

1    Steam users noted on public posts that Mr. Bucher was engaged in a "scam." Others appear to have

2    been misled about what they had signed up for, believing it was a class action or class action

3    settlement that didn't exist. And some Steam users who were induced to sign up after receiving

4    repeated harassing video content later tried to rescind their participation.

5    　　Because of Mr. Bucher's tactics, Valve brought suit against Bucher Law in Washington

6    state court, asserting claims for tortious interference and abuse of process. (Ex. 2 (Complaint,

7    *Valve Corp. v. Bucher Law PLLC*, No. 23-2-20447-6 (Wash. Super. Ct. Oct. 2, 2023) (explaining

8    Bucher Law's abusive conduct in detail)).) Bucher Law claimed that his actions were "absolutely

9    immunize[d]" by "the litigation privilege" and asked the court to dismiss Valve's case. The court

10   denied Bucher Law's motion, finding that "Valve has alleged sufficient facts to establish a

11   plausible claim of tortious interference" and that "Valve has also alleged sufficient facts to

12   plausibly allege a claim of abuse of process, particularly given the unique circumstances of the

13   case." (Ex. 3 at 2.)

14   　　Meanwhile, after tens of thousands of Steam users apparently (and perhaps unwittingly)

15   retained Bucher Law to bring claims against Valve, Bucher Law launched several thousand

16   arbitrations against Valve, invoking the arbitration agreement in the Steam Subscriber Agreement

17   ("SSA") between Valve and Steam users that was in effect at the time.[3] An arbitrator in four of

18   those arbitrations ruled that the SSA's arbitration agreement was not enforceable. Bucher Law

19   then filed a putative nationwide class action against Valve in this Court based on the premise that

20   Valve's arbitration agreement was unenforceable as to the entire class of all Steam users in the

21   United States, **including Respondents here**. *See* Complaint, *Elliott v. Valve Corporation*,

22   No. 2:24-cv-01218 (W.D. Wash. filed Aug. 9, 2024).

23   　　In light of all of the circumstances, Valve removed the arbitration agreement and class

24

25   _____

     [3] When an individual creates a Steam account, the individual and Valve enter a Steam Subscriber Agreement
26   governing the customer relationship between them. (Lynch Decl. ¶ 3.)

---

MEMORANDUM IN SUPPORT OF PETITION
TO ENJOIN ARBITRATIONS – 2

action waiver from the SSA.[4] Now, the current SSA (the "Current SSA") provides that all claims and disputes between Valve and Steam users must proceed exclusively in court, including claims and disputes that arose before Valve implemented the Current SSA. Under well-settled law, a forum selection clause like this applies to accrued claims, including pending claims, where, as here, the clause expressly provides for retroactive effect.

Respondents have agreed—or will soon agree—to the Current SSA, which does not contain an agreement to arbitrate. Yet despite his clients' agreement to resolve all disputes exclusively in court, and despite basing a nationwide class action on the argument that the arbitration agreement in Valve's prior SSA was not enforceable (and making arguments to that effect in that case), Bucher Law is continuing to push forward with Respondents' previously-filed arbitrations. Bucher Law argued in those arbitrations that the old arbitration agreement from the Superseded SSA remains enforceable for the claimants in those arbitrations and asked arbitrators to rule those claimants may proceed in arbitration on that basis.

Under controlling Supreme Court precedent, whether the Superseded SSA (with its arbitration agreement) or the Current SSA (without an arbitration agreement) governs is a decision for this Court. *See Coinbase, Inc. v. Suski*, 144 S. Ct. 1186 (2024) (holding that the court, not the arbitrator, decides which of two contracts controls when assessing arbitrability).

As there is no longer an arbitration agreement, Respondents should be enjoined from pursuing their arbitrations. *See, e.g.*, *Oppenheimer & Co. v. Mitchell*, 2023 WL 2428404, at *6 (W.D. Wash. Mar. 9, 2023) (enjoining defendant from pursuing arbitration when contract did not permit arbitration). Respondents will remain free to pursue their claims in court, in Bucher Law's new *Elliott* class action, in another parallel and virtually identical class action pending in this Court, *In re Valve Antitrust Litigation*, No. 2:21-cv-00563- JNW ("*Wolfire*"), or otherwise.

---

[4] The prior version of the SSA that included an arbitration agreement and class action waiver is referred to herein as the "Superseded SSA."

MEMORANDUM IN SUPPORT OF PETITION
TO ENJOIN ARBITRATIONS – 3

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## II.    STATEMENT OF FACTS

### A.    Valve and Steam Users Agree to the SSA, Which at One Time Included an Arbitration Provision

When individuals create a Steam account, they must agree to the SSA. (Lynch Decl. ¶ 3.) Valve periodically updated the SSA since it was first implemented in 2003. In 2012, Valve added to the SSA a class action waiver and an arbitration agreement providing that, with limited exceptions, "you and Valve agree to resolve all disputes and claims between us in individual binding arbitration" with the AAA. (Lynch Decl. ¶ 4, Ex. A § 11(A).)

