THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALVE CORPORATION,

        Petitioner,

  v.

JENNIFER A. NELSON, et al.,

        Respondents.

Case No.  2:24-cv-1717-JNW

**RESPONDENTS' REPLY TO MOTION FOR EXTENSION OF TIME TO RESPOND AND FOR A CASE MANAGEMENT CONFERENCE**

RESPONDENTS' REPLY TO MOTION FOR EXTENSION
– Page 1

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

## I. REPLY

Valve sued hundreds of its arbitration adversaries in order to serve them with papers laden with misplaced accusations against their counsel, then used the baited inquiries from these surprised (and represented) consumers to seek to correspond with them *ex parte,* expressly to coerce them into withdrawing their claims—a practice that this Court should not countenance. *See, e.g.*, *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1060 (9th Cir. 2007) ("The district court also did not err when it inferred an intent to harass defendants into settlement from the fact" that plaintiff brought suits against over 400 defendants, reached the merits on only one of those matters, and specifically targeted defendants that were "easy prey for coercive claims.")

To do the above, Valve treated its Petition as a traditional complaint (subject to summonses under Rule 4). But when that brought procedural liabilities (*i.e.* inability to unilaterally dismiss post answer), Valve flip-flopped to calling it a motion under the FAA not subject to the FRCP, even though the Complaint was brought under the Declaratory Judgment Act ("DJA"). Dkt. 1, at 47 (requesting declarations under 28 U.S.C. § 2201-2).[1]

Simultaneously, Valve wielded its filing of ***this case*** in attempts to stay the numerous arbitrations that ***this Court compelled on Valve's motion***. But as one arbitrator observed on November 13, 2024 when denying Valve's request to halt the arbitration before her:

> [Valve] here already compelled arbitration of the parties' disputes; the parties have already been arbitrating them in [Valve's] chosen forum for over a year; and then [Valve] ***strategically manufactured*** the current conflict when it created new terms designed to remove the AAA's arbitral jurisdiction.

Ex. A. at 14 (emphasis added).

---

[1] Valve's position is that it can apparently shoehorn the FAA procedures into this DJA petition because, in addition to declaratory judgment, its prayer for relief requests "an order pursuant to 9 U.S.C. § 4." Dkt. 1, at 47. But 9 U.S.C. § 4 is about *compelling* arbitrations, ***not*** enjoining them.

Valve's latest submission is now attempting to end-run this ruling and others like it by further muddying the waters. Rather than clarifying the questions raised by Respondents, including (i) what type of response to the Petition was required, if any at all; and (ii) if a response to the Petition was required, what was/is the deadline, Valve requests, via pseudo-default judgment, vacatur of arbitral rulings (*i.e.* Ex. A. hereto), under a statute (the FAA) that does not even offer the relief it seeks. Indeed, the Ninth Circuit has long made clear that "[a]s we have interpreted the [Federal Arbitration] Act, a district court's authority is generally limited to decisions that bookend the arbitration itself. … The statute does not suggest that a court could otherwise intervene before a final award is made." *In re Sussex*, 781 F.3d 1065, 1071 (9th Cir. 2015) (citing 9 U.S.C. § 4 and making clear it does not permit mid-stream injunctions of ongoing arbitration); *cf.* Dkt. 37 (Valve Opp.), at 2:18–19 (requesting default adjudication of a motion to enjoin arbitration mid-stream under 9 U.S.C. § 4).

Given the extraordinary nature of Valve's request, as well as the unheard-of procedural posture Valve has put the parties and Court in, the Court should grant Respondents' motion for an extension of time to respond to Valve's Petition (Dkt. 1) and motion (Dkt. 2) (collectively, the "**Pet-Mot.**") so that the Respondents and this Court can thoughtfully assess the novelty of Valve's actions, including its willful, calculated violations of RPC 4.2, the federal rules, and extensive caselaw.

**A.     What Response Is Required?**

Respondents are at a loss—due to Valve's inconsistent positions—as to what response is required, both procedurally and substantively.

Procedurally, at the time of filing their motion for an extension, Respondents assumed that Valve had complied with its obligation to provide proper information to the Court in

RESPONDENTS' REPLY TO MOTION FOR EXTENSION – Page 3

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

directing the issuance of hundreds of summonses and that a response was required within 21 days. *See* Dkt. 10; Local Rules W.D. Wash., LCR 4(a) (deeming it the "obligation" of the party seeking a summons to present a proper form).

In truth, however, Valve did not provide accurate information to the Court as part of the summons process. Its present position is that the Pet-Mot. is not subject to an answer and/or default. *See* Dkt. 23 (arguing that a Section 4 petition should be treated procedurally as a motion). At the very least, this inconsistency—whether intentional or inadvertent—requires an extension of time to determine exactly what type of response is required.

