Case 2:24-cv-01717-JNW   Document 48   Filed 12/09/24   Page 1 of 11

THE HONORABLE JAMAL N. WHITEHEAD

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| VALVE CORPORATION,<br><br>        Petitioner,<br><br>    v.<br><br>THOMAS ABBRUZZESE, *et al.*,<br><br>        Respondents. | Case No. 2:24-cv-1717-JNW<br><br>RESPONDENTS' RESPONSE TO PETITIONER'S RENEWED *EX PARTE* MOTION SEEKING LEAVE TO PROVIDE COMMUNICATION TO CERTAIN RESPONDENTS |

RESPONDENTS' RESPONSE TO PETITIONER'S RENEWED *EX PARTE* MOTION SEEKING LEAVE TO PROVIDE COMMUNICATION TO CERTAIN RESPONDENTS – Page 1

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Respondents, through undersigned counsel, hereby respond to Petitioner Valve Corporation's ("Valve") Renewed *Ex Parte* Motion Seeking Leave to Provide Communication to Certain Respondents. Dkt. 39 (the "Motion").

## I. INTRODUCTION AND FACTS

This action was spawned from otherwise straightforward civil suits, in which Valve is being sued by its customers (both developer and retail) in mass arbitrations and class actions for illegal efforts to maintain a PC game distribution monopoly—*i.e.* cut and dry civil violations of the Sherman Act that has been litigated hundreds of times before by large companies without resorting to uncivil, unethical, and underhanded tactics.

This action—and Valve's present Motion—are nothing more than Valve's eleventh-hour attempt to terminate these arbitrations before hearings and rulings on the merits. As set forth below, the Court should summarily reject Valve's bald-faced attempts to manufacture chaos and then, on an *ex parte* basis, ask the Court to adopt its extreme "remedy" to the same. Indeed, the circumstances do not come close to justifying Valve's extraordinary request to: (i) persuade represented parties they should dismiss their pending arbitrations against Valve; (ii) in exchange for Valve's dismissal of this non-monetary proceeding based on "ongoing stress and confusion" (Dkt. 12, Valve Motion, at 2:16), which "stress and confusion" (iii) *Valve* created by suing those parties and communicating to them (via its complaint) inflammatory accusations about their counsel that Valve is absolutely prohibited from doing in any context (including this one).

Accordingly, the Court should order Valve to release the names of the parties that contacted Valve so that Bucher Law and/or Bailey Duquette may contact them directly to resolve any confusion, provide legal advice to the extent requested, or end the engagement, if necessary.

RESPONDENTS' RESPONSE TO PETITIONER'S
RENEWED *EX PARTE* MOTION SEEKING LEAVE TO
PROVIDE COMMUNICATION TO CERTAIN
RESPONDENTS – Page 2

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

## II. ARGUMENT

**A.  An Absolute Absence Of Exceptional Circumstances Warranting *Ex Parte* Communications With Represented Parties**

Valve seeks permission to communicate with two separate groups of Respondents: those that have contacted Valve and those that did not meet (or know of) Valve's unilaterally determined floating deadline to respond to Valve's Petition/Motion. Valve has failed to establish exceptional circumstances to warrant any *ex parte* communication to its litigation adversaries under RPC 4.2, cmt. 6.

    **1.  Respondents That Have Contacted Valve**

Valve seeks permission to communicate with "Respondents who have directly contacted Valve." Dkt. 39 at 2. It asserts that Valve is "without fault in creating the crisis that requires *ex parte* relief." *Id*. at 5. This is patently absurd. By any measure, Valve specifically manufactured its alleged "crisis" on an *ex parte* basis to circumvent Respondents' counsel and "bait" direct communications from Respondents.

Prior to Valve's initial *ex parte* contact, every Respondent was a party in an ongoing arbitration against Valve in his or her own home state. Valve not only agreed to this arbitration under its then-existing user agreement but also obtained an order from this Court establishing the arbitration as the proper vehicle for litigating disputes between Valve and all Respondents. *See Wolfire Games LLC et al v. Valve Corporation*, 2:21-cv-00563-JNW (W.D. Wash), Dkts. No. 35 (Valve motion to compel), 66 (Order compelling arbitration).

Then, out of nowhere, Valve unilaterally "superseded" its existing arbitration agreement via an "accept only" pop-up, filed this suit alleging all Respondents had "agreed" to end their pending arbitrations, and caused process servers to deliver a mountain of paperwork summoning

RESPONDENTS' RESPONSE TO PETITIONER'S
RENEWED *EX PARTE* MOTION SEEKING LEAVE TO
PROVIDE COMMUNICATION TO CERTAIN
RESPONDENTS – Page 3

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Respondents to litigation in the very Court that instructed the individuals, at Valve's request, to file their pending arbitrations. *See* Dkts. 27–35.

