UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VALVE CORPORATION, | CASE NO. 2:24-cv-1717-JNW |
| Plaintiff, | ORDER |
| v. | |
| THOMAS ABBRUZZESE et al., | |
| Respondents. | |

## 1. INTRODUCTION

On May 14, 2025, the Court ordered the Parties to submit supplemental briefing on subject-matter jurisdiction and various procedural problems that impeded progress in this matter. Dkt. No. 58 at 7. Having reviewed the supplemental briefing, the record, and the relevant law, the Court finds that it has subject-matter jurisdiction but also that Valve improperly filed a petition to enjoin arbitration rather than a civil complaint to initiate this case. The Court will not re-construe Valve's petition as a complaint to save it, especially where Valve continues to characterize its filing as a petition. Accordingly, the Court dismisses the petition. If Valve wishes to pursue this matter, it must file a civil complaint within 21 days.

ORDER - 1

## 2. BACKGROUND

Valve Corporation operates Steam, a digital video game distribution platform. This case arises from ongoing consumer antitrust litigation challenging Valve's business practices on the Steam platform. In 2021, video game developers and consumers filed in *In re Valve Antitrust Litigation*, Case No. 2:21-cv-00563 (W.D. Wash.), a consolidated class action alleging antitrust violations related to Valve's Steam platform. When Valve moved to compel arbitration of the consumer claims in that action, the Honorable John C. Coughenour ordered arbitration under Valve's then-existing Steam Subscriber Agreement ("Original SSA"). The Original SSA contained a mandatory arbitration provision with a class action waiver, requiring individual arbitration before the American Arbitration Association for disputes between Valve and Steam users.

Following the court's order, consumers pursued individual arbitrations under the Original SSA. During these proceedings, at least one arbitrator determined that the arbitration provision in the Original SSA was unenforceable. Valve subsequently amended its Steam Subscriber Agreement to eliminate the mandatory arbitration provision, replacing it with a mandatory litigation clause requiring all disputes to be resolved in court rather than arbitration ("Amended SSA").

Despite the Amended SSA, 624 individual Steam users ("Respondents") have continued pursuing arbitration claims against Valve. These arbitrations, coordinated by Bucher Law PLLC, assert antitrust claims like those in the underlying class action. Valve alleges that all Respondents have agreed to the Amended SSA, which requires that all disputes, including pending ones, must

ORDER - 2

proceed in court rather than arbitration. Dkt. 2 at 7. Respondents, however, maintain that their arbitrations should proceed under the Original SSA.

On October 18, 2024, Valve filed a Petition to Enjoin Arbitrations against Respondents. Dkt. 1. The Petition seeks to enjoin the ongoing arbitrations in light of the Amended SSA, arguing there is no valid agreement to arbitrate under the current terms. Valve invokes jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201, the All Writs Act, 28 U.S.C. § 1651(a), and Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4. *See* Dkt. No. 1. At the time, the Court construed Valve's Petition as a complaint, with the accompanying Memorandum as a separate motion seeking injunctive relief. Dkt. No. 2.

Representation remains fragmented. Bailey Duquette P.C. has formally appeared for several Respondents: Luke Ninemire, Seth Weber, and Griffin Byer, Greg Fish, Jeremy Lucas, Christian Graber, Cody Stewart, Ethan Lefebvre, and Tyler Kemp Dkt. Nos. 15, 18, 19; 60–61; 71–74. William Bucher of Bucher Law PLLC filed a pro hac vice motion seeking to appear on behalf of unspecified "Respondents," stating that he "currently represent[s] all but one of the named Respondents in concurrent arbitrations, which are the subject matter of this proceeding." Dkt. 17 at 1. But neither counsel has formally appeared for the remaining Respondents in this action. Valve has served many, if not all, Respondents.

