1                                                    HONORABLE JAMAL N. WHITEHEAD

2

3

4

5

6

7

8

9

10
                          UNITED STATES DISTRICT COURT
11                       WESTERN DISTRICT OF WASHINGTON
                                  AT SEATTLE
12
VALVE CORPORATION,
13                                          Case No.  2:24-cv-1717-JNW
              Plaintiff,
14        v.                                DEFENDANTS' RESPONSE IN OPPOSITION TO
15 THOMAS ABBRUZZESE, *et al*.,             PLAINTIFF'S MOTION FOR A PRELIMINARY
                                            INJUNCTION
16            Defendants.
                                            NOTED ON MOTION CALENDAR:
17                                          October 3, 2025

18

19        Defendants (hereinafter, "**PC Gamers**"), through undersigned counsel,

20 hereby respond to Petitioner Valve Corporation's ("**Valve**") motion for preliminary

21 injunction. Dkt. 79.

22

23

24

25

26

DEFENDANTS' RESPONSE IN OPPOSITION TO            BAILEY DUQUETTE P.C.
PLAINTIFF'S MOTION FOR A PRELIMINARY             800 FIFTH AVENUE, SUITE 101-800
INJUNCTION– Page i                               SEATTLE, WASHINGTON 98104
                                                 T 206.353.8021 | F 888.233.5869

TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................... 1

II. FACTS ................................................................................................................ 3

   A. The Supreme Court Green-Lights Corporate Escape From Consumer Class Remedies— and Valve Embraces Arbitration ..................................................................3

   B. Valve's Midstream Reversal—Having Written the Rules, It Now Runs From Them ......6

   C. Having Lost Before Arbitrators and With Its Petition Struck, Valve Returns to Court Seeking Extraordinary Relief on Meritless Grounds ....................................................11

III. LEGAL STANDARD ......................................................................................... 13

IV. ARGUMENT ...................................................................................................... 14

   A. Valve Has No Chance of Succeeding on the Merits—Let Alone Clearly or Likely .......14

     1. Arbitrators, This Court, and the Ninth Circuit Have Already Spoken—Valve Must Overturn Them All .......................................................................................................15

     2. Washington Law Forecloses Valve's Mid-Arbitration Rewrite ...............................16

       a. Valve's "Cancel-or-Lose-Everything" Tactics Show Procedural Unconscionability ....................16

       b. Valve's One-Sided Limitations Trap Is Substantively Unconscionable .........................17

       c. Any Doubt in Washington Consumer Contract Law Bars Equitable Relief ......................18

       d. The Restatement of Consumer Contracts Bars Valve's Midstream Update ......................19

       e. Washington Law Leaves Valve with Zero Chance on the Merits ..............................20

     3. Jurisdiction Fails, Equity Prevails—Valve's Injunction Collapses Under Federal Law .............20

       a. Article III Has Its Limits—and Federal Courts Don't Do Hypotheticals .......................21

       b. Equity Blocks Valve's Reversal .............................................................24

     4. Valve Must Confront—Not Ignore—the Arbitrators' Rulings ...............................28

     5. Valve Relies on Straw Men, Not Binding Precedent ......................................29

       a. *Coinbase* Can't Carry Valve's Water ...................................................29

       b. Valve's Out-of-Forum Cases Don't Bind and Don't Persuade ................................31

     6. Meritless Claims Merit No Injunction ...................................................32

   B. Valve Cannot Show Irreparable Harm—Let Alone Extreme or Non-Financial Harm ...32

     1. Adequate Remedies at Law Exist, and Valve Has Invoked Them .............................33

     2. Valve Cannot Show Irreparable Harm Even Under a Relaxed *Winter* Analysis ......................33

1
2

C.  The Balance of Equities Tilts Sharply Against Valve—Equity Does Not Rescue
    Opportunists ........................................................................................................35

D.  The Public Interest Favors Enforcing Arbitration Agreements—Not Rewriting Them
    Midstream............................................................................................................38

E.  Adequate Security: The Price of Valve's Extraordinary Injunction.............................41

V. Conclusion ...........................................................................................................42

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

TABLE OF AUTHORITIES

**Cases**

*Adler v. Fred Lind Manor*, 153 Wn.2d 331, 344, 103 P.3d 773 (2004) ..............................17, 18

*Anderson v. United States*, 612 F.2d 1112, 1114–15 (9th Cir. 1979) ..................................... 13

*Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009) ..................................................... 25

*AT&T Mobility v. Concepcion*, 563 U.S. 333 (2011) .....................................................3, 35, 39

*Badgerow v. Walters*, 596 U.S. 1, 11 (2022) .............................................................1, 21, 40

*BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*,
    912 F.3d 1054, 1057 (7th Cir. 2019) ................................................................... 41

*Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07 & n.8 (1959)..........................32, 33

*Berg v. Hudesman*, 115 Wn.2d 657, 668, 801 P.2d 222, 229 (1990)................................... 19

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) ........................... 19

*Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ................................................. 23

*Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024).................................................... passim

*Cole-Tindall v. City of Burien*, 768 F. Supp. 3d 1178, 1182 (W.D. Wash. 2024) ................... 23

*Cornell v. Desert Fin. Credit Union*, 254 Ariz. 477, 483, 524 P.3d 1133, 1139 (2023).......... 19

*Cornell v. Desert Fin. Credit Union*, No. CV-21-00835-PHX-DWL, 2022 WL 742724, at *4
    (D. Ariz. Mar. 11, 2022), *certified question answered*, 254 Ariz. 477, 524 P.3d 1133 (2023)
    ............................................................................................................... 18

*Dasher v. RBC Bank (USA)*, 745 F.3d 1111 (11th Cir. 2014) ............................................... 31

*Dependable Hwy. Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059 (2007)........................... 34

*Diaz v. Kubler Corp.*, 785 F.3d 1326, 1329 (9th Cir. 2015)............................................... 19

*Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 932 (9th Cir. 2013)............................ 39

*Ficek v. S. Pac. Co.*, 338 F.2d 655 (9th Cir. 1964), *cert. denied*, 380 U.S. 988 (1965)........... 30

*Fortune, Alsweet & Eldridge, Inc. v. Daniel*, 724 F.2d 1355, 1357 (9th Cir. 1983)............... 30

*FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) ................................................ 33

*G.G. v. Valve Corp.*, 799 F. App'x 557, 558 (9th Cir. 2020) ......................................4, 15, 38

*Gandee v. LDL Freedom Enters.*, 176 Wn.2d 598, 603 (2013)........................................17, 18

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION– Page iv

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

*Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 735 (9th Cir. 2014)............................ 14

*Hardgrove v. Bowman*, 10 Wn.2d 136, 138, 116 P.2d 336, 337 (1941) .................................. 27

*Horizon Air Indus., Inc. v. Airline Prof'ls Assoc.*, No. 2:13-CV-681 RSM, 2014 WL 2896001, at *4 (W.D. Wash. June 25, 2014)....................................................................................... 28

*In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 140 (2d Cir. 2011)............................ 21

*In re Kirkland*, 915 F.2d 1236, 1238 (9th Cir. 1990) ............................................................. 19

*Ingram Micro Inc. v. Signeo Int'l, Ltd.*, 2014 WL 3721197 (C.D. Cal. July 22, 2014)........... 31

*Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013)..................................... 25

*Levin Metals Corp. v. Parr-Richmond Terminal Co.*, 799 F.2d 1312, 1315 (9th Cir. 1986) ... 22

*Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012)....................................... 39

*Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016)......................................................... 24

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985)................... 40

*Moore v. Maricopa Cty. Sheriff's Office*, 657 F.3d 890, 894 (9th Cir. 2011) ......................... 21

*Morgan Keegan & Co. v. McPoland*, 829 F. Supp. 2d 1031, 1036 (W.D. Wash. 2011)......... 36

*Morgan Stanley & Co., LLC v. Couch*, 134 F. Supp. 3d 1215, 1233 (E.D. Cal. 2015), *aff'd*, 659 F. App'x 402 (9th Cir. 2016)................................................................................. 22

*Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) ............................................................ 24

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ..........38, 39

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021) ................ 19

*Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042 (9th Cir. 2009) ......................................... 25

*Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013) ............................................. 25

*New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).............................................................. 27

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) ................................... 16

*O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087, 1093 (9th Cir. 2018) .................................... 39

*Oppenheimer & Co. Inc. v. Mitchell*, No. C23-67 MJP, 2023 WL 2428404, at *1 (W.D. Wash. Mar. 9, 2023)...............................................................................................34, 36, 39

*Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013)........................... 8

*Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978) ................................. 21

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION– Page v

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

*Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 573 (2013) ................................................ 2

*Pilon v. Discovery Commcn's, LLC,* 769 F. Supp. 3d 273, 286 (S.D.N.Y. 2025) .................. 31

*Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974) ................................. 33

*Sampson v. Murray*, 415 U.S. 61, 90 (1974) ......................................................................... 33

*Saunders v. Lloyd's of London*, 113 Wn.2d 330, 336, 779 P.2d 249, 252 (1989) .................. 26

*Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ......................................................................... 22

*Societe Generale de Surveillance, S.A. v. Raytheon Eur. Mgmt. & Sys. Co.*, 643 F.2d 863, 868 (1st Cir. 1981)............................................................................................................... 21

*Stanley v. USC*, 13 F.3d 1313, 1320 (9th Cir. 1994) ...................................................... *passim*

*Starkgraf v. White*, No. 3:23-cv-05593-RJB-MLP, 2024 WL 2925013, at *1 (W.D. Wash. May 10, 2024) ....................................................................................................... 1, 13

*Tadych v. Noble Ridge Constr., Inc.*, 200 Wn.2d 635, 645–46, 519 P.3d 199 (2022) ........17, 18

*Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)........................... 13

*Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138–39 (9th Cir. 2000)......... 23

*Valve Corp. v. Bucher L. PLLC*, 571 P.3d 312, 321 (Wash. Ct. App. 2025) .......................... 37

