# Exhibit C

Restatement of the Law, Consumer Contracts § 3 (2024)

Restatement of the Law, Consumer Contracts  |  May 2024 Update

Restatement of the Law Consumer Contracts

Restatement of the Law Consumer Contracts

# § 3 Adoption of a Modification of Standard Contract Terms

Comment:
Reporters' Notes
Case Citations - by Jurisdiction

(a) A business's proposed modification of a standard contract term in a consumer contract governing an ongoing relationship is adopted if the business demonstrates that:
  (1) the consumer received reasonable notice of the proposed modified term and a reasonable opportunity to review it;
  (2) the consumer received a reasonable opportunity, including reasonable notice of the opportunity, to reject the proposed modified term and continue the contractual relationship under the existing term;
  (3) the consumer received reasonable notice that continuing the contractual relationship without rejecting the proposed modified term will result in the modification being adopted; and
  (4) the consumer either:
    (A) manifested assent to the modified term, or
    (B) did not reject the proposed modified term and continued to take the benefit of the contractual relationship after the expiration of the rejection period provided in the proposal, or, if such period is not provided, after the expiration of reasonable time to review and reject.
(b) A consumer contract governing an ongoing relationship may provide for a reasonable procedure for adoption of modified terms under which the business may propose a modification of the standard contract terms but may not, to the detriment of the consumer, exclude the application of subsection (a), except that the established procedure may replace the reasonable opportunity to reject the proposed modified term with a reasonable opportunity to terminate the transaction without unreasonable cost, loss of value, or personal burden.
(c) A modification by the business of a standard contract term in a consumer contract is adopted only if the modification is proposed in good faith, if it is fair and equitable in view of circumstances not anticipated by the parties when the contract was made, and if it does not have the effect of undermining an affirmation or promise made by the business that was made part of the basis of the original bargain between the business and the consumer.
(d) Standard contract terms may not be modified in a consumer contract that has been substantially performed by at least one party.

§ 3 Adoption of a Modification of Standard Contract Terms, Restatement of the Law,...

Case 2:24-cv-01717-JNW    Document 94    Filed 09/19/25    Page 3 of 13

**Comment:**

*1. General.* Standard contract terms in consumer contracts governing ongoing relationships, like other species of contracts, are often modified. This Section focuses on the minimum requirements for the process of adoption by a consumer of modifications to the standard contract terms, whereby the consumer is determined to have agreed to a modification of a standard contract term. Similar principles may apply to the modification of nonstandard terms. Many modifications may be justified by changes in the economic or legal environment, by revisions in the service itself, or by the realization of other unexpected contingencies. There is a concern, however, that businesses will initiate self-serving, opportunistic modifications in standard contract terms once consumers are already locked into the service. Accordingly, for a modification to be adopted, it is not enough that consumers have manifested assent to the modified standard terms after the terms have been presented to the consumers. Consumers may manifest such assent reluctantly if termination of the contract would squander some acquired value, would unreasonably undermine the consumers' reliance investments, or would be practically infeasible. Thus, this Section provides three necessary safeguards, both procedural and substantive. First, procedurally, under subsection (a), the process of adoption of a modification must satisfy requirements of assent analogous to those in § 2 (including the requirement, analogous to that in § 2(b), that the consumer receive a reasonable opportunity to reject the modification and continue the contract on the original terms). Subsection (b) allows the parties, usually at the instance of the business, to establish in the initial contract a reasonable modification procedure that implements these assent requirements, although it may replace the opportunity to reject with a reasonable opportunity to terminate the transaction entirely (see Comment *6*). Second, under subsection (c), the modification may not undermine the benefit of the bargain secured in the pre-modification contract. It must be proposed in good faith and be fair and equitable, which means that the business must have an objectively demonstrable legitimate reason for the modification (see Comment *7*). Third, under subsection (d), a contract that has been substantially performed may not be modified (see Comment *8*).

This provision does not replace Restatement of the Law Second, Contracts § 89, nor does it address other issues that may apply in the context of agreement over a modification, such as the requirement of consideration, formalities, and other requirements, including those referred to in Restatement of the Law Second, Contracts § 89, and Uniform Commercial Code (UCC) § 2-209. Nor does this Section address modifications proposed by the consumer.

*2. Modification versus independent contract.* New terms proposed by a business are, depending on the circumstances, either an attempt to modify the terms of an existing contract within an ongoing relationship (governed by this Section) or an attempt to form a new, independent contract alongside or in succession to the original contract (governed by § 2).

> **Illustrations:**
> 
> 1. A consumer opens a checking account with a bank and signs a user agreement. The bank seeks to change the terms of the agreement occasionally and sends notices to the consumer in advance of each such change. Each change of terms is a modification proposed under this Section, not a new contract. This is so even if the original agreement allows the bank to terminate the contract at any time, as long as the bank did not effectively terminate the original contract.
> 
> 2. A consumer signs up for an ongoing web-based service, creating an account and manifesting assent to the transaction by agreeing to pay the monthly service fee and providing credit-card information. The website displays links to "Terms of Use," which are referred to during the sign-up process and are adopted as part of the consumer contract upon the initial formation of the contract under § 2(a). The consumer can review the terms by clicking on the links. The business changes the Terms of Use from time to time and sends the consumer notices upon each such change. Each change is a proposed modification governed by this Section.
> 
> 3. A consumer signs up for a one-year service period with a business. If the contract requires fresh assent to renew the service at the end of the year, new terms sent upon renewal are not a modification; their adoption is governed by § 2. If, instead, the contract provides for autorenewal for a second year, unless the consumer explicitly terminates the service, the original contract continues to govern during the second year, and any different or additional terms sent upon the renewal or during the second year are a proposed modification of the original contract and are governed by this Section.

