THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALVE CORPORATION,

                    Plaintiff,

          v.

ABBRUZZESE et al.,

                    Defendants.

No. 2:24-CV-1717-JNW

**PLAINTIFF VALVE CORPORATION'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION**

**NOTE ON MOTION CALENDAR: OCTOBER 10, 2025**

**ORAL ARGUMENT REQUESTED**

Complaint Filed: August 22, 2025

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     LEGAL STANDARD: VALVE SEEKS A PROHIBITORY
        INJUNCTION...........................................................................................................2

III.    ARGUMENT .......................................................................................................3

        A.      Valve Has Demonstrated a Likelihood of Success on the Merits...............3

                1.      Defendants Cannot Distinguish *Coinbase* ...........................3

                2.      The Current SSA is Valid and Enforceable .......................4

                        (a)     Valve's Amendment is Not Unconscionable ..........4

                        (b)     The Restatement of Consumer Contracts Does Not
                                Apply and Does Not Help Defendants....................7

                3.      The Court Should Reject Defendants' Request to
                        Reconsider Its Prior Rulings on Jurisdiction ......................9

                4.      Valve Has Not Acted Inequitably or Inconsistently ..........10

                5.      Defendants Fail to Meaningfully Dispute That Courts
                        Apply Dispute Resolution Provisions Retroactively .........11

        B.      Valve Will Suffer Irreparable Harm Absent Injunctive Relief.................12

        C.      The Balance of Equities Tilts Decisively In Favor of Valve ....................13

        D.      The Public Interest Favors an Injunction ....................................................15

        E.      The Court Should Not Require a Bond........................................................16

IV.     CONCLUSION....................................................................................................17

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS MOTION
FOR A PRELIMINARY INJUNCTION – i
No. 2:24-CV-1717-JNW

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*In re Amazon Prime Video Litigation*,
765 F. Supp. 3d 1165 (W.D. Wash. 2025).....................................................................8

*AT&T Mobility LLC v. Bernardi*,
Nos. C 11–03992 CRB, C 11–04412 CRB, 2011 WL 5079549 (N.D. Cal. Oct. 26, 2011) .................................................................................................................................3

*AT&T Mobility LLC v. Smith*,
No. 11–cv–5157, 2011 WL 5924460 (E.D. Pa. Oct. 7, 2011) ........................................3

*Bassett v. Electronic Arts Inc.*,
No. 13–CV–04208 (MKB)(SMG), 2015 WL 1298644 (E.D.N.Y. Feb. 9, 2015) ...........7

*Berman v. Freedom Financial Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ...........................................................................................9

*Capitol Records, LLC v. Bluebeat, Inc.*,
No. CV 09-8030-JFW (JCx), 2009 WL 10681964 (C.D. Cal. Dec. 16, 2009) ............17

*Comer v. Micor*,
436 F.3d 1098 (9th Cir. 2006) .......................................................................................16

*Contour IP Holding, LLC v. GoPro, Inc.*,
No. 3:17-cv-04738-WHO, 2021 WL 1022854 (N.D. Cal. Mar. 17, 2021) ..................10

*Cruz v. Lowe's Home Centers, Inc.*,
No. 8:09-cv-1030-T-30MAP, 2009 WL 2180489 (M.D. Fla. July 21, 2009) ..............11

*Dasher v. RBC Bank (USA)*,
745 F.3d 1111 (11th Cir. 2014) .....................................................................................11

*Doe v. Snyder*,
28 F.4th 103 (9th Cir. 2022) ............................................................................................2

*FTC v. Standard Oil Co. of California*,
449 U.S. 232 (1980)........................................................................................................13

*G.G. v. Valve Corp.*,
799 F. App'x 557 (9th Cir. 2020) ....................................................................................3

*Goldman, Sachs & Co. v. City of Reno*,
747 F.3d 733 (9th Cir. 2014) ...........................................................................................2

*Grant v. T-Mobile USA, Inc.*,
No. 2:23-cv-01946-MJP, 2024 WL 3510937 (W.D. Wash. July 23, 2024) ..................6

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS MOTION
FOR A PRELIMINARY INJUNCTION – ii
No. 2:24-CV-1717-JNW

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Gray v. Amazon.com, Inc.*,
  653 F. Supp. 3d 847 (W.D. Wash. 2023), *aff'd*, No. 23-35377, 2024 WL 2206454 (9th Cir. May 16, 2024).................................................................................................8

*Jain v. Unilodgers, Inc.*,
  No. 21-cv-09747-TSH, 2024 WL 478030 (N.D. Cal. Feb. 7, 2024) ...................................15, 17

*Langadinos v. Washington State Bar Association*,
  No. 2:23-cv-250, 2025 WL 1358584 (W.D. Wash. Apr. 25, 2025), *appeal filed*, No. 25-3372 (9th Cir. May 28, 2025)...............................................................................10

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
  571 F.3d 873 (9th Cir. 2009) ...........................................................................................10

*McCumbee v. M Pizza, Inc.*,
  No. 3:22-CV-128, 2023 WL 2725991 (N.D. W. Va. Mar. 30, 2023) .......................................11

*Morgan Keegan & Co. v. McPoland*,
  829 F. Supp. 2d 1031 (W.D. Wash. 2011)...........................................................................16

*Morgan Stanley & Co. v. Couch*,
  659 F. App'x 402 (9th Cir. 2016) .......................................................................................16

*Morgan Stanley & Co. v. Couch*,
  134 F. Supp. 3d 1215 (E.D. Cal. 2015), *aff'd*, 659 F. App'x 402 (9th Cir. 2016)...................16

*Morgan v. Sundance, Inc.*,
  596 U.S. 411 (2022)...................................................................................................11, 13

*NYLIFE Securities, LLC v. Duhame*,
  No. 20-cv-07413-JSC, 2020 WL 7075599 (N.D. Cal. Dec. 3, 2020)...............................15, 16

*Oppenheimer & Co. v. Mitchell*,
  No. C23-67 MJP, 2023 WL 2428404 (W.D. Wash. Mar. 9, 2023)...................................15, 16

