# EXHIBIT 16

**AMERICAN ARBITRATION ASSOCIATION**

---

**VALVE CORPORATION MATTERS:**

    Case No. 01-23-0005-3482

    Case No. 01-23-0005-3350

---

**ORDER STAYING PROCEEDINGS PENDING JUDICIAL DETERMINATION OF
EFFECT OF AMENDED STEAM SUBSCRIBER AGREEMENT**

Before me is the September 27, 2024, request of Respondent Valve Corporation ("Valve")
to administratively close these proceedings.[1]  In addition to this request, I have considered all of
the parties' filings that bear on this request, including, but not limited to:

- Valve's October 4, 2024, correspondence to the AAA and Exhibits thereto;

- Claimant's October 6, 2024, correspondence to the AAA responding to Valve's request
  for closure of the proceedings;[2] and

- Valve's October 7, 2024, correspondence to the AAA in further support of its request for
  closure and the authorities cited therein.

---

[1]  Valve's request was addressed to the AAA as an association.  Consistent with the position advanced by counsel for
the Claimants, the AAA has presented Valve's request to the Arbitrator for determination.  Valve's request was filed
under a general AAA claim number (01-23-0004-3600) but the parties are aware that Valve's request and Claimants'
response thereto will be determined by the respective "merits" Arbitrators.

[2]  On October 8, 2024, in a Second Preliminary Hearing that had been scheduled for other purposes and before
Valve's request for administrative closure was filed, the parties orally presented their positions on the request for
administrative closure.  At that time, the AAA had not posted and the undersigned was unaware that Claimants'
counsel, Bucher Law PLLC, had filed a response opposing administrative closure.  However, as set forth above, the
Arbitrator has since received and considered Claimants' response.

1

Further, on October 17, 2024, I issued an Order requesting that, not later than November 1, 2024, counsel for the Claimants in these two (2) matters provide such objection or further response, if any, opposing Valve's September 27, 2024, request. Thereafter, on

- On October 19, 2024, without seeking leave, Valve provided notice that it had filed a Petition to Enjoin Arbitrations in federal court; and

- On November 1, 2024, Claimants' file their response to my order of October 17, 2024.[3]

I have reviewed and considered the positions of the parties set forth in all of the above.

I concur with Claimants' counsel that Valve's September 27, 2024, is a *de facto* request for dismissal. I have considered it only because it goes to whether there remains authority for me to require these parties' disputes to remain subject to arbitration.

For the reasons set forth below, I find that *Coinbase, Inc. v. Suski*, 144 S.Ct. 1186; 2024 U.S. Lexis 2263*** (No. 23-3, decided May 23, 2024) governs the issue before me. Therein it was held (unanimously) that where there are two contracts between parties, one that provides for resolution of disputes by arbitration and one that does not, only a court can decide which contract governs.

In *Coinbase*, subscribers to a cryptocurrency exchange platform agreed, upon creating an account with Coinbase, that disputes were subject to resolution by arbitration and that the decision of arbitrability was delegated to an arbitrator. Some subscribers subsequently entered into a sweepstakes, offered by Coinbase, hoping to win Dogecoin cryptocurrency. Coinbase's Official Rules for the sweepstakes did not provide for arbitration; instead, they provided that disputes would be resolved solely within the courts of California. Thus, those subscribers that

---

[3] Though leave was not sought, Claimants' counsel had adequate time prior to November 1, 2024, to object to the information in Valve's October 19, 2024, submission.

entered the sweepstakes had 2 contracts with Coinbase—one that required arbitration and a subsequent one that did not.

When Coinbase sweepstakes entrants later sued Coinbase, Coinbase argued that the parties' arbitration agreement in their subscription contract controlled. However, the district court agreed with the claimants that under California law, the Official Rules of the sweepstakes constituted a superseding agreement and, therefore, the parties' no longer had an agreement to arbitrate. After the Ninth Circuit Court of Appeals affirmed the district court, the Supreme Court granted *certiorari* to answer this question: "who—a judge or an arbitrator—should decide whether a subsequent contract supersedes an earlier arbitration agreement that contains a delegation clause. 601 U.S. ___, 144 S.Ct. 375, 217 L.Ed. 2d 202 (2023)." See 2024 U.S. LEXIS 2263*** at p. 10. The undersigned is well aware that the Federal Arbitration Act ("FAA") provides that agreements to arbitrate are "irrevocable", however, that is not a categorical truism. The *Coinbase* decision specifically notes that the Court "took this case to decide whether, *under the FAA*, a court or an arbitrator decides which of the two contractual provisions controls." *Id.* at p. 12 (emphasis added).

Applying the instruction of *Coinbase* here, as well as the numerous precedents noted therein that establish that the foundation of arbitration is a matter of contractual agreement, I conclude that I am faced with 2 contracts: the first is the Steam Subscriber Agreement ("SSA") extant as of October 2, 2023, when these 2 matters were filed with the AAA, which was the SSA that was issued by Valve on February 24, 2022[4]; the second is the SSA that was revised and

---

[4] See Section 12 therein: "This Agreement was last updated on February 24th, 2022 ("Revision Date"). If you were a Subscriber before the Revision Date, it replaces your existing agreement with Valve or Valve SARL on the day that it becomes effective according to Section 8 [AMENDMENTS TO THIS AGREEMENT] above." Bracketed material added.

issued by Valve effective September 26, 2024.[5]  The 9/26/2024 SSA provides in Section 10 that

as to all subscribers outside the European Union and the United Kingdom (thus, it applies to

these 2 claimants) "…You and Valve agree that all disputes and claims between you and Valve

(including any dispute or claim that arose before the existence or any prior agreement ) shall be

commenced and maintained exclusively in any state or federal court located in King County,

Washington[.]"

