HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALVE CORPORATION,

                Plaintiff,

    v.

ABBRUZZESE et al.,

                Defendants.

No. 2:24-cv-1717-JNW

**VALVE CORPORATION'S NOTICE OF VOLUNTARY DISMISSAL UNDER RULE 41(a)(1)(A)(i) AS TO 25 DEFENDANTS**

Pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, Plaintiff Valve Corporation hereby dismisses this action as to the 23 Defendants below (the "Concluded Defendants") because their arbitrations are now complete and closed:

1. Robert Grescowle

2. Christien Ayson

3. Cody Ackley

4. Michael Wu

5. Tyler Francesconi

6. John Taddei

7. Ann Hefner

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

8.  Bradley Ratliff

9.  Christopher Prato-Shein

10. Mitchell Coburn

11. Rob Hauser

12. Kasandra Hiley

13. Matthew Baldwin

14. Xzavier Timmons

15. Thomas Garrett

16. Merrick Tipton

17. Mason Field

18. Patrick Kuller

19. Michael Daugherty

20. Richard Lundsgaard

21. Jordan Newby

22. Ryan Borek

23. Katie Uccello

Valve also dismisses this action pursuant to Rule 41(a)(1)(A)(i) with respect to the following additional Defendants whose arbitrations are also closed:

24. Gabriel Durbin

25. Andre Santana

A.    **The Arbitrations of the Concluded Defendants Ended with Awards, Rendering the Relief Sought in This Action Moot as to Them**

The Concluded Defendants' arbitrations ended with final merits awards. In each of the Concluded Defendants' arbitrations, the arbitrator ruled in Valve's favor on all claims. On November 4, 2025, Valve filed a separate Petition To Confirm Arbitration Award Pursuant to

PLAINTIFF VALVE CORPORATION'S
NOTICE OF VOLUNTARY DISMISSAL UNDER
RULE 41(a)(1)(A)(i) AS TO 25 DEFENDANTS        2
NO. 24-CV-1717

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

RCW 7.04A.220 and for a Judgment Pursuant to RCW 7.04A.250 in the Superior Court for the State of Washington in and for King County with respect to these 23 Concluded Defendants. (*See, e.g.*, Ex. 1 (exemplar Petition To Confirm)[1].)[2]

As the arbitrations of each of the Concluded Defendants are now closed, Valve's complaint has become moot with respect to those arbitrations. Valve accordingly no longer seeks the relief requested in the complaint with respect to the Concluded Defendants. Therefore, Valve hereby voluntarily dismisses this action as to the Concluded Defendants. No Concluded Defendant has filed an answer or a motion for summary judgment.

## B.    Defendants Gabriel Durbin and Andre Santana Voluntarily Withdrew Their Arbitrations

Valve also voluntarily dismisses this action with respect to Defendants Gabriel Durbin and Andre Santana. These Defendants have both voluntarily withdrawn their arbitrations from the AAA. The arbitrator dismissed Defendant Durbin's and Defendant Santana's arbitrations on October 31, 2025, (Exs. 3-4), after Valve filed its complaint and motion for preliminary injunction in this action on August 21, 2025, (Dkt. 78-79). The AAA transmitted the orders to the parties on November 3, 2025. Neither Defendant Durbin nor Defendant Santana has filed an answer or a motion for summary judgment.

---

[1] The final merits awards in the 23 arbitrations and the Petitions To Confirm are all materially identical. A copy of an exemplar award as filed with the Superior Court for the State of Washington is attached hereto as Exhibit 2.

[2] Valve also prevailed in 43 other merits arbitrations involving former defendants in this action. (*See* Dkt. 81 ¶¶ 45-49; Dkt. 98 at 2-3.)

PLAINTIFF VALVE CORPORATION'S
NOTICE OF VOLUNTARY DISMISSAL UNDER
RULE 41(a)(1)(A)(i) AS TO 25 DEFENDANTS
NO. 24-CV-1717

3

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1

2    DATED this 5th day of November 2025.

3                                               CORR CRONIN LLP

4                                               *s/ Blake Marks-Dias*
                                                Blake Marks-Dias, WSBA No. 28169
5                                               1015 Second Avenue, Floor 10
                                                Seattle, Washington 98104
6                                               (206) 625-8600 Phone
                                                (206) 625-0900 Fax
7                                               bmarksdias@corrcronin.com

8                                               Michael W. McTigue Jr., *Admitted Pro Hac Vice*
                                                Meredith C. Slawe, *Admitted Pro Hac Vice*
9                                               SKADDEN, ARPS, SLATE,
                                                     MEAGHER & FLOM LLP
10                                              One Manhattan West
                                                New York, New York 10001
11                                              michael.mctigue@skadden.com
                                                meredith.slawe@skadden.com
12

13                                              *Attorneys for Plaintiff Valve Corporation*

14

15

16

17

18

19

20

21

22

23

24

25

PLAINTIFF VALVE CORPORATION'S
NOTICE OF VOLUNTARY DISMISSAL UNDER
RULE 41(a)(1)(A)(i) AS TO 25 DEFENDANTS        4
NO. 24-CV-1717

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

# EXHIBIT 1

ØŒŠÒÖ

GŒGĨÁ₱U×ÆĨ ÆJ₭€€Á͘Œ͘Ŧ

SŒ Õ̃Á͘ÖU₩ŀP˽ṼÝ

ÙŴÚ̃ÖÙ̃ỖQ̃J̃Á͘ÖU₩ÜÑ̃ṼÁ͘ŠÒ̃Ù̃S

ÒÆⱿ̃ŠÖ

ÔŒ̃ÉŨÒ̃ÁⱿŧÁ̃GⱿ̃ĚGⱿ̃GⱿ̃Ĩ̃ Ĩ̃ĚẪŨÒⱿ̃Œ̃

SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

VALVE CORPORATION,

　　　　　　Petitioner,

v.

