# EXHIBIT 1

FILED
2026 FEB 03 09:00 AM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 26-2-04486-4 SEA

SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

| | |
|---|---|
| VALVE CORPORATION,<br><br>                    Petitioner,<br><br>    v.<br><br>FABIAN AREVALO,<br><br>                    Respondent. | No.<br><br>**VALVE CORPORATION'S PETITION TO CONFIRM ARBITRATION AWARD PURSUANT TO RCW 7.04A.220 AND FOR A JUDGMENT PURSUANT TO RCW 7.04A.250** |

Valve Corporation ("Valve") requests an order pursuant to RCW 7.04A.220 confirming the Award of Arbitrator issued by American Arbitration Association ("AAA") Arbitrator John E. Ohashi in Valve's favor, dated January 23, 2026 (the "Final Award"),[1] in the matter *Arevalo v. Valve Corporation dba Steam*, AAA Case No. 01-23-0005-3034 (the "Arbitration").[2] Valve also requests that the Court enter judgment in accordance with

---

[1] The Final Award is attached as Exhibit 1 to the Declaration of Blake Marks-Dias filed herewith, dated February 2, 2026 ("Decl." and exhibit thereto "Ex. 1").

[2] Valve will be filing a motion to consolidate this Petition with petitions to confirm arbitration awards in 24 similar arbitrations presided over by the same arbitrator. Consolidation will streamline the proceedings and avoid unnecessary cost or delay because the awards are in all material respects identical, and the petitions request the same relief. King County Superior Court recently granted similar motions Valve filed to consolidate petitions to confirm arbitration awards in similar sets of arbitrations. *See Valve Corp. v. Gonzalez*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 14, 2025); *Valve Corp. v.*
(cont'd)

VALVE CORPORATION'S
PETITION TO CONFIRM
ARBITRATION AWARD – 1

**Corr Cronin LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

the Final Award pursuant to RCW 7.04A.250.

## I.    **STATEMENT OF FACTS**

Valve is a corporation organized under the laws of Washington State with its principal place of business in King County, Washington. (Decl. ¶ 2.)

On October 2, 2023, Respondent Fabian Arevalo ("Respondent") filed a demand for arbitration against Valve with the AAA alleging anticompetitive practices regarding prices on Valve's digital gaming platform, Steam. (Decl. ¶ 3.) Respondent asserted claims under Sections 1 and 2 of the Sherman Act, the California Cartwright Act, and the Washington Consumer Protection Act. (*Id.*)

While the parties disputed whether Respondent could proceed in arbitration, the arbitrator permitted the Arbitration to proceed.[3] (Decl. ¶ 4.)

Following a multi-day arbitration hearing, on January 23, 2026, Arbitrator Ohashi issued the Final Award in the Arbitration. (Decl. ¶ 5.)

On February 2, 2026, the AAA transmitted the Final Award to the parties. (Decl. ¶ 6.)

The arbitrator found in the Final Award that Claimants' antitrust claims under Section 1 and Section 2 of the Sherman Act, the Washington Consumer Protection Act, and the California Cartwright Act failed because "Claimant failed to prove Claimant's definition of a relevant market." (Ex. 1 at 2-6.)

---

*Gonzalez*, No. 25-2-06159-1 SEA (Wash. Super. Ct. May 20, 2025); *Valve Corp. v. Kemp*, No. 25-2-21486-9 SEA (Wash. Super. Ct. Aug. 12, 2025); *Valve Corp. v. Duman*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 14, 2025); *Valve Corp. v. Ackley*, No. 25-2-32835-0 SEA (Wash. Super. Ct. December 1, 2025).

[3] On October 18, 2024, Valve filed an action in the U.S. District Court for the Western District of Washington captioned *Valve Corporation v. Abbruzzese*, No. 2:24-cv-01717. In *Abbruzzese*, Valve seeks to enjoin arbitrations brought by Respondent and hundreds of other claimants represented by the same counsel against Valve. The relief sought in *Abbruzzese* as to Respondent is now moot.

VALVE CORPORATION'S
PETITION TO CONFIRM
ARBITRATION AWARD – 2

**Corr Cronin LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

The final binding award was as follows:

> Claimant [Respondent here] did not meet Claimant's initial burden of proof to define the relevant market under Step 1 of the rule of reason. Claimant's failure to define a relevant market renders any attempt to determine "market power" within that undefined relevant market impossible and any further evaluation under the rule of reason unnecessary. Claimant's claim that Respondent [Valve] violated Section 1 of the Sherman Act is **DENIED**.
>
> . . .
>
> Claimant's [Respondent here] failure to define a relevant market in connection with Claimant's [claim under] Section 1 of the Sherman Act applies equally to Claimant's Section 2 of the Sherman Act claim. Accordingly, Claimant's claim that Respondent [Valve] violated Section 2 of the Sherman Act is **DENIED**.
>
> . . .
>
> Both the Washington Consumer Protection Act and the Cartwright Act track the Sherman Act. The same rule of reason applicable to Claimant's [Respondent here] Section 1 and Section 2 of the Sherman Act claims and the Washington Consumer Protection Act claim were applicable to Claimant's Cartwright Act claim. The rule of reason evaluation that was applied to deny Claimant's Section 1 and Section 2 of the Sherman Act claims applies equally to the Washington Consumer Protection Act and the Cartwright Act. Accordingly, Claimant's state law claims alleging that Respondent [Valve] violated the Washington Consumer Protection Act and the Cartwright Act are **DENIED**.
>
> . . .
>
> The administrative fees of the American Arbitration Association shall be borne as incurred and the compensation of the arbitrator shall be borne as incurred.
>
> This Final Award is in full settlement of all claims submitted to this arbitration. All claims not expressly granted herein are hereby **DENIED**.

(Ex. 1 at 5-6.)

VALVE CORPORATION'S
PETITION TO CONFIRM
ARBITRATION AWARD – 3

**Corr Cronin LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## II.    STATEMENT OF ISSUES

Whether the Court should enter an order confirming Arbitrator Ohashi's Final Award and enter judgment in accordance with the Final Award.

## III.    EVIDENCE RELIED UPON

This petition is based upon the Declaration of Blake Marks-Dias, dated February 2, 2026, along with the exhibit thereto.

## IV.    ARGUMENT AND LEGAL AUTHORITY

### A.    The Final Award Should Be Confirmed Under RCW 7.04A.220

The Final Award should be confirmed. Under the Washington Uniform Arbitration Act, "[a]fter a party to [an] arbitration proceeding receives notice of an award, the party may file a motion with the court for an order confirming the award." RCW 7.04A.220. "[T]he court shall issue such an order unless the award is modified or corrected under RCW 7.04A.200 or 7.04A.240 or is vacated under RCW 7.04A.230." *Id.*

On February 2, 2026, Valve and Respondent received notice of the Final Award. (Decl. ¶ 6.) The Final Award has not been modified under RCW 7.04A.200 or 7.04A.240 or vacated under RCW 7.04A.230. (Decl. ¶ 8.) Accordingly, Valve is entitled to entry of an order confirming the Final Award. Valve notes that the Washington Superior Court has granted 59 petitions to confirm in four similar sets of arbitrations in which Valve prevailed, as set forth in Appendix A hereto.

### B.    Valve Is Entitled to a Judgment in Conformity with the Final Award

Valve is entitled to a judgment in accordance with the Final Award. Upon granting an order confirming an award, the Court "shall enter a judgment in conformity with the order." RCW 7.04A.250. The Court has "a mere ministerial duty to reduce the award to judgment," *Price v. Farmers Ins. Co. of Wash.*, 133 Wash.2d 490, 497 (1997), and cannot "go behind the face of the award," *id.* at 496-97.

VALVE CORPORATION'S
PETITION TO CONFIRM
ARBITRATION AWARD – 4

**Corr Cronin LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1

## V. <u>CONCLUSION</u>

2

For the foregoing reasons, Valve respectfully requests that the Court grant this

3
Petition to Confirm the Final Award and enter judgment in conformity therewith.

4
DATED: February 2, 2026

5

6
I certify that this memorandum contains 1,082
words, in compliance with the Local Civil

7
Rules.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CORR CRONIN LLP

*s/ Blake Marks-Dias*
Blake Marks-Dias, WSBA No. 28169
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
(206) 625-8600 Phone
(206) 625-0900 Fax
bmarksdias@corrcronin.com

*Of Counsel*

Michael W. McTigue Jr.
Meredith C. Slawe
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Attorneys for Petitioner Valve Corporation*

