THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALVE CORPORATION,

          Plaintiff,

      v.

THOMAS ABBRUZZESE et al.,

          Defendants.

No. 24-CV-1717-JNW

**PLAINTIFF VALVE CORPORATION'S CROSS-MOTION TO VACATE ARBITRATION AWARDS AND OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO CONFIRM ARBITRATION AWARDS (DKT. 143)**

**NOTING DATE: JULY 20, 2026**

VALVE CORPORATION'S CROSS-MOTION
TO VACATE ARBITRATION AWARDS AND
OPPOSITION TO MOTION TO CONFIRM
ARBITRATION AWARDS

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT .........................................................................................................2

      A.    Valve's Cross-Motion To Vacate the Awards Should Be Granted .............2

            1.    The Court Should Vacate the Awards Because the Parties
                  Did Not Agree to Arbitrate ...................................................................2

                  (a)    Valve Amended the Steam Subscriber Agreement..............2

                  (b)    The Dasteel Defendants Agreed to the Controlling SSA.....3

                  (c)    Valve Sought to Enjoin and Objected to the Arbitrations ...5

                  (d)    Under the Controlling SSA, There Is No Agreement to
                         Arbitrate .............................................................................6

                  (e)    The Parties Have No Agreement To Arbitrate Even If the
                         Forum Provision in the Controlling SSA Is Deemed
                         Unconscionable and Thus Unenforceable ..........................7

                  (f)    The Forum Provision in the Controlling SSA Is
                         Enforceable .........................................................................8

                         (i)    The Forum Provision in the Controlling SSA Is Not
                                Procedurally Unconscionable .................................9

                         (ii)   The Forum Provision in the Controlling SSA Is Not
                                Substantively Unconscionable ..............................12

            2.    The Arbitrator's Sole Ruling in the Dasteel Defendants'
                  Favor, Concerning Valve's Relationship With Microsoft,
                  Manifestly Disregards the Law .......................................................15

            3.    The Court Should Vacate the Awards Because They Were
                  Arbitrary and Irrational .................................................................18

      B.    The Motion To Confirm Should Be Denied ............................................22

III.  CONCLUSION.....................................................................................................23

VALVE CORPORATION'S CROSS-MOTION
TO VACATE ARBITRATION AWARDS AND
OPPOSITION TO MOTION TO CONFIRM
ARBITRATION AWARDS – i

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## TABLE OF AUTHORITIES

Page(s)

### CASES

*A.C. ex rel. Carbajal v. Nintendo of America Inc.*,
No. C20-1694 TSZ,
2021 WL 1840835 (W.D. Wash. Apr. 29, 2021) ..............................................................10

*American Pipe & Construction Co. v. Utah*,
414 U.S. 538 (1974) ..........................................................................................................13

*Aspic Engineering & Construction Co. v. ECC Centcom Constructors, LLC*,
268 F. Supp. 3d 1053 (N.D. Cal. 2017),
*aff'd*, 913 F.3d 1162 (9th Cir. 2019) ................................................................................20

*Aspic Engineering & Construction Co. v. ECC Centcom Constructors LLC*,
913 F.3d 1162 (9th Cir. 2019) ..............................................................................15, 18, 22

*Bassett v. Electronic Arts Inc.*,
No. 13-CV-04208 (MKB)(SMG),
2015 WL 1298644 (E.D.N.Y. Feb. 9, 2015),
*report and recommendation adopted*, 93 F. Supp. 3d 95 (E.D.N.Y. 2015) ........................9

*Binta B. ex* rel. *S.A. v. Gordon*,
710 F.3d 608 (6th Cir. 2013) ............................................................................................20

*Blum v. Stenson*,
465 U.S. 886 (1984) ..........................................................................................................22

*Bozek v. PNC Bank*,
No. 20-cv-2875-JMY,
2020 WL 6581491 (E.D. Pa. Nov. 10, 2020),
*aff'd*, 2021 WL 4240359 (3d Cir. 2021) .............................................................................2

*In re Briscoe Protective, LLC v. North Fork Surgery Center, LLC*,
215 A.D.3d 956 (N.Y. App. Div. 2023) ............................................................................18

*Business Electronics Corp. v. Sharp Electronics Corp.*,
485 U.S. 717 (1988) .....................................................................................................16, 17

*California ex rel. Harris v. Safeway, Inc.*,
651 F.3d 1118 (9th Cir. 2011) ..........................................................................................16

*Coinbase, Inc. v. Suski*,
602 U.S. 143 (2024) .......................................................................................................2, 6

VALVE CORPORATION'S CROSS-MOTION
TO VACATE ARBITRATION AWARDS AND
OPPOSITION TO MOTION TO CONFIRM
ARBITRATION AWARDS – ii

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Comedy Club, Inc. v. Improv West Associates*,
    553 F.3d 1277 (9th Cir. 2009) ...................................................................................15

*Dasher v. RBC Bank (USA)*,
    745 F.3d 1111 (11th Cir. 2014) ...................................................................................6

*Dasher v. RBC Bank (USA)*,
    882 F.3d 1017 (11th Cir. 2018) .................................................................................11

*Dimidowich v. Bell & Howell*,
    803 F.2d 1473 (9th Cir. 1986),
    *modified*, 810 F.2d 1517 (9th Cir. 1987) ...............................................................17

*Dlugolecki v. PeopleConnect, Inc.*,
    No. CV 20-3657-GW-GJSx,
    2020 WL 13587803 (C.D. Cal. Nov. 9, 2020) ........................................................5

*Evans v. PayPal, Inc.*,
    No. 22-15979,
    2023 WL 6058490 (9th Cir. Sep. 18, 2023) .............................................................9

*Frame-Wilson v. Amazon.com, Inc.*,
    591 F. Supp. 3d 975 (W.D. Wash. 2022) .................................................................17

*Geier v. Sundquist*,
    372 F.3d 784 (6th Cir. 2004) .....................................................................................20

*Gonter v. Hunt Valve Co.*,
    510 F.3d 610 (6th Cir. 2007),
    *abrogated on other grounds by Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686 (6th Cir. 2016) ...................................................................18

*Grant v. Lockett*,
    605 F. Supp. 3d 399 (N.D.N.Y. 2022) .....................................................................22

*Grant v. T-Mobile USA, Inc.*,
    No. 2:23-cv-01946-MJP,
    2024 WL 3510937 (W.D. Wash. July 23, 2024) ......................................................4

*Gray v. Amazon.com, Inc.*,
    653 F. Supp. 3d 847 (W.D. Wash. 2023),
    *aff'd*, 2024 WL 2206454 (9th Cir. May 16, 2024) ...............................................10

*Haider v. Lyft, Inc.*,
    No. 20-cv-2997 (AJN),
    2021 WL 3475621 (S.D.N.Y. Aug. 6, 2021) ..........................................................11

VALVE CORPORATION'S CROSS-MOTION
TO VACATE ARBITRATION AWARDS AND
OPPOSITION TO MOTION TO CONFIRM
ARBITRATION AWARDS – iii

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .................................................................................................19

*Ireland-Gordy v. Tile, Inc.*,
   No. 25-403,
   2026 WL 594859 (9th Cir. Mar. 3, 2026) ............................................................5, 6

*Jeffery v. Weintraub*,
   32 Wash. App. 536 (Ct. App. 1982)........................................................................13

*Johnson v. Midland Credit Management Inc.*,
   No. 1:05 CV 1094,
   2013 WL 12412632 (N.D. Ohio Dec. 12, 2013)....................................................21

*Johnson v.* Wells *Fargo Home Mortgage, Inc.*,
   635 F.3d 401 (9th Cir. 2011)..................................................................................22

*Kerr v. Wilmington Trust N.A.*,
   No. 2:19-cv-10973-AB (Ex),
   2020 WL 4919604 (C.D. Cal. May 18, 2020)........................................................23

*Laster v. T-Mobile USA, Inc.*,
   No. 05cv1167 DMS (AJB),
   2008 WL 5216255 (S.D. Cal. Aug. 11, 2008),
    *aff'd sub nom. Laster v. AT & T Mobility LLC*, 584 F.3d 849 (9th Cir. 2009),
   *rev'd on other grounds sub nom. AT&T Mobility LLC v. Concepcion*, 563 U.S. 333
   (2011)..........................................................................................................................7

*Leegin Creative Leather Products, Inc. v. PSKS*,
   551 U.S. 877 (2007) ..........................................................................................16, 17

*Lowery v. Rhapsody International, Inc.*,
   75 F.4th 985 (9th Cir. 2023)...................................................................................19

*Magill v. DIRECTV, LLC*,
   No. CV 16-00356-SVW-AS,
   2017 WL 8894320 (C.D. Cal. June 23, 2017)........................................................21

*Majidi-Ahy v. ClassPass, Inc.*,
   No. 2:25-cv-05003-KS,
   2026 WL 585465 (C.D. Cal. Feb. 11, 2026) ............................................................7

