UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALVE CORPORATION,

               Plaintiff,

      v.

THOMAS ABBRUZZESE et al.,

               Defendants.

No. 2:24-CV-1717-JNW

**PLAINTIFF VALVE CORPORATION'S MOTION TO CERTIFY ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION FOR INTERLOCUTORY APPEAL**

**NOTE ON MOTION CALENDAR: July 1, 2026 per LCR 7**

PLAINTIFF'S MOTION TO CERTIFY

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................................1

II.  RELEVANT BACKGROUND ..............................................................................2

III. ARGUMENT .........................................................................................................4

   A.   The Court's Order Involves Multiple Controlling Questions of Law..........4

      1.   The conditional-use and pending-proceedings issues are
           questions of law ...................................................................4

      2.   These questions are controlling .........................................5

   B.   There Is a Substantial Ground for a Difference of Opinion
        Regarding the Court's Unconscionability Holdings ...................................6

      1.   Reasonable jurists could differ on the conditional-use issue
           ......................................................................................7

      2.   Reasonable jurists could differ on the pending-proceedings
           issue..............................................................................9

   C.   Interlocutory Review Will Materially Advance This Litigation................11

IV.  CONCLUSION......................................................................................................12

PLAINTIFF'S MOTION TO CERTIFY – i
No. 2:24-CV-1717-JNW

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*A.C. ex rel. Carbajal v. Nintendo of America Inc.*,
No. C20-1694 TSZ,
2021 WL 1840835 (W.D. Wash. Apr. 29, 2021)..................................................................8

*Adkins v. Facebook, Inc.*,
Nos. C 18-05982 WHA, C 19-00117 WHA,
2019 WL 3767455 (N.D. Cal. Aug. 9, 2019) .....................................................................9

*Adobe Systems Inc. v. Christenson*,
809 F.3d 1071 (9th Cir. 2015) ...........................................................................................7

*Bassett v. Electronic Arts Inc.*,
No. 13-CV-04208 (MKB)(SMG),
2015 WL 1298644 (E.D.N.Y. Feb. 9, 2015),
*report and recommendation adopted*, 93 F. Supp. 3d 95 (E.D.N.Y. 2015).....................2, 8

*Bauer v. Atlantis Events, Inc.*,
No. CV 13-05290 SJO (JCx),
2014 WL 12603112 (C.D. Cal. Mar. 5, 2014),
*aff'd*, 645 F. App'x 545 (9th Cir. 2016)..............................................................................9

*Bennett v. United States*,
No. C20-5382 BHS,
2021 WL 4902485 (W.D. Wash. Aug. 31, 2021) ...............................................................5

*In re Cement Antitrust Litigation*,
673 F.2d 1020 (9th Cir. 1982) ...........................................................................................5

*CLMS Management Services Ltd. Partnership v. Amwins Brokerage of Georgia, LLC*,
No. 3:19-cv-05785-RBL,
2020 WL 13734947 (W.D. Wash. Feb. 11, 2020)............................................................12

*Codoni v. Port of Seattle*,
No. 2:23-cv-795-JNW,
2025 WL 524243 (W.D. Wash. Feb. 18, 2025).............................................................6, 12

*Dasher v. RBC Bank (USA)*,
745 F.3d 1111 (11th Cir. 2014) .......................................................................................10

*DeAsis v. YMCA*,
183 Wash. App. 1018, No. 31531-2-III,
2014 WL 4376038 (Wash. Ct. App. Sep. 4, 2014)............................................................9

*Dougan v. Children's Place, Inc.*,
No. C20-0818JLR,
2021 WL 764263 (W.D. Wash. Feb. 26, 2021)..................................................................4

*Goetsch v. Shell Oil Co.*,
197 F.R.D. 574 (W.D.N.C. 2000)....................................................................................10

PLAINTIFF'S MOTION TO CERTIFY – ii

No. 2:24-CV-1717-JNW

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Haider v. Lyft, Inc.*,
    No. 20-cv-2997 (AJN),
    2021 WL 3475621 (S.D.N.Y. Aug. 6, 2021) ....................................................................11

*Hansen v. LMB Mortgage Services, Inc.*,
    1 F.4th 667 (9th Cir. 2021) ...........................................................................................5

*Hoban & Associates, LLC v. RealPage, Inc.*,
    No. 2:24-CV-0155-TOR,
    2024 WL 4425678 (E.D. Wash. Oct. 4, 2024) ...............................................................5

