HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALVE CORPORATION,

        Plaintiff,

    v.

THOMAS ABBRUZZESE, *et al.*,

        Defendants.

Case No.  2:24-cv-1717-JNW

DEFENDANTS' MOTION TO DISMISS COMPLAINT AND/OR FOR JUDGMENT ON THE PLEADINGS

NOTED ON MOTION CALENDAR:
July 16, 2025

Defendants (hereinafter, "**PC Gamers**" or "**Consumer-Defendants**"), through undersigned counsel, hereby move to dismiss Petitioner Valve Corporation's ("**Valve**") complaint. Dkt. 78.

CONSUMER-DEFENDANTS' MOTION TO DISMISS
AND/OR JUDGMENT ON THE PLEADINGS – Page i

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................... 1

II. FACTUAL AND PROCEDURAL BACKGROUND .............................................. 3

   A. Valve's Repeated Efforts To Enjoin The Arbitrations. ................................. 3

   B. Valve Required Arbitration, Then Rewrote Its Agreement To Escape It ....... 4

III. LEGAL STANDARD ............................................................................................ 9

IV. ARGUMENT ......................................................................................................... 10

   A. Washington Law Does Not Permit Valve To Use A Post-Dispute
      Amendment To Terminate Consumer-Defendants' Pending Arbitrations ... 10

      1. Valve's "Cancel-or-Lose-Everything" Tactics Show Procedural
         Unconscionability ..................................................................................... 11

      2. The Updated Forum-Selection Clause Is Substantively Unconscionable as
         Applied Retroactively to Consumer-Defendants' Pending Arbitrations. ... 21

   B. Equity Prevents Valve From Rewriting Its Way Out of Arbitration ............ 25

      1. Valve Waived Any Argument That These Disputes Belong in Court
         Rather Than Arbitration .......................................................................... 26

      2. Equitable Estoppel Bars Valve From Disowning the Agreement It
         Induced Consumer-Defendants to Rely On ............................................. 28

      3. Judicial Estoppel Bars Valve From Reversing the Position on Which
         It Prevailed ............................................................................................... 29

   C. Valve Should Not Get a Third Chance to Plead the Same
      Defective Theory ........................................................................................... 31

V. CONCLUSION ....................................................................................................... 32

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

TABLE OF AUTHORITIES

**Cases**

*Adobe Systems Inc. v. Christenson*,
809 F.3d 1071 (9th Cir. 2015) ........................................................ 18

*Adler v. Fred Lind Manor*,
103 P.3d 773 (Wash. 2004) ....................................... 10, 11, 12, 13, 14, 16, 21, 23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................ 9

*Bassett v. Electronic Arts*,
2015 WL 1298644 (E.D.N.Y. Feb. 9, 2015) ........................................................ 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................ 9

*Belton v. Comcast Cable Holdings, LLC*,
151 Cal. App. 4th 1224 (2007) ........................................................ 16

*Burnett v. Pagliacci Pizza, Inc.*,
470 P.3d 486 (Wash. 2020) ........................................................ 11, 12, 16

*Chavez v. United States*,
683 F.3d 1102 (9th Cir. 2012) ........................................................ 9

*Dasher v. RBC Bank (USA)*,
882 F.3d 1017 (11th Cir. 2018) ........................................................ 20

*Freeman v. Wal-Mart Stores, Inc.*,
111 Cal. App. 4th 660 (2003) ........................................................ 16

*Gandee v. LDL Freedom Enters., Inc.*,
293 P.3d 1197 (Wash. 2013) ........................................................ 11, 22, 23

*Grant v. T-Mobile USA, Inc., No. 2:23-cv-01946-MJP*,
2024 WL 3510937 (W.D. Wash. July 23, 2024) ........................................................ 20

*Hardgrove v. Bowman*,
116 P.2d 336 (Wash. 1941) ........................................................ 29

*In re iPhone Application Litigation*,
2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ........................................................ 17

*Keathley v. Buddy Ayers Constr., Inc.*,
No. 25-6, 2026 U.S. LEXIS 2465 (U.S. June 11, 2026) ........................................................ 29

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013) ........................................................ 28

*Leong v. Square Enix*,
2010 WL 1641364 (C.D. Cal. Apr. 20, 2010) ........................................................ 18

CONSUMER-DEFENDANTS' MOTION TO DISMISS
AND/OR JUDGMENT ON THE PLEADINGS – Page iii

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
  519 F.3d 1025 (9th Cir. 2008) .......................................................... 4, 5, 9

*Martin v. Yasuda*,
  829 F.3d 1118 (9th Cir. 2016) ............................................................. 26

*Miller v. Yokohama Tire Corp.*,
  358 F.3d 616 (9th Cir. 2004) ............................................................... 31

*Morgan v. Sundance, Inc.*,
  596 U.S. 411 (2022) ............................................................................ 26

*Murphy v. DirecTV, Inc.*,
  724 F.3d 1218 (9th Cir. 2013) ............................................................. 28

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ............................................................................ 29

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) ............................................................. 10

*Russell v. Citigroup, Inc.*,
  748 F.3d 677 (6th Cir. 2014) ............................................................... 20

*Saunders v. Lloyd's of London*,
  779 P.2d 249 (Wash. 1989) .................................................................. 28

*Schroeder v. Fageol Motors, Inc.*,
  544 P.2d 20 (1975) .............................................................................. 12

*SCPS LLC v. Kind Law,* No. CV 25-3255-MWF (SSCx),
  2026 WL 96898 (C.D. Cal. Jan. 8, 2026) ............................................. 20

*Tadych v. Noble Ridge Constr., Inc.*,
  519 P.3d 199 (Wash. 2022) ............................ 10, 11, 15, 21, 22, 23, 24

*United States v. United Healthcare Ins. Co.*,
  848 F.3d 1161 (9th Cir. 2016) ............................................................. 31

*Wilson v. Huuuge, Inc.*,
  944 F.3d 1212 (9th Cir. 2019) ............................................................. 15

*Wilson v. Playtika, Ltd.*,
  349 F. Supp. 3d 1028 (W.D. Wash. 2018) ............................................. 9

*Wolfire Games, LLC v. Valve Corp.,* No. 2:21-cv-00563-JCC,
  2021 WL 4952220 (W.D. Wash. Oct. 25, 2021) ............................... 5, 27


**Statutes**

15 U.S.C. §§ 1, 2 ......................................................................... 22, 23

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

**Rules**

Fed. R. Civ. P. 12 ................................................................. 4, 9

Model Rules of Professional Conduct R. 4.2 (1983) ................................................ 20

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

## I. INTRODUCTION

Valve chose arbitration. It drafted the arbitration clause, imposed it on consumers, invoked it in court, and obtained an order compelling consumer antitrust claims into individual AAA arbitrations. Consumer-Defendants then did exactly what Valve required: they filed individual arbitrations, paid fees, hired counsel, engaged experts, and litigated for years.

