HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALVE CORPORATION,

Plaintiff,

v.

THOMAS ABBRUZZESE, *et al.*,

Defendants.

Case No.  2:24-cv-1717-JNW

CONSUMER-DEFENDANTS' REPLY TO MOTION TO CONFIRM ARBITRATION AWARDS AND RESPONSE TO CROSS-MOTION TO VACATE

NOTED ON MOTION CALENDAR:
July 15, 2026

Consumer-Defendants Abed Balbaky, Mateus Cunha, Ajay Dalal, Joshua DePalma, Corbin Echevarria, Brett Flinn, Cole Hagan, Aleck Hernandez, Armando Martinez, Paul Mayer, Mark Mendel, Alexander Mishkevich, Conor Moschella, Robert Richelson, Gabriel Rodrigues, Matthew Ventures, Bernard Vignali, Robert Woolf, and Jake Wuebker ("Consumer-Defendants") through undersigned counsel, hereby reply to their motion to confirm arbitration awards and respond to Plaintiff Valve Corporation d/b/a Steam ("Valve") cross-motion to vacate.

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No.  2:24-cv-

Page 1

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

TABLE OF CONTENTS

I. Introduction..................................................................................................................3

II. Facts..........................................................................................................................4

III. Legal Standard.........................................................................................................7

IV. Argument.................................................................................................................8

    A.  Valve Accepted Arbitral Jurisdiction.............................................................8

    B.  Valve's 2025 Bad Faith Amendment..............................................................8

    C.  Valve's One-sided Amendment Does Not Affect the Award.......................10

        1. Valve's Participation Bars This Subsequent Challenge...................11

        2. Valve's Contract Update Does Not Oust Arbitral Jurisdiction........11

        3. Unconscionable in Formation and in Substance, the Update Is Void or Severable...................................................................................14

        4. Equity Precludes Valve's Attempt to Escape Arbitration................18

        5. Valve Relies on Straw Men, Not Binding Precedent.......................23

    D.  Valve Wasn't Denied Due Process—Nor In Arbitration Is Valve Entitled to It.................................................................................................................29

    E.  The Award Was Rational, Not Arbitrary......................................................32

V. Conclusion...............................................................................................................34

## I. INTRODUCTION

Valve's petition is as empty as it is audacious. Having chosen arbitration to avoid collective litigation, Valve now disowns the very forum it demanded after losing there. The FAA does not allow such relief based solely on regret. Instead, confirmation is mandatory unless a narrow statutory ground applies, and Valve identifies none.[1]

Valve's first argument—that Consumer-Defendants should have abandoned arbitration and refiled their antitrust claims in court—is senseless. Valve unilaterally updated its consumer agreement mere weeks before the award, then dismissed its own declaratory judgment action as to its previous amendment. It now offers no authority on why this new update binds Consumer-Defendants or affects the arbitrator's jurisdiction. This is not a declaratory judgment proceeding over tangential questions and Consumer-Defendants' assent to the previous update remains disputed. Here, the Court is tasked with nothing more than a statutory review of an award that stands on firm legal ground.

Valve next claims it was denied due process because the arbitrator did not comb through billing entries line by line. But arbitration is not designed to mimic a federal trial. The Supreme Court and the federal Circuits have made clear that arbitration favors efficiency, not procedural perfection. Valve's reliance on stray authorities about child-support disputes in Colorado underscores the frivolity of its position.

---

[1] Consumer-Defendants adopt and incorporate by reference herein Defendants' Response in Opposition to Plaintiff's Motion for a Preliminary Injunction. September 19, 2025, ECF No. 92; Consumer-Defendants adopt and incorporate by reference herein Defendants' Motion to Dismiss. June 18, 2026, ECF 175 (Consumer-Defendants' have addressed those arguments believed to be most pertinent in this Reply, but additional arguments are outlined in full in the incorporated Response and Motion to Dismiss).

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 3

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Finally, Valve insists the awards are "arbitrary and irrational" because it disagrees with them. It cites no authority, points to no legal error, and mistakes dissatisfaction for illegality. The award is reasoned, supported by the record, and squarely within the arbitrator's discretion.

In the end, Valve's petition is a stalling tactic, devoid of substance and designed to prolong a fight it already lost. The FAA does not tolerate endless litigation by sore losers. The Court should confirm the award and close this chapter for good.

## II. FACTS

Valve's Steam distributes PC games, which consumers are allegedly able to keep and play perpetually. Although users have accounts and Valve labels them as "subscribers," purchases are made in one-time payments for games. This process is like iTunes—pay once per song; not like Spotify—pay monthly for the whole library. Users who delete or lose their account lose their purchased games. These games often constitute thousands of dollars in purchases, and Valve is a monopolist in this market.

The Court is aware—and it is undisputed—that Consumer-Defendants' antitrust claims were subject to arbitration under a pre-2024 version of Steam Subscriber Agreement ("SSA"). *See* Dkt. 1, ¶ 10; Dkt. 2 at 11–19; *Wolfire Games, LLC v. Valve Corp.*, No. 2:21-cv-00563-JCC, 2021 WL 4952220 (W.D. Wash. Oct. 25, 2021).

In October 2023, Consumer-Defendants filed their demands for arbitration. *See* Dkt. 3 at 22–37. In that demand, Consumer-Defendants explained that they were proceeding pursuant to this Court's order in *Wolfire* and that they were in arbitration "at Valve's insistence." *Id.* at 25 n.4.

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 4

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

On September 26, 2024, Valve unilaterally amended the SSA (the "2024 amendment"). *See* Dkt. 1 ¶ 13.[2] Valve's sudden and unilateral 2024 amendment introduced a new forum-selection clause, which Valve describes as providing "for resolution of disputes in court, including pending disputes." Dkt. 1, ¶ 13. The clause reads:

> You and Valve agree that all disputes and claims between you and Valve (including any dispute or claim that arose before the existence of this or any prior agreement) shall be commenced and maintained exclusively in any state or federal court located in King County, Washington, having subject matter jurisdiction.

Dkt. 2 at 27, § 10.

Relying on that language, Valve objected to Arbitrator McSorley's jurisdiction via a letter requesting a stay of 24 individual arbitrations, including the 20 at issue, pending resolution of this Court's proceeding in *Valve v. Abruzze*, 2:24-cv-1717-JNW (W.D. Wash). Dkt. 3 at 39. On October 27, 2024, Arbitrator McSorley denied Valve's request in relevant part as follows:

> Despite its active participation in these arbitration proceedings, Respondent now seeks to remove these matters from arbitration, contending that there are two contracts governing its relationship with each of the Claimants with different dispute resolution clauses, and that, under *Coinbase, Inc. v. Suski*, 144 S. Ct 1186 (2024), such a conflict can only be resolved by a Court.

