HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALVE CORPORATION,

        Plaintiff,

   v.

THOMAS ABBRUZZESE, *et al*.,

        Defendants.

Case No.  2:24-cv-1717-JNW

CONSUMER-DEFENDANTS' REPLY TO
MOTION TO CONFIRM ARBITRATION
AWARDS AND RESPONSE TO CROSS-
MOTION TO VACATE

NOTED ON MOTION CALENDAR:
July 20, 2026

Consumer-Defendants James Davis, Vincent Keegan, Kevin Montes, and Nicholas Tynes ("Consumer-Defendants") through undersigned counsel, hereby reply to their motion to confirm arbitration awards and respond to Plaintiff Valve Corporation d/b/a Steam ("Valve") cross-motion to vacate.

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No.  2:24-cv-

Page 1

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

TABLE OF CONTENTS

I. INTRODUCTION ................................................................................... 4

II. FACTS ............................................................................................... 4

III. LEGAL STANDARD ........................................................................... 6

IV. ARGUMENT ...................................................................................... 7

    A.    THE ARBITRATOR DECIDED THE ISSUE OF AGREEMENT APPLICABILITY ............. 7

    B.    ARBITRATOR DASTEEL PROCEEDED WITH ARBITRATION DESPITE VALVE'S BELATED ARGUMENTS THAT THE PRE-2024 SSA WAS UNENFORCEABLE .......... 8

    C.    EVEN IF THE ARBITRATOR'S DETERMINATION ON JURISDICTION IS SUBJECT TO REVIEW, VALVE'S AMENDMENTS ARE NOT ENFORCEABLE ............................... 10

        1.    UNCONSCIONABLE IN FORMATION AND IN SUBSTANCE, THE UPDATE IS VOID OR SEVERABLE ................................................................. 10

            a.    VALVE'S "CANCEL-OR-LOSE-EVERYTHING" TACTIC IS PROCEDURALLY UNCONSCIONABLE ............................. 10

            b.    SUBSTANTIVE UNCONSCIONABILITY .............................. 12

        2.    COVENANT OF GOOD FAITH AND FAIR DEALING ................................. 13

        3.    ARBITRATION CLAUSE IS IRREVOCABLE UNDER FAA ONCE PERFORMANCE COMMENCES ................................................................. 14

        4.    EXPLICIT CONSENT MEANS UNEQUIVOCAL AMENDMENTS .................... 14

        5.    VALVE CANNOT CIRCUMVENT COUNSEL ............................................. 15

        6.    WAIVER ENSURES THE VALVE CANNOT OBJECT TO THE FORUM IT CHOSE ................................................................. 16

        7.    EQUITABLE ESTOPPEL PREVENTS VALVE FROM RENOUNCING THE ARBITRATION IT DEMANDED ............................................................. 17

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 2

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

8.    JUDICIAL ESTOPPEL PRECLUDES VALVE FROM REVERSING ITS PRIOR LITIGATION POSITION ........................................................................ 19

9.    VALVE'S OUT-OF-FORUM CASES DON'T BIND AND DON'T PERSUADE . 21

D.    THE RULING ON HORIZONTAL PRICE FIXING DID NOT EXHIBIT A "MANIFEST DISREGARD OF THE LAW" ................................................................ 23

E.    THE AMOUNT OF THE AWARDS WERE NOT "COMPLETELY IRRATIONAL" .......... 26

F.    THE COURT WAS PROVIDED A COPY OF THE ARBITRATION AGREEMENT ......... 29

V. CONCLUSION ........................................................................ 30

## I. INTRODUCTION

Having chosen arbitration to avoid collective litigation, Valve now disowns the very forum it demanded after losing there.  The FAA does not allow such relief based solely on regret. Instead, confirmation is mandatory unless a narrow statutory ground applies, and Valve identifies none.[1]

Valve's first argument—that Consumer-Defendants should have abandoned arbitration and refiled their antitrust claims in court—as already been dispensed with. Dkt. 169 at 23-27. And here, the Court is tasked with a statutory review of an award that stands on firm legal ground. Even if the arbitrator erred in proceeding, that is not a basis for vacating this award recognized under the FAA.

Valve next claims the fee award is too high. Once again, the FAA offers no basis for vacatur on these grounds. And Valve's argument is astounding, given that their own lawyers charge more per hour than Consumer-Defendants' counsel was awarded.

Valve insists the awards are "arbitrary and irrational" because it disagrees with them. It cites no authority, points to no legal error, and mistakes dissatisfaction for illegality. The award is reasoned, supported by the record, and squarely within the arbitrator's discretion.

In the end, Valve's petition is a stalling tactic, devoid of substance and designed to prolong a fight it already lost. The Court should confirm the award and close this chapter for good.

---

[1] Consumer-Defendants adopt and incorporate by reference herein Defendants' Response in Opposition to Plaintiff's Motion for a Preliminary Injunction. September 19, 2025, ECF No. 92; Consumer-Defendants adopt and incorporate by reference herein Defendants' Motion to Dismiss. June 18, 2026, ECF 175 (Consumer-Defendants' have addressed those arguments believed to be most pertinent in this Reply, but additional arguments are outlined in full in the incorporated Response and Motion to Dismiss).

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 4

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

## II. FACTS

Valve's Steam distributes PC games, which consumers are allegedly able to keep and play perpetually. Purchases are made in one-time payments for games. This process is like iTunes—pay once per song; not like Spotify—pay monthly for the whole library. Users who delete or lose their account lose their purchased games. These games often constitute thousands of dollars in purchases, in part due to the inflated prices that result from Valve and Microsoft's *per se* illegal price fixing.

The Court is aware—and it is undisputed—that Consumer-Defendants' antitrust claims were subject to arbitration under a pre-2024 version of Steam Subscriber Agreement ("SSA"). *See* Dkt. 1, ¶ 10; Dkt. 2 at 11–19; *Wolfire Games, LLC v. Valve Corp.*, No. 2:21-cv-00563-JCC, 2021 WL 4952220 (W.D. Wash. Oct. 25, 2021).