### B.    Plaintiffs in *Wolfire* Commence Consumer Antitrust Class Action Against Valve

In 2021, a video game developer and seven consumer plaintiffs brought a putative class action in this Court against Valve asserting violations of the federal antitrust laws, *Wolfire Games LLC v. Valve Corp.*, No 2:21-cv-00563 (W.D. Wash. filed Apr. 27, 2021) ("*Wolfire* Action"). Valve moved to compel arbitration of the consumer claims under the Superseded SSA. In response, the consumer plaintiffs in that action challenged the enforceability of the arbitration agreement on unconscionability grounds. The Court granted the motion but declined to address the unconscionability challenge. The Court explained that "the question of unconscionability should be determined in arbitration." *See Wolfire Games, LLC v. Valve Corp.*, 2021 WL 4952220, at *2 (W.D. Wash. Oct. 25, 2021). The *Wolfire* Action was stayed as to the seven individual consumer plaintiffs. (*Id.*) They are not Respondents in this action.

### C.    Bucher Law Commences Mass Arbitration Under the Superseded SSA

In 2023, Bucher Law commenced its mass arbitration strategy against Valve, which was designed—in Mr. Bucher's own words—to "weaponize[]" an arbitration agreement between Valve and Respondents. (Ex. 1 at 3.) In a video used as part of his online marketing blitz to recruit claimants, Mr. Bucher stated that arbitration was preferable to a class action. Mr. Bucher tried to convince Steam users to join his arbitration plan by stating that it was "good news" that Valve had an arbitration agreement because "on average consumers in arbitration recover hundreds of times

more than in a class action." (Crack, "hi its will from bucher law," *YouTube* (July 12, 2023), *available at* https://www.youtube.com/watch?v=3w_pbejggn8.)

On July 12, 2023, Bucher Law sent Valve a letter threatening to bring purported antitrust claims on behalf of 44,903 individuals. (Fuchs Decl. ¶ 2.) The allegations contained in Bucher Law's letter were apparently modeled on those made in the *Wolfire* action. After threatening arbitrations asserting antitrust claims on behalf of thousands of claimants, Bucher Law made an outrageous settlement demand to Valve that far exceeded any conceivable recovery. (*Id.*) Valve did not acquiesce to Bucher Law's demand, and on October 2, 2023, Bucher Law submitted 997 demands for arbitration against Valve to the AAA and threatened Valve with filing 18,204 more such demands. (Fuchs Decl. ¶ 3.) In November and December 2023, Bucher Law submitted thousands of additional demands for arbitration against Valve to the AAA. (Fuchs Decl. ¶ 4.) Bucher Law is currently pursuing 5,028 arbitrations before the AAA. Among those arbitrations, 601 arbitrations are assigned to merits arbitrators and 25 arbitrations were assigned to a merits arbitrator who was disqualified by the AAA. (*Id.* ¶¶ 5-6.) The Respondents in this case are all of the claimants in those arbitrations assigned to merits arbitrators (with the exception of two claimants who are deceased) and to the arbitrator who was since disqualified. (*Id.* ¶ 6; Ex. 4.)

### D. Bucher Law Seeks and Obtains Arbitrator Rulings that the Arbitration Agreement in the Superseded SSA Is Unenforceable

On July 8, 2024, in four of the arbitrations Bucher Law initiated (not involving Respondents here), the arbitrator concluded, at Bucher Law's urging, that the arbitration provision in the Superseded SSA was not enforceable. (Fuchs Decl. ¶¶ 7-13.) The arbitrator dismissed those arbitrations. (*Id.*)

### E. Bucher Law Files Consumer Antitrust Class Action in This Court

On August 9, 2024, Bucher Law and another law firm, Hagens Berman Sobol Shapiro LLP ("Hagens"), filed a putative antitrust class action against Valve in federal court, naming the four dismissed claimants as plaintiffs (the "*Elliott* Action"). The *Elliott* Action purports to be brought

---

MEMORANDUM IN SUPPORT OF PETITION
TO ENJOIN ARBITRATIONS – 5

1   on behalf of a putative class of all Valve consumers, including Respondents. (*Elliott* Dkt. 1 ¶167.)

2   Substantively, it asserts claims identical to those Bucher Law is asserting purportedly on behalf of

3   Respondents in arbitration. (*See generally id.*) Even though the Superseded SSA in effect at the

4   time *Elliott* was filed included an arbitration agreement, Bucher Law and Hagens alleged in *Elliott*

5   that they could pursue a class action on behalf of a nationwide class in court because they had

6   "won binding decisions from arbitrators rendering Valve's arbitration provision unenforceable."

7   (*Id.* ¶ 13.) Those "binding decisions" are the decisions rendered on July 8, 2024. In short, the

8   *Elliott* case is entirely premised on the Superseded SSA's arbitration agreement being

9   unenforceable as to all Steam users. (*Id.*)

10          **F.      Valve Removes the Arbitration Agreement from the SSA**

11          Accepting the arbitrator's finding that the arbitration provision was unenforceable, on

12   September 26, 2024, Valve removed the arbitration provision from the SSA, which now provides:

13              You and Valve agree that all disputes and claims between you and
                Valve (including any dispute or claim that arose before the existence
14              of this or any prior agreement) shall be commenced and maintained
                exclusively in any state or federal court located in King County,
15              Washington, having subject matter jurisdiction.