Substantively, Valve claims that the Pet-Mot. "does not seek to resolve broad claims on their merits or establish a right to damages—it seeks only a legal ruling on a narrow issue." Dkt. 37 at 7. But Valve fails to identify this narrow issue, and the mountain of paperwork it served on most Respondents is inconsistent with that position. Valve's actions have made it unclear whether Respondents should respond to (i) the six paragraphs of requested relief in the petition, specifically requests for declarations under 28 U.S.C. § 2201 (Dkt. 1 at 46 (ECF pagination)) or (ii) the request to enjoin the arbitrations in the accompanying motion. Dkt. 2 at 23. Respondents need not only time to resolve these issues, but also need guidance as to the scope of any response.

**B.  When Is A Response Required?**

Contrary to what Valve may think, due process applies, and Respondents are entitled to adequate notice and an opportunity to be heard. *See, e.g.,* Local Rules W.D. Wash., LCR 7 ("LCR 7").

***First***, given that Valve has now pivoted to calling its Petition a "motion," Valve has failed to comply with the service rules governing motions. Under the motion rules, Valve must serve the Pet-Mot. on each party that has appeared in the matter, and any "argument in support

of the motion shall not be made in a separate document but shall be submitted as part of the motion itself." LCR 7(b)(1) ("*Obligations of Movant*"). Although Valve claims its Pet-Mot. is subject to LCR 7, it served it on 624 parties that had not appeared (Dkts. 27–35) and, in violation of the rule, included its arguments in support of its Pet-Mot. in an entirely separate document (Dkt. 2). This Court has recently disapproved of such shenanigans in the very case that Valve relies on extensively. *See Oppenheimer & Co. v. Mitchell*, No. C23-67 MJP (W.D. Wash.) ("*Oppenheimer*"), Dkt. 11 (*sua sponte* striking motion to enjoin arbitration that was simultaneously filed with the complaint and failed to include "any certificate or other proof of service"). Similar to *Oppenheimer*, this Court should *sua sponte* strike Valve's Pet-Mot. and allow Valve to "renew its motion at an appropriate time and with the requisite notice to Defendants." *Id*. at 2.

***Second***, with regard to an opportunity to be heard, Valve's actions have also caused hopeless confusion. LCR 7 provides that any response to a motion shall be filed and received by the moving party "no later than 21 days after the filing date of the motion." LCR 7(d)(4). Here, Valve filed the Pet-Mot. on October 18, 2024. Dkts. 1–2. Had it been properly served and noticed under LCR 7, any response would have been by Friday, November 8, 2024. But Valve did not serve a motion, it served a complaint and summons, which is what respondents thought they were responding to.

Valve now purports that some sort of Complaint/Motion hybrid rule governs. As it states: "[b]ecause the Petition was filed as a 28-day motion and the Summons required a response within 21 days of service, the October 24-30 Served Respondents' deadline to oppose the Petition was between November 14, 2024, and November 20, 2024." Dkt. 24 at 2. Not only does this position run counter to the well-established rules of motion practice in this District,

RESPONDENTS' REPLY TO MOTION FOR EXTENSION – Page 5

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

but Valve fails to provide any authority for its unilateral, "date range"-based noting, an unheard-of concept in this district until Valve's instant Opposition.[2]

Thus, Respondents are entitled to clarity as to the proper response date or, to the extent the noting date has passed, an extension to respond if necessary.

**C.     Should The Case Be Stayed?**

An extension of time is also warranted because of Respondent Luke Ninemire's pending motion to stay the entire action. Dkt. 20. Valve has used its response to argue that the Court has discretion to not stay the case to the remaining respondents under 50 U.S.C. § 3935(b). Dkt. 37 at 10:2–12. Valve is wrong because subsection § 3935(c) of that 50 U.S.C. § 3935 makes clear that "[t]his section does not apply to section[] 3932 … of this title." 50 U.S.C. § 3935(c). For this reason and other numerous errors in Valve's response, the Court should grant an extension of time to respond a reasonable amount of time after Respondent Ninemire's motion has been adjudicated.

---

[2] Undersigned counsel has reached out to Valve no less than three times seeking a meet and confer to discuss some of the unusual procedural ideas Valve is manufacturing. But Valve has no interest in conferring with counsel for Respondents that have formally appeared. Instead, Valve is urging the Court—after recently being denied—to approve communications to those Respondents that have not yet formally appeared. Such actions support a theory of this action being nothing more than vexatious litigation seeking to end-run RPC 4.2.