As the first item of this paper pile, Valve specifically instructed the served Respondents to communicate with Valve's counsel within 21 days or risk a default judgment for the relief requested in the Complaint. Dkt. 11.

Valve did this knowing that the Clerk of the Court would sign, date, and stamp the so-called Complaint, validating Valve's instructions and, by extension, reinforcing the seriousness of the matter to Respondents, many of whom are not familiar with Court procedures (much less understand that the "Petition" being served is not a complaint and instead is supposed to be a motion accompanied by another motion with a free-floating noting date within which they were supposed to file argumentation or also face default). *Cf.* Dkt. 24 (Valve reply to motion to enjoin).

Worse, the legal documents were calculated to undermine each Respondent's existing attorney-client relationship with Mr. Bucher, and much of the first forty-one paragraphs of its Petition are devoted to disparaging Mr. Bucher. *See* Dkt. 1, ¶¶ 1–41. Meanwhile, the purportedly "narrow" legal issue it seeks to adjudicate gets a backseat. *Cf.* Dkt. 37, at 7 (Valve claiming that "it seeks only a legal ruling on a narrow issue," namely which contract controls).

For example, Complaint paragraph two states to Respondents that their counsel "was fired by another law firm, which is now suing him for (among other things) alleged misappropriation, aiding and abetting fraud, and interference with client relationships." *Id.* ¶ 2. It goes on to describe, in sinister terms, Bucher Law's normal-course marketing efforts to inform Steam users of the opportunity to recover against Valve for supracompetitive charges through arbitration. *Id.* Although there's nothing wrong with this routine law firm marketing (and Valve

RESPONDENTS' RESPONSE TO PETITIONER'S
RENEWED *EX PARTE* MOTION SEEKING LEAVE TO
PROVIDE COMMUNICATION TO CERTAIN
RESPONDENTS – Page 4

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

cites no authority whatsoever suggesting it is), the next paragraph of the complaint tells Respondents that they "were merely pawns in this scheme" of Mr. Bucher. *Id.* ¶ 3.

As another component of this "scheme", Valve brings up the deck Mr. Bucher's prior law firm, Zaiger LLC, used to make presentations to potential funders. Even though third-party funding was essential to Bucher Law's business model of paying arbitrator fees *on behalf* of Respondents so that it can represent them on *full contingency* (*i.e.* align its interests fully with Respondents), Valve insinuates this pitch deck reveals an undisclosed scheme by Mr. Bucher to profit at Respondents' expense by using them as "pawns" to "extort a windfall" from Valve. *Id*

Finally, it was only after nine pages of this kind of inflammatory accusations against opposing counsel, that Valve gets to the point: it had changed the respondent's service agreement mid-arbitration for the precise purpose of terminating the arbitrations before they went to a merits hearing, and to do so through *this* action.

Fearful at being sued by one of the biggest corporations in the world, represented by one of the largest law firms in the country, or just plain confused, a tiny minority of Respondents reacted by reaching out directly to Valve's counsel.

This is not surprising. Rather, it is exactly what Valve wanted and instructed them to do. Dkt. 11 at 1 (any answer "must be served on the plaintiff or plaintiff's counsel, whose name and address are: …"). Indeed, what is more remarkable here is the fact that only a handful of the over 600 people that Valve dumped its filing on fell for Valve's trap.[1]

---

[1] "Falsehood *flies*, and truth comes *limping* after it, so that when men come to be undeceived, it is too late; the jest is over, and the tale hath had its effect." Jonathan Swift, *The Examiner No. XIV* (November 9, 1710); *see also* Brandolini's Law https://en.wikipedia.org/wiki/Brandolini%27s_law (last visited December 4, 2024)

RESPONDENTS' RESPONSE TO PETITIONER'S
RENEWED *EX PARTE* MOTION SEEKING LEAVE TO
PROVIDE COMMUNICATION TO CERTAIN
RESPONDENTS – Page 5

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Now, based on these limited and sporadic responses from a handful of Respondents, Valve claims that there is some sort of general crisis that warrants the extraordinary measure of approving additional *ex parte* communications by Valve to these represented parties.

This request to let the fox guard the henhouse is ludicrous. Indeed, many of the cited communications *themselves* show that the Respondents, surprised at being sued and having never been involved in any lawsuits, reached out to Valve's counsel as instructed *simultaneous* to reaching out to contacting Bucher Law—so Valve knew that they are actively communicating with their counsel, but somehow submitted *these* communications as reason for Valve to interpose *its* proposal to these represented parties! Dkt. 40, ¶ 10 (communication sent to **both** Valve and Bucher Law),

Worse, Valve continues to redact the names of these individuals so neither Mr. Bucher nor Bailey Duquette may reach out to identify these Respondents and dispel their confusion. For example, one person has allegedly contacted Corr Cronin (as directed in the summons) because he or she (i) is "not particularly affluent in legal documents" and (ii) would like to be removed from this litigation due to the inability to appear at Corr Cronin's "location in-person." Dkt. 40-1. In other words, Valve has successfully confused this person with its *ex parte* mountain of paperwork and potentially extracted a **dismissal** of his or her arbitration based solely on the misinformation that an in-person appearance in Seattle is required under penalty of default of a legal proceeding.