The Court noted that Valve's "tactical decision to name 624 individual respondents would have created a tricky procedural path for the early stages of this

ORDER - 3

case, but Valve's filing and refiling of motions, renoting the petition, piecemeal withdrawals, and service issues have created needless complications." Dkt. 46 at 3.

On May 14, 2025, the Court ordered supplemental briefing to address several critical issues: subject-matter jurisdiction; the Court's statutory authority to enjoin arbitrations, including any alleged authority to do so under Section 4 of the Federal Arbitration Act (FAA); and whether the Court should construe Valve's petition as a complaint. Dkt. No. 58 at 7. In a Status Report, Bailey Duquette stated that it "intends to appear on behalf of class representatives who can defend this action on a class basis" but "has not done so yet because the appropriate defense posture will vary based on whether this action is treated as a complaint or a petition." Dkt. No. 49 at 1.

### 3. DISCUSSION

### 3.1   The Court has subject-matter jurisdiction.

Federal courts have "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). After reviewing the parties' arguments and applying the established framework for declaratory judgment jurisdiction, the Court concludes that it has federal-question subject-matter jurisdiction under 28 U.S.C. § 1331.

"The Declaratory Judgment Act does not 'extend' the 'jurisdiction' of the federal courts." *Medtronic Inc., v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 197 (2014) (quoting *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)).

"[W]hen determining declaratory judgment jurisdiction," federal district courts "look to the 'character of the threatened action'" to decide whether it presents a federal question. *Id.* (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 248 (1952)). Specifically, courts ask whether "a coercive action brought by the declaratory judgment defendant would necessarily present a federal question." *Id.* (citation modified). The "threatened action" is any "coercive action" that 'the declaratory judgment defendant . . . *could have brought* . . . in federal court to enforce its rights" against the declaratory judgment plaintiff. *Morgan Stanley & Co., LLC v. Couch*, 134 F. Supp. 3d 1215, 1221 (C.D. Cal. 2015) *aff'd*, 659 F. App'x 402 (9th Cir. 2016) (quoting *Levin Metals Corp. v. Parr-Richmond Terminal Co.*, 799 F.2d 1312, 1315 (9th Cir. 1986)).

In other words, "courts must pretend that the [declaratory judgment defendant] filed a coercive action—one seeking damages or injunctive relief. If the hypothetical coercive complaint would arise under federal law, then the declaratory judgment action arises under federal law. But if the hypothetical coercive complaint lacks federal question jurisdiction, then the declaratory action must be dismissed." Donald L. Doernberg, The Trojan Horse: How the Declaratory Judgment Act Created A Cause of Action and Expanded Federal Jurisdiction While the Supreme Court Wasn't Looking, 36 UCLA L. Rev. 529, 544 (1989) (citing *Skelly Oil Co.*, 339 U.S. 667); *see Medtronic, Inc.*, 571 U.S. at 197; *Levin Metals Corp.*, 799 F.2d at 1315 (When a plaintiff seeking declaratory relief "asserts a claim that is in the nature of a defense to a threatened or pending action, the character of the threatened or

ORDER - 5

pending action determines whether federal question jurisdiction exists with regard to the declaratory judgment action.").

The potential "threatened action" here is clear—if Valve acted on its belief that it need not continue arbitrating Respondents' claims, Respondents could seek to compel arbitration under Section 4 of the FAA. 9 U.S.C. § 4; *see Morgan Stanley & Co., LLC*, 134 F. Supp. 3d at 1223 (explaining that the "potential coercive action [the declaratory judgment defendant] could bring that would provide th[e] Court with jurisdiction [was] a motion under 9 U.S.C. § 4 to compel [the declaratory judgment plaintiff's] participation in the FINRA arbitration"). The Court must therefore determine whether it would have subject-matter jurisdiction over such a hypothetical motion to compel arbitration.