*Wal-Mart v. Dukes*, 564 U.S. 338 (2011) ............................................................................... 3

*Washington State Hop Producers, Inc., Liquidation Tr. v. Goschie Farms, Inc.*, 112 Wn.2d 694, 701, 773 P.2d 70, 74 (1989) ................................................................................. 19

*Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1221 (9th Cir. 2019) ............................................... 18

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ........................................ *passim*

*Wolfire Games, LLC v. Valve Corp.*, 2021 WL 4952220 (W.D. Wash. Oct. 25, 2021) ... *passim*

*Zoller v. GCA Advisors, LLC*, 993 F.3d 1198, 1201 (9th Cir. 2021) ...................................... 39

*Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 304–05 (2004) ................................16, 39

## Other Authorities

Restatement of Consumer Contracts § 3.................................................................................. 19

Catherine Fisk & Erwin Chemerinsky, *The Failing Faith in Class Actions: Wal-Mart v. Dukes and AT&T Mobility v. Concepcion*, 7 Duke J. Const. L. & Pub. Pol'y 73 (2011)................. 3

## Rules

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION– Page vi

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Fed. R. Civ. P. 20 ........................................................................................ 11

Fed. R. Civ. P. 65 ........................................................................................ 41

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION– Page vii

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

# I. INTRODUCTION

Valve asks for the extraordinary: a mandatory preliminary injunction that would upend, not preserve, the status quo. That is the exception's exception, reserved for the rare case where the facts and the law so clearly favor the movant that extraordinary relief is unavoidable. *Stanley v. USC*, 13 F.3d 1313, 1320 (9th Cir. 1994); *Starkgraf v. White*, No. 3:23-cv-05593-RJB-MLP, 2024 WL 2925013, at *1 (W.D. Wash. May 10, 2024). Nothing in this record comes close. Valve presses forward only by turning a blind eye to the rulings already against it. Multiple arbitrators, two orders from this Court, and one opinion from the Ninth Circuit all agree that PC Gamers' antitrust claims must proceed in arbitration under the contract Valve wrote and enforced for years.

Blinded by willful ignorance to previous decisions, Valve now asks this Court to rewrite both statute and contract. But courts "have no warrant to redline the FAA." *Badgerow v. Walters*, 596 U.S. 1, 11 (2022). Section 4 of the Federal Arbitration Act ("FAA") authorizes courts to compel participation in arbitration and to confirm or vacate awards. It does not empower courts to enjoin private arbitrations already underway. The Declaratory Judgment Act ("DJA") fares no better: it resolves concrete disputes and does not license advisory opinions so a monopolist can preview the law before choosing its next move. Valve is not asking the Court to apply the law; it's asking the Court to stretch it—beyond the statutes Congress enacted to rescue a litigant from its own private contracts.

On the merits, Washington law bars one-sided, midstream modifications of forum selection clauses. It treats them as both procedurally and substantively unconscionable. The Restatement of Consumer Contracts agrees: no unilateral modification is valid without (1) a no-punishment opt out and (2) good faith. Valve offered neither of these. Instead, it forced consumers to choose between their antitrust claims and their previous purchases—exactly the kind of coercion the Restatement condemns as illusory and unconscionable.

The larger picture is unmistakable: Valve drafted the contract mandating arbitration, compelled consumers into that forum, litigated there for years, and benefited—until it unilaterally decided it preferred court. Driven by regret, it now seeks a wholesale do-over—suing 572 improperly joined individuals and demanding the class-wide relief it shunned for over a decade. "Poetic justice," Judge Alsup called it—forcing a powerful corporation to honor the very arbitration clause it wrote to shield itself from the class actions it feared. *See* Exhibit A. That same justice applies here. Neither equity nor law gives Valve a do-over. Valve "chose arbitration, and it must now live with that choice." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 573 (2013).

After all the twists and turns, the ending is simple: Valve cannot meet its burden on any element required for extraordinary relief. It has no chance of success on the merits, no showing of irreparable non-financial harm, and the equities and public interest both favor finishing the arbitrations it compelled. The Court should

deny Valve's motion and let the PC Gamers obtain the justice Valve has delayed for years.

## II. FACTS

For years Valve built and defended a system of individual arbitrations, compelling consumers to resort to arbitration and shaping the forum to its liking. Only when Valve unilaterally decided it preferred courts to arbitrations did Valve reverse course and return to court requesting the arbitrations stop immediately. The record that follows shows, step by step, how Valve designed the rules it now seeks to escape.

**A.    The Supreme Court Green-Lights Corporate Escape From Consumer Class Remedies—and Valve Embraces Arbitration**

Over the last decade, the Supreme Court has steadily narrowed consumers' collective remedies. In *Wal-Mart v. Dukes*, 564 U.S. 338 (2011) and *AT&T Mobility v. Concepcion*, 563 U.S. 333 (2011), the Court made it harder to certify class actions and easier for corporations to force consumers into individual arbitration. *See* Catherine Fisk & Erwin Chemerinsky, *The Failing Faith in Class Actions: Wal-Mart v. Dukes and AT&T Mobility v. Concepcion*, 7 Duke J. Const. L. & Pub. Pol'y 73 (2011) (attached as Exhibit B). The message was clear: companies could insulate themselves from collective accountability by embedding arbitration clauses and reserving unilateral power to update them. This shift gave firms like Valve a powerful incentive to impose one-on-one remedies while still reaping the efficiencies of mass contracting. *See id.*

In direct response to this legal landscape, Valve revised its user contract in 2012. Dkt. 78, Complaint ¶ 58, Exh. 4 (hereinafter, the "Valid Contract"). That contract mandated arbitration of all disputes and included a delegation clause that survived termination—locking Valve into individual proceedings in return for what Valve hoped was a shield from class actions. Valve openly boasts that, in the five years before this case, only two disputes ever reached arbitration under its agreements—proof of how effectively the Valid Contract deterred individual claims against it. Compl. at 21, n.23. For years Valve enjoyed the advantages: a private forum, corporate-friendly rules, and dramatically reduced exposure.

In fact, when PC Gamers filed an antitrust class action in this Court, Valve successfully asked this Court to compel arbitration, arguing the Valid Contract required all issues—including arbitrability—to be resolved in arbitration. *Wolfire Games, LLC v. Valve Corp.*, 2021 WL 4952220 (W.D. Wash. Oct. 25, 2021). This was consistent with an earlier victory in favor of arbitration by Valve. Though not in the antitrust context, Valve had previously tested the Valid Contract's arbitration clause against Washington consumer protection laws, prevailed in the trial court, and won on appeal—earning the Ninth Circuit's blessing for the strength of the Valid Contract's arbitration clause. *G.G. v. Valve Corp.*, 799 F. App'x 557, 558 (9th Cir. 2020) (upholding final arbitration award as to signatories of the Valid Contract).

After this Court's ruling in *Wolfire*, the original class-action plaintiffs largely stood still—apparently daunted by the task of litigating antitrust claims one by one.

That posture handed Valve what looked like an insurmountable advantage. But where the giants of the plaintiffs' bar saw only obstacles, Bucher Law PLLC recognized an opportunity to right a wrong and enforce the antitrust laws Congress enacted.

The plan was bold. Organize the team, structure, and funding necessary to fight the most profitable cartel in the world individually, thousands of times, in the forum it chose. Capture the upswell of demand to bring Valve to justice by signing up tens of thousands of consumers who were willing to proceed in arbitration. Litigate those claims in quick succession, using the lessons learned from each arbitration in the next. Win. And then win again. Keep fighting until each and every consumer who wants compensation has their chance to claim it.

It worked. Today Valve finds itself amidst a total rout. The prevailing consumers in this action have recovered an average of $2,017 in damages each, before mandatory attorneys' fees. Valve has been found liable under both Sherman Act Section 1 and Section 2 and cumulatively ordered to pay more than $2.8 million to some of the PC gamers before you and their counsel. *See* Dkt. 88-2, 89-2, 90-2, 91-2. With less than 0.1% of the arbitrations finished, Valve is on track to compensate the arbitration consumers *billions* of dollars.

Facing the justice it thought it had escaped through mandatory individual arbitration, Valve reversed course and filed this action seeking to enjoin the very individual arbitrations it previously compelled.

**B.    Valve's Midstream Reversal—Having Written the Rules, It Now Runs From Them**

As a first step to this, on September 26, 2024, Valve unilaterally rewrote its user agreement. Compl., Exh. 3 (hereinafter, the "Invalid User Agreement"). In relevant part, the Invalid User Agreement deleted the arbitration provision in the Valid Contract and stated:

> You and Valve agree that all disputes and claims between you and Valve (including any dispute or claim that arose before the existence of this or any prior agreement) shall be commenced and maintained exclusively in any state or federal court located in King County, Washington, having subject matter jurisdiction.

Invalid User Agreement, §10.

Valve attempted to notify PC Gamers of this drastic and forced change via pop-ups, blog posts, and emails, all stating the new dispute-resolution terms "require all claims and disputes to proceed in court and not in arbitration." Dkt. 80, Declaration of Scott Lynch ("Lynch Dec."), ¶¶ 10, 12, 16. These notices stated that the new terms would become effective unless the user terminated the user's account by November 1, 2024. *Id*. Valve's employees testify that PC Gamers could keep their games "forever," yet the only way to avoid the new terms was to forfeit access to thousands of dollars' worth of purchases. Although the gamers were represented by counsel and the change purported to undo ongoing legal proceedings, Valve sent the notice directly to the PC Gamers rather than through their lawyers.

Understandably, despite the new forum selection clause, the American Arbitration Association ("AAA") administration declined to close thousands of PC Gamer arbitrations in the absence of a stipulation by the parties. Compl.¶ 163. The

AAA thereafter left the question of arbitrability and the arbitrator's jurisdiction to the individual arbitrators themselves, consistent with this Court's prior order. *Id*. ¶ 164; *Wolfire*, 2021 WL 4952220, at *2.