§ 3 Adoption of a Modification of Standard Contract Terms, Restatement of the Law,...

Case 2:24-cv-01717-JNW    Document 94    Filed 09/19/25    Page 4 of 13

> 4. A consumer uses a website without creating an account or making a purchase. The website has a link to "Terms of Use" in large, contrasting font on the lower portion of the site, which the consumer can see immediately upon opening the page and without scrolling down the page. The consumer can review the terms by clicking on the link, and there is a clear notice that the terms are intended to become part of the contract governing the current use of the website. The consumer visits the website regularly. The business changes the Terms of Use from time to time. The current standard terms may be adopted as a new contract each time the consumer visits the website if the requirements of § 2 are satisfied each time and do not constitute a modification of a prior contract.

*3. Reasonable notice and opportunity to review.* As with the adoption of original terms under § 2, modified standard contract terms may be adopted only if the consumer receives reasonable notice of the new terms and a reasonable opportunity to review them. A general notice of the possibility of future modifications is not sufficient. In addition, the consumer must receive reasonable notice of the opportunity to reject the modified terms (which is discussed in Comment *4*), along with reasonable notice that continuing the contractual relationship without rejecting the modified terms will result in the modifications becoming legally binding. The factors listed in § 2, Comment *2*, including appearance, placement, layout, and timing of the notice; the clarity, sequence, and simplicity of the communication of the terms; the difficulty of identifying and finding the location of the terms; the prominence of notice regarding important terms and their nature; the visibility and clarity of the language alerting consumers that specific steps will result in a modification of the terms; and the nature of the proposed modified standard contract terms determine whether, considering the totality of the circumstances, the notice and opportunity to review and reject are reasonable. The evaluation whether, under the circumstances, reasonable notice, opportunity to review, and opportunity to reject were provided involves questions of fact and of law. If there is a dispute about the relevant facts, for example, how or when the proposed change of terms was presented to the consumer, it will be decided by the trier of fact. If there is no dispute concerning the relevant facts, for example, if the digital interface seen by the consumer during the proposed modification is recorded and undisputed, a determination whether the proven adoption process meets the legal requirements in § 3 is generally made by the court. See generally § 1(b) (reasonableness standard) and Comment *8*.

> **Illustrations:**
>
> 5. A consumer entered into a two-year service contract online. At the time of the original contract formation, standard contract terms were adopted by satisfying all the requirements of **§ 2(a)**, including reasonable notice of the "Terms and Conditions." The business later posts a modified version of the Terms and Conditions on its website, revising the heading in the page on which the terms are posted and entitling it "Revised Terms and Conditions." If the business does not provide the consumer with a distinct or separate notice of the modification, describing specific changes to the agreement and the effective date of those changes, the new terms are not adopted as a binding modification. It is not reasonable to expect consumers to revisit and check the Terms and Conditions web page regularly, and, in the absence of an affirmative, reasonable alert, the consumer does not have a reasonable opportunity to review the proposed modification as required by subsection (a)(1).
>
> 6. A consumer opens a checking account with a bank and signs a 20-page user agreement. The bank seeks to change the terms of the agreement occasionally and sends notices to the consumer in advance of each change. Each such notice arrives with a monthly statement sent to the consumer on a separate sheet titled "Change of Terms" that describes specific changes to the agreement and the effective date of those changes. The presentation of the proposed modification in this manner satisfies the reasonable-notice requirement of subsection (a)(1).
>
> 7. Same facts as Illustration 6, except that the bank seeks to change the terms by attaching to the monthly statement the revised version of the 20-page user agreement titled "Revised Agreement," which includes most of the terms in the original agreement as well as some additional or different ones. There is no explanation or indication as to which terms are being changed or added. The presentation of the proposed

> modification in this manner does not satisfy the reasonable-notice requirement of subsection (a)(1), because consumers cannot readily compare and analyze two such lengthy and technical documents, and thus cannot effectively review the proposed modification. See § 2, Comment *8*.

*4. Opportunity to reject the modification.* A modification is binding only if the consumer has a meaningful opportunity to reject it. Subsection (a)(2) requires that the modified terms not be adopted unless the business gives the consumer a reasonable opportunity (with reasonable notice) to reject the modification and continue the relationship without the new terms. There is a close conceptual relationship between adoption of standard terms after the consumer manifests assent to the transaction under § 2(b) and adoption of a modification of standard terms under this Section—in both settings, the standard contract terms are presented to the consumer after a decision to enter into the transaction was already made. Accordingly, the adoption of the standard contract terms in both settings has to satisfy a similar requirement: the existence of a reasonable opportunity to reject. Such opportunity requires affording the consumer a reasonable time period in which to exercise such rejection, as well as a reasonable rejection process.