*Pilon v. Discovery Commc'ns, LLC*,
  769 F. Supp. 3d 273 (S.D.N.Y. 2025) ................................................................................6

*Renegotiation Board v. Bannercraft Clothing Co.*,
  415 U.S. 1 (1974)............................................................................................................12

*Rodriguez v. Experian Services Corp.*,
  No. CV 15-3553-R, 2015 WL 12656919 (C.D. Cal. Oct. 5, 2015)...........................................6

*Saeedy v. Microsoft Corp.*,
  757 F. Supp. 3d 1172 (W.D. Wash. 2024)............................................................................6

*Sampson v. Murray*,
  415 U.S. 61 (1974).........................................................................................................12

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS MOTION
FOR A PRELIMINARY INJUNCTION – iii
No. 2:24-CV-1717-JNW

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Saunders v. Lloyd's of London*,
113 Wash. 2d 330, 779 P.2d 249 (1989) ................................................................ 11

*Search v. Bank of America, N.A.*,
No. C12–52 TSZ, 2012 WL 4514285 (W.D. Wash. Oct. 2, 2012) ........................... 8

*Sobot v. Clean the World Foundation Inc.*,
No. 22-cv-1846 (TSC), 2024 WL 4119389 (D.D.C. Sept. 9, 2024) ......................... 9

*Starkgraf v. White*,
No. 3:23-cv-05593-RJB-MLP, 2024 WL 2925013 (W.D. Wash. May 10, 2024), *report and recommendation adopted*, 2024 WL 2923817 (W.D. Wash. June 10, 2024) ..................... 2

*Wilson v. Huuuge, Inc.*,
944 F.3d 1212 (9th Cir. 2019) ................................................................................... 5

**STATUTES**

9 U.S.C. § 2 .............................................................................................................. 9

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS MOTION
FOR A PRELIMINARY INJUNCTION – iv
No. 2:24-CV-1717-JNW

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1

## I.     INTRODUCTION

2    Valve's Motion[1] established every essential predicate for preliminary injunctive relief.

3    Defendants do not rebut any of those showings.[2]

4    *First*, Valve is likely to succeed on the merits: the Current SSA is valid and enforceable.

5    Defendants argue that this Court should defer to a minority of arbitrators who determined without

6    authority that the Superseded SSA controls, suggesting that this Court should disregard binding

7    Supreme Court authority as "irrelevant" and "move on." Under *Coinbase*, however, only this Court

8    may determine which agreement governs.

9    *Second*, Valve will suffer irreparable harm if the arbitrations continue. Defendants argue

10   that Valve's showing of harm must meet a higher standard because Valve seeks a "mandatory"

11   injunction—one that orders a party to take affirmative action. But Defendants cite no case holding

12   that enjoining an arbitration is "mandatory." Indeed, it is classically prohibitory, because it enjoins

13   the parties from further prosecuting arbitrations. Defendants argue that requiring a party to

14   arbitrate absent an agreement to arbitrate is not *per se* irreparable harm, but do not distinguish the

15   authorities to the contrary.

16   *Third*, the balance of equities supports an injunction. Defendants conjure a parade of

17   horribles, such as "lost time," "dissipated investments," and "potentially not being able to litigate

18   their claim at all." But Defendants make no factual showing on any of these points. Nor could they:

19   Many claimants seem to have no interest in their arbitrations.[3] In arbitrations that have proceeded

20   to hearing, many failed even to appear to testify in support of their own claims. Numerous

21

22

23   [1] Capitalized terms have the meanings ascribed to them in the Motion. Unless noted, internal citations and quotations are omitted and all emphasis is added. References to "Reply Ex." refer to exhibits filed with the Reply Declaration of Andrew J. Fuchs, dated October 3, 2025.

24   [2] Defendants lard their opposition with irrelevant side arguments and mischaracterizations. This reply does not engage these points and instead focuses on the law and relevant facts.

25

26   [3] Bucher Law has filed arbitration demands on behalf of thousands of claimants. (Fuchs Decl. ¶¶ 4-5.) Defendants here are among the claimants in those arbitrations. (*Id.* ¶ 7.)

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS MOTION
FOR A PRELIMINARY INJUNCTION – 1
No. 2:24-CV-1717-JNW

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

claimants, including several minors, inexplicably dropped their claims on the eve of hearings.[4] In 43 of the 47 arbitrations that proceeded to final award, claimants have recovered nothing.[5] More fundamentally, Valve has been and will be prejudiced by having to arbitrate claims it did not agree to arbitrate.

*Fourth*, the public interest favors an injunction. Defendants point to a body of FAA-centered federal law favoring arbitration, but that law applies only when the parties have an agreement to arbitrate. There is no such agreement here.

## II.    LEGAL STANDARD: VALVE SEEKS A PROHIBITORY INJUNCTION

Defendants assert that Valve seeks a *mandatory* injunction "order[ing]" them "to take action pending the determination of the case on its merits." *Doe v. Snyder*, 28 F.4th 103, 111 (9th Cir. 2022). That is incorrect. Valve is seeking a *prohibitory* injunction requiring that Defendants *not* act, *i.e.*, to desist from arbitrating their claims while this Court determines whether the Superseded or Current SSA applies. (Mot. 1, 24.)

Defendants cite no case where a court found a request to enjoin arbitrations to be mandatory. *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 738 (9th Cir. 2014) (Opp'n 14), did not distinguish between mandatory and prohibitory relief, and instead applied the ordinary injunctive relief standard in deciding whether to enjoin an arbitration. *Starkgraf v. White*, 2024 WL 2925013 (W.D. Wash. May 10, 2024), *report and recommendation adopted*, 2024 WL 2923817 (W.D. Wash. June 10, 2024) (Opp'n 1, 13), has nothing to do with arbitrations and, unlike this case, addressed a request for mandatory relief—compelling a defendant to build fencing. *Id.* at *2.