I note that the 2 agreements in *Coinbase* involved different subject matter:  one to be a

subscriber to the cryptocurrency platform and another to participate in a sweepstakes offered by

the platform.  However, the crux of the issue in that decision was whether a subsequent

agreement between the same parties superseded a previous agreement between them that

required arbitration.  Thus, while the matter before me does not involve 2 contracts that have

different subject matter at their core, it certainly involves 2 different agreements, only one of

which evidences a contractual agreement to arbitrate,[6] and the latter agreement purports to

replace the prior one.

The SSA extant as of 2/24/2022 and on which Claimants' filed their respective arbitration

demands, states in Section 8 thereof that "Valve may amend this Agreement (including any

Subscription Terms or Rules of Use) unilaterally at any time in its sole discretion." Thus, these

Claimants appear to have agreed at the time they filed their Arbitration Demands that Valve had

the right to replace, unilaterally, the terms of one SSA with the terms of another. The right to

change the dispute resolution provision was not excluded as a unilateral change.

---

[5] See Section 11 therein, which is identical to the Section 12 quoted in fn. 3, with the exception of the new Revision Date.

[6] When the order compelling consumers to arbitrate their claims was issued October 25, 2021, in Case Order No. C21-0563-JCC, it must have been based on the terms of a SSA that predated the terms of the 2/24/2022 SSA, yet still included an agreement to arbitrate.  The undersigned's Order dated September 12, 2024, was based on the 2/24/2022 SSA, which included an agreement to arbitrate.

Claimants, as subscribers, could have opposed the unilateral change, but they have

provided no proof that they timely objected to the unilateral revision. Section 8.B of the

2/22/2022 SSA provided a 30-day period to object to any unilateral amendment. In their

November 1, 2024, response to my order of October 17, 2024, Claimants clarified that the

"general" response of Bucher Law on October 7, 2024, applied specifically to the Claimants

herein. However, their response of November 1, 2024, presents no proof that these Claimants

had timely objected to the unilateral amendment removing arbitration from the SSA.[7] There are,

therefore, (two) 2 agreements at issue before me; whether and to what extent the 9/26/2024 SSA

replaces or supersedes the 2/22/2022 SSA is, therefore, a matter for a court to decide.[8]

Claimants' October 6, 2024, filing with the AAA notes at pp. 2 and 3 therein multiple

legal determinations that "the AAA has no authority to make" but that should be left to the

decision of the arbitrators. Among these issues, Claimants note these:

- Does Valve's success in compelling these claims to arbitration estoppe [sic] Valve from now arguing these claims cannot be arbitrated?

- Does the Federal Arbitration Act's mandate that arbitration agreements are "irrevocable" prevent Valve Corporation from revoking their arbitration agreement?

- Is Valve's purported unilateral modification to its standard agreement binding on the consumers who have filed their arbitrations in these proceedings?

These are all questions that I find must be determined by a court per *Coinbase* and other cases

cited therein. The SSA extant at the time Claimants' filed their Demands allowed for unilateral

---

[7] Valve's October 19, 2024, correspondence showed in the attached Petition that Claimant in the 3350 matter had accepted the unilateral change by accepting the "pop up" of new terms. Claimant in the 3350 matter has not disputed that. Claimant in the 3482 matter has provided no evidence of timely objection to the unilateral change within 30 days.

[8] Claimants' October 6, 2024, submission includes no citation to any legal authority for its position that Valve's "recent unilateral and legally infirm terms of use modification" is not a superseding agreement. In any event, its effect must be determined by a court according to applicable state law. Claimants' excerpts of the decisions of other arbitrators is of no weight in my considerations here.

amendment to the SSA, with no apparent restriction as to what terms of the SSA could be amended or whether they could have retroactive effect. Whether the 9/26/2024 SSA is a revocation of the arbitration agreement is simply another way of posing whether a superseding agreement that Valve issued vitiated the parties' prior arbitration agreement, and that is a matter that I find should not be determined by an arbitrator. My authority under the AAA's Rules that were incorporated in the 2/24/2022 SSA, as noted by Claimants' Counsel, gives the arbitrator "power to determine the existence or validity of a contract *of which an arbitration clause forms a part*." R-14(b) (emphasis added). However, the 9/26/2024 SSA has no arbitration clause.

Valve's *de facto* request to dismiss is denied and shall be treated as a motion to stay proceedings. In accordance with the foregoing, it is therefore ORDERED:

1. All further proceedings on the merits of the claims and defenses in Case No. 01-23-0005-3482 and Case No. 01-23-0005-3350 are hereby stayed pending a determination by a court of competent jurisdiction on whether the parties hereto continue to have an arbitration agreement after issuance of the 9/26/2024 SSA, and application to the AAA to enforce such order is made;

2. Direct communications between the Arbitrator and parties' counsel was not authorized. Therefore, there is no need for an order directing the parties to cease such direct communication.

_____   Nov. 11, 2024
Lynn Patton Thompson, Arbitrator    Date

6