CODY ACKLEY,

　　　　　　Respondent.

No.

**VALVE CORPORATION'S PETITION TO CONFIRM ARBITRATION AWARD PURSUANT TO RCW 7.04A.220 AND FOR A JUDGMENT PURSUANT TO RCW 7.04A.250**

Valve Corporation ("Valve") requests an order pursuant to RCW 7.04A.220 confirming the Award of Arbitrator issued by American Arbitration Association ("AAA") Arbitrator Robert J. Gaglione in Valve's favor, dated October 31, 2025 (the "Final Award"),[1] in the matter *Ackley v. Valve Corporation dba Steam*, AAA Case No. 01-23-0005-3336 (the "Arbitration").[2] Valve also requests that the Court enter judgment in

---

[1] The Final Award is attached as Exhibit 1 to the Declaration of Blake Marks-Dias filed herewith, dated November 3, 2025 ("Decl." and exhibit thereto "Ex. 1").

[2] Valve will be filing a motion to consolidate this Petition with petitions to confirm arbitration awards in 22 similar arbitrations presided over by the same arbitrator. Consolidation will streamline the proceedings and avoid unnecessary cost or delay because the awards are in all material respects identical, and the petitions request the same relief. King County Superior Court (Hon. Michael Scott) recently granted similar motions Valve filed to consolidate petitions to confirm arbitration awards in similar sets of arbitrations. *See Valve Corp. v. Gonzalez*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 14, 2025); *Valve Corp. v. Gonzalez*, No. 25-2-06159-1 SEA (Wash. Super. Ct. May 20, 2025); *Valve Corp. v. Kemp*, No. 25-2-21486-9 SEA (Wash. Super. Ct. Aug. 12, 2025); *Valve Corp. v. Duman*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 14, 2025).

VALVE CORPORATION'S
PETITION TO CONFIRM
ARBITRATION AWARD – 1

accordance with the Final Award pursuant to RCW 7.04A.250.

## I.     STATEMENT OF FACTS

Valve is a corporation organized under the laws of Washington State with its principal place of business in King County, Washington. (Decl. ¶ 2.)

On October 2, 2023, Respondent Cody Ackley ("Respondent") filed a demand for arbitration against Valve with the AAA alleging anticompetitive practices regarding prices on Valve's digital gaming platform, Steam. (Decl. ¶ 3.) Respondent asserted claims under Sections 1 and 2 of the Sherman Act and the Washington Consumer Protection Act. (*Id.*)

While the parties disputed whether Respondent could proceed in arbitration, the arbitrator permitted the Arbitration to proceed.[3] (Decl. ¶ 4.)

Following a multi-day arbitration hearing, on October 31, 2025, Arbitrator Gaglione issued the Final Award in the Arbitration. (Decl. ¶ 5.)

On November 3, 2025, the AAA transmitted the Final Award to the parties. (Decl. ¶ 6.)

The arbitrator found in the Final Award that:

(i)     Respondent did not prove any "*per se*" violation of Section 1 of the Sherman Act because "the rule of reason—not the *per se* rule—applies" and, in any event, Respondent "did not prove that Valve illegally fixed prices with competitors—through formal agreements, emails, policies, or otherwise." (Ex. 1 at 7-8.)

---

[3] On October 18, 2024, Valve filed an action in the U.S. District Court for the Western District of Washington captioned *Valve Corporation v. Abbruzzese*, No. 2:24-cv-01717. In *Abbruzzese*, Valve seeks to enjoin arbitrations brought by Respondent and hundreds of other claimants represented by the same counsel against Valve. The relief sought in *Abbruzzese* as to Respondent is now moot.

VALVE CORPORATION'S
PETITION TO CONFIRM
ARBITRATION AWARD – 2

**Corr Cronin LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(ii)     Respondent did not prove any violation of Section 1 of the Sherman Act under the rule of reason because Respondent (a) "failed to carry the burden of proving a relevant antitrust market" and (b) proved "no competitive harm." (*Id.* at 9-13.) Moreover, this claim also failed because (a) "[t]he alleged 'parity' requirements [Respondent] challenge[d] are supported by well-recognized procompetitive justifications" and (b) Respondent did not prove "Valve could have accomplished the same business goals with less restrictive means." (*Id.* at 13-16.)

(iii)    Respondent did not prove any violation of Section 2 of the Sherman Act under the rule of reason because Respondent did not prove (a) "that Valve has monopoly power," i.e., "that Valve has the power to control prices, restrict output, or exclude competition," (b) that Valve engaged in anticompetitive conduct, and (c) antitrust injury or damages because the evidence (1) "did not establish that developers would have 'passed through' a lower revenue share to customers (including [Respondent]) through lower game prices and in what amount" and (2) "showed that [Respondent] and other consumers have other choices about where to purchase games, that they enjoy the features and attributes offered by Steam, and that they choose to make purchases from Steam despite the fact that there is pricing variation among competing storefronts." (*Id.* at 17-18.)

(iv)     Respondent did not prove a violation of the Washington Consumer Protection Act: "Since the WCPA essentially tracks the Sherman Act, [Respondent's] state law claims fail for the same reasons." (*Id.* at 19.)

The final binding award was as follows:

VALVE CORPORATION'S
PETITION TO CONFIRM
ARBITRATION AWARD – 3

**Corr Cronin LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1  Claimant's [Respondent here] claims are hereby DENIED.
2  The administrative fees of the American Arbitration Association shall be borne as incurred, and the compensation
3  of the Arbitrator shall be borne as incurred. This Final Award is in full settlement of all claims submitted in this
4  arbitration. All claims not expressly granted herein are hereby denied.