27
VALVE CORPORATION'S
PETITION TO CONFIRM

28
ARBITRATION AWARD – 5

**APPENDIX A**

| ORDERS CONFIRMING ARBITRATOR SAYDAH AWARDS |
|---|

*Valve Corp. v. Anderson*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)
*Valve Corp. v. Banks*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)
*Valve Corp. v. Clark*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)
*Valve Corp. v. Duan*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)
*Valve Corp. v. Gonzalez*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)
*Valve Corp. v. Knooihuizen*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)
*Valve Corp. v. Loomis*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)
*Valve Corp. v. O'Brien*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)
*Valve Corp. v. Otey*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)
*Valve Corp. v. Pedrick*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)
*Valve Corp. v. Rosales*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)
*Valve Corp. v. Schultz*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)
*Valve Corp. v. Toft*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)
*Valve Corp. v. Trodden*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)
*Valve Corp. v. Wilkerson*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)
*Valve Corp. v. Womack*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)
*Valve Corp. v. LaPaglia*, No. 25-2-06159-1 SEA (Wash. Super. Ct. June 30, 2025)
*Valve Corp. v. Theriot*, No. 25-2-06159-1 SEA (Wash. Super. Ct. June 30, 2025)
*Valve Corp. v. Mac Dougall*, No. 25-2-06159-1 SEA (Wash. Super. Ct. June 30, 2025)
*Valve Corp. v. Holm*, No. 25-2-06159-1 SEA (Wash. Super. Ct. June 30, 2025)
*Valve Corp. v. Enriquez*, No. 25-2-06159-1 SEA (Wash. Super. Ct. June 30, 2025)
*Valve Corp. v. Martinolich*, No. 25-2-06159-1 SEA (Wash. Super. Ct. June 30, 2025)

| ORDERS CONFIRMING ARBITRATOR GILMAN AWARDS |
|---|

*Valve Corp. v. Kemp*, No. 25-2-21486-9 SEA (Wash. Super. Ct. Aug. 29, 2025)
*Valve Corp. v. Stewart*, No. 25-2-21487-7 SEA (Wash. Super. Ct. Aug. 29, 2025)

| ORDERS CONFIRMING ARBITRATOR KINGSLEY AWARDS |
|---|

*Valve Corp. v. Barker*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)
*Valve Corp. v. Duman*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)
*Valve Corp. v. Edwards*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)
*Valve Corp. v. Engols*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)
*Valve Corp. v. Linares*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)
*Valve Corp. v. Molina*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)
*Valve Corp. v. Swaim*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)
*Valve Corp. v. Stevens*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)
*Valve Corp. v. Smith*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)
*Valve Corp. v. Roberts*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)
*Valve Corp. v. Johnson*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)
*Valve Corp. v. Kain*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)
*Valve Corp. v. Lewis*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)
*Valve Corp. v. Hebert*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)

**APPENDIX A**

| ORDERS CONFIRMING ARBITRATOR GAGLIONE AWARDS |
|---|
| *Valve Corp. v. Hauser,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 6, 2026) |
| *Valve Corp. v. Ackley,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 6, 2026) |
| *Valve Corp. v. Coburn,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 6, 2026) |
| *Valve Corp. v. Borek,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 6, 2026) |
| *Valve Corp. v. Baldwin,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 6, 2026) |
| *Valve Corp. v. Ayson,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 6, 2026) |
| *Valve Corp. v. Grescowle,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 6, 2026) |
| *Valve Corp. v. Francesconi,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 6, 2026) |
| *Valve Corp. v. Field,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 6, 2026) |
| *Valve Corp. v. Daugherty,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 6, 2026) |
| *Valve Corp. v. Uccello,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 7, 2026) |
| *Valve Corp. v. Tipton,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 7, 2026) |
| *Valve Corp. v. Timmons,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 7, 2026) |
| *Valve Corp. v. Taddei,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 7, 2026) |
| *Valve Corp. v. Ratliff,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 7, 2026) |
| *Valve Corp. v. Hiley,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 7, 2026) |
| *Valve Corp. v. Hefner,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 7, 2026) |
| *Valve Corp. v. Prato-Shein,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 7, 2026) |
| *Valve Corp. v. Lundsgaard,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 7, 2026) |
| *Valve Corp. v. Kuller,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 7, 2026) |
| *Valve Corp. v. Newby,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 7, 2026) |

# EXHIBIT 2

**AMERICAN**
**ARBITRATION**
**ASSOCIATION**

INTERNATIONAL CENTRE
FOR DISPUTE RESOLUTION™

## AMERICAN ARBITRATION ASSOCIATION
### Consumer Arbitration Rules

In the Matter of the Arbitration between

Case Number: 01-23-0005-3034

Fabian Arevalo
-vs-
Valve Corporation d/b/a Steam

## AWARD OF ARBITRATOR

I, John E. Ohashi, the undersigned arbitrator, having been designated in accordance with the arbitration agreement between the above-named parties and having been duly sworn, and having duly heard the proofs and allegations of the parties, each represented by counsel, at an in-person evidentiary hearing held on October 20 - 24, 2025 in Los Angeles, California, and via remote Zoom video-conference on October 27, 29, and 30, 2025, November 19, 2025 and November 21, 2025, hereby issue this FINAL AWARD, as follows:

### Claimant's Antitrust Allegations.

Claimant alleged that Respondent engaged in anticompetitive conduct in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; Section 2 of the Sherman Act, 15 U.S.C. § 2; the Washington Consumer Protection Act; and the California Cartwright Act, Cal. Bus. & Prof. Code §§ 16700 et seq. ("Cartwright Act") (collectively "Antitrust Claims").

### Rule of Reason Evaluation Applies to the Antitrust Claims.

An Order of the Arbitrator dated August 7, 2025 (Partial Summary Judgement) granted partial summary judgment to Respondent providing that the legal standard to evaluate Claimant's antitrust claims, arising from Section 1 of the Sherman Act, Section 2 of the Sherman Act, or the Washington Consumer Protection Act, is the "rule of reason" evaluation, and not the "per se" rule. As set forth below, the rule of reason also applied to Claimant's Cartwright Act claim.

Claimant's post-hearing request that this Tribunal apply a "quick-look" evaluation to Claimant's allegations, instead of the rule of reason, was rejected.

#### Rule of Reason Standards.

The rule of reason involves a three (3) step burden shifting test to evaluate Section 1 and Section 2 of the Sherman Act claims:

Step 1  Claimant must prove: (a) a relevant market, consisting of relevant product and geographic markets; (b) that Respondent has "market power" (Section 1 of the Sherman Act claim) or "monopoly power" (Section 2 of the Sherman Act claim) in that relevant market; and (c) Respondent's challenged restraints caused market-wide harm to competition;

Step 2  If the Claimant meets the initial burden, the burden shifts to the Respondent to show that its behavior has procompetitive justifications; and

Step 3  If the Respondent can establish a procompetitive justification, then the Claimant has the opportunity to show that: (a) the restraint is not necessary to achieve the procompetitive goal; or (b) the goal can be achieved in a less restrictive way.

Claimant and Respondent each bears the burden of proof to prove each applicable Step of the rule of reason by a preponderance of the evidence.

**Denial of Claimant's Antitrust Claims.**

For the reasons set forth below, Claimant failed to prove Claimant's definition of a relevant market as required under Step 1 of the rule of reason test. No further evaluation of Claimant's Antitrust Claims under Steps 2 or 3 of the rule of reason was needed. All of Claimant's Antitrust Claims failed the rule of reason evaluation and are **DENIED.**

**Denial of Claimant's Section 1 of the Sherman Act Claim.**

### Claimant Failed to Define a Relevant Market Under Step 1.

Claimant asserted that the relevant market was the digital distribution for third-party PC games in the U.S. Claimant's relevant product market excluded console games and first-party sellers.

### Claimant Failed to Prove that the Relevant Product Market Excludes Consoles.

Claimant's expert witness, Dr. Cross,[1] opined that the relevant product market excludes console games. In support of his opinion, Dr. Cross testified that cross-price elasticity between console games and

---

[1] The expert witnesses in this arbitration were highly credentialed scholars who presented testimony and opinions that included disagreements regarding esoteric economic terminology, models, and concepts such as a "but-for" world, the "Boik & Corts model," and sampling methodologies. The Tribunal had to evaluate and draw conclusions from the experts' testimony on those and other esoteric economic concepts in reaching the Tribunal's determinations. The perceived credibility of each expert in providing economics-based guidance to the Tribunal was an important factor in assessing the persuasiveness of an expert's testimony. The Tribunal requested that the experts present in-person testimony in large part to assess their credibility. In this regard, there were instances where Dr. Cross's testimony appeared to show undue bias against Respondent. In one instance, Dr. Cross was asked to compare Respondent's challenged "discounting restrictions" with certain FTC guidelines regarding deceptive practices. That comparison led to his agreement that Respondent and Epic Stores (that used virtually identical discounting restrictions to Respondent) may have adopted their discounting restrictions in order to comply with the FTC guidelines. However, Dr. Cross further testified that it was possible, but highly unlikely, that Respondent published the discounting restrictions to comply with the FTC regulations. Dr. Cross also testified that he did not think that Respondent was "too concerned with FTC compliance" when adopting its challenged discounting restrictions. It appeared that Dr. Cross had an antagonistic bias against Respondent, which diminished his credibility.

PC games was likely to be low and that Respondent's users likely do not view consoles and PC games as reasonable substitutes. Dr. Cross also cited testimony from an expert witness in a separate antitrust mass consumer arbitration proceeding, without substantiation, that the share of PC gamers who do not own a console is about 50%, to support his opinion that PC gamers do not view consoles and PC games as reasonable substitutes.

Dr. Cross's opinion also relied in part on the opinion of the plaintiff's (developers) expert witness, Dr. Schwartz, in a separate lawsuit (*In Re Valve Antitrust Litigation*), that consoles are in a different market than PC games. Dr. Cross also adopted the court's determination in that lawsuit that consoles are in a different market; however, Dr. Cross did not fully explain the basis for his reliance on Dr. Schwartz's opinion or the court's determination.