*Mohamed v. Barr*,
   562 F. Supp. 3d 1128 (E.D. Cal. 2022) ..................................................................21

VALVE CORPORATION'S CROSS-MOTION
TO VACATE ARBITRATION AWARDS AND
OPPOSITION TO MOTION TO CONFIRM
ARBITRATION AWARDS – iv

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Morgan Keegan & Co. v. McPoland*,
    829 F. Supp. 2d 1031 (W.D. Wash. 2011) ............................................................................2

*In re National Football League's Sunday Ticket Antitrust Litigation*,
    No. ML 15-2668 PSG (JEMx),
    2021 WL 2350814 (C.D. Cal. Apr. 20, 2021) ......................................................................7

*Oberstein v. Live Nation Entertainment, Inc.*,
    60 F.4th 505 (9th Cir. 2023) ................................................................................................4

*Ohio v. American Express Co.*,
    585 U.S. 529 (2018) ...........................................................................................................16

*Orman v. Central Loan Administration & Reporting*,
    No. CV-19-04756-PHX-DWL,
    2019 WL 6841741 (D. Ariz. Dec. 16, 2019) .....................................................................22

*Patrick v. Running Warehouse, LLC*,
    93 F.4th 468 (9th Cir. 2024) ................................................................................................4

*Peters v. Amazon Services LLC*,
    2 F. Supp. 3d 1165 (W.D. Wash. 2013),
    *aff'd*, 669 F. App'x 487 (9th Cir. 2016) ..............................................................................8

*Pilon v. Discovery Communications, LLC*,
    769 F. Supp. 3d 273 (S.D.N.Y. 2025) ..................................................................................5

*Porzig v. Dresdner, Kleinwort, Benson, North America LLC*,
    497 F.3d 133 (2d Cir. 2007) ...............................................................................................20

*Quamina v. U.S. Bank National Ass'n*,
    No. 20-CV-6637-RAR,
    2020 WL 9349559 (S.D. Fla. Dec. 24, 2020) ....................................................................23

*Rahman v. FCA US LLC*,
    594 F. Supp. 3d 1199 (C.D. Cal. 2022) ..............................................................................20

*Raymond James Financial Services, Inc. v. Boucher*,
    No. 3:22-cv-01658-JAH-BGS,
    2024 WL 233731 (S.D. Cal. Jan. 22, 2024) .......................................................................23

*Russell v. Citigroup, Inc.*,
    748 F.3d 677 (6th Cir. 2014) ..............................................................................................11

VALVE CORPORATION'S CROSS-MOTION
TO VACATE ARBITRATION AWARDS AND
OPPOSITION TO MOTION TO CONFIRM
ARBITRATION AWARDS – v

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Sadlock v. Walt Disney Co.*,
　　No. 22-cv-09155-EMC,
　　2023 WL 4869245 (N.D. Cal. July 31, 2023) ................................................................5

*Saeedy v. Microsoft Corp.*,
　　757 F. Supp. 3d 1172 (W.D. Wash. 2024) ...................................................................4

*Saucedo v. Experian Information Solutions, Inc.*,
　　No. 1:22-cv-01584-ADA-HBK,
　　2023 WL 4708015 (E.D. Cal. July 24, 2023)...............................................................7

*Schwarz v. Secretary of Health & Human Services*,
　　73 F.3d 895 (9th Cir. 1995)........................................................................................19

*SCPS LLC v. Kind Law*,
　　No. CV 25-3255-MWF (SSCx),
　　2026 WL 96898 (C.D. Cal. Jan. 8, 2026).............................................................7, 11

*Tadych v. Noble Ridge Construction, Inc.*,
　　200 Wash. 2d 635 (2022) ...........................................................................................12

*Texaco Inc. v. Dagher*,
　　547 U.S. 1 (2006) ........................................................................................................18

*Thiele v. Merrill Lynch, Pierce, Fenner & Smith*,
　　59 F. Supp. 2d 1067 (S.D. Cal. 1999) ..........................................................................8

*Tirona v. State Farm Mutual Automobile Insurance Co.*,
　　821 F. Supp. 632 (D. Haw. 1993) ...............................................................................21

*Torgerson v. One Lincoln Tower, LLC*,
　　166 Wash. 2d 510 (2009) .........................................................................................9, 12

*Transcontinental Gas Pipe Line Co. v. Permanent Easement for 2.59 Acres*,
　　No. 4:17-CV-00289,
　　2019 WL 6481528 (M.D. Pa. Oct. 8, 2019),
　　*aff'd*, 834 F. App'x 752 (3d Cir. 2020) ..........................................................................2

*Trudeau v. Google LLC*,
　　349 F. Supp. 3d 869 (N.D. Cal. 2018),
　　*aff'd*, 816 F. App'x 68 (9th Cir. 2020) ...........................................................................8

*United States v. Brewbaker*,
　　87 F.4th 563 (4th Cir. 2023)..................................................................................16, 17

VALVE CORPORATION'S CROSS-MOTION
TO VACATE ARBITRATION AWARDS AND
OPPOSITION TO MOTION TO CONFIRM
ARBITRATION AWARDS – vi

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*West v. Uber Technologies*,
    No. 18-CV-3001-PSG-GJS,
    2018 WL 5848903 (C.D. Cal. Sep. 5, 2018) ........................................................................5

*Wiseley v. Amazon.com, Inc.*,
    709 F. App'x 862 (9th Cir. 2017) ..................................................................................12

*Wu v. Uber Technologies, Inc.*,
    186 N.Y.S.3d 500 (Sup. Ct. Bronx Cnty. 2022),
    *aff'd*, 197 N.Y.S.3d 1 (App. Div. 2023), *aff'd*, 260 N.E.3d 1060 (N.Y. 2024)....................11

*Yahoo!, Inc. v. Net Games, Inc.*,
    329 F. Supp. 2d 1179 (N.D. Cal. 2004).........................................................................20

*Zuver v. Airtouch Communications, Inc.*,
    153 Wash. 2d 293 (2004) ..............................................................................................12

**STATUTES**

9 U.S.C. § 10 ..................................................................................................................1, 2

15 U.S.C. § 15 ..............................................................................................................18, 22

---

VALVE CORPORATION'S CROSS-MOTION
TO VACATE ARBITRATION AWARDS AND
OPPOSITION TO MOTION TO CONFIRM
ARBITRATION AWARDS – vii

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## I.  INTRODUCTION[1]

Plaintiff Valve Corporation ("Valve") submits this (i) cross-motion to vacate the interim and final arbitration awards (the "Awards") issued by Arbitrator Jeffrey H. Dasteel in arbitration proceedings brought before the American Arbitration Association (the "Arbitrations") by four Defendants in this action, James Davis, Vincent Keegan, Kevin Montes, and Nicholas Tynes (collectively, the "Dasteel Defendants") under Section 10 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10 and (ii) opposition to the motion to confirm the Awards filed by the Dasteel Defendants (Dkt. 143).

Valve's cross-motion to vacate should be granted and the Awards should be vacated. Although the parties had no agreement to arbitrate, the Arbitrator proceeded to hold hearings he had no jurisdiction to conduct.[2] The Arbitrator then issued Awards in manifest disregard of the law. On the merits, he applied the wrong standard under the Sherman Act, ignoring controlling Supreme Court authority. And his fee awards were irrational and grossly excessive—between four and fifteen ***thousand*** times the damages awarded, with no discount for the fact that, as the Arbitrator acknowledged, each Dasteel Defendant's "success was low" (an understatement; they collectively obtained approximately 3% of their claimed damages).

The motion to confirm should be denied because (i) the Awards must be vacated for the reasons set forth herein and thus cannot be confirmed and (ii) the Dasteel Defendants' Motion fails to comply with the FAA because it does not attach a valid and binding arbitration agreement—nor could it; there is no agreement to arbitrate between the parties.

---

[1] Unless noted, internal citations are omitted and all emphasis is added. "Ex." refers to exhibits to the Declaration of Blake Marks-Dias, dated May 28, 2026 ("Decl.").

[2] On May 27, 2026, this Court denied Valve's motion for a preliminary injunction seeking to enjoin the arbitrations of 396 Defendants on the grounds that they have no agreement to arbitrate with Valve. (Dkt. 169 ("Order"); Dkts. 160-61.) The Dasteel Defendants are not among the Defendants who were the subject of that motion because their arbitrations were complete and awarded, rendering the relief Valve sought in the motion moot.