*International Marine Underwriters v. ABCD Marine, LLC*,
    313 P.3d 395 (Wash. 2013)............................................................................................5

*In re iPhone Application Litigation*,
    No. 11-MD-02250-LHK,
    2011 WL 4403963 (N.D. Cal. Sep. 20, 2011) ...............................................................9

*Ireland-Gordy v. Tile, Inc.*,
    No. 25-403,
    2026 WL 594859 (9th Cir. Mar. 3, 2026)..........................................................2, 10, 11

*Kuehner v. Dickinson & Co.*,
    84 F.3d 316 (9th Cir. 1996) .........................................................................................12

*Leong v. Square Enix of America Holdings, Inc.*,
    No. CV 09-4484 PSG (VBKx),
    2010 WL 1641364 (C.D. Cal. Apr. 20, 2010),
    *aff'd*, 462 F. App'x 688 (9th Cir. 2011)......................................................................1, 8

*M.A. Mortensen Co. v. Timberline Software Corp.*,
    998 P.2d 305 (Wash. 2000)..........................................................................................2, 9

*Mauia v. Petrochem Insulation, Inc.*,
    No. 18-cv-01815-TSH,
    2020 WL 1031911 (N.D. Cal. Mar. 3, 2020).................................................................12

*Nelson v. McGoldrick*,
    896 P.2d 1258 (Wash. 1995)........................................................................................5, 9

*Newhall v. Chase Home Finance, LLC*,
    No. 10-2749 (WJM),
    2010 WL 4387517 (D.N.J. Oct. 28, 2010)....................................................................10

*Newhall v. Chase Home Finance, LLC*,
    No. 8:10-cv-2625-T-26EAJ,
    2010 WL 8759340 (M.D. Fla. Dec. 22, 2010)..............................................................10

*Pakootas v. Teck Cominco Metals, Ltd.*,
    No. 2:04-CV-00256-SAB,
    2024 WL 3354427 (E.D. Wash. July 9, 2024)................................................................6

*ProCD, Inc. v. Zeidenberg*,
    86 F.3d 1447 (7th Cir. 1996) .........................................................................................7

PLAINTIFF'S MOTION TO CERTIFY – iii

No. 2:24-CV-1717-JNW

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Reese v. BP Exploration (Alaska) Inc.*,
        643 F.3d 681 (9th Cir. 2011) ................................................................6, 7, 12

*Rollins v. Dignity Health*,
        No. 13-cv-01450-TEH,
        2014 WL 6693891 (N.D. Cal. Nov. 26, 2014) ...................................................12

*Rosskamm v. Amazon.com, Inc.*,
        No. C22-1553JLR,
        2024 WL 261793 (W.D. Wash. Jan. 24, 2024)......................................................5

*Saucedo v. Experian Information, Solutions, Inc.*,
        No. 1:22-cv-01584-ADA-HBK,
        2023 WL 4708015 (E.D. Cal. July 24, 2023) .............................................2, 10

*SCPS LLC v. Kind Law*,
        No. CV 25-3255-MWF (SSCx),
        2026 WL 96898 (C.D. Cal. Jan. 8, 2026) ....................................................2, 10, 11

*Search v. Bank of America, N.A.*,
        No. C12-52 TSZ,
        2012 WL 4514285 (W.D. Wash. Oct. 2, 2012) ......................................................5

*Sterling v. Feek*,
        150 F.4th 1235 (9th Cir. 2025) .............................................................6, 11

*Wiseley v. Amazon.com, Inc.*,
        709 F. App'x 862 (9th Cir. 2017) ..........................................................8

*Yakima County (West Valley) Fire Protection District No. 12 v. City of Yakima*,
        858 P.2d 245 (Wash. 1993)...................................................................5

*Yamaha Motor Corp., U.S.A. v. Calhoun*,
        516 U.S. 199 (1996)...........................................................................4

**STATUTES**

9 U.S.C. § 16...............................................................................................4

28 U.S.C. § 1292...............................................................................1, 4, 11, 12

**RULES**

Fed. R. Civ. P. 1.............................................................................................1

PLAINTIFF'S MOTION TO CERTIFY – iv

No. 2:24-CV-1717-JNW

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## I.   INTRODUCTION

This Court's May 27, 2026, Order ("Order") denying Valve's motion for a preliminary injunction turns on a disputed question of law: whether Valve's adoption of new contract terms in September 2024 was unconscionable as to the Defendants. At argument, the Court "d[id]n't think that either party is really sitting on comfortable ground" regarding that question and "ha[d]n't found a controlling case" that "dictates an outcome." 5/19/26 Tr. 4:13-17. The question is potentially dispositive not just for Valve's claims here, but also for numerous pending motions to confirm or vacate arbitral awards. If the Court's ruling is ultimately modified or reversed, the parties and the Court will have expended considerable time and resources unnecessarily addressing these arbitration-related issues.