Arbitration was Valve's mandate until arbitration became Valve's problem. After an arbitrator held in related proceedings that the existing arbitration clause was unenforceable at the consumer's option, Valve rewrote the Steam Subscriber Agreement ("SSA") for its own benefit. The Updated SSA removed arbitration, inserted a retroactive King County forum-selection clause, and purported to reach disputes that had already been filed and litigated. Valve then asked this Court to enforce that new clause by stopping the very arbitrations Valve had required.

This Court has already rejected that theory. In denying Valve's renewed motion for a preliminary injunction, the Court held that Valve was unlikely to succeed because the retroactive forum-selection clause is unconscionable as applied to Consumer-Defendants' pending arbitrations. Taking Valve's pleading as true, the Court should reach the same result as a matter of law. Valve's own allegations show that the Updated SSA was adhesive, that rejection required consumers to give up access to paid-for Steam libraries, and that Valve pushed a litigation-ending amendment directly to represented adversaries while their arbitrations were pending.

CONSUMER-DEFENDANTS' MOTION TO DISMISS
AND/OR JUDGMENT ON THE PLEADINGS – Page 1

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

The practical effect is wholly one-sided. Applied retroactively, the amendment strips Consumer-Defendants of the forum Valve required them to use, erases years of work, threatens timely filed Sherman Act claims, and gives Consumer-Defendants no corresponding benefit. Valve loses only the burden of defending in the forum it drafted, demanded, and compelled. Washington law does not enforce a one-sided, forfeiture-backed amendment that reaches backward to extinguish rights already invoked.

Equity independently bars Valve's about-face. Valve waived any right to insist on a judicial forum when it compelled these disputes into arbitration and litigated there. It is equitably estopped from disowning the agreement Consumer-Defendants relied on. And it is judicially estopped from reversing the position on which it prevailed in compelling arbitration in the first place. Arbitration cannot be mandatory when Valve wants to compel it and nonexistent when Valve wants to escape it.

Valve's Complaint therefore fails on its face. Because Valve's requested declaratory and injunctive relief depends on retroactive enforcement of an unconscionable forum-selection clause—and because waiver, equitable estoppel, and judicial estoppel independently foreclose its theory—the Court should dismiss the Complaint with prejudice or, alternatively, enter judgment on the pleadings for Defendants.

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

## II. FACTUAL AND PROCEDURAL BACKGROUND

**A.    Valve's Repeated Efforts To Enjoin The Arbitrations.**

Valve began this case on October 18, 2024, by asking this Court to stop the arbitrations it had required Steam users to file. Dkts. 1–2. But Valve did not file a complaint. It filed a petition for injunctive relief, then moved the same day for a preliminary injunction. *Id*. The case soon became mired in threshold disputes, including Valve's unsuccessful *ex parte* effort to communicate directly with represented parties, Dkt. 14, and the Court's later order entered "[t]o restore order to the case," Dkt. 46.

On May 14, 2025, the Court ordered supplemental briefing on subject-matter jurisdiction and the procedural defects in Valve's chosen vehicle, and it stayed all pending motions. Dkt. 58. After that briefing, the Court struck Valve's petition as improperly filed, denied the pending motions as moot, and gave Valve twenty-one days to "file a civil complaint to replace its petition." Dkt. 76. The Court warned that failure to do so would result in dismissal. *Id*.

Valve then repleaded. On August 21, 2025, it filed the operative Complaint— styled as an amended complaint—against 572 Consumer-Defendants and again moved for a preliminary injunction to stop the pending arbitrations. Dkts. 78–79. Consumer-Defendants opposed that motion and separately moved to strike the Complaint. Dkts. 92, 105.

The Court denied Valve's renewed request for a preliminary injunction on May 27, 2026. Dkt. 169. It held that Valve was unlikely to succeed on the merits

CONSUMER-DEFENDANTS' MOTION TO DISMISS
AND/OR JUDGMENT ON THE PLEADINGS – Page 3

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

because the retroactive forum-selection clause Valve seeks to enforce is unconscionable as applied to Consumer-Defendants, and therefore unenforceable. *Id*. at 2, 16–27. The Court also held that the remaining equitable factors favored Consumer-Defendants. *Id*. Valve has since moved to certify that order for interlocutory appeal. Dkt. 173.

On June 4, 2026, the Court denied Consumer-Defendants' motion to strike and directed Consumer-Defendants to respond to the Complaint within fourteen days. Dkt. 172. The PC Gamers now move to dismiss under Rule 12(b)(6). In the alternative, if the Court treats the pleadings as closed or otherwise reaches the same legal question under Rule 12(c), Consumer-Defendants seek judgment on the pleadings.

**B.    Valve Required Arbitration, Then Rewrote Its Agreement To Escape It**

Valve's own Complaint supplies the facts that defeat its claims.[1] Taken as true, those facts show that Valve cannot enforce the Updated SSA's retroactive forum-selection clause against Consumer-Defendants' pending arbitrations.

Valve owns and operates Steam, an online platform on which consumers buy, play, and discuss video games. Compl. ¶ 55. To create a Steam account, a user must accept Valve's Steam Subscriber Agreement. Valve drafts that agreement, presents

---

[1] The well-pleaded allegations of the complaint are taken as true on this motion and construed in the light most favorable to Valve. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

CONSUMER-DEFENDANTS' MOTION TO DISMISS
AND/OR JUDGMENT ON THE PLEADINGS – Page 4

it as written, and has modified it unilaterally since 2003. *Id.* ¶¶ 56–57, 176 and Ex. 4 § 8.B.

In 2012, Valve added an arbitration agreement. With limited exceptions, that agreement required Steam users and Valve to "resolve all disputes and claims between us in individual binding arbitration" before the American Arbitration Association. *Id.* ¶ 58. That version of the agreement—the 2023 SSA—was in effect when Consumer-Defendants brought their claims. *Id.* ¶¶ 5, 64.

The 2023 SSA also reserved amendment power to Valve alone. It provided that "Valve may amend this Agreement … unilaterally at any time in its sole discretion," on thirty days' email notice, and that a user's failure to cancel the account before the amendment's effective date would constitute acceptance. *Id.* ¶ 176 and Ex. 4 § 8.B. A user who disagreed had one stated remedy: cancel the account or stop using the affected subscriptions, with no obligation on Valve to refund any fees. *Id.*

Valve invoked that arbitration agreement in court. In 2021, Wolfire Games and individual consumers sued Valve for antitrust violations. *Id.* ¶ 60. Valve moved to compel the consumer plaintiffs to arbitrate under the 2023 SSA, and this Court granted that motion. *Id.* ¶¶ 63, 65; *see Wolfire Games, LLC v. Valve Corp.*, No. 2:21-cv-00563-JCC, 2021 WL 4952220 (W.D. Wash. Oct. 25, 2021).