> These arbitrations do not present a situation to which *Coinbase* applies. Respondent's motion is DENIED. Unlike the situation in *Coinbase*, there is and was only one contract governing the relationship between the parties at the time the parties commenced these arbitrations and, for nearly a year, Respondent has participated actively in the arbitration proceedings. (It is important to note that Respondent has also not provided any evidence that any of these Claimants in fact has taken any step to indicate acceptance of the terms posted by Respondent at some point before September 27, 2024, raising a question of fact as to whether there is any second contract at all).

---

[2] The SSA authorizes two forms of amendment: mutual and unilateral. *See* Dkt. 2 at 17, § 8. Mutual amendments require "explicit consent to changes proposed by Valve." *Id*. § 8.A. Unilateral amendments are allowed only if Valve follows specific procedural formalities. *Id*. § 8.B. Valve did not follow these procedural formalities.

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 5

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Dkt. 3 at 43. Valve's allegation that it "defended itself in further proceedings under a full reservation of rights" is factually false. Valve didn't "reserve" its right to challenge jurisdiction—it invoked it. McSorley decided the issue, at Valve's request. Valve lost.

Valve alleges that Consumer-Defendants assented to the 2024 amendment by logging into the Steam platform, completing a purchase, or redeeming a Steam Key, on or after November 1, 2024, or by checking a box in a pop-up notice. Dkt. 2, ¶¶ 22–25.

On September 18, 2025, Valve updated the SSA again. Dkt. 2, ¶ 6 n.1 ("2025 amendment"). Valve, however, claims that "update did not modify the dispute resolution provision for U.S. customers and is not relevant to this petition." *Id*. Valve provides no facts regarding (i) whether it was a unilateral amendment or (ii) whether Consumer-Defendants assented to the 2025 amendment.

On October 9, 2025, April 21, 2026, and April 23, 2026, Arbitrator McSorely issued the final awards in Consumer-Defendants' arbitrations. Dkt. 3 at 52–66. She concluded that Valve unreasonably restrained trade in violation of Section 1 of the Sherman Act. Dkt. 3 at 56–59.

Many arbitrations are occurring in parallel. None apply the same procedures—for example, Valve prevailed in arbitrations before Arbitrator Saydah, who refused to enforce subpoenas for Valve's employees, resulting in a hearing with limited testimony on Valve's monopoly. Thus, on February 24, July 24, and September 24, 2025, Valve filed numerous petitions in Washington state court to confirm the awards which it *won,* while simultaneously dismissing those Respondents from its complaint before this Court, in which it had previously sought to *enjoin* those Respondents' arbitrations. *See Valve v. Abruzze,* 2:24-cv-1717-JNW (W.D. Wash), Dkts. 54, 75, 98.

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 6

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

### III. LEGAL STANDARD

Under Section 9 of the Federal Arbitration Act, the Court must confirm an arbitration award unless it is vacated, modified, or corrected as prescribed in §§ 10 or 11. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). The statute's command is mandatory: confirmation follows unless Congress has said otherwise. Judicial review of an arbitration award is "limited and highly deferential." *Haines v. Amazon.com Servs.*, 766 F. Supp. 3d 1120, 1124 (W.D. Wash. 2025). Legal or factual mistakes alone do not justify setting an award aside. *Id*. The party opposing confirmation bears the burden of proof. *ShaZor Logistics, LLC v. Amazon.com*, No. 24-CV-968-BJR, 2024 WL 4827533, at *3 (W.D. Wash. Nov. 19, 2024).

### IV. ARGUMENT

#### A.   Valve Accepted Arbitral Jurisdiction

On October 25, 2021, on Valve's motion, *this Court* ruled that any challenges to the arbitration clause *must* be decided by the arbitrator consistent with the SSA's delegation clause. *See Wolfire*, 2021 WL 4952220, at *2. As the Court explained, "AAA rules give an arbitrator 'the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.'" *Id.* (citing *Oracle Am., Inc. v. Myriad Group A.G.,* 724 F.3d 1069, 1074 n.1 (9th Cir. 2013)).

Consistent with that order, Valve submitted its arbitrability challenge to Arbitrator McSorley, who rejected it in a written ruling. Dkt. 3 at 43. Valve now offers no argument—let alone any authority—to contest that determination. Having invoked the delegation clause, litigated before the arbitrator, and lost on the very issue it asked her to decide, Valve is bound by the result. The Court's 2021 order requires it. The question of arbitrability has already been

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 7

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

decided by the proper decision-maker. Under the FAA, that ends the matter: the Court must enforce the award and deny Valve's petition to vacate at the threshold.

### B.      Valve's 2025 Bad Faith Amendment

Valve's 2025 amendment was a bad faith update to the parties' existing arbitration agreement. While the parties were still litigating whether Consumer-Defendants had assented to the 2024 amendment, the arbitration proceeded under the parties' prior agreement to arbitrate because the arbitrator correctly ruled that Valve's 2024 amendment did not divest her of jurisdiction. Valve then issued the 2025 amendment, the arbitrator issued the final award.

Valve now seeks to gain an advantage by claiming that Consumer-Defendants' alleged assent to the 2024 amendment necessarily carried over to the 2025 unilateral version. Valve provides no authority for this proposition, and this petition is not a declaratory judgment action as to the 2024 amendment. Instead, the 2025 amendment stands on its own as the allegedly controlling agreement when the arbitrator issued the award Valve now seeks to vacate. That unilateral update, aimed at reshaping the forum mid-arbitration, breaches the covenant of good faith and fair dealing that governs every contract.

Courts have said as much. In *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960 (2015), the defendant invoked a bylaw amendment clause to impose arbitration on claims already pending in court. Both the trial and appellate courts refused to allow it, holding that retroactively changing a forum clause exceeds the unilateral power to amend and breaches the implied covenant of good faith and fair dealing. *Id*. at 964, 969. The principle is straightforward: once a dispute begins, neither side may unilaterally manipulate contract terms to tilt the forum or the process. *Cobb* tried to add arbitration after litigation began; Valve tried to remove arbitration

after arbitration began. The distinction is rhetorical, not legal. Each undermines the integrity of the original bargain.