In October 2023, Consumer-Defendants filed their demands for arbitration. *See* Dkt. 3 at 22–37. In that demand, Consumer-Defendants explained that they were proceeding pursuant to this Court's order in *Wolfire* and that they were in arbitration "at Valve's insistence." *Id*. at 25 n.4.

On September 26, 2024, Valve unilaterally amended the SSA (the "2024 amendment"). *See* Dkt. 1 ¶ 13.[2] Valve's sudden and unilateral 2024 amendment introduced a new forum-selection clause, which Valve describes as providing "for resolution of disputes in court, including pending disputes." Dkt. 1, ¶ 13. *See also* Dkt. 2 at 27, § 10.

---

[2] The SSA authorizes two forms of amendment: mutual and unilateral. *See* Dkt. 2 at 17, § 8. Mutual amendments require "explicit consent to changes proposed by Valve." *Id*. § 8.A. Unilateral amendments are allowed only if Valve follows specific procedural formalities. *Id*. § 8.B. Valve did not follow these procedural formalities.

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 5

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Relying on that language, Valve objected to the arbitrator's jurisdiction. Dkt. 3 at 39. On November 13th, 2024, Arbitrator Sperow denied Valve's request in a detailed and reasoned ruling. Dkt. 95-2 at 21-47. Valve's allegation that it "defended itself in further proceedings under a full reservation of rights" is factually false. Valve didn't "reserve" its right to challenge jurisdiction—it invoked it. Arbitrator Sperow decided the issue, at Valve's request. Valve lost.

On December 15, 2025, February 26, 2026, and April 24, 2026, Arbitrator Dasteel, serving as a replacement for Arbitrator Sperow, issued the final awards in Consumer-Defendants' arbitrations. Dkt. 147-1.

Many arbitrations are occurring in parallel. None apply the same procedures—for example, Valve prevailed in arbitrations before Arbitrator Saydah, who refused to enforce subpoenas for Valve's employees, resulting in a hearing with limited testimony on Valve's monopoly. Thus, on February 24, July 24, and September 24, 2025, Valve filed numerous petitions in Washington state court to confirm the awards which it *won,* while simultaneously dismissing those Respondents from its complaint before this Court, in which it had previously sought to *enjoin* those Respondents' arbitrations. *See Valve v. Abbruzzese,* 2:24-cv-1717-JNW (W.D. Wash), Dkts. 54, 75, 98.

## III. LEGAL STANDARD

Under Section 9 of the Federal Arbitration Act, the Court must confirm an arbitration award unless it is vacated, modified, or corrected as prescribed in §§ 10 or 11. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). The statute's command is mandatory: confirmation follows unless Congress has said otherwise. Judicial review of an arbitration award is "limited and highly deferential." *Haines v. Amazon.com Servs.*, 766 F. Supp. 3d 1120, 1124 (W.D. Wash. 2025). Legal or factual mistakes alone do not justify setting an award aside. *Id*. The

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 6

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

party opposing confirmation bears the burden of proof. *ShaZor Logistics, LLC v. Amazon.com*, No. 24-CV-968-BJR, 2024 WL 4827533, at *3 (W.D. Wash. Nov. 19, 2024).

## IV. ARGUMENT

### A.    The Arbitrator Decided the Issue of Agreement Applicability

On October 25, 2021, on Valve's motion, *this Court* ruled that any challenges to the arbitration clause *must* be decided by the arbitrator consistent with the SSA's delegation clause. *See Wolfire*, 2021 WL 4952220, at *2. As the Court explained, "AAA rules give an arbitrator 'the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.'" *Id.* (citing *Oracle Am., Inc. v. Myriad Group A.G.,* 724 F.3d 1069, 1074 n.1 (9th Cir. 2013)).

Consistent with that order, Valve submitted its arbitrability challenge to Arbitrator Sperow, who rejected it in a written ruling. Dkt. 3 at 43. Having invoked the delegation clause, litigated before the arbitrator, and lost on the very issue it asked her to decide, Valve is bound by the result. The Court's 2021 order requires it. The question of arbitrability has already been decided by the proper decision-maker. Under the FAA, that ends the matter: the Court must enforce the award and deny Valve's petition to vacate at the threshold.

Valve leans heavily on *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024), but that decision addressed a different question—the "first question in any arbitration dispute," as the Court put it. *Id*. at 148. Valve's petition, by contrast, presents the opposite inquiry: the last question in any arbitration dispute—whether the award should be confirmed.

Valve agreed to arbitrate under that one agreement. It consented to the jurisdiction of Arbitrator Sperow and Arbitrator Dasteel—who presided over the case—and proceeded to defend itself in that forum for years. Having invoked arbitration, participated fully, and lost,

Valve now tries to recast *Coinbase* as a lifeline. But *Coinbase* has no application to these facts. *See Lackie Drug Store, Inc. v. OptumRx, Inc.*, 143 F.4th 985, 998–99 (8th Cir. 2025) (rejecting a similar attempt to stretch *Coinbase* beyond its facts).

Valve attempts what the Ninth Circuit forbids: "a party may not submit a claim to arbitration and then challenge the authority of the arbitrator to act after receiving an unfavorable result." *Fortune, Alsweet & Eldridge v. Daniel*, 724 F.2d 1355, 1357 (9th Cir. 1983) (citing *Ficek*, 338 F.2d at 655).

Even if *Coinbase* were read to require a court to decide whether to compel arbitration in this situation, that is what this court did. *Wolfire*, 2021 WL 4952220. Valve's argument is not only that *Coinbase* means this court must decide whether arbitration is appropriate, but that it must *decide again.* That Valve attempted to change its agreement to reverse its prior success does not entitle it to re-review of the legal question of delegation. To read *Coinbase* to mandate repeated court review following a successful motion to compel would invite *ad nauseum* litigation and deprive an order compelling arbitration any semblance of finality.

But perhaps even more foundationally: whether Arbitrator Sperow (in ruling) or Arbitrator Dasteel (in refusing to revisit that ruling) reached the correct result as a matter of law is not a question before this court on a petition for confirmation. This is not an appeals court. Even "erroneous legal conclusions" cannot generate grounds for vacatur. *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 662 (9th Cir. 2012). Valve's request that this court displace the arbitrator's ruling on arbitrability, made after this very court ruled the arbitrator was the proper authority to rule on arbitrability, is not proper even if the court believes the arbitrator should have deferred to the court on that issue.