16   (Ex. B § 10.) The Current SSA includes a merger clause providing that it supersedes and replaces

17   the parties' prior agreement. (*Id.* § 11.) The notice Valve provided to Steam users about the

18   amendments to the SSA is described in detail below.

19          At least 461 of the 624 Respondents have already affirmatively accepted the Current SSA

20   by (i) checking a box next to the text "I agree to the Updated Steam Subscriber Agreement" then

21   clicking a button labeled "Accept Updated SSA" under a notification regarding the updates,

22   (ii) checking a box stating their agreement to the new SSA when making a purchase on Steam or

23   funding their Steam Wallets, or (iii) in both of those ways. (Lynch Decl. ¶¶ 22-25; Ex. C.) The

24   remaining Respondents will accept the Current SSA through continued use of Steam by

25   November 1, 2024, if they do not delete or discontinue use of their account before then. (Lynch

26   Decl. ¶ 26.)

---

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**G.      Bucher Law Represents to This Court
that the Current SSA Applies to All Respondents**

Bucher Law and Hagens ("Proposed Class Counsel") recently moved to be appointed interim co-lead class counsel in the *Elliott* Action. In doing so, they represented that Valve had "remove[d] the arbitration provision from its terms of use, along with the associated class action waiver." (Plaintiffs' Motion to Appoint Hagens Berman Sobol Shapiro LLP and Bucher Law PLLC as Interim Co-Lead Class Counsel, *Elliott v. Valve Corporation,* No. 2:24-cv-01218 (W.D. Wash. filed Oct. 2, 2024) (Dkt. 25) ("*Elliott* Dkt. 25") at 5.) In the next sentence, Proposed Class Counsel represented: "As a result, Valve consumers are authorized to proceed in federal court and seek collective relief through the class action vehicle." (*Id.*)

**H.      Bucher Law Continues to Prosecute Arbitrations**

Notwithstanding its admission that Respondents no longer have an agreement to arbitrate with Valve (and that the previous arbitration agreement was unenforceable), Bucher Law has refused to dismiss the Respondents' arbitrations, contending that the Superseded SSA is still operative. (Fuchs Decl. ¶¶ 16-22.) Bucher Law even attempted to file *more* arbitrations and filed a petition in California state court on behalf of one of the Respondents challenging the AAA's decision to disqualify a certain arbitrator—a petition that assumes that the Superseded SSA is still operative. *See Beer v. Valve Corporation*, No. 24STCP03209 (Cal. Sup. Ct., L.A. Cnty. filed Oct. 4, 2024). Reiterating its administrative role, the AAA has declined to administratively close the arbitrations absent a court order. (Ex. 5.) Accordingly, Valve brought its petition to enjoin the arbitrations.

**III.     THE CURRENT SSA CONTROLS; VALVE AND RESPONDENTS
ARE NOT REQUIRED TO ARBITRATE**

**A.      Supreme Court Authority Requires That The
Court Decide Which Agreement Is Controlling**

As an initial matter, whether the Current or Superseded SSA governs is a question exclusively for this Court—not the arbitrators—to decide. In *Coinbase*, the parties disagreed as to

---

MEMORANDUM IN SUPPORT OF PETITION
TO ENJOIN ARBITRATIONS – 7

which of two agreements applied to individuals' claims. The first agreement contained a clause delegating disputes as to arbitrability to an arbitrator. The second agreement contained a forum selection clause providing that all such disputes must be decided by a court. Because the parties disputed which agreement applied, they also disputed whether arbitrability was for an arbitrator or a court to decide. *Coinbase,* 602 U.S. at 145.

The unanimous Court held that "a court, not an arbitrator, must decide whether the parties' first agreement was superseded by their second." *Coinbase*, 602 U.S. at 152. The Court explained:

> Arbitration is a matter of contract and consent, and we have long held that disputes are subject to arbitration if, and only if, the parties actually agreed to arbitrate those disputes. Here, then, before either the delegation provision or the forum selection clause can be enforced, a court needs to decide what the parties have agreed to— *i.e.*, which contract controls.

*Id.* at 145. Here, as in *Coinbase*, only this Court may decide which agreement controls as between the Superseded SSA and the Current SSA. Both the AAA and individual arbitrators have refused to dismiss the arbitrations. (*See, e.g.*, Fuchs Decl. ¶¶ 19-29.) Accordingly, Valve properly brings the Petition to resolve the question of which SSA applies.

### B.  The Current SSA Is Valid and Fully Enforceable

The Current SSA is valid and enforceable. Parties to existing contracts may freely agree to new agreements that become binding "if the offeree's actions clearly evince acceptance of the offeror's modifications." *United Fin. Cas. Co. v. Coleman*, 173 Wash. App. 463, 473 (2012). For online transactions, "mutual assent turns on whether the consumer had reasonable notice of the terms of service agreement." *Grant v. T-Mobile USA, Inc*., 2024 WL 3510937, at *3 (W.D. Wash. July 23, 2024). If "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id.* at *4. "[E]mails followed by continued use is [also] sufficient to establish assent." *Sadlock v. Walt Disney Co.*, 2023 WL 4869245, at *12 (N.D. Cal. July 31, 2023).