### D. Lack Of Urgency

Valve contends that "[g]ranting the requested extension will cause irreparable harm by forcing Valve to proceed with ongoing arbitrations absent an arbitration agreement." Dkt. 37 at 5. Once again, Valve manufactures a sense of urgency via its own twisted interpretation of the relevant law.

*First*, Valve brought the Pet.-Mot. under Section 4 of the Federal Arbitration Act, which provides procedures for compelling arbitrations. 9 U.S.C. § 4 ("Failure to arbitrate under agreement; petition to United States court having jurisdiction for order to compel arbitration; notice and service thereof; hearing and determination."). There is nothing in section 4 that provides a procedure for *enjoining* arbitrations. *See In re Sussex*, 781 F.3d at 1071; *see also Textile Unlimited, Inc. v. A.BMH & Co.*, 240 F.3d 781, 785 (9th Cir. 2001) ("§ 4 is narrowly tailored. By its terms, it only embraces actions to compel arbitration."); *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 140 (2d Cir. 2011) ("While the FAA's terms explicitly authorize a district court to stay litigation pending arbitration, *see* 9 U.S.C. § 3, and to compel arbitration, *see id*. § 4, nowhere does it explicitly confer on the judiciary the authority to do what the district court's Enforcement Order purported to do here: enjoin a private arbitration.").

Contrary to Valve's position, there is no statutorily authorized procedure for enjoining an ongoing arbitration, especially one in which the moving party compelled and has participated in for years. *See* Ex. A ("Claimants initiated these 24 arbitrations, along with 973 others, before the American Arbitration Association (AAA) on October 2, 2023.").

*Second*, in the absence of statutory authority for motions to enjoin arbitrations, some courts have created exceptions to enjoin arbitrations when extraordinary circumstances exist.

*See, e.g.,* Dkt. 2 at 18 (ECF pagination). But Valve has failed to establish that any of those extraordinary circumstances exist in this matter.

In fact, one arbitrator has concluded that Valve "strategically manufactured" this dispute and, under current precedent, is not entitled to an order staying the ongoing arbitration. Ex. A at 14 ( denying Valve's "***strategically manufactured***" motion to enjoin ongoing proceeding) (emphasis added). In other words, when a party has actively participated in resolving its disputes in one forum, there is neither urgency nor extraordinary circumstances to enjoin that proceeding.

### E.   Case Management Conference.

Respondents requested a case management conference as alternative relief to the extension. In its November 15, 2024 email to the Court, however inappropriate, Valve apparently consented to such a conference. If the Court is inclined to hold such a conference, Respondents respectively request that the Court order (i) the parties to meet and confer regarding the issues that would be raised at such a conference and/or (ii) the parties submit a joint statement of issues for the Court's review prior to holding a conference or hearing. *See, e.g.,* Local Rules W.D. Wash., LCR 37(a)(2) ("*Expedited Joint Motion Procedure*").

## II. CONCLUSION

For the above reasons, the Court should grant an extension until 21 days after it rules on Respondent Ninemier's motion to stay this action.

DATED this 29th day of November, 2024.

                                              BAILEY DUQUETTE P.C.

                                              By: */s William R. Burnside*
                                                   William R. Burnside, WSBA #36002
                                                   800 Fifth Ave, Suite 101-800
                                                   Seattle, Washington 98104

T: 206.353.8021
E: will@baileyduquette.com
*Attorney for Respondent*

**BUCHER LAW PLLC**

By: /s/ Will Bucher

William Ward Bucher IV
(*pro hac vie forthcoming*)
350 Northern Blvd
STE 324 -1519
Albany, NY 12204-1000
202-997-3029
will@bucherlawfirm.com

  I certify that this reply contains less than 2,100 words pursuant to Local Rules W.D. Wash. LCR 7(e)(2).

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I caused a true and correct copy of the foregoing RESPONDENTS' REPLY TO REQUEST FOR EXTENSION served upon counsel of record herein, as follows:

Blake Marks-Dias, WSBA No. 28169
1015 Second Avenue, Floor 10            ☒ Via Email
Seattle, Washington 98104               ☒ Via Electronic Service
(206) 625-8600 Phone
(206) 625-0900 Fax
E: bmarksdias@corrcronin.com

Michael W. McTigue Jr., *Admitted Pro Hac Vice*
Meredith C. Slawe, *Admitted Pro Hac Vice*
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
E: michael.mctigue@skadden.com
E: meredith.slawe@skadden.com

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Dated: 29th day of November, 2024 at La Ventana, Mexico.

                               *s/ William R. Burnside*
                               William Burnside, WSBA No. 36002