Tellingly, Valve provides no reason for (i) why it filed redacted versions of its exhibits in violation of the local rules (*see* Local Rules W.D. Wash., LCR 5(g) ("Sealing and Redacting of Court Records")) or (ii) why it would be proper to provide "the Court the relevant contact information under seal to permit the Court to send the message if it desires." Dkt. 39 at 7. Neither

RESPONDENTS' RESPONSE TO PETITIONER'S
RENEWED *EX PARTE* MOTION SEEKING LEAVE TO
PROVIDE COMMUNICATION TO CERTAIN
RESPONDENTS – Page 6

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

the federal nor local rules of procedure support Valve's unprecedented interpretations—and, unsurprisingly, Valve has not cited to any.

Valve's Complaint has already had its desired effect, with many of those contacting Valve counsel stating that they had been convinced by Valve's inflammatory characterizations of Bucher Law. *See e.g.* Dkt. 40-1 ¶ 11 ("I'm so sorry, I'm very confused by this and more than a little worried. . . . I'm a new dad who just signed onto something a long time ago and absolutely do not actually want any of Steam's money, I'm so sorry!"); ¶ 12 (one respondent who has been withdrawn stating to Valve: "the events detailed within came as a great shock to me -- at this point in time, I no longer have any interest in further association with Bucher Law, or in pursuing a claim against Valve Corporation"); ¶ 13 ("I will gladly release and cease any claim brought by me or on my behalf in this matter (case) if I can be removed as a Defendant in this case and released from any and all judgements for relief and liability that may result from a settlement or verdict in this case.") Valve had an opportunity to communicate *ex parte* with Respondents, and this was the result. Valve's entirely inappropriate *ex parte* communication should end.[2]

In sum, no extraordinary circumstances exist to authorize Valve to further communicate with any Respondent. The Court should deny the request and further order Valve to immediately turn over these Respondents' contact information to undersigned counsel.

**2. Respondents That Have Missed Valve's Floating "Deadline"**

Regarding Respondents that "have missed their response deadline," Valve has failed to properly set or communicate a response deadline to the Court, much less the parties that are

---

[2] If the Court has any concern regarding Mr. Bucher's communications with his clients thus far, Mr. Bucher is absolutely confident that his communications have been appropriate, and stands ready to detail these communications for the Court's *ex parte* review if so requested.

RESPONDENTS' RESPONSE TO PETITIONER'S
RENEWED *EX PARTE* MOTION SEEKING LEAVE TO
PROVIDE COMMUNICATION TO CERTAIN
RESPONDENTS – Page 7

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

allegedly required to respond. Indeed, the Court has stayed the initial response deadlines pending resolution of numerous preliminary issues caused by Valve's procedural shenanigans. Dkt. 46 at 4. Under these facts, Valve has failed to establish that exceptional circumstances exist to contact these Respondents for any reason, let alone to misinform them that they have missed a fictitious deadline set by Valve on an *ex parte* basis.

**B.    Appropriate Communications**

Even if the Court were to find that exceptional circumstances warrant some Court-approved communication to Respondents, Valve's proposal to tell Respondents that they can get out of this Valve-created mess simply by dismissing their pending arbitrations against Valve is entirely inappropriate. But even before getting to its impermissible substance, Valve's communication raises numerous unanswerable procedural questions.

For example, Valve fails to explain the procedure altogether. How long will Valve wait for a response? Will there be a settlement agreement? Will failing to settle result in default? Will it constitute a double-default if a respondent fails to reply to Valve's settlement offer and Valve's petition? How will Valve respond if recipients have questions? How will there be safeguards against Valve giving more self-serving advice to its represented litigation adversaries? Valve has no answers to these questions and simply expects the Court to get lost in Valve's machinations to enjoin proceedings it previously asked this Court to compel.

Substantively, the first message Valve and its attorneys should be ordered to make is an apology to Respondents. They should apologize for manufacturing a complicated procedural nightmare on hundreds of its customers. From first compelling, and then participating in, the arbitrations against Respondents to now directly informing Respondents that they are mere

RESPONDENTS' RESPONSE TO PETITIONER'S
RENEWED *EX PARTE* MOTION SEEKING LEAVE TO
PROVIDE COMMUNICATION TO CERTAIN
RESPONDENTS – Page 8

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

"pawns" in their arbitration counsel's scheme to "extort", Respondents have weathered unnecessary procedural shenanigans in simply bringing a claim against an alleged monopoly.