Like the Declaratory Judgment Act, the FAA is not an independent source of federal-question jurisdiction. *Morgan Stanley & Co., LLC*, 134 F. Supp. 3d at 1223. "Rather, the [FAA] allows a federal court to compel arbitration . . . only if the underlying suit properly invokes federal jurisdiction." *Id.* (quoting *Ameriprise Fin. Servs. Inc. v. Ekweani*, Case No. cv–14–00935, 2015 WL 1737417, at *3 (D. Ariz. Apr. 16, 2015) (citing *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009))).

The "underlying substantive controversy" here consists of Respondents' arbitration claims against Valve. These arbitrations assert federal antitrust claims under the Sherman Act, 15 U.S.C. §§ 1, 2—the same claims that form the basis of the underlying class action, *In re Valve Antitrust Litigation*, Case No. 2:21-cv-00563 (W.D. Wash.). Because this Court would have federal-question jurisdiction over those underlying federal antitrust claims under 28 U.S.C. § 1331, it also has federal-

question jurisdiction over Respondents' hypothetical motion to compel arbitration of those claims. And having established that the Court would have jurisdiction over the hypothetical threatened action (i.e., a motion to compel arbitration of federal antitrust claims), it follows that the Court also has federal-question jurisdiction to hear Valve's declaratory judgment claim. *See Ameriprise Fin. Servs. Inc. v. Ekweani*, 683 F. App'x 641, 642 (9th Cir. 2017) (district court had subject matter jurisdiction over declaratory judgment action because the "underlying substantive controversy involved arbitration of Title VII and 42 U.S.C. § 1981 claims").

Respondents cite persuasive authority cautioning courts against intervening in ongoing arbitration. Dkt. No. 65 at 10–11 (citing *In re Sussex*, 781 F.3d 1065, 1072 (9th Cir. 2015) (granting writ of mandamus, finding the district court committed clear error by intervening in an ongoing arbitration to disqualify arbitrator); *Blue Cross Blue Shield of Mass, Inc. v. BCS Ins. Co.*, 671 F.3d 635, 638 (7th Cir. 2011); *Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co.*, 748 F.3d 708, 717–18 (6th Cir. 2014)). While the Ninth Circuit has not "issu[ed] a blanket rule precluding intervention in an ongoing arbitration," it has "come quite close." *In re Sussex*, 781 F.3d at 1073. The Ninth Circuit has clarified that "the district court has the authority to determine whether there is a valid arbitration agreement between the parties, and if so, whether the current dispute is within its scope." *Id.* at 1071. But whether the Court should exercise that authority is separate from whether the Court has jurisdiction to do so. *See Arbaugh*, 546 U.S. at 514.

Accordingly, the Court concludes that it has federal-question subject-matter jurisdiction over this action.

**3.2    The Court will not rehabilitate Valve's improperly filed petition.**

Under Rule 3 of the Federal Rules of Civil Procedure, "[a] civil action is commenced by filing a complaint with the court." Fed. R. Civ. P. 3. The Federal Rules apply to proceedings under the FAA "except to the extent that the [FAA] provides other procedures." Fed. R. Civ. P. 81(a)(6)(B); *see also Voltage Pictures, LLC v. Gussi, S.A. de C.V.*, 92 F.4th 815, 825–26 (9th Cir.), *cert. denied*, 145 S. Ct. 158 (2024). This exception is narrow, so the Court must determine whether the FAA actually provides an alternative procedure for the relief Valve seeks.

Valve maintains that Section 4 of the FAA permits it to initiate a civil case by filing a petition to enjoin arbitrations rather than a complaint. But the Ninth Circuit has held that Section 4 is "narrowly tailored" and "embraces only actions to compel arbitration." *Textile Unlimited, Inc. v. A..BMH & Co., Inc.*, 240 F.3d 781, 785 (9th Cir. 2001) (citing 9 U.S.C. § 4); *see* 17 Moore's Federal Practice - Civil § 110.48 (2025) ("Section 4 applies only to motions to compel, not actions to enjoin arbitration."). The statute's text supports this interpretation: Section 4 allows a party to "petition" a court "for an order directing that such arbitration proceed[.]" 9 U.S.C. § 4. Neither Section 4's text nor the Ninth Circuit's interpretation extends to actions seeking to *stop* arbitration.