With the AAA administration refusing to close the arbitrations, Valve submitted the jurisdiction question to the arbitrators. *Id*., ¶¶ 196–197. The arbitrators generally ruled in one of three ways: (i) the matter was stayed pending further guidance by this Court; (ii) the matter was stayed under *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024) pending a ruling by this Court on the arbitrator's jurisdiction; or (iii) the matter proceeded under the Valid Contract because the arbitrator has jurisdiction to resolve questions of arbitrability, and found that Valve's attempted retreat from arbitration were ineffective. Dkt. 81, Declaration of Andrew Fuchs ("Fuchs Dec."), ¶ 45.

One ongoing arbitration exemplifies the last form of ruling. Arbitrator Janice Sperow issued a comprehensive order rejecting Valve's repeated requests for a stay and its objections to jurisdiction. Declaration of Will Bucher ("Bucher Dec."), Exh. B ("Sperow Order"). Her order—grounded in the FAA, AAA rules, and this Court's prior rulings—squarely addressed Valve's arguments and made the following findings:

- "Under the FAA, the parties thus clearly and unmistakenly delegated arbitrability issues to the arbitrator in the [Valid Contract]. Indeed, virtually every circuit agrees that the parties' incorporation of the AAA's arbitration rules constitutes clear and unmistakable evidence that they agreed to arbitrate

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION– Page 7

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5863

arbitrability." citing *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013). Sperow Order at 10.

- "Rule 14 [of AAA Consumer Arbitration Rules] severs the arbitration provision from the overall contract and treats it as a separate agreement for enforcement purposes. Consequently, the Arbitrator has jurisdiction under Rule 14 to determine jurisdiction, the contracts' validity, the contracts' scope, the contracts' enforceability, and the parties' related disputes." Sperow Order at 11.

- This Court "already found [Valid Contract] delegation clause enforceable. Further, the delegation clause survives the [Valid Contract's] termination or expiration. See [Valid Contract] at § 9.D. Accordingly, an arbitrator must adjudicate all disputes regarding its enforceability in the first instance." Sperow Order at 12.

- "[U]nder *Coinbase*, an arbitrator may decide the jurisdictional dispute posed by two different versions of the same agreement already before the tribunal." Sperow Order at 13.

- "[U]nder *Coinbase*, an arbitrator may decide the jurisdictional dispute in a proceeding already pending before the tribunal when a party alleges that the tribunal no longer has the jurisdiction it previously conferred upon it." Sperow Order at 14.

- "[T]he Arbitrator agrees with claimants that [Valve] waived the specific basis for the lack of jurisdiction it now advances." Sperow Order at 16.

- Valve "submitted the question of arbitrability to this tribunal for adjudication and may not now claim it lacks such authority." Sperow Order at 17.

- "[T]ribunals determine jurisdiction at the time of filing, not upon later changed circumstances and events," and "that jurisdiction properly existed at the time claimants began these arbitrations." Sperow Order at 18.

- Valve "must now stand by its prior consent [to arbitrate the dispute]." Sperow Order at 19.

- Valve "would violate the implied covenant of good faith and fair dealing if it applied the [Valid Contract's] unilateral modification clause retroactively to these pending arbitrations." Sperow Order at 22.

- The claimants reasonably relied on Valve's consent to jurisdiction in prosecuting their claims and forcing them to withdraw the claims this late in the proceeding would cause irreparable injury. Sperow Order at 23

- Even absent the legal basis found above, "Factual disputes [as to Valve's intent and circumvention of the PC gamers' counsel] preclude dismissal." Sperow Order at 23-24.

- "Under [Valve's] position, all consumer arbitration contracts would become meaningless because the companies could simply change them at will." Sperow Order at 24

- "[T]he Arbitrator refuses to enforce as illusory and unconscionable the [Valid Contract] and/or [Invalid User Agreement's] unilateral modification clauses

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION– Page 9

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

and other provisions, if any, to the extent [Valve] seeks to enforce them retroactively to claims already accrued and pending." Sperow Order at 25.

- "[C]onsistent with the FAA's strong federal policy favoring arbitration, respondent's unilateral changes can only apply to claims filed after its effective date because to do otherwise would destroy arbitration envisioned by the FAA as a meaningful, genuine, and non-illusory alternative dispute resolution process." Sperow Order at 25.

Sperow's order reflects what is happening in dozens of ongoing arbitrations: Valve wrote the rules, arbitrators are applying them, Valve is losing, and Valve wants a do-over. But, as Judge Alsup put it when another company tried to escape thousands of individual arbitrations it had also agreed to, this is not corporate injustice—it is poetic justice:

> THE COURT: You made the agreement. Your law firm and all the defense law firms have tried for 30 years to keep plaintiffs out of court in employment cases. And you've gotten a lot of success in the courts.
>
> After so finally somebody says: Okay, we'll take you to arbitration. And suddenly it's not in your interest any more. And now you're wiggling around trying to figure some way to squirm out of your own agreement.
>
> I am not—you know, I'm a little older than you and there is a lot of poetic justice here.

Exh. A.

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION– Page 10

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

On October 18, 2024, Steam filed a petition to enjoin the ongoing arbitrations. Dkt. 1. On August 1, 2025, the Court struck Valve's petition as improperly filed and gave Valve leave to file an amended complaint. Dkt. 76.[1]

## C.    Having Lost Before Arbitrators and With Its Petition Struck, Valve Returns to Court Seeking Extraordinary Relief on Meritless Grounds

On August 21, 2025, Valve filed the instant complaint against 572 individual PC Gamers, alleging four causes of action but omitting any allegation of joint or several liability required under Rule 20(a)(2)(A). After 52 paragraphs of narrative that amounts to an unprofessional, one-sided attack on PC Gamers' counsel, Valve nonetheless asserts jurisdiction under Section 4 of the FAA, 28 U.S.C. § 1331, and supplemental jurisdiction under § 1367.

Valve simultaneously moved for a preliminary injunction seeking to "enjoin Defendants from continuing to pursue arbitrations before the American Arbitration Association." Dkt. 79 at 1. It seeks sweeping relief against all PC Gamers regardless of the status of their individual arbitrations or notice to them, despite its own admission that dozens of PC Gamers only "accepted" the new agreement by default or subsequent transactions. Lynch Dec. ¶¶ 25–28.

In other words, there are (at least) two classes of defendants here. Some only "accepted" the Invalid User Agreement by receiving Valve's notice by email. They did not manifest any assent to the new terms and did not terminate their accounts

---

[1] Hours later, Valve served the improper petition along with an incorrect summons threatening default on a knowingly represented party. Dkt. 77.

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION– Page 11

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

by Valve's arbitrary deadline of November 1, 2024. Valve is unable to confirm whether these PC Gamers even received this email because it "does not collect a user's name, physical address, or phone number when he or she creates a Valve account." Lynch Dec. ¶ 4. Despite this lack of notice—so stark it raises Rule 11 concerns—Valve seeks the extraordinary remedy of a preliminary injunction to halt these PC Gamers' antitrust arbitrations.

Valve portends "Accepting the arbitrator's finding that the arbitration provision was unenforceable, on September 26, 2024, Valve removed the arbitration provision from the [Valid Contract]." Dkt. 79 at 6:21–22. But the record tells a different story, with Valve asserting different positions in different forums. For months following the ruling that the Valid Contract was unenforceable by Valve against the *Elliott* plaintiffs, Valve continued to argue in the PC Gamer's arbitrations the Valid Contract remained enforceable. On September 10, 2024— nearly three months after the *Elliott* rulings—Valve argued in PC Gamer Greg Fish's arbitration "The [Valid Contract] governs Valve's relationships with Claimants and is enforceable." Bucher Dec., Exh. A.

This action is Valve's desperate attempt to take back those words. Valve drafted the rules, compelled PC Gamers into arbitration, and participated in arbitration, and now seeks to undo that system in court. Equity provides no such remedy.

### III. LEGAL STANDARD

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The threshold question is what type of injunction is at issue. A prohibitory injunction preserves the status quo; a mandatory injunction compels change. *Starkgraf*, 2024 WL 2925013, at *1 (citing *Stanley*, 13 F.3d at 1320). The latter is "particularly disfavored" and issued only where the facts and law clearly favor the movant. *Anderson v. United States*, 612 F.2d 1112, 1114–15 (9th Cir. 1979).

The status quo is not whatever baseline a litigant prefers—it is "the last uncontested status which preceded the pending controversy." *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963). Here, that was ongoing consumer arbitrations, compelled under Valve's agreements and litigated for months. Halting them would not preserve the status quo; it would upend it.

That makes Valve's request mandatory in nature. It does not seek to maintain the posture of the parties but to order hundreds of arbitrations to stop. Such relief demands "extreme or very serious damage" and is never granted where the alleged injury is compensable in damages. *Anderson*, 612 F.2d at 1115. And as the Ninth Circuit has stressed, mandatory injunctions "are not issued in doubtful cases." *Id.*

In sum, the Court should adopt the heightened standard for extraordinary relief—the exception's exception. That means Valve must show (1) the facts and law

clearly favor it, (2) extreme, non-financial damage, and (3) no doubt at all about entitlement. *Id.*; *Stanley*, 13 F.3d at 1320. Valve falls well short.

Valve's opening gambit is to coax this Court into applying the *Winter* factors as if this were an ordinary case. Courts sometimes do so when no one objects and the status quo was the parties never agreed to arbitrate. *See, e.g., Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 735 (9th Cir. 2014). For the reasons above, this Court should apply the heightened mandatory-injunction standard. But, even if it were to apply the more relaxed, baseline *Winter* analysis used in other cases, Valve's extraordinary request for improperly joined, class-wide relief still fails.

## IV. ARGUMENT

Valve fails to carry its burden on every element. As the sections below show, any one of these defects would defeat its motion; together they make denial inevitable.