> **Illustrations:**
>
> 8. A consumer attempts to log in to an online web service that the consumer joined as a member at an earlier time. The consumer is unable to log in without first clicking "I Accept" to a list of new terms that are presented as a modification of the original contract. Since the consumer is not given opportunity to reject the modification, the terms are not adopted.
>
> 9. A consumer receives a clearly labeled notice by mail regarding a change of the data-privacy terms governing an ongoing service. The notice informs the consumer that continued use of the service and acceptance of its benefits will constitute acceptance of the terms and a modification of the contract. The notice also explains that the change of terms will not apply, and the original terms will remain in place, if the consumer requests an opt-out within 30 days by signing and submitting a preaddressed opt-out form provided in the notice. The specified procedure for rejection of the modification is reasonable, and the requirement of subsection (a)(2) is satisfied.
>
> 10. A business providing digital services conducts all its communications with a consumer electronically. The consumer receives from the business an electronic notice regarding a change of terms governing the service. The notice informs the consumer that in order to reject the proposed modification, the consumer must print out a rejection form and mail it to the business's physical address. In light of the mismatch between the ordinary form of communications and the required rejection procedure, the specified procedure for rejection of the modification is not reasonable, and the requirement of subsection (a)(2) is not satisfied.

*5. Adoption of the modified standard contract terms.* With the receipt of reasonable notice of a proposed modification, reasonable notice that continuing the contractual relationship without rejecting the modified term will result in the modification becoming legally binding, and a reasonable opportunity to reject the modification, the modification is effective if the consumer either affirmatively manifests assent to it or continues to take the benefit of the relationship (without rejecting the modification). Subsection (a)(3) thus recognizes that the consumer can adopt the modified term by conduct that can fairly be treated as constituting acceptance. It maintains the dual-adoption framework of § 2, under which terms may be adopted either by an affirmative act of acceptance or by continuing the relationship and continuing to accept its benefits after the terms are presented.

§ 3 Adoption of a Modification of Standard Contract Terms, Restatement of the Law,...

Case 2:24-cv-01717-JNW    Document 94    Filed 09/19/25    Page 6 of 13

In some cases, the conduct that adopts the modification is the consumer's continued participation in the contractual relationship, e.g., in a credit-card contract when the consumer makes new purchases using the credit card. In such cases, the modification is adopted through acceptance by performance. Cf. Restatement of the Law Second, Contracts §§ 30, 62.

> **Illustration:**
> 11. A consumer enters a pay-as-you-go agreement with a fitness club. Months later, the business sends the consumer a notice by mail titled "Change of Terms of Service" describing particular changes to the agreement and giving the consumer 30 days to opt out of the modified terms (and retain the original terms). If the consumer does not exercise the opt-out option, the new terms are adopted as a modification as soon as the 30-day opt-out period elapses.

*6. Agreed procedures for modification.* Businesses often include in consumer contracts "modification clauses" that specify procedures for subsequent modifications. Such clauses may give concrete effect to the requirements of subsection (a) but cannot derogate from them, except that the agreed procedure for modification may replace the opportunity to reject in subsection (a)(2) with a reasonable opportunity to terminate the transaction entirely. The opportunity to terminate is reasonable if it does not impose unreasonable cost, loss of value, or personal burden on the consumer. If termination of the contractual relationship by the consumer is not feasible or practicable—for example, because such termination would impose a significant loss of value acquired by the consumer prior to the proposed modification; would force the consumer to incur a significant financial or other burden to enter a substitute contract; would squander a substantial investment in the relationship; or would undermine the consumer's reasonable, forward-looking expectation from the relationship—then the consumer does not have a reasonable opportunity to terminate. In such a case, the modified standard terms are usually not adopted even if the consumer manifested assent to the modification. In evaluating whether the costs imposed on the consumer by the modification are reasonable, courts may take into account the circumstances that prompted the business to propose the modification, including an increase in the business's costs; changes in market, technology, or regulatory environments; and improvements to the service provided by the business. If the modified terms confer substantial benefits, as in the example of new terms that are needed to accommodate an upgrade to the business's computer systems, the evaluation of the reasonableness of the opportunity to terminate must consider those benefits in relation to any cost, loss of value, or personal burden that a termination would impose on those consumers who prefer the original terms.

Modification clauses that grant a business power to modify standard terms without meeting the mandatory requirements of this Section are ineffective, and any modification attempted under such clauses is unenforceable by the business. See § 10.

> **Illustrations:**
> 12. A consumer attempts to log in to an online web service that the consumer joined as a member at an earlier time. The original contract includes a modification procedure. The consumer is unable to log in without first clicking "I Accept" to a list of new terms that are presented as a modification of the original contract. Since the consumer is not given opportunity to reject the modification when seeking to log in, the terms are not adopted unless the consumer is provided a meaningful opportunity to cancel the membership (for example, by clicking on a reasonably identified separate hyperlink that takes the consumer to a "Service Cancellation" page) and unless such termination can be done without the consumer incurring unreasonable cost, loss of value, or personal burden.

Case 2:24-cv-01717-JNW    Document 94    Filed 09/19/25    Page 7 of 13

§ 3 Adoption of a Modification of Standard Contract Terms, Restatement of the Law,...

13. Same facts as Illustration 12, except that the cancellation options—although clearly posted and processed without delay—trigger an early-termination fee (adopted as part of the original contract). Because of the imposition of a termination fee, the consumer is not offered a reasonable opportunity to terminate the transaction, and so the new terms are not adopted.