Defendants err in accusing Valve of "upending" the status quo—which they define as

---

[4] This is unsurprising. After Valve filed this action, Valve and its counsel received unsolicited communications from many Defendants indicating that they were unaware arbitrations had been filed against Valve in their names. (*Id.*) Bucher Law filed arbitrations on behalf of persons who were deceased at the time of filing, in active bankruptcy proceedings, and minors. (Compl. ¶¶ 107 & n.28, 221.)

[5] Claimants in the other four collectively recovered only about $8,000 in damages, even after trebling.

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS MOTION
FOR A PRELIMINARY INJUNCTION – 2
No. 2:24-CV-1717-JNW

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

arbitration under the Superseded SSA. (Opp'n 14.) That had been the status quo until Bucher Law (i) sought and obtained a ruling from an arbitrator that the Superseded SSA was unenforceable and then (ii) filed a putative class action seeking to litigate the same claims as in arbitration on behalf of a class that includes all Defendants. (Mot. 5-6.) It was *this* conduct by Defendants' own counsel that disrupted the status quo and led Valve to withdraw the arbitration provision in favor of the Current SSA's provision for litigation of disputes in court, which all Defendants accepted.

## III.   ARGUMENT

### A.   Valve Has Demonstrated a Likelihood of Success on the Merits

#### 1.   Defendants Cannot Distinguish *Coinbase*

*Coinbase* is unequivocal: this Court must decide the threshold question whether the Superseded SSA or Current SSA controls. (Mot. 3, 10-11.) Defendants seek to characterize Valve's invocation of *Coinbase* as a putative request for "reconsideration" of this Court's order compelling seven plaintiffs (none of whom are Defendants) to arbitration in *Wolfire.* Defendants also point to the Ninth Circuit's decision affirming an order compelling arbitration in *G.G. v. Valve Corp.*, 799 F. App'x 557, 558 (9th Cir. 2020). (Opp'n 4, 15.) But Valve is not seeking to revisit those decisions. Bucher Law secured rulings in 2024 declaring the Superseded SSA unenforceable. That led Valve to adopt the Current SSA requiring disputes to proceed in court. It is this *new* agreement that Valve is seeking to enforce for the *first* time.

Defendants assert that Valve's invocation of *Coinbase* is an "interlocutory appeal from the arbitrators' decisions." (Opp'n 30.) Valve is not asking this Court to review any arbitral decision. Rather, Valve is asking this Court to make an independent, threshold determination—one that *Coinbase* reserves for a court—that the parties no longer have a binding arbitration agreement and that these arbitrations must be enjoined. *See AT&T Mobility LLC v. Smith*, 2011 WL 5924460, at *3 (E.D. Pa. Oct. 7, 2011) (if a court "conclude[s] . . . the dispute is not arbitrable, [it has] the power [to] enjoin [ongoing] arbitration"); *AT&T Mobility LLC v. Bernardi*, 2011 WL 5079549, at

*12 (N.D. Cal. Oct. 26, 2011).[6] Under *Coinbase*, Valve does not have to "overturn" the decision of any arbitrator (Opp'n 15), because those arbitrators had no authority to render those decisions in the first place. (*See* Mot. 2, 10-11.)

Regardless, Defendants mischaracterize the stay decisions of arbitrators, asserting that Valve is trying to overcome a "uniform record" and "consistent line" of adverse decisions. (Opp'n 15.) But the majority of merits arbitrators stayed proceedings in deference to this Court. (*See* Fuchs Decl. ¶ 45; *see also, e.g.*, Reply Exs. 14-18.) Even those arbitrators who have declined to stay proceedings have made clear that they will abide by a court decision enjoining the arbitrations. (Dkt. 95, Ex. B, Arbitrator Jossen Order at 7; Arbitrator Samas Order.) Four of the orders on which Defendants rely relate to claimants who are no longer even part of this action and/or with respect to whom Valve no longer seeks relief. (Dkt. 95, Ex. B, Orders of Arbitrator Gilman, Goins, Kingsley, Saydah.)

Defendants also point repeatedly to a decision of Arbitrator Janice Sperow that Defendants contend "exemplifies" rulings of arbitrators. (Opp'n 7-10, 28-29, 33.) Defendants neglect to mention that the AAA later disqualified Ms. Sperow. Her replacement <u>correctly rejected</u> her ruling, concluding under *Coinbase* that "both Arbitrator Sperow and I lack jurisdiction . . . . to make an arbitrability determination." (Reply Ex. 19 at 2.)

### 2. The Current SSA is Valid and Enforceable

#### (a) Valve's Amendment is Not Unconscionable

Defendants seek to vitiate their assent to the Current SSA, asserting it was "imposed unilaterally" through "coercion" and "adhesion tactics." (Opp'n 2, 16-17.) But Valve gave conspicuous notice of the Current SSA. Under well-settled law, it is enforceable. (Mot. 11-15.)

***There Was Reasonably Conspicuous Notice and Mutual Assent***: The Opposition does not dispute that Valve's notices—whether delivered through email, In-Client Pop-Up, Blog Post, or

---

[6] Defendants contend that Valve "invited" those rulings. Nonsense. Valve was obligated to request stays because Defendants proceeded with unauthorized arbitrations.

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS MOTION
FOR A PRELIMINARY INJUNCTION – 4
No. 2:24-CV-1717-JNW

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

the Steam Website—clearly and prominently explained that the arbitration provision and class action waiver were being removed. Defendants do not contend that notice was insufficient for the 507 (out of 548) individuals who affirmatively accepted the Current SSA by (i) checking the check box affirming "I Agree to the Updated Steam Subscriber Agreement" and clicking "Accept Updated SSA" through the Pop-Up Notice; (ii) making a purchase and agreeing to the Current SSA by checking "I agree to the terms of the Steam Subscriber Agreement (last updated Sep 26, 2024)" and clicking the "Purchase" button; or (iii) performing both of those actions.[7] (Mot. 7.)