5  (Ex. 1 at 19.)

6  ## II.   STATEMENT OF ISSUES

7  Whether the Court should enter an order confirming Arbitrator Gaglione's Final

8  Award and enter judgment in accordance with the Final Award.

9  ## III.   EVIDENCE RELIED UPON

10  This petition is based upon the Declaration of Blake Marks-Dias, dated November

11  3, 2025, along with the exhibit thereto.

12  ## IV.   ARGUMENT AND LEGAL AUTHORITY

13  **A.   The Final Award Should Be Confirmed Under RCW 7.04A.220**

14  The Final Award should be confirmed. Under the Washington Uniform Arbitration

15  Act, "[a]fter a party to [an] arbitration proceeding receives notice of an award, the party

16  may file a motion with the court for an order confirming the award." RCW 7.04A.220.

17  "[T]he court shall issue such an order unless the award is modified or corrected under RCW

18  7.04A.200 or 7.04A.240 or is vacated under RCW 7.04A.230." *Id.*

19  On November 3, 2025, Valve and Respondent received notice of the Final Award.

20  (Decl. ¶ 6.) The Final Award has not been modified under RCW 7.04A.200 or 7.04A.240

21  or vacated under RCW 7.04A.230. (Decl. ¶ 8.) Accordingly, Valve is entitled to entry of

22  an order confirming the Final Award. Valve notes that the Washington Superior Court has

23  granted 38 petitions to confirm in three similar sets of arbitrations in which Valve prevailed,

24  as set forth in Appendix A hereto.

25

26

27  VALVE CORPORATION'S
PETITION TO CONFIRM
28  ARBITRATION AWARD – 4

**Corr Cronin LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1 **B.      Valve Is Entitled to a Judgment in Conformity with the Final Award**

2        Valve is entitled to a judgment in accordance with the Final Award. Upon granting

3 an order confirming an award, the Court "shall enter a judgment in conformity with the

4 order." RCW 7.04A.250. The Court has "a mere ministerial duty to reduce the award to

5 judgment," *Price v. Farmers Ins. Co. of Wash.*, 133 Wash.2d 490, 497 (1997), and cannot

6 "go behind the face of the award," *id.* at 496-97.

7                               V.      <u>CONCLUSION</u>

8        For the foregoing reasons, Valve respectfully requests that the Court grant this

9 Petition to Confirm the Final Award and enter judgment in conformity therewith.

10

11 DATED: November 3, 2025

12

13 I certify that this memorandum contains 1,113 words, in compliance with the Local Civil

14 Rules.

|  |  |
|---|---|
| | CORR CRONIN LLP |
| | *s/ Blake Marks-Dias* |
| | Blake Marks-Dias, WSBA No. 28169 |
| | 1015 Second Avenue, Floor 10 |
| | Seattle, Washington 98104-1001 |
| | (206) 625-8600 Phone |
| | (206) 625-0900 Fax |
| | bmarksdias@corrcronin.com |
| | |
| | *Of Counsel* |
| | |
| | Michael W. McTigue Jr. |
| | Meredith C. Slawe |
| | SKADDEN, ARPS, SLATE, |
| |   MEAGHER & FLOM LLP |
| | One Manhattan West |
| | New York, New York 10001 |
| | michael.mctigue@skadden.com |
| | meredith.slawe@skadden.com |
| | |
| | *Attorneys for Petitioner Valve Corporation* |

27 VALVE CORPORATION'S
PETITION TO CONFIRM
28 ARBITRATION AWARD – 5

**APPENDIX A**

| ORDERS CONFIRMING ARBITRATOR SAYDAH AWARDS |
| --- |
| *Valve Corp. v. Anderson*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)<br>*Valve Corp. v. Banks*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)<br>*Valve Corp. v. Clark*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)<br>*Valve Corp. v. Duan*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)<br>*Valve Corp. v. Gonzalez*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)<br>*Valve Corp. v. Knooihuizen*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)<br>*Valve Corp. v. Loomis*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)<br>*Valve Corp. v. O'Brien*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)<br>*Valve Corp. v. Otey*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)<br>*Valve Corp. v. Pedrick*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)<br>*Valve Corp. v. Rosales*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)<br>*Valve Corp. v. Schultz*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)<br>*Valve Corp. v. Toft*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)<br>*Valve Corp. v. Trodden*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)<br>*Valve Corp. v. Wilkerson*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)<br>*Valve Corp. v. Womack*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)<br>*Valve Corp. v. LaPaglia*, No. 25-2-06159-1 SEA (Wash. Super. Ct. June 30, 2025)<br>*Valve Corp. v. Theriot*, No. 25-2-06159-1 SEA (Wash. Super. Ct. June 30, 2025)<br>*Valve Corp. v. Mac Dougall*, No. 25-2-06159-1 SEA (Wash. Super. Ct. June 30, 2025)<br>*Valve Corp. v. Holm*, No. 25-2-06159-1 SEA (Wash. Super. Ct. June 30, 2025)<br>*Valve Corp. v. Enriquez*, No. 25-2-06159-1 SEA (Wash. Super. Ct. June 30, 2025)<br>*Valve Corp. v. Martinolich*, No. 25-2-06159-1 SEA (Wash. Super. Ct. June 30, 2025) |

| ORDERS CONFIRMING ARBITRATOR GILMAN AWARDS |
| --- |
| *Valve Corp. v. Kemp*, No. 25-2-21486-9 SEA (Wash. Super. Ct. Aug. 29, 2025)<br>*Valve Corp. v. Stewart*, No. 25-2-21487-7 SEA (Wash. Super. Ct. Aug. 29, 2025) |