Respondent's expert witness, Dr. McCrary, countered that PC and console games belong in the same relevant market. Dr. McCrary's testimony addressed the substitutability and converging of console and PC technologies, which included overlapping availability of PC/console game titles on distributor platforms.

Dr. Cross ultimately testified that his opinion was based upon *Brown Shoe* qualitative factors and not substantiated by any economic quantitative/empirical data or analysis. Dr. Cross testified that he had limited availability of quantitative and survey data to support his conclusion that PC and console games are not substitutes. Regardless of whether or for whatever reason why such data was not available to support Dr. Cross's opinion, his opinion excluding consoles from the relevant product market required an analysis of quantitative and survey data to satisfy Claimant's burden. Without such an analysis, Dr. Cross's opinion was not persuasive.

Claimant failed to meet Claimant's burden of proof that console games should be excluded from the relevant product market.

### Claimant Failed to Prove that the Relevant Product Market Excludes First-Party Distributors

Dr. Cross's opinion that the relevant market excludes first-party distributors relied substantially on Dr. Schwartz's same conclusion in *In Re Valve Antitrust Litigation*.

Dr. McCrary testified that many developers, including Ubisoft and Microsoft, sold their own games on their own first-party store platforms and on those of other third-party distributors, including Respondent's platform. Dr. McCrary presented case studies regarding developers Ubisoft, EA, and Activision and their relationship with Respondent that demonstrated the interchangeability of game distribution among them. In one example, Ubisoft initially offered a game on Respondent's platform (third-party), then switched that game exclusively onto its own platform (first-party), and then switched back to its platform and Respondent's platform (simultaneous first-party and third-party). It then distributed its game on its own platform and on the Epic Games store (another third-party distributor).

3

Any sale by a first-party distributor, other than sales by Respondent of its own games, is a sale that Respondent (in its capacity as a third-party distributor) loses (and vice versa), thus demonstrating that first-party sellers and Respondent are reasonably interchangeable competitors in the distribution of online games.

Claimant failed to meet Claimant's burden of proof that first-party distributors should be excluded from the relevant market.

### Claimant Failed to Prove That the Relevant Geographic Market Is Limited to the U.S.

Claimant's Amended Demand alleged that the relevant geographic market was global and not limited to the U.S.; however, Claimant's allegations and proofs at the evidentiary hearing presented the U.S., alone, as the relevant market.

Dr. Cross opined that the U.S. was a separate geographic relevant market because Respondent's online game purchasers in the U.S. faced different conditions and game pricing than Respondent's online purchasers in other countries. Dr. Cross highlighted Respondent's practice of encouraging developers to set unique geographical based game prices by looking beyond mere adjustments for currency fluctuations, and to take into account the local economic demographics of game buyers. Dr. Cross also testified that Respondent's U.S. users were geo-blocked and prevented from making cross border substitution purchases on Respondent's platform, thus limiting the relevant geographic market to the U.S.

Dr. McCrary countered with persuasive evidence of the international scope of digital gaming, including the use of multiple languages and currencies on Respondent's and other third-party distributor's platforms, and the international channels of distribution available to online game purchasers. Dr. McCrary presented evidence that online game purchasers (including Respondent's users) can access and buy games from online game distributors wherever a distributor is located (world-wide), and distributors, including Respondent, can sell digital games regardless of where the purchaser is located (world-wide). Respondent also used the same global revenue share model (30-25-20%) with developers without regard to the developers' or the purchasers' location throughout the world, thus further evidencing the global scope of Respondent's market.

Claimant failed to meet Claimant's burden of proof that the relevant geographic market is limited to the U.S.

### Claimant Failed to Satisfy Step 1 of the Rule of Reason.

Claimant did not meet Claimant's initial burden of proof to define the relevant market under Step 1 of the rule of reason. Claimant's failure to define a relevant market renders any attempt to determine "market power" within that undefined relevant market impossible and any further evaluation under the rule of reason unnecessary.[2] Claimant's claim that Respondent violated Section 1 of the Sherman Act is **DENIED**.

---

[2] The Tribunal evaluated other components of Step 1 of the rule of reason, including whether Respondent's alleged anticompetitive restraints caused market-wide harm to competition; however, that evaluation was not presented in

### Denial of Claimant's Section 2 of the Sherman Act Claim.

An evaluation of Claimant's Section 2 of the Sherman Act claim applies the same rule of reason evaluation that was applicable to Claimant's Section 1 of the Sherman Act claim. Under Step 1, Claimant must prove: (a) a relevant market, consisting of relevant product and geographic markets; (b) that Respondent has "monopoly power" in that relevant market; and (c) Respondent's challenged restraints caused market-wide harm to competition;

Claimant's failure to define a relevant market in connection with Claimant's Section 1 of the Sherman Act claim applies equally to Claimant's Section 2 of the Sherman Act claim. Accordingly, Claimant's claim that Respondent violated Section 2 of the Sherman Act is **DENIED**.

### Denial of Claimant's State Law Claims.

#### Addition of Cartwright Act Claim to Claimant's Amended Demand.

Claimant's Amended Demand alleged that Claimant was a California resident but did not allege a Cartwright Act claim against Respondent. Claimant's Cartwright Act claim was a new claim that first appeared in Claimant's Pre-Hearing Opening Brief, dated October 6, 2025, which Claimant submitted two weeks before the start of the evidentiary hearing. Claimant did not address the procedural requirements, including Rule R-8 (Changes of Claim) of the AAA Consumer Arbitration Rules, to add Claimant's new Cartwright Act claim to Claimant's Amended Demand.

Respondent objected to Claimant's Cartwright Act claim during the hearing based on a Choice of Law provision in the Steam Subscriber Agreement. Respondent Valve Corporation's Post Hearing Brief, dated December 12, 2025 also addressed Claimant's failure to properly add the Cartwright Act claim with the following statement: "*First*, Claimant never pleaded a Cartwright Act claim, forfeiting any such claim." Respondent did not provide any authority for its statement.

The Tribunal determines the issues relating to the addition of Claimant's Cartwright Act claim to Claimant's Amended Demand, as follows:

1.       Adding the Cartwright Act claim to Claimant's Amended Demand did not materially prejudice Respondent. Respondent received sufficient notice of Claimant's Cartwright Act claim before the start of the evidentiary hearing, and the Cartwright Act claim arose from the same underlying facts as Claimant's Sherman Act and Washington Consumer Protection Act claims. The Tribunal allows the Claimant's addition of the Cartwright Act claim to the Claimant's Amended Demand; and

2.       Claimant's Cartwright Act claim, and Washington Consumer Protection Act claim are cumulative and not mutually exclusive and the Cartwright Act, along with the Washington Consumer Protection Act, were properly before the Tribunal for determination.

---

this Final Award as Claimant's failure to define a relevant market disposed of Claimant's Section 1 of the Sherman Act claim and rendered any evaluation of Respondent's alleged anticompetitive restraints moot.

**Denial of State Law Claims.**

Both the Washington Consumer Protection Act and the Cartwright Act track the Sherman Act. The same rule of reason applicable to Claimant's Section 1 and Section 2 of the Sherman Act claims and the Washington Consumer Protection Act claim were applicable to Claimant's Cartwright Act claim. The rule of reason evaluation that was applied to deny Claimant's Section 1 and Section 2 of the Sherman Act claims applies equally to the Washington Consumer Protection Act and the Cartwright Act. Accordingly, Claimant's state law claims alleging that Respondent violated the Washington Consumer Protection Act and the Cartwright Act are **DENIED.**

**Fees and Costs.**

The administrative fees of the American Arbitration Association shall be borne as incurred and the compensation of the arbitrator shall be borne as incurred.

This Final Award is in full settlement of all claims submitted to this arbitration. All claims not expressly granted herein are hereby **DENIED**.

Dated:  January 23, 2026

John E. Ohashi, Arbitrator

I, John E Ohashi, do hereby affirm upon my oath as arbitrator that I am the individual described in and who executed this instrument, which is my Final Award.

Dated:  January 23, 2026

John E. Ohashi, Arbitrator

# EXHIBIT 3

1
2
3
4
5

FILED

2026 FEB 05 03:37 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 26-2-04962-9 SEA

6
7

SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

8

9   VALVE CORPORATION,

10                    Petitioner,

11       v.

12   AMIR WRIGHT,

13                    Respondent.

No.

**VALVE CORPORATION'S PETITION TO CONFIRM ARBITRATION AWARD PURSUANT TO RCW 7.04A.220 AND FOR A JUDGMENT PURSUANT TO RCW 7.04A.250**

14       Valve Corporation ("Valve") requests an order pursuant to RCW 7.04A.220

15   confirming the Award of Arbitrator issued by American Arbitration Association ("AAA")

16   Arbitrator David B. Coher in Valve's favor, dated February 4, 2026 (the "Final Award"),[1]

17   in the matter *Wright v. Valve Corporation dba Steam*, AAA Case No. 01-23-0003-8815

18   (the "Arbitration"). Valve also requests that the Court enter judgment in accordance with

19   the Final Award pursuant to RCW 7.04A.250.