---

VALVE CORPORATION'S CROSS-MOTION
TO VACATE ARBITRATION AWARDS AND
OPPOSITION TO MOTION TO CONFIRM
ARBITRATION AWARDS – 1

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## II.    ARGUMENT

### A.    Valve's Cross-Motion To Vacate the Awards Should Be Granted

#### 1.    The Court Should Vacate the Awards Because the Parties Did Not Agree to Arbitrate

The FAA provides that a court "may make an order vacating the award . . . where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). An arbitrator exceeds his powers by issuing an award when the parties have no agreement to arbitrate. *See Bozek v. PNC Bank*, 2020 WL 6581491, at *5 (E.D. Pa. Nov. 10, 2020), *aff'd*, 2021 WL 4240359 (3d Cir. Sep. 17, 2021); *Morgan Keegan & Co. v. McPoland*, 829 F. Supp. 2d 1031, 1036 (W.D. Wash. 2011).

Here, months before the Arbitrator set this matter for hearing, the Dasteel Defendants agreed to the Controlling SSA, described below. The Controlling SSA has no arbitration agreement and requires resolution of all claims, including pending claims, in court. Upon the Dasteel Defendants' agreement to the Controlling SSA, the Arbitrator had no authority to continue with the Arbitrations or issue the Awards. Accordingly, the Awards must be vacated. *See Transcon. Gas Pipe Line Co. v. Permanent Easement for 2.59 Acres*, 2019 WL 6481528, at *2 (M.D. Pa. Oct. 8, 2019) (absent a valid arbitration agreement "the arbitrator had no jurisdiction[] [a]nd so this Court must vacate the award"), *aff'd*, 834 F. App'x 752 (3d Cir. 2020); *see also Coinbase, Inc. v. Suski*, 602 U.S. 143, 145 (2024) ("[D]isputes are subject to arbitration if, and only if, the parties actually agreed to arbitrate those disputes."). Valve recognizes the Court's recent holding that Valve was unlikely to succeed on the merits in its order denying the motion for a preliminary injunction, but respectfully disagrees with the Court's reasoning as explained below.

#### (a)    Valve Amended the Steam Subscriber Agreement

Valve and the Dasteel Defendants had an arbitration agreement in October 2023 when the Dasteel Defendants filed their arbitration demands against Valve. That arbitration agreement was part of a prior Steam Subscriber Agreement ("SSA") that went into effect on April 25, 2023 (the "Superseded SSA"). (Dkt. 80, Ex. A.) The Superseded SSA provided: "This Agreement may at any time be mutually amended by your explicit consent to changes proposed by Valve." (Dkt. 80,

VALVE CORPORATION'S CROSS-MOTION
TO VACATE ARBITRATION AWARDS AND
OPPOSITION TO MOTION TO CONFIRM
ARBITRATION AWARDS – 2

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Ex. A § 8(A).)

In May 2024, in four arbitrations before Arbitrator Dasteel, the Dasteel Defendants' counsel moved to dismiss on the ground that the arbitration agreement in the Superseded SSA was unenforceable. (Decl. ¶ 5.) The Arbitrator agreed. On July 8, 2024, the Arbitrator issued four orders holding that the arbitration agreement was unenforceable. (*Id.* ¶ 6.)

On August 9, 2024, the Dasteel Defendants' counsel commenced a new putative antitrust class action in this Court against Valve naming those four claimants as plaintiffs. That action, *Elliott v. Valve Corporation*, No. 2:24-cv-01218, was brought on behalf of a putative class of all Valve consumers, and asserts claims similar to the antitrust claims the Dasteel Defendants are pursuing against Valve. They contended that the Superseded SSA's arbitration provision is unenforceable as to all Steam users. *Elliott* has been consolidated with *In re Valve Antitrust Litig.*, No. 2:21-cv-00563-JCC (W.D. Wash. 2021) ("*Wolfire*").

On September 26, 2024, in light of Arbitrator Dasteel's determination that the SSA's arbitration provision was unenforceable and the filing of the *Elliott* action, Valve amended the SSA to remove both the arbitration provision and the class action waiver.  The current SSA (the "Controlling SSA") now provides for resolution of disputes exclusively in court, including pending disputes. (Dkt. 80, Ex. B § 10.) It also includes a merger clause providing that it supersedes and replaces the parties' prior agreement. (*Id.* § 11.)

### (b)    The Dasteel Defendants Agreed to the Controlling SSA

Beginning on September 26, 2024, pursuant to the amendment and notice provisions contained in the Superseded SSA, Valve provided conspicuous notice of the Controlling SSA to the Dasteel Defendants, including by email and through a pop-up that appeared when users logged into the Steam client or website. (Dkt. 80 ¶¶ 6-21.) On September 27, 2024, Valve notified counsel to the Dasteel Defendants about the amendments. (Ex. 23.) In that communication, Valve offered to reimburse the fees that the Dasteel Defendants paid to the AAA in connection with their

VALVE CORPORATION'S CROSS-MOTION
TO VACATE ARBITRATION AWARDS AND
OPPOSITION TO MOTION TO CONFIRM
ARBITRATION AWARDS – 3

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

arbitration. (*Id.*) The Dasteel Defendants' counsel never responded to this offer. (Decl. ¶ 58.)[3]

For online transactions, "mutual assent" to transaction terms "turns on whether the consumer had reasonable notice of the terms of service agreement." *Grant v. T-Mobile USA, Inc.*, 2024 WL 3510937, at *3 (W.D. Wash. July 23, 2024). For notice to be "reasonably conspicuous," it must be displayed in a "'font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it.'" *Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d 1172, 1195 (W.D. Wash. 2024); *accord Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024). Valve's notice was conspicuous and consistent with the modification requirements in the Superseded SSA. (Dkt. 80 ¶¶ 6-23 & Ex. A § 8(B).) This Court held in the Order that Valve likely provided reasonable notice to users who, like the Dasteel Defendants, affirmatively assented to the Controlling SSA. Order at 17-18.

The Dasteel Defendants assented to the Controlling SSA. Users manifest assent if they click a button to indicate acceptance of terms. *See Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023); *Saeedy*, 757 F. Supp. 3d at 1196-97. All Dasteel Defendants assented to the Controlling SSA in that manner:

- **James Davis, Vincent Keegan, and Nicholas Tynes** affirmatively accepted the Controlling SSA before November 1, 2024, by (i) checking a box in a pop-up notice on Steam stating, "I Agree to the Updated Steam Subscriber Agreement" and clicking "Accept Updated SSA" through the pop-up notice; (ii) making a purchase on Steam and checking "I agree to the terms of the Steam Subscriber Agreement (last updated Sep 26, 2024)" and clicking the "Purchase" button; or (iii) performing both of those actions. (Dkt. 80 ¶ 24 & Ex. C.) These Dasteel Defendants also all re-affirmed their assent to the Controlling SSA when they made subsequent purchases on Steam and, before completing each transaction, checked a box affirming their

---

[3] Counsel to claimants in another mass arbitration, Mason LLP, accepted Valve's similar offer and Valve reimbursed the AAA fees paid by those claimants. (Decl. ¶ 59.)

VALVE CORPORATION'S CROSS-MOTION
TO VACATE ARBITRATION AWARDS AND
OPPOSITION TO MOTION TO CONFIRM
ARBITRATION AWARDS – 4

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

acceptance of the Controlling SSA. (Dkt. 80 ¶ 24 & Ex. C.)

- **Kevin Montes** affirmatively accepted the Controlling SSA when making a purchase on Steam after November 1, 2024, by checking the box next to "I agree to the terms of the Steam Subscriber Agreement (last updated Sep 26, 2024)" and clicking the "Purchase" button. (Dkt. 80 ¶ 23-28 & Ex. C.)

This Court held in the Order that Valve "has likely shown assent" with respect to users who, like the Dasteel Defendants, "affirmatively accepted the [Controlling] SSA through the Pop-Up Notice, the purchase-screen check box, or both." Order at 17-18.

Montes also assented to the Controlling SSA through his continued use of Steam. Users manifest assent to updated terms if they continue to use a service after receiving notice of those terms. *See, e.g.*, *Ireland-Gordy v. Tile, Inc.*, 2026 WL 594859, at *4 (9th Cir. Mar. 3, 2026) (users "unambiguously manifested assent" to updated terms "through their continued use of the Tile App"); *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 289-90 (S.D.N.Y. 2025) (claimant assented where he "continued to subscribe to and use [service]" after receiving notice of updated agreement); *Sadlock v. Walt Disney Co.*, 2023 WL 4869245, at *12 (N.D. Cal. July 31, 2023) ("[E]mails followed by continued use is sufficient to establish assent."); *Dlugolecki v. PeopleConnect, Inc.*, 2020 WL 13587803, at *2 (C.D. Cal. Nov. 9, 2020) (similar); *West v. Uber Techs.*, 2018 WL 5848903, at *5 (C.D. Cal. Sep. 5, 2018) (similar). Montes is bound by the Controlling SSA pursuant to the email and pop-up notices provided to him because he did not delete or discontinue use of his Steam account by November 1, 2024. (Dkt. 80 ¶¶ 25-27.) To the contrary, he logged onto Steam after November 1, 2024. (Dkt. 80 ¶ Ex. C.)