Obtaining appellate resolution of that critical legal issue is the quickest path to "secur[ing] the just, speedy, and inexpensive determination" of all those disputes. Fed. R. Civ. P. 1. Valve thus respectfully requests that the Court certify its Order for interlocutory review under 28 U.S.C. § 1292(b). The Order involves legal questions that are subject to reasonable dispute: whether parties with a pending dispute in one forum may agree to (1) condition ongoing use of a nonessential recreational product or service on acceptance of terms governing that use; and (2) a different forum for resolving disputes.

There is significant room for reasonable jurists to differ on both issues:

*First*, courts have held that it is neither procedurally nor substantively unconscionable to offer licensed video games subject to conditions, including potential termination of the license. *Leong v. Square Enix of Am. Holdings, Inc.*, 2010 WL 1641364, at *10 (C.D. Cal. Apr. 20, 2010), *aff'd*, 462 F. App'x 688 (9th Cir. 2011). There is thus no legal obligation to make licensed video games "available in perpetuity," *id.*, and the Ninth Circuit has held that termination of a license to play a video game does not result in "forfeit[ing] any property or money," 462 F. App'x at 689. Courts have likewise held that video games are a "nonessential recreational activity," so there can be no procedural unconscionability as a matter of law in presenting a choice to accept contract

PLAINTIFF'S MOTION TO CERTIFY – 1
No. 2:24-CV-1717-JNW

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

terms or forgo playing video games, even if no refund will be given. *Bassett v. Elec. Arts Inc.*, 2015 WL 1298644, at *11 (E.D.N.Y. Feb. 9, 2015), *report and recommendation adopted*, 93 F. Supp. 3d 95 (E.D.N.Y. 2015).

*Second*, courts have frequently held that a dispute-resolution provision in an amended agreement is enforceable as to claims that are already pending in another forum. *See*, *e.g.*, *Ireland-Gordy v. Tile, Inc.*, 2026 WL 594859, at *1-5 (9th Cir. Mar. 3, 2026); *SCPS LLC v. Kind Law*, 2026 WL 96898, at *9-10 (C.D. Cal. Jan. 8, 2026); *Saucedo v. Experian Info. Sols.*, 2023 WL 4708015, at *6 (E.D. Cal. July 24, 2023). And unconscionability is determined "at the time the contract was formed," *M.A. Mortensen Co. v. Timberline Software Corp.*, 998 P.2d 305, 315 (Wash. 2000), not when the court later determines whether the contract is enforceable.

These issues of law are controlling and well suited for immediate appellate review. Their resolution will materially advance the disposition of the remainder of this case.

## II.    RELEVANT BACKGROUND

Valve licenses the video games, in-game content, and other software available on Valve's online Steam service. Valve expressly discloses (and each user agrees) that this content is subject to licenses in the Steam Subscriber Agreement. The Steam Subscriber Agreement that went into effect on April 25, 2023 (the "Superseded SSA") informed users:

> Valve hereby grants, and you accept, a non-exclusive *license* and right, to use the Content and Services for your personal, non-commercial use (except where commercial use is expressly allowed herein or in the applicable Subscription Terms). This license ends upon termination of (a) this Agreement or (b) a Subscription that includes the license. The Content and Services are *licensed, not sold*. Your license confers *no title or ownership* in the Content and Services. To make use of the Content and Services, you must have a Steam Account and you may be required to be running the Steam client and maintaining a connection to the Internet.

Dkt. 80, Ex. A § 2(A) (emphases added).[1]

Valve also disclosed (and each user agrees) that the terms governing users' Steam accounts and use of the Steam platform could change. First, the parties agreed that "[t]his Agreement may

---

[1] *Accord* Dkt. 80, Ex. B § 2(A) (same).

PLAINTIFF'S MOTION TO CERTIFY – 2
No. 2:24-CV-1717-JNW

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

at any time be mutually amended by your explicit consent to changes proposed by Valve." Dkt. 80, Ex. A § 8(A). Second, Valve could amend the agreement unilaterally after providing at least 30 days' notice by email. *Id.* § 8(B).