Steam users then did what Valve's agreement required. Beginning on October 2, 2023, individual users represented by Bucher Law filed arbitration demands against Valve before the AAA, asserting claims under Sections 1 and 2 of

CONSUMER-DEFENDANTS' MOTION TO DISMISS
AND/OR JUDGMENT ON THE PLEADINGS – Page 5

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

the Sherman Act. Compl. ¶¶ 18, 76. Bucher Law submitted 997 demands first, and thousands more followed in November and December 2023. *Id*. ¶¶ 76–77. Of the 4,991 claimants then arbitrating against Valve, 572 are named as Consumer-Defendants here. *Id*. ¶¶ 17, 78–79.

While those arbitrations were pending, four other claimants—who are not Consumer-Defendants here—obtained rulings from Arbitrator Dasteel holding the 2023 SSA's arbitration agreement unenforceable at the consumer's option. *Id*. ¶¶ 82–85. Valve did not move to vacate those orders. *Id*. ¶¶ 87–88. Valve then changed the agreement. On September 26, 2024, after Consumer-Defendants had filed and were litigating their arbitrations, Valve launched the Updated SSA. *Id*. ¶¶ 59, 113. The Updated SSA removed the arbitration agreement and class-action waiver. *Id*. In their place, Valve inserted a forum-selection clause requiring that "all disputes and claims between you and Valve," including any dispute or claim "that arose before the existence of this or any prior agreement," be filed and maintained only in state or federal court in King County, Washington. *Id*. ¶¶ 133, 185 and Ex. 3 § 10. A merger clause provided that the Updated SSA "supersedes any prior oral or written agreements." *Id*. ¶ 134 and Ex. 3 § 11. Valve alleges that this new clause applies to "Defendants' claims in pending arbitrations." *Id*. ¶ 186.

Valve gave notice of the amendment through a banner atop the Updated SSA, an email to every U.S. user, an in-app pop-up notice, and a blog post. *Id*. ¶¶ 114–123. Each notice stated that the Updated SSA would become effective immediately when a user agreed to it, including by making most purchases or

CONSUMER-DEFENDANTS' MOTION TO DISMISS
AND/OR JUDGMENT ON THE PLEADINGS – Page 6

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

funding a Steam Wallet. *Id*. ¶¶ 124–125, 178–179. Otherwise, Valve said, the Updated SSA would become effective on November 1, 2024, unless the user deleted or discontinued use of the Steam account before then. *Id*.

The choice Valve offered was not costless. Under Valve's own documents, a user's "only remedy" for rejecting the amendment was "to cancel … or to cease use." *Id*. ¶ 176 and Ex. 4 § 8.B. Canceling meant forfeiting the user's purchased game library without a refund. *Id*. ¶ 128 and Ex. 4 §§ 8.B, C. A terminated license's activation key "will not be able to be registered to any other account," and Steam Wallet funds are "non-refundable and non-transferable." *Id*. Valve alleges that the claims at stake are worth, on average, "a few thousand dollars each." *Id*. ¶ 202. Thus, Consumer-Defendants could keep the Steam libraries they had paid for, or keep the arbitrations they had already filed—but not both.

Nor were Consumer-Defendants merely anonymous users receiving a routine platform update. They were adverse parties in active AAA arbitrations, represented by counsel of record, and litigating against Valve when Valve rewrote the agreement. *Id*. ¶¶ 51, 78–79, 188. Valve did not address the amendment through counsel. It delivered the new terms directly to Consumer-Defendants through the in-app pop-up notice and its single "Accept Updated SSA" button. *Id*. ¶¶ 118–120.

Valve now alleges two paths to assent. It alleges that 454 of the 572 Consumer-Defendants affirmatively accepted the Updated SSA before November 1, 2024, by checking the pop-up box, completing a purchase, or both. *Id*. ¶¶ 130,

CONSUMER-DEFENDANTS' MOTION TO DISMISS
AND/OR JUDGMENT ON THE PLEADINGS – Page 7

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

173. It alleges that the remaining 118 accepted because they did not delete or discontinue use of their accounts before November 1 and later logged in. *Id*. ¶¶ 131, 174, 183. No Defendant deleted an account before the deadline. *Id*. ¶ 182. Valve further alleges that 76 of those 118 Consumer-Defendants later accepted through a post-deadline purchase. *Id*. ¶ 175.

By then, the arbitrations had advanced. Valve alleges that 224 of Consumer-Defendants' arbitrations are stayed before 17 arbitrators, 324 are proceeding before 15 arbitrators, 149 have final merits hearing dates set, and 52 have proceeded to final merits hearings over 46 days. *Id*. ¶ 197, n.31. Twenty-five have produced final awards. *Id*. Valve has continued to participate in these arbitrations. *Id*. ¶ 198. And when Valve asked the AAA to close the arbitrations the day after it amended the SSA, the AAA declined, leaving questions of arbitrability and the governing contract to a court or the merits arbitrators. *Id*. ¶¶ 161–164.

Valve's requested relief depends on applying the Updated SSA retroactively. Valve seeks a declaration that the Updated SSA is valid and enforceable as to each Defendant, and an injunction barring Consumer-Defendants from continuing their AAA arbitrations. *Id*. ¶¶ 190, 231–233. Both requests require the Court to enforce the new forum-selection clause against arbitrations Consumer-Defendants filed and litigated under the agreement Valve itself drafted, imposed, and invoked. *Id*. ¶¶ 184–187, 190.Legal

CONSUMER-DEFENDANTS' MOTION TO DISMISS
AND/OR JUDGMENT ON THE PLEADINGS – Page 8

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

### III. STANDARD

A complaint should be dismissed pursuant to Rule 12(b)(6) if it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible only when the plaintiff pleads factual content allowing the court to draw the reasonable inference of liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts accept factual allegations as true and construe them in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

But labels and conclusions do not suffice. As the Court put it, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And Rule 12 requires "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Wilson v. Playtika, Ltd.*, 349 F. Supp. 3d 1028, 1040 (W.D. Wash. 2018) (quoting *Iqbal*, 556 U.S. at 678).

The same pleading standard applies under Rule 12(c). Because the Rule 12(c) analysis is "substantially identical" to the Rule 12(b)(6) analysis, judgment on the pleadings should be entered in Consumer-Defendants' favor if the complaint fails to state a plausible claim for relief. *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).[2]

---

[2] The procedural posture makes the proper rule uncertain. Valve began this action by filing a petition to enjoin arbitration, not a complaint. The Court first construed the petition as a complaint, then struck it as improperly filed and directed Valve to proceed by civil complaint. *See* Dkt. Nos. 1, 2, 76. Valve then filed the operative

CONSUMER-DEFENDANTS' MOTION TO DISMISS
AND/OR JUDGMENT ON THE PLEADINGS – Page 9

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

## IV. ARGUMENT

Valve's claims depend on a simple but extraordinary premise: that a company may compel consumers into arbitration, litigate there for years, and then rewrite its form contract to escape that forum once the proceedings become inconvenient. Washington law does not permit that kind of retroactive rights-stripping. Equity does not permit that kind of litigation about-face. The complaint therefore fails as a matter of law.