Washington law reaches the same conclusion. Every contract in this State carries an implied duty of good faith and fair dealing in performance and enforcement. *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569 (1991). That duty requires each party to preserve the other's benefit of the bargain—not to impose unilateral, material changes. *Betchard-Clayton, Inc. v. King*, 41 Wn. App. 887, 890 (1985), *review denied*, 104 Wn.2d 1027 (1985). And it forbids conduct that undermines the other side's reasonable expectations. *Metro. Park Dist. v. Griffith*, 106 Wn.2d 425, 437 (1986). Valve's 2025 amendment, issued while arbitration was pending, did all three and should be declared invalid and unenforceable.

In short, the arbitrator issued her award after Valve unilaterally issued the 2025 amendment—an amendment that purported to change the forum mid-arbitration. That was and remains bad-faith performance of the parties' prior, undisputed agreement to arbitrate. The forum was fixed by consent, the award lawfully rendered, and the arbitrator acted squarely within her authority. Valve's bad-faith amendment does nothing to alter these facts. The Court should deny Valve's petition to vacate on this ground alone.

### C.    Valve's One-sided Amendment Does Not Affect the Award

To the extent the Court wants to turn this into a declaratory judgment action as to the now allegedly superseded 2024 amendment, these principles apply.

Jurisdiction, once vested in the arbitrator, cannot be unmade by regret. A party that compels arbitration, consents to its authority, and litigates it cannot later rewrite the forum clause to escape an adverse result. Valve's midstream amendment violates the implied duty of good faith and fair dealing, lacks the explicit consent its contract demands, and is both procedurally

and substantively unconscionable. Equity and precedent align on the same rule: having chosen arbitration, participated fully, and lost, Valve cannot now revoke the jurisdiction of the arbitrator to whom it consented.

### 1.    Valve's Participation Bars This Subsequent Challenge

The Ninth Circuit has long made the point plainly: a party may not voluntarily submit to arbitration and then challenge the authority of the arbitrators to act. *Ficek v. S. Pac. Co.*, 338 F.2d 655, 657 (9th Cir. 1964). In *Fortune, Alsweet & Eldridge v. Daniel*, 724 F.2d 1355, 1357 (9th Cir. 1983), the court likewise held that it would be "unreasonable and unjust to allow [a party] to challenge the legitimacy of the arbitration process, in which [it] had voluntarily participated over a period of several months, shortly before the arbitrator announced her decision." This long-precluded tactic is exactly what Valve attempts here. Were it permissible, Valve would be allowed to confirm the awards it favors and vacate those it disfavors—a "heads I win, tails you lose" gambit the Ninth Circuit has squarely rejected. *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016). The Court should therefore reject Valve's petition outright as the very form of gamesmanship the FAA does not tolerate.

### 2.    Valve's Contract Update Does Not Oust Arbitral Jurisdiction

The SSA permits amendment in only two ways—by mutual agreement or by unilateral modification by Valve. Dkt. 2 at 17, § 8. Neither path leads where Valve hopes to go. Courts have repeatedly held that unilateral attempts to change the forum constitute bad-faith conduct. *See, e.g., Cobb*, 233 Cal. App. 4th 960 (holding that retroactive application of an arbitration clause to claims filed in court violated the implied covenant of good faith and fair dealing). Valve also constrained itself by requiring that any mutual amendment rest on "explicit consent"—a

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 10

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

term courts interpret to mean consent free of ambiguity. *In re Facebook, Inc., Consumer Privacy User Profile Litigation*, 402 F. Supp. 3d 767, 794 (N.D. Cal. 2019).

### a. A Unilateral Update to End Arbitration Breaches the Covenant of Good Faith and Fair Dealing

Any argument that Valve successfully amended the contract unilaterally fails under settled law. *See Cobb*, 233 Cal. App. 4th at 964, 969; *Badgett*, 116 Wn.2d at 569; *King*, 41 Wn. App. at 890; *Griffith*, 106 Wn.2d at 437. Valve's basis for enforcing the 2025 amendment is unclear, but to the extent it rests on a unilateral change, the amendment is invalid and unenforceable. The same holds true for the 2024 amendment. Any attempt to impose that version unilaterally violates the covenant of good faith and fair dealing and cannot stand.

### b. Explicit Consent Means Unequivocal Amendments

The SSA permits amendment only "by [Consumer-Defendants'] explicit consent to changes proposed by Valve." Dkt. 2-1, § 8.A. Although undefined, the term "explicit consent" has a precise legal meaning: consent that is express, clear, and unmistakable. *See EXPLICIT*, Black's Law Dictionary (12th ed. 2024) ("Expressed without ambiguity or vagueness; leaving no doubt."); *EXPRESS CONSENT*, Black's Law Dictionary (12th ed. 2024) ("Consent that is clearly and unmistakably stated."). "Explicit consent" means more than a click-through agreement pushed to millions of users containing vague and ambiguous terms, as Valve did here.

Courts in this circuit agree that such language requires more. They have interpreted "explicit consent" with rigor. In *Rosenow v. Facebook, Inc.*, No. 19-CV-1297-WQH-MMP, 2025 WL 951277 (S.D. Cal. Mar. 28, 2025), and *In re Facebook*, 402 F. Supp. 3d at 794, the courts held that actual consent—explicit or implied—requires clear notice and sufficient detail to inform

the user exactly what they are agreeing to. In other words, the terms must be "clear and unequivocal." *Rosenow*, 2025 WL 951277, at *14.

Against this backdrop, Valve offers no evidence that Consumer-Defendants explicitly agreed to its new terms or that they understood them to extinguish an arbitration already underway. To the contrary, the record clearly establishes the opposite: Consumer-Defendants continued using their Steam accounts and prosecuting their arbitration claims, with some even providing testimony at the arbitration hearing. At most, Valve's argument based solely on the existence of the updated SSA itself, which it pushed to millions of users with general language, falls short of the explicit consent its own contract demands.

The lack of explicit consent is stark against the backdrop of Valve's unethical choice to even make this offer to Consumer-Defendants directly, rather than through counsel. When a party is known to be represented in a proceeding, communications go through counsel. Yet Valve purports to have tendered to Consumer-Defendants directly a click-wrap form that upended their currently pending arbitrations that resulted in substantial awards in their favor. Not only was Valve's "consent' not explicit, it was certainly not explicit in the context of a litigation where decisions and offers are expected by a client to go through counsel. Consumer-Defendants had no reason to think their rights in arbitration were going to be affected by the notice presented to them, because they had the expectation all clients have that settlement and other legal offers will be conveyed through counsel.