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 8

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

**B.    Arbitrator Dasteel Proceeded with Arbitration Despite Valve's Belated Arguments that the pre-2024 SSA was Unenforceable**

Valve's Cross-Motion to Vacate fundamentally mischaracterizes Arbitrator Dasteel's prior rulings to falsely suggest that he found that the pre-2024 SSA governing the Consumer-Defendants are unenforceable. Valve states that "in four arbitrations before Arbitrator Dasteel, the Dasteel Defendants' counsel moved to dismiss on the ground that the arbitration agreement in the Superseded SSA was unenforceable. The Arbitrator agreed. On July 8, 2024, the Arbitrator issued four orders holding that the arbitration agreement was unenforceable." Valve's Cross-Motion at 3.

This is an intentional effort at misdirection. Those four claimants are *different* claimants than ones seeking confirmation here, and are not parties to this proceeding. These Consumer-Defendants arbitrations were conducted individually, as required by the SSA. Arbitrator Dasteel made different rulings on different claims. While he found the February 2022 SSA was unenforceable **by Valve against consumers**, his ruling did not foreclose consumers from proceeding in arbitration if they wished. To state the obvious, Arbitrator Dasteel certainly would not have proceeded for years with these cases, and presided over a trial, if he had issued a globally applicable ruling back in 2024 that the pre-2024 SSA could not be enforced under any circumstances.

The claimants who challenged the pre-2024 SSA before Arbitrator Dasteel sought public injunctive relief. Arbitrator Dasteel found that any claimant seeking relief not just for themselves, but for the public at large, at a right to do so and the pre-2024 SSA was unenforceable against such publicly interested claimants. These rulings allowed those claimants, who sought wide-spread, public relief, to proceed in court. A ruling Valve declined to challenge. Valve cannot now

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 9

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

cherry-pick which of Arbitrator Dasteel's rulings it wishes to respect and which it wishes to vacate.

**C.      Even if the Arbitrator's Determination on Jurisdiction is Subject to Review, Valve's Amendments are not Enforceable**

Valve's attempts to unilaterally amend its way out of the arbitrations it compelled are not enforceable for at least nine reasons, any one of which is sufficient to hold the arbitration agreement was dispelled by Valve, and confirmation must follow.

**1.      Unconscionable in Formation and in Substance, the Update Is Void or Severable**

Even if the Court were to find that Consumer-Defendants somehow gave explicit consent to Valve's purported amendment, the new agreement cannot be enforced because it is both procedurally and substantively unconscionable. Washington recognizes two types of unconscionability for invalidating forum selection clauses: procedural and substantive. *McKee v. AT&T Corp.*, 164 Wn.2d 372, 396, 191 P.3d 845 (2008). Procedural unconscionability applies to impropriety during contract formation, while substantive unconscionability applies where a term is one-sided or overly harsh. *Nelson v. McGoldrick*, 127 Wn.2d 124, 131, 896 P.2d 1258 (1995). Either is sufficient to void an agreement. *Hill v. Garda CL Nw., Inc.*, 179 Wn.2d 47, 55, 308 P.3d 635 (2013). Both forms are present here.

**a.      Valve's "Cancel-or-Lose-Everything" Tactic is Procedurally Unconscionable**

Washington courts determine procedural unconscionability by examining the circumstances of formation—how the agreement was entered, whether the weaker party had a

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 10

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

reasonable opportunity to understand its terms, and whether important terms were hidden in fine print or otherwise obscured. *Burnett v. Pagliacci Pizza, Inc.*, 196 Wn.2d 38, 54–55 (2020) (citing *Nelson v. McGoldrick*, 896 P.2d 1258, 1262 (Wash. 1995); *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 304 (2004)). A contract is procedurally unconscionable when a party with unequal bargaining power lacks a meaningful opportunity to review or negotiate the terms, rendering the result an adhesion contract. *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 348 (2004).

Consumer-Defendants—like the employee in *Burnett*—had no real choice or chance to review the terms before being bound. Valve's update was a non-negotiable clickwrap that demanded assent simply to keep using content they had already bought. The opt-out provided by Valve required consumers to give up their entire Steam accounts to reject the new clause. Washington law requires courts to consider those circumstances together. *Zuver*, 103 P.3d at 759. Considered together, those circumstances establish that the retroactive forum clause is procedurally unconscionable as applied to these Consumer-Defendants. This Court already recognized that conclusion at the preliminary-relief stage. Dkt. 169 at 23. On a motion to affirm a final award, the same legal failure defeats Valve's position as a matter of law.

This case exemplifies a bait-and-switch carried out under overwhelming bargaining power. Valve, a proven monopolist and price fixer, unilaterally changed the governing contract after compelling arbitration, hiding its new objective behind ambiguous language applied to millions of users. Such conduct embodies both oppression and surprise—the hallmarks of procedural unconscionability. *Burnett*, 196 Wn.2d at 54–55. Valve wielded its dominance to rewrite the rules in its own favor, leaving Consumer-Defendants with no meaningful opportunity to bargain or refuse. Even if they somehow agreed to the update, that assent was extracted under

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 11

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

conditions so one-sided and coercive that the contract is procedurally unconscionable and unenforceable.

### b.    Substantive Unconscionability

Washington law bars clauses that crush one side and favor the drafter. Substantive unconscionability tests the substance of a term—whether it is so one-sided or oppressive that it cannot be enforced. *Burnett,* 196 Wn.2d at 55; *Gandee v. LDL Freedom Enters.*, 176 Wn.2d 598, 603 (2013); *Tadych v. Noble Ridge Constr., Inc.*, 200 Wn.2d 635, 645–46, 519 P.3d 199 (2022); *Adler*, 153 Wn.2d at 344. It exists when a provision is so one-sided, harsh, or "monstrously calloused" that it shocks the conscience and confers unjustified advantage on the stronger party. *Adler*, 153 Wn.2d at 344–45; *Nelson*, 127 Wn.2d at 131. The doctrine guards against contractual schemes that, by design, let one party win by self-interested rules instead of merit.