---

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### 1. Valve Properly Provided Widespread and Repeated Notice of the Current SSA

Valve provided conspicuous notice of the terms of the Current SSA to all users. For notice to be "reasonably conspicuous," it must be "displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Grant*, 2024 WL 3510937, at *4. "The presence of a hyperlink must be readily apparent, customarily by using of a contrasting font color (typically blue)." *Open Book Theatre Co. v. Brown Paper Tickets, LLC*, 2024 WL 4230479, at *3 (S.D. Cal. Sept. 18, 2024). Updates to dispute resolution agreements are sufficiently conspicuous when they are specifically called out and not buried or difficult to discern. *Sadlock*, 2023 WL 4869245, at *12. Valve's notice more than met these requirements in several ways:

- **Electronic Mail**. Beginning on September 26, 2024, Valve provided email notice to all U.S. customers (including all Respondents) of the change in Valve's SSA, sending the notice to the email address of record for their Steam accounts. The email, only two paragraphs long and hyperlinking in blue to the updated Steam Subscriber Agreement, specifically called out changes to the dispute resolution provision, providing: "[t]he updated dispute resolution provisions are in Section 10 and require all claims and disputes to proceed in court and not in arbitration." (Lynch Decl. ¶¶ 9-10.)

- **In-Client Pop-Up.** Beginning on September 26, 2024, Valve provided notice of the update through a pop-up that appeared when users logged into the Steam client. The pop-up contained the same text and blue hyperlinks as the email. It enabled users to agree to the Current SSA by checking a box stating: "I agree to the Updated Steam Subscriber Agreement" and then clicking, "Accept Updated SSA." (*Id.* ¶¶ 11-13.) Importantly, users who chose not to accept the Current SSA could simply "X" out of the pop-up notice without agreeing to the Current SSA. (*Id.* ¶ 14.)

- **Blog Post.** Beginning on September 26, 2024, Valve published a blog post on Steam

---

MEMORANDUM IN SUPPORT OF PETITION
TO ENJOIN ARBITRATIONS – 9

providing notice of the amended SSA. The blog post, again hyperlinking in blue to the Current SSA, stated, "We've eliminated the requirement that disputes be resolved by individual arbitration." Instead, if informal resolution did not work, "the updated SSA now provides that any disputes are to go forward in courts instead of arbitration." (*Id.* ¶¶ 15-16.)

- **Steam Website.** The Current SSA has been available online from September 26, 2024, to the present, in 10 languages. (*Id.* ¶ 7); *see* https://store.steampowered.com/subscriber_agreement/.

When users clicked on the hyperlinks in any of the various notices or otherwise visited the SSA page on the Steam website, they saw a banner at the top of the Current SSA, set apart in a box outlined in red, prominently announcing: "Valve has updated the Steam Subscriber Agreement. The updates affect your legal rights, including how disputes and claims between you and Valve are resolved. Among other things, the new dispute resolution provisions in Section 10 require that all disputes and claims proceed in court and not in arbitration. Please review carefully." (*Id.* ¶ 6.)

The notices were consistent with the modification requirements set out in the Superseded SSA. The Superseded SSA provided: "This Agreement may at any time be mutually amended by your explicit consent to changes proposed by Valve." (Ex. A § 8(A).) The email notice and pop-up explained, in turn, "This updated Steam Subscriber Agreement will become effective immediately when you agree to it, including when you make most purchases, fund your Steam wallet, or otherwise accept it." (Lynch Decl. ¶¶ 9, 11.)

The Superseded SSA also provided for amendment through notice and continued use:

> Valve may amend this Agreement … unilaterally at any time in its sole discretion. In this case, you will be notified by e-mail of any amendment to this Agreement made by Valve at least [thirty] (30) days before the effective date of the amendment. You can view the Agreement at any time at http://www.steampowered.com/. Your failure to cancel your Account prior to the effective date of the amendment will constitute your acceptance of the amended terms.

(Ex. A § 8(B).) It went on to explain that if the user did not agree to the amendment, he or she could cancel his or her Steam account or cease using the service. (*Id.*) Consistent with these terms,

the email notice and pop-up also provided: "[T]he updated [SSA] will become effective on November 1, 2024, unless you delete or discontinue use of your Steam account before then." (Lynch Decl. ¶¶ 9,11.) Individually and collectively, the notices Valve provided Respondents were more than reasonably conspicuous and made it clear that the arbitration provision and class action waiver were being removed.