Valve's conduct should be admonished for the travesty it has been. *See T-Mobile USA Inc.*, 2024 WL 3510937, at * 6 ("the Court disapproves of T-Mobile directly asking Grant to retroactively waive her right to trial in a case that had already been filed, rather than making the request through her counsel. This is a poor (if not unethical) practice and should not continue.") (citing ABA Comm. on Ethics & Pro. Resp., Formal Op. 11-461 at 4–5 (Aug. 4, 2011) (while attorneys may "give substantial assistance to a client regarding a substantive communication with a represented adversary," they have an ethical obligation to ensure that the communication does "overreach" into an improper contact with a represented party); *Wilcox v. Valero Ref. Co.*, 256 F. Supp. 2d 687, 691–92 (S.D. Tex. 2003) ("allowing [d]efendant to usurp [p]laintiff's claims, and bind [them] to its dispute resolution program after [they] had essentially initiated his lawsuit … , is fundamentally and manifestly unfair, and contrary to public policy.")

Finally, the one authority Valve cites in support of its position involved counsel that refused to convey a settlement offer in the proposed notice to a recently certified class. *Sullivan v. Saint-Gobain Performance Plastics Corp.*, 2020 WL 9762421, at *7 (D. Vt. Nov. 4, 2020) (granting motion for court approved communication and ordering that "defendant shall submit proposed language for inclusion in the class notice concerning its [proposed settlement offer] within 15 days"). Here, Valve admits that Mr. Bucher is willing to and has communicated Valve's settlement offer to his clients. Dkt. 39 at 3 n.3. Thus, there is absolutely no reason for this Court to intervene and approve the extraordinary relief of conflicted communication to represented parties.

RESPONDENTS' RESPONSE TO PETITIONER'S
RENEWED *EX PARTE* MOTION SEEKING LEAVE TO
PROVIDE COMMUNICATION TO CERTAIN
RESPONDENTS – Page 9

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Valve's *ex parte* antics have caused enough chaos, and it's time to stop the shenanigans, rather than encourage additional litigation novelties. *See* Dkt. 46 at 3 ("In its rush for relief, Valve has created a procedural minefield that Respondents and the Court must now navigate.")

### III. CONCLUSION

For the above reasons, Respondents respectfully request that the Court deny Valve's Motion and order any such remedial or admonishment relief as it deems necessary.

DATED this 9th day of December, 2024.

>  BAILEY DUQUETTE P.C.
>
> By: */s William R. Burnside*
> William R. Burnside, WSBA #36002
> 800 Fifth Ave, Suite 101-800
> Seattle, Washington 98104
> T: 206.353.8021
> E: will@baileyduquette.com
>
> **BUCHER LAW PLLC**
>
> By: /s/ Will Bucher
>
> William Ward Bucher IV
> (*pro hac vice admitted*)
> 350 Northern Blvd
> STE 324 -1519
> Albany, NY 12204-1000
> 202-997-3029
> will@bucherlawfirm.com
>
> *Attorneys for Respondent*

*I certify that this response contains less than 4,200 words pursuant to Local Rules W.D. Wash. LCR 7(e)(2).*

RESPONDENTS' RESPONSE TO PETITIONER'S RENEWED *EX PARTE* MOTION SEEKING LEAVE TO PROVIDE COMMUNICATION TO CERTAIN RESPONDENTS – Page 10

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I caused a true and correct copy of the foregoing RESPONDENT'S RESPONSE TO PETITIONER'S RENEWED *EX PARTE* MOTION SEEKING LEAVE TO PROVIDE COMMUNICATION TO CERTAIN RESPONDENTS served upon counsel of record herein, as follows:

| | |
|---|---|
| Blake Marks-Dias, WSBA No. 28169<br>1015 Second Avenue, Floor 10<br>Seattle, Washington 98104<br>(206) 625-8600 Phone<br>(206) 625-0900 Fax<br>E: bmarksdias@corrcronin.com | ☒ Via Electronic Service |

Michael W. McTigue Jr., *Admitted Pro Hac Vice*
Meredith C. Slawe, *Admitted Pro Hac Vice*
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
E: michael.mctigue@skadden.com
E: meredith.slawe@skadden.com

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Dated: December 9, 2024 at Seattle, Washington.

                                           *s/ William R. Burnside*
                                           William Burnside, WSBA No. 36002

RESPONDENTS' RESPONSE TO PETITIONER'S RENEWED *EX PARTE* MOTION SEEKING LEAVE TO PROVIDE COMMUNICATION TO CERTAIN RESPONDENTS – Page 11

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869