Valve overemphasizes the wrong aspects of *Textile Unlimited* while ignoring the decision's clear holding. Valve argues that the decision supports its position because "nowhere did the court foreclose a petition under section 4 of the FAA as a vehicle to enjoin an arbitration." Dkt. No. 59 at 13. This logic is backwards. When the Ninth Circuit stated that Section 4 "*only* embraces actions to compel

arbitration," it was making an exclusion, not remaining silent about other possibilities. *Id.* at 785 (emphasis added). The word "only" is by its very definition exclusionary, and its use in this context means Section 4 is limited to compelling arbitration and nothing else.

Moreover, *Textile Unlimited* actually shows the correct procedural path for seeking to enjoin arbitration. There, the plaintiff filed a complaint under general federal jurisdiction and venue rules, not a Section 4 petition. *Id.* at 784. The Ninth Circuit specifically noted that "injunction actions . . . are properly considered under general venue provisions" rather than the FAA's specialized procedures. *Id.* at 785. The court then affirmed the district court's injunction against arbitration—but only because the plaintiff had followed proper complaint procedures. *Textile Unlimited* thus confirms that while courts may have authority to enjoin arbitrations in appropriate circumstances, that authority must be invoked through standard civil procedures, not through the FAA's petition process.

Some district courts in New York seem to allow litigants to file Section 4 petitions to enjoin arbitrations in place of complaints, *see, e.g.*, *Kwatinetz v. Mason*, 356 F. Supp. 3d 343 (S.D.N.Y. 2018), but this practice goes against Ninth Circuit precedent*, see Textile Unlimited Inc.*, 240 F.3d at 785, and even if petitions to enjoin arbitration were generally proper in this circuit, Valve has cited no authority supporting its decision to file a single petition to enjoin over 600 separate arbitrations.

ORDER - 9

Harmonizing Section 4 of the FAA and the Federal Rules of Civil Procedure, as required by Fed. R. Civ. P. 81(a)(6)(B), supports the conclusion that Valve's petition is procedurally improper. Because Section 4 addresses only motions to compel arbitration, *see Textile Unlimited, Inc.*, 240 F.3d at 785, it does not "provide[] other procedures" for enjoining arbitration, Fed. R. Civ. P. 81(a)(6)(B). Actions to enjoin arbitration must therefore comply with the general requirement that civil actions be commenced by filing a complaint. Fed. R. Civ. P. 3.

The Court will not cure Valve's procedural misstep by continuing to construe the petition as a complaint. As Respondents observed, "it's not the court's job to turn a failed petition into a competent complaint." Dkt. No. 65 at 14. Courts must apply procedural rules consistently, particularly where the movant continues to characterize its filing as a petition and where the case's complexity already presents significant procedural challenges.

Thus, if Valve wishes to pursue this matter, it must file a proper complaint in accordance with the Federal Rules. The Court expresses no view on whether Valve may ultimately maintain an action to enjoin the ongoing arbitrations—that substantive question, if properly presented through a civil complaint, is better addressed through a motion to dismiss or other dispositive motion after full briefing on the merits.

### 4. CONCLUSION

Accordingly, the Court STRIKES Valve's Petition as improperly filed. Dkt. No. 1; Fed. R. Civ. P. 12(f). Valve may file a civil complaint to replace its

petition within 21 days of the date of this Order. If Valve fails to do so, the Court will dismiss this action without prejudice. The Court FURTHER ORDERS that the pending motions in this matter are DENIED AS MOOT. Dkt. Nos. 2; 20; 22; 36; and 39.

The Court regrets its delay in resolving these important jurisdictional and procedural questions.

Dated this 1st day of August, 2025.

Jamal N. Whitehead
United States District Judge