### A. Valve Has No Chance of Succeeding on the Merits—Let Alone Clearly or Likely

Valve will not succeed on the merits. Under the law of the forum, the process was coercive, the substance one-sided, and unsettled state law erases any "clear" likelihood of success. Federal law adds more nails: this Court lacks jurisdiction to grant the speculative relief Valve demands, and equity—waiver, estoppel, judicial estoppel—locks Valve into the forum it initially chose. The Restatement of Consumer Contracts confirms no punishment-free opt-out, no good faith, and no midstream revocation. On this record, Valve has no chance of success.

1. **Arbitrators, This Court, and the Ninth Circuit Have Already Spoken—Valve Must Overturn Them All**

Valve's reversal has been tested before every forum that matters. Ten arbitrators and a former judge—Saydah, Badal, Gaglione, Gilman, Kingsley, Morrill, Goins, Jossen, Sperow, Ohashi, and Samas—have all ruled that the Valid Contract controls and that Valve's attempted rewrite is ineffective.[2] Bucher Dec., Exh. C. This Court itself compelled arbitration of "all issues—including arbitrability" under the same Valid Contract. *Wolfire*, 2021 WL 4952220. And the Ninth Circuit, ruling on this very contract, upheld the arbitration clause in *G.G.*, 799 F. App'x at 558, confirming that arbitrability questions belong to the arbitrator.

Faced with this uniform record of arbitral and judicial decisions, Valve must do far more than suggest a hypothetical error. It must show that every one of these rulings—including those from this Court and the Ninth Circuit—is not just possibly but likely wrong. Nothing in law or fact justifies such a departure. This consistent line of rulings sets the backdrop for the principles of law discussed below.

---

[2] The arbitrators have already confronted the core legal questions underlying Valve's bid to evade accountability for its alleged monopoly. Three in particular matter here: (a) whether the arbitrator or this Court decides the effect of Valve's unilateral amendment; (b) whether that amendment is valid and can shift pending claims from arbitration to court; and (c) whether Valve maintains an illegal monopoly or cartel under the Sherman Act. To obtain an injunction, Valve must prevail on (b) and also on (a)—showing both that its amendment was effective and that this Court, not the arbitrators, gets to decide that question.

Arbitrators have ruled on all three. On (a) and (c), decisions have varied. But on (b)—the effectiveness of Valve's amendment—PC Gamers have prevailed every time. Valve now argues those arbitrators erred on (a) and that this Court should substitute its judgment. Even if that were true, the unbroken line of rulings on (b) still demolishes any claim that Valve is likely to succeed on the merits.

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION– Page 15

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

**2.    Washington Law Forecloses Valve's Mid-Arbitration Rewrite**

Washington law—which Valve argues governs—dooms Valve's midstream rewrite.[3] *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (federal courts apply state contract law when reviewing arbitration provisions). This section of the brief sets out four independent reasons under Washington contract principles why Valve's update fails as a matter of law. Each strand independently defeats Valve's bid for extraordinary relief; together they foreclose it entirely—and leave no room for equitable relief.

**a.    Valve's "Cancel-or-Lose-Everything" Tactics Show Procedural Unconscionability**

Washington law does not bless contracts born of coercion or concealment. Procedural unconscionability zeroes in on process: Were terms hidden? Was assent real or illusory? Did the weaker party have a fair chance to reject them? *Satomi Owners Ass'n v. Satomi, LLC*, 167 Wn.2d 781, 801–02 (2009); *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 304–05 (2004). The touchstone is meaningful choice.

Valve gave none. For the 42 PC Gamers it claims "assented" by silence, the supposed agreement rested on failing to cancel an account before an arbitrary deadline. That is not assent—and Valve cites no authority to the contrary. For everyone else the choice was equally illusory: accept Valve's new terms or abandon their accounts, forfeiting thousands of dollars in purchased games and credits. That Hobson's choice is no contract at all.

Washington courts have long condemned adhesion tactics imposed without negotiation and under threat of economic forfeiture. Valve's update checks every

---

[3] Given the posture of this briefing at the preliminary injunction stage, the PC gamers advance arguments under Washington law, as proffered by Valve. The PC Gamers do not concede or waive arguments that law other than that of Washington may apply to those PC Gamers with arbitrations pending in other states.

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

box of those condemned practices. This is not a close call. On this record, Valve cannot plausibly show a likelihood of success—let alone that the facts and law clearly favor its position.

### b. Valve's One-Sided Limitations Trap Is Substantively Unconscionable

Washington law bars clauses that crush one side and favor the drafter. Substantive unconscionability tests the substance of the term—whether it is so one-sided or oppressive that equity cannot enforce it. *Gandee v. LDL Freedom Enters.*, 176 Wn.2d 598, 603 (2013); *Tadych v. Noble Ridge Constr., Inc.*, 200 Wn.2d 635, 645–46, 519 P.3d 199 (2022); *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 344, 103 P.3d 773 (2004).

Valve's update reflects an extreme imbalance of bargaining power and offers PC Gamers no offsetting benefit. It was imposed unilaterally, after disputes had already arisen, on a take-it-or-lose-everything basis. Consumers had no chance to negotiate, no meaningful opportunity to opt out, and faced the threat of losing access to thousands of dollars in purchased games and credits. The claimants who have prevailed spent an average of more than $3,000 on their Valve PC games, which they would forfeit if they deleted their account. Bucher Dec. ¶ 4. Washington law treats such tactics as paradigmatic substantive unconscionability.

And Valve did more than tilt the bargaining table. It rewrote the statute of limitations to its own advantage. Although Valve argues here that *American Pipe* tolling preserves the PC Gamers claims, it has argued the opposite in arbitration. Bucher Dec. ¶ 6, Exh. C. With a four-year limitations period for Sherman Act claims, months or years spent in arbitration may now count against consumers. Valve's maneuver could wipe out live antitrust claims altogether. Because Valve has repeatedly shifted positions, PC Gamers cannot rely on its representation that the statute of limitations does not apply; nothing prevents Valve from reversing

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION– Page 17

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

course when it benefits. Washington courts have condemned exactly this tactic, voiding such terms outright. *Tadych*, 200 Wn.2d at 641; *Gandee*, 176 Wn.2d at 603; *Adler*, 153 Wn.2d at 344.

This is the textbook case for substantive unconscionability. A clause so one-sided cannot stand because Washington law deems it void. And for purposes of preliminary relief, it does more than weigh against Valve—it forecloses finding that Valve is likely to succeed on the merits.

### c.    Any Doubt in Washington Consumer Contract Law Bars Equitable Relief

Washington law has never blessed the tactic Valve tries here. No appellate court has squarely allowed a company to rewrite consumer contracts midstream to erase arbitration rights already invoked. That silence matters. Even if the lack of authority in state law is charitably viewed as unsettled,[4] a preliminary injunction is especially inappropriate because the movant cannot show a clear likelihood of success on the merits. Federal courts do not guess at unsettled state law when fundamental rights are at stake—they certify. *See, e.g., Cornell v. Desert Fin. Credit Union*, No. CV-21-00835-PHX-DWL, 2022 WL 742724, at *4 (D. Ariz. Mar. 11, 2022), *certified question answered*, 254 Ariz. 477, 524 P.3d 1133 (2023).

The patchwork of cases Valve cites underscores the uncertainty. For the 42 defendants who, at most, received an email summarizing the updated terms, Washington law already answers: constructive notice does not form a contract. *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1221 (9th Cir. 2019). For everyone else, Valve points to *Grant v. T-Mobile USA, Inc.*, 2024 WL 3510937 (W.D. Wash. July 23, 2024). But *Grant* itself leans on *Berman v. Freedom Fin. Network, LLC*, 30 F.4th

---

[4] For the avoidance of doubt, the PC Gamers do not adopt this charitable interpretation. No court has blessed the maneuver Valve attempts here because it is unlawful.

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION– Page 18

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

849, 856 (9th Cir. 2022), which analyzed California and New York law—not Washington law. That authority supplies no firm footing under Washington law and cannot support the extraordinary relief Valve seeks.

### d. The Restatement of Consumer Contracts Bars Valve's Midstream Update

Federal courts predict how the state's highest court would rule by looking to intermediate appellate decisions, statutes, treatises, and persuasive authority. *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021) (quoting *Diaz v. Kubler Corp.*, 785 F.3d 1326, 1329 (9th Cir. 2015)); *In re Kirkland*, 915 F.2d 1236, 1238 (9th Cir. 1990). Washington courts have long treated the Restatement as persuasive authority when confronting novel or uncertain contract questions. *See Berg v. Hudesman*, 115 Wn.2d 657, 668, 801 P.2d 222, 229 (1990) (contract interpretation); *Washington State Hop Producers, Inc., Liquidation Tr. v. Goschie Farms, Inc.*, 112 Wn.2d 694, 701, 773 P.2d 70, 74 (1989) (supervening frustration).

Section 3 of the Restatement of Consumer Contracts captures the prevailing approach to unilateral modifications—and Valve's update fails on every element. *See Cornell v. Desert Fin. Credit Union*, 254 Ariz. 477, 483, 524 P.3d 1133, 1139 (2023) (adopting Restatement to address similar factual scenario); Restatement of Consumer Contracts § 3 (attached as Exhibit C).

**(a)–(b)**. Section 3(a)–(b) demands a punishment-free opt-out or cost-free termination. Valve offered neither. Consumers faced a single "choice": lose your games or surrender your rights. That is punishment, not free choice. *Cornell*, 254 Ariz. at 479 (section 3(a) requires "an opportunity to opt out with no change to the status quo business relationship"); Restatement §3(b).

**(c)**. Section 3(c) requires good faith. Valve's timing and content reveal the opposite—an attempt to choke off antitrust claims and cut its arbitration costs. That is the antithesis of good faith.

**(d)**. Section 3(d) bars modification once one party has substantially performed. Here, consumers had already filed demands and substantially performed the arbitration promise. Valve cannot now revoke it midstream.