14. A consumer purchases a camera system for home surveillance. At the same time, the consumer enters a one-year service agreement that allows the consumer to stream the images recorded by the camera to a handheld device through an integrated streaming service separately provided by the business. The agreements include a modification procedure. A few months later, the business sends the consumer a notice explaining that the "Terms of Service" for the service agreement will be modified in 30 days, that continuing the service will constitute acceptance of the new terms, and that the terms may be rejected by cancelling the service before the end of the 30 days. Despite the reasonable notice and cancellation method, the opportunity to terminate the contractual relationship is not reasonable under subsection (b) because termination of the service agreement would impose a significant loss of value of the camera equipment.

15. A consumer enters a six-month service agreement with a snow-removal company to plow the consumer's driveway after each snowfall for a fixed price of $100. The agreement includes a modification procedure. Two months into the contract, the consumer receives a letter stating, "Due to the high demand for plowing services, we are modifying the contract with you by raising the price for plowing your driveway after each snowfall to $150. If you do not want to pay us $150, you may terminate our relationship by sending us an email to that effect within 14 days." Because termination of the transaction would entail a loss of value, the opportunity to terminate is not reasonable under subsection (b), and thus the consumer's failure to terminate the transaction within 14 days does not create an enforceable modification. In addition, the modification is separately unenforceable under subsection (c) because modification would have the effect of undermining the promise to plow for $100, which is part of the basis of the original bargain. Agreements incorporating a flexible price formula may be enforceable. See § 10.

16. Same facts as Illustration 15, except that the agreement does not include a modification procedure. The modification would be unenforceable under subsection (a) because the consumer is not provided with a reasonable opportunity to reject the modification. In addition, the modification is separately unenforceable under subsection (c) because modification would have the effect of undermining the promise to plow for $100, which is part of the basis of the original bargain.

17. A consumer subscribes to a web-based service that provides a no-charge, ad-free platform for uploading and sharing photos. The original agreement includes a clause stating that the ad-free feature of the service may be revised in the future. It also includes a modification clause that permits the business to change the terms of service any time in the future, subject to providing the consumers opportunity to terminate the subscription upon such change. Later, in order to ensure its commercial viability, the business decides to switch to a personalized-advertisement model that uses subscribers' personal data. It proposes a modification explaining the change and the type of data that will be collected. The offer to modify gives the consumer an option to accept the new terms or terminate the contract by deleting the account. The opportunity to terminate is reasonable despite imposing some inconvenience on consumers who choose to delete the account.

*7. Fair and equitable, and good faith.* Modifications must be made in good faith, and must be fair and equitable in view of circumstances not anticipated by the parties when the contract was made. See Restatement of the Law Second, Contracts § 89 (adopting the "fair and equitable" test); UCC § 2-209 (adopting the "good faith" test). A modification affects the performance of the contract, and it is thus governed by the general obligation to perform contracts in good faith. See Restatement of the Law Second, Contracts § 205; see also UCC § 1-304. It is restated in subsection (c) because of the heightened role that it plays in policing modifications of consumer contracts. The fair and equitable provision in subsection (c) is intended to ensure that the modification does not unduly disadvantage the consumer or add a surprising element to the contract even if the requirements of subsections (a) and (b) have been met. In particular, subsection (c) seeks to prevent opportunistic modifications that take advantage of locked-in consumers who have already invested in the contractual relationship. Thus, a modification of a standard contract term is not enforceable if it undermines the benefit of the bargain guaranteed by the original contract, as when it contradicts an affirmation of fact or promise by the business that has been made part of the basis of the original bargain between the business and the consumer. Such contradiction may occur, for example, when the business has promised in the original

Case 2:24-cv-01717-JNW     Document 94     Filed 09/19/25     Page 8 of 13

§ 3 Adoption of a Modification of Standard Contract Terms, Restatement of the Law,...

agreement or in a precontractual representation (see Comment *9*) that the standard contract term will not change for a fixed period of time. See also Illustrations 17 and 18. Even if the consumer is afforded the opportunity to terminate the relationship without unreasonable cost, loss of value, or personal burden (in line with an agreed-upon modification procedure under subsection (b)), the modification is not enforceable if the termination undermines the benefit of the bargain guaranteed by the original contract. In general, a modification is more likely to satisfy subsection (c) if the modified standard terms are simultaneously being offered, as original terms, to new customers. Then, there is less concern that the modification intends to take advantage of consumers who are locked in by the cost of changing the deal. Nevertheless, because the same term may affect entrenched consumers differently than new ones, it may be enforceable as part of the contract with new consumers, but not as a modification. Thus, an important implication of subsection (c) is that some standard terms that may be acceptable if presented as part of the original contract may not be enforceable if presented as part of a proposed modification.

> **Illustrations:**
>
> 18. A consumer opens a checking account with a bank and signs a standard-form checking-account agreement. The agreement specifies a fixed fee to be charged whenever a consumer draws a check from an account with insufficient funds. Later, the bank proposes a modification that would raise this fee prospectively. The consumer manifested assent to the modified term, or the agreement provided an appropriate procedure for the proposal of modifications, such that the requirements of subsection (a)(4)(A) or of subsection (b) are satisfied. The amount by which the bank may propose to increase the processing fee is limited by subsection (c).
>
> 19. A consumer purchases and downloads hundreds of song tracks from an online music store along with software that is necessary to play the tracks. The initial contract adopted as part of the purchase of the tracks states that the consumer may load the tracks to seven different devices. Later, together with a mandatory software update, the business proposes a modification that allows the consumer to load the tracks only to five devices. If the new, five-device clause applies only to prospective track purchases by the consumer, it does not violate subsection (c). If, instead, the new clause applies also to tracks already paid for, it violates subsection (c) because it retroactively reduces the consumer's benefit from the bargain and partially squanders the consumer's investment in previously purchased tracks.