Instead, Defendants focus on the 41 (previously 42) individuals who accepted the Current SSA by failing to delete or discontinue use of their account before November 1, 2024, (Lynch Decl. ¶¶ 27-28), complaining that they purportedly did not receive sufficient notice (Opp'n 18). But Valve provided all Defendants conspicuous notice by email, In-Client Pop-Up, Blog Post, and on the Steam Website. (Mot. 12-13.)[8]

Defendants posit that constructive notice is insufficient to "form a contract." (Opp'n 18.) But the sole authority upon which they rely held otherwise. *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1220 ("In the absence of actual knowledge, a reasonably prudent user must be on constructive notice of the terms.").

*Wilson* held that a consumer did not have constructive notice because the terms of use were, unlike here, "buried twenty thousand leagues under the sea" in a game's settings menu. 944 F.3d at 1221.[9] The "buried" presentation in *Wilson* bears no relation to the comprehensive notice plan

---

[7] Valve has voluntarily dismissed 22 of the original 572 Defendants because their arbitrations are complete or withdrawn. (Dkt. 98.) One of these individuals accepted the Current SSA through continued use; the other 21 affirmatively accepted the Current SSA. (Dkt. 98; Lynch Decl. Ex. C.) Two other individuals, Greg Fish and Jeremy Lucas, remain Defendants but Valve no longer seeks relief as to them because their arbitrations are also complete. Valve has requested that these Defendants stipulate to dismissal of the action as to them. To date they have not agreed.

[8] Defendants admit that notice was provided in multiple ways. (Opp'n 2 ("Valve attempted to notify PC Gamers . . . via pop-ups, blog posts, and emails.").)

[9] The company in *Wilson* presented an agreement through "browsewrap." *Id.* at 1220. "Browsewrap agreements" are those "in which a website offers terms through a hyperlink and a user is said to assent simply by using the website." *Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d

---

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS MOTION
FOR A PRELIMINARY INJUNCTION – 5
No. 2:24-CV-1717-JNW

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

here. Valve provided conspicuous notice of the modification through multiple channels, including by email and In-Client Pop-Up. Courts consistently hold that email notice and pop-ups provide conspicuous notice of a modification. (Mot. 14 (citing cases)); *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 289 (S.D.N.Y. 2025) (pop-up provided "conspicuous notice of . . . change" to terms).

Further, numerous courts have ruled that consumers manifest assent if they continue to use a service after receiving notice of updated terms. (Mot. 11, 14 (citing cases).) Defendants do not challenge this uniform authority, and wrongly suggest that Washington State law is "unsettled" on this point. (Opp'n 18.) To the contrary, Washington law recognizes that a consumer may be validly bound to a new agreement by mutual assent, including assent through continued use. *See Grant v. T-Mobile USA, Inc.*, 2024 WL 3510937, at *3 (W.D. Wash. July 23, 2024) (applying "Washington law").[10]

***There Was a Meaningful Choice***: Defendants claim that Valve did not provide them a meaningful choice because it "forced consumers to choose between their antitrust claims and their previous purchases." (Opp'n 2; *see also id.* at 16, 17, 19.) Not so. Valve's notice expressly stated that Steam users *could* reject the proposed modifications *and* retain the licenses they had purchased to use games on Steam by suspending their use of Steam: "[T]he updated [SSA] will become effective on November 1, 2024, unless you delete *or discontinue use* of your Steam account before then." (Lynch Decl. ¶¶ 10, 12.) The only condition was that they forego using their accounts while their arbitrations were pending.

This meant that Defendants had the option to keep their Steam accounts and continue arbitrating under the Superseded SSA. Ryan Lally, a Steam user represented by Mason LLP, chose

---

1172, 1189 (W.D. Wash. 2024). A browsewrap agreement may "fail to provide sufficient notice," *id.*, because the user may not even know the arbitration agreement "exists," *Rodriguez v. Experian Servs. Corp.*, 2015 WL 12656919, at *1 (C.D. Cal. Oct. 5, 2015).

[10] Defendants seek to distinguish *Grant* because it cites a Ninth Circuit decision that also analyzed New York and California law. (Opp'n 18-19.) But *Grant* does not rely on New York or California law for the proposition that continued use is sufficient to manifest assent.

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS MOTION
FOR A PRELIMINARY INJUNCTION – 6
No. 2:24-CV-1717-JNW

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1    to do precisely that. Because Lally had not logged into his account and had not otherwise accepted

2    the terms of the Current SSA, Valve agreed to proceed with arbitration with Lally under the

3    Superseded SSA. (Reply Ex. 20 at 5.)

4         This modification is also not unconscionable for a more fundamental reason:

5    "unconscionability requires a deprivation of meaningful choice, and for nonessential activities, the

6    consumer always has the option of forgoing the activity." *Bassett v. Elec. Arts Inc.*, 2015 WL

7    1298644, at *11 (E.D.N.Y. Feb. 9, 2015), *report and recommendation adopted*, 93 F. Supp. 3d 95

8    (E.D.N.Y. 2015). Video games "are nonessential recreational activities," and presenting a choice

9    whether to forego video games cannot render a consumer agreement unconscionable. *See id*.

10        ***The Current SSA is Not a "Limitations Trap"***: Defendants portray the Current SSA as a

11   "limitations trap" to render claims time-barred. (Opp'n 17.) Not so. As Valve explained, "[b]ecause

12   the pending class action tolls the statute of limitations on their claims, Defendants need not be

13   concerned that their claims will become time-barred." (Mot. 22.)[11]

14        ***Courts Afford Defendants a Full and Fair Opportunity to Prosecute Their Claims***:

15   Defendants never explain why it would be "oppressive" (Opp'n 17) to have their claims resolved

16   in this Court rather than arbitrated. Bucher Law has itself represented that the putative class action

17   pending before this Court is "superior to any other method for the fair and efficient adjudication

18   of this legal dispute." (Dkt. 78 ¶ 99.) It is false to suggest that Defendants were being asked to

19   "wipe out live antitrust claims" (Opp'n 17) by consenting to the Current SSA.