| ORDERS CONFIRMING ARBITRATOR KINGSLEY AWARDS |
| --- |
| *Valve Corp. v. Barker*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)<br>*Valve Corp. v. Duman*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)<br>*Valve Corp. v. Edwards*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)<br>*Valve Corp. v. Engols*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)<br>*Valve Corp. v. Linares*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)<br>*Valve Corp. v. Molina*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)<br>*Valve Corp. v. Swaim*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)<br>*Valve Corp. v. Stevens*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)<br>*Valve Corp. v. Smith*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)<br>*Valve Corp. v. Roberts*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)<br>*Valve Corp. v. Johnson*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)<br>*Valve Corp. v. Kain*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)<br>*Valve Corp. v. Lewis*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)<br>*Valve Corp. v. Hebert*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025) |

# EXHIBIT 2

Highly Confidential – Attorneys' Eyes Only

## AMERICAN ARBITRATION ASSOCIATION
### Consumer Arbitration Rules

*Case Number: 01-23-0005-3336*

**In the Matter of the Arbitration between**

**CODY ACKLEY**
**-vs-**
**VALVE CORPORATION d/b/a STEAM**

## AWARD OF ARBITRATOR

I, Robert J. Gaglione, the undersigned Arbitrator, having been designated in accordance with the arbitration agreement entered into by the above-named parties and having been duly sworn, and having duly heard the evidence and testimony of the Parties, each represented by counsel, do hereby issue this FINAL AWARD[1] as follows:

### I. INTRODUCTION

This is an antitrust case filed by a consumer against a video game developer, publisher and digital distribution company, alleging violations of the Sherman Act and state unfair competition laws. Claimant Cody Ackley (hereinafter referred to as "Claimant") asserts three causes of action in this case: (1) violation of Sherman Act

---

[1] Per Consumer Rule R-43 (and in the absence of a contrary agreement by the parties for the form of award), this award provides concise written reasons for the decision. It is not an exhaustive recitation of the Arbitrator's full findings, analysis, and reasoning with respect to all facts, law, and issues presented. The Arbitrator carefully and fully considered all such matters, including without limitation all the evidence, arguments, claims, and defenses submitted by the parties, as well as all relevant rules and law. Accordingly, any omissions to address any matter presented in this Award is a product of the form of the award—not an omission by the Arbitrator to consider the matter.

Highly Confidential – Attorneys' Eyes Only

§ 1; (2) violation of Sherman Act § 2; and (3) violation of the Washington Consumer Protection Act (hereinafter sometimes referred to as "WCPA"). Claimant contends Respondent Valve Corporation d/b/a Steam (hereinafter sometimes referred to as "Respondent" or "Valve" or "Steam") committed these alleged violations by, among other things, imposing (1) "price parity" requirements, (2) "anti-steering" requirements, (3) pricing and discounting policies, and (4) by providing "kickbacks" in the form of reduced revenue-shares for successful video games. As discussed herein, Claimant did not meet the burden to prove these claims by a preponderance of the evidence in this case.

## II. PROCEDURAL BACKGROUNND

This case is one of many filed by numerous individual Claimants in a mass arbitration against Respondent.  There is also litigation pending between the parties in the federal courts.  On June 25, 2024, the undersigned Arbitrator was appointed by the American Arbitration Association (hereinafter sometimes referred to as "AAA") to serve as the Arbitrator in 25 of the individual cases filed against Respondent.  Each of the 25 Claimants sought a different amount of damages based on their individual purchases from Respondent and every Claimant also sought attorney fees, interest, arbitration costs and other damages (treble damages, punitive damages and injunctive relief) in the Demand for Arbitration.

Highly Confidential – Attorneys' Eyes Only

Claimant's case against Respondent was filed with AAA on or about October 2, 2023, in accordance with the dispute resolution/binding arbitration/class action waiver provisions in the Steam Subscriber Agreement in existence at the time the Demand for Arbitration was filed. Respondent later revised the Steam Subscriber Agreement and withdrew the arbitration provision and Respondent's counsel argued unsuccessfully in this case that these claims should be litigated in court.

The Demand for Arbitration was filed under AAA's Mass Arbitration Supplementary Rules and Consumer Arbitration Rules. Claimant's explanation of the dispute read as follows: "Valve has a monopoly in the market for PC games. Valve fixes prices and prohibits game developers from charging cheaper prices. Potential competitors cannot compete on price, maintaining Valve's monopoly position and forcing consumers to pay higher prices. This conduct is illegal under the Sherman Act and state unfair competition laws. Arbitration through document submission or videoconference requested."

Respondent made a general appearance in the case by filing its Answer and Defenses to Claimant's Demand for Arbitration on or about December 26, 2023, simultaneously filing a Motion to Dismiss for Failure to Follow Filing Requirements and Lack of Jurisdiction Under R-14, and for Reimbursement of Costs.

On August 6, 2024, counsel for the parties appeared at the telephonic Preliminary Management Hearing to discuss the facts with the Arbitrator and set dates for the

Highly Confidential – Attorneys' Eyes Only

case.  Scheduling Order #1 dated August 9, 2024 was prepared following the telephonic Preliminary Management Hearing to memorialize the deadlines for this case that were discussed and agreed to by the parties.  The arbitration dates for the first of the 25 individual cases were scheduled for an in-person evidentiary hearing on May 5-9, 2025, at a location to be determined.  The Tribunal also gave the parties the option of appearing in person or by videoconference technology.  Dates were also set for Respondent's dispositive motion.