20
21
22
23
24

25       [1] The Final Award is attached as Exhibit 1 to the Declaration of Blake Marks-Dias
filed herewith, dated February 5, 2026 ("Decl." and exhibit thereto "Ex. 1").

26

27   VALVE CORPORATION'S
     PETITION TO CONFIRM
28   ARBITRATION AWARD – 1

**Corr Cronin LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1

## I.    STATEMENT OF FACTS

2    Valve is a corporation organized under the laws of Washington State with its

3 principal place of business in King County, Washington. (Decl. ¶ 2.)

4    On September 1, 2023, Respondent Amir Wright ("Respondent") filed a demand

5 for arbitration against Valve with the AAA alleging anticompetitive practices regarding

6 prices on Valve's digital gaming platform, Steam. (Decl. ¶ 3.) Respondent asserted claims

7 under Sections 1 and 2 of the Sherman Act, the California Cartwright Act, and California's

8 Unfair Competition Law. (*Id.*)

9    While the parties disputed whether Respondent could proceed in arbitration, the

10 arbitrator permitted the Arbitration to proceed.[2] (Decl. ¶ 4.)

11    Following an arbitration hearing, on February 4, 2026, Arbitrator Coher issued the

12 Final Award in the Arbitration. (Decl. ¶ 5.)

13    On February 5, 2026, the AAA transmitted the Final Award to the parties.

14 (Decl. ¶ 6.)

15    The arbitrator found in the Final Award that the rule of reason applied to

16 Respondent's claim under Section 1 of the Sherman Act. (Ex. 1 at 1-2.) The arbitrator

17 found that Respondent's claim under Section 1 of the Sherman Act failed because

18 Respondent "has not shown that [Valve's] alleged agreements had a substantial

19 anticompetitive effect on consumers in the relevant market." (*Id.* at 3.) The arbitrator

20 further found that Respondent's claim under Section 2 of the Sherman Act failed because

21 (i) "[i]n the relevant market, [Valve's] Steam platform does not have the simple numeric

22 market share often associated with a dominant market position of 50% or greater and

23

24    [2] On October 18, 2024, Valve filed an action in the U.S. District Court for the
Western District of Washington captioned *Valve Corporation v. Abbruzzese*, No. 2:24-cv-
25 01717. In *Abbruzzese*, Valve seeks to enjoin arbitrations brought by Respondent and
hundreds of other claimants represented by the same counsel against Valve. The relief
26 sought in *Abbruzzese* as to Respondent is now moot.

27 VALVE CORPORATION'S
PETITION TO CONFIRM
28 ARBITRATION AWARD – 2

**Corr Cronin LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

(ii) Valve's Steam "platform lacks the pricing power to exclude competition." (*Id.* at 5.) And the arbitrator found that Respondent's claims under California law failed because "Washington law governs the claims brought in this case" and because "there is no claim for" Respondent's Unfair Competition Law claim "to rest upon" because "no other underlying claim in this case has been upheld." (*Id.* at 6-8.)

The final binding award was as follows:

> The Respondent [Valve] did not violate the Sherman Act in the manner alleged by the Claimant [Respondent here] because the relevant market definition is video game distribution across pcs, consoles, and mobile devices, and the Respondent does not have pricing power in this market. Furthermore, the Respondent does not have monopoly power or any of the traditional indicators of it in the relevant market. Finally, the Claimant's California-law claims are inapplicable under California choice-of-laws principles. For these reasons, as detailed above, this tribunal finds in favor of the Respondent.

> The administrative fees of the American Arbitration Association totaling $2,275 shall be borne as incurred, and the compensation of the arbitrator shall be borne as incurred.

> This Final Award is in full settlement of all claims and counterclaims submitted to this arbitration. All claims not expressly granted herein are hereby denied.

(Ex. 1 at 8.)

## II.    STATEMENT OF ISSUES

Whether the Court should enter an order confirming Arbitrator Coher's Final Award and enter judgment in accordance with the Final Award.

## III.    EVIDENCE RELIED UPON

This petition is based upon the Declaration of Blake Marks-Dias, dated February 5, 2026, along with the exhibit thereto.

VALVE CORPORATION'S
PETITION TO CONFIRM
ARBITRATION AWARD – 3

## IV.    ARGUMENT AND LEGAL AUTHORITY

**A.    The Final Award Should Be Confirmed Under RCW 7.04A.220**

The Final Award should be confirmed. Under the Washington Uniform Arbitration Act, "[a]fter a party to [an] arbitration proceeding receives notice of an award, the party may file a motion with the court for an order confirming the award." RCW 7.04A.220. "[T]he court shall issue such an order unless the award is modified or corrected under RCW 7.04A.200 or 7.04A.240 or is vacated under RCW 7.04A.230." *Id.*

On February 5, 2026, Valve and Respondent received notice of the Final Award. (Decl. ¶ 6.) The Final Award has not been modified under RCW 7.04A.200 or 7.04A.240 or vacated under RCW 7.04A.230. (Decl. ¶ 8.) Accordingly, Valve is entitled to entry of an order confirming the Final Award. Valve notes that the Washington Superior Court has granted 60 petitions to confirm in five similar sets of arbitrations in which Valve prevailed, as set forth in Appendix A hereto.

**B.    Valve Is Entitled to a Judgment in Conformity with the Final Award**

Valve is entitled to a judgment in accordance with the Final Award. Upon granting an order confirming an award, the Court "shall enter a judgment in conformity with the order." RCW 7.04A.250. The Court has "a mere ministerial duty to reduce the award to judgment," *Price v. Farmers Ins. Co. of Wash.*, 133 Wash.2d 490, 497 (1997), and cannot "go behind the face of the award," *id.* at 496-97.

## V.    CONCLUSION

For the foregoing reasons, Valve respectfully requests that the Court grant this Petition to Confirm the Final Award and enter judgment in conformity therewith.

VALVE CORPORATION'S
PETITION TO CONFIRM
ARBITRATION AWARD – 4

DATED: February 5, 2026

I certify that this memorandum contains 931 words, in compliance with the Local Civil Rules.

CORR CRONIN LLP

s/ Blake Marks-Dias
Blake Marks-Dias, WSBA No. 28169
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
(206) 625-8600 Phone
(206) 625-0900 Fax
bmarksdias@corrcronin.com

*Of Counsel*

Michael W. McTigue Jr.
Meredith C. Slawe
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Attorneys for Petitioner Valve Corporation*

VALVE CORPORATION'S
PETITION TO CONFIRM
ARBITRATION AWARD – 5

**APPENDIX A**

| ORDERS CONFIRMING ARBITRATOR SAYDAH AWARDS |
|---|

*Valve Corp. v. Anderson*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)
*Valve Corp. v. Banks*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)
*Valve Corp. v. Clark*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)
*Valve Corp. v. Duan*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)
*Valve Corp. v. Gonzalez*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)
*Valve Corp. v. Knooihuizen*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)
*Valve Corp. v. Loomis*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)
*Valve Corp. v. O'Brien*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)
*Valve Corp. v. Otey*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)
*Valve Corp. v. Pedrick*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)
*Valve Corp. v. Rosales*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)
*Valve Corp. v. Schultz*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)
*Valve Corp. v. Toft*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)
*Valve Corp. v. Trodden*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)
*Valve Corp. v. Wilkerson*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)
*Valve Corp. v. Womack*, No. 25-2-06159-1 SEA (Wash. Super. Ct. Mar. 31, 2025)
*Valve Corp. v. LaPaglia*, No. 25-2-06159-1 SEA (Wash. Super. Ct. June 30, 2025)
*Valve Corp. v. Theriot*, No. 25-2-06159-1 SEA (Wash. Super. Ct. June 30, 2025)
*Valve Corp. v. Mac Dougall*, No. 25-2-06159-1 SEA (Wash. Super. Ct. June 30, 2025)
*Valve Corp. v. Holm*, No. 25-2-06159-1 SEA (Wash. Super. Ct. June 30, 2025)
*Valve Corp. v. Enriquez*, No. 25-2-06159-1 SEA (Wash. Super. Ct. June 30, 2025)
*Valve Corp. v. Martinolich*, No. 25-2-06159-1 SEA (Wash. Super. Ct. June 30, 2025)

| ORDERS CONFIRMING ARBITRATOR GILMAN AWARDS |
|---|

*Valve Corp. v. Kemp*, No. 25-2-21486-9 SEA (Wash. Super. Ct. Aug. 29, 2025)
*Valve Corp. v. Stewart*, No. 25-2-21487-7 SEA (Wash. Super. Ct. Aug. 29, 2025)

| ORDERS CONFIRMING ARBITRATOR KINGSLEY AWARDS |
|---|

*Valve Corp. v. Barker*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)
*Valve Corp. v. Duman*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)
*Valve Corp. v. Edwards*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)
*Valve Corp. v. Engols*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)
*Valve Corp. v. Linares*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)
*Valve Corp. v. Molina*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)
*Valve Corp. v. Swaim*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)
*Valve Corp. v. Stevens*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)
*Valve Corp. v. Smith*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)
*Valve Corp. v. Roberts*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)
*Valve Corp. v. Johnson*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)
*Valve Corp. v. Kain*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)
*Valve Corp. v. Lewis*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)
*Valve Corp. v. Hebert*, No. 25-2-27832-8 SEA (Wash. Super. Ct. Oct. 31, 2025)