### (c) Valve Sought to Enjoin and Objected to the Arbitrations

Because the Controlling SSA removed the parties' arbitration agreement, on October 18, 2024, Valve commenced this action to enjoin 624 pending arbitrations, including the Dasteel Defendants' Arbitrations. Valve also promptly notified the then-presiding arbitrator, Janice L.

VALVE CORPORATION'S CROSS-MOTION
TO VACATE ARBITRATION AWARDS AND
OPPOSITION TO MOTION TO CONFIRM
ARBITRATION AWARDS – 5

Sperow,[4] and requested that she stay Defendants' Arbitrations pending resolution of this action. (Decl. ¶¶ 4, 10.) Ms. Sperow denied Valve's request. (*Id.* ¶ 11.) On May 8, 2025, Valve renewed its stay request before Arbitrator Dasteel. (*Id.* ¶ 14.) The Arbitrator acknowledged that, under *Coinbase*, he "lack[ed] jurisdiction to make [the] determination" whether the Superseded SSA or Controlling SSA governs. (Ex. 2 at 2.) Nonetheless, he granted only a limited 75-day stay that expired in late August 2025 and thereafter permitted the claims to proceed. (Decl. ¶ 15.) Valve defended itself under a full reservation of rights. (*Id.* ¶ 15.)

Over Valve's objection, the Arbitrator held merits hearings on the claims of the Dasteel Defendants and one other claimant. (*Id.* ¶ 16.) On April 24, 2026, the Arbitrator issued the Awards (Exs. 17-20) and an award in one other related arbitration in which Valve prevailed on the merits. On April 27, 2026, the AAA transmitted the Awards to the parties. (Decl. ¶ 39.)

### (d)     Under the Controlling SSA, There Is No Agreement to Arbitrate

After the Dasteel Defendants assented to the Controlling SSA, the parties no longer had any agreement to arbitrate the claims raised in the Arbitrations. A dispute resolution provision in an updated agreement is enforceable with respect to already-asserted claims when the provision provides for retroactive effect. *See Tile*, 2026 WL 594859, at *1-5 (enforcing updated terms of service with new forum provision to already-pending action);[5] *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1127 (11th Cir. 2014) (new agreement without arbitration clause superseded and applied retroactively to foreclose arbitration under a prior agreement containing an arbitration clause where

---

[4] Ms. Sperow was later disqualified, resulting in the reassignment of the Dasteel Defendants' Arbitrations and 23 other matters over which she had been presiding to Arbitrator Dasteel.

[5] The earlier arbitration agreements in *Tile* required all disputes to be arbitrated before the AAA; the updated arbitration agreement required disputes to be arbitrated before JAMS for disputes in North America. *See* Declaration of Steve Klinkner, Ex. B § 25.C, Ex. E § XVII.B, Ex. I at 23, *Ireland-Gordy v. Tile, Inc.*, No. 3:23-cv-04119-RFL, Dkt. No. 34. The court enforced the forum provision in the updated terms retroactively with respect to the plaintiffs' pending claims. *See Tile*, 2026 WL 594859, at *1-5 (enforcing agreement updated in October 2023); *see generally* Complaint, *Ireland-Gordy v. Tile, Inc.*, No. 23-cv-04119-RFL (N.D. Cal. filed Aug. 14, 2023), Dkt. No. 1.

---

VALVE CORPORATION'S CROSS-MOTION
TO VACATE ARBITRATION AWARDS AND
OPPOSITION TO MOTION TO CONFIRM
ARBITRATION AWARDS – 6

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

claim was originally asserted when defendant had arbitration clause); *SCPS LLC v. Kind Law*, 2026 WL 96898, at *9-10 (C.D. Cal. Jan. 8, 2026) (enforcing forum provision in updated arbitration agreement as to individuals who assented to new agreement after submitting pre-filing notices of dispute; noting that "the result would be the same even if the [individuals] had assented after initiating arbitrations with the AAA"); *Saucedo v. Experian Info. Sols., Inc.*, 2023 WL 4708015, at *6-7 (E.D. Cal. July 24, 2023) (enforcing arbitration agreement to which plaintiff assented after filing action in court; rejecting argument that "an arbitration agreement entered after an action was filed cannot be retroactively applied").[6]

Here, the Dasteel Defendants agreed that the Controlling SSA would replace and supersede their prior agreement to arbitrate and apply retroactively to their claims. (Dkt. 80, Ex. B §§ 10-11; Dkt. 80 ¶¶ 24-29, Dkt. 80, Ex. C.) For that reason, as this Court recently held, the Controlling SSA, "on its face, reaches the pending arbitrations," Order at 18, and hence also applied to the Dasteel Defendants' pending arbitrations at the time the parties entered into it. Therefore, once the Dasteel Defendants agreed to the Controlling SSA—well before their arbitral hearings—the parties had no agreement to arbitrate, and the Arbitrator had no authority to issue the Awards. The Awards should accordingly be vacated.

### (e)   The Parties Have No Agreement To Arbitrate Even If the Forum Provision in the Controlling SSA Is Deemed Unconscionable and Thus Unenforceable

This Court held in the Order that users like the Dasteel Defendants who affirmatively accepted the Controlling SSA formed a new contract with Valve—the Controlling SSA. Order at 17-18, 23 n.9. That new bilateral contract contains a merger clause providing that it "constitutes

---

[6] *Accord Majidi-Ahy v. ClassPass, Inc.*, 2026 WL 585465, at *6-8 (C.D. Cal. Feb. 11, 2026) (updated arbitration agreement applied to already-accrued claim where plaintiff assented to changes, and noting that "[t]he Ninth Circuit consistently upholds the enforceability of the retroactivity of arbitration clauses"); *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 2021 WL 2350814, at *4 (C.D. Cal. Apr. 20, 2021) (enforcing agreement revised two years after suit filed); *Laster v. T-Mobile USA, Inc.*, 2008 WL 5216255, at *6 (S.D. Cal. Aug. 11, 2008) (agreement that "retrospectively modif[ied] the original service contract after the present litigation had already begun" applied), *aff'd sub nom. Laster v. AT & T Mobility LLC*, 584 F.3d 849 (9th Cir. 2009), *rev'd on other grounds sub nom. AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).

VALVE CORPORATION'S CROSS-MOTION TO VACATE ARBITRATION AWARDS AND OPPOSITION TO MOTION TO CONFIRM ARBITRATION AWARDS – 7

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

and contains the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior oral or written agreements." (Dkt. 80 Ex. B § 11 (Controlling SSA).) Consequently, the mutually agreed Controlling SSA superseded and extinguished the Superseded SSA—and with it, the arbitration agreement in the Superseded SSA. *See Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 878-79 (N.D. Cal. 2018) (enforcing updated arbitration clause retroactively to accrued claims even though prior agreement stated that "changes [to the terms] will not apply retroactively" because new terms "extinguished" the prior agreement between the parties), *aff'd*, 816 F. App'x 68 (9th Cir. 2020); *Peters v. Amazon Servs. LLC*, 2 F. Supp. 3d 1165, 1173 (W.D. Wash. 2013) (enforcing updated agreement that "contains an integration clause, making it the '**entire agreement between the parties**,' and '**supersedes any previous or contemporaneous oral or written agreements and understandings**'"), *aff'd*, 669 F. App'x 487 (9th Cir. 2016); *Thiele v. Merrill Lynch, Pierce, Fenner & Smith*, 59 F. Supp. 2d 1067, 1072 (S.D. Cal. 1999) (holding that although arbitration clause in new agreement was unenforceable that did not revive arbitration clause in superseded agreement).

Valve respectfully disagrees with the Court's conclusion that the forum provision in the Controlling SSA requiring that all claims proceed in court is likely unconscionable (as explained below). But the effect of that holding is to leave the Controlling SSA without any dispute-resolution clause, while requiring the remainder of the agreement to be enforced. Because the merger clause in the Controlling SSA, by its terms, extinguishes the Superseded SSA, there is no agreement to arbitrate.

### (f) The Forum Provision in the Controlling SSA Is Enforceable

In the alternative, Valve contends that the forum provision in the Controlling SSA is enforceable and is neither procedurally nor substantively unconscionable, and respectfully submits that this Court's recent ruling to the contrary is erroneous.

VALVE CORPORATION'S CROSS-MOTION
TO VACATE ARBITRATION AWARDS AND
OPPOSITION TO MOTION TO CONFIRM
ARBITRATION AWARDS – 8

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

### (i)    The Forum Provision in the Controlling SSA Is Not Procedurally Unconscionable

To start, the forum provision in the Controlling SSA is not procedurally unconscionable. "Procedural unconscionability is determined in light of the totality of the circumstances, including (1) the manner in which the parties entered into the contract, (2) whether the parties had a reasonable opportunity to understand the terms, and (3) whether the terms were "hidden in a maze of fine print." *Torgerson v. One Lincoln Tower, LLC*, 166 Wash. 2d 510, 518-19 (2009), *as corrected* (July 16, 2009).