In July 2024, Defendants' counsel obtained four arbitral orders holding unenforceable the arbitration agreement in Valve's then-operative SSA. Dkt. 81 ¶¶ 10-12. The next month, Defendants' counsel commenced a putative antitrust class action against Valve on behalf of the four claimants who obtained those arbitral rulings. *Id.* ¶¶ 16-17; *Elliott v. Valve Corp.*, No. 2:24-cv-01218 (W.D. Wash. filed Aug. 9, 2024). Those plaintiffs sought to represent all Steam users. The *Elliott* action asserts antitrust claims similar to the ones Defendants are pursuing against Valve and contends that the Superseded SSA's arbitration provision is unenforceable as to all Steam users. *Elliott* Compl. ¶ 13.

On September 26, 2024, given the arbitral determinations that the SSA's arbitration provision was unenforceable and the filing of *Elliott*, Valve introduced a new SSA (the "Controlling SSA"). The Controlling SSA removed the arbitration provision and the class action waiver and instead requires resolution of disputes exclusively in court. Under the amendment and notice provisions above, Valve provided both email and pop-up notice of the Controlling SSA. Dkt. 80 ¶¶ 10-15.

Defendants each agreed to the Controlling SSA. Almost all of them clicked a button to affirmatively accept the new agreement. Dkt. 80 ¶ 24 & Ex. A; Dkt. 162 ¶ 5 & Ex. D. The remainder continued using Steam after the Controlling SSA's effective date of November 1, 2024—more than 30 days after receiving email notice. Dkt. 80 ¶¶ 25-28 & Ex. A; Dkt. 162 ¶¶ 7-8 & Ex. D.

When Defendants agreed to the Controlling SSA in the fall of 2024, their arbitrations were in their early stages. No arbitration had proceeded to an evidentiary or merits hearing, much less an award. Dkt. 78 ¶ 19.

Despite Defendants' agreement to the Controlling SSA, Defendants' counsel continued to

---

PLAINTIFF'S MOTION TO CERTIFY – 3
No. 2:24-CV-1717-JNW

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

prosecute arbitrations. Valve thus filed a petition to enjoin what were then 624 pending arbitrations in October 2024; after this Court held that Valve should file a complaint rather than a petition and dismissed the petition, Valve filed the operative complaint and moved for a preliminary injunction. Dkts. 1, 78, 79. Again, the introduction of the Controlling SSA and filing of the October 2024 petition predated any evidentiary or merits hearings in any of Defendants' arbitrations.

This Court denied the preliminary injunction motion. The Court recognized that "Valve has likely shown both assent to the [Controlling SSA] and that the document, on its face, reaches the pending arbitrations." Order 18. But the Court then concluded that, under Washington law, the forum-selection clause in the Controlling SSA is likely procedurally and substantively unconscionable, and therefore unenforceable, "as applied to the Defendants." *Id.* at 19-27.

## III.    ARGUMENT

Section 1292(b) authorizes district courts to certify an order for immediate appeal where the order (1) "involv[es] a controlling question of law" (2) "as to which there is substantial ground for difference of opinion," and for which (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Because Section 1292(b) contemplates appellate review of "the *order* certified to the court of appeals," and not just a "particular question," "the court need only find that one aspect of its order merits interlocutory appeal for certification of the entire order to be proper." *Dougan v. Children's Place, Inc.*, 2021 WL 764263, at *3 (W.D. Wash. Feb. 26, 2021) (quoting *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996)).[2]

### A.    The Court's Order Involves Multiple Controlling Questions of Law

#### 1.    The conditional-use and pending-proceedings issues are questions of law

In Washington, as elsewhere, "[t]he existence of an unconscionable bargain is a question

---

[2] Orders granting or denying preliminary injunctions are ordinarily immediately appealable as of right, 28 U.S.C. § 1292(a)(1), but the Federal Arbitration Act provides that "[e]xcept as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order" "refusing to enjoin an arbitration that is subject to this title," 9 U.S.C. § 16(b)(4).