### A. Washington Law Does Not Permit Valve To Use A Post-Dispute Amendment To Terminate Consumer-Defendants' Pending Arbitrations

Washington law—which Valve alleges governs—defeats Valve's claims because this case turns on contract enforceability, not mere contract formation. Federal courts apply state contract law when deciding whether an arbitration-related agreement exists and what it requires. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). But under Washington law, assent to a form agreement does not render every term in that form enforceable. Whether a contract term is unconscionable is a question of law for the Court. *Adler v. Fred Lind Manor*, 103 P.3d 773, 781–82 (Wash. 2004); *Tadych v. Noble Ridge Constr., Inc.*, 519 P.3d 199, 202–04 (Wash. 2022). And Washington applies unconscionability disjunctively: "either substantive or procedural unconscionability is sufficient to

complaint. Dkt. 78. Because the record does not clearly show whether the pleadings are closed as to all Consumer-Defendants, the motion may fall under Rule 12(b)(6), which applies before a responsive pleading, or Rule 12(c), which applies after the pleadings close. Consumer-Defendants therefore bring the motion under Rule 12(b)(6) or, in the alternative, Rule 12(c).

CONSUMER-DEFENDANTS' MOTION TO DISMISS
AND/OR JUDGMENT ON THE PLEADINGS – Page 10

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

void a contract." *Gandee v. LDL Freedom Enters., Inc.*, 293 P.3d 1197, 1199 (Wash. 2013); *see also Tadych*, 519 P.3d at 202; *Adler*, 103 P.3d at 782.

That rule resolves Valve's claims. Procedural unconscionability asks whether, under all the circumstances, the weaker party lacked meaningful choice; substantive unconscionability asks whether the challenged term is one-sided, overly harsh, or unfair in its practical effect. *Zuver v. Airtouch Commc'ns, Inc.*, 103 P.3d 753, 759–60 (Wash. 2004); *Burnett v. Pagliacci Pizza, Inc.*, 470 P.3d 486, 495–96 (Wash. 2020); *Tadych*, 519 P.3d at 203–04. Either defect is enough, and both are present here.

Valve imposed the Updated SSA through an adhesive form, made rejection require forfeiting access to paid-for Steam libraries, and routed a litigation-ending amendment directly to represented adversaries while their arbitrations were pending. The clause then operates one way: it strips Consumer-Defendants of the arbitral forum Valve required them to use, threatens timely filed statutory claims, erases work already done, and gives Consumer-Defendants no corresponding benefit. Washington law does not permit a drafting party to use a unilateral, forfeiture-backed amendment to strip rights its customers had already invoked. *See Adler*, 103 P.3d at 787–88; *Gandee*, 293 P.3d at 1200–02; *Tadych*, 519 P.3d at 203–04.

### 1.    Valve's "Cancel-or-Lose-Everything" Tactics Show Procedural Unconscionability

Washington law does not bless contracts born of coercion and asks whether the contracting process gave the weaker party a meaningful choice. Procedural

CONSUMER-DEFENDANTS' MOTION TO DISMISS
AND/OR JUDGMENT ON THE PLEADINGS – Page 11

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

unconscionability focuses on the circumstances of assent: whether the terms were hidden, whether assent was real or coerced, and whether the weaker party had a fair chance to reject the challenged provision. *Burnett*, 470 P.3d at 495–96 (citing *Nelson v. McGoldrick*, 896 P.2d 1258, 1262 (Wash. 1995); *Zuver*, 103 P.3d at 759–60). The touchstone is meaningful choice. *Schroeder v. Fageol Motors, Inc.*, 544 P.2d 20, 23 (1975).

Valve gave the PC Gamers no meaningful choice. The Updated SSA was imposed through an adhesive contract, backed by Valve's overwhelming leverage, and presented after the PC Gamers had already paid for their Steam libraries and already invoked arbitration. Compl. ¶¶ 17, 55, 56–57, 59, 76–79, 113, 176. To reject the new forum clause, they had to give up access to thousands of dollars' worth of paid-for games. *Id*. ¶ 128, 176 and Ex. 4 § 9.C. Worse yet, Valve obtained PC Gamers' alleged assent by bypassing counsel while the parties were actively litigating against each other. *Id*., ¶¶ 78–79, 116, 118–120, 188. Those features—adhesion, forfeiture, and direct solicitation of represented adversaries—make the retroactive forum clause procedurally unconscionable.

> **a.  The Updated SSA Was Adhesive, And That Adhesive Structure Gives Valve's Purported Opt-Out Its Coercive Force.**

The updated SSA is a classic contract of adhesion. Valve drafted it. Valve controlled its terms. PC Gamers could not negotiate or alter it. And any user who wanted to keep using prior purchases had to accept Valve's form agreement on Valve's terms. *See Zuver*, 103 P.3d at 760. As this Court has already found, "[t]he

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

disparity in bargaining power between Valve and an individual consumer could hardly be greater." Dkt. 169 at 20.

Adhesion does not, by itself, establish procedural unconscionability. *See Adler*, 103 P.3d at 783–84. But Washington does not examine adhesion in isolation and then set it aside. It considers "all the circumstances surrounding the transaction," *Zuver*, 103 P.3d at 759, and adhesion is the circumstance that gives the rest of Valve's process its coercive force. A rejection mechanism that might be unremarkable between equals is something else when imposed by a company that controls the platform, dictates the terms, and holds the consumer's access to her paid-for library of content. That is why this Court treated Valve's adhesive contract and overwhelming bargaining power as the "backdrop" for the supposed choice Valve presented next. Dkt. 169 at 20. Against that backdrop, the choice Valve offered—accept the new forum clause or lose access to the consumer's entire paid-for Steam library—was no meaningful choice at all.

### b. Valve's Opt-Out Was Illusory Because Rejecting The New Forum Clause Required Consumers To Forfeit Their Paid-For Steam Libraries.

The choice previewed above was illusory. To reject the Updated SSA, consumers had to cancel their accounts or stop using them before November 1, 2024. But Valve's own documents did not clearly explain what rejection required. Section 8.B framed cancellation as the operative mechanism, while Valve's pop-up notices told users they could avoid the new terms by deleting their accounts or discontinuing use. Dkt. 169 at 20. That inconsistency left consumers to guess which

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

act would preserve their rights. To the extent any ambiguity remains, Washington law construes it against Valve as the drafter. *Adler*, 103 P.3d at 786.