A party that drafts a high bar for amendment must live by it—and propose clear and unequivocal language stating that acceptance of the amendment means withdrawing specific arbitration claims at issue. *Rosenow*, 2025 WL 951277, at *14. Valve's failure to secure that

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 12

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

consent means the 2024 amendment, by the very terms of its own contract, is ineffective and cannot disturb the arbitrator's jurisdiction or the final awards.

### 3. Unconscionable in Formation and in Substance, the Update Is Void or Severable

Even if the Court were to find that Consumer-Defendants somehow gave explicit consent to Valve's purported amendment, the new agreement cannot be enforced because it is both procedurally and substantively unconscionable. Washington recognizes two types of unconscionability for invalidating forum selection clauses: procedural and substantive. *McKee v. AT&T Corp.*, 164 Wn.2d 372, 396, 191 P.3d 845 (2008). Procedural unconscionability applies to impropriety during contract formation, while substantive unconscionability applies where a term is one-sided or overly harsh. *Nelson v. McGoldrick*, 127 Wn.2d 124, 131, 896 P.2d 1258 (1995). Either is sufficient to void an agreement. *Hill v. Garda CL Nw., Inc.*, 179 Wn.2d 47, 55, 308 P.3d 635 (2013). Both forms are present here.

### a. Valve's "Cancel-or-Lose-Everything" Tactics Show Procedural Unconscionability

Washington courts determine procedural unconscionability by examining the circumstances of formation—how the agreement was entered, whether the weaker party had a reasonable opportunity to understand its terms, and whether important terms were hidden in fine print or otherwise obscured. *Burnett v. Pagliacci Pizza, Inc.*, 196 Wn.2d 38, 54–55 (2020) (citing *Nelson v. McGoldrick*, 896 P.2d 1258, 1262 (Wash. 1995); *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 304 (2004)). A contract is procedurally unconscionable when a party with unequal bargaining power lacks a meaningful opportunity to review or negotiate the terms, rendering the result an adhesion contract. *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 348 (2004).

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 13

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Here, Consumer-Defendants—like the employee in *Burnett*—had no real choice or chance to review the terms before being bound. Valve's update was a non-negotiable clickwrap that demanded assent simply to keep using content they had already bought. Worse, Valve concealed its true intent: that Consumer-Defendants must abandon their ongoing arbitrations of antitrust claims. Only weeks later, when Valve moved to dismiss the arbitration, did that intent become clear. By then, Consumer-Defendants had been forced into supposed acceptance of general terms covering millions of others. Had Valve genuinely wished to resolve matters ethically, it would have contacted Consumer-Defendants' counsel under the rules of professional conduct—not delivered a stealth withdrawal through the Steam platform. *See, e.g., Grant v. T-Mobile USA, Inc.*, No. 2:23-CV-01946-MJP, 2024 WL 3510937, at *6 (W.D. Wash. July 23, 2024) ("the Court disapproves of T-Mobile directly asking Grant to retroactively waive her right to trial in a case that had already been filed, rather than making the request through her counsel. This is a poor (if not unethical) practice and should not continue."). Valve provided Consumer-Defendants no meaningful choice; it was a manufactured illusion of choice.

The opt-out provided by Valve, required consumers to give up their entire Steam accounts to reject the new clause. And Valve routed the amendment directly to represented adversaries while their arbitrations were pending. Washington law requires courts to consider those circumstances together. *Zuver*, 103 P.3d at 759. Considered together, those circumstances establish that the retroactive forum clause is procedurally unconscionable as applied to these Consumer-Defendants. This Court already recognized that conclusion at the preliminary-relief stage. Dkt. 169 at 23. On a motion to affirm a final award, the same legal failure defeats Valve's position as a matter of law.

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 14

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

More importantly, this case exemplifies a bait-and-switch carried out under overwhelming bargaining power. Valve, a proven monopolist, unilaterally changed the governing contract after compelling arbitration, hiding its new objective behind ambiguous language applied to millions of users. Such conduct embodies both oppression and surprise—the hallmarks of procedural unconscionability. *Burnett*, 196 Wn.2d at 54–55. Valve wielded its dominance to rewrite the rules in its own favor, leaving Consumer-Defendants with no meaningful opportunity to bargain or refuse. Even if they somehow agreed to the update, that assent was extracted under conditions so one-sided and coercive that the contract is procedurally unconscionable and unenforceable.

**b.      When One Side Can Rewrite the Deal, It Stops Being a Deal**

Washington law bars clauses that crush one side and favor the drafter. Substantive unconscionability tests the substance of a term—whether it is so one-sided or oppressive that equity cannot enforce it. *Burnett.*, 196 Wn.2d at 55; *Gandee v. LDL Freedom Enters.*, 176 Wn.2d 598, 603 (2013); *Tadych v. Noble Ridge Constr., Inc.*, 200 Wn.2d 635, 645–46, 519 P.3d 199 (2022); *Adler*, 153 Wn.2d at 344. It exists when a provision is so one-sided, harsh, or "monstrously calloused" that it shocks the conscience and confers unjustified advantage on the stronger party. *Adler*, 153 Wn.2d at 344–45; *Nelson*, 127 Wn.2d at 131. In *Burnett*, the Washington Supreme Court condemned an arbitration policy that forced employees through a multi-step internal procedure controlled entirely by the employer, calling it "so one-sided and harsh that it is substantively unconscionable." *Burnett*, 196 Wn.2d at 55 (quoting *Zuver*, 153 Wn.2d at 318). The doctrine guards against contractual schemes that, by design, let one party win by self-interested rules instead of merit.

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 15

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Valve's 2025 and 2024 amendments fit this mold. They were imposed unilaterally, after litigation had begun, on a take-it-or-lose-everything basis. The new forum-selection clause demands that Consumer-Defendants discard months of victorious effort, hundreds of thousands of dollars in awarded costs and fees, and refile their claims in federal court where they would have to roll the dice and hope to win their cases again. The amendments offer them nothing in return. The benefit runs one way—exclusively to Valve. Valve loses nothing comparable. It is relieved only of continuing to defend in the forum it drafted, imposed, and invoked. As this Court has already explained, "[l]osing an accrued right is not the same as shedding a cost one undertook to pay," and a term that does the former to consumers while doing the latter for the drafter is one-sided in operation. Dkt. 169 at 24. Washington law condemns that sort of asymmetry. *See Tadych*, 519 P.3d at 204; *Gandee*, 293 P.3d at 1201. That imbalance is not accident but design, the same kind of self-serving mechanism *Burnett* condemned: a two-step process that guarantees the drafter the upper hand. Consumer-Defendants had no voice, no real choice, and no way to keep what they had paid for without surrendering their rights to arbitration.