Valve's 2025 and 2024 amendments fit this mold. They were imposed unilaterally, after litigation had begun, on a take-it-or-lose-everything basis. The new forum-selection clause demands that Consumer-Defendants discard months of victorious effort, hundreds of thousands of dollars in awarded costs and fees and refile their claims in federal court where they would have to roll the dice and hope to win their cases again. The amendments offer them nothing in return. The benefit runs one way—exclusively to Valve. Valve loses nothing comparable. It is relieved only of continuing to defend in the forum it drafted, imposed, and invoked. As this Court has already explained, "[l]osing an accrued right is not the same as shedding a cost one undertook to pay," and a term that does the former to consumers while doing the latter for the drafter is one-sided in operation. Dkt. 169 at 24. Washington law condemns that sort of asymmetry. *See Tadych*, 519 P.3d at 204; *Gandee*, 293 P.3d at 1201. That imbalance is not by accident but by

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 12

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

design; the same kind of self-serving mechanism *Burnett* condemned: a two-step process that guarantees the drafter the upper hand. Consumer-Defendants had no voice, no real choice, and no way to keep what they had paid for without surrendering their rights to arbitration.

Washington courts have a name for that kind of maneuver—substantive unconscionability.

Washington courts have long condemned such tactics, where the stronger party rigs the process to run out the clock. *See Tadych*, 200 Wn.2d at 641; *Gandee*, 176 Wn.2d at 603; *Adler*, 153 Wn.2d at 344. In substance, Valve changed the rules mid-game to make sure only it could win. This act violates the protection of substantive unconscionability.

### 2.    Covenant of Good Faith and Fair Dealing

Valve's unilateral update, aimed at reshaping the forum mid-arbitration, breaches the covenant of good faith and fair dealing that governs every contract. In *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960 (2015), the defendant invoked a bylaw amendment clause to impose arbitration on claims already pending in court. Both the trial and appellate courts refused to allow it, holding that retroactively changing a forum clause exceeds the unilateral power to amend and breaches the implied covenant of good faith and fair dealing. *Id*. at 964, 969. The principle is straightforward: once a dispute begins, neither side may unilaterally manipulate contract terms to tilt the forum or the process.

Washington law reaches the same conclusion. Every contract in this State carries an implied duty of good faith and fair dealing in performance and enforcement. *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569 (1991). That duty requires each party to preserve the other's benefit of the bargain—not to impose unilateral, material changes. *Betchard-Clayton, Inc. v. King*, 41

Wn. App. 887, 890 (1985), *review denied*, 104 Wn.2d 1027 (1985). And it forbids conduct that undermines the other side's reasonable expectations. *Metro. Park Dist. v. Griffith*, 106 Wn.2d 425, 437 (1986). Valve's amendment, issued while arbitration was pending, did all three.

### 3.    Arbitration Clause is Irrevocable under FAA Once Performance Commences

Valve cannot revoke its arbitration provision mid-arbitration. "[A]n agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, *irrevocable*, and enforceable." 9 U.S.C. § 2 (emphasis added). Arbitration agreements may only be invalidated by general contract defenses including fraud, duress, or unconscionability, and not by defenses that only apply to arbitration or that "derive their meaning" from whether there is an agreement to arbitrate. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Arbitration clauses survive contract termination under the FAA unless the original contract includes explicit language that the arbitration clause would expire upon termination. *Shivkov v. Artex Risk Solutions, Inc.*, 974 F.3d 1051, 1061-63 (9th Cir. 2020) (finding an arbitration agreement survived because the agreement failed to clearly imply their arbitration obligations would not survive termination).

### 4.    Explicit Consent Means Unequivocal Amendments

The SSA permits amendment only "by [Consumer-Defendants'] explicit consent to changes proposed by Valve." Dkt. 2-1, § 8.A. Although undefined, the term "explicit consent" has a precise legal meaning: consent that is express, clear, and unmistakable. *See EXPLICIT*, Black's Law Dictionary (12th ed. 2024) ("Expressed without ambiguity or vagueness; leaving no doubt."); *EXPRESS CONSENT*, Black's Law Dictionary (12th ed. 2024) ("Consent that is

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 14

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

clearly and unmistakably stated."). "Explicit consent" means more than a click-through agreement pushed to millions of users containing vague and ambiguous terms, as Valve did here.

Courts in this circuit have interpreted "explicit consent" with rigor. In *Rosenow v. Facebook, Inc.*, No. 19-CV-1297-WQH-MMP, 2025 WL 951277 (S.D. Cal. Mar. 28, 2025), and *In re Facebook*, 402 F. Supp. 3d at 794, the courts held that actual consent—explicit or implied— requires clear notice and sufficient detail to inform the user exactly what they are agreeing to. In other words, the terms must be "clear and unequivocal." *Rosenow*, 2025 WL 951277, at *14.

Against this backdrop, Valve offers no evidence that Consumer-Defendants explicitly agreed to its new terms or that they understood them to extinguish an arbitration already underway. To the contrary, the record clearly establishes the opposite: Consumer-Defendants continued using their Steam accounts and prosecuting their arbitration claims, even providing testimony at the arbitration hearing. Valve's argument based solely on the existence of the updated SSA itself, which it pushed to millions of users with general language, falls short of the explicit consent its own contract demands.

### 5.    Valve Cannot Circumvent Counsel

Had Valve genuinely wished to resolve matters ethically, it would have contacted Consumer-Defendants' counsel under the rules of professional conduct—not delivered a stealth withdrawal through the Steam platform. *See, e.g., Grant v. T-Mobile USA, Inc.*, No. 2:23-CV-01946-MJP, 2024 WL 3510937, at *6 (W.D. Wash. July 23, 2024) ("the Court disapproves of T-Mobile directly asking Grant to retroactively waive her right to trial in a case that had already been filed, rather than making the request through her counsel. This is a poor (if not unethical)

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 15

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

practice and should not continue."). Valve provided Consumer-Defendants no meaningful choice; it was a manufactured illusion of choice.