### 2. Respondents Agreed to The Current SSA

Clicking a button to indicate acceptance of terms constitutes unambiguous assent where users are provided adequate notice that their click signifies assent. *See Open Book*, 2024 WL 4230479, at *4; *see also Briggs v. Serv. Corp. Int'l*, 2023 WL 2075958, at *4 (W.D. Wash. Feb. 17, 2023) ("Acceptance may be manifested expressly, such as by checking a box or clicking on a button"). Assent is unambiguous under such circumstances because it involves a "forced confrontation with the terms and forced decision to accept or reject them." *Open Book*, 2024 WL 4230479, at *4.

Valve's pop-up notice included two separate "forced confrontation[s]" and "forced decision[s]"—one checkbox and one button that plainly indicated the user was agreeing to the Current SSA. If the user did not agree, he or she could simply "X" out of the pop-up. (Lynch Decl. ¶ 14.) Moreover, when a user made a purchase or funded his or her "Steam wallet"—an account a user can prefund to purchase any game or make purchases within a game—the user was presented with a box to check affirming his or her acceptance of the Current SSA. (*Id.* ¶¶ 19-20.) At least 461 of the 624 Respondents have unambiguously accepted the Current SSA by checking the box in the pop-up, while making purchases, or while funding their Steam Wallet. (*Id.* ¶¶ 22-24; Ex. C.)

Even those Respondents who do not check "accept" on the pop-up or while purchasing or funding their Steam Wallet will manifest assent to the Current SSA on November 1, 2024, unless they discontinue use of Steam. Users manifest assent if they continue to use a service after receiving notice of updated terms. *See, e.g.*, *Sadlock*, 2023 WL 4869245, at *12 ("emails followed by continued use is sufficient to establish assent"); *Dlugolecki v. PeopleConnect, Inc.*, 2020 WL

MEMORANDUM IN SUPPORT OF PETITION
TO ENJOIN ARBITRATIONS – 11

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

13587803, at *2 (C.D. Cal. Nov. 9, 2020) (finding users manifested assent by continuing to use an online service where they received email notice that "continued use" would "constitute your acceptance of all changes"); *West v. Uber Techs.*, 2018 WL 5848903, at *5 (C.D. Cal. Sept. 5, 2018) ("Courts have found that when consumers receive emails such as this one, continued use of the service or product constitutes assent to the updated terms"). Here, the email and pop-up notice informed users, consistent with the terms of the Superseded SSA, that the Current SSA would become effective November 1 unless they deleted or discontinued use of their account. (Lynch Decl. ¶¶ 9, 11.) To the extent Respondents have not and will not delete their account, they will manifest assent by November 1 unless they discontinue use of Steam. (Valve will not delete any user's account unless he or she requests it.) Because Valve provided reasonably conspicuous notice and Respondents manifested or will manifest assent, the Current SSA is the parties' enforceable agreement (or soon will be).

C.     **Under the Current SSA, Disputes Between Respondents and Valve Must be Resolved in Court**

Under the Current SSA, the parties no longer have any agreement to arbitrate. A dispute resolution provision in an updated agreement is enforceable with respect to accrued and already asserted claims so long as the provision provides for retroactive effect. In *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1127 (11th Cir. 2014), for example, the court concluded that a new agreement without an arbitration clause superseded and applied retroactively to foreclose arbitration under a prior agreement containing an arbitration clause. Although the claim was originally asserted when the agreement had an arbitration clause, the court reasoned that the parties "expressed their clear and definite intent to execute [the new agreement] to supersede [the prior agreement]," and that intent controlled. *Id.* at 1117. Notably, the court rejected the argument that "there is…no statutory authorization permitting parties to *remove* arbitration from an existing controversy." *Id.* 1125. The court reasoned that, because "arbitration is simply a matter of contract," courts "should simply enforce the parties' agreements, whether that means adding a

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1    retroactively applicable arbitration provision *or* removing it." *Id.*

2         Similarly, in *Ingram Micro Inc. v. Signeo Int'l, Ltd.*, 2014 WL 3721197 (C.D. Cal. July 22,

3    2014), the court enjoined an arbitration "because subsequent agreements both superseded the

4    2011 Program Agreement, the only contract containing an arbitration provision, and extinguished

5    any claims arising from the 2011 Program Agreement." *Id.* at *3. Indeed, courts consistently

6    apply amended dispute resolution provisions retroactively when the agreement plainly articulates

7    that intent. *See, e.g.*, *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 2021 WL

8    2350814, at *4 (C.D. Cal. Apr. 20, 2021) (enforcing agreement revised two years after suit filed);

9    *Laster v. T-Mobile USA, Inc.*, 2008 WL 5216255, at *6 (S.D. Cal. Aug. 11, 2008) (holding that

10   agreement that "retrospectively modif[ied] the original service contract after the present litigation

11   had already begun" nonetheless applied); *Enderlin v. XM Satellite Radio Holdings, Inc.*, 2008 WL

12   830262, at *7 (E.D. Ark. Mar. 25, 2008) (collecting cases applying amended agreements to on-

13   going litigation); *Goetsch v. Shell Oil Co.*, 197 F.R.D. 574, 577 (W.D.N.C. 2000) (compelling

14   individual arbitration based on terms of provision that had been revised to add a class waiver after

15   the commencement of litigation and holding that new agreement applies where "[t]he agreement

16   clearly provides for retroactive effect").