Taken together, Sections 3(a) through 3(d) leave no room for doubt. Valve's unilateral update violates the Restatement's core requirements and fails as a matter of law. Because Washington courts treat the Restatement as persuasive authority, it makes the outcome clear: Valve has no chance of success on the merits.

### e.    Washington Law Leaves Valve with Zero Chance on the Merits

Taken as a whole, Washington contract law condemns Valve's midstream rewrite at every turn. The update is procedurally and substantively unconscionable. And Valve's clause fails on every element of the Restatement of Consumer Contracts, which reflects prevailing principles of law. In short, Valve's request for relief is not only unlikely under Washington law, it is improbable. This Court should deny Valve's motion for a preliminary injunction because Valve cannot show a likelihood of success on the merits under the law it asserts governs its contracts.

### 3.    Jurisdiction Fails, Equity Prevails—Valve's Injunction Collapses Under Federal Law

Federal courts lack jurisdiction to grant the speculative relief Valve demands, and equity likewise bars it. Jurisdiction, waiver, equitable estoppel, and judicial estoppel all speak with one voice—Valve chose arbitration, induced reliance, and reaped its benefits; it cannot now flip the script and enlist this Court to unwind its chosen forum. Together these doctrines form a single, powerful

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION– Page 20

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5963

answer to Valve's motion for extraordinary relief at the preliminary-injunction stage.

### a.    Article III Has Its Limits—and Federal Courts Don't Do Hypotheticals

The Court's earlier conclusion on jurisdiction does not settle the matter. Dkt. 76. Subject-matter jurisdiction is never waived and may be challenged at any time. *Grupo Dataflux v. Atlas Global Grp.*, 541 U.S. 567, 571 (2004) ("Challenges to subject-matter jurisdiction can of course be raised at any time prior to final judgment."); *Moore v. Maricopa Cty. Sheriff's Office*, 657 F.3d 890, 894 (9th Cir. 2011) ("The Court is obligated to determine *sua sponte* whether it has subject-matter jurisdiction."). And based on Valve's own choices, this Court lacks jurisdiction over Valve's new complaint.

### i.    The FAA Grants No Power to Enjoin Arbitrations —and Even If It Did, the Power Is Narrow

Congress gave courts a narrow role in arbitration. Federal jurisdiction is statutory and "must be neither disregarded nor evaded." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). The FAA reflects that narrow role. It authorizes courts to compel arbitration or confirm or vacate awards—but nowhere authorizes enjoining arbitrations wholesale. *Badgerow*, 596 U.S. at 11 (courts have no warrant to "redline the FAA").

A few older cases tried to imply such a power at the very outset of an arbitration. *See Societe Generale de Surveillance, S.A. v. Raytheon Eur. Mgmt. & Sys. Co.*, 643 F.2d 863, 868 (1st Cir. 1981). But the Second Circuit later underscored the gap: "nowhere does [the FAA] explicitly confer on the judiciary the authority to … enjoin a private arbitration." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 140 (2d Cir. 2011). Even when courts have recognized such power, it has been limited to threshold disputes—stopping an improper arbitration before it begins.

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION– Page 21

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

1  *Morgan Stanley & Co., LLC v. Couch*, 134 F. Supp. 3d 1215, 1233 (E.D. Cal. 2015),

2  *aff'd*, 659 F. App'x 402 (9th Cir. 2016) (an opposing party may "immediately bring

3  a motion to enjoin the arbitration").

4  Valve's request goes far beyond that narrow lane. It asks this Court to halt

5  hundreds of arbitrations it demanded and litigated for years. Even if some implied

6  power to enjoin exists, it must mirror the power to compel and be construed no more

7  broadly. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) (the power to compel exists "to

8  move the parties to an arbitrable dispute out of court and into arbitration as quickly

9  and easily as possible"). The logical corollary—if any—is the Court's power is

10  limited to stopping an improper arbitration at its inception, not years into the

11  proceeding after extensive participation.

12  In sum, the FAA gives this Court no power to yank the plug on arbitrations

13  already underway. If any such power to enjoin exists at all, it is a narrow one

14  limited to the earliest stage of a proceeding, not a license for wholesale intervention

15  long after arbitrator jurisdiction attached.

### ii.    The Court Has No Jurisdiction Over Hypothetical Coercive Actions

16

17

18  The DJA does not expand jurisdiction; it provides a remedy only when

19  jurisdiction already exists and is discretionary even then. *Levin Metals Corp. v.

20  Parr-Richmond Terminal Co.*, 799 F.2d 1312, 1315 (9th Cir. 1986). Jurisdiction

21  under the DJA requires a real, imminent coercive action—not one conjured for

22  convenience. *Morgan Stanley*, 134 F. Supp. 3d at 1233.

23  Valve falls well short of that test. It once claimed a defendant could file a

24  Section 4 petition to compel arbitration if Valve refused to participate in an

25  arbitration. Dkt. 59 at 9 ("If Valve refused to arbitrate further, Respondents could

26  hypothetically bring a petition to compel arbitration under FAA § 4 seeking to

   compel arbitration of their federal claims."). Yet Valve now concedes it will keep

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION– Page 22

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

participating in each individual arbitration. Fuchs Dec. ¶ 51. That concession is fatal. Under settled law, the plaintiff is "master of [its] complaint" and may avoid federal jurisdiction by its own pleading choices. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

First, "a federal court's role is neither to issue advisory opinions nor to declare rights in hypothetical cases." *Cole-Tindall v. City of Burien*, 768 F. Supp. 3d 1178, 1182 (W.D. Wash. 2024) (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138–39 (9th Cir. 2000) (en banc)). Yet Valve asks for exactly that—an advisory ruling on its hypothetical withdrawal from arbitration which is contradicted by the very facts it submitted in support of its own complaint. Those papers concede Valve will continue to participate in every arbitration and identify no credible threat to stop. Without concrete facts and a live controversy, Article III jurisdiction is absent as to each individual arbitration and this Court may not decide Valve's hypothetical nonparticipation on a class-wide basis.

Second, Valve has not shown that walking away from arbitration would terminate any proceedings or trigger a coercive Section 4 petition. Whether a hypothetical withdrawal counts as default or requires further action is for each individual arbitrator to decide—not this Court in bulk and without a concrete dispute. Valve cites no authority, arbitral or otherwise, indicating that one party's nonparticipation would compel Section 4 intervention after an arbitrator has assumed jurisdiction over the dispute.

In short, the DJA supplies no jurisdictional foothold here. Valve asks this Court to issue an advisory opinion on a dispute it concedes will continue in arbitration and that may never ripen into a coercive action. That is not a case or controversy. Without a real dispute and without jurisdiction, Valve's request for preliminary relief collapses at the threshold.

**b.    Equity Blocks Valve's Reversal**

Valve seeks to stop the very arbitrations it compelled, litigated, and confirmed awards in. Equity precludes a second bite born of regret. Waiver, equitable estoppel, and judicial estoppel converge on a simple rule: a party cannot choose a path, invite others onto it, reap the benefits, and then demand a detour when it becomes inconvenient. Especially at the preliminary-injunction stage, courts guard against such reversals. Valve built this forum; equity locks it in.

**i.    Having Compelled Arbitration, Valve Waived Any Right to Enjoin It**

Valve compelled these arbitrations, fought for them, and benefitted from them. It cannot now reverse course and ask this Court to halt the very proceedings it demanded. That conduct waives any right to relief—let alone extraordinary relief.

In *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022), the Court rejected arbitration specific judge-made rules requiring prejudice to find waiver. Waiver follows contract law, not policy. In the Ninth Circuit it takes two things—knowledge and inconsistency. *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016). Valve has both. There is no dispute Valve knew its rights—it invoked the power to compel. And if defending hundreds of arbitrations for years is not inconsistent with claiming the power to enjoin those same arbitrations, nothing is. By any measure, Valve has waived whatever authority it imagines the FAA's unenumerated right to enjoin confers.

The logic of *Morgan* is unavoidable: any supposed power to enjoin arbitrations must mirror the power to compel and carry the same limits, including waiver. *See supra*, § IV(A)(2)(a)(i). Otherwise it is no true counterpart at all. Valve cannot sidestep this rule. When claims were first brought in federal forum, Valve insisted on arbitration and obtained an order compelling disputes under the

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION– Page 24

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

original contract to proceed there. By taking that position, Valve demonstrated full awareness of its right to litigate in federal court and deliberately chose otherwise. It cannot now disclaim knowledge of that right.

Valve then acted inconsistently with its right to enjoin arbitration by participating for years. It filed briefs, appeared at hearings, advanced its *Coinbase* arguments before arbitrators, moved to confirm completed awards in state court, and to vacate awards in this Court. Such sustained participation is textbook waiver: knowing of a right but pursuing an inconsistent course. Only after facing the burdens of its own decision to enforce individual, bilateral arbitration did Valve seek to return to court with a new theory that its contract update erases its prior conduct. *Morgan* and *Martin* foreclose that maneuver. *Martin*, 829 F.3d at 1125–26 (collecting cases).

Equity does not rescue a party from the consequences of its own tactics. Having chosen arbitration, invoked it, and litigated there for years, Valve cannot rebrand its strategy as entitlement to injunctive relief. At a minimum, its prolonged inconsistency precludes the extraordinary step of altering the status quo while this Court considers the merits in full.

### ii. Equitable Estoppel Locks Valve Into Its Chosen Forum—Arbitration

Equitable estoppel precludes Valve from pocketing the benefits of arbitration while dodging its burdens. *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042 (9th Cir. 2009). The Ninth Circuit applies state-law estoppel rules to arbitration disputes. *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (discussing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009)); *accord Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013). In Washington, the rule is simple: take a position, induce reliance, and you cannot reverse course to the other

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION– Page 25

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

1    side's detriment. *Saunders v. Lloyd's of London*, 113 Wn.2d 330, 336, 779 P.2d 249,

2    252 (1989). Valve checks every box.