*8. Substantial performance by one party.* Subsection (d) provides that standard contract terms may not be modified in a consumer contract that has been substantially performed by either party. This limitation addresses the concern that a modification may be initiated by the business once consumers are already locked into the transaction or relying on it, at which time the loss of acquired value from the modification, or from terminating the relationship, would be significant. What constitutes substantial performance varies with the subject matter and context of the contract. For example, in the case of a one-shot sale of a single good, substantial performance would consist of delivery of the good. In the case of a sale of goods to be delivered over time, substantial performance by the parties would consist of delivery of a portion of the goods such that the buyer received a substantial benefit from the contract. For contracts with unlimited duration, the modification may not apply to the portion already substantially performed, but the modification may apply to future obligations so long as it does not impose unreasonable cost, loss of value, or personal burden with respect to the portion already performed. The limitation in subsection (d) does not apply when the modification unambiguously adds value to the consumer.

> **Illustrations:**

> 20. A consumer receives from a bank a loan that is to be paid back in full within one year in 12 monthly payments. After the consumer receives the funds, the bank increases the charge for late monthly payments and adds a free prepayment option. The modification of the charge for late payments is unenforceable because the contract has been substantially performed by the bank. The addition of a free prepayment option is enforceable.
>
> 21. A consumer opens a savings account at a bank and adopts the standard contract terms. A year later, the bank modifies the data-privacy terms in the contract. Because the contract has unlimited duration and can be terminated by either party at any time, it has not been substantially performed, and the modification may be enforceable. If, however, the consumer can only avoid the new terms by closing the account, the availability of other saving options would determine whether the modification has the effect of undermining an affirmation or promise made by the bank that was made part of the basis of the original bargain, and thus whether it complies with subsection (c).

*9. Modification adopted using a more passive process.* It is not uncommon for the standard terms to be adopted, initially, through one adoption process, such as requiring the consumer to click "I Agree" to the terms, and then modified through a different process that does not require a similar affirmative action by the consumer. Terms modified in such a way can be adopted as part of the contract as long as the requirements of subsection (a) are met. There is concern, however, that when the initial terms are adopted through a specific, active process, the consumer would expect the same or a similar process for modifications of the standard terms. Similarly, if the business employed a particular process for prior modifications, the consumer would expect the same or a similar process for future modifications. A shift to a more passive process triggers a heightened notice requirement.

*10. Legal consequences of non-adopted terms.* A consumer has no obligation to assert that terms offered by the business as modifications were not adopted, and may instead choose to get the benefit of the modified terms. If the consumer so chooses, the business may not assert that its modified contract terms were not adopted. (Cf. § 2, Comment *12*.)

> **Illustration:**
> 22. A business posts a "New Privacy Policy" on its website without giving consumers a notice that the standard contract terms in this new policy purport to modify the existing contract. The New Privacy Policy is not adopted as a modification. As part of the New Privacy Policy, the business states that none of the consumers' personal information collected by the business will be shared with the government. A consumer may enforce the business's statement as a binding contractual promise despite the fact that the New Privacy Policy is not adopted as an enforceable modification of the original contract.

*11. Relation to the Uniform Commercial Code and to the Restatement of the Law Second, Contracts.* The rule of subsection (c), that modifications of standard terms are enforceable only if they are made in good faith, are fair and equitable, and do not undermine an affirmation or promise made by the business that has been made part of the basis of the bargain, is consistent with Restatement of the Law Second, Contracts § 89, and UCC § 2-209 (see also Comment *7*). UCC § 2-309 provides that a contract of indefinite duration is valid for a reasonable time and can be terminated on reasonable notice. The rule of subsection (d), that a contract substantially performed by one party may not be modified retroactively, is consistent with Restatement of the Law Second, Contracts § 89, which provides that a binding modification may be agreed upon "under a contract not fully performed on either side."

**Reporters' Notes**

*a. Generally.* The standard contract terms are invisible to most consumers at both the formation and the modification phases. There is a concern, however, that the process of modification can be even more passive, from the consumer side, than the initial formation of the contract. Despite this concern, modified standard terms are adopted prospectively to govern the contractual relationship, as long as the consumer is provided with reasonable notice and opportunity to review, and a reasonable opportunity to reject the modification (or, when applicable, to terminate the transaction); and as long as the consumer manifests assent to the modified terms or does not reject the modified terms and continues the contractual relationship after the expiration of the rejection or termination period. The modification must also satisfy the general good-faith requirement and must not deprive the consumer of the benefit from the original bargain.