20              **(b)    The Restatement of Consumer Contracts
                        Does Not Apply and Does Not Help Defendants**

21

22        The Restatement of Law of Consumer Contracts ("RLCC") also does not help Defendants.

23   Defendants assert that "Washington courts have long treated the Restatement as persuasive

24   authority." (Opp'n 19-20.) But the two cases they cite, from 1989 and 1990, dealt with other

25   ─────────────
     [11] Valve has explained in arbitrations that, if claimants proceed to award in arbitration, they cannot
     benefit from *American Pipe* tolling because by proceeding in arbitration they have opted out of
26   the class. If claimants do not proceed to award, however, they continue to benefit from *American
     Pipe* tolling until an order on class certification.

─────────────

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS MOTION
FOR A PRELIMINARY INJUNCTION – 7
No. 2:24-CV-1717-JNW

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1    established Restatements—not the new RLCC, which was not published until 2024. To date, no

2    Washington state or federal court has cited or adopted the RLCC.

3        Further, Defendants' theory rests entirely on Section 3 of the RLCC—which Defendants

4    admit applies to "unilateral modifications." (Opp'n 19.) Valve's change to its SSA was not

5    unilateral: it was a bilateral modification that offered Defendants a meaningful choice and was

6    procured after providing reasonable notice and securing mutual assent. (Mot. 11-15; *see* Point

7    III.A.2, *supra*.)

8        Defendants contend that, under Section 3 of the RLCC, a consumer must be provided the

9    choice to reject new contract terms and continue to use the product or service under superseded

10   terms. They cite no Washington law to support that proposition. Courts applying Washington law

11   routinely enforce modified consumer contract terms where there is no option to reject new terms

12   while continuing to use the service. *See Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 857 n.9

13   (W.D. Wash. 2023) (rejecting contention that plaintiffs did not consent through continued use

14   where terms "expressly provide that users' 'continued use of Alexa' after any modifications to that

15   agreement 'constitutes [their] acceptance of the terms' therein"), *aff'd*, 2024 WL 2206454 (9th Cir.

16   May 16, 2024); *Search v. Bank of Am., N.A.*, 2012 WL 4514285, at *5 (W.D. Wash. Oct. 2, 2012)

17   (rejecting plaintiff's challenges to amended credit card agreement where "change-in-terms notice

18   was . . . an invitation to enter into a new relationship governed by the modified terms" and

19   "Plaintiff accepted this invitation by . . . continuing to use [her] card"); *see also In re Amazon

20   Prime Video Litig.*, 765 F. Supp. 3d 1165, 1170, 1173 (W.D. Wash. 2025) (where terms provided

21   that user's "continued use of the Service or Software following any changes will constitute your

22   acceptance of such changes," change in terms was "permit[ted]").

23       Defendants further contend that, under RLCC Section 3, the Current SSA is unenforceable

24   because Valve did not propose the modifications "in good faith." They cite no Washington law for

25   the proposition that a court may evaluate a party's subjective intent in assessing the enforceability

26   of an amended agreement. In any event, Valve acted in good faith. The RLCC provides that a

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS MOTION
FOR A PRELIMINARY INJUNCTION – 8
No. 2:24-CV-1717-JNW

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

modification is proposed in good faith where "the business [has] an objectively demonstrable legitimate reason for the modification." Valve had such a reason: Defendants' own counsel obtained arbitrator orders holding the Superseded SSA's arbitration agreement unconscionable and unenforceable. They then filed a putative nationwide class action premised on those rulings. In view of the arbitrator's rulings and the class action, and to eliminate customer confusion, Valve removed the arbitration agreement from the SSA. Valve did not "choke off antitrust claims"—it merely modified the SSA to provide that those claims are to proceed in court, the forum for which Defendants' own counsel advocated in its class action.

Defendants also assert that Valve was barred from removing the arbitration agreement under the RLCC because "consumers had already filed demands and substantially performed." (*Id.* at 20 (citing RLCC § 3(d)).) Filing arbitral demands has nothing to do with "performance" under a consumer contract (*i.e.*, a contract providing for the payment of money in exchange for a service). Further, as the FAA recognizes, arbitration agreements are revocable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Consequently, Defendants were "free to modify" their subscriber agreement with Valve "at any time" by "mutual consent." *Sobot v. Clean the World Found. Inc.*, 2024 WL 4119389, at *3 (D.D.C. Sept. 9, 2024). That is exactly what they did.

### 3. The Court Should Reject Defendants' Request to Reconsider Its Prior Rulings on Jurisdiction

The Court should also decline Defendants' weeks-late invitation (*see* LCR 7(h)(1)) to revisit its August 1, 2025, decision to exercise subject-matter jurisdiction. (Opp'n 21-23; Dkt. 76 at 4-7.) Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 858-59 (9th Cir. 2022); *see also* LCR 7(h)(1) (such motions are "disfavored"). Accordingly, reconsideration "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS MOTION
FOR A PRELIMINARY INJUNCTION – 9
No. 2:24-CV-1717-JNW

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1    intervening change in the controlling law." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH*

2    *& Co.*, 571 F.3d 873, 880 (9th Cir. 2009).

3      None of those extraordinary circumstances are present here. Defendants do not identify a

4    change in law or newly discovered evidence. Nor do they explain how this Court putatively erred

5    in its ruling—which came after the Court considered *three* supplemental briefs on jurisdiction.

6    (*See* LCR 7(h) (movant "shall point out with specificity the matters which the movant believes

7    were overlooked or misapprehended").) Defendants simply ignore the Court's Order and

8    repackage prior arguments. (Dkt. 65 at 7-16.)

9      Defendants contend that there is no justiciable controversy because Valve is continuing to

10   participate in the arbitrations. That is nonsense: Valve is participating under protest and a

11   reservation of rights because there is no agreement to arbitrate. (Fuchs Decl. ¶ 51.) Defendants

12   could have asserted this argument before the Court rendered its decision and did not. *See*

13   *Langadinos v. Wash. State Bar Ass'n*, 2025 WL 1358584, at *1-2 (W.D. Wash. Apr. 25, 2025)

14   (Whitehead, J.) (denying reconsideration where evidence "could . . . have been previously

15   presented"). It is not a basis for reconsideration now.