Following the exchange of written briefs, a telephonic hearing was held on Respondent's Motion to Dismiss and Request for Stay of the arbitration proceedings (because a class action suit was filed in the United States District Court for the Western District of Washington).  On September 13, 2024, Respondent's Motion to Dismiss was denied and the Respondent's Request to Stay was denied without prejudice.

Respondent continued to assert that a stay of the arbitration proceedings was necessary.  The Tribunal held a telephonic status conference with counsel on March 31, 2025 in which the parties argued their positions on a stay, in addition to two other issues (a Motion to Compel and objections to subpoenas).  The parties subsequently submitted their arguments in writing, with briefs due on April 4 and 10, 2025.

On April 17, 2025, the Arbitrator issued an Order on Respondent's Request to Stay, denying the stay, but continuing the hearing on the first arbitration to June 16-

Highly Confidential – Attorneys' Eyes Only

20, 2025 at a location to be determined in Dallas, Texas.  Discovery issues were also resolved and the initial Claimant was allowed to subpoena five witnesses.

On May 15, 2025, due to scheduling conflicts of counsel addressed in letter briefs, the Arbitrator issued Scheduling Order #2 continuing the arbitration hearing to July 7-11, 2025 at a location to be determined in Dallas, Texas.  Subpoenas for the arbitration were submitted by counsel for the Claimants and signed by the Arbitrator on June 13, 2025.  On June 24, 2025, the Arbitrator issued Scheduling Order #3.

Numerous pre-hearing issues were addressed by counsel in correspondence and the Arbitrator sent an email to counsel on July 3, 2025 providing guidance on the issues raised.

The arbitration hearing in the first of the 25 cases assigned to this Tribunal took place at The Adolphus Hotel in Dallas, Texas from July 7-11, 2025.  It was agreed that counsel and witnesses could appear in person or by videoconference technology and they did so throughout the hearing.  The Tribunal commends counsel, the parties, and the court reporting and videoconference technology professionals in this case who made the hybrid hearing proceed very successfully.  A timekeeping service was also used throughout the arbitration hearing to ensure the parties had equal time to present their cases.

Claimant was ably represented in this case by counsel including Will Bucher, Judson Crump and Zachary A. Horn.   Respondent was ably represented in this case

Highly Confidential – Attorneys' Eyes Only

by counsel including Scott Danner, Andrew Indorf, Blake Marks-Dias, and Muhammad Mustafa.   Other legal representatives also appeared at the five-day hearing.

Both sides called witnesses and admitted exhibits during the arbitration hearing. Counsel for the Claimant called the following witnesses:  Matthew Baldwin, Kassidy Gerber, Tom Giardino, Dr. Edward Castronova, Scott Lynch and Adam Klaff. Additionally, the report of Dr. Steven Schwartz was also admitted into evidence since the witness failed to appear to testify at the arbitration hearing even though he was subpoenaed to testify.   Counsel for the Respondent called the following witnesses:  Erik Peterson and Dr. Hunt Allcott.

Counsel gave closing arguments on the last day of the arbitration hearing and later filed closing briefs.  Additionally, by agreement of counsel and Order of the Tribunal, the Claimants in the other 24 cases were permitted to file declarations and other evidence in support of their claims for damages and Respondent filed opposition papers to the declarations for damages.   Of the 25 Claimants, three Claimants did not file declarations in support of their claims for damages.  Two other Claimants expressed intention to withdraw their claims and also did not file declarations in support of their claims for damages.   The entire record of the five-day arbitration hearing in Dallas, Texas became part of the record in each of the 25

Highly Confidential – Attorneys' Eyes Only

individual cases assigned to this Arbitrator by agreement of counsel and order of the Tribunal.   *See*, Scheduling Order #3 dated June 24, 2025.

For the Claimants who submitted their own declarations along with a declaration of Dr. Castronova in support of their claims for damages, those declarations are also part of the record in each of their individual cases.  Respondent's opposition to the damages declarations is part of the record in each of the 25 individual cases assigned to this Tribunal.

## III. DISCUSSION

Sherman Act § 1 prohibits agreements that "unreasonably" restrain trade. 15 U.S.C. § 1. Sherman Act § 2 prohibits monopolization. 15 U.S.C. § 2. The WCPA prohibits unfair and deceptive business practices under Washington state law.

### A.  No Federal Antitrust Violation

#### 1.  No '*Per Se*' Sherman Act Section 1 Violation

While Claimant's closing argument and Post-Hearing Brief meticulously cite evidence supporting the claims asserted in this case, based on the totality of evidence in the record, the Tribunal finds that Claimant did not prove a *per se* violation.

Valve helps developers distribute games down the supply chain to consumers; some developers (like Microsoft) operate competing stores. These relationships are "vertical" or "hybrid," so the rule of reason—not the *per se* rule—applies. *Leegin*

Highly Confidential – Attorneys' Eyes Only

*Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 907 (2007); *Frame-Wilson v. Amazon.com, Inc.*, 591 F. Supp. 3d 975, 987 (W.D. Wash. 2022).

Additionally, for the *per se* rule to apply, Claimant needed to prove that Valve "agree[d]" with "competitors" to "fix the prices" of "competing products." *See,* ABA Model Jury Instructions for Civil Antitrust Cases ("Model Ins.") B-25. But Claimant did not prove that Valve illegally fixed prices with competitors—through formal agreements, emails, policies, or otherwise. The only "price" Valve sets for its distribution service is its revenue share with game developers. There was no evidence that Valve agreed to "fix" revenue shares with any of its competitors. Claimant also failed to carry the burden to prove that the alleged conduct is "manifestly anticompetitive," "lack[s] any redeeming virtue," and "always or almost always tend[s] to restrict competition and reduce output." *See, Leegin*, 551 U.S. at 886.