**APPENDIX A**

| ORDERS CONFIRMING ARBITRATOR GAGLIONE AWARDS |
|---|
| *Valve Corp. v. Hauser,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 6, 2026) |
| *Valve Corp. v. Ackley,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 6, 2026) |
| *Valve Corp. v. Coburn,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 6, 2026) |
| *Valve Corp. v. Borek,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 6, 2026) |
| *Valve Corp. v. Baldwin,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 6, 2026) |
| *Valve Corp. v. Ayson,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 6, 2026) |
| *Valve Corp. v. Grescowle,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 6, 2026) |
| *Valve Corp. v. Francesconi,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 6, 2026) |
| *Valve Corp. v. Field,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 6, 2026) |
| *Valve Corp. v. Daugherty,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 6, 2026) |
| *Valve Corp. v. Uccello,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 7, 2026) |
| *Valve Corp. v. Tipton,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 7, 2026) |
| *Valve Corp. v. Timmons,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 7, 2026) |
| *Valve Corp. v. Taddei,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 7, 2026) |
| *Valve Corp. v. Ratliff,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 7, 2026) |
| *Valve Corp. v. Hiley,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 7, 2026) |
| *Valve Corp. v. Hefner,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 7, 2026) |
| *Valve Corp. v. Prato-Shein,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 7, 2026) |
| *Valve Corp. v. Lundsgaard,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 7, 2026) |
| *Valve Corp. v. Kuller,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 7, 2026) |
| *Valve Corp. v. Newby,* No. 25-2-32835-0 SEA (Wash. Super. Ct. Jan. 7, 2026) |
| **ORDER CONFIRMING ARBITRATOR PALOMO AWARD** |
| *Valve Corp. v. Estate of Jonathan Mindrum,* No. 25-2-36038-5 SEA (Wash. Super. Ct. Feb. 5, 2026) |

# EXHIBIT 4



**FINAL AWARD**

<u>Amir Wright v. Valve Corporation</u>

Case Number: <u>01-23-0003-8815</u>

I, David B. Coher, the undersigned arbitrator, having been designated in accordance with the arbitration agreement entered into between the above-named parties, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, each represented by counsel, at an evidentiary hearing held on July 3, 2025, do hereby issue this FINAL AWARD as follows:

Pursuant to the American Arbitration Association's Consumer Rules of Arbitration, the Arbitrator hereby <u>DENIES</u> each of the Claimants' counts, for the reasons explained below.

<u>The Respondent Did Not Violate Section 1 of the Sherman Act</u>

The Claimant brings here a claim, through the Clayton Act, that the Respondent placed restraints upon video game developers who used the Respondent's Steam video game platform to sell to mutual customers that prevented the developers from 1) offering lower prices for their video games (in their entirety or portions thereof) on non-Steam marketplaces or, sometimes, on the Respondent's Steam marketplace itself, or 2) offering video games (again, in their entirety or portions thereof) that were materially different on non-Steam marketplaces. These restraints, Claimant alleges, were acts taken by the Respondent and the video game developers that constituted "contract[s] … or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations…" 15 U.S.C. § 1 (Sherman Act); *see* 15 U.S.C. § 15. Meanwhile, the Respondent argues that its actions did not restrain trade as, "'[i]n view of the common law and the law in this country' when the Sherman Act was passed, the phrase "restraint of trade' is best read to mean 'undue restraint.'" *Ohio v. American Express Co.*, 585 U.S. 529, 540 (2018) ("Amex") (*citing Standard Oil Co. of N.J. v. United States*, 221 U.S. 1, 59–60 (1911)).

<u>A Rule of Reason Analysis is Required</u>

A Section 1 analysis is presumed to be governed by the Rule of Reason standard in the case of vertical business relationships. *In re Musical Instruments & Equip. Antitrust*



*Litigation*, 798 F.3d 1186 (9th Cir. 2015); s*ee also Amex*, 585 U.S. at 540; *U.S. v. Brewbaker*, 87 F.4th 563 (4th Cir. 2023). Here, the evidence indicated a vertical business relationship between the Respondent and each of the video game developers alleged to have been part of the agreements applicable to the Claimant that allegedly violated Section 1 of the Sherman Act. The Respondent operates the Steam marketplace and platform, where consumers can purchase and play video games developed by a wide variety of firms and individuals. In some instances, the Respondent has also developed video games, which could render another part of the firm a competitor to video game developers on the Steam marketplace, but not for any statistically significant portion of such sales. For all the Claimant's purchases, the Respondent's Steam marketplace and platform was a distributor of games developed, or 'manufactured,' by a wide variety of video game developers. *See Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 551 U.S. 877, 888 (2007) ("*Leegin*").

Therefore, the applicable alleged agreements are between parties operating at "different levels of distribution," and the relationships are considered vertical. *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 730 (1988); s*ee Leegin*, 551 U.S. at 895. Thus, the Rule of Reason standard is appropriate for analyzing whether the alleged agreements between the Respondent and the video game developers in question were an impermissible restraint of trade.

The Rule of Reason "requires courts to conduct a fact-specific assessment of 'market power and market structure … to assess the [restraint]'s actual effect' on competition. *Amex*, 585 U.S. at 541 (*citing Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768 (1984)). This consists of a "three-step, burden-shifting framework." *Id*. As the Court explained,

> **Under this framework, the [Claimant] has the initial burden to prove that the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market.** See 1 J. Kalinowski, Antitrust Laws and Trade Regulation § 12.02[1] (2d ed. 2017) (Kalinowski); P. Areeda & H. Hovenkamp, Fundamentals of Antitrust Law § 15.02[B] (4th ed. 2017) (Areeda & Hovenkamp); *Capital Imaging Assoc., P.C. v. Mohawk Valley Medical Associates, Inc.*, 996 F.2d 537, 543 (C.A.2 1993). **If the [Claimant] carries its burden, then the burden shifts to the [Respondent] to show a pro-competitive rationale for the restraint.** See 1 Kalinowski § 12.02[1]; Areeda & Hovenkamp § 15.02[B]; *Capital Imaging Assoc., supra*,

AMERICAN
ARBITRATION
ASSOCIATION®   | INTERNATIONAL CENTRE
FOR DISPUTE RESOLUTION®

at 543. **If the [Respondent] makes this showing, then the burden shifts back to the [Claimant] to demonstrate that the pro-competitive efficiencies could be reasonably achieved through less anticompetitive means.** See 1 Kalinowski § 12.02[1]; *Capital Imaging Assoc.*, *supra*, at 543.

*Id*, 585 U.S. at 541-542; *see also O'Bannon v. National Collegiate Athletic Ass'n*, 802 F. 3d 1049 (9th Cir. 2015).

The analysis fails at the first step because the Claimant has not shown that the Respondent's alleged agreements had a substantial anticompetitive effect on consumers in the relevant market.

<u>The Relevant Market is Video Game Distribution Across PCs, Consoles, and Mobile Devices, and the Respondent Does Not Have Pricing Power in This Market</u>

The parties and their experts spent significant time defining the relevant market. But the key consideration is that "the relevant market is defined as 'the area of effective competition.'" *Id* (*citing Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 177 (1965); *accord*, 2 Kalinowski § 24.01[4][a]). While there were many considerations in defining the relevant market, it ultimately came down to understanding the Claimant's use of games. Among such consumers, the distinction among games is by type (*e.g.*, role-playing games ("RPG"), first-person shooters, real-time strategy, puzzle, sports, etc.), not by operating system or platform. To argue otherwise would require, for example, treating a game played on a computer running iOS as a separate market from a game played within a terminal emulator running Windows on iOS (as the Claimant did during his testimony in this hearing). Further, this could raise questions about which operating system's kernel should be used for the relevant market definition, let alone between PCs and consoles. This would reach an absurdist end.

Further, while some evidence was presented that the input devices for a console and a PC could lead consumers to make different choices, the breadth of input devices available for either format, or even for mobile devices, renders this distinction without meaningful difference.

Simply because there are trade-offs among playing a particular video game on a PC, console, or mobile device does not mean consumers do not consider one a

substitute for the others – quite the contrary. It is the very trade-offs that consumers make between equipment (for example, a consumer who owns both may select the customizability on the PC for an RPG versus quickly loading a sports game on the console) or platforms (for example, being able to gain credit or credibility for time spent playing an RPG on Steam versus being able to access a game earlier on another platform).

As the weight of the evidence shows, the Respondent's Steam platform lacks pricing power across the relevant market for all video games delivered via PC, consoles, and mobile.

> Market power is generally defined as whether the parties have the ability to raise prices or reduce output without losing so much market share that the price increase or output reduction is unprofitable. This often requires an analysis of the market structure, including the definition of the relevant market, whether the defendants have a dominant share of that market, and whether there are significant barriers to entry into the market or that existing competitors in the market lack the capacity to increase their output in the short run.