*First*, the manner in which the parties entered into the Controlling SSA does not render the forum selection clause unconscionable. The parties entered into the bilateral agreement through a "Pop-up Notice" or "purchase-screen check box" that this Court referred to as "conventional clickwrap mechanisms." Order at 17-18. This Court and other courts routinely enforce agreements entered into through these means. *See supra* Part A.1.b; Order at 17-18. Although the Controlling SSA was presented as a contract of adhesion, so was the Superseded SSA pursuant to which the Dasteel Defendants proceeded in arbitration. As the Court correctly concluded, that fact, standing alone, does not render either agreement procedurally unconscionable. *See* Order at 20; *see also, e.g.*, *Evans v. PayPal, Inc.*, 2023 WL 6058490, at *2 (9th Cir. Sep. 18, 2023) ("[A] contract of adhesion alone is insufficient" for a finding of procedural unconscionability.) (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346-47 (2011)).

This Court held in the Order that Steam users were likely to be able to show procedural unconscionability because they lacked a meaningful choice whether to enter into the Controlling SSA. Valve respectfully submits that this conclusion was mistaken, because "for nonessential activities, the consumer always has the option of forgoing activity." *Bassett v. Elec. Arts Inc.*, 2015 WL 1298644, at *11 (E.D.N.Y. Feb. 9, 2015), *report and recommendation adopted*, 93 F. Supp. 3d 95 (E.D.N.Y. 2015). Video games "are nonessential recreational activities," and presenting a choice about whether to forego playing video games cannot render a consumer agreement unconscionable.

VALVE CORPORATION'S CROSS-MOTION
TO VACATE ARBITRATION AWARDS AND
OPPOSITION TO MOTION TO CONFIRM
ARBITRATION AWARDS – 9

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Id.*; *see A.C. ex rel. Carbajal v. Nintendo of Am. Inc.*, 2021 WL 1840835, at *3 (W.D. Wash. Apr. 29, 2021) (finding no unconscionability because plaintiff "had a meaningful choice to accept the delegation provision, to opt out of the arbitration clause (including the delegation provision), or to reject the entire [user agreement] and return his Nintendo"). Courts applying Washington law, moreover, routinely enforce modified consumer contracts where there is no option to reject the new terms and continue using the service. *See e.g.*, *Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 857 n.9 (W.D. Wash. 2023) (rejecting contention that plaintiffs did not consent through continued use where terms "expressly provide that users' 'continued use of Alexa' after any modifications to that agreement 'constitutes [their] acceptance of the terms' therein"), *aff'd*, 2024 WL 2206454 (9th Cir. May 16, 2024).

The Court further held that Defendants were likely to be able to show that "[t]o reject the [Controlling] SSA, the consumer had to abandon the only tangible benefit offered to her by Valve: access to her Steam account and the game license(s) she had already bought." (Order at 20.) But Valve respectfully suggests that the record demonstrates otherwise: Valve's email and pop-up notices specified that Steam users could reject the proposed modifications *and* retain the licenses they had purchased to use games on Steam by discontinuing use of the platform: "[T]he updated [SSA] will become effective on November 1, 2024, unless you delete or discontinue use of your Steam account before then." (Dkt. 80 ¶¶ 10-12.)[7] This meant that the Dasteel Defendants could keep their Steam accounts and continue arbitrating under the Superseded SSA. The only condition was that they forego using those accounts while their arbitrations were ongoing.[8]

---

[7] Section 8(B) of the Superseded SSA did not create "ambiguity in the rejection terms" (Order at 20), and in fact clarified in its concluding sentence that "[i]f you don't agree to the amendments or to any of the terms in this Agreement, your only remedy is to cancel your Account *or to cease use of the affected Subscription(s)*." (Dkt. 80 Ex. A § 8(B) (emphasis added).)

[8] The experience of Ryan Lally—a Steam user who discontinued use and continued to arbitrate under the Superseded SSA—is not to the contrary. The Court held that Lally "had to stop using the library he had paid for, and never use it again" if he wanted to reject the Superseded SSA and arbitrate. (Order at 21.) But Valve's notices neither stated nor suggested that Defendants had to discontinue their use of Steam in perpetuity. That is why Mr. Lally is not a Defendant in this action and will be free to use games on Steam once his arbitration has been finally determined.

---

VALVE CORPORATION'S CROSS-MOTION
TO VACATE ARBITRATION AWARDS AND
OPPOSITION TO MOTION TO CONFIRM
ARBITRATION AWARDS – 10

The Court noted in the Order that Valve presented its notice of the Controlling SSA directly to Steam users. But Valve also gave written notice to Defendants' counsel on September 27, 2024, *the day after* the update was announced. (Ex. 23.) This notice distinguishes this case from *Dasher v. RBC Bank (USA)*, 882 F.3d 1017 (11th Cir. 2018), and *Russell v. Citigroup, Inc.*, 748 F.3d 677 (6th Cir. 2014), where no such communication with counsel occurred. Moreover, neither *Dasher* nor *Russell* held that an agreement was unconscionable and thus unenforceable because the business presented it directly to a represented consumer. In *Dasher*, the court held that the consumer never entered into to a unilateral amendment where his "response" to the amendment "purportedly was silence." 882 F.3d at 1023. Here, in contrast, the Dasteel Defendants entered into a bilateral updated agreement through one or more affirmative clicks on the Steam platform. In *Russell*, the court held that a modified forum provision in a binding amended agreement did not apply retroactively because the agreement's terms precluded that conclusion. Here, that the forum provision in the Controlling SSA does, by its terms, apply retroactively.

Nor is there anything improper—let alone procedurally unconscionable—about a business communicating directly with a consumer to present an update to their user agreement, even where there is pending litigation. *See, e.g.*, *Haider v. Lyft, Inc.*, 2021 WL 3475621, at *3 (S.D.N.Y. Aug. 6, 2021) (Claimants "cite no authority for the proposition that an amendment to a company's terms of service may constitute a prohibited communication with a represented party."); *Wu v. Uber Techs., Inc.*, 186 N.Y.S.3d 500, 541 (Sup. Ct. Bronx Cnty. 2022) (Claimant's "submissions are also devoid of any attempt to demonstrate that the January 2021 Pop-Up constitutes an unauthorized ex parte communication violative of Rule 4.2."), *aff'd*, 197 N.Y.S.3d 1 (App. Div. 2023), *aff'd*, 260 N.E.3d 1060 (N.Y. 2024); *SCPS LLC*, 2026 WL 96898, at *9 (rejecting contention that businesses went "around counsel's back" to obtain claimants' assent to the updated agreement).

*Second*, the Dasteel Defendants had a reasonable opportunity to understand the terms of the forum provision in the Controlling SSA based on the notices provided as set forth in detail in the

VALVE CORPORATION'S CROSS-MOTION
TO VACATE ARBITRATION AWARDS AND
OPPOSITION TO MOTION TO CONFIRM
ARBITRATION AWARDS – 11

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Order and above. *See Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 864 (9th Cir. 2017) (holding that action button, next to a hyperlinked consumer agreement, was "in sufficient proximity to give" plaintiff "a 'reasonable opportunity to understand' that he would be bound by additional terms").

*Third*, the terms of the forum provision in the Controlling SSA were not hidden in a maze of fine print. To the contrary, Valve expressly called out to the Dasteel Defendants the core change reflected in the forum provision—that, under the Controlling SSA all disputes must proceed in court—(i) in a concise email notice, (ii) in a pop-up notice on the Steam platform, (iii) on a banner to the Controlling SSA presented after the new agreement was launched, and (iv) through a blog post on the Steam platform. Order at 5-8. The email, pop-up, and blog post notices each linked to the Controlling SSA. And, rather than hiding in a maze of fine print, the forum clause in the Controlling SSA is in the same size font as the other key provisions and set of in paragraph 11, which is clearly labeled "APPLICABLE LAW/JURISDICTION." (Dkt. 80 Ex. B § 10 (Controlling SSA)); *see Torgerson*, 166 Wash. 2d at 520 ("Rather than hiding in a maze of fine print, the remedy limitation clause was in the same size font as other key provisions and set off in paragraph 21, which was clearly labeled '**DEFAULT AND REMEDIES.**'" (emphasis in original)).

### (ii)    The Forum Provision in the Controlling SSA Is Not Substantively Unconscionable

The forum provision in the Controlling SSA is also not substantively unconscionable. Courts find substantive unconscionability where terms are "one-sided or overly harsh"—*i.e.*, where terms are "[s]hocking to the conscience," "monstrously harsh," or "exceedingly calloused." *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wash. 2d 293, 303 (2004). "A contract provision becomes substantively unconscionable when it eliminates otherwise established statutory rights and is one sided, benefiting the contract drafter, is also not prominently set out in the contract, is not negotiated or bargained for, and provides no benefit to the affected party." *Tadych v. Noble Ridge Constr., Inc.*, 200 Wash. 2d 635, 645-46 (2022). Applying these standards, Valve respectfully submits that the forum provision in the Controlling SSA is not substantively unconscionable.