PLAINTIFF'S MOTION TO CERTIFY – 4
No. 2:24-CV-1717-JNW

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

of law for the courts." *Nelson v. McGoldrick*, 896 P.2d 1258, 1262 (Wash. 1995). When there are no factual disputes regarding the circumstances surrounding the transaction, courts resolve unconscionability as a matter of law. The Washington Supreme Court, for example, has affirmed rejection of an unconscionability argument as a matter of law at the summary judgment stage. *Yakima Cnty. (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 858 P.2d 245, 256-57 (Wash. 1993); *see also Rosskamm v. Amazon.com, Inc.*, 2024 WL 261793, at *3 (W.D. Wash. Jan. 24, 2024).[3] Other courts applying Washington law have resolved unconscionability as a matter of law at the pleadings stage. *See*, *e.g.*, *Hoban & Assocs., LLC v. RealPage, Inc.*, 2024 WL 4425678, at *4 (E.D. Wash. Oct. 4, 2024); *Search v. Bank of Am., N.A.*, 2012 WL 4514285, at *5 (W.D. Wash. Oct. 2, 2012).

The issues raised here—whether (1) a license conditioned on agreement to updated terms is enforceable and (2) an agreement that changes the forum for a pending dispute is enforceable—are unconscionability questions that can be adjudicated without further factual development. There can be no reasonable dispute about what the terms of the Controlling SSA or Superseded SSA mean—itself a legal question, *see Int'l Marine Underwriters v. ABCD Marine, LLC*, 313 P.3d 395, 400 (Wash. 2013). Nor do the parties dispute that Valve licenses the video games and other software available on Steam, or that Defendants' pending arbitration proceedings were in early stages when the parties agreed to the Controlling SSA and when Valve filed the October 2024 petition. The Court's unconscionability holdings involve only legal questions about the enforceability of the Controlling SSA's forum-selection clause.

### 2.    These questions are controlling

A legal question is "controlling" if "resolution of the issue on appeal *could* materially affect the outcome of litigation in the district court." *Bennett v. United States*, 2021 WL 4902485, at *2 (W.D. Wash. Aug. 31, 2021) (quoting *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir.

---

[3] Courts routinely resolve unconscionability issues on motions to compel arbitration, which are decided on a "summary judgment standard." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021).

PLAINTIFF'S MOTION TO CERTIFY – 5
No. 2:24-CV-1717-JNW

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1982)) (emphasis added); *accord Sterling v. Feek*, 150 F.4th 1235, 1247 (9th Cir. 2025). The unconscionability issues here readily meet that standard.

As this Court recognized, the preliminary injunction motion turns on a single "core" question as framed by this Court: "which version of the parties' agreement governs disputes that were already in arbitration when Valve rewrote it." Order 12. If the Ninth Circuit ultimately adopts Valve's position that the Controlling SSA governs and is enforceable, then the arbitrators lacked authority to proceed with all arbitrations pending when that contract was formed. That determination would resolve Valve's claims for declaratory relief. It also would dictate the outcome of most of the remaining motions, including:

- Certain Defendants' motions to confirm four arbitration awards (Dkts. 88-91);
- Certain Defendants' motions to confirm two arbitration awards (Dkts. 115-116);
- Certain Defendants' motion to confirm 20 arbitration awards (Dkt. 142);
- Certain Defendants' motion to confirm four arbitration awards (Dkt. 143);
- Valve's cross-motion to vacate 19 arbitration awards (Dkt. 167); and
- Valve's cross-motion to vacate four arbitration awards (Dkt. 170).

In sum, the "issues presented are controlling questions of law." *Codoni v. Port of Seattle*, 2025 WL 524243, at *1 (W.D. Wash. Feb. 18, 2025) (Whitehead, J.).

### B. There Is a Substantial Ground for a Difference of Opinion Regarding the Court's Unconscionability Holdings

There is a "substantial ground for difference of opinion" where an appeal "involves an issue over which reasonable judges might differ and such uncertainty provides a credible basis for a difference of opinion on the issue." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (citations omitted); *accord Pakootas v. Teck Cominco Metals, Ltd.*, 2024 WL 3354427, at *1 (E.D. Wash. July 9, 2024). Courts "traditionally" find "a substantial ground for difference of opinion" where "novel and difficult questions of first impression are presented." *Reese*, 643 F.3d at 688. "A substantial ground for difference of opinion exists where reasonable jurists might

PLAINTIFF'S MOTION TO CERTIFY – 6
No. 2:24-CV-1717-JNW

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

disagree on an issue's resolution" even where they have not yet "already disagreed." *Id*. The Ninth Circuit has refused to impose the "formalistic requirement" that multiple courts must have already come to different conclusions on an issue, because that "could lead to unnecessary, protracted litigation and a considerable waste of judicial resources." *Id.* at 688 & n.5.