But ambiguity was not the main problem. The main problem was the price of rejection. To say no to Valve's new forum clause, consumers had to abandon their Steam accounts—and with them, access to every game, license, entitlement, save-related feature, community connection, and other account benefit tied to those accounts. The forfeiture did not depend on account size. On "average" these PC Gamers have spent "a few thousand dollars each." Compl. ¶ 202. Beyond the games themselves, "All Steam users have a 'Steam Wallet' containing funds" up to "$2,000." *Id.* ¶ 128 and Ex. 4 (2023 SSA). And while accounts vary in size, the scope of the loss did not—the PC Gamers were being asked to forfeit **everything** they had purchased and all the funds stored in their wallet. An alleged choice to either (a) agree, or (b) delete or permanently stop using the account, with no refund and no transfer of licenses, is not a choice; its an ultimatum. *Id.* Ex. 4 § 9.C. Anything short of deletion or permanent discontinuance counted as acceptance. Dkt. 169 at 20–21.

And this is to say nothing of the investment of their lawyers. As alleged, to pursue their claims in arbitration, the PC Gamers' lawyers undertook a "$6.5 million investment" and secured "$10,129,000" in funding. Compl. ¶¶ 3, 15, n.6. According to Valve, not only must the PC Gamers' forfeit thousands in games, the millions invested by their counsel in filing fees, experts, attorneys, and the software

CONSUMER-DEFENDANTS' MOTION TO DISMISS
AND/OR JUDGMENT ON THE PLEADINGS – Page 14

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

infrastructure to pursue claims repeatedly, individually under the 2023 SSA must go to waste as well.

That was not meaningful choice. It was a forced election. Consumers could keep the Steam libraries they had already paid to build, or they could keep the arbitration rights they had already invoked. Valve structured the update so they could not keep both.

Valve points to Ryan Lally, an original plaintiff who gave up his account to preserve his arbitration rights. But Lally does not prove that Valve offered a meaningful choice. He proves the opposite. To keep his chosen forum, he had to permanently surrender access to the Steam library he had paid for. And the meaningful-choice inquiry is not measured against a sophisticated named plaintiff willing to absorb an extraordinary loss. It is measured against an ordinary consumer. *Tadych*, 519 P.3d at 204.

The problem is even sharper for the Consumer-Defendants whom Valve claims assented by inaction—by failing to cancel before a deadline they may never have seen or understood. Silence in response to a coerced ultimatum is not assent. And Valve cites no authority for the proposition that consumers manifest assent to surrender accrued legal rights by continuing to access paid-for licenses they already hold. Washington law points the other way. *See Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1221 (9th Cir. 2019).

CONSUMER-DEFENDANTS' MOTION TO DISMISS
AND/OR JUDGMENT ON THE PLEADINGS – Page 15

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

**c.      Valve's "Video Games Are Nonessential" Argument Misstates Both Washington Law And The Choice Valve Actually Imposed.**

Valve argues that the PC Gamers had meaningful choice because video games are a nonessential pastime: anyone unhappy with the Updated SSA could simply stop playing. That argument fails for three independent reasons. It is not Washington law. It does not fit the California cases Valve invokes. And it misdescribes the choice Valve imposed.

The California rule Valve invokes is a narrow gloss on the oppression component of California procedural unconscionability. It turns on the availability of alternative sources from which to obtain the desired service defeats any claim of oppression, because the consumer has a meaningful choice. *Freeman v. Wal-Mart Stores, Inc.,* 111 Cal. App. 4th 660, 670 (2003). From that premise, Valve quotes *Belton* out of context for the proposition "when the challenged term is in a contract concerning a nonessential recreational activity, the consumer always has the option of simply forgoing the activity." *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1245–46 (2007) (holding no affirmative duty to offer expanded cable tiers in all neighborhoods, in part because "Plaintiffs did not lack meaningful choice, including obtaining the same service for free over the Internet or radio airwaves, or simply forgoing the nonessential recreational activity.")

Washington has adopted no such categorical rule. Washington asks whether, under "all the circumstances surrounding the transaction," the weaker party lacked meaningful choice. *Zuver*, 103 P.3d at 759–60; *Adler*, 103 P.3d at 781–82; *Burnett*,

CONSUMER-DEFENDANTS' MOTION TO DISMISS
AND/OR JUDGMENT ON THE PLEADINGS – Page 16

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

470 P.3d at 495. The inquiry is contextual, not categorical. No Washington appellate court has held that procedural unconscionability categorically disappears whenever the product is recreational, and this Court should not create that exception to rescue Valve from the forum it originally invoked.

Valve's cases also do not fit on their own terms. Each involved a forward-looking decision whether to participate in a recreational service—not a demand that consumers forfeit valuable purchases already made. In *In re iPhone Application Litigation*, the activity was downloading free or trivially priced apps from a free App Store; the court's examples were "Angry Birds" and "Plants versus Zombies," and consumers had "alternatives to the iDevices." 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011). In *Bassett v. Electronic Arts*, the arbitration clause governed "EA Online," an optional feature "that only some consumers will choose to activate" and EA disabled only the online features "of all but two of the products." 2015 WL 1298644, at *5, *9 (E.D.N.Y. Feb. 9, 2015). In both cases, walking away meant declining to begin or continue an optional recreational activity. Neither case involved a consumer forced to surrender an entire paid-for library and wallet funds to preserve an accrued legal right.

That distinction is dispositive. The PC Gamers were not deciding whether to start playing video games. They had already engaged. They had already paid for numerous other products. And they had already invoked arbitration. Valve's choice was not "play or do not play." It was: forfeit your entire Steam library, with no

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

refund and no transfer, or accept a new forum clause and lose the arbitration rights you have already exercised.

Nor does the alternative-sources rationale survive these facts. A consumer can allegedly buy future games somewhere else.[3] But no competitor can restore the Steam library Valve threatened to cut off. Steam is a closed ecosystem. The premise that made forgoing meaningful in *Freeman* and *iPhone*—a substitute source for the same service—does not exist here.

Valve's remaining authorities do not bridge the gap. *Leong v. Square Enix* involved cancellation of game accounts after the consumer failed to pay a monthly subscription he had agreed to at the outset; the agreement disclaimed ownership in game data, and the court found nothing "shocking" about cancelling the accounts of nonpaying users. 2010 WL 1641364, at *7–*8 (C.D. Cal. Apr. 20, 2010). This case is different. The forfeiture here was triggered by no breach and no nonpayment. It was triggered only by a consumer's refusal to surrender a legal right mid-litigation.

*Adobe Systems Inc. v. Christenson*, 809 F.3d 1071 (9th Cir. 2015), is farther afield. It concerns the first-sale defense and the burden of proving a license rather than a sale in a downstream-resale dispute. *Id*. at 1077–78. It is not a meaningful-choice case. And if Valve invokes *Adobe* to argue that Steam games are "licensed, not sold," the label does not answer the unconscionability question. Meaningful

---

[3] Because of the standard on a motion to dismiss, this allegation is taken as true—but certainly is not. Over 90% of PC game titles are available **only** on Steam.