Washington courts have a name for that kind of maneuver—substantive unconscionability.

Washington courts have long condemned such tactics, where the stronger party rigs the process to run out the clock. *See Tadych*, 200 Wn.2d at 641; *Gandee*, 176 Wn.2d at 603; *Adler*, 153 Wn.2d at 344. In substance, Valve changed the rules mid-game to make sure only it could win. This act violates the protection of substantive unconscionability.

### 4.    Equity Precludes Valve's Attempt to Escape Arbitration

Valve seeks to undo the very arbitration it compelled, consented to, and contested. Equity forbids a second bite born of regret. Valve wanted arbitration until it did not. It had the

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 16

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

right and opportunity to litigate these antitrust claims in court. Instead, it compelled arbitrations, litigated there for years, and held consumer-Defendants to the forum it wrote into its own user agreement. Only after that forum produced results Valve disliked did Valve amend the SSA and argue that no agreement to arbitrate exists. Waiver, equitable estoppel, and judicial estoppel all say the same thing: a party cannot handpick its forum, enjoy its efficiency and informality, and then disown it once unfavorable decisions start coming in. The law locks Valve into the results of the forum it selected.

### a.    Valve Chose the Forum, and Now Objects to It: Waiver Ensures the Law Doesn't Work That Way

When consumers brought antitrust claims in federal court, Valve intentionally chose the arbitral forum. It requested that every issue, including arbitrability, be decided there—and consented to the arbitrator's jurisdiction over Consumer-Defendants' claims. *Wolfire*, 2021 WL 4952220. It cannot now reverse course and ask this Court to vacate the very award it sought in that forum.

In *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022), the Supreme Court rejected arbitration-specific rules requiring prejudice to find waiver. Waiver follows ordinary contract principles, not arbitration policy. Absent prejudice, waiver turns on two elements: knowledge of the right and inconsistent conduct. *Martin*, 829 F.3d at 1124. Valve satisfies both. There is no dispute Valve knew its rights—it could have defended all antitrust claims in federal court in 2021 or objected to the arbitrator's jurisdiction by the arbitral deadline. It did neither. Instead, it compelled arbitration, participated fully, and now seeks to vacate the arbitrator's award.

That course of conduct is textbook waiver—knowledge of a right followed by deliberate inconsistency. Having fully invoked and benefitted from the efficiency and informality of the

arbitral process, Valve cannot now claim that the forum it chose lacked authority to decide Consumer-Defendants' claims. *Morgan* and *Martin* foreclose that maneuver. Accordingly, the Court should conclude that Valve waived any right to challenge the arbitrator's jurisdiction to issue the final award.

### b. Equitable Estoppel Prevents Valve from Renouncing the Arbitration It Demanded

Equitable estoppel prevents a party from inducing reliance on one position only to abandon it when the outcome turns unfavorable. *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042 (9th Cir. 2009). The Ninth Circuit applies state-law estoppel principles in arbitration cases. *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009)); *accord Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013). Washington law follows the same rule: a party that adopts a position, induces reliance, and later reverses course to the other's detriment is estopped. *Saunders v. Lloyd's of London*, 113 Wn.2d 330, 336, 779 P.2d 249 (1989). Valve meets every element.

Valve first took the position that arbitration was the proper forum. It moved to compel arbitration of the antitrust claims, invoking the same forum-selection clause that Consumer-Defendants followed in filing their disputes. It told the Court—and the arbitrator—that all issues, including arbitrability, belonged before the arbitrator.

Consumer-Defendants relied on that position. They pursued arbitration under the SSA Valve compelled arbitration under, paid their filing fees, incurred hundreds of thousands in attorneys' fees and costs, and litigated through to final award in their favor. Valve likewise participated fully—filing briefs, attending hearings, and consenting to the arbitrator's

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 18

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

jurisdiction. Defendants' reliance was not only foreseeable; it was the direct result of Valve's own actions.

Now Valve reverses course. It claims that the amended versions of its agreement—issued while arbitration was ongoing—retroactively stripped the arbitrator of authority. That maneuver would erase the process Valve demanded and nullify the result it lost. Washington law does not tolerate such gamesmanship. *Saunders*, 113 Wn.2d at 336.

Equitable estoppel bars precisely this kind of bait-and-switch. Having led Consumer-Defendants into arbitration and consented to litigate there, Valve cannot now disclaim the forum it selected merely because the result displeases it. The doctrine holds fast: equitable estoppel locks Valve to the position it embraced and prevents it from vacating the award issued through the very process it compelled.

### c. Judicial Estoppel Precludes Valve from Reversing Its Prior Litigation Position

Judicial estoppel is the law's way of saying enough is enough. It prevents a party from shifting positions to suit the moment—a principle the Supreme Court described as essential to protecting the integrity of the judicial process. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (judicial estoppel "prohibit[s] parties from deliberately changing positions according to the exigencies of the moment"). The doctrine is rooted in equity and applies with particular force when a litigant seeks to profit from inconsistent representations made to different tribunals. *Id*. Washington law is no different: a party cannot treat a contract as a nullity in one case and enforce it in another. *Hardgrove v. Bowman*, 10 Wn.2d 136, 138, 116 P.2d 336, 337 (1941).

"A court may properly apply judicial estoppel when the following elements are shown: (1) a party asserts a position that is 'clearly inconsistent' with an earlier position; (2) judicial

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 19

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

acceptance of the inconsistent position would indicate that either the first or second court was misled; and (3) 'the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party.'" *Baldwin v. Silver*, 147 Wn. App. 531, 535, 196 P.3d 170, 172 (2008) (citing *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538–39, 160 P.3d 13 (2007)). All three elements are met here.

Valve has repeatedly taken the position both that the pre-2024 SSA was enforceable and that issues of arbitrability are to be decided by the arbitrator. Valve took that position before this court. *Wolfire*, 2021 WL 4952220. Valve took that position in front of the arbitrators. Valve took that position in front of Washington state courts in confirming the awards of individuals who abirritations were awarded *after* the 2024 amendment. *Valve v. Abruzze*, 24-1717-JNW, Dkts. 54, 75, 98.

If Valve is correct that its unilateral term change means awards under the pre-2024 and 2025 agreements must be vacated, then Valve necessarily mislead the Washington state court when it claimed post-2024 term change awards should be confirmed. If Valve is correct that the issues of arbitrability actually need to be decided by this court, then it misled this court when it argued "whether this dispute falls within the scope of the SSA's arbitration agreement (the second requirement) is a question of arbitrability delegated to the arbitrator." *Wolfire*, Dkt. 35. If Valve is correct that the pre-2024 doesn't govern, then it misled Arbitrator McSorley when it initially agreed to her jurisdiction to resolve the parties' dispute.