The lack of explicit consent is stark against the backdrop of Valve's unethical choice to even make this offer to Consumer-Defendants directly, rather than through counsel. When a party is known to be represented in a proceeding, communications go through counsel. Yet Valve purports to have tendered to Consumer-Defendants directly a click-wrap form that upended their currently pending arbitrations that resulted in substantial awards in their favor. Not only was Valve's "consent" not explicit, it was certainly not explicit in the context of litigation where decisions and offers are expected to go through counsel. Consumer-Defendants had no reason to think that their rights in arbitration were going to be affected by the notice presented to them, because they had the expectation all clients have that settlement and other legal offers will be conveyed through counsel.

### 6.      Waiver Ensures the Valve Cannot Object to The Forum it Chose

When consumers brought antitrust claims in federal court, Valve intentionally chose the arbitral forum. It requested that every issue, including arbitrability, be decided there—and consented to the arbitrator's jurisdiction over Consumer-Defendants' claims. *Wolfire*, 2021 WL 4952220. It cannot now reverse course and ask this Court to vacate the very award it sought in that forum.

In *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022), the Supreme Court rejected arbitration-specific rules requiring prejudice to find waiver. Waiver follows ordinary contract principles, not arbitration policy. Absent prejudice, waiver turns on two elements: knowledge of the right and inconsistent conduct. *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016). Valve

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 16

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

satisfies both. There is no dispute Valve knew its rights—it could have defended all antitrust claims in federal court in 2021 or objected to the arbitrator's jurisdiction by the arbitral deadline. It did neither. Instead, it compelled arbitration, participated fully, and now seeks to vacate the arbitrator's award.

That course of conduct is textbook waiver—knowledge of a right followed by deliberate inconsistency. Having fully invoked and benefitted from the efficiency and informality of the arbitral process, Valve cannot now claim that the forum it chose lacked authority to decide Consumer-Defendants' claims. *Morgan* and *Martin* foreclose that maneuver.

### 7. Equitable Estoppel Prevents Valve from Renouncing the Arbitration It Demanded

Equitable estoppel bars Valve from inducing the Consumer-Defendants to arbitrate, benefiting from that reliance, and then denying the agreement that produced that benefit. Equitable estoppel prevents a party from inducing reliance on one position only to abandon it when the outcome turns unfavorable. *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042 (9th Cir. 2009). The Ninth Circuit applies state-law estoppel principles in arbitration cases. *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009)); *accord Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013). Washington law follows the same rule: a party that adopts a position, induces reliance, and later reverses course to the other's detriment is estopped. *Saunders v. Lloyd's of London*, 113 Wn.2d 330, 336, 779 P.2d 249 (1989).

Valve first took the position that arbitration was the proper forum. It moved to compel arbitration of the antitrust claims, invoking the same forum-selection clause that Consumer-

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 17

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Defendants followed in filing their disputes. It told the Court—and the arbitrator—that all issues, including arbitrability, belonged before the arbitrator.

Consumer-Defendants relied on that position. They pursued arbitration under the SSA Valve compelled arbitration under, paid their filing fees, incurred hundreds of thousands in attorneys' fees and costs, and litigated through to final award in their favor. Valve likewise participated fully—filing briefs, attending hearings, and consenting to the arbitrator's jurisdiction. Valve reinforced that reliance for more than a year by litigating under the arbitration agreement. Consumer-Defendants' reliance was not only foreseeable; it was the direct result of Valve's own actions.

Now Valve reverses course. It claims that the amended versions of its agreement—issued while arbitration was ongoing—retroactively stripped the arbitrator of authority. That maneuver would erase the process Valve demanded and nullify the result it lost. Washington law does not tolerate such gamesmanship. *Saunders*, 113 Wn.2d at 336.

The detriment to Consumer-Defendants is apparent. If Valve may now deny the agreement, Consumer-Defendants lose the awards they obtained, the fee protections they invoked, the forum Valve required, and years of work and expense. They would be forced to start over in court, where Valve could press new motions to dismiss, stay, or delay.

Equitable estoppel exists to prevent this kind of bait-and-switch. Having led Consumer-Defendants into arbitration and consented to litigate there, Valve cannot now disclaim the forum it selected merely because the result displeases it. The doctrine holds fast: equitable estoppel locks Valve to the position it embraced and prevents it from vacating the award issued through the very process it compelled.

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 18

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

### 8. Judicial Estoppel Precludes Valve from Reversing Its Prior Litigation Position

Judicial estoppel is the law's way of saying enough is enough. It prevents a party from shifting positions to suit the moment—a principle the Supreme Court described as essential to protecting the integrity of the judicial process. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (judicial estoppel "prohibit[s] parties from deliberately changing positions according to the exigencies of the moment"). The doctrine is rooted in equity and applies with particular force when a litigant seeks to profit from inconsistent representations made to different tribunals. *Id*. Washington law is no different: a party cannot treat a contract as a nullity in one case and enforce it in another. *Hardgrove v. Bowman*, 10 Wn.2d 136, 138, 116 P.2d 336, 337 (1941).

"A court may properly apply judicial estoppel when the following elements are shown: (1) a party asserts a position that is 'clearly inconsistent' with an earlier position; (2) judicial acceptance of the inconsistent position would indicate that either the first or second court was misled; and (3) 'the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party.'" *Baldwin v. Silver*, 147 Wn. App. 531, 535, 196 P.3d 170, 172 (2008) (citing *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538–39, 160 P.3d 13 (2007)). All three elements are met here.

Valve has repeatedly taken the position both that the pre-2024 SSA was enforceable and that issues of arbitrability are to be decided by the arbitrator. Valve took that position before this Court. *Wolfire*, 2021 WL 4952220. Valve took that position in front of the arbitrators.

Moreover, Valve took that position in front of Washington state courts in confirming the awards of individuals whose arbitrations were awarded both before and *after* the 2024 amendment. *Valve v. Abbruzzese*, 24-1717-JNW, Dkts. 54, 75, 98. Valve is once again cherry-

picking decisions it likes, and disregarding decisions it does not. Valve needs to be held to a standard of consistency. It cannot agree that the pre-2024 SSA is enforceable when it wins in arbitration and then argue it is unenforceable when it loses.