17        The Current SSA applies to "all disputes and claims between [the user] and Valve

18   (including any dispute or claim that arose before the existence of this or any prior agreement)." (Ex. B

19   § 10.) It also provides: "This Agreement…constitutes and contains the entire agreement between

20   the parties with respect to the subject matter hereof and supersedes any prior oral or written

21   agreements." (*Id.* § 11.) It specifically states, "If you were a Subscriber before [September 24,

22   2024], [this Agreement] replaces and supersedes your existing agreement with Valve." (*Id.*)

23   Therefore, even though Respondents had already initiated their arbitrations at the time they agreed to

24   the Current SSA, they agreed that the Current SSA would replace and supersede the agreement to

25   arbitrate and apply retroactively to their claims. Bucher Law admitted as much when it asserted

26   purported class claims on behalf of *all* Valve consumers in the *Elliott* Action and claimed they now

MEMORANDUM IN SUPPORT OF PETITION
TO ENJOIN ARBITRATIONS – 13

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1 have the right to proceed in court under the Current SSA. (*See Elliott* Dkt. 25 at 5.)

2       The parties therefore no longer have any agreement to arbitrate. As "[a]rbitration is a matter

3 of contract and consent, and…disputes are subject to arbitration if, and only if, the parties actually

4 agreed to arbitrate those disputes," Valve has no obligation to arbitrate and the arbitrators have no

5 authority to continue arbitration proceedings. *Coinbase*, 602 U.S. at 145.

6 **IV.**     **THE COURT SHOULD ENJOIN THE ARBITRATIONS**

7       Under the Federal Arbitration Act, where a court determines "that the parties have not

8 entered into a valid and binding arbitration agreement, the court has the authority to enjoin the

9 arbitration proceedings." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 140 (2d Cir.

10 2011). As one court explained, "the Ninth Circuit has indicated that when a party initiates

11 arbitration against a party that opposes it, the opposing party may immediately bring a motion to

12 enjoin the arbitration. The opposing party need not wait until the initiating party moves in federal

13 court to compel the opposing party's participation in the arbitration." *Morgan Stanley & Co. v.*

14 *Couch*, 134 F. Supp. 3d 1215, 1233 (E.D. Cal. 2015), *aff'd*, 659 F. App'x 402 (9th Cir. 2016)

15 (discussing *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 735 (9th Cir. 2014)). "Given

16 that federal courts sometimes must determine whether a party has a right to arbitration (*e.g.,* in

17 the context of a motion to compel arbitration), it follows that the federal judiciary may enjoin

18 arbitration if necessary to enforce its orders." *Couch*, 134 F. Supp. 3d at 1233.

19       Under such circumstances, a court should enter an injunction where, in addition to the

20 showing on the merits, the party seeking an injunction shows "it is likely to suffer irreparable

21 harm in the absence of [injunctive] relief," "the balance of equities tips in its favor," and "an

22 injunction is in the public interest." *Goldman*, 747 F.3d at 738; *see also Textile Unlimited, Inc. v.*

23 *A..BMH & Co., Inc.*, 240 F.3d 781, 786 (9th Cir. 2001) (applying preliminary injunction

24 requirements to assess plaintiff's motion to enjoin arbitration). Valve satisfies these standards

25 here.

26

MEMORANDUM IN SUPPORT OF PETITION
TO ENJOIN ARBITRATIONS – 14

**Corr Cronin LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### A. <u>Valve Will Face Irreparable Harm If Forced To Arbitrate</u>

Valve will face irreparable injury absent injunctive relief. A party is "irreparably injured if it is forced to arbitrate when it does not have to." *Oppenheimer & Co. v. Mitchell*, 2023 WL 2428404, at *6 (W.D. Wash. Mar. 9, 2023). "Forcing a party to arbitrate may cause an irreparable injury if the party being compelled is not required to arbitrate, even if the arbitration award can be set aside." *Id.* Indeed, "forcing a party to arbitrate a dispute that it did not agree to arbitrate constitutes per se irreparable harm." *Id.* (quoting *Morgan Keegan & Co. v. McPoland*, 829 F. Supp. 2d 1031, 1036 (W.D. Wash. 2011)); *see also, e.g.*, *LAWI/CSA Consolidators, Inc. v. Wholesale & Retail Food Distrib., Teamsters Local 63*, 849 F.2d 1236, 1241 n.3 (9th Cir. 1988) (concluding that plaintiff "was entitled to injunctive relief once it established that it was no longer under a contractual duty to arbitrate" without an additional showing of irreparable harm); *Couch*, 134 F. Supp. 3d at 1235 ("[M]ost, if not all courts hold that being required to arbitrate a dispute the parties did not agree to arbitrate is *per se* irreparable harm").