3        First, Valve spent years informing everyone that arbitration was the only

4    forum. Its Valid Contract trumpeted binding individual arbitration as the exclusive

5    path. Section 11 declared Valve would "RESOLVE ALL DISPUTES AND CLAIMS

6    BETWEEN US IN INDIVIDUAL BINDING ARBITRATION." Valve acted on that

7    promise in federal court too, compelling arbitration of antitrust claims. It then

8    doubled down before arbitrators—letters, motions, and hearings all hammering the

9    same theme: arbitration was mandatory. As late as August 2024, Valve was still

10   telling arbitrators "The [Valid Contract] governs Valve's relationships with

11   Claimants and should be enforced as a matter of law" and "arbitration

12   requirements like this are enforceable." Valve's message never wavered: these

13   cases belonged in arbitration.

14       Second, Valve induced reliance. Hundreds of PC Gamers followed its

15   directive—filing claims under the Valid Contract §11, paying AAA fees, gathering

16   evidence, investing in software and personnel to handle hundreds of parallel

17   disputes, and litigating disputes in arbitration. Valve reinforced that reliance for

18   more than a year, moving to dismiss claims based on the Valid Contract's terms

19   and urging arbitrators to enforce the Valid Contract's terms. Reliance was not just

20   foreseeable; it was invited.

21       But Valve now slams the brakes. Two years into the proceedings and after

22   repeated pro-arbitration submissions, it purports to repudiate its agreement to

23   arbitrate. Hundreds of consumers stand to lose favorable fee-shifting protections,

24   pay new fees, and start over. They would again face Valve's motions to dismiss,

25   stay, or delay—erasing years of work and wasting resources. Nothing about that

26   outcome is fair, speedy, or efficient.

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION– Page 26

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

This is exactly what equitable estoppel forbids: inducing reliance and then yanking the rug when it becomes inconvenient. Having led consumers into arbitration, Valve should be estopped from disavowing it and from obtaining an injunction to stop it.

### iii.    Integrity Over Gamesmanship—Judicial Estoppel Defeats Valve's Bid for Relief

Judicial estoppel is an equitable doctrine that keeps courts from being gamed by shifting legal positions. It applies when a party changes its stance to suit the moment—something Valve has done repeatedly. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (judicial estoppel "prohibit[s] parties from deliberately changing positions according to the exigencies of the moment"). The doctrine protects judicial integrity and shields opponents from whipsaw reversals. Washington law echoes the same principle: a party cannot treat a contract as a nullity in one case and enforce it in another. *Hardgrove v. Bowman*, 10 Wn.2d 136, 138, 116 P.2d 336, 337 (1941).

Valve's record fits the template. In earlier litigation—including *Wolfire*, *In re Valve Antitrust Litigation*, *Beer v. Valve*, and in numerous arbitrations—it told courts and arbitrators that each consumer claimant was bound to arbitrate individually under its Valid Contract, and that courts lacked power to intervene. Valve prevailed on that position repeatedly, compelling arbitration, resisting judicial interference, and even moving to confirm arbitration awards in state court.

Now Valve tells the opposite story. It claims the same arbitration clause it previously enforced is suddenly unenforceable, and that the FAA authorizes injunctive relief to halt the very arbitrations Valve demanded. This about-face is exactly what judicial estoppel forbids. *New Hampshire*, 532 U.S. at 750–51.

All three judicial estoppel factors line up. First, Valve has taken clearly inconsistent positions—championing arbitration when it suited its interests, and

repudiating it now. Second, allowing Valve's new position would suggest that earlier courts and arbitrators were misled when they accepted its pro-arbitration stance. Third, switching sides at this stage would hand Valve an unfair tactical advantage while inflicting heavy prejudice on hundreds of consumers who relied on its prior position and invested years in arbitration.

Judicial estoppel keeps litigation from becoming a moving target. Having picked its position and won a judicial ruling that all disputes under the Valid Contract must be brought in the forum of arbitration, Valve cannot now switch positions. This Court should hold Valve to its word and deny any extraordinary relief based on its new, contrary position.

### 4.    Valve Must Confront—Not Ignore—the Arbitrators' Rulings

At the preliminary-injunction stage, Valve carries a heavy burden. It must show a clear likelihood of success on the merits. That requires grappling with—and disproving—every adverse ruling on jurisdiction the arbitrators have already issued. Instead, Valve acts as if those rulings never happened, as though selective blindness could erase them. Courts do not reward such tactics.[5]

The arbitrators' rulings under the AAA rules gut Valve's theory that it can oust arbitrator jurisdiction with a midstream update. First, Arbitrator Sperow held under AAA rules that "jurisdiction properly existed at the time claimants began these arbitrations." Sperow Order at 18–19. Having compelled PC Gamers to arbitration knowing jurisdiction attached at filing, Valve identifies no contractual or procedural authority allowing it to repudiate that attachment under the very forum it chose. More telling still, Valve cites no authority suggesting that this

---

[5] For this motion, Valve has waived any defense to unrebutted arbitrator rulings. *See Horizon Air Indus., Inc. v. Airline Prof'ls Assoc.*, No. 2:13-CV-681 RSM, 2014 WL 2896001, at *4 (W.D. Wash. June 25, 2014) (Allowing new issues to be raised in reply unfairly would deny the opposing party a fair chance to respond)

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION– Page 28

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Court's power to enjoin extends past the point an arbitrator has assumed jurisdiction over a party that invoked arbitration. That threshold question alone should end its motion.

Second, Arbitrator Sperow concluded under AAA rules that "Rule 14 severs the arbitration provision from the overall contract and treats it as a separate agreement for enforcement purposes." *Id*. at 10–11. Thus, the jurisdiction clause survives termination of the agreement itself. Even if Valve could revoke that separate contract—a dubious proposition—it never gave any party notice, much less secured assent, to revoke it.

Valve's silence on these rulings is telling. Unless it can convincingly overturn each one—and it cannot—it cannot show any likelihood of success on the merits or justify extraordinary injunctive relief.

### 5.    Valve Relies on Straw Men, Not Binding Precedent

Valve's authorities cannot withstand scrutiny. Not one binds this Court under these circumstances, and each rests on facts or procedural postures far removed from this case. Valve compelled arbitration, litigated for years, and now seeks a midstream rewrite. Its cases cannot convert that about-face into lawful grounds for an extraordinary injunction. Courts confronting similar tactics have rejected attempts to halt arbitration where the party itself compelled it. This Court should do the same.

### a.    *Coinbase* Can't Carry Valve's Water

Valve leans heavily on *Coinbase. See generally*, Dkt. 79. But *Coinbase* decided a narrow threshold question: when two facially valid contracts—entered before any dispute—contain competing dispute-resolution clauses, the court, not the arbitrator, chooses the forum. That holding does not help Valve here.

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION– Page 29

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

1    Valve's reliance on *Coinbase* is nothing more than a request for a do-over. It

2  seeks reconsideration of this Court's order compelling arbitration of all issues

3  under the first contract, including arbitrability. At that time, Valve told this Court

4  it had no discretion and "shall" compel arbitration of all disputes that arose under

5  the Valid Contract. *In re Valve Antitrust Litigation*, Cause No: 21-0563-JNW, Dkt.

6  35, at 11:19–23. It got that relief. *See id.*, Dkt. 66. Having chosen that course, Valve

7  cannot now return and demand a different ruling on the very ground it previously

8  pressed.

9    Worse still, Valve's argument functions as an impermissible interlocutory

10  appeal from the arbitrators' decisions. Valve raised its *Coinbase* theory with the

11  arbitrators, argued it fully, and at most achieved a stay pending further direction

12  from this Court. Fuchs Dec. ¶ 45. Now, unsatisfied, it asks this Court to relitigate

13  the rulings it invited. Ninth Circuit law shuts the door: "a party may not submit a

14  claim to arbitration and then challenge the authority of the arbitrator to act after

15  receiving an unfavorable result." *Fortune, Alsweet & Eldridge, Inc. v. Daniel*, 724

16  F.2d 1355, 1357 (9th Cir. 1983) (citing *Ficek v. S. Pac. Co.*, 338 F.2d 655 (9th Cir.

17  1964), *cert. denied*, 380 U.S. 988 (1965)). Valve's effort to convert arbitral losses

18  into a midstream appeal is exactly what that rule forbids.

19    The bottom line: numerous arbitrators themselves have already rejected

20  Valve's *Coinbase* arguments. That leaves Valve with nothing but a request for

21  reconsideration of *Wolfire* or an interlocutory appeal dressed up as a motion for

22  injunction. This Court should recognize *Coinbase* for what it is—irrelevant—and

23  move on.

24

25

26

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION– Page 30

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

### b.    Valve's Out-of-Forum Cases Don't Bind and Don't Persuade

Valve leans on federal cases from across the country—not Washington—to argue these disputes must now be resolved in court. But those cases only underscore why Valve's argument fails.

In *Dasher v. RBC Bank (USA)*, 745 F.3d 1111 (11th Cir. 2014), the Eleventh Circuit applied North Carolina law and held that when parties clearly express their intent to supersede a prior contract, the prior agreement—including its arbitration clause—is displaced. *Id.* at 1123. Washington has no comparable authority. Timing also distinguishes *Dasher*: by the time the bank moved to compel arbitration, the arbitration clause had already been terminated. *Id.* at 1126–27. Here, arbitration was compelled when Valve's clause undisputedly remained in force. Valve invoked that clause and must live with it. *Dasher* offers no refuge.

*Pilon v. Discovery Commcn's, LLC* proves the same point. 769 F. Supp. 3d 273, 286 (S.D.N.Y. 2025). There, the original contract was governed by California law, while the updated contract was governed by New York law. The court compelled the plaintiff who never accepted the update to arbitrate under the original agreement, while requiring the plaintiff who clicked through the update to arbitrate under the new one. 769 F. Supp. 3d at 286–90, 294–98. The case turned on choice of law and enforcement of whichever contract the party accepted. It says nothing about enjoining arbitrations already underway or forcing claims into court.