*b. Agreed-upon procedures for modification.* Businesses often specify, in their original standard contract terms, a procedure for contract modification. Moreover, the specified modification procedures are often passive, requiring no affirmative acceptance by the consumer. Such procedures, however, cannot derogate from the requirements of this Section, although they can give concrete effects to these requirements. The business may specify a modification procedure that replaces the opportunity to reject the modified terms (and continue the relationship under the original terms) with opportunity to terminate the transaction entirely without unreasonable cost, loss of value, or personal burden. This exception, restated in subsection (b), is supported by cases, cited below, in which only a termination option was offered and yet the courts enforced the modifications (as long as the other requirements of this Section were met).

*c. Notice and opportunity to reject.* The requirements of notice and opportunity to reject imply that continued use of the product or service, without more, is insufficient for the adoption of the modified terms as part of the contract. Courts review the adequacy of the notice and the meaningfulness of the opportunity to reject on a case-by-case basis, and tend to focus on those factors that ensure that the proposed modification and opportunity to reject is reasonably communicated to consumers and that the opportunity to reject is reasonable under the circumstances.

When evaluating the reasonableness of the notice of modification, courts have focused on a number of factors related to placement, language, and salience of the notice, among other things, on a case-by-case-basis. Illustration 5 is based on Rodman v. Safeway, Inc., 2015 WL 604985 (N.D. Cal. Feb. 12, 2015), in which the court held that posting the modified standard terms alone, without any distinct or separate notice, fails to meet the notice requirement. To be effective, notice must reasonably inform consumers of the proposed modification. See also Sacchi v. Verizon Online LLC, 2015 WL 765940, at *3 (S.D.N.Y. Feb. 23, 2015) (holding that notice of modified terms sent in an email specifically regarding the modification, providing a clear link to the new terms, and explaining that "[b]y using the Services after the date of this notice, you accept and agree to abide by the revised terms," in addition to including a "Need-to-Know Information" section with a "Notice of Revised Services" in the billing statement containing a similar notice as that contained in the emails, were sufficient to inform a reasonable consumer of the terms); In re Facebook Biometric Info. Priv. Litig., 185 F. Supp. 3d 1155, 1164 (N.D. Cal. 2016) (holding that notice of the modified terms sent to consumers in individualized emails, titled "We're updating our terms and policies and introducing Privacy Basics," that included hyperlinks to the modified terms, in addition to providing salient notices of the changed terms at the top of each consumer's personal account, were sufficient to satisfy the notice requirement).

Illustration 6 is based on Badie v. Bank of America, 79 Cal. Rptr. 2d 273 (Cal. Ct. App. 1998), and exemplifies the principle that notices, when present, need to be reasonably communicated to be effective. Illustration 7 is based on Ozormoor v. T-Mobile USA, Inc., 2008 WL 2518549 (E.D. Mich. June 19, 2008), and reflects courts' attention to both the appearance and the location of the notice in determining its reasonableness. See also Plazza v. Airbnb, Inc., 289 F. Supp. 3d 537 (S.D.N.Y. 2018) (holding that consumers had received sufficient notice of the modified terms when seller presented the modified terms in a clickwrap format with a clear legend explaining that, to continue to use the services, consumers had to assent to the modified terms, in addition to sending subsequent communications with notices regarding the changed agreement). See also Murray v. Grocery Delivery E-Services USA Inc., 460 F. Supp. 3d 93, 98-99 (D. Mass. 2020) (concluding that emails communicating notice of the modified terms provided insufficient notice because "the new terms were hyperlinked at the bottom of a page full of loud, colorful text regarding sales. They were hidden in small print in a paragraph of other text and there was nothing to draw attention to them or to suggest a change. The terms were in black text while the rest of the email's promotions were spattered in bright green and yellow. These updated terms were not conspicuously communicated to [consumer]") (citations omitted); Decker v. Star Fin. Grp., Inc., 204 N.E.3d 918, 925 (Ind. 2023) (Goff, J., concurring) (citing a draft of this Restatement, and concluding that placing the modified terms as an addendum at the end of an ordinary email was insufficient to provide reasonable notice

because, as explained by the lower court, 187 N.E.3d 937, "[p]lacing the Addendum, which contained the arbitration provision and time-sensitive opt out provision, at the end of the routine monthly statement with no notice to the [consumer] that something was unusual about the monthly statement was not reasonably calculated to provide the Deckers with notice").

Courts have also articulated a number of factors in determining the reasonableness of the opportunity to reject or terminate. See, e.g., Torres v. S.G.E. Mgmt., L.L.C., 397 F. App'x 63 (5th Cir. 2010) (according to the initial contract, business may modify the arbitration contract without providing consumer with a meaningful opportunity to terminate; the original arbitration contract is illusory and thus unenforceable); Ackerberg v. Citicorp USA, Inc., 898 F. Supp. 2d 1172, 1176 (N.D. Cal. 2012) (consumer had a meaningful opportunity to terminate; the modified arbitration clause is enforceable); In re Zappos.com, Inc., Customer Data Sec. Breach Litig., 893 F. Supp. 2d 1058 (D. Nev. 2012) (according to the initial contract, business may modify the arbitration contract without providing consumer with reasonable notice or a meaningful opportunity to terminate; the original arbitration contract is illusory and thus unenforceable); Grosvenor v. Quest Corp., 854 F. Supp. 2d 1021 (D. Colo. 2012) (same). In particular, the opportunity to reject or terminate must be meaningful and not deprive consumers of value acquired prior to the modification. See, e.g., Ackerberg v. Citicorp USA, Inc., 898 F. Supp. 2d 1172, 1176 (N.D. Cal. 2012) (compelling arbitration because cardholder was provided with a realistic opportunity to exit the account when the new terms were added); Cayanan v. Citi Holdings, Inc., 928 F. Supp. 2d 1182, 1199-1200 (S.D. Cal. 2013) (confirming that plaintiff's failure to opt out after receiving change-of-terms notices constitutes acceptance of an arbitration clause); Rodriguez v. Instagram, LLC, 2014 WL 895438 (Cal. Super. Ct. Feb. 28, 2014) (sustaining demurrer when plaintiff did not have to agree to new terms, but continued use of website constituted acceptance); Bischoff v. DirectTV, Inc., 180 F. Supp. 2d 1097 (C.D. Cal. 2002) (concluding that a valid and enforceable arbitration agreement existed between the parties because consumer had accepted the terms of the agreement, including the arbitration clause, when consumer accepted the services); Lowman v. Citibank (S.D.), N.A., 2006 WL 6108680 (C.D. Cal. Mar. 24, 2006); Hart v. Charter Commc'ns, Inc., 2017 WL 6942425 (C.D. Cal. Nov. 8, 2017) (noting that consumer could reject the modified term because business clearly communicated an option to opt out of it).