16      **4.**  **Valve Has Not Acted Inequitably or Inconsistently**

17     Defendants' contention that Valve is judicially and equitably estopped from enforcing the

18   Current SSA (Opp'n 24-28) is unfounded. Defendants' judicial estoppel argument recycles

19   arguments previously advanced (Dkt. 65 at 16-19), and lacks merit for all the reasons Valve

20   previously articulated (Dkt. 69 at 5-6). Valve has not "acted inconsistently with its right to enjoin

21   arbitration." (Opp'n 25; *see also id.* at 26-28.) It reacted to changed circumstances set in motion

22   by Defendants' own counsel, which obtained a ruling that the Superseded SSA was unenforceable

23   and filed a putative class action in this Court on that basis. *See, e.g.*, *Contour IP Holding, LLC v.*

24   *GoPro, Inc.*, 2021 WL 1022854, at *3 (N.D. Cal. Mar. 17, 2021) (no judicial estoppel where "the

25

26

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS MOTION
FOR A PRELIMINARY INJUNCTION – 10
No. 2:24-CV-1717-JNW

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

facts underlying [party's] position changed").[12] In the wake of changed circumstances, Valve modified the SSA to remove its arbitration agreement. Valve could not have acted inconsistently to "waive" its rights under the Controlling SSA before it took effect. *See, e.g.*, *Cruz v. Lowe's Home Centers, Inc.*, 2009 WL 2180489, at *3 (M.D. Fla. July 21, 2009) ("A party cannot waive a right that it does not yet have."). Valve's reasonable response to Bucher Law's own conduct also defeats Defendants' claim of equitable estoppel. *Saunders v. Lloyd's of London*, 113 Wash. 2d 330, 340, 779 P.2d 249, 255 (1989) (equitable estoppel requires act that is both "inconsistent" and inequitable).

### 5.  Defendants Fail to Meaningfully Dispute That Courts Apply Dispute Resolution Provisions Retroactively

Courts consistently apply amended dispute resolution provisions retroactively when the agreement plainly articulates that intent. (Mot. 15-16 (citing cases).) Defendants seek to distinguish some of those decisions[13] by arguing that "they arose under different governing law than Valve advances" and "turned on clear, mutual assent." (Opp'n 31-32.) But Defendants offer no support for the contention that Washington State courts, which apply traditional principles of contract interpretation, would reach a different result. Here, Defendants clearly and unambiguously manifested their assent to the Current SSA.

Defendants seek to distinguish *Dasher v. RBC Bank (USA)*, 745 F.3d 1111 (11th Cir. 2014), on the ground that there a defendant moved to compel arbitration after terminating the arbitration clause. But that is directly parallel with this case. Here, Valve sought to enjoin arbitrations, *i.e.*, the opposite of a motion to compel, after the parties modified the Current SSA to remove the arbitration agreement. The modification here, as in *Dasher*, is enforceable retroactively.

---

[12] These changed circumstances, engineered by Defendants' counsel, distinguish this case from *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), where a defendant moved to compel arbitration only after litigating in court for months while the arbitration agreement was in place. *Id.* at 417.

[13] Defendants do not even address four decisions cited by Valve. (Mot. 16 (citing cases).) *See also McCumbee v. M Pizza, Inc*., 2023 WL 2725991, at *10 (N.D. W. Va. Mar. 30, 2023) (compelling plaintiff who signed arbitration agreement after initiating class action to arbitrate).

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS MOTION
FOR A PRELIMINARY INJUNCTION – 11
No. 2:24-CV-1717-JNW

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1    **B.      Valve Will Suffer Irreparable Harm Absent Injunctive Relief**

2         As Valve's Motion explained, "forcing a party to arbitrate a dispute that it did not agree to

3    arbitrate is *per se* irreparable harm." (Mot. 18:13-22 (citing cases).) Defendants do not dispute that

4    this is the law. Instead, Defendants seek to distinguish those cases on the theory that the reasons

5    that the parties in those cases had no agreement to arbitrate are different from the reason that there

6    is no agreement to arbitrate here. (Opp'n 34, 36.) But nothing in those cases suggests that the

7    presence of irreparable harm depends on *why* the parties have no agreement to arbitrate. Here,

8    having shown that the Current SSA binds these Defendants, Valve has shown *per se* irreparable

9    harm.

10        Defendants' other contentions are without merit:

11        *First*, Defendants argue that Valve has an adequate legal remedy because it can seek relief

12   from arbitrators. (Opp'n 33.) That is no remedy: the very harm Valve seeks to avoid is having to

13   arbitrate absent an agreement to arbitrate. (Mot. 19.) Defendants suggest that Valve wishes to avoid

14   adverse rulings from arbitrators, but Valve sought to enjoin these arbitrations months before any

15   award issued. Valve has also won on every claim in 43 of the 47 arbitrations to proceed to a final

16   award (while participating under a reservation of rights). (Dkt. 81 ¶¶ 47-49; Dkt. 98.)[14]

17        *Second*, Defendants argue that paying nonrefundable arbitration fees is not "*per se*

18   irreparable harm." (Opp'n 33.) That is incorrect. *See* (Mot. 19); *Wallrich v. Samsung Elecs. Am.,*

19   *Inc.*, No. 23-02842 (7th Cir. Nov. 8, 2023) (staying order requiring respondent to pay arbitration

20   fees pending appeal). In any event, the harm is not just "paying arbitration fees"—it is that Valve

21   is subjected to arbitration without its consent and forced to expend time and resources that it cannot

22   recover. (Mot. 18-21.) This is exactly the type of harm that courts have concluded is *per se*

23   irreparable. (*Id.*) Defendants' cases are not to the contrary. *See Sampson v. Murray*, 415 U.S. 61,

24   90 (1974) (loss of employment income not irreparable); *Renegotiation Bd. v. Bannercraft Clothing*

25

26   ───────────────

[14] The arbitrator ruled partially in claimants' favor in four arbitrations. Valve has petitioned in this Court to vacate those awards, including on the ground that there was no agreement to arbitrate.