### 2. No Sherman Act Section 1 violation under the Rule of Reason

The applicable rule of reason analysis includes three steps: (1) Claimant must prove Valve's purported "agreements" with developers harmed competition. If Claimant carries that burden, (2) Valve can prove a procompetitive justification for the agreements. And in the face of a procompetitive justification, (3) Claimant must prove a substantially less restrictive alternative to achieve the same legitimate business goals. *See* Model Ins. C-3.

Highly Confidential – Attorneys' Eyes Only

### a. Step 1: no competitive harm in a market

At Step 1, Claimant must prove that Valve's conduct "resulted in substantial harm to competition in a relevant product and geographic market." Model Ins. C-3. Proof of a relevant market is required because "[w]ithout a definition of the market there is no way to measure" harm to competition. *Ohio v. Am. Express Co.*, 585 U.S. 529, 542 (2018) ("*Amex*").

### i. No defined relevant antitrust market

A relevant market comprises both (1) a product market, and (2) a geographic market. Model Ins. A-106. The relevant product market "includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes." Model Ins. A-108. The "relevant geographic market is the area in which defendant faces competition  .  .  . and to which customers can reasonably turn." Model Ins. A-113.

Claimant's evidence of the relevant product market was insufficient. Claimant's expert, Dr. Castronova, excluded from his product market both console games and "first party" distribution (*i.e.*, distribution by a developer of its own games, through its own store or website). But Dr. Castronova presented no data or economic analysis on whether the console games he excluded were economic substitutes for PC games sold on Steam, and he ignored evidence that console and PC games are in the same market, *e.g.*, that many of the same games are found on both. He also presented no data or economic analysis supporting his assertion that

Highly Confidential – Attorneys' Eyes Only

first party PC games distributed directly by developers are not economic substitutes for PC games distributed on Steam.

Claimant did not establish a relevant geographic market either. Claimant alleged a global market in the pre-hearing brief, but Dr. Castronova opined that the relevant geographic market was the United States. He did not support that assertion with evidence or analysis, beyond the observation that *video game developers* have the power to set different prices in different regions. It was undisputed, however, that Valve and its competing distributors each set a single, global revenue share for their distribution services. In light of this fact, evidence of the global scope of Valve's and its competitors' operations, and credible economic analysis from Valve's expert, Dr. Allcott, the Tribunal finds that Claimant failed to prove a relevant geographic market.

Claimant failed to carry the burden of proving a relevant antitrust market, so the Section 1 claims fail at the threshold. *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 957 (9th Cir. 2023) ("Failing to define a relevant market alone is fatal" to a Section 1 claim).

### ii. No harm to competition

Claimant's claim also fails because Claimant did not prove that "the challenged restraint has [had] . . . a substantial harmful effect on competition." Model Ins. C-5.

Claimant asserted a multi-step theory. *First*, Claimant argued Valve's

Highly Confidential – Attorneys' Eyes Only

conduct—principally, its alleged "price parity" requirement—prevents rivals from competing effectively. *Second*, Claimant argued the purported absence of competition allows Valve to charge developers a "supracompetitive" (or "too high") revenue share. *Finally*, Claimant argued developers "pass through" Valve's "too high" revenue share to users, including Claimant, through prices for games that are likewise "too high." Claimant's theory was not supported by the evidence presented.

Claimant failed to prove that Valve's conduct had the effect of causing video game prices to be "the same" or "in parity" to such an extent that competitors were prevented from competing with Steam. Dr. Allcott conducted an empirical data-based analysis to evaluate whether there is evidence of a price parity requirement, and it was enforced by Valve. He compiled daily game pricing data from the website "IsThereAnyDeal" ("ITAD"), verified its accuracy, and analyzed it to determine whether the prices actually charged supported Claimant's theory. Comparing the average prices of games available on Steam and at least one other platform, Dr. Allcott found that 14,795 of the 38,788 total games he analyzed were at least 10% cheaper when purchased off Steam on average, and that overall more games had lower prices off Steam than were either lower or the same price on Steam. This persuasive evidence result contradicts Claimant's theory.

Dr. Castronova's analyses did not disprove Dr. Allcott's testimony. Analyzing whether there is a price parity requirement across platforms requires that the games

Highly Confidential – Attorneys' Eyes Only

being analyzed are sold on two or more platforms, in order to test if the prices on each platform are in parity. Dr. Castronova's conclusion that game prices were the same across platforms approximately 90% of the time was based, in part, on his assumption that when a game is sold only on one platform—and therefore has only one price—that game's price is "in parity" with itself and therefore should be considered as proof that Valve enforces a price parity requirement.

More importantly, the evidence established numerous competitors to Steam, including both new entrants and long-sustained rivals as well as large, well-known technology companies. The evidence established that Valve does not prevent developers from selling their games through competitors' platforms or stores. Instead, Valve has competed by (1) continuously improving Steam, and (2) reducing its revenue share. The Ninth Circuit recently identified reduction of revenue share as a "vivid illustration" of competition. *Epic v. Apple*, 67 F.4th 946, 985 (9th Cir. 2023). The ongoing competition between Valve and its rival stores has resulted in better platforms and lower revenue shares.

The classic indicia of competitive harm are "reduced output, increased prices, or decreased quality." *Amex*, 585 U.S. at 542. Claimant offered insufficient evidence on these indicia, whereas Valve's expert, Dr. Allcott, provided credible evidence that the video game market has experienced increased output, decreased prices, and improved quality in the past decade. Because no competitive harm was proved,

Highly Confidential – Attorneys' Eyes Only

Claimant's claims fail at the rule of reason's first step.