J. Cross, Antitrust Law Section 1 of the Sherman Act I.B (1st ed. 2021).

The Respondent's Steam platform does not possess the ability to prevent new entrants from the relevant market, whether from a technical standpoint, since virtually anybody can set up a website to operate a PC video game distribution platform or console device or mobile game, or a practical standpoint, as well-financed, multi-national corporations back several significant competitors with the resources to match or beat the Respondent's Steam platform in size and breadth. Whatever its size and power in one portion of the relevant market, consumers have effective competition in the relevant market that is well beyond the Respondent's Steam platform's ability to retain pricing power. Therefore, consumers could not be hurt by the alleged agreements of the Respondent and the video game developers of the games purchased by the Claimant. As such, the Respondent did not violate Section 1 of the Sherman Act.

<u>The Respondent Did Not Violate Section 2 of the Sherman Act</u>



The Claimant alleges that the Respondent violated Section 2 of the Sherman Act because even though the alleged agreements of the Respondent and video game developers did not constitute anti-competitive restraints in violation of Section 1, "Valve is still liable to Claimants under Section 2 because '[c]onduct that might otherwise be lawful may be impermissibly exclusionary under antitrust law when practiced by a monopolist." Claimant's Closing Brief, p. 28 (*citing E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 441 (4th Cir. 2011)). Claimant argues that the Respondent's Steam platform "occupies a dominant position in the market for distribution of PC games" and because of this "its anticompetitive agreements and policies also constitute illegal monopoly maintenance, for which Valve is liable." *Id*.

As discussed above, the relevant market is video game distribution across PCs, consoles, and mobile devices. In the relevant market, the Respondent's Steam platform does not have the simple numeric market share often associated with a dominant market position of 50% or greater. *See United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 187 (3d Cir. 2005); *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1250 (11th Cir. 2002); *Exxon Corp. v. Berwick Bay Real Estates Partners*, 748 F.2d 937, 940 (5th Cir. 1984); *Colo. Interstate Gas Co. v. Natural Gas Pipeline Co. of Am.*, 885 F.2d 683, 694 n.18 (10th Cir. 1989). Further, the Respondent platform lacks the pricing power to exclude competition. Again, as discussed above, the evidence showed that the Respondent has been unable to prevent entrants from entering the relevant market and has had to lower its prices to retain video game developers. Further, the evidence suggests that if the Respondent's Steam platform fell behind on features or significantly raised its prices, the Respondent would lose market share to other PC distribution platforms, consoles, and mobile devices.

<u>Claims Under California Law Are Not Applicable</u>

Section 10 of the Steam Subscriber Agreement ("SSA"), by which the agreement to engage in this arbitration was reached, provides in relevant part,

> **You and Valve agree that** this Agreement shall be deemed to have been made and executed in the State of Washington, U.S.A., and **Washington law, excluding conflict of laws principles** and the Convention on Contracts for the International Sale of Goods, **governs all claims arising out of or relating to: (i) any aspect of the relationship between us**; (ii) this Agreement; or (iii) your use of Steam,



your Account, of the Content and Services; except that the U.S. Federal Arbitration Act governs arbitration as far as your country's laws permit.

SSA, Section 10 (emphasis added).

Therefore, Washington law governs the claims brought in this case.

However, California's conflict-of-laws principles could apply, and California law would apply if California had a "materially greater interest" in applying its own law, and applying Washington law would violate a "fundamental policy" of California. *Washington Mutual Bank v. Superior Court (Briseno)*, 24 Cal. 4th 910, 916-917 (2001); *see* Restatement (Second) of Conflict of Law, Section 187(2)(b). Here, California has no materially greater interest as the Respondent is not incorporated or based in California, the Claimant has moved throughout the United States during the period in question, the Claimant is no longer a California resident, and there are no California-specific ties to the alleged conduct beyond the transaction happening to have occurred in California, but in a manner that at the time of the transaction could have easily happened in the same manner in any other state in the nation.

Further, applying Washington law would not violate a "fundamental policy" of California, as the California laws that the Claimant seeks to apply generally follow the same antitrust principles as discussed above and would result in a similar result. As the Respondent wrote,

> California has a general and long-standing policy of applying the Cartwright Act the same way federal courts apply the Sherman Act. [*citing Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, 939 F. Supp. 2d 1002, 1011 (N.D. Cal. 2013) ("The Cartwright Act, California's antitrust law, was 'modeled after the Sherman Act,' and therefore the Court's analysis 'mirrors the analysis under federal law.'").] Since 2007, the U.S. Supreme Court has interpreted the Sherman Act to require that all vertical price agreements be judged under the rule of reason, rather than the per se rule, overruling prior cases. [*citing Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 899 (2007) (holding that "the rule of reason, not a per se rule of unlawfulness, [is] the appropriate standard to judge vertical price restraints").] Thus, California's policy is to follow that interpretation and analyze vertical price agreements under the rule of reason. [citation omitted]



In opposition, Claimant argues that California has a different policy, because California's Supreme Court has not updated its 50-year-old case law to track the U.S. Supreme Court's 2007 *Leegin* decision. [citation omitted] Lower courts applying California law have split on whether they remain bound by the old cases. [*See In re Online Travel Co. Hotel Booking Antitrust Litig.*, 2014 WL 5460450 at *10 (N.D. Tex. Oct. 27, 2014) ("[L]ower courts have diverged on this issue following Leegin, leaving the law in California unclear.").] But it does not follow that applying Washington law—which is the same as federal law—would violate California's fundamental public policy. Even the cases citing the old cases recognize that they have become outdated, [*See, e.g., Kaewsawang v. Sara Lee Fresh, Inc.*, 2013 WL 3214439 at *4–5 (Cal. Super. May 6, 2013) (rejecting argument that, under *Mailand*, "all price fixing, whether horizontal or vertical, is *per se* unlawful under the Cartwright Act," on the ground that "the *Mailand* Court expressly relied on a case that has since been overturned by the U.S. Supreme Court, and because interpretations of the federal Sherman Act are applicable to issues arising under the Cartwright Act . . . , it remains unlikely that the *Mailand* court's holding is still applicable in light of *Leegin*").] and many other courts find those cases are no longer binding. [*See, e.g., Flagship Theatres of Palm Desert, LLC v. Century Theatres, Inc.*, 269 Cal. Rptr. 3d 446, 466–68 (Cal. Ct. App. 2020) (noting, after review of post-*Leegin* U.S. Supreme Court decisions, that "[t]he California Supreme Court has not yet addressed the general treatment of vertical restraints under the Cartwright Act, . . . [b]ut California Courts of Appeal generally analyze vertical restraints under the rule of reason.").] A "fundamental" policy is not "likely to be represented by a ruling tending to become obsolete . . . ." [*See* Restatement § 187 cmt. g.]

Claimant criticizes Valve for failing to "grapple" with recent lower court cases that continue to interpret the Cartwright Act to condemn vertical price agreements as per se illegal. [citation omitted] But a court "will not refrain from applying the chosen law [here, Washington's] merely because this would lead to a different result than would be obtained under the local law of the state of the otherwise applicable law." [Restatement § 187 cmt. g.] Instead, the party seeking to escape his agreement must demonstrate violation of a "fundamental" policy.

AMERICAN ARBITRATION ASSOCIATION® | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

Respondent Valve Corporation's Reply Supplemental Post-Hearing Brief, pp. 11-13.

Further, the Claimant's count brought under California's Unfair Competition Law ("UCL") would only attach liability upon another, underlying claim made in this case. As no other underlying claim in this case has been upheld, there is no claim for a UCL claim to rest upon. Therefore, no "fundamental policy" of California can be violated by failing to apply California's UCL in this case.

<u>Conclusion</u>

The Respondent did not violate the Sherman Act in the manner alleged by the Claimant because the relevant market definition is video game distribution across pcs, consoles, and mobile devices, and the Respondent does not have pricing power in this market. Furthermore, the Respondent does not have monopoly power or any of the traditional indicators of it in the relevant market. Finally, the Claimant's California-law claims are inapplicable under California choice-of-laws principles.

For these reasons, as detailed above, this tribunal finds in favor of the Respondent.

The administrative fees of the American Arbitration Association totaling $2,275 shall be borne as incurred, and the compensation of the arbitrator shall be borne as incurred.

This Final Award is in full settlement of all claims and counterclaims submitted to this arbitration. All claims not expressly granted herein are hereby denied.

<u>February 4, 2026</u>

David B. Coher, Arbitrator

# EXHIBIT 5



Tacy Zysk
Assistant Vice President
2355 Highway 36 W.
Suite 400
Roseville, MN 55113

November 11, 2025

Will Bucher
Bucher Law PLLC
350 Northern Boulevard
Suites 324-1519
Albany, NY 12204-1000
Via Email to: will@bucherlawfirm.com

Michael W. McTigue, Jr., Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
One Manhattan West
New York, NY 10001
Via Email to: michael.mctigue@skadden.com

Case Number: 01-23-0005-2947

Baylen James
-vs-
Valve Corporation d/b/a Steam

Dear Parties:

On November 11, 2025, the American Arbitration Association (AAA) reviewed and finalized the billing for this matter and closed this case as Withdrawn.

The AAA will process any refund due to a party as soon as possible.

Pursuant to the AAA's current policy, in the normal course of our administration, the AAA may maintain certain electronic case documents in our electronic records system. Such electronic documents may not constitute a complete case file. Other than certain types of electronic case documents that the AAA maintains indefinitely, electronic case documents will be destroyed 18 months after the stated closing date.

We thank Arbitrator Morrill, who is receiving a copy of this correspondence, for serving on this matter.