VALVE CORPORATION'S CROSS-MOTION
TO VACATE ARBITRATION AWARDS AND
OPPOSITION TO MOTION TO CONFIRM
ARBITRATION AWARDS – 12

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*First*, the forum provision in the Controlling SSA does not eliminate any established statutory rights. To the contrary, the Controlling SSA permits the Dasteel Defendants to proceed in court, including by participating in the pending *Wolfire* putative class action. Nor does the forum provision in the Controlling SSA extinguish claims through operation of statutes of limitations. The Dasteel Defendants are already putative class members in *Wolfire*, which remains pending before this Court. Moreover, under the Controlling SSA, any Steam user can file his or her own individual claim in court. Because the pending class action tolls the statute of limitations for all putative class members, including the Dasteel Defendants, there is no risk that their claims will become time-barred if the awards are vacated. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552-53 (1974) (holding that pending class action tolls statute of limitations for absent class members). Valve does not dispute that *American Pipe* tolling applies.

*Second*, the Controlling SSA is not impermissibly one-sided. Substantive unconscionability is assessed "at the time the contract is made." *Jeffery v. Weintraub*, 32 Wash. App. 536, 544 (Ct. App. 1982) (citing Restatement (Second) of Contracts § 208 (1981)). As such, the question is not whether it would be one-sided to enforce the forum provision in the Controlling SSA *now*, after that arbitration has concluded partially in the Dasteel Defendants' favor. Rather, the question is whether enforcing that provision would have been one-sided *when the parties entered into the agreement*, in each case on or before November 1, 2024. It would not.

At that time, the then-presiding arbitrator had issued no merits rulings. (Decl. ¶ 10.) Indeed, the evidentiary hearings had not even been scheduled. (*Id.*). The Dasteel Defendants' counsel's fee submissions illustrate the point: they incurred nearly 90% of all claimed fees after November 1, 2024. (*Id.* ¶ 27.) And they can continue to pursue their claims in court. Notably, the Dasteel Defendants' own counsel has represented in arbitration proceedings that any efforts undertaken in arbitration could be leveraged in court should the forum change.

Nor did the Dasteel Defendants suffer any one-sided financial prejudice from the amendment. Counsel was proceeding at all times on contingency and with the benefit of litigation

VALVE CORPORATION'S CROSS-MOTION
TO VACATE ARBITRATION AWARDS AND
OPPOSITION TO MOTION TO CONFIRM
ARBITRATION AWARDS – 13

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

funding. (*See* Ex. 24 (Bench Walk UCC Statement); Ex. 25 (Bench Walk SEC filing); Ex. 26 at (Bucher Law retainer).) In addition, Valve offered to reimburse the Dasteel Defendants' AAA filing fees—an offer the Dasteel Defendants' counsel refused. (Ex. 23 (Ltr. to Bucher Law dated Sept. 27, 2024); Decl. ¶ 58.) Moreover, Valve, like the Dasteel Defendants' litigation funder, also incurred expenses before the parties agreed to the Controlling SSA. Removing the cases from arbitration would work no unfairness to either side.

On the other hand, forcing Valve to defend arbitrations and also a parallel putative class action asserted by the same counsel who represents the Dasteel Defendants—and that counsel has described as "overlapping" with the arbitrations—would be manifestly unfair to Valve. That unfairness is compounded by the improper conduct by the Dasteel Defendants' counsel as set forth in the record in this case. (*See generally* Dkt. 81.)

Further, the forum provision in the Controlling SSA freed the Dasteel Defendants from an arbitration agreement that their own counsel and class representatives in a class action pending in this Court strenuously challenged as unfair and unconscionable. To start, the Dasteel Defendants' counsel expressly argued to Arbitrator Dasteel that enforcing the arbitration agreement would be unfair because claimants allegedly "had insufficient notice of the terms at the time of" contract formation and the Superseded SSA "unlawfully excludes any claim for public injunctive relief." (Ex. 1 at 1 ([Motion to Dismiss submitted May 22, 2024]).) The Arbitrator agreed, ruling that the arbitration agreement was unenforceable. The Dasteel Defendants' counsel's arguments echo previous complaints about the arbitration agreement in the Superseded SSA raised by the then-named plaintiffs in *Wolfire*. They argued that proceeding in arbitration "would deny consumers the ability to seek and obtain the statutory relief available to them for" their arbitration claims. They insisted that "unconscionability permeates the [Superseded SSA's] arbitration agreement." And they asserted that the arbitration provision "waives 'private attorney general action[s],' which include federal antitrust and CPA claims." (*See* Ex. 22 at 1, 16 (Plaintiffs' Opp. to Valve's Mot.

VALVE CORPORATION'S CROSS-MOTION
TO VACATE ARBITRATION AWARDS AND
OPPOSITION TO MOTION TO CONFIRM
ARBITRATION AWARDS – 14

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

to Compel Arbitration at 1, 16, *Wolfire*, Dkt. 51)).)

Far from imposing a one sided benefit to Valve, the Controlling SSA conferred substantial benefits on the Dasteel Defendants. It freed them from the arbitration agreement that their own counsel and the class representatives in *Wolfire* stridently challenged and that Arbitrator Dasteel ruled was unenforceable. It gave them access to the judicial forum. And it offered them the ability to pursue or participate in putative class proceedings, a development that benefitted *only* the Dasteel Defendants and other Steam users. Valve derived no benefit from eliminating the class action waiver from the SSA.

In sum, enforcing the parties' bilateral, mutually agreed forum selection clause that requires the Dasteel Defendants to proceed in court in Washington would not "shock the conscience" or be "monstrously harsh" or "exceedingly calloused." Courts routinely enforce updated consumer contracts that change the forum after litigation has commenced. *Supra* Part A.1.d. This Court should do the same here. The forum clause in the Controlling SSA is not substantively unconscionable.

2. **The Arbitrator's Sole Ruling in the Dasteel Defendants' Favor, Concerning Valve's Relationship With Microsoft, Manifestly Disregards the Law**

The Awards must also be vacated because they "exhibit[] a 'manifest disregard of the law.'" *Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1166 (9th Cir. 2019); *see also Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1292-93 (9th Cir. 2009) (vacating confirmation where award ignored "settled principles of . . . law . . . expressly before the arbitrator"). The Arbitrator found against the Dasteel Defendants with respect to claims under Section 2 of the Sherman Act, state law, and Section 1 of the Sherman Act as to all transactions *other* than those involving Microsoft games. But the Arbitrator found in favor of the Dasteel Defendants with respect to one narrow theory. Specifically, the Arbitrator found that one clause of a 2011 Steam Distribution Agreement between Valve and Microsoft (the "2011 Microsoft SDA") was an unlawful "horizontal price-fixing agreement," then awarded damages for other games not listed in the 2011 Microsoft SDA. This ruling was manifestly erroneous for at least three reasons:

VALVE CORPORATION'S CROSS-MOTION
TO VACATE ARBITRATION AWARDS AND
OPPOSITION TO MOTION TO CONFIRM
ARBITRATION AWARDS – 15

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*First*, the Arbitrator applied the *per se* rule rather than the rule of reason—an outcome-determinative error that was directly contrary to controlling Supreme Court authority. The rule of reason "is the . . . default standard . . . and it requires [an] antitrust plaintiff to demonstrate that a particular contract or combination is in fact unreasonable and anticompetitive." *California ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1133 (9th Cir. 2011). Valve's briefing to the Arbitrator cited *Leegin Creative Leather Prods., Inc. v. PSKS*, 551 U.S. 877 (2007), for the proposition that the *per se* rule is "the exception." (Decl. ¶¶ 18-19.) Valve's briefing to the Arbitrator also cited *Leegin* to explain that the Supreme Court has confined the *per se* rule to narrow categories where the challenged restraint has "***manifestly*** anticompetitive effects" and "lack[s] ***any*** redeeming virtue." (Decl. ¶ 18.) This is because it requires no analysis of competitive effects, "eliminat[ing]" any "need to study the reasonableness of an individual restraint." (*Id.*)

Whether the rule of reason or the *per se* rule applies turns in part on whether an agreement is vertical or horizontal. Vertical agreements occur between "firms at different levels of distribution"—*e.g.*, between a manufacturer and a distributor. *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 730 (1988). Horizontal agreements, by contrast, occur between firms at the same level of the supply chain. *See Ohio v. Am. Express Co.*, 585 U.S. 529, 540-41 (2018). The rule of reason applies to vertical agreements. The Supreme Court has "rejected applying the *per se* rule to vertical restraints," *United States v. Brewbaker*, 87 F.4th 563, 575 (4th Cir. 2023), because such restraints are procompetitive to the extent they "stimulate interbrand competition," *Leegin*, 551 U.S. at 890. The *per se* rule applies only to "purely horizontal" restraints that courts have previously found to be invariably anticompetitive. *Brewbaker*, 87 F.4th at 575. Valve supplied these standards and cases to the Arbitrator in its pre- and post-hearing briefing. (Decl. ¶¶18-19.)