Reasonable jurists could disagree on the resolution of the unconscionability question here. As the Court remarked, "I don't think that either party is really sitting on comfortable ground" and "I haven't found a controlling case that's on all four[s]" that "dictates an outcome." 5/19/26 Tr. 4:13-17. That recognition that the case presents "questions of first impression," *Reese*, 643 F.3d at 688, strongly favors certification. And the decisions of other courts, discussed below, further confirm that there is a substantial ground for difference of opinion on the issues presented.

### 1. Reasonable jurists could differ on the conditional-use issue

The Court held that Defendants had no meaningful choice but to accept the Controlling SSA, because a user who rejected it would lose "the benefit of her purchases" and "forfeit[] her purchased games." Order 20-21. But courts have reached the opposite view, concluding, as a matter of law, that users who purchase limited video game licenses do not have an unrestricted right to play those games for all time.

Software and other modern digital products are typically licensed to customers under conditions, including the possibility of updated terms or cancellation. Unlike other goods, they are not sold outright, so there is no transfer of property ownership. As the Ninth Circuit has recognized, license agreements are "ubiquitous" and "license agreements, rather than sales, have become the predominate form of the transfer of rights to use copyrighted software material." *Adobe Sys. Inc. v. Christenson*, 809 F.3d 1071, 1078 (9th Cir. 2015) (citation omitted). Indeed, licenses with restrictions were common three decades ago, when software sometimes came on CDs and other tangible media. *See ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1449-50, 1451-52 (7th Cir. 1996) (enforcing licenses restricting use of software database sold on CD-ROMs).

Valve's licensing of content available on the Steam platform fits squarely within this long-

PLAINTIFF'S MOTION TO CERTIFY – 7
No. 2:24-CV-1717-JNW

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

standing framework. As both the Superseded and Controlling SSA make clear, a Steam subscriber does not purchase "title or ownership" of a video game for all time. Rather, they purchase only a license to play that game on the Steam platform subject to certain conditions, including acceptance of the terms governing use of the Steam platform. *See* Dkt. 80, Exs. A-B. Valve provided users more than 30 days to decide whether to accept the Controlling SSA. Even if users deleted or stopped using their Steam accounts instead of accepting, they received the benefit of their bargain by having the opportunity to play their licensed games while they remained active Steam users.

Courts have rejected the proposition that a company must make licensed video games "available in perpetuity." *Leong*, 2010 WL 1641364, at *10, *aff'd*, 462 F. App'x 688. In *Leong*, the plaintiffs purchased a license to play an online video game, and the user agreement made clear that the purchaser did not own any of the software, game data, or characters. *Id.* at *6. The court rejected the plaintiffs' claims that the agreement's terms permitting the developer to cancel or revoke the user's license were procedurally and substantively unconscionable under California law. *Id.* at *10.[4] The Ninth Circuit affirmed, explaining that the plaintiffs' "allegations are insufficient to show that they forfeited any property or money" when their accounts were terminated: "the game's user agreement, which each user must accept prior to playing the game, states that users do not own the game software or data." 462 F. App'x at 689. The same is true here.

Reasonable minds also could disagree on whether presenting a choice between accepting an updated license agreement or forgoing playing licensed video games could ever be procedurally unconscionable as a matter of law. Video games are a "nonessential recreational activity," and "for nonessential activities, the consumer always has the option of forgoing the activity." *Bassett*, 2015 WL 1298644, at *11 (applying California law) (collecting cases). Judge Koh, now on the Ninth Circuit, has similarly held that iPhone gaming "apps such as 'Angry Birds' or 'Plants versus

---

[4] Washington's and California's "protections against unconscionable contracts appear to be substantially similar." *Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 863 (9th Cir. 2017); *accord A.C. ex rel. Carbajal v. Nintendo of Am. Inc.*, 2021 WL 1840835, at *3 (W.D. Wash. Apr. 29, 2021).