CONSUMER-DEFENDANTS' MOTION TO DISMISS
AND/OR JUDGMENT ON THE PLEADINGS – Page 18

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

choice turns on practical economic coercion, not formal title. A paid-up license to thousands of dollars' worth of games is a valuable interest. Threatening its forfeiture negates choice.

Valve cites no case holding that a consumer may be forced to forfeit an entire paid-for portfolio of perpetual software licenses to preserve a legal right already invoked—or that the choice remains meaningful because the underlying product is recreational. The recreational-activity cases address people deciding whether to play. Valve confronted the PC Gamers with something different: give up your Steam libraries or give up your pending arbitrations. Washington law does not treat that as meaningful choice.

### d.     Valve Bypassed Counsel To Obtain A Litigation-Ending Amendment From Represented Adversaries.

Valve's method of obtaining assent creates an independent procedural defect. PC Gamers were not anonymous consumers clicking through a routine update. They were Valve's adversaries in active arbitrations. They were represented by counsel of record. And they were litigating against Valve when Valve rewrote the SSA to change the forum for those pending disputes.

A litigant that wants something from a represented opponent ordinarily communicates through counsel. Valve did the opposite. It drafted an amendment designed to end the pending arbitrations and pushed that amendment directly to represented parties through an in-platform prompt with a single button marked "Agree." Dkt. 169 at 22.

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Courts have repeatedly refused to reward that tactic. The Eleventh Circuit found no meeting of the minds where a drafter mailed a "purportedly court-evicting" amendment to a litigant it knew was "actively represented by counsel as to the very issues raised in the amendment." *Dasher v. RBC Bank (USA)*, 882 F.3d 1017, 1021–22 (11th Cir. 2018). The Sixth Circuit refused to read an updated arbitration agreement to reach a pending suit, relying in part on counsel's role under Model Rule 4.2. *Russell v. Citigroup, Inc.*, 748 F.3d 677, 680–81 (6th Cir. 2014). And a court in this District, facing the same type of tactic, called direct solicitation of a represented adversary's dispute-resolution rights "a poor (if not unethical) practice" that is "fundamentally and manifestly unfair, and contrary to public policy." *Grant v. T-Mobile USA, Inc.*, No. 2:23-cv-01946-MJP, 2024 WL 3510937, at *6 (W.D. Wash. July 23, 2024).

Valve's answer, *SCPS LLC v. Kind Law*, No. CV 25-3255-MWF (SSCx), 2026 WL 96898 (C.D. Cal. Jan. 8, 2026), does not help. That court distinguished *Dasher* and *Russell* as formation cases because the amendments there were ambiguous about whether they reached pending disputes. But formation is not the issue here. The question is whether Valve obtained assent through a procedurally fair process. It did not. *SCPS* answers a different question.

> **e.      Taken Together, Valve's Adhesive Form, Forfeiture-Based Opt-Out, And Around-Counsel Solicitation Establish Procedural Unconscionability On The Face Of Valve's Own Pleading.**

These are not isolated defects. They are mutually reinforcing features of the same process: Valve used its superior leverage to extract a new forum clause from

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

individuals it was already litigating against, after those individuals had paid for their Steam libraries and invoked arbitration.

The SSA was adhesive. The opt-out required consumers to give up their entire Steam accounts to reject the new clause. And Valve routed the amendment directly to represented adversaries while their arbitrations were pending. Washington law requires courts to consider those circumstances together. *Zuver*, 103 P.3d at 759. Considered together, those circumstances establish that the retroactive forum clause is procedurally unconscionable as applied to these Consumer-Defendants. This Court already recognized that conclusion at the preliminary-relief stage. Dkt. 169 at 23. On the pleadings, the same legal failure defeats Valve's claim as a matter of law and independently warrants dismissal or judgment on the pleadings.

2.     **The Updated Forum-Selection Clause Is Substantively Unconscionable as Applied Retroactively to Consumer-Defendants' Pending Arbitrations.**

Under Washington law, a contract term is substantively unconscionable when it is one-sided, overly harsh, or produces an unfair result. *Adler*, 103 P.3d at 780–81. The inquiry focuses on the term's practical effect, including whether it impairs existing statutory rights and whether it benefits the drafter without a corresponding benefit to the affected party. *Tadych*, 519 P.3d at 202–04.

That is this case. Valve seeks to use the updated clause retroactively to terminate arbitrations that Consumer-Defendants had already filed, litigated, and in some cases carried to final hearings or awards. Compl. ¶¶ 17, 19, 76, 185–86,

CONSUMER-DEFENDANTS' MOTION TO DISMISS
AND/OR JUDGMENT ON THE PLEADINGS – Page 21

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

197. As applied that way, the clause burdens only Consumer-Defendants, threatens timely filed statutory claims, was never bargained for, and gives Consumer-Defendants nothing they did not already have.

### a. The Retroactive Application Is One-Sided.

The updated forum-selection clause requires "all disputes and claims" between Valve and Steam users, including claims that arose before the Current SSA, to proceed exclusively in court. Applied prospectively to claims accruing after formation, that provision may be ordinary. Applied here, it is not. It terminates arbitrations PC Gamers commenced in July 2023 and filed beginning October 2, 2023, after Valve had required Steam users to arbitrate their disputes.

The practical effect is not a neutral change of forum. Consumer-Defendants lose the forum they invoked, the work already performed there, the expense already incurred, and—in advanced cases—the benefit of merits hearings or awards. Valve loses nothing comparable. It is relieved only of continuing to defend in the forum it drafted, imposed, and invoked. As this Court has already explained, "[l]osing an accrued right is not the same as shedding a cost one undertook to pay," and a term that does the former to consumers while doing the latter for the drafter is one-sided in operation. Dkt. 169 at 24. Washington law condemns that sort of asymmetry. *See Tadych*, 519 P.3d at 204; *Gandee*, 293 P.3d at 1201.

### b. The Retroactive Application Threatens Consumer-Defendants' Statutory Claims, Not Merely Their Forum.

The retroactive forum switch threatens the statutory claims themselves. Consumer-Defendants' underlying claims arise under the Sherman Act, 15 U.S.C.

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

§§ 1, 2. They filed those claims in arbitration beginning October 2, 2023. If the updated forum-selection clause is enforced retroactively, Consumer-Defendants must abandon those arbitrations and refile in court. Whether the time spent in arbitration preserves their claims depends on tolling—a question this Court found "contested and unsettled." Dkt. 169 at 25.

That uncertainty is itself a substantive burden. At oral argument on the preliminary-injunction motion, Valve represented that claimants who reached a final merits award in arbitration were "out," with no tolling. *Id*. Thus, enforcement would not merely move Consumer-Defendants from arbitration to court. It would force them to stake timely filed, accrued antitrust claims on an unresolved tolling question, with no assurance that claims already litigated to or near award would survive.