The unfair detriment on Consumer-Defendants is enormous. Valve suggests they must forfeit an award of "more than $1.4 million" because they litigated their claims, and Valve's belated assertion that their claims were not arbitrable, in the forum Valve has repeatedly told

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 20

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

tribunals those disputes must be litigated in (*Valve v. Abruzze*, 24-1717-JNW, Dkt. 167). Valve's two-faced gambit is precisely the conduct judicial estoppel prevents.

Valve's litigation tactics are a case study in gamesmanship. Across years of litigation—from *Wolfire* to *Beer v. Valve*, and hundreds of consumer arbitrations—Valve insisted that the SSA required individual arbitration and deprived courts of any power to interfere on any issue. It compelled arbitration, resisted judicial oversight, and has even confirmed arbitral awards issued under that same agreement following its purported amendment. Having secured the benefits of that position, Valve now tells the opposite story. It claims the same arbitration clause is suddenly unenforceable and that its 2024 update authorizes the Court to vacate the very arbitrations it once demanded.

Judicial estoppel exists to prevent exactly this sort of misconduct. Having convinced courts and arbitrators that disputes under the SSA must proceed in arbitration, and must be confirmed once awarded, Valve cannot now invoke its 2024 or 2025 amendment to undo the ultimate result. Valve must be held to the word it gave this Court and others, or its litigation tactics will run amok. Enough is enough.

After years of insisting that arbitration was the exclusive forum under its own user agreement, including multiple times in Consumer-Defendants' own arbitrations, Valve must now stand by that position. The Court must hold Valve to its word. Judicial estoppel bars vacatur.

### 5.      Valve Relies on Straw Men, Not Binding Precedent

Valve leans on case law from across the country, but none of it fits these facts. Its lead citation—*Coinbase, Inc. v. Suski*—addressed a threshold question about which forum clause governs when two contracts conflict. The rest involve good-faith updates made before arbitration began or mutual assent reached at the outset of litigation. Not one decision supports what Valve

attempts here: using a self-serving contract update to revoke the jurisdiction of an arbitrator it consented to and defended before.

### a.     *Coinbase* Has Nothing to Do with This Petition

Valve leans heavily on *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024), but that decision addressed a different question—the "first question in any arbitration dispute," as the Court put it. *Id*. at 148. Valve's petition, by contrast, presents the opposite inquiry: the last question in any arbitration dispute—whether the award should be confirmed.

In *Coinbase*, the parties executed two separate contracts—one requiring arbitration of all disputes (including arbitrability) and another designating California courts as the forum. The Supreme Court held that when multiple facially valid agreements contain competing dispute⧠resolution clauses, a court must first decide which contract controls before enforcing either clause. *Id*. at 149–52. That narrow holding has no bearing here. The SSA is the only contract at issue, and it delegates all questions of arbitrability to the arbitrator. There is no competing agreement to choose between.

Valve agreed to arbitrate under that one agreement. It consented to the jurisdiction of Arbitrator McSorley—who presided over the case—and proceeded to defend itself in that forum for years. And Valve *compelled* arbitration under that agreement. Having invoked arbitration, participated fully, and lost, Valve now tries to recast *Coinbase* as a lifeline. But *Coinbase* has no application to these facts, and Valve has never provided a valid argument to the contrary. It plucks one line from *Coinbase* regarding whether parties agreed to arbitrate and acts as though that isolated phrase requires this Court to ignore every other principle of law to the contrary. That is not how the law works.

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 22

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

The Eighth Circuit's decision in *Lackie Drug Store, Inc. v. OptumRx, Inc.*, 143 F.4th 985, 998–99 (8th Cir. 2025), confirms the point. There, the court rejected an identical attempt to stretch *Coinbase* beyond its facts, explaining that *Coinbase* applies only when "parties have executed two contracts" with conflicting arbitration provisions. *Id*. Where, as here, there is just one contract containing a valid delegation clause, courts must send all issues to arbitration. *See Wolfire*.

Arbitrator McSorley recognized as much. In the arbitration, she rejected Valve's reliance on *Coinbase* as misplaced. Dkt. Dkt. 3 at 43. Valve's current position is simply a repackaged version of the same argument she already denied and functions as an impermissible direct appeal from that ruling. That is exactly what the Ninth Circuit forbids: "a party may not submit a claim to arbitration and then challenge the authority of the arbitrator to act after receiving an unfavorable result." *Fortune*, 724 F.2d at 1357 (citing *Ficek*, 338 F.2d at 655).

Even if *Coinbase* were read to require a court to decide whether to compel arbitration in this situation, that is what this court did. *Wolfire*, 2021 WL 4952220. Valve's argument is not only that *Coinbase* means this court must decide whether arbitration is appropriate, but that it must *decide again.* That Valve attempted to change its agreement to reverse its prior success does not entitle it to re-review of the legal question of delegation. To read *Coinbase* to mandate repeated court review following a successful motion to compel would invite *ad nauseum* litigation and deprive an order compelling arbitration any semblance of finality.

In short, *Coinbase* concerned two contracts competing for control. This case involves one contract Valve drafted, invoked, consented to, and lost under. The law does not allow Valve to transform *Coinbase* into an escape hatch from its own contract.

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 23

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

### b.   Valve's Out-of-Forum Cases Don't Bind and Don't Persuade

Valve leans on federal cases from across the country—not Washington—to argue that Consumer-Defendants' awards should be vacated based on its bad-faith update. Dkt. 1 ¶ 8; *id*. at 6 n.4. But those authorities highlight why Valve's position fails.

Start with *Bozek v. PNC Bank*, 2020 WL 6581491 (E.D. Pa. Nov. 10, 2020), *aff'd* 2021 WL 4240359 (3d Cir. Sept. 17, 2021). Valve quotes *Bozek* for the proposition that "an arbitrator exceeds her powers by issuing an award when the parties have no agreement to arbitrate." Dkt. 1 ¶ 8. But *Bozek* involved nothing like this case. It arose from a supposed arbitration launched in secret, before a panel of the claimant's acquaintances, under a one-sided contract of adhesion the other party never saw—and accompanied, as the court put it, by "pages of unintelligible legal jargon." *Id*. at 1, 3–5. The court rightly vacated that sham proceeding.