If Valve is correct that its unilateral term change means awards under the pre-2024 and 2025 agreements must be vacated, then Valve necessarily mislead the Washington state court when it claimed post-2024 term change awards should be confirmed. If Valve is correct that the issues of arbitrability actually need to be decided by this court, then it misled this court when it argued "whether this dispute falls within the scope of the SSA's arbitration agreement (the second requirement) is a question of arbitrability delegated to the arbitrator." *Wolfire*, Dkt. 35. If Valve is correct that the pre-2024 doesn't govern, then it misled Arbitrator Sperow when it initially agreed to her jurisdiction to resolve the parties' dispute.

The unfair detriment on these four Consumer-Defendants is enormous. Valve suggests they must forfeit awards totaling more than $3 million because they litigated their claims, and Valve's belated assertion that their claims were not arbitrable, in the forum Valve has repeatedly told tribunals those disputes must be litigated in (*Valve v. Abbruzzese*, 24-1717-JNW, Dkt. 167). Valve's two-faced gambit is conduct judicial estoppel prevents.

Valve's litigation tactics are a case study in gamesmanship. Across years of litigation—from *Wolfire* to *Beer v. Valve*, and hundreds of consumer arbitrations—Valve insisted that the SSA required individual arbitration and deprived courts of any power to interfere on any issue. It compelled arbitration, resisted judicial oversight, and has even confirmed arbitral awards issued under that same agreement following its purported amendment. Having secured the benefits of that position, Valve now tells the opposite story. It claims the same arbitration clause

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 20

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

is suddenly unenforceable, and that its 2024 update authorizes the Court to vacate the very arbitrations it once demanded.

Judicial estoppel exists to prevent exactly this sort of misconduct. Having convinced courts and arbitrators that disputes under the SSA must proceed in arbitration, and must be confirmed once awarded, Valve cannot now invoke its 2024 or 2025 amendment to undo the ultimate result. Valve must be held to the word it gave this Court and others, or its litigation tactics will run amok. Judicial estoppel bars vacatur.

### 9.    Valve's Out-of-Forum Cases Don't Bind and Don't Persuade

Valve leans on federal cases from across the country—not Washington—to argue that Consumer-Defendants' awards should be vacated based on its bad-faith update. Dkt. 1 ¶ 8; *id*. at 6 n.4. But those authorities highlight why Valve's position fails.

Start with *Bozek v. PNC Bank*, 2020 WL 6581491 (E.D. Pa. Nov. 10, 2020), *aff'd* 2021 WL 4240359 (3d Cir. Sept. 17, 2021). Valve quotes *Bozek* for the proposition that "an arbitrator exceeds her powers by issuing an award when the parties have no agreement to arbitrate." Dkt. 1 ¶ 8. But *Bozek* involved nothing like this case. It arose from a supposed arbitration launched in secret, before a panel of the claimant's acquaintances, under a one-sided contract of adhesion the other party never saw—and accompanied, as the court put it, by "pages of unintelligible legal jargon." *Id*. at 1, 3–5.

*Bozek* thus stands for the unremarkable principle that no one can be bound by an arbitration they neither agreed to nor participated in. Valve, by contrast, drafted the agreement, invoked it, and compelled arbitration. There was nothing clandestine about these proceedings—

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 21

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

only an unfavorable result Valve now seeks to erase through similar obscure and unclear legal jargon.

*Dasher v. RBC Bank (USA)*, 745 F.3d 1111 (11th Cir. 2014) fares no better. Applying North Carolina law, the Eleventh Circuit held that when parties clearly express their intent to supersede a prior contract, the prior arbitration clause is displaced. *Id*. at 1123. Washington has no comparable rule. Timing also distinguishes *Dasher*: by the time the bank moved to compel arbitration, the prior agreement had already been terminated. *Id*. at 1126–27. Here, arbitration was compelled while Valve's clause remained in full force. Valve invoked that clause—and must live with it. Dasher offers no refuge.

*Pilon v. Discovery Commcn's, LLC* proves the same point. 769 F. Supp. 3d 273, 286 (S.D.N.Y. 2025). There, the court applied different state laws to two contracts—California law to the first, New York law to the second—and compelled arbitration under whichever contract each party accepted. *Id*. at 286–90, 294–98. Pilon turned on choice of law and mutual assent, not on any effort to enjoin an ongoing arbitration or divert it into court. It bears no resemblance to this case.

Valve next cites *Laster v. T-Mobile USA, Inc.*, No. 05CV1167DMS AJB, 2008 WL 5216255 (S.D. Cal. Aug. 11, 2008), *aff'd sub nom. Laster v. AT & T Mobility LLC*, 584 F.3d 849 (9th Cir. 2009), *rev'd sub nom. AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), *and amended in part*, No. 05CV1167 DMS WVG, 2012 WL 1681762 (S.D. Cal. May 9, 2012). Whatever vitality *Laster* once had vanished after *Concepcion*. In any event, *Laster* involved a good-faith update issued before arbitration began—not, as here, a bad-faith maneuver to oust an arbitrator's jurisdiction midstream.

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 22

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

All these cases share the same fatal flaws. They arose under different law, turned on mutual assent in the absence of bad faith, and never contemplated the kind of midstream reversal or post-loss vacatur Valve seeks here. None endorses revoking an arbitration clause after compelling its enforcement—or undoing a final award from the very forum Valve chose. Law and fairness alike lock Valve into the consequences of its own bargain.

**D.    The Ruling on Horizontal Price Fixing Did Not Exhibit a "Manifest Disregard of the Law"**

Valve has failed to demonstrate that the ruling on horizontal price fixing meets the high standard for vacatur. Section 10(a)(4) of the FAA allows vacatur "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). Arbitrators exceed their power only when an award is "completely irrational" or exhibits a "manifest disregard of the law." *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003) (internal citations omitted). Valve misapplies "the manifest disregard of the law standard" in challenging the arbitrator's ruling finding Valve fixed prices with its competitor Microsoft.