Absent immediate injunctive relief, Valve and Steam users will be forced to arbitrate hundreds, if not thousands, of disputes they do not agree to arbitrate and, in fact, expressly agreed to resolve in court. While, in an attempt to avoid this harm, Valve sought to have these arbitrations stayed or closed until a court resolves any dispute over the Current SSA, this has been unsuccessful. (Ex. 5.) At the request of Bucher Law, the AAA refused to administratively close the arbitrations, concluding that it needed an order from the court or arbitrators to do so. (*Id.*) Since then, some arbitrators have pushed forward, some have stayed (not closed) arbitrations, and others have set briefing schedules on the issue of which SSA applies even though that issue is reserved for this Court to decide. (Fuchs Decl. ¶ 24.) Therefore, absent injunctive relief, Valve will suffer irreparable harm from being forced to arbitrate "claims it should not have to arbitrate." *See Oppenheimer*, 2023 WL 2428404, at *6.

Moreover, while "[t]ypically, monetary harm does not constitute irreparable harm," "time and resources spent in arbitration constitute irreparable harm where neither the arbitration

MEMORANDUM IN SUPPORT OF PETITION
TO ENJOIN ARBITRATIONS – 15

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1   agreement nor the Arbitration Act allows for monetary awards of attorneys' fees and costs."

2   *Oppenheimer*, 2023 WL 2428404, at *6; *see also Resource Grp. Int'l Ltd. v. Chishti*, 91 F.4th 107,

3   115 (2d Cir. 2024) (concluding that "forced arbitration of inarbitrable claims may constitute

4   irreparable harm when the arbitration is one 'for which any award would not be enforceable' and

5   for which 'the time and resources…expend[ed] in arbitration is not compensable by any monetary

6   award of attorneys' fees or damages"); *Morgan Keegan*, 829 F. Supp. 2d at 1036 ("[a] party

7   resisting arbitration suffers irreparable harm when it is 'forced to expend time and resources

8   arbitrating an issue that is not arbitrable, and for which any award would not be enforceable'").

9        Such harm from wasted time and resources is even more pronounced when the arbitrations

10   risk duplicative or inconsistent rulings with one another and the court. *See Allstate Ins. Co. v.*

11   *Tvildiani*, 2015 WL 13048729, at *1 (E.D.N.Y. Apr. 14, 2015) ("[A]llowing a large number of

12   proceedings to be heard by a mix of arbitrators, each of whom will likely come to their own

13   independent and potentially contradictory conclusions, will result in harm to [movant] from which

14   it cannot recover." (alteration in original)); *see also GEICO v. Mayzenberg*, 2018 WL 6031156,

15   at *5 (E.D.N.Y. Nov. 16, 2018) ("[I]t is the inconsistency to which hundreds of arbitrations will

16   inevitably give rise, the frustration of the declaratory judgment relief for which [plaintiff] is likely

17   to succeed on the merits, and the resources spent vacating hundreds of arbitration awards that

18   satisfies the irreparable harm prong of the preliminary injunction standard"). This is particularly

19   true here where there are two parallel class actions, one brought by Respondents' chosen counsel

20   on behalf of a purported class that includes all Respondents.

21        Setting aside that, under *Coinbase*, Valve has a right to have the threshold question of

22   arbitrability decided by a court—a right that will go entirely unprotected absent injunctive relief.

23   Even if the arbitrators ultimately agree uniformly that the Current SSA is binding and that the

24   parties have no agreement to arbitrate, Valve will have to invest time and resources to get to those

25   piecemeal conclusions—time and resources it cannot recover. Indeed, the arbitrations that Bucher

26   Law is prosecuting on behalf of Respondents are currently causing the parties to incur enormous

MEMORANDUM IN SUPPORT OF PETITION
TO ENJOIN ARBITRATIONS – 16

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

burdens. Each arbitrator holds separate hearings, requires the parties to brief and argue issues separately, and issues separate orders on discovery issues. (Fuchs Decl. ¶ 25.) Meanwhile, any award any arbitrator makes will be unenforceable because the parties have no agreement to arbitrate.

And, in any event, submitting the threshold issue of which SSA governs, let alone the merits of the disputes, to more than thirty arbitrators while this action proceeds simultaneously is unlikely to lead to uniform results. On the contrary, it inevitably will result in multiple rulings conflicting directly with this Court's ultimate ruling, "gradually culminating in a procedural and substantive train wreck." *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 220 (E.D.N.Y. 2013). Valve should not have to "wast[e] time and resources in an arbitration with awards that might eventually be, at best, inconsistent with this Court's ruling, and at worst, essentially ineffective." *Id.* at 222. Again, this is doubly true here given the *Elliott* and *Wolfire* cases.

### B.    The Parties' Interests Favor An Injunction

The relative interests of the parties support an injunction.

*First*, "[f]orcing a party to engage in arbitration where that party is not bound to arbitrate serves no equitable purpose." *Oppenheimer*, 2023 WL 2428404, at *6. Likewise, a party receives no "countervailing benefit…from proceeding with an arbitration when the award, if any, is so likely to be vacated." *Morgan Keegan*, 829 F. Supp. 2d at 1036. Because the parties have not agreed to arbitrate, there is no equitable reason to allow the arbitrations to continue.