*Ingram Micro Inc. v. Signeo Int'l, Ltd.*, 2014 WL 3721197 (C.D. Cal. July 22, 2014), underscores the same divide. There, sophisticated businesses not only updated their program agreement but also entered a settlement agreement releasing all claims under the earlier contract, and later executed an amended settlement agreement. *Id.* at *1. When one party later moved to compel arbitration under the original agreement, the court enjoined it because the subsequent

contracts expressly displaced the prior arbitration clause and extinguished related claims. *Id*. at *3. That negotiated commercial resolution bears no resemblance to Valve's unilateral imposition of new terms on individual consumers mid-arbitration.

Together, these cases share two fatal flaws: they arose under different governing law than Valve advances, and they turned on clear, mutual assent in factual settings far removed from this one. Under Washington law, Valve cannot revoke arbitration midstream after compelling it. Valve picked the arbitral forum. Equity locks it into that choice.

### 6.    Meritless Claims Merit No Injunction

Taken together, Washington contract law, federal jurisdictional limits, and equitable doctrines strip Valve of any likelihood of success. Its unilateral rewrite fails every substantive test and violates mainstream Restatement principles. With jurisdiction absent and waiver and estoppel in full effect, extraordinary relief is off the table. This failure on the merits necessarily undermines the next requirement as well: Valve cannot show irreparable harm.

## B.    Valve Cannot Show Irreparable Harm—Let Alone Extreme or Non-Financial Harm

"The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07 & n.8 (1959). Because Valve seeks a mandatory injunction, it must make that showing under the highest standard. Mandatory injunctions are "particularly disfavored" and require a far stronger showing than ordinary preliminary injunctions. *Stanley*, 13 F.3d at 1320. Even if the Court were to apply the more relaxed *Winter* factors, Valve's only alleged harm is financial— and thus not irreparable.

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

### 1. Adequate Remedies at Law Exist, and Valve Has Invoked Them

The Ninth Circuit has made clear that a party seeking a mandatory injunction must show no adequate legal remedy. *Stanley*, 13 F.3d at 1320 (citing *Beacon Theatres*, 359 U.S. at 506–07). As *Stanley* put it: because the movant "requested a mandatory preliminary injunction, . . . [she] was required to demonstrate that her remedy at law was inadequate." *Id*. Nothing in *Winter* altered this longstanding rule in this Circuit, and the Court should require Valve to show that no other adequate remedy exists at law.

Valve's remedies at law are not hypothetical; it has already invoked them. Valve has sought relief before the very arbitrators it now claims lack jurisdiction. But what it dislikes is not the availability of this remedy—it is the results. Arbitrator Sperow, for example, issued a thorough decision rejecting each of Valve's arguments for a stay and its objection to AAA jurisdiction. Bucher Dec., Exh. B. Other arbitrators have stayed proceedings awaiting this Court's guidance. *Id*. That is the hallmark of an adequate legal remedy.

### 2. Valve Cannot Show Irreparable Harm Even Under a Relaxed *Winter* Analysis

Even under *Winter's* baseline requirement of irreparable harm, Valve fails outright. Its core claim—that paying arbitration fees is *per se* irreparable harm—collides with settled law. The Supreme Court has long held that economic loss, even substantial and unrecoverable, is not irreparable. *Beacon Theatres*, 359 U.S. at 506–07; *Sampson v. Murray*, 415 U.S. 61, 90 (1974). "Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974); *see also FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980).

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION– Page 33

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

This Court already rejected Valve's claim that parallel court and arbitration proceedings cause prejudice. In 2021, Judge Coughenour denied Valve's request to stay the developer class action pending the consumer arbitrations, holding that "litigation costs alone are not sufficient to warrant a stay." *Wolfire*, 2021 WL 4952220, at *3 (quoting *Dependable Hwy. Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059 (2007)). The law of the case requires the same result here.

Nor can Valve obtain a special procedural rule because the forum is arbitration. As the Supreme Court stressed in *Morgan*, the FAA forbids "custom-made rules" tilting the playing field "in favor of (or against) arbitration." 596 U.S. at 419. Treating arbitration costs as irreparable harm would do exactly that—create an arbitration-specific carve-out that federal law prohibits. *Winter* itself underscores this point: the Supreme Court vacated an injunction issued under the Ninth Circuit's overly lenient "possibility" standard for irreparable harm. 555 U.S. at 22 ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction."). Thus, as a matter of law, this Court should reject any suggestion that Valve's litigation fees, without more, constitute irreparable injury.

Factually speaking, the few cases Valve cites are on an entirely different plane from this one. In each, the party opposing arbitration had not compelled arbitration in the first place or had lost the right to arbitrate altogether. For example, in *Morgan Stanley*, 134 F. Supp. 3d at 1234, the defendant had waived his right to arbitrate. In *Oppenheimer & Co. Inc. v. Mitchell*, No. C23-67 MJP, 2023 WL 2428404, at *1 (W.D. Wash. Mar. 9, 2023), the arbitration was inappropriate because the defendants were not "customers" under FINRA rules. And in *Goldman, Sachs & Co.*, 747 F.3d at 747, the Ninth Circuit held that Reno had disclaimed its

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION– Page 34

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5865

right to FINRA arbitration. These cases stand on their own and provide no authority for treating routine arbitration costs as irreparable harm.

Valve's own choices underscore the point. PC Gamers first sought a federal forum. Valve rejected it, compelled arbitration, and then poured resources into that process—paying fees, briefing motions, appearing before arbitrators, and even confirming awards. All 572 PC Gamers in this action initially offered to proceed on a documents-only basis, but Valve insisted on live hearings. Its complaint that it has "devoted substantial employee time to preparing for and attending arbitration hearings" flows from two self-inflicted decisions: requiring individualized arbitration and demanding live proceedings. Having deliberately chosen that path and reaped its benefits, Valve cannot rebrand the costs of its own strategy as "irreparable harm" because self-created expenses have never qualified as irreparable injury.

Nor does speculation about inconsistent arbitration rulings rescue Valve. Divergent outcomes are inherent in bilateral arbitration and a byproduct of Valve's own decision to mandate individual proceedings. That risk is not irreparable harm; it is the inevitable result of the system Valve designed and chose. As the Supreme Court recognized in *AT&T Mobility*, bilateral arbitration carries tradeoffs, including efficiency and uniformity. 563 U.S. at 350 ("Informal procedures do of course have a cost"). Valve must live with those consequences.

## C.    The Balance of Equities Tilts Sharply Against Valve—Equity Does Not Rescue Opportunists

Equity weighs the harms each side would suffer. Here the scale tips hard against Valve. PC Gamers face real, irreparable injuries—lost time, dissipated investments, the erosion of their chosen forum, and potentially not being able to litigate their claim at all. Valve risks only money and inconvenience, hardships it manufactured for itself.

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Valve's bid for equity rings hollow. It drafted the arbitration clause, invoked it to compel thousands of consumers out of federal court, and defended those arbitrations for years. Only when the true gravity of its decision to enforce bilateral arbitration turned unfavorable did it seek to enjoin the very proceedings it demanded. That is not equity; it is opportunism. Courts do not reward bait-and-switch tactics.

First, Valve already asked the AAA to stay these arbitrations and was denied.  Fuchs Dec. ¶ 45.  Its preliminary-injunction motion here is thus not a first request but a second bite at the same apple—an attempt to obtain from this Court what it could not get from the arbitral forum it chose. Equity disfavors such forum-shopping and provides no basis to grant relief already refused elsewhere.

Second, unlike in *Oppenheimer* or *Morgan Keegan*, the predicate assumption here is that the parties did agree to arbitrate. 2023 WL 2428404, at *1; *Morgan Keegan & Co. v. McPoland*, 829 F. Supp. 2d 1031, 1036 (W.D. Wash. 2011). Valve wrote the clause, compelled its enforcement, and defended hundreds of arbitrations without protest. Equity cannot reward a party that reaps the benefits of arbitration only to declare it unfair when the tide turns. Holding parties to their bargains is itself an equitable principle, and it weighs heavily against Valve.

Third, PC Gamers will suffer concrete prejudice from an injunction. Many have invested years of effort and resources prosecuting their claims in arbitration. Forcing them to abandon those proceedings now would erase that investment, risk statutes of limitations, and deprive them of timely adjudication of antitrust claims. Resetting them in court would invite forfeiture of rights and impose duplicative costs on consumers least able to bear them.

Fourth, equity considers the conduct of both sides. Valve attempts to portray PC Gamers' counsel as vexatious, but arbitrators and courts have repeatedly

1  rejected this characterization and found the opposite—it is Valve who is seeking to

2  increase the time and expense of these litigations. In awarding Mr. Fish interest

3  on his award, Arbitrator Goins found Valve's litigation strategy was advanced

4         primarily for the purpose of delaying the litigation or increasing the cost
          thereof. . . . including but not limited to reversing its position as to the
5         appropriate forum for resolution of this case, attempting to unilaterally
          amend the underlying arbitration agreement after this proceeding had
6         been pending for many months, and filing multiple motions to dismiss.

7  Dkt. 88-2 at 4.

8         Similarly, in Valve's failed bid to sue the PC Gamers' attorneys, the

9  Washington Court of Appeals unanimously held "The conduct Valve complains of—

10 the filing of thousands of individual arbitration requests—is a direct result of its

11 own agreement barring class actions and prohibiting collective or representative

12 arbitration." *Valve Corp. v. Bucher L. PLLC*, 571 P.3d 312, 321 (Wash. Ct. App.

13 2025). "On this particular issue, Valve is hoist by its own contractual petard." *Id*.

14 n.6.

15        To extent this court has doubt who the bad actor is here, the AAA has

16 procedures to address misconduct, including sanctions, fee-shifting, and dismissal.

17 Valve has already sought *all* these remedies in *all* the underlying arbitrations

18 brought by the PC Gamers. Bucher Dec. ¶ 5. Valve was not successful. *Id*. Equity

19 does not require this Court to step in as super-arbitrator to police conduct that

20 arbitral forums are already managing simply because Valve is dissatisfied with the

21 result.