*d. Adoption processes.* In many cases, a business may use one adoption process for the initial standard terms—a clickwrap, say—and another, more passive adoption process for the modified terms. Courts have generally allowed for this disparity in adoption processes. As long as the requirements established in § 2 and in this Section—reasonable notice (and opportunity to review) and a right to reject or terminate—are met, the modifications have been enforced. Switching to a different adoption process, however, raises a concern that consumers accustomed to the original process might fail to notice the modification. Accordingly, a heightened notice requirement may be imposed in such cases. When sufficient notice is absent, the modified terms will not be enforced. See, e.g., Douglas v. United States Dist. Ct. for Cent. Dist. of Cal., 495 F.3d 1062 (9th Cir. 2007) (refusing to find a customer bound by contract modifications, because, although the provider posted the revised contract on its website, it never notified the customer that the contract had changed); Martin v. Comcast, 146 P.3d 380, 389 (Or. Ct. App. 2006) (determining that despite the "bill stuffers" business reportedly sent, consumers could easily have continued using business's service without ever being aware of the arbitration clause, and so were not provided sufficient notice). Businesses commonly post modifications on their websites. Courts have generally found that such posting, without more, does not satisfy the notice requirement. See In re Zappos.com, Inc., Customer Data Sec. Breach Litig., 893 F. Supp. 2d 1058, 1066 (D. Nev. 2012) (deciding that a highly inconspicuous hyperlink buried among a sea of links does not provide proper notice); Grosvenor v. Qwest Corp., 854 F. Supp. 2d 1021 (D. Colo. 2012) (dismissing as insufficient the fact that business posted changes it made to its agreement to a remote web page).

*e. Good faith.* The rule of subsection (a) provides some procedural protection against opportunistic modifications. The rule of subsection (c) provides stronger protection by targeting the substance of the modified terms, rather than the modification process. In *Badie*, the court found that good faith limited the business to making only modifications that were within the reasonable contemplation of the parties at the time of the initial contract. *Badie*, 79 Cal. Rptr. 2d at 284. *Badie* is one of the leading cases in this area, having been highly influential in the Ninth Circuit and California courts and favorably cited in 92 subsequent cases by out-of-state courts (only one other case addressing non-employment-related consumer modifications, Kristian v. Comcast Corp., 446 F.3d 25 (1st Cir. 2006), has more out-of-state citations). *Badie* has been cited in numerous cases for its articulation of the good-faith doctrine in the context of consumer-contract modifications. The good-faith requirement in subsection (c) is further bolstered by the requirement that the modification (or termination under subsection (a)(2)) not undermine the benefit of the bargain guaranteed by the original contract, as when it contradicts an affirmation or promise made by the business that has been made part of the basis of the original bargain between the business and the consumer.

The unconscionability doctrine, which is restated in § 6, can also be used to police modifications of standard terms. A modification procedure that presents the new terms in a non-salient manner, as exemplified by Illustrations 5 and 7, would satisfy the standard for procedural unconscionability with relative ease, so that it would not be a factor, and the reasonableness

Case 2:24-cv-01717-JNW    Document 94    Filed 09/19/25    Page 12 of 13

§ 3 Adoption of a Modification of Standard Contract Terms, Restatement of the Law,...

of the modified terms would be adjudicated primarily under the substantive-unconscionability standard. See, e.g., Powertel, Inc. v. Bexley, 743 So. 2d 570 (Fla. Dist. Ct. App. 1999) (holding that revised telephone-service contract, sent as an insert with a bill, was procedurally and substantively unconscionable and therefore unenforceable); Perdue v. Crocker Nat'l Bank, 702 P.2d 503 (Cal. 1985) (reversing denial of a motion to amend so as to allow parties opportunity to present evidence regarding whether an "NSF charge" (a handling charge for checks drawn on accounts without sufficient funds) was an unconscionable element of the contract). The discretionary-obligation doctrine, restated in § 5, provides additional protection against modification clauses that give the business explicit, unfettered discretion to modify the standard contract terms.