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS MOTION
FOR A PRELIMINARY INJUNCTION – 12
No. 2:24-CV-1717-JNW

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Co.*, 415 U.S. 1, 24 (1974) (participation in administrative proceeding not irreparable when judicial review was available); *see also FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) (referring generally to "expense and annoyance of litigation" but not addressing forced arbitration).

*Third*, Defendants argue that "treating arbitration costs as irreparable" would impermissibly create a "special procedural rule because the forum is arbitration." (Opp'n 34.) Valve does not argue that it will suffer irreparable harm just because it has to pay arbitration costs, but also because it is subjected to arbitration without its consent. (Mot. 18-21.) Defendants' argument also has no basis in law. In *Sundance*, 596 U.S. 411, on which Defendants rely, the Court concluded that the FAA's "policy favoring arbitration" did not permit "arbitration-specific procedural rules" in favor of enforcing arbitration agreements. *Id.* at 418-19. *Sundance* does not address what harms are cognizable when the parties have no arbitration agreement.

*Fourth*, Defendants argue that Valve's injury is "self-inflicted"—and therefore not irreparable—because Valve has chosen to defend itself in the arbitration hearings. (Opp'n 35.) But courts assume that any party to an arbitration proceeding will do exactly that—that is precisely why it is harmful to be forced into arbitration without consent. (*See* Mot. 19 (citing cases).)

*Fifth*, Defendants argue "inconsistent arbitration rulings" do not pose "irreparable harm" because Valve "designed and chose" the "system" of "bilateral arbitration." (Opp'n 35.) Whether Valve previously agreed to arbitrate with customers has no bearing on whether Valve would suffer irreparable harm from arbitration rulings issued in the absence of an arbitration agreement— precisely the scenario here. There is also a risk of inconsistent rulings between arbitrators and the court. (Mot. 20-21.) Defendants do not distinguish the numerous cases cited in the Motion holding that the risk of inconsistent rulings supports a finding of irreparable harm. (*Id.*) Indeed, as discussed above, the arbitral proceedings have already resulted in inconsistent rulings.

## C.    The Balance of Equities Tilts Decisively In Favor of Valve

The relative interests of the parties also support an injunction. Defendants argue that they will face "lost time, dissipated investments," loss of their "chosen forum" (the same forum into

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS MOTION
FOR A PRELIMINARY INJUNCTION – 13
No. 2:24-CV-1717-JNW

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

which they repeatedly—and wrongly—claim they were "compelled"), and potential loss of their claim. (Opp'n 35.) The evidence says the opposite. In the arbitrations that have proceeded, numerous claimants have failed to testify at or attend their own hearings or have withdrawn their claims at the last minute—hardly indicative of any time spent, other type of investment, or commitment to the forum. (Fuchs Decl. ¶¶ 32-34, 37, 40, 55, 65-71.)

In any event, Defendants cite no authority recognizing these as valid considerations when a party has persisted in pursuing arbitration in the absence of an arbitration agreement. On the contrary, (i) forcing an arbitration in the absence of an arbitration agreement "serves no equitable purpose"; (ii) Defendants receive no "countervailing benefit . . . from proceeding with an arbitration when the award, if any, is so likely to be vacated"; and (iii) Defendants will suffer no prejudice from an injunction because court remains available to them (notwithstanding Defendants' speculation about Valve asserting a statute of limitations defense). (Mot. 21-22.)

Defendants' mischaracterization of Valve's conduct as "opportunis[tic]" or "bait-and-switch" does not change the calculus. (Opp'n 36.) Again, the parties amended the SSA only after an arbitrator—at Bucher Law's urging—held that the arbitration provision in the Superseded SSA was unenforceable and Bucher Law initiated a class action on that basis. (Mot. 5-6.) Since then, Valve has prevailed on every claim in 43 of 47 arbitrations that proceeded to award.

Nor is there any merit to Defendants' assertion that Valve is seeking a "second bite at the apple" after certain arbitrators rejected or lifted stays and pressed forward with proceedings. (Opp'n 36.) Valve has been consistent before the AAA, arbitrators and this Court: under *Coinbase*, only this Court may determine the enforceability of the Current SSA. (Mot. 10-11, 14.)

Defendants object to Valve's portrayal of their counsel as "vexatious" (Opp'n 36), but do not refute the numerous examples provided in the Motion. All those antics—the needless and duplicative testimony; the last-minute withdrawals or requested stays of arbitrations; the pursuit of arbitrations on behalf of claimants without authorization (including minors and individuals who were dead when their arbitrations were filed, *see* Compl. ¶¶ 207, 221)—stand unrebutted.

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS MOTION
FOR A PRELIMINARY INJUNCTION – 14
No. 2:24-CV-1717-JNW

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Defendants' aspersions on Valve have no merit. Defendants point to (i) a single arbitrator's refusal to recognize the validity of the Current SSA and Valve's efforts to enforce it—in an award Valve has sought to vacate, *Valve Corp. v. Fish*, Case No. 25-cv-1729 (W.D. Wash. filed Sept. 8, 2025); and (ii) a Washington Court of Appeals decision observing that Bucher Law's mass arbitration is possible because the Superseded SSA contained an arbitration provision. None of this reflects vexatious or inequitable conduct on Valve's part. That Valve could seek sanctions against Bucher Law in arbitration has no bearing on whether the balance of hardships favors continuing the arbitrations.

Nor is it material that arbitration hearings will have to be rescheduled if "an injunction were granted preliminarily and then lifted." (Opp'n 37.) Defendants have failed to demonstrate that a "delay in the arbitration" would "impose any specific harm or inequitable outcome." *Oppenheimer & Co. v. Mitchell*, 2023 WL 2428404, at *6 (W.D. Wash. Mar. 9, 2023); *see also id.* at *7 ("Defendants have not identified any costs or damages that they will incur by having the arbitration delayed."). Instead, Defendants complain about the inconvenience of finding convenient times for arbitrations. (Opp'n 37.) Scheduling challenges hardly amount to "hardship." *See NYLIFE Sec., LLC v. Duhame*, 2020 WL 7075599, at *4 (N.D. Cal. Dec. 3, 2020) (balance of hardships favored injunction when "Defendants' ability to arbitrate this dispute will only be delayed, not precluded").