### b.  Step 2: Valve has procompetitive justifications

Even if Claimant had shown harm, the Tribunal "next must determine whether the restraint also benefits competition in other ways," Model Ins. C-8, *i.e.*, has "procompetitive rationale[s]." *Epic Games, Inc. v. Apple, Inc.*, 559 F. Supp. 3d 898, 1034 (N.D. Cal. 2021). If Valve's conduct has these procompetitive benefits, and they could not be achieved through substantially less restrictive means, Valve's conduct does not violate the rule of reason.

### i. Alleged price and content parity

The alleged "parity" requirements Claimant challenges are supported by well-recognized procompetitive justifications. First, Valve's requests that developers offer competitive prices or equivalent content on Steam help avoid "free-riding." Steam strives to be a high quality store, and Valve makes significant investments to help connect developers and customers. Developers and customers can "free-ride" on these investments when they use Steam to market or learn about new games, and then steer purchases to competing stores, including to buy Steam Keys that gamers can then redeem on Steam. Mr. Baldwin testified that he used Steam for this very purpose. Such free-riding disincentivizes Valve from continuing to invest in Steam by reducing its return on investment.

Dr. Allcott opined that the prevention of free riding is a procompetitive act as a matter of economics. The law is in accord. *See, Leegin*, 551 U.S. at 890–91. Further,

Highly Confidential – Attorneys' Eyes Only

to the extent Valve sought competitive prices from developers, doing so can also "enhance . . ." Steam's "consumer appeal," and "tap . . . into consumer demand," which are both procompetitive. *See U.S. v. Microsoft Corp.*, 253 F.3d 34, 59 (D.C. Cir. 2001); *Epic*, 67 F.4th at 987. Finally, "low prices benefit consumers, regardless of how they are set," *Atl. Richfield v. USA Petroleum*, 495 U.S. 328, 340 (1990), and "cutting prices in order to increase business often is the very essence of competition," *Matsushita Elec. Indus. v. Zenith Radio*, 475 U.S. 574, 594 (1986). The challenged conduct requested discounts and more favorable content and pricing for consumers; thus, even if it were effective, the consequence would be procompetitive.

Dr. Castronova testified that, in his personal opinion, free-riding does not harm competition. Dr. Castronova's views are not supported by evidence, and are contrary to economic analysis and the law.

### ii. In-game linking

Valve's Steam Distribution Agreement ("SDA") prohibits links to other stores from within Steam games. Among other things, this helps prevent free-riding. Developers often monetize their games through "in game" transactions; for some games, that is the only (or primary) way the developer—and thus Valve—earns revenue. If developers could direct customers from within games to a non-Steam store or payment method to complete those purchases, Valve would bear all costs of distributing and servicing the games but earn no revenue. Valve is permitted to

Highly Confidential – Attorneys' Eyes Only

prevent such free-riding. Valve's in-game linking policy also promotes consumer safety by preventing developers from adding links to games with malware or for fraudulent purposes and creates a better user experience by preventing users from being "shipped off to another store" from inside Steam. Enhancing consumer appeal is a recognized procompetitive justification.

### iii. Pricing and discounting policies

Valve's pricing and discounting rules prevent deceptive discounts by requiring developers to establish a bona fide "base" price, consistent with FTC guidance. Protecting the public from "anything that might be false or misleading" is procompetitive. *California Dental Ass'n v. F.T.C.*, 224 F.3d 942, 949 & n.5 (9th Cir. 2000). And Valve's "minimum price floor" serves the business purpose of covering costs and recouping Valve's investment.

### iv. Tiered revenue shares

Valve lowered its revenue share in 2018 in direct response to increased competitive threats from rival platforms, an act the federal courts have called a "vivid illustration" of competition at work. *See Epic*, 67 F.4th at 985. The Tribunal agrees. Labeling a price cut as a "kickback" does not change this conclusion. Claimant's "kickback" theory also incorrectly asserts that additional revenue share payments are only available to large developers, but the evidence showed that qualification for additional revenue share is determined and paid on a game-by-game basis, not on a developer-by-developer basis.

Highly Confidential – Attorneys' Eyes Only

### c. Step 3: no less restrictive alternatives

Because Valve has procompetitive justifications for the challenged conduct, Claimant must prove Valve could have accomplished the same business goals with less restrictive means. *See* Model Ins. C-8. To do so, Claimant must prove Valve's goals actually "could have been achieved by other, reasonably available alternative means," and those alternatives would "create substantially less harm to competition." *Id.* Many of the "less restrictive alternatives" Claimant offered were arguments by counsel, which were insufficient. 11 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 1913b, at 398 (4th ed. 2018). And the few alternatives suggested by witnesses were insufficient because they were either impractical or more expensive.

### 3. No Sherman Act Section 2 violation under the Rule of Reason

For a Section 2 claim, Claimant must prove, among other elements, that Valve (1) has "monopoly power," (2) got or maintained that power through "anticompetitive conduct," and (3) caused injury to Claimant as a result of that "anticompetitive conduct." Model Ins. 3. A.1.

### a. Claimant did not prove that Valve has monopoly power

Monopoly power is "the power to control prices, restrict output, and exclude competition in a relevant antitrust market." Model Ins. 3. A.2. No conclusive evidence was presented in this case that Valve has the power to control prices,

Highly Confidential – Attorneys' Eyes Only

restrict output, or exclude competition. While Respondent may have a good share of the market, evidence of the amount of Valve's market share was too speculative to draw any firm conclusions in this case.  Claimant's failure to prove a defined antitrust market also defeats the Section 2 claims.