Thank you for choosing the AAA to administer your arbitration.

Sincerely,
/s/ *Ryan Rumney on behalf of*
Jill Roettger
Manager of ADR Services
Direct Dial: (612)509-2224
Email: jillroettger@adr.org
Fax: (612)342-2334

cc:    Erik B. Atzbach
       Xinlin Morrow

Jing He
Priyanka Timblo
Ariel Thatcher
Shaud G. Tavakoli
Dorit U. Black, Esq.
Allen Lanstra, Esq.
Colm P. McInerney, Esq.
Andrew J. Fuchs
Scott Danner
Virginia F. Milstead
Christopher Schenck, Esq.
Meredith Slawe, Esq.
Jessica Painley
Blake Marks-Dias, Esq.
Andrew C. Indorf
Thomas Matthew
Lauren Cole
Daniel Horowitz
Ellen Noteware
Zachary Garrett

# EXHIBIT 6



Tacy Zysk
Assistant Vice President
2355 Highway 36 W.
Suite 400
Roseville, MN 55113

November 11, 2025

Will Bucher
Bucher Law PLLC
350 Northern Boulevard
Suites 324-1519
Albany, NY 12204-1000
Via Email to: will@bucherlawfirm.com

Michael W. McTigue, Jr., Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
One Manhattan West
New York, NY 10001
Via Email to: michael.mctigue@skadden.com

Case Number: 01-23-0005-3330

Andrew Davidson
-vs-
Valve Corporation d/b/a Steam

Dear Parties:

On November 11, 2025, the American Arbitration Association (AAA) reviewed and finalized the billing for this matter and closed this case as Withdrawn.

The AAA will process any refund due to a party as soon as possible.

Pursuant to the AAA's current policy, in the normal course of our administration, the AAA may maintain certain electronic case documents in our electronic records system. Such electronic documents may not constitute a complete case file. Other than certain types of electronic case documents that the AAA maintains indefinitely, electronic case documents will be destroyed 18 months after the stated closing date.

We thank Arbitrator Levy, who is receiving a copy of this correspondence, for serving on this matter.

Thank you for choosing the AAA to administer your arbitration.

Sincerely,
/s/ *Ryan Rumney on behalf of*
Jill Roettger
Manager of ADR Services
Direct Dial: (612)509-2224
Email: jillroettger@adr.org
Fax: (612)342-2334

cc:    Erik B. Atzbach
       Xinlin Morrow

Jing He
Priyanka Timblo
Ariel Thatcher
Shaud G. Tavakoli
Dorit U. Black, Esq.
Allen Lanstra, Esq.
Colm P. McInerney, Esq.
Andrew J. Fuchs
Scott Danner
Virginia F. Milstead
Christopher Schenck, Esq.
Meredith Slawe, Esq.
Jessica Painley
Blake Marks-Dias, Esq.
Andrew C. Indorf
Thomas Matthew
Lauren Cole
Daniel Horowitz

# EXHIBIT 7



Tacy Zysk
Assistant Vice President
2355 Highway 36 W.
Suite 400
Roseville, MN 55113

November 11, 2025

Will Bucher
Bucher Law PLLC
350 Northern Boulevard
Suites 324-1519
Albany, NY 12204-1000
Via Email to: will@bucherlawfirm.com

Michael W. McTigue, Jr., Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
One Manhattan West
New York, NY 10001
Via Email to: michael.mctigue@skadden.com

Case Number: 01-23-0005-3372

Brian Sherwood
-vs-
Valve Corporation d/b/a Steam

Dear Parties:

On November 11, 2025, the American Arbitration Association (AAA) reviewed and finalized the billing for this matter and closed this case as Withdrawn.

The AAA will process any refund due to a party as soon as possible.

Pursuant to the AAA's current policy, in the normal course of our administration, the AAA may maintain certain electronic case documents in our electronic records system. Such electronic documents may not constitute a complete case file. Other than certain types of electronic case documents that the AAA maintains indefinitely, electronic case documents will be destroyed 18 months after the stated closing date.

We thank Arbitrator Samas, who is receiving a copy of this correspondence, for serving on this matter.

Thank you for choosing the AAA to administer your arbitration.

Sincerely,
/s/ *Ryan Rumney on behalf of*
Jill Roettger
Manager of ADR Services
Direct Dial: (612)509-2224
Email: jillroettger@adr.org
Fax: (612)342-2334

cc:    Erik B. Atzbach
       Xinlin Morrow

Jing He
Priyanka Timblo
Ariel Thatcher
Shaud G. Tavakoli
Dorit U. Black, Esq.
Allen Lanstra, Esq.
Colm P. McInerney, Esq.
Andrew J. Fuchs
Scott Danner
Virginia F. Milstead
Christopher Schenck, Esq.
Meredith Slawe, Esq.
Jessica Painley
Blake Marks-Dias, Esq.
Andrew C. Indorf
Thomas Matthew
Lauren Cole
Daniel Horowitz
Zachary Horn
Ellen Noteware
Spence Colburn
Sarah Maher

# EXHIBIT 8



Tacy Zysk
Assistant Vice President
2355 Highway 36 W.
Suite 400
Roseville, MN 55113

November 11, 2025

Will Bucher
Bucher Law PLLC
350 Northern Boulevard
Suites 324-1519
Albany, NY 12204-1000
Via Email to: will@bucherlawfirm.com

Michael W. McTigue, Jr., Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
One Manhattan West
New York, NY 10001
Via Email to: michael.mctigue@skadden.com

Case Number: 01-23-0005-3777

Bonnie Murphy
-vs-
Valve Corporation d/b/a Steam

Dear Parties:

On November 11, 2025, the American Arbitration Association (AAA) reviewed and finalized the billing for this matter and closed this case as Withdrawn.

The AAA will process any refund due to a party as soon as possible.

Pursuant to the AAA's current policy, in the normal course of our administration, the AAA may maintain certain electronic case documents in our electronic records system. Such electronic documents may not constitute a complete case file. Other than certain types of electronic case documents that the AAA maintains indefinitely, electronic case documents will be destroyed 18 months after the stated closing date.

We thank Arbitrator Palomo, who is receiving a copy of this correspondence, for serving on this matter.

Thank you for choosing the AAA to administer your arbitration.

Sincerely,
/s/ *Ryan Rumney on behalf of*
Jill Roettger
Manager of ADR Services
Direct Dial: (612)509-2224
Email: jillroettger@adr.org
Fax: (612)342-2334

cc:    Erik B. Atzbach
       Xinlin Morrow

Jing He
Priyanka Timblo
Ariel Thatcher
Shaud G. Tavakoli
Dorit U. Black, Esq.
Allen Lanstra, Esq.
Colm P. McInerney, Esq.
Andrew J. Fuchs
Scott Danner
Virginia F. Milstead
Christopher Schenck, Esq.
Meredith Slawe, Esq.
Jessica Painley
Blake Marks-Dias, Esq.
Andrew C. Indorf
Thomas Matthew
Lauren Cole
Daniel Horowitz
Ross Hersemann
Spence Colburn

# EXHIBIT 9



Tacy Zysk
Assistant Vice President
2355 Highway 36 W.
Suite 400
Roseville, MN 55113

November 18, 2025

Will Bucher
Bucher Law PLLC
350 Northern Boulevard
Suites 324-1519
Albany, NY 12204-1000
Via Email to: will@bucherlawfirm.com

Michael W. McTigue, Jr., Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
One Manhattan West
New York, NY 10001
Via Email to: michael.mctigue@skadden.com

Case Number: 01-23-0005-3668

Jonathan Lewis
-vs-
Valve Corporation d/b/a Steam

Dear Parties:

On November 11, 2025, the American Arbitration Association (AAA) reviewed closed this case as Withdrawn. On November 18, 2025, the AAA reviewed and finalized the billing for this matter.

Any outstanding balances incurred during the case remain due and payable to the AAA, even after closing the case. Monthly invoices will continue to be issued until the balance is paid. The AAA will process any refund due to a party as soon as possible.

Pursuant to the AAA's current policy, in the normal course of our administration, the AAA may maintain certain electronic case documents in our electronic records system. Such electronic documents may not constitute a complete case file. Other than certain types of electronic case documents that the AAA maintains indefinitely, electronic case documents will be destroyed 18 months after the stated closing date.

We thank Arbitrator Coher, who is receiving a copy of this correspondence, for serving on this matter.

Thank you for choosing the AAA to administer your arbitration.

Sincerely,
/s/ *Ryan Rumney on behalf of*
Jill Roettger
Manager of ADR Services
Direct Dial: (612)509-2224
Email: jillroettger@adr.org
Fax: (612)342-2334

cc:    Erik Atzbach
       Xinlin Morrow
       Jing He
       Thomas Matthew
       Meredith Slawe
       Virginia Milstead
       Michael McTigue
       Shaud Tavakoli
       Colm McInerney
       Gavin Skok
       Andrew Fuchs
       Blake Marks-Dias
       Scott Danner
       Priyanka Timblo
       Andrew Indorf
       Dorit Black
       Lauren Cole
       Daniel Horowitz
       Michael Kwun
       Muhammad Mustafa

# EXHIBIT 10



Tacy Zysk
Assistant Vice President
2355 Highway 36 W.
Suite 400
Roseville, MN 55113

November 19, 2025

Will Bucher
Bucher Law PLLC
350 Northern Boulevard
Suites 324-1519
Albany, NY 12204-1000
Via Email to: will@bucherlawfirm.com

Michael W. McTigue, Jr., Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
One Manhattan West
New York, NY 10001
Via Email to: michael.mctigue@skadden.com

Case Number: 01-23-0005-3075

Jacob Ford
-vs-
Valve Corporation d/b/a Steam

Dear Parties:

On November 19, 2025, the American Arbitration Association (AAA) reviewed and finalized the billing for this matter and closed this case as Withdrawn.