The Arbitrator concluded that the 2011 Microsoft SDA, including its Section 6.4(b), was a "vertical agreement." (Dkt. 147, Ex. A, Interim Award at 3.) Accordingly, the rule of reason applies under settled Supreme Court authority cited in Valve's briefing: Valve's pre- and post-hearing briefs to the Arbitrator cited *Brewbaker* and *Leegin* for the proposition that the *per se* rule

VALVE CORPORATION'S CROSS-MOTION
TO VACATE ARBITRATION AWARDS AND
OPPOSITION TO MOTION TO CONFIRM
ARBITRATION AWARDS – 16

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

applies only to a subset of "*purely* horizontal restraint[s]" and, by contrast, where there is any vertical element, "[t]he rule of reason is the default." (Decl. ¶¶ 18-19); *see also Brewbaker*, 87 F.4th at 573, 578; *Leegin*, 551 U.S. at 888 (defining "agreements a manufacturer makes with its distributors" as "vertical"). Yet the Arbitrator ignored this authority and applied the *per se* rule. The Arbitrator reasoned that Section 6.4(b) "has horizontal effects." But, as the Supreme Court held in another case Valve cited in its pre- and post-hearing briefing, *Business Electronics Corp. v. Sharp Electronics Corp.*, "a restraint is horizontal not because it has horizontal effects, but because it is the product of a horizontal agreement." 485 U.S. at 730 n.4; (Decl. ¶ 19).

A hybrid agreement (*i.e.*, with vertical and horizontal elements) is analyzed under the rule of reason unless "demonstrable economic evidence" establishes that the restraint invariably produces "manifestly anticompetitive effects." *Brewbaker*, 87 F.4th at 573 (citing *Leegin*, 551 U.S. at 886-87). Valve supplied the rule on hybrid agreements to the Arbitrator in both pre- and post-hearing briefing. Valve's briefing cited, among other authorities, *Dimidowich v. Bell & Howell*, 803 F.2d 1473 (9th Cir. 1986), for the proposition that when an agreement has *any* "vertical element," the "rule of reason analysis [is] appropriate," *id.* at 1481, and *Brewbaker* for the analogous proposition that, for "a hybrid relationship with both vertical and horizontal components," courts "must apply a presumption in favor of the rule of reason," 87 F.4th at 578-79; (Decl. ¶¶ 18-20). Further, Valve's briefing to the Arbitrator cited the recent holding in *Frame-Wilson v. Amazon.com, Inc.*, 591 F. Supp. 3d 975 (W.D. Wash. 2022), that—even accepting as true plaintiffs' allegation that there was a "horizontal element" to defendant Amazon's agreements—the relationship would be "hybrid," so the rule of reason would apply. *Id.* at 987; (Decl. ¶ 20). The Arbitrator disregarded this law, instead concluding that there was not "general agreement" on the standard for hybrid relationships. (Dkt. 147, Ex. A, Interim Award at 3.) He undertook no analysis of whether the 2011 Microsoft SDA produces "manifestly anticompetitive effects," instead declaring any inquiry into the provision's competitive purpose or effect to be "irrelevant."

VALVE CORPORATION'S CROSS-MOTION
TO VACATE ARBITRATION AWARDS AND
OPPOSITION TO MOTION TO CONFIRM
ARBITRATION AWARDS – 17

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Second*, even accepting the Arbitrator's misreading of Section 6.4(b) as a "'price parity' requirement," his conclusion that it amounts to *per se* unlawful price-fixing manifestly disregards the law. As explained in Valve's briefing to the Arbitrator, an agreement constitutes price fixing only where it is an agreement among "competitors" to "fix" the prices of "***their competing products***." (Decl. ¶ 21 (quoting ABA Model Jury Instructions for Civil Antitrust Cases B-25)); *see also Texaco Inc. v. Dagher*, 547 U.S. 1, 6 (2006) (holding an agreement constitutes "price fixing in the antitrust sense" only where it is an agreement "between competing entities with respect to their competing products"). But the 2011 Microsoft SDA affects, at most, Microsoft's pricing of its own games, not the price of competing products (i.e., the revenue share on Steam and any of Microsoft's competing platforms).

### 3.  The Court Should Vacate the Awards Because They Were Arbitrary and Irrational

The Awards should also be vacated in their entirety because the fee awards are arbitrary and irrational. Section 10(a)(4) of the FAA provides for vacatur of an award that is "completely irrational." *Aspic*, 913 F.3d at 1166. Courts vacate entire arbitration awards where an arbitrator's attorneys' fee award is "irrational" as violative of "the strong public policy against excessive fees." *In re Briscoe Protective, LLC v. N. Fork Surgery Ctr., LLC*, 215 A.D.3d 956, 957-58 (N.Y. App. Div. 2023).

The Arbitrator's fee awards are irrational and manifestly disregard the law. Successful antitrust plaintiffs may seek a "reasonable attorney's fee." 15 U.S.C. § 15(a). A reasonable fee is one that is "adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007), *abrogated on other grounds by Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686 (6th Cir. 2016).

The fees the Arbitrator awarded far exceed that amount. The Arbitrator awarded more than $3.1 million in fees, costs, and interest for obtaining awards of a combined ***$449.25***—nearly ***7,000***

VALVE CORPORATION'S CROSS-MOTION
TO VACATE ARBITRATION AWARDS AND
OPPOSITION TO MOTION TO CONFIRM
ARBITRATION AWARDS – 18

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*times* the total recovery. (Decl. ¶ 41.) The awarded attorneys' fees alone are between **4,085** and **14,723** times the damages award (after trebling!) in each respective award. A fee demand of this magnitude could never be billed to a client who obtained such results, and is therefore presumptively unreasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). The Ninth Circuit has found far smaller disparities untenable: in *Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985 (9th Cir. 2023), a fee award "more than **thirty times** larger than the amount paid to class members" was deemed unreasonable. *Id.* at 991. The amount the Arbitrator awarded also far exceeds the Dasteel Defendants' counsel's own pre-litigation estimate. (Decl. ¶ 56; Ex. 21.)

The fee awards are also irrational and in manifest disregard of the law because the Arbitrator made no downward adjustment to account for the fact that the Dasteel Defendants lost the overwhelming majority of their claims and won only on a distinct and easily segregable issue related to a single contract. (Decl. ¶ 43, Exs. 17-20 at 1.) As Valve explained in briefing to the Arbitrator, "no fee may be awarded for services on the unsuccessful claim." *Hensley*, 461 U.S. at 435; *see also Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 906 (9th Cir. 1995) ("[T]he fact that [plaintiff] achieved an excellent result on her one successful claim doesn't work to resurrect the hours her lawyers spent on the unsuccessful claims"); (Ex. 13 at 27). The Arbitrator recognized that the Dasteel Defendants' "success was low in comparison to [their] original claim[s]" and that they "prevailed on a single claim, with all others dismissed." (Exs. 17-20 at 3.) Indeed, the Dasteel Defendants recovered only about 3% of the total damages they sought: 7.19% for Davis, 3.2% for Keegan, 1.42% for Montes, and 2.73% for Tynes. (Decl. ¶ 43.) Their fees should therefore have been reduced by 97% on average.[9]

Yet, rather than sharply reduce their fees as the law requires, the Arbitrator applied a 1.1

---

[9] The fees awarded also primarily cover work on issues that counsel lost. The Dasteel Defendants prevailed only on a *per se* claim based on the interpretation of a single contract. The Arbitrator stated he could not "segregate[]" between fees incurred for what the Dasteel Defendants prevailed on versus the claims the Dasteel Defendants lost. But the fees incurred at the hearing related almost entirely to the claims they lost because all they offered for the (incorrect) *per se* ruling was the 2011 Microsoft SDA.

VALVE CORPORATION'S CROSS-MOTION
TO VACATE ARBITRATION AWARDS AND
OPPOSITION TO MOTION TO CONFIRM
ARBITRATION AWARDS – 19

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

multiplier, *increasing* the fees by 10%. This, too, was irrational and disregarded the law. "[O]nly the rare or exceptional case will justify an upward adjustment." *Rahman v. FCA US LLC*, 594 F. Supp. 3d 1199, 1207 (C.D. Cal. 2022). These cases are not rare or exceptional. The Dasteel Defendants sought a multiplier based on their contingency fee arrangement and the "complexity" of these matters, but neither factor supports a multiplier. *See Geier v. Sundquist*, 372 F.3d 784, 793 (6th Cir. 2004) ("[T]he Supreme Court [has] held that neither the complexity nor novelty of the issues in a case is an appropriate factor in determining whether to increase the basic fee award."); *Yahoo!, Inc. v. Net Games, Inc.*, 329 F. Supp. 2d 1179, 1186-87 (N.D. Cal. 2004) (declining to adjust attorneys' fee award based on contingency fee arrangement).