Zombies' are nonessential recreational activities," creating "difficulties" for challenging Apple's terms "both with respect to the procedural and substantive element of unconscionability." *In re iPhone Application Litig.*, 2011 WL 4403963, at *8 (N.D. Cal. Sep. 20, 2011); *see also*, *e.g.*, *Bauer v. Atlantis Events, Inc.*, 2014 WL 12603112, at *3 (C.D. Cal. Mar. 5, 2014) (cruise cancellation policy was not unconscionable since plaintiffs could have forgone cruise or "booked another type of vacation"), *aff'd*, 645 F. App'x 545 (9th Cir. 2016); *Adkins v. Facebook, Inc.*, 2019 WL 3767455, at *2 (N.D. Cal. Aug. 9, 2019) ("fatal to finding oppression here," Facebook's social media service "is not one of life's necessities"). And the Washington Court of Appeals similarly has rejected the argument that a health club membership agreement was a procedurally unconscionable contract of adhesion because "a health club is not essential." *DeAsis v. YMCA*, 183 Wash. App. 1018, 2014 WL 4376038, at *5-6 (Wash. Ct. App. Sep. 4, 2014) (unpublished).

In sum, a reasonable court could conclude that a contract can enforceably condition ongoing use of a licensed video game on acceptance of the operative terms governing that use.

### 2.    Reasonable jurists could differ on the pending-proceedings issue

The Court determined that the Controlling SSA's forum-selection clause is unenforceable as to Defendants in this action, noting concern that some Defendants had proceeded in arbitration "to the brink of judgment or past it." Order 24. Valve respectfully submits that there are substantial grounds for difference of opinion on whether terms that change the forum for resolving pending disputes are "[s]hocking to the conscience," "monstrously harsh," or "exceedingly calloused." *Nelson*, 896 P.2d at 1262.

The Court appeared to rest its holding on the state of the pending proceedings "[a]s of the briefing on this motion" or "[b]y the time of oral argument," rather than at the time of contract formation in the fall of 2024. Order 10; *see* Order 26 (Defendants pursued claims in arbitration "to the verge of relief"). A reasonable court could disagree with that approach. In Washington, as elsewhere, courts examine unconscionability "at the time the contract was formed." *M.A. Mortensen*, 998 P.2d at 315 (examining term in software license).

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

More generally, courts routinely hold that a dispute resolution provision in an amended agreement is enforceable as to pending claims if the provision, like the one in the Controlling SSA, expressly provides for retroactive effect. For example, the plaintiff in *Saucedo* had not agreed to arbitrate before filing a putative class action lawsuit in court. But he then accepted an arbitration agreement, and the court enforced that agreement as applied to the pending litigation, noting that "[t]he Ninth Circuit consistently upholds the enforceability of the retroactivity of arbitration clauses." 2023 WL 4708015, at *6 (collecting cases). Other courts have reached similar conclusions, such as a court that transferred a lawsuit when the plaintiff agreed to an arbitration agreement containing a forum-selection clause after filing the lawsuit; the transferee court in Florida then compelled arbitration. *See Newhall v. Chase Home Fin., LLC*, 2010 WL 4387517, at *2, *6 (D.N.J. Oct. 28, 2010); *Newhall v. Chase Home Fin., LLC*, 2010 WL 8759340, at *2 (M.D. Fla. Dec. 22, 2010). *Cf. Goetsch v. Shell Oil Co.*, 197 F.R.D. 574, 575-78 (W.D.N.C. 2000) (named plaintiff precluded from pursuing class action based on class waiver added during litigation).

Courts apply the same rationale to agreements that remove an arbitration clause or that change the arbitral forum for pending disputes. The Eleventh Circuit, for example, enforced a post-litigation update to a contract that removed the prior contract's arbitration clause, rejecting the argument that it is impermissible to "*remove* from arbitration an existing controversy." *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1125 (11th Cir. 2014). Recently, another court within the Ninth Circuit held that arbitration claimants who had submitted notices of dispute for arbitration under the AAA were bound by their post-notice assent to an updated agreement requiring arbitration before a different arbitral body, ADR Chambers. *SCPS LLC v. Kind Law*, 2026 WL 96898, at *9-10 (C.D. Cal. Jan. 8, 2026). The court explained that "the result would be the same even if the [claimants] had assented [to the updated agreement] *after* initiating arbitrations with the AAA"— that is, if the arbitrations were already pending. *Id.* at *9 (emphasis added). And the Ninth Circuit recently enforced an updated arbitration agreement that changed the arbitral forum for the plaintiffs' pending claims from AAA to JAMS. *Ireland-Gordy v. Tile, Inc.*, 2026 WL 594859, at *1-5 (9th

PLAINTIFF'S MOTION TO CERTIFY – 10
No. 2:24-CV-1717-JNW

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Cir. Mar. 3, 2026).[5]