Washington courts have repeatedly refused to enforce terms that curtail statutory rights. In *Adler*, the Washington Supreme Court held substantively unconscionable an arbitration term that shortened the limitations period for statutory discrimination claims to 180 days. 103 P.3d at 787–88. In *Gandee*, the court held unconscionable a provision that shortened a four-year statutory period to thirty days. 293 P.3d at 1201–02. And in *Tadych*, the court refused to enforce a contractual limitation that effectively abolished a homeowner's six-year statutory right. 519 P.3d at 203–04. The retroactive application here is more severe. It does not merely shorten the time to sue; it cuts off live, timely filed Sherman Act claims

CONSUMER-DEFENDANTS' MOTION TO DISMISS
AND/OR JUDGMENT ON THE PLEADINGS – Page 23

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

while Consumer-Defendants are actively litigating them in the very forum Valve required.

### c. The Updated Clause Gives Consumer-Defendants No Corresponding Benefit.

Valve alleges Consumer-Defendants remain free to proceed in court, including through the putative class action in *Wolfire*. But benefit is measured from the affected party's perspective. *Tadych*, 519 P.3d at 204. These Consumer-Defendants are not future claimants deciding where to file. They had already filed individual arbitrations, participated in merits proceedings, and in some cases reached final hearings or awards.

For them, "access to court" is not a new benefit. It is the price Valve demands for abandoning what Consumer-Defendants have already built in arbitration. Nor can Valve claim credit for removing the very class waiver and arbitration clause it previously imposed. As this Court put it, "[a] party cannot strip a right, compel its adversaries to proceed without it, and then claim credit for handing it back on the condition that they abandon what they have already built." Dkt. 169 at 26.

### d. The Absence Of Bargaining Confirms The One-Sided Result.

The lack of negotiation also matters. Not as a separate procedural-unconscionability argument, but because it confirms the substantive imbalance. *Tadych* directs courts to consider which party drafted the term, the parties' sophistication, and whether the challenged term was separately negotiated. 519 P.3d at 204.

CONSUMER-DEFENDANTS' MOTION TO DISMISS
AND/OR JUDGMENT ON THE PLEADINGS – Page 24

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Valve drafted the user agreement and every amendment to it. Steam users could not negotiate the updated forum-selection clause, much less its retroactive reach. Nor did assent reflect any individualized bargain. Valve alleges that 454 Consumer-Defendants accepted the updated agreement by clicking through the pop-up notice, the purchase-screen checkbox, or both. It alleges that the remaining 118 accepted because they did not delete or discontinue use of their Steam accounts by Valve's November 1, 2024 deadline. Valve's own notices told users that the updated agreement would become effective when they made purchases, funded their Steam Wallets, or otherwise accepted it—and otherwise would become effective on November 1, 2024 unless they deleted or discontinued use of their accounts.

That is not bargaining. It is a unilateral amendment imposed by a sophisticated platform on individual consumers—some while buying new products, others by mere failure to abandon their accounts before Valve's deadline. That matters here because the term did not merely govern future transactions. It reached backward to strip Consumer-Defendants of the arbitration forum they had already invoked. A retroactive, forum-stripping provision imposed through purchase clicks and deadline-based default is not the product of bargain; it is the one-sided result Washington unconscionability law exists to prevent.

**B.    Equity Prevents Valve From Rewriting Its Way Out of Arbitration**

Valve wanted arbitration until it did not. It had the right and opportunity to litigate these antitrust claims in court. Instead, it compelled arbitration, litigated

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

there for years, and held Consumer-Defendants to the forum it wrote into its own user agreement. Only after that forum produced results Valve disliked did Valve amend the SSA and argue that no agreement to arbitrate exists.

The Court has already rejected Valve's retroactive forum clause as unconscionable. Dkt. 169 at 27. But Valve's theory fails for three additional reasons. Valve waived any right to insist on court. Valve is equitably estopped from disowning the agreement Consumer-Defendants relied on. And Valve is judicially estopped from reversing the position on which it prevailed. Each doctrine independently defeats Valve's attempt to convert a failed arbitration strategy into a jurisdictional defect.

### 1.      Valve Waived Any Argument That These Disputes Belong in Court Rather Than Arbitration

Valve had the right to litigate these antitrust claims in court. It chose not to. Instead, Valve invoked the arbitration agreement, compelled the claims into arbitration, and litigated there for years. It cannot now reverse course and argue that the same disputes must be resolved in court because arbitration no longer serves its interests.

The governing rule is straightforward. In *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), the Supreme Court held that waiver of an arbitration-related right follows ordinary waiver principles and does not require a showing of prejudice. *Id.* at 417. In this Circuit, waiver requires two things: knowledge of the right and conduct inconsistent with that right. *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016). Valve satisfies both.

CONSUMER-DEFENDANTS' MOTION TO DISMISS
AND/OR JUDGMENT ON THE PLEADINGS – Page 26

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Valve knew of the right it now asserts. When the *Wolfire* action was filed, Valve could have litigated the antitrust claims in federal court. It did not. Valve instead invoked the original SSA, relied on the arbitration clause it drafted, and obtained an order compelling the claims to arbitration. *See Wolfire*, 2021 WL 4952220. That choice matters. A party that asks a federal court to send claims to arbitration necessarily knows it had a judicial forum available and chose not to use it.

Valve then acted inconsistently with any right to insist on disputes being resolved in court. It did not merely preserve an objection while arbitration proceeded. It required arbitration, participated in arbitration, pressed arguments before arbitrators, appeared at hearings, and sought the benefits of the arbitral forum, including confirmation of favorable awards. Compl. ¶¶ 63–65, 198–200, 203–204, n.9; *see also* Dkt. 169 at 10. That conduct cannot be reconciled with Valve's current position that these disputes belong in court and that no agreement authorized the arbitrators to proceed to final awards.

The Updated SSA does not cure the waiver. It confirms Valve's about-face. After compelling arbitration and litigating there, Valve unilaterally amended its user agreement to prefer a court forum going forward and now tries to use that amendment to escape the forum it previously demanded. But a party cannot waive a judicial forum, test arbitration for years, and then revive the court forum by rewriting its own form contract. Arbitration cannot be mandatory when Valve

wants to compel it and nonexistent when Valve wants to escape it. *Morgan* and *Martin* foreclose Valve's litigation-driven reversal.

### 2. Equitable Estoppel Bars Valve From Disowning the Agreement It Induced Consumer-Defendants to Rely On

Equitable estoppel bars the same about-face. Valve cannot induce Consumer-Defendants to arbitrate, benefit from that reliance, and then deny the agreement that produced it. The Ninth Circuit applies state-law estoppel principles in this setting. *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013); *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013). Under Washington law, a party that takes a position and induces reliance cannot reverse course to the other party's detriment. *Saunders v. Lloyd's of London*, 779 P.2d 249, 252 (Wash. 1989).