*Bozek* thus stands for the unremarkable principle that no one can be bound by an arbitration they neither agreed to nor participated in. Valve, by contrast, drafted the agreement, invoked it, and compelled arbitration. There was nothing clandestine about these proceedings— only an unfavorable result Valve now seeks to erase through similar obscure and unclear legal jargon.

*Dasher v. RBC Bank (USA)*, 745 F.3d 1111 (11th Cir. 2014) fares no better. Applying North Carolina law, the Eleventh Circuit held that when parties clearly express their intent to supersede a prior contract, the prior arbitration clause is displaced. *Id*. at 1123. Washington has no comparable rule. Timing also distinguishes *Dasher*: by the time the bank moved to compel arbitration, the prior agreement had already been terminated. *Id*. at 1126–27. Here, arbitration was compelled while Valve's clause remained in full force. Valve invoked that clause—and must live with it. Dasher offers no refuge.

*Pilon v. Discovery Commcn's, LLC* proves the same point. 769 F. Supp. 3d 273, 286 (S.D.N.Y. 2025). There, the court applied different state laws to two contracts—California law to the first, New York law to the second—and compelled arbitration under whichever contract each party accepted. *Id*. at 286–90, 294–98. Pilon turned on choice of law and mutual assent, not on any effort to enjoin an ongoing arbitration or divert it into court. It bears no resemblance to this case.

Valve next cites *Laster v. T-Mobile USA, Inc.*, No. 05CV1167DMS AJB, 2008 WL 5216255 (S.D. Cal. Aug. 11, 2008), *aff'd sub nom. Laster v. AT & T Mobility LLC*, 584 F.3d 849 (9th Cir. 2009), *rev'd sub nom. AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), *and amended in part*, No. 05CV1167 DMS WVG, 2012 WL 1681762 (S.D. Cal. May 9, 2012). Whatever vitality *Laster* once had vanished after *Concepcion*. In any event, *Laster* involved a good-faith update issued before arbitration began—not, as here, a bad-faith maneuver to oust an arbitrator's jurisdiction midstream.

*Enderlin v. XM Satellite Radio Holdings, Inc.,* No. 4:06-CV-0032 GTE, 2008 WL 830262 (E.D. Ark. Mar. 25, 2008), stands for the same narrow point: a party is bound to a good-faith update to an existing arbitration agreement. Valve's bad faith takes it outside even that limited rule. [3]

Finally, *McCumbee v. M Pizza, Inc.*, 2023 WL 2725991, (N.D. W. Va. Mar. 30, 2023), involved mutual assent reached within weeks of initiating litigation. There, most employees had already signed arbitration agreements; when the company discovered a few had not, it promptly

---

[3] Valve's reliance on *Goetsch v. Shell Oil Co.*, 197 F.R.D. 574, 577 (W.D.N.C. 2000) fails for the same reason that the agreement was amended by a good faith update to alter the rules of the arbitration.

obtained their consent, including plaintiff. *Id*. at 4–5, 14. *McCumbee* thus dealt with mutual assent achieved at the outset—not an eleventh-hour attempt to vacate an award after losing in arbitration it compelled.

All these cases share the same fatal flaws. They arose under different law, turned on mutual assent in the absence of bad faith, and never contemplated the kind of midstream reversal or post-loss vacatur Valve seeks here. None endorses revoking an arbitration clause after compelling its enforcement—or undoing a final award from the very forum Valve chose. Law and fairness alike lock Valve into the consequences of its own bargain.

### D.    Valve Wasn't Denied Due Process—Nor In Arbitration Is Valve Entitled to It

Valve next invokes Section 10(a)(3) of the FAA, which permits vacatur where an arbitrator "refuse[s] to hear evidence pertinent and material to the controversy" or otherwise engages in "misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). These grounds are extremely narrow because "[a]rbitration is not a perfect system of justice, nor it is designed to be." *Hoffman v. Cargill, Inc.*, 236 F.3d 458, 462 (8th Cir. 2001) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30–32 (1991)). "In the arbitration setting we have almost none of the protections that fundamental fairness and due process usually require." *Id*. at 462–63 (cleaned up).

Here, there is no allegation that the arbitrator refused to hear evidence or argument contesting an award of fees or even rejected Valve's preferred method of briefing. Valve's due process arguments contain no independent description of the December and February Consumer-Defendants' fee briefings procedure. It simply cross-references the Birenbaum/Vicente petitions,

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 26

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

which had a different fee briefing process than that for the December and February Consumer-Defendants.

In Birenbaum and Vicente, Arbitrator McSorley's August 9, 2025, order (Ex. A) directed the parties to address fees in post-hearing briefs by August 26, 2026, which both parties submitted. In the December and February McSorley proceedings, the arbitrator established a bilateral briefing process with express response rights for Valve:

**Scheduling Order No. 12 (Dec. 9, 2025, Ex. B)**: Set the post-hearing briefing schedule for the December Consumer-Defendants. Valve was to respond to Consumer-Defendants' motions by February 10, 2026.

**January 16, 2026**: Consumer-Defendants submit their fee declaration for December claimants.

**February 10, 2026**: Valve submits its response to Consumer-Defendants' January 16 fee declaration for December Consumer-Defendants.

**February 16, 2026**: Arbitrator McSorley issued a further scheduling order (Ex. C) for the February Consumer-Defendants, expressly providing: Consumer-Defendants' supplemental brief by March 6 and fee submission by March 9; Valve's response by March 16.

**March 9, 2026**: Consumer-Defendants submit the fee brief for February Consumer-Defendants.

**March 16, 2026**: Valve submits its response to Consumer-Defendants' March 9 fee request.

**March 20, 2026**: Valve submits its opposition to Consumer-Defendants' attorney fees.

Valve had, and exercised, its right to respond. The December and February Consumer-Defendants' fee procedure are not equal to the procedure in Birenbaum and Vicente. Valve's

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 27

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

attempt to import the Birenbaum and Vicente due process procedure into the McSorley cross-motion ignores that the two proceedings followed entirely different procedural paths.

Even if Valve hadn't been given the full opportunity for numerous briefs on the issue it asked for, the Ninth Circuit has "repeatedly held that arbitration is not governed by the federal courts' strict procedural and evidentiary requirements," and courts must be "mindful not to impose" those requirements on arbitration proceedings. *Astronics Elec. Sys. Corp. v. MAGicALL, Inc.*, No. 22-35645, 2023 WL 3451682, at *1 (9th Cir. May 15, 2023) (quoting *U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010)). Even if Valve would have preferred something other than simultaneous briefing on fees, a fair hearing need not be a perfect one. And nothing in the record suggests that Valve was deprived of a fair procedure.