The Ninth Circuit has made clear that the "manifest disregard standard" is not a vehicle for courts to vacate arbitrators' decisions, even where erroneous. "Manifest disregard of the law means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law." *Wawock v. CSI Elec. Contractors, Inc.*, 649 F. App'x 556, 557 (9th Cir. 2016). "We have stated that for an arbitrator's award to be in manifest disregard of the law, it must be clear from the record that the arbitrator recognized the applicable law and then ignored it." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009) (internal citations omitted). "It is not even enough that the [arbitrator] may have failed to

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 23

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

understand or apply the law." *G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1105 (9th Cir. 2003).

Valve attempts what the Ninth Circuit explicitly prohibits by contending "a failure on the part of the arbitrators to understand or apply the law." *Wawock*, 649 F. App'x at 557. By its own wording, Valve challenges the arbitrator's ruling on the basis of misapplying or failing to apply the law. *See, e.g.*, Valve Cross-Motion, p. 15 (arguing that the arbitrator was "manifestly erroneous" in finding unlawful horizontal price-fixing agreement); p.16 (arguing that "the Arbitrator applied the per se rule rather than the rule of reason" and that he "undertook no analysis of whether the 2011 Microsoft SDA produces 'manifestly anticompetitive effects,'") and p. 17 (arguing that he engaged in a "misreading of Section 6.4(b)"). But misapplication or a failure to engage in certain analysis does not meet the manifest disregard standard.

Far from "manifest disregard," Arbitrator Dasteel correctly applied the law when he found that Valve and Microsoft engaged in a horizontal price-fixing agreement, which is *per se* illegal. Valve argues that the *per se* rule is inapplicable to its price-fixing conspiracy with Microsoft because the relationship between the coconspirators is "hybrid" rather than exclusively horizontal. Dkt. 170, 17. To support this argument, Valve relies on the Fourth Circuit case, *U.S. v. Brewbaker*. But the Fourth Circuit's view has not been adopted by other circuits, including this one. As the Arbitrator points out, "there is no general agreement on that standard." Interim Award of Arbitrator, 3 (Dec. 15, 2025). For example, the Second Circuit holds "horizontal agreements with the purpose and effect of raising prices are per se unreasonable because they pose a threat to the central nervous system of the economy; that threat is just as significant when a vertical market participant organizes the conspiracy." *United States v. Apple, Inc.*, 791 F.3d 290, 323 (2d Cir. 2015) (citation omitted). Indeed, even the *Brewbaker*

court acknowledged the lack of precedent for its holding: "But does the per se rule apply to such a hybrid restraint? The Supreme Court has not yet told us." *United States v. Brewbaker*, 87 F.4th 563, 576 (4th Cir. 2023).

Arbitrator Dasteel's award includes the Arbitrator's in-depth analysis of the law and its applicability to the anticompetitive Valve-Microsoft conspiracy. He considered agreements "regarding the use of Steam Keys" and other "agreement[s] between Steam and third-party developers and publishers" which he found "fall[] under the Rule of Reason." *Id.* Dasteel also explicitly considered, and rejected based upon the evidence presented at trial, Valve's "hybrid-relationships" argument. *Id.*

Valve tries to obscure the issue by mischaracterizing how it competes with Microsoft. Valve argues that Microsoft and Valve do not compete when they sell Microsoft games. Dkt. 170, 18. But Valve's expert testified the opposite. When asked "And we can agree Microsoft Store is a competitor to Steam; right?" Dr. Alcott answered, "yes." When asked, "And that includes when the Microsoft Store sells its own Games; right?" he again answered, "yes." Dasteel Transcript Aug. 27, 2025, 791:12-17. The arbitrator's ruling that Microsoft's games are "competing products"—and that agreeing to charge the same price for them was *per se* price fixing—demonstrates deference to Valve's expert, not manifest disregard for the law.

At the conclusion of his legal analysis of the Microsoft Agreement, the Arbitrator held, "One effect of this section is that if Microsoft lowers the price of one of its own games for distribution on its platform, it must also lower the price it offers that product for sale on Respondent's platform. Microsoft employees described this provision as a 'price parity' requirement. This is a horizontal price-fixing agreement and is subject to the per se standard."

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 25

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Interim Award of Arbitrator, 3 (Dec. 15, 2025). Valve's displeasure with this ruling is no basis to overturn it.

### E.    The Amount of the Awards were not "Completely Irrational"

Valve incorrectly claims the award was "arbitrary and irrational," warranting vacatur under § 10(a)(4) of the FAA. Valve Cross-Motion, p. 18. However, the Ninth Circuit does not consider whether an award is "arbitrary" in evaluating whether to vacate it. Rather, the relevant standard for vacating an award is whether it is "completely irrational" or exhibits a "manifest disregard of the law." *Kyocera Corp.,* 341 F.3d at 997. This standard is "extremely narrow" and is difficult to satisfy. *Comedy Club, Inc.,* 553 F.3d at 1288. Valve's arguments all fail to meet this strict requirement.

The Ninth Circuit has held that a "district court may not vacate an arbitration award simply because the court disagrees with its size." *Lagstein v. Certain Underwriters at Lloyd's, London,* 607 F.3d 634, 640 (9th Cir. 2010). In determining whether an award is completely irrational, an inquiry into "whether or not the panel's findings are supported by the evidence in the record is beyond the scope of [the court's] review." *Id.* at 642 (citing *Bosack v. Soward,* 586 F.3d 1096, 1104 (9th Cir. 2009) (citation modified)). Valve's disagreement with the arbitrator's calculation of fees is not a valid basis for vacatur and certainly does not meet the steep standard of complete irrationality.

Valve's assertions are not just incorrect; they are also hypocritical. Valve argues that Arbitrator Dasteel incorrectly "applied a 1.1 multiplier." Valve Cross-Motion, pp. 19-20. But Valve's own counsel, Holwell Shuster & Goldberg, LLP, has argued for a 1.5 multiplier for its attorneys in a prior case before this court. *Plaintiff Zunum Aero, Inc's Motion for Post-Trial*

*Relief at 28, Zunum Aero, Inc. v. Boeing Company*, 2024 WL 5517128 (2024). Valve's argument for selective application of the law serves as further reason to reject its motion to vacate.