*Second*, Respondents will suffer no prejudice from an injunction. When an arbitrating party can also seek relief in court, any prejudice from an injunction is limited. *See AT&T Mobility LLC v. Bernardi*, 2011 WL 5079549, at *12 (N.D. Cal. Oct. 26, 2011) (enjoining mass arbitration when regulators were reviewing issues raised by arbitration and injunction "does not leave Customers completely without recourse"); *AT & T Mobility LLC v. Smith*, 2011 WL 5924460, at *9 (E.D. Pa. Oct. 7, 2011) (enjoining arbitration when parallel lawsuit "may very well result in the precise relief [the defendant] seeks"); *Couch*, 134 F. Supp. 3d at 1236 (finding equities balance in favor of

MEMORANDUM IN SUPPORT OF PETITION
TO ENJOIN ARBITRATIONS – 17

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

injunction when defendant could still pursue an appeal of a summary judgment order). Respondents are already putative class members in two pending putative class actions, the *Wolfire* and *Elliott* cases. Moreover, under the Current SSA, any Steam user can file his or her own individual claim in court. (Ex. B § 10.) Because of the pending class actions tolling their claims, Respondents need not be concerned that the statute of limitations will prevent them from doing so. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552-53 (1974) (holding that pending class action tolls statute of limitations for absent class members).

*Third*, an injunction will prevent Bucher Law from pursuing vexatious and oppressive proceedings it has no right to pursue. In balancing the equities with respect to whether to enter an injunction against another proceeding, courts properly consider whether that proceeding is "vexatious or oppressive." *See Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 886 (9th Cir. 2012). The arbitrations at issue here are both.

Bucher Law expressly targeted Valve and Steam users, including Respondents, to "weaponize[]" their arbitration agreement, believing that "[a]ggregating claims makes [the] entrance fee to just defend prohibitively expensive," providing leverage for immediate settlements. (Ex. 1 at 3.) Based on this belief, Bucher Law commenced thousands of arbitrations, apparently without conducting any investigation: it filed arbitrations on behalf of at least seven claimants who appear to be deceased, at least 96 claimants who are represented by other law firms asserting substantively identical arbitration claims, and at least nineteen Respondents who are in active bankruptcy proceedings. Valve brought suit against Bucher Law in Washington State Court, asserting claims for tortious interference and abuse of process arising out of this vexatious and oppressive conduct, in *Valve Corporation v. Bucher Law, PLLC*, Case No. 23-2-20447-6 SEA. (Ex. 2.) The court denied Bucher Law's motion to dismiss. (Ex. 3.)

Bucher Law has conceded to arbitrators that it is engaging in forum shopping by prosecuting the arbitrations and the *Elliott* Action purportedly on behalf of the same Respondents in parallel. (Fuchs Decl. ¶¶ 16-18.) Bucher Law stated to arbitrators that Respondents may

MEMORANDUM IN SUPPORT OF PETITION
TO ENJOIN ARBITRATIONS – 18

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98101-1001
Tel (206) 625-8600
Fax (206) 625-0900

withdraw their arbitrations and proceed in court if Bucher Law is dissatisfied with any arbitral ruling at any point up until a final award. And Bucher Law has represented to arbitrators it intends to use information obtained in the arbitrations in furtherance of the *Elliott* Action. (*Id.* ¶ 18.) It is plain that Bucher Law commenced the arbitrations at issue here and is continuing to prosecute them to extort a settlement from Valve and a windfall for himself, not because Respondents have any real injury requiring redress, let alone redress in an arbitration. This is the very definition of vexatious and oppressive. Under such circumstances, the equities favor an injunction.

### C.    The Public Interest Favors An Injunction

Public interests also favor an injunction. "There is no public interest in compelling [the party seeking an injunction] to arbitrate if it does not have to." *Oppenheimer*, 2023 WL 2428404, at *6. Likewise, "[n]either the public interest nor the interest of judicial economy would be served by allowing the arbitration to proceed, when such arbitration could lead to further proceedings in this Court to vacate an award." *Morgan Keegan*, 829 F. Supp. 2d at 1037. Because under the Current SSA the parties have no agreement to arbitrate, there is no public interest in allowing the arbitrations to continue.

## V.    CONCLUSION

For these reasons, Valve requests that this Court enjoin Respondents' arbitrations.

DATED this 18th day of October 2024.

I certify that this memorandum contains 6,716 words, in compliance with the Local Civil Rules.

---

MEMORANDUM IN SUPPORT OF PETITION
TO ENJOIN ARBITRATIONS – 19

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CORR CRONIN LLP

*s/ Blake Marks-Dias*
Blake Marks-Dias, WSBA No. 28169
1015 Second Avenue, Floor 10
Seattle, WA  98104
(206) 625-8600 Phone
(206) 625-0900 Fax
bmarksdias@corrcronin.com

Michael W. McTigue Jr., *Pro Hac Vice Forthcoming*
Meredith C. Slawe, *Pro Hac Vice Forthcoming*
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Attorneys for Petitioner Valve Corporation*

MEMORANDUM IN SUPPORT OF PETITION
TO ENJOIN ARBITRATIONS – 20