22        Fifth, the PC Gamers would suffer irreparable harm if an injunction were

23 granted preliminarily and then lifted. Arbitration proceedings are not a video game

24 that can be paused and restarted at will. Dozens of the PC Gamers Valve hailed

25 before this Court have already completed their final merits hearings and are

26 awaiting final arbitral decisions. Bucher Dec. ¶ 7. Hundreds more have trials

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION– Page 37

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

scheduled for the coming months—which if stayed would need to be delayed and rescheduled, either by the arbitrator or this Court. Bucher Dec. ¶ 8. Given the volume of litigation and the extended European vacations of Valve's counsel and employees, finding availability of both counsel and parties to schedule hearings is challenging. These trials dates, once stayed, will effectively be lost. And the logistics of rescheduling *hundreds* of deadlines if the cases are preliminary enjoined but then the PC gamers prevail would place enormous burden on the PC gamers, their counsel, and the AAA.

Some arbitrations will not be able to be restarted at all. Arbitrator Rubin was on track to resolve Mr. Wirth's claim in early 2025, but granted Valve's request for a stay when it filed this action last year. Bucher Dec. ¶ 9. Arbitrator Rubin passed away in August of 2025, placing Mr. Wirth's claim in limbo. *Id*. And it is not just arbitrators. Valve notes in its motion that Valve's delay tactics have meant that some PC Gamers have already died waiting for justice.

**D.     The Public Interest Favors Enforcing Arbitration Agreements—Not Rewriting Them Midstream**

The Federal Arbitration Act embodies a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). To quote Valve's own successful motion to compel these consumer cases to arbitration to begin with:

> Ninth Circuit authority and other decisions from this Court support the conclusion that the SSA's arbitration agreement is just as enforceable against the Individual Plaintiffs here as it was in *G.G.,* where this court recognized the strong federal policy favoring arbitration. *See* 2017 WL 1210220, at *2. The Ninth Circuit has embraced the strong public policy favoring arbitration by repeatedly enforcing arbitration agreements.

*In re Valve Antitrust Litigation,* Cause No: 21-cv-0563-JNW, Dkt. 35.

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION– Page 38

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

The public—including millions of Valve users nationwide—has a stake in Valve honoring the terms of its own consumer contract. There is no public interest in a monopolist rewriting its contract mid-arbitration to hobble antitrust claims brought by its own customers.

Valve insists the public interest favors an injunction, invoking cases holding there is no public interest in forcing a party to arbitrate when it never agreed to do so. *See Oppenheimer*, 2023 WL 2428404, at *6; *Morgan Keegan*, 829 F. Supp. 2d at 1037. Those cases are inapposite for the reasons discussed above. But moreover, the argument that Valve seems to be making boils down to "we believe we are likely to succeed on the facts and the law, and if we do, public policy favors enforcing the law." But at the preliminary injunction stage, public policy is a *separate* element Valve must prove *in addition to* its strained argument that it is likely to prevail.

Properly assessing public policy as its own element, the corpus of case law is clear that public policy favors continuing in arbitration. *See Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 932 (9th Cir. 2013) (The FAA "reflects an 'emphatic federal policy' in favor of arbitration.") (quoting *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012)); *O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087, 1093 (9th Cir. 2018) ("[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.") (quoting *Moses H.*, 460 U.S. 1 at 24); *Zoller v. GCA Advisors, LLC*, 993 F.3d 1198, 1201 (9th Cir. 2021) (The FAA "declares a 'liberal federal policy favoring arbitration' and provides that such agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'") (quoting *AT&T Mobility*, 563 U.S. at 339); *Zuver*, 153 Wn.2d at 301–302 (same).

Valve now insists it is "not asking the Court to interfere mid-arbitration with a decision delegated to an arbitrator or arbitration provider." Dkt. 79 at 24. But

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION– Page 39

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

this Court already held—at Valve's urging—that jurisdictional questions belong to the arbitrator. *Wolfire*, 2021 WL 4952220, at *1 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985)) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). Hundreds of PC Gamers are now proceeding under arbitrators' rulings that the Valid Contract lies within their jurisdiction and that Valve's purported amendment is ineffectual. To suggest that halting those proceedings is anything but mid-arbitration interference defies both law and plain English.

The same public policy that favors arbitration to ease the load on U.S. courts applies exponentially here. Enjoining 572 pending arbitrations on the eve of trial—while statutes of limitation run—would force hundreds of individual antitrust actions back into federal court. The resulting burden would be staggering. This Court would have to unravel different procedural postures, revisit binding arbitration rulings, and decide how to treat PC Gamers who have completed hearings but have not yet received awards. It would also have to schedule hundreds of jury trials—many immediately, as dozens of cases are trial-ready. Public policy does not support shifting that massive burden onto an already busy judiciary.

Public interest also encompasses judicial restraint. Federal courts should not issue advisory opinions or stretch jurisdiction beyond statutory limits. *Badgerow*, 596 U.S. at 11. Valve's request effectively asks this Court to declare the enforceability of a new clause and enjoin arbitrations it concedes it will continue to defend. Granting that relief would expand jurisdiction and undermine public confidence in the courts' limited role.

The bottom line: the public interest weighs squarely against Valve's request. Granting it would distort the FAA, destabilize consumer contracts, and reward strategic gamesmanship.

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION– Page 40

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

1

**E.        Adequate Security: The Price of Valve's Extraordinary Injunction**

2        Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a

3   preliminary injunction or a temporary restraining order only if the movant gives

4   security in an amount that the court considers proper to pay the costs and damages

5   sustained by any party found to have been wrongfully enjoined or restrained." Fed.

6   R. Civ. P. 65(c). Put plainly: without a bond, a party wrongfully enjoined has no

7   remedy. *BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, 912 F.3d 1054, 1057

8   (7th Cir. 2019) ("in the absence of a bond, a litigant injured by an injunction later

9   determined to have been improper does not have a remedy.").

10        Valve asks this Court to halt 572 individual arbitrations—an extraordinary

11   request with extraordinary consequences. Enjoining these arbitrations would

12   strand PC Gamers with sunk costs, wasted attorney time, and the loss of procedural

13   features they relied upon when Valve compelled them to arbitrate. The best

14   estimate of the harm at stake is stark: no award to date has been for any less than

15   $750,000.[6] Multiply those numbers across the 572 arbitrations Valve seeks to

16   enjoin and the total exposure just for these 572 PC Gamers exceeds $420 million.

17   That is the risk Valve seeks to shift to the very people it compelled into arbitration.

18        Rule 65(c) exists to prevent precisely that result. The rule makes clear that

19   when a party seeks preliminary relief—especially a mandatory injunction altering

20   the status quo—it must post security sufficient to protect every enjoined party if

21   the injunction later proves wrong. Without a meaningful bond, the entire

22   financial risk of Valve's shifting litigation strategies would fall on PC Gamers.

23

24

---

25   [6] This figure includes the mandatory treble damages, fees, and costs already
     awarded but excludes the substantial additional interest, collection costs, and
26   litigation expenses necessary to enforce those awards—making it a conservative
     estimate. Bucher Dec. ¶ 10.

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION– Page 41

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

1   It would be inequitable to leave each individual PC Gamer—sued separately
2   at Valve's insistence—unprotected from Valve's about-face. A substantial bond is
3   therefore required. Under the Court's discretion, it could increase the amount if it
4   is reasonable to assume that fees and costs in court would exceed those in
5   arbitration. But at a bare minimum, the Court should require Valve to post 572
6   separate $750,000 bonds for each PC Gamer whose arbitration is enjoined to cover
7   the damage its injunction would impose if the arbitrations are enjoined incorrectly.
8   Equity demands no less.

### V. CONCLUSION

10  For the above reasons, PC Gamers respectfully request that the Court reject
11  Valve's request for extraordinary relief and deny its motion for a preliminary
12  injunction.

14  DATED this 19th day of September, 2025.

BAILEY DUQUETTE P.C.

By: */s William R. Burnside*
William R. Burnside, WSBA #36002
800 Fifth Ave, Suite 101-800
Seattle, Washington 98104
T: 206.353.8021
E: will@baileyduquette.com

BUCHER LAW PLLC

William Ward Bucher IV
(*pro hac vice* admitted for some Defendants and
forthcoming for the remaining Defendants)
350 Northern Blvd, STE 324-1519
Albany, NY 12204-1000
Tel. 202.997.3029
E: will@bucherlaw.com

*Attorneys for Defendants*

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION– Page 42

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

*I certify that this motion contains less than 12,000 words under Court order. Dkt. 86.*

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION– Page 43

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

1

**CERTIFICATE OF SERVICE**

2

3    I hereby certify that on this date, I caused a true and correct copy of the foregoing

4    Defendants' Response In Opposition To Plaintiff's Motion For A Preliminary Injunction served

5    upon counsel of record herein, as follows:

6    Blake Marks-Dias, WSBA No. 28169
     1015 Second Avenue, Floor 10                    ☒ Via Electronic Service
7    Seattle, Washington 98104
     (206) 625-8600 Phone
8    (206) 625-0900 Fax
     E: bmarksdias@corrcronin.com

9    Michael W. McTigue Jr., *Admitted Pro Hac Vice*
10   Meredith C. Slawe, *Admitted Pro Hac Vice*
     SKADDEN, ARPS, SLATE,
11   MEAGHER & FLOM LLP
     One Manhattan West
12   New York, New York 10001
     E: michael.mctigue@skadden.com
13   E: meredith.slawe@skadden.com

14

15   I declare under penalty of perjury under the laws of the State of Washington that the

16   foregoing is true and correct.

17   Dated: September 19, 2025 at Seattle, Washington.

18                                    *s/ William R. Burnside*
                                      William Burnside, WSBA No. 36002
19

20

21

22

23

24

25

26

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION– Page 44

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869