*f. Consistent approach across state laws.* The restated rules pertaining to the modification of standard contract terms are supported by an empirical study of available cases in state and federal courts through 2023 with Decker v. Star Fin. Grp., Inc., 204 N.E.3d 918, 925 (Ind. 2023), addressing the enforceability of modifications in consumer transactions or consumer contracts, both in holdings and in dicta (excluding employment cases), starting with Panorama Residential Protective Association v. Panorama Corporation, 627 P.2d 121 (Wash. Ct. App. 1981).

Courts have developed a fairly consistent approach to determining the enforceability of modifications. In particular, the requirements of notice and opportunity to reject or terminate figure prominently in courts' reasoning. In almost all cases in which modifications were enforced and that involve the questions of notice as well as opportunity to reject or terminate, courts made explicit determinations that both the requirements of sufficient notice and opportunity to reject or terminate were satisfied. In the remaining case, the court made an explicit determination that sufficient notice was provided. In those cases in which modifications were not enforced, courts found that either notice or opportunity to reject or terminate was absent. In other cases, the courts refused to enforce the modifications because they were unconscionable, because they violated the duty of good faith, or for some other reason.

Those findings from all courts also hold for state supreme courts and state appellate courts (hereinafter "high state courts"). In cases in which both notice and the opportunity to reject or terminate were at issue, high state courts enforced modifications when both the requirements of sufficient notice and opportunity to reject or terminate were satisfied, except in one case in which the modification was held to be unconscionable. Among the cases in which enforcement was denied, in all but one the high state courts explained their refusal to enforce the modification by the absence of either notice or opportunity to reject or terminate (or both), or by finding that the modification was unconscionable.

The good-faith requirement of subsection (c) also figures prominently in the case law. In 23 cases, courts have explicitly discussed the requirement of good faith. Courts enforced the modification in 15 of 16 cases in which the requirement was found to be satisfied, and denied the modification in all seven cases in which it was found to be violated.

There is also support for the proposition that courts are comfortable accepting modifications presented by means different than the original terms, as long as the notice requirement is met. The manner in which the contract is originally presented as well as the mode of presentation of the modification are described in a large majority of opinions. In a majority of those cases, the business presented the modification in a manner different from the original. For example, courts have enforced modifications when the original contract was presented to the consumer in paper format and the modification was presented as a bill stuffer, a browsewrap, or an email, as long as the notice requirement was satisfied. Courts have focused on whether the particular modifications satisfied all necessary requirements. See, e.g., Herrington v. Union Planters Bank, N.A., 113 F. Supp. 2d 1026 (S.D. Miss. 2000) (finding that a cover letter accompanying the revised agreement was enough to sufficiently notify plaintiffs that the terms and conditions of their accounts would change).

**Case Citations - by Jurisdiction**

---

C.A.9,
Ariz.

**C.A.9,**

**C.A.9,** 2023. Quot. in sup., com. (3) quot. in sup. (quoting § 3 and com. (3) to § 3 of T.D. No. 2, 2022, which are now § 3 and com. (3) to § 3 of the Official Text). Driver who made deliveries for operator of an online marketplace on a contract

§ 3 Adoption of a Modification of Standard Contract Terms, Restatement of the Law,...

Case 2:24-cv-01717-JNW    Document 94    Filed 09/19/25    Page 13 of 13

basis filed a class action against operator, alleging that it violated federal and state laws by monitoring and wiretapping drivers' conversations when they communicated during off hours in closed social-media groups. The district court denied defendant's motion to compel arbitration pursuant to its updated terms of service. This court affirmed, holding, inter alia, that plaintiff was not bound by the updated terms of service. The court explained that, under Restatement of Consumer Contracts § 3, defendant's general email communications stating that the updates took place did not constitute reasonable notice of its proposed modified terms and did not provide reasonable opportunities for plaintiff to reject the proposed terms; furthermore, previous versions of the terms of service stating the possibility of future modifications similarly did not give plaintiff notice. Jackson v. Amazon.com, Inc., 65 F.4th 1093, 1100, 1101.

**Ariz.**

**Ariz.**2023. Cit. and quot. in sup. and adopted; subsecs. (a), (a)(2), and (c) cit. in sup.; subsec. (b) quot. in ftn. (citing § 3 and subsecs. (a), (a)(2), (b), and (c) to § 3 of T.D. No. 2, 2022, which are now § 3 and subsecs. (a), (a)(2), (b), and (c) to § 3 of the Official Text). Customer filed a class action in federal court against credit union, alleging that it used ambiguous and misleading language concerning its overdraft fees in violation of federal law. After credit union moved to compel customer to arbitrate pursuant to its updated terms and conditions, which customer had neither viewed nor affirmatively opted out of, the district court certified questions for review. This court adopted Restatement of the Law, Consumer Contracts § 3 in holding that a business could modify non-negotiated, standardized terms governing an on-going, at-will, consumer–business relationship if it showed that the contract's initial terms expressly notified the consumer that it could make future changes to the terms, that it gave—and the consumer received—reasonable notice of the modification and an opportunity to opt out without penalty, and that the consumer continued the relationship past a reasonable opt-out period. Cornell v. Desert Financial Credit Union, 524 P.3d 1133, 1135, 1336, 1139, 1140.

Restatement of the Law, Consumer Contracts © 2024 by The American Law Institute. All Rights Reserved. Reproduced with permission. Other editorial enhancements © Thomson Reuters.

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.