Ultimately, Defendants claim alleged harm not to themselves, but to Bucher Law and its funder—*i.e.*, "wasted attorney time" (Opp'n 41) for which a funder and not Defendants are footing the bill (Compl. ¶ 15)—none of which is relevant. *E.g.*, *Jain v. Unilodgers, Inc.*, 2024 WL 478030, at *7 (N.D. Cal. Feb. 7, 2024) (harm to nonparty not relevant). Defendants' claimed personal harm resulting from delay is only monetary, and could be addressed in any hypothetical future arbitration through requests for pre- and post-judgment interest.

### D.    The Public Interest Favors an Injunction

Defendants do not dispute Valve's showing that "[t]here is no public interest in compelling"

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS MOTION
FOR A PRELIMINARY INJUNCTION – 15
No. 2:24-CV-1717-JNW

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

a party "to arbitrate if it does not have to." (Mot. 23.) Nor do they dispute that there is no public interest in allowing an arbitration to proceed only to result in motions to vacate. (*Id*.)

Defendants argue that public policy favors arbitration when an arbitration agreement exists and that the Superseded SSA's arbitration provision was enforceable. (Opp'n 38-40.) "However, this policy is inapplicable to the question of whether a particular party is bound by an arbitration agreement." *NYLIFE*, 2020 WL 7075599, at *4 (citing *Comer v. Micor*, 436 F.3d 1098, 1101 n.11 (9th Cir. 2006)). Even if public policy did favor arbitration in general, it does not favor arbitration when there is no agreement to arbitrate. *See NYLIFE*, 2020 WL 7075599, at *4.

Defendants warn that courts will be burdened by individual actions if the arbitrations are enjoined. (Opp'n 40.) But there is already a pending class action covering Defendants' claims. Regardless, the possibility that courts might be burdened cannot warrant requiring arbitration where there is no arbitration agreement. *See Morgan Stanley & Co. v. Couch*, 659 F. App'x 402, 406 (9th Cir. 2016) (forcing parties to arbitrate "when it is doubtful" that they "ha[ve] any obligation to do so . . . . does not serve any public interest"). Courts will also be burdened if Valve must commence legal proceedings to vacate unauthorized awards. *See Morgan Stanley & Co. v. Couch*, 134 F. Supp. 3d 1215, 1237 (E.D. Cal. 2015) (equities favored an injunction when moving party "may be required to return to the Court to set aside an arbitration award"), *aff'd*, 659 F. App'x 402 (9th Cir. 2016); *Morgan Keegan & Co. v. McPoland*, 829 F. Supp. 2d 1031, 1037 (W.D. Wash. 2011) (similar).

### E.    The Court Should Not Require a Bond

Courts do not impose a bond requirement when enjoining arbitrations. (Mot. 24.) Defendants do not—as they must—identify any "costs or damages that they will incur by having the arbitrations *delayed* as to their claims." *Oppenheimer*, 2023 WL 2428404, at *7. Defendants suggest that a pause would saddle them with "sunk costs, wasted attorney time, and the loss of [unspecified] procedural features." (Opp'n 41.) They offer no facts to support this assertion. Defendants' proposed $420 million bond bears no relationship to any conceivable delay, but is

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS MOTION
FOR A PRELIMINARY INJUNCTION – 16
No. 2:24-CV-1717-JNW

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1    presented as an amount that all Defendants would purportedly *recover on the merits*. That is not

2    the standard.[15]

3    **IV.    CONCLUSION**

4          For the reasons outlined above and in the Motion, Valve requests that its Motion be granted.

5    DATED: October 3, 2025

6                                        I certify that this memorandum contains 5,988
                                        words, in compliance with the Court's September 9,
7                                        2025 Order at Dkt. 86.

8                                        CORR CRONIN LLP

9                                        *s/ Blake Marks-Dias*
                                        Blake Marks-Dias, WSBA No. 28169
10                                       1015 Second Avenue, Floor 10
                                        Seattle, Washington 98104
11                                       (206) 625-8600 Phone
                                        (206) 625-0900 Fax
12                                       bmarksdias@corrcronin.com

13                                       Michael W. McTigue Jr., *Admitted Pro Hac Vice*
                                        Meredith C. Slawe, *Admitted Pro Hac Vice*
14                                       SKADDEN, ARPS, SLATE,
                                             MEAGHER & FLOM LLP
15                                       One Manhattan West
                                        New York, New York 10001
16                                       michael.mctigue@skadden.com
                                        meredith.slawe@skadden.com

17                                       *Attorneys for Plaintiff Valve Corporation*

18

19

20

21

---

22   [15] Even so, Defendants' calculation is baseless. It presupposes that 572 Defendants would each
     recover $750,000. But 18 of those individuals have already lost their arbitrations (as have the vast
23   majority of claimants whose claims have proceeded to award) and two others have withdrawn their
     arbitrations. (Dkt. 98.) Even that $750,000 figure is based on the total awards issued by one
24   arbitrator (subject to petitions to vacate) who did not award any claimant more than $3,050 in
     damages. (Dkt. 88, Ex. 1; Dkt. 89, Ex. 1; Dkt. 90, Ex. 1; Dkt. 91, Ex. 1.) The overwhelming
     majority of those awards are attorneys' fees, which are not recoverable under Rule 65(c). *Capitol
25   Recs., LLC v. Bluebeat, Inc.*, 2009 WL 10681964, at *3 (C.D. Cal. Dec. 16, 2009). This baseless,
     stratospheric request is founded on speculative harm to Defendants' counsel, not Defendants
26   themselves. *See Jain*, 2024 WL 478030, at *7 (denying bond for harm to nonparties).

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS MOTION
FOR A PRELIMINARY INJUNCTION – 17
No. 2:24-CV-1717-JNW

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900