### b. No anticompetitive conduct

The second element of a Section 2 claim requires proof of "anticompetitive conduct." That analysis is governed by the rule of reason, which applies "essentially the same" under Sections 1 and 2. *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 991 (9th Cir. 2020). Claimant challenges the same conduct under Section 2 as under Section 1. Thus, for the same reasons noted above that Claimant's theory failed the rule of reason under Section 1, it fails under Section 2 as well.

### c.  No antitrust injury or damages

Claimant also did not prove "antitrust injury," which is required for any actual or nominal damages or attorney's fees even when a Section 1 or 2 violation is otherwise established. *See U.S. Football League v. Nat'l Football League*, 842 F.2d 1335, 1377–79 (2d Cir. 1988). "To show antitrust injury, a plaintiff must prove that his loss flows from an anticompetitive aspect or effect of the defendant's behavior[.]" *Rebel Oil Co. v.  Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995).

 Claimant failed to prove antitrust injury because the evidence did not establish that developers would have "passed through" a lower revenue share to customers (including Claimant) through lower game prices and in what amount.

Highly Confidential – Attorneys' Eyes Only

Rather, Claimant simply assumed all savings would be passed through. *See Friedman v. AARP, Inc.*, 2019 WL 5683465, at *6 (C.D. Cal. Nov. 1, 2019) ("Plaintiffs' creative theory that businesses must 'pass on the savings' to consumers lacks real world credibility.") Dr. Allcott credibly opined that the assumption of 100% pass-through is unreasonable and not appropriate, based on industry evidence and empirical analysis of prices.

Moreover, the evidence showed that Claimant and other consumers have other choices about where to purchase games, that they enjoy the features and attributes offered by Steam, and that they choose to make purchases from Steam despite the fact that there is pricing variation among competing storefronts. This suggests the Claimant more likely elected to purchase from Valve because it has developed a superior product in Steam—not because of any alleged antitrust violation.

Furthermore, while Claimant introduced evidence of email correspondence with several of Respondent's employees in support of the antitrust claims, the evidence was insufficient to prove these claims by a preponderance of evidence in light of the explanatory testimony of Valve personnel and other evidence in this case. Finally, while some of the correspondence did support allegations raised by Claimant in this case, there was insufficient proof to say these actions caused Claimant antitrust injury or damages.

Highly Confidential – Attorneys' Eyes Only

### B.  No State Law Violation

Claimant pleaded a violation of state unfair competition laws.  Since the Steam Subscriber Agreement identifies Washington law as the "applicable law", the Washington Consumer Protection Act applies. Since the WCPA essentially tracks the Sherman Act, Claimant's state law claims fail for the same reasons.

Claimant's heavy reliance upon *Epic v. Apple* is misplaced. The present case is factually dissimilar from the situation presented in that litigation, because Valve does not control the operating systems on which Steam and competing game stores run, as Apple did; hence, Valve cannot realistically block information in the manner Apple was found to have done. Therefore, Claimant failed to meet the burden of proof under state unfair competition laws.

## IV. FINAL AWARD

Claimant's claims are hereby DENIED. The administrative fees of the American Arbitration Association shall be borne as incurred, and the compensation of the Arbitrator shall be borne as incurred. This Final Award is in full settlement of all claims submitted in this arbitration. All claims not expressly granted herein are hereby denied.  This Award only applies to the individual Claimant in this case and may not be cited or used as *stare decisis* in another case against the Respondent.


| October 31, 2025 | /s/ Robert J. Gaglione |
| Date | Robert J. Gaglione, Arbitrator |

Highly Confidential – Attorneys' Eyes Only

I, Robert J. Gaglione, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

October 31, 2025            */s/ Robert J. Gaglione*
       Date                     Robert J. Gaglione, Arbitrator

# EXHIBIT 3

**AMERICAN ARBITRATION ASSOCIATION**
**Consumer Arbitration Rules**

*Case Number: 01-23-0005-3335*

**In the Matter of the Arbitration between**

**GABRIEL DURBIN**
**-vs-**
**VALVE CORPORATION d/b/a STEAM**

## ORDER RE: WITHDRAWAL OF CLAIMS

The Tribunal has been informed by Claimant's counsel that Claimant Gabriel Durbin (hereinafter "Claimant") wishes to withdraw claims made against Respondent Valve Corporation d/b/a Steam (hereinafter "Respondent") without prejudice.    No objections were received from Respondent's counsel to Claimant's request.

Accordingly, it is ordered that all claims asserted by Claimant against Respondent in the Demand for Arbitration filed with the American Arbitration Association in this case are hereby withdrawn and the case is DISMISSED WITHOUT PREJUDICE.

It is so ordered on this 31st day of October, 2025.

*/s/ Robert J. Gaglione*
Robert J. Gaglione, Arbitrator

# EXHIBIT 4

## AMERICAN ARBITRATION ASSOCIATION
### Consumer Arbitration Rules

*Case Number: 01-23-0005-3362*

**In the Matter of the Arbitration between**

**ANDRE SANTANA**
**-vs-**
**VALVE CORPORATION d/b/a STEAM**

## ORDER RE: WITHDRAWAL OF CLAIMS

The Tribunal has been informed by Claimant's counsel that Claimant Andre Santana (hereinafter "Claimant") wishes to withdraw claims made against Respondent Valve Corporation d/b/a Steam (hereinafter "Respondent") without prejudice.    No objections were received from Respondent's counsel to Claimant's request.

Accordingly, it is ordered that all claims asserted by Claimant against Respondent in the Demand for Arbitration filed with the American Arbitration Association in this case are hereby withdrawn and the case is DISMISSED WITHOUT PREJUDICE.

It is so ordered on this 31st day of October, 2025.

*/s/ Robert J. Gaglione*
Robert J. Gaglione, Arbitrator