Any outstanding balances incurred during the case remain due and payable to the AAA, even after closing the case. Monthly invoices will continue to be issued until the balance is paid. The AAA will process any refund due to a party as soon as possible.

Pursuant to the AAA's current policy, in the normal course of our administration, the AAA may maintain certain electronic case documents in our electronic records system. Such electronic documents may not constitute a complete case file. Other than certain types of electronic case documents that the AAA maintains indefinitely, electronic case documents will be destroyed 18 months after the stated closing date.

We thank Arbitrator Jossen who is receiving a copy of this correspondence, for serving on this matter.

Thank you for choosing the AAA to administer your arbitration.

Sincerely,
/s/ *Ryan Rumney on behalf of*
Jill Roettger
Manager of ADR Services
Direct Dial: (612)509-2224
Email: jillroettger@adr.org
Fax: (612)342-2334

cc:   Erik Atzbach
       Xinlin Morrow
       Jing He
       Thomas Matthew
       Frank Palermo
       Meredith Slawe
       Virginia Milstead
       Shaud Tavakoli
       Colm McInerney
       Gavin Skok
       Andrew Fuchs
       Blake Marks-Dias
       Scott Danner
       Priyanka Timblo
       Andrew Indorf
       Dorit Black
       Lauren Cole
       Daniel Horowitz

# EXHIBIT 11



Tacy Zysk
Assistant Vice President
2355 Highway 36 W.
Suite 400
Roseville, MN 55113

January 7, 2026

Will Bucher
Bucher Law PLLC
350 Northern Boulevard
Suites 324-1519
Albany, NY 12204-1000
Via Email to: will@bucherlawfirm.com

Michael W. McTigue, Jr., Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
One Manhattan West
New York, NY 10001
Via Email to: michael.mctigue@skadden.com

Case Number: 01-23-0005-2858

22 Individuals
-vs-
Valve Corporation d/b/a Steam

Dear Parties:

On December 29, 2025, the American Arbitration Association (AAA) reviewed closed the enclosed list of cases as
withdrawn. On January 6, 2025, the AAA finalized the billing for these cases.

Pursuant to the AAA's current policy, in the normal course of our administration, the AAA may maintain certain
electronic case documents in our electronic records system. Such electronic documents may not constitute a
complete case file. Other than certain types of electronic case documents that the AAA maintains indefinitely,
electronic case documents may be destroyed 18 months after the stated closing date.

We thank Arbitrator Palomo, who is receiving a copy of this correspondence, for serving on this matter.

Sincerely,
/s/ *Ryan Rumney on behalf of*
Jill Roettger
Manager of ADR Services
Direct Dial: (612)509-2224
Email: jillroettger@adr.org
Fax: (612)342-2334

cc:    Erik Atzbach
       Xinlin Morrow
       Jing He
       Thomas Matthew
       Meredith Slawe
       Virginia Milstead

Shaud Tavakoli
Colm McInerney
Gavin Skok
Andrew Fuchs
Blake Marks-Dias
Scott Danner
Priyanka Timblo
Andrew Indorf
Dorit Black
Lauren Cole
Daniel Horowitz
Spence Colburn

| Case Number | Claimant Name | Arbitrator |
|---|---|---|
| 012300052858 | Gary Palmatier | Ernesto Palomo |
| 012300052866 | Jurell Jordan | Ernesto Palomo |
| 012300052871 | Dylan Smyers | Ernesto Palomo |
| 012300052873 | Ramon Serrano | Ernesto Palomo |
| 012300052877 | Virgil Glisson | Ernesto Palomo |
| 012300052897 | Ezekiel Mccracken | Ernesto Palomo |
| 012300052907 | Raymond Garay | Ernesto Palomo |
| 012300052978 | Ryan Moore | Ernesto Palomo |
| 012300053014 | Deric Landers | Ernesto Palomo |
| 012300053101 | Matthew Stengel | Ernesto Palomo |
| 012300053131 | Adrian Monter | Ernesto Palomo |
| 012300053169 | Matthew Baer | Ernesto Palomo |
| 012300053177 | Devin Harvey | Ernesto Palomo |
| 012300053224 | Robert Richards | Ernesto Palomo |
| 012300053245 | Randy Wozniak | Ernesto Palomo |
| 012300053256 | Garland Noel | Ernesto Palomo |
| 012300053318 | Decker Spencer | Ernesto Palomo |
| 012300053464 | Alexander Rodriguez | Ernesto Palomo |
| 012300053549 | Joshua Sammons | Ernesto Palomo |
| 012300053597 | Nathaniel Moore | Ernesto Palomo |
| 012300053645 | Ryan Adreani | Ernesto Palomo |
| 012300057458 | Derek Krause | Ernesto Palomo |

# EXHIBIT 12



Tacy Zysk
Assistant Vice President
2355 Highway 36 W.
Suite 400
Roseville, MN 55113

January 23, 2026

Will Bucher
Bucher Law PLLC
350 Northern Boulevard
Suites 324-1519
Albany, NY 12204-1000
Via Email to: will@bucherlawfirm.com

Michael W. McTigue, Jr., Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
One Manhattan West
New York, NY 10001
Via Email to: michael.mctigue@skadden.com

Case Number: 01-23-0005-3637

Harley Palmer
-vs-
Valve Corporation d/b/a Steam

Dear Parties:

On January 21, 2026, the American Arbitration Association (AAA) reviewed and closed this case as withdrawn. On January 23, 2026, the AAA finalized the billing for this matter.

Any outstanding balances incurred during the case remain due and payable to the AAA, even after closing the case. Monthly invoices will continue to be issued until the balance is paid. The AAA will process any refund due to a party as soon as possible.

Pursuant to the AAA's current policy, in the normal course of our administration, the AAA may maintain certain electronic case documents in our electronic records system. Such electronic documents may not constitute a complete case file. Other than certain types of electronic case documents that the AAA maintains indefinitely, electronic case documents may be destroyed 18 months after the stated closing date.

We thank Arbitrator Badal, who is receiving a copy of this correspondence, for serving on this matter.

Thank you for choosing the AAA to administer your arbitration.

Sincerely,
/s/ *Ryan Rumney on behalf of*
Jill Roettger
Manager of ADR Services
Direct Dial: (612)509-2224
Email: jillroettger@adr.org
Fax: (612)342-2334

cc:   Erik Atzbach
Xinlin Morrow
Jing He
Thomas Matthew
Meredith Slawe
Virginia Milstead
Shaud Tavakoli
Colm McInerney
Gavin Skok
Andrew Fuchs
Blake Marks-Dias
Scott Danner
Priyanka Timblo
Andrew Indorf
Dorit Black
Lauren Cole
Daniel Horowitz
Sarah Maher
Matthew Pawlowski

# EXHIBIT 13



Tacy Zysk
Assistant Vice President
2355 Highway 36 W.
Suite 400
Roseville, MN 55113

February 3, 2026

Will Bucher
Bucher Law PLLC
350 Northern Boulevard
Suites 324-1519
Albany, NY 12204-1000
Via Email to: will@bucherlawfirm.com

Michael W. McTigue, Jr., Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
One Manhattan West
New York, NY 10001
Via Email to: michael.mctigue@skadden.com

Case Number: 01-23-0005-3092

Cory Cleri
-vs-
Valve Corporation d/b/a Steam

Dear Parties:

On February 3, 2026, the American Arbitration Association (AAA) reviewed this matter and closed this case as withdrawn. On February 5, 2026, the AAA finalized the billing for this matter.

Pursuant to the AAA's current policy, in the normal course of our administration, the AAA may maintain certain electronic case documents in our electronic records system. Such electronic documents may not constitute a complete case file. Other than certain types of electronic case documents that the AAA maintains indefinitely, electronic case documents may be destroyed 18 months after the stated closing date.

We thank Arbitrator Jossen, who is receiving a copy of this correspondence, for serving on this matter.

Thank you for choosing the AAA to administer your arbitration.

Sincerely,
/s/ *Ryan Rumney on behalf of*
Jill Roettger
Manager of ADR Services
Direct Dial: (612)509-2224
Email: jillroettger@adr.org
Fax: (612)342-2334

cc:    Erik Atzbach
       Xinlin Morrow
       Jing He
       Thomas Matthew

Zachary Horn
Tyler Whitney
Jayla Howard
Ryan Bailey
Dustin Slade
Ryan Struve
Meredith Slawe
Virginia Milstead
Shaud Tavakoli
Colm McInerney
Gavin Skok
Andrew Fuchs
Blake Marks-Dias
Scott Danner
Priyanka Timblo
Andrew Indorf
Dorit Black
Lauren Cole
Daniel Horowitz