Even worse, the timesheets the Dasteel Defendants submitted and on which the awarded fees were based are replete with entries for which no fees could properly be awarded.

To start, the Dasteel Defendants' counsel sought and the Arbitrator awarded substantial fees for work not attributable to the Arbitrations. (*See* Decl. ¶¶ 49-55.) But the Superseded SSA permitted the Arbitrator to award relief "only to the extent of that party's individual claim," not for any other matters. (Dkt. 80, Ex. A § 11(D).) If "the arbitrator goes beyond that self-limiting agreement between consenting parties, it acts inherently without power, and an award ordered under such circumstances must be vacated." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 140 (2d Cir. 2007); *accord Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors, LLC*, 268 F. Supp. 3d 1053, 1057, 1059-60 (N.D. Cal. 2017), *aff'd*, 913 F.3d 1162 (9th Cir. 2019).

Courts similarly hold that fee awards cannot include work on other matters. *See Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 631 (6th Cir. 2013) (awarding fees for work on other cases would create "all sorts of oddities, as illustrated by this case where counsel would be permitted to recover fees for thousands of hours of time spent litigating a case they *lost*") (emphasis in original). Moreover, "[c]harges for duplicative work," let alone duplicative of other arbitrations, "are not recoverable." *See Tirona v. State Farm Mut. Auto. Ins. Co.*, 821 F. Supp. 632, 637 (D. Haw. 1993);

VALVE CORPORATION'S CROSS-MOTION TO VACATE ARBITRATION AWARDS AND OPPOSITION TO MOTION TO CONFIRM ARBITRATION AWARDS – 20

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*see also Mohamed v. Barr*, 562 F. Supp. 3d 1128, 1137 (E.D. Cal. 2022) (reducing amounts excessively or double billed from attorney fee award).

Yet many of the time entries for which the Dasteel Defendants' counsel sought and obtained fees appear to represent charges for general mass arbitration work. (Decl. ¶¶ 50-55.) These claimed fees also include work the Dasteel Defendants' counsel did for other arbitrations against Valve and on behalf of *other claimants* not before the Tribunal. (*Id.*) Among other things, the time entries providing support for the attorneys' fees sought included work on behalf of the 5,000 or more claimants for whom counsel filed nearly identical demands in 2023. (*Id.* ¶ 45) The Tribunal could have awarded counsel no more than 1/5,000th of any "reasonable" fees incurred for work that benefitted all of these clients generally and was not specifically limited to work for the four Dasteel Claimants, but it did not do so.

In fact, the fees awarded almost certainly cover work on other arbitrations that the Dasteel Defendants' counsel *lost*. Many entries expressly reference other arbitrators who ruled against claimants. (*See* Decl. ¶ 53.)[10] Attorneys should not be awarded fees for working on matters where they were unsuccessful. *See Magill v. DIRECTV, LLC*, 2017 WL 8894320, at *3 (C.D. Cal. June 23, 2017) (rejecting proposition that "work done on behalf of several different plaintiffs with individual lawsuits, some indisputably unsuccessful, can be fully recovered through the victory of one such lawsuit"); *Johnson v. Midland Credit Mgmt. Inc.*, 2013 WL 12412632, at *5 (N.D. Ohio Dec. 12, 2013) (because "[p]laintiffs' attorneys were not successful" in separate case involving another plaintiff, attorneys "[could] not receive fees for work done in that case"). And that prohibition applies with particular force where, as here, attorneys are requesting fees under a statute that permits only prevailing parties to recover. *See* 15 U.S.C. § 15(a).

The Dasteel Defendants' counsel also sought—and the Arbitrator awarded—fees for work for which the Dasteel Defendants' counsel has sought fees before *another* tribunal on behalf of an

---

[10] The Dasteel Defendants' counsel withdrew some of these entries after their initial fee application, claiming the entries were "inadvertently included." (*See* Decl. ¶ 53.)

VALVE CORPORATION'S CROSS-MOTION
TO VACATE ARBITRATION AWARDS AND
OPPOSITION TO MOTION TO CONFIRM
ARBITRATION AWARDS – 21

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

entirely *different* claimant. (Decl. ¶¶ 52-54.)[11]

In addition, the hourly rates the Arbitrator applied are unreasonable. Courts assess reasonableness by benchmarking requested rates against "those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). The Dasteel Defendants' fee application ignored this legal standard. The Dasteel Defendants sought and the Arbitrator ordered fees for Will Bucher using hourly rates of between $970 and $1,125. Bucher is the principal of Bucher Law PLLC, based in Albany, New York.[12] A reasonable hourly rate for lawyers similarly qualified to Bucher in Albany is between $250 and $350. *See Grant v. Lockett*, 605 F. Supp. 3d 399, 404 (N.D.N.Y. 2022). Under *Grant*, other attorneys, paralegals and law clerks working for Bucher Law PLLC should have rates that are no more than $200 for associates and $90 for paralegals. Yet the Dasteel Defendants obtained multiples of those rates, averaging $750/hour. (*See* Decl. ¶¶ 26-28.)

## B.    The Motion To Confirm Should Be Denied

The motion to confirm must be denied because the Awards must be vacated for the reasons set forth herein. *See Aspic*, 913 F.3d at 1166-69 (affirming denial of motion to confirm where award was vacated); *Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 412 (9th Cir. 2011) (explaining that the FAA's structure "defeats any notion that district courts may" confirm without "consider[ing] motions to vacate" and holding that court "*must* consider" motion to vacate) (emphasis in original); *Orman v. Cent. Loan Admin. & Reporting*, 2019 WL 6841741, at *4 (D. Ariz. Dec. 16, 2019) ("[N]ot only is a motion to vacate properly filed in response to a confirmation application, a district court must consider such a motion."); *Quamina v. U.S. Bank Nat'l Ass'n*, 2020 WL 9349559, at *5 (S.D. Fla. Dec. 24, 2020) (similar).

The motion to confirm must also be denied because it does not satisfy the requirements of

---

[11] The Dasteel Defendants' initial fee application also included entries previously requested before a second arbitrator that were later withdrawn. (Decl. ¶¶ 53-55.)

[12] *See* https://www.bucherlawfirm.com/contact-3.

| | |
|---|---|
| VALVE CORPORATION'S CROSS-MOTION TO VACATE ARBITRATION AWARDS AND OPPOSITION TO MOTION TO CONFIRM ARBITRATION AWARDS – 22 | **CORR CRONIN LLP**<br>1015 Second Avenue, Floor 10<br>Seattle, Washington 98104-1001<br>Tel (206) 625-8600<br>Fax (206) 625-0900 |

the FAA. Under Section 13 of the FAA, "upon filing a motion to confirm an arbitration award, the moving party **must provide the Court with the arbitration agreement** executed by the parties." *Kerr v. Wilmington Tr. N.A.*, 2020 WL 4919604, at \*1 (C.D. Cal. May 18, 2020). Courts thus deny motions to confirm arbitration awards that fail to attach a valid and binding arbitration agreement. *See, e.g.*, *Kerr*, 2020 WL 4919604, at \*1; *Raymond James Fin. Servs., Inc. v. Boucher*, 2024 WL 233731, at \*3 (S.D. Cal. Jan. 22, 2024), *appeal dismissed*, 2024 WL 2559329 (9th Cir. May 20, 2024). Here, the Dasteel Defendants did not transmit with or attach to their motion a valid and binding arbitration agreement. The Dasteel Defendants could not do so because there is no such agreement.

## III.     CONCLUSION

For all of the foregoing reasons, Valve requests that its cross-motion to vacate be granted and the Dasteel Defendants' motion to confirm be denied.

DATED: May 28, 2026

I certify that this memorandum contains 8,289 words, in accordance with this Court's order (Dkt. 156).

CORR CRONIN LLP

*s/ Blake Marks-Dias*
Blake Marks-Dias, WSBA No. 28169
1015 Second Avenue, Floor 10
Seattle, Washington 98104
(206) 625-8600 Phone
(206) 625-0900 Fax
bmarksdias@corrcronin.com

Michael W. McTigue Jr., *Admitted Pro Hac Vice*
Meredith C. Slawe, *Admitted Pro Hac Vice*
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Attorneys for Plaintiff Valve Corporation*

VALVE CORPORATION'S CROSS-MOTION
TO VACATE ARBITRATION AWARDS AND
OPPOSITION TO MOTION TO CONFIRM
ARBITRATION AWARDS – 23

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900