Finally, the Order noted concern that Defendants were represented by counsel in the pending proceedings but Valve entered into updated contracts with its users directly. Order 22-23. But Valve provided notice to Defendants' counsel a day after the update and offered to refund their clients' arbitration filing fees. Dkt. 81, Ex. 4. That fact distinguishes the cases cited in the Order— which involved issues of contract formation and interpretation, not enforceability—where no such communication with counsel occurred. Regardless, large companies "may face a number of lawsuits at any given time," and it would be "unworkable in practice" to force companies to carve out represented users from communications presenting updates to user agreements in the ordinary course of business. *Haider v. Lyft, Inc.*, 2021 WL 3475621, at *3 (S.D.N.Y. Aug. 6, 2021). As Judge Nathan, now on the Second Circuit, put it, the Defendants "cite no authority for the proposition that an amendment to a company's terms of service may constitute a prohibited communication with a represented party," and to prohibit such communications "would essentially freeze" businesses' contracts in place. *Id.*; *cf. SCPS*, 2026 WL 96898, at *9 (rejecting contention, in the context of contract formation, that businesses went "around counsel's back" to obtain claimants' assent to the updated agreement).

Given these decisions, a reasonable court could conclude that the forum-selection provision in the Controlling SSA is valid and enforceable as applied to Defendants with pending proceedings at the time of contract formation.

### C.      Interlocutory Review Will Materially Advance This Litigation

Interlocutory review is warranted because it will "materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), and "may appreciably shorten the time, effort, or expense of conducting" the litigation, *Sterling*, 150 F.4th at 1247. This prong is closely "linked" to, and "overlap[s] significantly with," whether an issue of law is "controlling"—"the court should

---

[5] *See* Declaration of Steve Klinkner, Ex. B § 25.C, Ex. E § XVII.B, Ex. I at 23, *Ireland-Gordy v. Tile, Inc.*, No. 3:23-cv-04119-RFL, Dkt. No. 34.

PLAINTIFF'S MOTION TO CERTIFY – 11
No. 2:24-CV-1717-JNW

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

consider the effect of a reversal by the Ninth Circuit on the management of the case." *Mauia v. Petrochem Insulation, Inc.*, 2020 WL 1031911, at *4 (N.D. Cal. Mar. 3, 2020) (citation omitted); *Rollins v. Dignity Health*, 2014 WL 6693891, at *4 (N.D. Cal. Nov. 26, 2014).

As explained, reversal by the Ninth Circuit could have a "final, dispositive effect" on this litigation. *Reese*, 643 F.3d at 688. If the Ninth Circuit concludes that the Controlling SSA is enforceable as to Defendants and that Defendants thus were not entitled to arbitrate, then Defendants' pending arbitrations became *ultra vires* when the Controlling SSA was formed. Moreover, such a ruling would require denial of the many pending individual arbitration-award-confirmation motions, and granting Valve's cross-motions to vacate.

The Court should certify an immediate appeal to head off "needless expense and delay of litigati[on]." *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996); *see Codoni*, 2025 WL 524243, at *1; *CLMS Mgmt. Servs. Ltd. P'ship v. Amwins Brokerage of Ga., LLC*, 2020 WL 13734947, at *1 (W.D. Wash. Feb. 11, 2020).

## IV.   CONCLUSION

Plaintiff respectfully requests that the Court either enter an order certifying its May 27, 2026, Order (Dkt. 169) on the motion for preliminary injunction for interlocutory appeal under 28 U.S.C. § 1292(b) or amend the May 27, 2026, Order to provide certification for immediate appeal.

//
//
//
//
//
//
//

PLAINTIFF'S MOTION TO CERTIFY – 12
No. 2:24-CV-1717-JNW

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

DATED this 10th day of June 2026.

I certify that this memorandum contains 4,184 words, in compliance with the Local Civil Rules.

CORR CRONIN LLP

*s/ Blake Marks-Dias*
Blake Marks-Dias, WSBA No. 28169
1015 Second Avenue, Floor 10
Seattle, WA 98104
(206) 625-8600 Phone
(206) 625-0900 Fax
bmarksdias@corrcronin.com

Michael W. McTigue Jr., *Admitted Pro Hac Vice*
Meredith C. Slawe, *Admitted Pro Hac Vice*
SKADDEN, ARPS, SLATE, MEAGHER & FLOM
  LLP
One Manhattan West
New York, NY 10001
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Attorneys for Plaintiff Valve Corporation*

PLAINTIFF'S MOTION TO CERTIFY – 13
No. 2:24-CV-1717-JNW

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900