Valve took the position that arbitration was the required forum. The agreement Valve drafted required users to resolve covered disputes through individual binding arbitration. Valve then acted on that position in court by compelling the *Wolfire* consumer claims to arbitration. It reinforced the same position before the arbitrators through letters, motions, and hearings. As late as September 10, 2024, Valve was still telling arbitrators that the 2023 agreement "governs Valve's relationships with Claimants and is enforceable." Dkt. 95-1 at 17.

Consumer-Defendants relied exactly as Valve intended. They filed arbitration demands, paid AAA fees, retained counsel, built the capacity to litigate hundreds of parallel proceedings, briefed issues, appeared for hearings, and in many cases carried proceedings to final hearings or awards. Dkt. 169 at 10. Valve

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

reinforced that reliance for more than a year by litigating under the agreement and urging arbitrators to enforce it. The reliance was not merely foreseeable. Valve invited it.

The detriment is equally clear. If Valve may now deny the agreement, Consumer-Defendants lose the awards they obtained, the fee protections they invoked, the forum Valve required, and years of work and expense. They would be forced to start over in court, where Valve could press new motions to dismiss, stay, or delay. Estoppel exists to prevent that kind of bait-and-switch. Having led Consumer-Defendants into arbitration, Valve is estopped from arguing that no agreement to arbitrate exists.

### 3.    Judicial Estoppel Bars Valve From Reversing the Position on Which It Prevailed

Judicial estoppel independently bars Valve's new position. The doctrine prevents a party from prevailing on one position and later taking the opposite position to gain another advantage. *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001). The Supreme Court recently reaffirmed that judicial estoppel is an equitable doctrine that protects the integrity of the judicial process and requires attention to the totality of the circumstances. *Keathley v. Buddy Ayers Constr., Inc.*, No. 25-6, 2026 U.S. LEXIS 2465, at *5–8 (U.S. June 11, 2026). Washington law reflects the same principle: a party cannot treat a contract as valid in one proceeding and a nullity in another. *Hardgrove v. Bowman*, 116 P.2d 336, 337 (Wash. 1941).

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Valve has repeatedly done exactly that. It told courts and arbitrators that each claimant was bound to arbitrate individually under the 2023 SSA. It prevailed on that position by compelling arbitration in Wolfire and then litigating the resulting arbitrations under that agreement. And when Valve won arbitrations, it treated the same agreement as valid and enforceable by asking the King County Superior Court to convert those awards into judgments. *See, e.g., Valve Corp. v. Ackley*, Case No. 25-2-32835-0 SEA (King County Super. Ct.) (entry of final judgment as to at least 20 Consumer-Defendants); *see also Valve Corp. v. Gonzales*, No. 26-2-15230-6 SEA (motion to confirm filed May 7, 2026). One day after moving to confirm those awards, Valve dismissed those same Consumer-Defendants from this action. *See* Dkt. 118.

Valve now says the opposite. It contends that no agreement to arbitrate exists, that the arbitrators lacked authority, and that any final award against Valve cannot stand. That about-face is precisely what judicial estoppel forbids.

All three *New Hampshire* considerations point the same way. First, Valve's positions are clearly inconsistent. Arbitration was mandatory and enforceable when Valve sought to compel arbitration and confirm favorable awards, but supposedly unauthorized now that Valve seeks to avoid unfavorable ones. Second, Valve prevailed on its earlier position. It compelled arbitration in *Wolfire*, litigated under the 2023 SSA, and secured judicial confirmation of at least 20 arbitration awards—relief that necessarily depended on an enforceable agreement to arbitrate. Third, Valve's reversal would give it an unfair tactical advantage while imposing a

CONSUMER-DEFENDANTS' MOTION TO DISMISS
AND/OR JUDGMENT ON THE PLEADINGS – Page 30

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

corresponding detriment on Consumer-Defendants, who spent years litigating in the forum Valve required.

Judicial estoppel keeps litigation from becoming a moving target. Valve chose arbitration, prevailed on that choice, enforced favorable awards, and held Consumer-Defendants to the arbitral forum it selected. It cannot now declare that no agreement to arbitrate exists to undo the results it dislikes. The Court should hold Valve to its word in *Wolfire* and in the King County confirmation proceedings, and deny any relief based on Valve's contrary position.

## C.      Valve Should Not Get a Third Chance to Plead the Same Defective Theory

Leave to amend is not automatic. A court may deny leave when the plaintiff has shown a "repeated failure to cure deficiencies by amendments previously allowed." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1183 (9th Cir. 2016) (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)). And the Court's discretion to deny leave is "particularly broad" when the plaintiff has already amended its complaint. *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004) (quoting *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002)).

That is this case. Valve already had an opportunity to amend after the Court struck its nearly identical petition. But even taking the amended allegations as true, Valve's pleading establishes as a matter of law that Valve gave PC Gamers no meaningful choice in assenting to the Updated SSA—the defect at the center of its claims. Nor has Valve pleaded around the equitable doctrines that bar parties

from misleading their opponents and the Court. Another amendment would not cure those defects; it would only give Valve a third chance to plead a theory it has already failed to plead. The Court should deny any request for further leave to amend.

## V. CONCLUSION

For the above reasons, PC Gamers respectfully request that the Court dismiss Valve's complaint with prejudice and without leave to amend and/or enter judgment on the pleadings.

DATED this 18th day of June, 2026.

BAILEY DUQUETTE P.C.

By: */s William R. Burnside*
William R. Burnside, WSBA #36002
800 Fifth Ave, Suite 101-800
Seattle, Washington 98104
T: 206.353.8021
E: will@baileyduquette.com

BUCHER LAW PLLC

William Ward Bucher IV
(*pro hac vice* admitted)
350 Northern Blvd, STE 324-1519
Albany, NY 12204-1000
Tel. 202.997.3029
E: will@bucherlaw.com

*Attorneys for Consumer-Defendants*

*I certify that this motion contains less than 8,400 words per Local Rules W.D. Wash. LCR 7e(4).*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I caused a true and correct copy of the foregoing Certain Defendants' Motion to Dismiss And/Or Judgment on the Pleadings served upon counsel of record herein, as follows:

Blake Marks-Dias, WSBA No. 28169
1015 Second Avenue, Floor 10                    ☒ Via Electronic Service
Seattle, Washington 98104
(206) 625-8600 Phone
(206) 625-0900 Fax
E: bmarksdias@corrcronin.com

Michael W. McTigue Jr., *Admitted Pro Hac Vice*
Meredith C. Slawe, *Admitted Pro Hac Vice*
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
E: michael.mctigue@skadden.com
E: meredith.slawe@skadden.com

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Dated: June 18, 2026 at Seattle, Washington.

*s/ William R. Burnside*
William Burnside, WSBA No. 36002

CONSUMER-DEFENDANTS' MOTION TO DISMISS
AND/OR JUDGMENT ON THE PLEADINGS – Page 33

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869