The cases Valve invokes do not say otherwise. In *Move, Inc. v. Citigroup Global Markets, Inc.*, 840 F.3d 1152 (9th Cir. 2016), the issue was whether an award should be vacated after it was revealed that the tribunal's chairperson was a conman impersonating a retired lawyer. Its mention of ex parte evidence is dicta, drawn from *Totem Marine Tug & Barge, Inc. v. N. Am. Towing, Inc.*, 607 F.2d 649 (5th Cir. 1979), a 50-year-old case involving a gross due-process violation. There, an arbitrator telephoned one party's counsel to obtain a damages figure and used that figure in the award—without notice to or input from the opposing side. *Id*. at 650. That conduct bears no resemblance to what happened here.

### E.    The Award Was Rational, Not Arbitrary

Valve claims the arbitrator's award was irrational and arbitrary, warranting vacatur under § 10(a)(4) of the FAA. The Ninth Circuit has made clear that § 10(a)(4) sets a high bar— it is not enough to show that the arbitrator erred, or even seriously erred. *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 641 (9th Cir. 2010) (citing *Stolt-Nielsen S.A. v.*

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 28

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

*AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010)). Vacatur is proper only if the award is "completely irrational" or shows a "manifest disregard for the law." *ShaZor Logistics,* 2024 WL 4827533, at *3 (quoting *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997–98 (9th Cir. 2003)).

Valve has not come close to meeting that standard; the award is reasoned, cites controlling law, and rests on ample evidence.

Valve's only arguably relevant citation is *Briscoe Protective, LLC v. N. Fork Surgery Ctr., LLC*, 215 A.D.3d 956, 957–58, 188 N.Y.S.3d 113 (2023). There, a New York appellate court vacated an award after finding that the arbitrator granted attorneys' fees without any proof of hours worked or hourly rates—awarding fifty percent of the damages as fees with no record support. *Id*. That decision turned on the absence of any evidence whatsoever, not a misapplication of law or failure to allow objections to such evidence. Here, by contrast, Consumer-Defendants submitted affidavit support and entry-by-entry billing records, and Arbitrator McSorley reviewed them before issuing a reasoned decision.

*Briscoe Protective* also applied New York's domestic arbitration statute, N.Y. C.P.L.R. Art. 75, not the FAA. Under the FAA, the Ninth Circuit has emphasized that "neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award." *Ghayoori v. Cobra Trading, Inc.*, No. C25-0021 TSZ, 2025 WL 1519136, at *3 (W.D. Wash. May 28, 2025) (quoting *Kyocera*, 341 F.3d at 994). So even if *Briscoe Protective* were on point, it would not justify vacatur here.

At most, Valve's objections reduce to claims of legal error—which cannot sustain vacatur under § 10(a)(4). The Ninth Circuit requires far more: "the moving party must show that the arbitrator understood and correctly stated the law, but proceeded to disregard the same."

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 29

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

*Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir. 2009) (cleaned up). Valve makes no such showing. The record reveals a careful and reasoned decision, not a disregard for law or logic.

Moreover, Valve attacks the rates awarded to Consumer-Defendants as proof that Arbitrator McSorley's award was arbitrary and irrational. Valve's attack on the awarded fees and rates lacks merit and ignores the prevailing market rates of experienced litigators at top-tier firms. Large national firms routinely command substantially higher hourly rates for comparable complex litigation. For instance, partners at firms David Polk & Wardwell LLP and Debevoise & Plimpton LLP charge hourly rates up to $2,9354 and $2,800 respectively. Cover Sheet to the Second Interim Application of Davis Polk & Wardwell LLP for Compensation, *In re Spirit Aviation Holdings, Inc.*, No. 25-11897, ECF No. 892 (Bankr. S.D.N.Y Mar. 26, 2026); Cover Sheet to the Second Interim Application of Debevoise & Plimpton LLP for Compensation, *In re Spirit Aviation Holdings, Inc.*, No. 25-11897, ECF No. 888 (Bankr. S.D.N.Y Mar. 25, 2026). Junior associates bill up to $1845 per hour at Davis Polk and $1385 at Debevoise. *Id.* At Davis Polk law clerks were billed between $730 and $1,175 an hour, and legal assistants between $505 and $790. *Id.*

The fees awarded to Consumer-Defendants by Arbitrator McSorley fall comfortably at the lower end of the reasonable market spectrum for high-caliber representation. Valve's characterization of the awarded fees ignores counsel's specialized experience. For example, Will Bucher started his career at Debevoise. Mr. Bucher possesses elite institutional training that commands a premium in the legal market. Had Mr. Bucher remained at Debevoise, his market billing rate would more than double the amount he was awarded here. The rates awarded by Arbitrator McSorley represent reasonable value for elite advocacy and are neither arbitrary nor irrational.

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 30

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

In sum, the award was reasoned, supported, and lawful. Nothing about it was arbitrary, much less irrational.

**V. CONCLUSION**

For the above reasons, Consumer-Defendants respectfully request that the Court confirm their final arbitration awards and deny Valve's motion to vacate.

DATED this 25th day of June, 2026.

BUCHER LAW PLLC

By:  */s William Ward Bucher IV*
William Ward Bucher IV
(*pro hac vice* admitted)
350 Northern Blvd, STE 324-1519
Albany, NY 12204-1000
Tel. 202.997.3029
E: will@bucherlaw.com

BAILEY DUQUETTE P.C.

William R. Burnside, WSBA #36002
800 Fifth Ave, Suite 101-800
Seattle, Washington 98104
T: 206.353.8021
E: will@baileyduquette.com

*Attorneys for Respondent*

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 31

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I caused a true and correct copy of the foregoing Consumer-Defendants' Defendants' Reply To Motion To Confirm Arbitration Awards And Response To Cross-Motion To Vacate served upon counsel of record herein, as follows:

Blake Marks-Dias, WSBA No. 28169
1015 Second Avenue, Floor 10                    Via Electronic Service
Seattle, Washington 98104
(206) 625-8600 Phone
(206) 625-0900 Fax
E: bmarksdias@corrcronin.com

Michael W. McTigue Jr., *Admitted Pro Hac Vice*
Meredith C. Slawe, *Admitted Pro Hac Vice*
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
E: michael.mctigue@skadden.com
E: meredith.slawe@skadden.com

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Dated: June 25, 2026 at Seattle, Washington.

 *s/ William R. Burnside*
William Burnside, WSBA No. 36002