Valve incorrectly cites *Lowery v. Rhapsody Int'l Inc.* as an example where a court finds a fee award irrationally high. Valve Cross-Motion, pp. 19-20. But *Lowery* concerns a class action, not an arbitration award. *Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 988 (9th Cir. 2023). *Lowery* notes that in a class action, under Rule 23 the relevant inquiry is whether the fees are "proportional to the benefit." *Lowery*, 75 F.4th at 991-92. In considering vacatur of an arbitration award, however, the size and proportionality of the award is irrelevant. *See Lagstein*, 607 F.3d at 641 (finding "it was error for the district court to vacate the arbitration awards simply because it found the total size either shocking or unsupported by the record"). Valve fails to cite any comparable cases in which an arbitration award is vacated based on its size.

Valve's reliance on *Briscoe Protective, LLC v. N. Fork Surgery Ctr., LLC* is also incorrect. 215 A.D.3d 956, 957–58, 188 N.Y.S.3d 113 (2023). There, a New York appellate court vacated an award after finding that the arbitrator granted attorneys' fees without any proof of hours worked or hourly rates—awarding fifty percent of the damages as fees with no record support. *Id*. That decision turned on the absence of any evidence whatsoever, not a misapplication of law or failure to allow objections to such evidence. Here, by contrast, Consumer-Defendants submitted affidavit support and entry-by-entry billing records, and Arbitrator Dasteel reviewed them before issuing a reasoned decision. *Briscoe Protective* also applied New York's domestic arbitration statute, N.Y. C.P.L.R. Art. 75, not the FAA. Under the FAA, the Ninth Circuit has emphasized that "neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award." *Ghayoori v. Cobra Trading, Inc.*, No. C25-0021 TSZ,

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 27

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

2025 WL 1519136, at *3 (W.D. Wash. May 28, 2025) (quoting *Kyocera*, 341 F.3d at 994). So even if the facts of *Briscoe Protective* were similar to those here, it would not justify vacatur.

Valve attacks the rates awarded to Consumer-Defendants. But large national firms routinely command substantially higher hourly rates for comparable complex litigation. For instance, partners at firms David Polk & Wardwell LLP and Debevoise & Plimpton LLP charge hourly rates up to $2,9354 and $2,800 respectively. Cover Sheet to the Second Interim Application of Davis Polk & Wardwell LLP for Compensation, *In re Spirit Aviation Holdings, Inc.*, No. 25-11897, ECF No. 892 (Bankr. S.D.N.Y Mar. 26, 2026); Cover Sheet to the Second Interim Application of Debevoise & Plimpton LLP for Compensation, *In re Spirit Aviation Holdings, Inc.*, No. 25-11897, ECF No. 888 (Bankr. S.D.N.Y Mar. 25, 2026). Junior associates bill up to $1845 per hour at Davis Polk and $1385 at Debevoise. *Id.* At Davis Polk law clerks were billed between $730 and $1,175 an hour, and legal assistants between $505 and $790. *Id*.

The fees awarded to Consumer-Defendants by Arbitrator Dasteel fall comfortably at the lower end of the reasonable market spectrum for high-caliber representation. Valve's characterization of the awarded fees ignores counsel's specialized experience. For example, Will Bucher started his career at Debevoise. Mr. Bucher possesses elite institutional training that commands a premium in the legal market. Had Mr. Bucher remained at Debevoise, his market billing rate would more than double the amount he was awarded here. The rates awarded by Arbitrator Dasteel represent reasonable value for elite advocacy.

In sum, the award was reasoned, supported, and lawful. Nothing about it was irrational, much less "completely irrational."

CONSUMER-DEFENDANTS'
REPLY TO MOTION TO CONFIRM
ARBITRATION AWARDS AND
RESPONSE TO CROSS-MOTION
TO VACATE – Case No. 2:24-cv-

Page 28

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

**F.      The Court was Provided a Copy of the Arbitration Agreement**

The Court was provided a version of Valve's pre-2024 SSA and the Unconscionable 2024 SSA as exhibits to Valve's Amended Complaint. Dkt. No. 78 Ex. 3 and 4. The Court already possess the agreement mandating individual binding arbitration between the parties. Valve's assertion that the pre-2024 SSA was not provided with Consumer-Defendant's motion is frivolous and not applicable. The Court has already received, discussed, and ruled on the agreement between the parties. The valid and binding arbitration agreement does not need to be provided to the Court repeatedly. Nevertheless, we attach the operative SSA as Exhibit A.

**V. Conclusion**

For the above reasons, Consumer-Defendants respectfully request that the Court confirm their final arbitration awards and deny Valve's motion to vacate.

DATED this 29th day of June, 2026.

BUCHER LAW PLLC

By: */s William Ward Bucher IV*
William Ward Bucher IV
(*pro hac vice* admitted)
1000 Brickell Avenue
Ste. 715 – Mailbox 1004
Miami, Florida 33131
Tel. 202.997.3029
E: will@bucherlawfirm.com

BAILEY DUQUETTE P.C.

William R. Burnside, WSBA #36002
800 Fifth Ave, Suite 101-800
Seattle, Washington 98104
T: 206.353.8021
E: will@baileyduquette.com

*Attorneys for Consumer-Defendants*

Consumer-Defendants'
Reply To Motion To Confirm
Arbitration Awards And
Response To Cross-Motion
To Vacate – Case No. 2:24-cv-

Page 29

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I caused a true and correct copy of the foregoing Consumer-Defendants' Defendants' Reply To Motion To Confirm Arbitration Awards And Response To Cross-Motion To Vacate served upon counsel of record herein, as follows:

Blake Marks-Dias, WSBA No. 28169
1015 Second Avenue, Floor 10                          Via Electronic Service
Seattle, Washington 98104
(206) 625-8600 Phone
(206) 625-0900 Fax
E: bmarksdias@corrcronin.com

Michael W. McTigue Jr., *Admitted Pro Hac Vice*
Meredith C. Slawe, *Admitted Pro Hac Vice*
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
E: michael.mctigue@skadden.com
E: meredith.slawe@skadden.com

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Dated: June 29, 2026 at Seattle, Washington.

 *s/ William R. Burnside*
William R. Burnside