THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALVE CORPORATION,

              Plaintiff,

     v.

THOMAS ABBRUZZESE et al.,

              Defendants.

No. 2:24-CV-1717-JNW

**PLAINTIFF VALVE CORPORATION'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND/OR FOR JUDGMENT ON THE PLEADINGS**

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR FOR JUDGMENT ON
THE PLEADINGS
(No. 2:24-CV-1717-JNW)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ...............................................................................1

II.  BACKGROUND ...............................................................................4

    A.  Valve and Steam Users Agree to the SSA, Which at One Time Included an Arbitration Provision..............................................................4

    B.  Valve Licenses Video Games, In-Game Content, And Other Software ............................................................................4

    C.  Plaintiffs in *Wolfire* Commence Consumer Antitrust Class Action Against Valve............................................................5

    D.  Bucher Law Commences Mass Arbitration Under the Superseded SSA and Obtains Arbitrator Rulings that the Arbitration Agreement in the Superseded SSA Is Unenforceable...............................5

    E.  Bucher Law Files Consumer Antitrust Class Action in This Court.............5

    F.  Valve Removes the Arbitration Agreement from the SSA..........................6

    G.  Valve Files This Action to Enjoin These Arbitrations Because There Is No Agreement to Arbitrate Between the Parties ..........................7

III.  ARGUMENT ...............................................................................8

    A.  The Motion Should Be Stricken Or Denied As Improper ..........................8

        1.  Defendants' Motion Violates This Court's Direct Order to Answer the Complaint ..........................................................8

        2.  Defendants' Successive Rule 12 Motion Violates the Federal Rules of Civil Procedure ........................................9

        3.  Defendants Filed Their Motion Without Conferring in Violation of This Court's Civil Chambers Procedures ......10

    B.  Defendants' Unconscionability Arguments Depend On Purported Facts Outside The Pleadings.......................................................11

    C.  The Complaint Should Not Be Dismissed Based on Procedural Unconscionability ........................................................12

        1.  The Complaint Presents No Basis to Conclude that the Forum Provision of the Controlling SSA Is Procedurally Unconscionable...................................................12

        2.  The Complaint Presents No Basis to Conclude that the Controlling SSA's Adhesive Structure Renders the Forum Provision Procedurally Unconscionable ...........................14

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR FOR JUDGMENT ON
THE PLEADINGS
(No. 2:24-CV-1717-JNW) – i

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

3.     The Complaint Presents No Basis to Conclude that Valve's Opt-Out Was Illusory...........................................................15

4.     Valve Did Not Bypass Counsel to Obtain Assent .............18

5.     The Complaint Presents No Basis to Conclude that the Controlling SSA's Forum Provision Is Substantively Unconscionable..................................................................19

D.    Equity Does Not Defeat Valve's Complaint.............................................21

1.     Valve Has Not Waived Any Argument .............................21

2.     Equitable Estoppel is Inapplicable....................................22

3.     Judicial Estoppel is Inapplicable.......................................22

E.    The Motion Should Be Denied Even if the Forum Provision Is Unenforceable ...........................................................................................23

IV.     CONCLUSION................................................................................................23

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR FOR JUDGMENT ON
THE PLEADINGS
(No. 2:24-CV-1717-JNW) – ii

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.C. ex rel. Carbajal v. Nintendo of America Inc.*,
  No. C20-1694 TSZ,
  2021 WL 1840835 (W.D. Wash. Apr. 29, 2021)......................................................................13

*Adkins v. Facebook, Inc.*,
  Nos. C 18-05982 WHA, C 19-00117 WHA,
  2019 WL 3767455 (N.D. Cal. Aug. 9, 2019) ..........................................................................13

*Adler v. Fred Lind Manor*,
  103 P.3d 773 (Wash. 2004) ......................................................................................................11

*Adobe Systems Inc. v. Christenson*,
  809 F.3d 1071 (9th Cir. 2015) ..................................................................................................17

*Alaska Airlines, Inc. v. Carey*,
  No. C07-5711 RBL,
  2008 WL 743946 (W.D. Wash. Mar. 18, 2008) ......................................................................11

*American Pipe & Construction Co. v. Utah*,
  414 U.S. 538 (1974)..................................................................................................................21

*In re Apple iPhone Antitrust Litigation*,
  846 F.3d 313 (9th Cir. 2017),
  *aff'd sub nom. Apple Inc. v. Pepper*, 587 U.S. 273 (2019) ......................................................9

*Bassett v. Electronic Arts Inc.*,
  No. 13-CV-04208 (MKB)(SMG)
  2015 WL 1298644 (E.D.N.Y. Feb. 9, 2015),
  *report and recommendation adopted*,
  93 F. Supp. 3d 95 (E.D.N.Y. 2015) ...................................................................................12, 13

*Bauer v. Atlantis Events, Inc.*,
  No. CV 13-05290 SJO (JCx),
  2014 WL 12603112 (C.D. Cal. Mar. 5, 2014),
  *aff'd*, 645 F. App'x 545 (9th Cir. 2016 ..................................................................................13

*Belton v. Comcast Cable Holdings, LLC*,
  151 Cal. App. 4th 1224 (2007) .................................................................................................14

*California Council of Blind v. Weber*,
  758 F. Supp. 3d 1054 (N.D. Cal. 2024) ...................................................................................12

*Cazares v. Pacific Shore Funding*,
  No. CV04-2548DSF(SSX),
  2006 WL 149106 (C.D. Cal. Jan. 3, 2006) ..........................................................................1, 11

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR FOR JUDGMENT ON
THE PLEADINGS

(No. 2:24-CV-1717-JNW) – iii

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Coles Valley Church v. Oregon Land Use Board Of Appeals*,
No. 6:20-cv-00661-MK,
2021 WL 1950181 (D. Or. May 14, 2021) ............................................................9, 10

*Contour IP Holding, LLC v. GoPro, Inc.*,
No. 3:17-cv-04738-WHO,
2021 WL 1022854 (N.D. Cal. Mar. 17, 2021) ......................................................3, 22

*Cruz v. Lowe's Home Centers, Inc.*,
No. 8:09-cv-1030-T-30MAP,
2009 WL 2180489 (M.D. Fla. July 21, 2009) ......................................................3, 22

*Dasher v. RBC Bank (USA)*,
745 F.3d 1111 (11th Cir. 2014) .................................................................................20

*DeAsis v. YMCA of Yakima*,
183 Wash. App. 1018,
2014 WL 4376038 (Wash. Ct. App. Sep. 4, 2014).....................................................13

*Doe v. G6 Hospitality Property LLC*,
817 F. Supp. 3d 1074 (W.D. Wash. 2025).................................................................10

*Doe v. United States*,
419 F.3d 1058 (9th Cir. 2005) ...................................................................................10

*Goggins v. Amazon.com Inc.*,
No. 2:24-cv-00257,
2025 WL 2782872 (W.D. Wash. Sep. 30, 2025)........................................................14

*Gray v. Amazon.com, Inc.*,
653 F. Supp. 3d 847 (W.D. Wash. 2023),
*aff'd*, No. 23-35377, 2024 WL 2206454 (9th Cir. May 16, 2024) ...........................17

*Haider v. Lyft, Inc.*,
No. 20-cv-2997 (AJN),
2021 WL 3475621 (S.D.N.Y. Aug. 6, 2021)..............................................................19

*Hanginout, Inc. v. Google, Inc.*,
54 F. Supp. 3d 1109 (S.D. Cal. 2014)........................................................................12

*In re iPhone Application Litigation*,
No. 11-MD-02250-LHK,
2011 WL 4403963 (N.D. Cal. Sep. 20, 2011) ...........................................................13

*Ireland-Gordy v. Tile, Inc.*,
No. 25-403,
2026 WL 594859 (9th Cir. Mar. 3, 2026)....................................................2, 14, 21

*Jeffery v. Weintraub*,
32 Wash. App. 536 (Ct. App. 1982) ...........................................................................19

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR FOR JUDGMENT ON
THE PLEADINGS
(No. 2:24-CV-1717-JNW) – iv

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ..................................................................................................11

*L ALD LLC v. Gray*,
   No. 24-CV-02195-GPC-MSB,
   2025 WL 2210401 (S.D. Cal. Aug. 4, 2025) ..........................................................................12

*Lawyers for Fair Reciprocal Admission v. United States*,
   141 F.4th 1056 (9th Cir. 2025), *cert. denied*, 146 S. Ct. 890 (2025)........................................10

*Leong v. Square Enix of America Holdings, Inc.*,
   462 F. App'x 688 (9th Cir. 2011) .........................................................................................2, 16

*Leong v. Square Enix of America Holdings, Inc.*,
   2010 WL 1641364 (C.D. Cal. Apr. 20, 2010),
   *aff'd*, 462 F. App'x 688 (9th Cir. 2011)..................................................................... *passim*

*M.A. Mortensen Co. v. Timberline Software Corp.*,
   998 P.2d 305 (Wash. 2000) ..............................................................................................18, 19

*McKee v. Audible, Inc.*,
   No. CV 17-1941-GW(Ex),
   2017 WL 4685039 (C.D. Cal. July 17, 2017)..........................................................................16

*Moore v. Federal National Mortgage Ass'n*,
   No. C11-1342RSL,
   2012 WL 424583 (W.D. Wash. Feb. 9, 2012)..........................................................................10

*Morgan v. Sundance, Inc.*,
   596 U.S. 411 (2022)..................................................................................................................22

*Morrison v. Mahoney*,
   399 F.3d 1042 (9th Cir. 2005) ...................................................................................................8

*Netskope, Inc. v. Fortinet, Inc.*,
   No. 25-cv-02360-HSG,
   2026 WL 629800 (N.D. Cal. Mar. 6, 2026)............................................................................10

*Newhall v. Chase Home Finance, LLC*,
   No. 8:10-cv-2624-T-26EAJ,
   2010 WL 8759340 (M.D. Fla. Dec. 22, 2010)........................................................................20

*Newhall v. Chase Home Finance, LLC*,
   No. 10-2749 (WJM)
   2010 WL 4387517 (D.N.J. Oct. 28, 2010) .............................................................................20

*Patterson v. Van Arsdel*,
   883 F.3d 826 (9th Cir. 2018). ............................................................................................14, 20

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR FOR JUDGMENT ON
THE PLEADINGS

(No. 2:24-CV-1717-JNW) – v

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Peters v. Amazon Services LLC*,
   2 F. Supp. 3d 1165 (W.D. Wash. 2013),
   *aff'd*, 669 F. App'x 487 (9th Cir. 2016)......................................................................23

*Pilon v. Discovery Communications, LLC*,
   769 F. Supp. 3d 273 (S.D.N.Y. 2025) .......................................................................14

*Ramos v. Citimortgage, Inc.*,
   No. CIV. 08-02250 WBS KJM,
   2009 WL 86744 (E.D. Cal. Jan. 8, 2009) ..................................................................11

*Robbins v. PlushCare, Inc.*,
   No. 21-cv-03444-MMC,
   2022 WL 2988344 (N.D. Cal. July 28, 2022)...............................................................9

*Sadlock v. Walt Disney Co.*,
   No. 22-cv-09155-EMC,
   2023 WL 4869245 (N.D. Cal. July 31, 2023)..............................................................14

*Saucedo v. Experian Information Solutions*,
   No. 1:22-cv-01584-ADA-HBK,
   2023 WL 4708015 (E.D. Cal. July 24, 2023) .........................................................2, 20

*Saunders v. Lloyd's of London*,
   113 Wash. 2d 330 (1989)........................................................................................3, 22

*SCPS LLC v. Kind Law*,
   No. CV 25-3255-MWF (SSCx),
   2026 WL 96898 (C.D. Cal. Jan. 8, 2026) ..........................................................2, 18, 20

*Smith v. Snohomish County,*
   No. 2:25-cv-00657-TL,
   2025 WL 3469883 (W.D. Wash. Dec. 3, 2025) ...........................................................9

*Tadych v. Noble Ridge Construction, Inc.*,
   200 Wash. 2d 635 (2022)....................................................................................11, 19

*Teed v. Chen*,
   No. 22-cv-02862-CRB,
   2022 WL 16839496 (N.D. Cal. Nov. 9, 2022) ...........................................................11

*Thiele v. Merrill Lynch, Pierce, Fenner & Smith*,
   59 F. Supp. 2d 1067 (S.D. Cal. 1999)........................................................................23

*Torgerson v. One Lincoln Tower, LLC*,
   166 Wash. 2d 510 (2009), *as corrected* (July 16, 2009).......................................12, 17

*Trudeau v. Google LLC*,
   349 F. Supp. 3d 869 (N.D. Cal. 2018),
   *aff'd*, 816 F. App'x 68 (9th Cir. 2020)......................................................................23

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR FOR JUDGMENT ON
THE PLEADINGS

(No. 2:24-CV-1717-JNW) – vi

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Wight v. US West Communications, Inc.*,
    No. CV04-2199P,
    2005 WL 1126934 (W.D. Wash. May 12, 2005) ........................................................8

*Wiseley v. Amazon.com, Inc.*,
    709 F. App'x 862 (9th Cir. 2017) ...............................................................................17

*Wolfire Games, LLC v. Valve Corp.*,
    No. C21-0563-JCC,
    2021 WL 4952220 (W.D. Wash. Oct. 25, 2021) ......................................................3, 5

*Wu v. Uber Techn ologies, Inc.*,
    186 N.Y.S.3d 500 (Sup. Ct. Bronx Cnty. 2022),
    *aff'd*, 197 N.Y.S.3d 1 (App. Div. 2023), *aff'd*, 260 N.E.3d 1060 (N.Y. 2024) ........................18

*Zuver v. Airtouch Communications, Inc.*,
    153 Wash. 2d 293 (2004).............................................................................................19

**Rules**

Federal Rule of Civil Procedure 7 ........................................................................................8

Federal Rule of Civil Procedure 12 ......................................................................................8

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR FOR JUDGMENT ON
THE PLEADINGS
(No. 2:24-CV-1717-JNW) – vii

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## I.    INTRODUCTION[1]

When this Court denied Defendants' motion to strike Valve's Complaint under Federal Rule of Civil Procedure 12(f), it ordered that "Defendants *must answer* the Complaint within fourteen (14) days of this Order." (Dkt. 172, at 3.) In doing so, the Court noted that motions to strike "may be used as delay tactics." In defiance of this Court's order, Defendants did not answer the Complaint. Instead, without conferring with Valve, they doubled down on their tactic by filing a successive Rule 12 Motion seeking dismissal under Rule 12(b)(6) and/or Rule 12(c). (Dkt. 175.)

That Motion is procedurally improper for at least three reasons: (1) it violates this Court's direct order to answer the Complaint; (2) it violates Federal Rules of Civil Procedure 12(g)(2) and 12(c), which do not permit successive Rule 12 motions; and (3) it disregards this Court's Civil Chambers Procedures, which require the moving party to meet and confer before filing a motion to dismiss. For those reasons alone, the Court should deny or strike the Motion and enforce its prior order directing Defendants to answer the Complaint.

If the Court reaches the Motion's merits, the Court should deny it. Defendants argue that under this Court's May 27, 2026, order denying Valve's motion for a preliminary injunction (Dkt. 169, the "Order"), Valve's contract claims are deficient because the Steam Subscriber Agreement that Valve seeks to enforce (the "Controlling SSA"[2]) is unconscionable. But this argument is both incorrect and depends on facts that are outside the four corners of the Complaint, which the Court cannot consider in ruling on a motion to dismiss. *See Cazares v. Pac. Shore Funding*, 2006 WL 149106, at *6 n.4 (C.D. Cal. Jan. 3, 2006) (denying motion where unconscionability argument "require[d] a consideration of facts that are beyond the scope of a motion to dismiss").

---

[1] All emphases are added and internal citations, quotations, and alterations are omitted unless otherwise indicated.

[2] On September 26, 2024, Valve removed the arbitration agreement and class action waiver from the SSA. The SSA has been amended twice since then, including most recently in April 2026. These subsequent amendments do not affect the legal rights of U.S. citizens and are not relevant to this action. The SSA as of September 26, 2024, and the subsequently amended versions of the agreement are referred to collectively as the "Controlling SSA."

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR FOR JUDGMENT ON
THE PLEADINGS
(No. 2:24-CV-1717-JNW) – 1

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*First*, Defendants contend that the forum provision is procedurally unconscionable because they had to choose either to accept it or to abandon their licenses to games on Steam. But the Complaint alleges that Defendants had the ability to retain their licenses and continue to pursue arbitration by pausing use of Steam until their arbitrations concluded. That allegation must be accepted as true. In any event, for a nonessential recreational activity such as playing video games an agreement cannot be procedurally unconscionable because a user always has the option to forgo the activity. Courts have accordingly held that it is not unconscionable to offer licensed video games subject to conditions, including potential termination of the license. *Leong v. Square Enix of Am. Holdings, Inc.*, 2010 WL 1641364, at \*10 (C.D. Cal. Apr. 20, 2010), *aff'd*, 462 F. App'x 688 (9th Cir. 2011). There is thus no legal obligation to make licensed video games "available in perpetuity." *Id.* Nor does termination of a license to play a video game result in "forfeit[ing] any property or money." *Leong v. Square Enix of Am. Holdings, Inc.*, 462 F. App'x 688, 689 (9th Cir. 2011). Regardless, the disputed evidence on which the Court relied in the Order regarding the amount Defendants spent on game licenses is outside the pleading.

*Second*, Defendants argue that the forum provision in the Controlling SSA is substantively unconscionable because it changes the forum for pending disputes. But an amended dispute resolution provision is enforceable with respect to claims already asserted in another forum. *See, e.g.*, *Ireland-Gordy v. Tile, Inc.*, 2026 WL 594859, at \*1-5 (9th Cir. Mar. 3, 2026); *SCPS LLC v. Kind Law*, 2026 WL 96898, at \*9-10 (C.D. Cal. Jan. 8, 2026); *Saucedo v. Experian Info. Sols.*, 2023 WL 4708015, at \*6 (E.D. Cal. July 24, 2023). Defendants point to the Order's conclusion that the Controlling SSA's dispute resolution provision was likely substantively unconscionable based on the "work and expense" they had incurred in arbitration and the fact that they had "pursued" claims "to the verge of relief." Order at 24, 26. But the Complaint does not allege the stage of Defendants' arbitrations either at the time they agreed to the Controlling SSA, which is the relevant question for purposes of substantive unconscionability, or at the time the Order issued. Thus, even assuming that the stage of the arbitration can be relevant to the unconscionability

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR FOR JUDGMENT ON
THE PLEADINGS
(No. 2:24-CV-1717-JNW) – 2

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

analysis, the Motion relies on facts outside the pleading and must be denied.

*Third*, Defendants argue that equity estops Valve from enforcing the Controlling SSA. Defendants point to the fact that, in 2021, Valve successfully moved to compel seven consumers to arbitrate antitrust claims under a now-superseded August 2020 version of the SSA. *See Wolfire Games, LLC v. Valve Corp.*, 2021 WL 4952220, at *2 (W.D. Wash. Oct. 25, 2021). That is not even the same SSA pursuant to which these Defendants are attempting to proceed in arbitration—the April 25, 2023, version. Defendants argue that Valve's motion effected a waiver of Valve's right to ever enter into an amended SSA with them that changed the forum for disputes. That is nonsense. None of those consumers are Defendants here. Further, the Court held that the question whether the arbitration agreement in that SSA was enforceable was for an arbitrator to decide. In June 2024, Defendants' own counsel obtained four arbitral rulings that the arbitration agreement was unenforceable. Defendants' counsel then commenced a putative nationwide class action in this Court on that basis and included in the putative class definition *all Steam users*—including all Defendants. In the wake of changed circumstances, Valve acted in good faith and presented a modified SSA to its users that removed the arbitration agreement. Valve could not have "waived" its right to litigate in court before such a right took effect. *See, e.g.*, *Cruz v. Lowe's Home Ctrs., Inc.*, 2009 WL 2180489, at *3 (M.D. Fla. July 21, 2009) ("A party cannot waive a right that it does not yet have."). Nor did Valve act "inconsistently": it merely acted in response to new circumstances. Judicial or equitable estoppel are simply inapplicable. *See, e.g.*, *Contour IP Holding, LLC v. GoPro, Inc.*, 2021 WL 1022854, at *3 (N.D. Cal. Mar. 17, 2021) (no judicial estoppel where "the facts underlying [party's] position changed"); *Saunders v. Lloyd's of London*, 113 Wash. 2d 330, 340 (1989) (equitable estoppel requires act that is both "inconsistent" and inequitable).

For the foregoing reasons, the Court should strike or deny the motion to dismiss and enforce its order directing Defendants to answer the Complaint.

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR FOR JUDGMENT ON
THE PLEADINGS
(No. 2:24-CV-1717-JNW) – 3

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## II.    BACKGROUND

### A.    Valve and Steam Users Agree to the SSA, Which at One Time Included an Arbitration Provision

For individuals to create a Steam account, they must agree to the SSA. (Compl. ¶ 56.) Valve periodically updated the SSA since it was first implemented in 2003. In 2012, Valve added to the SSA a class action waiver and an arbitration agreement providing that, with limited exceptions, you and Valve "agree to resolve all disputes and claims between us in individual binding arbitration" with the AAA. (*Id*. ¶ 58, Ex. 4 § 11(A).) The SSA was periodically updated since that time, with its most recent update in April 2026.

### B.    Valve Licenses Video Games, In-Game Content, And Other Software

Valve licenses the video games, in-game content, and other software available on Valve's online Steam service. Valve expressly discloses (and each user agrees) in the SSA that this content is subject to licenses. Defendants seek to arbitrate their claims under the version of the SSA that went into effect on April 25, 2023 (the "Superseded SSA"), but has since been superseded. The Superseded SSA informed users:

> Valve hereby grants, and you accept, a non-exclusive *license* and right, to use the Content and Services for your personal, non-commercial use (except where commercial use is expressly allowed herein or in the applicable Subscription Terms). This license ends upon termination of (a) this Agreement or (b) a Subscription that includes the license. The Content and Services are *licensed, not sold*. Your license confers *no title or ownership* in the Content and Services. To make use of the Content and Services, you must have a Steam Account and you may be required to be running the Steam client and maintaining a connection to the Internet.

(Ex. 4 § 2(A).)

By agreeing to the SSA, each user also agreed that the terms governing users' Steam accounts and use of the Steam platform could change:

- Users agreed that "[t]his Agreement may at any time be mutually amended by your explicit consent to changes proposed by Valve." (Ex. 4 § 8(A).)

---

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR FOR JUDGMENT ON
THE PLEADINGS
(No. 2:24-CV-1717-JNW) – 4

- Valve could amend the agreement unilaterally after providing at least 30 days' notice by email. (*Id.* § 8(B).)

### C. Plaintiffs in *Wolfire* Commence Consumer Antitrust Class Action Against Valve

In 2021, a video game developer and seven consumer plaintiffs brought a putative class action in this Court against Valve asserting violations of the federal antitrust laws, *Wolfire Games LLC v. Valve Corp.*, No 2:21-cv-00563 (W.D. Wash. filed Apr. 27, 2021). On June 13, 2021, Valve moved to compel arbitration of the consumer claims under the version of the SSA in effect at the time, which was last updated August 28, 2020, and was itself later superseded by the Superseded SSA. *Id.*; Dkts. 35, 36. The consumer plaintiffs challenged the enforceability of the arbitration agreement then in effect. The Court granted the motion but declined to address the enforceability challenge, concluding that it should be addressed in arbitration. *See Wolfire Games*, 2021 WL 4952220, at *2. *Wolfire* was stayed as to the consumer plaintiffs. *Id.* None of those plaintiffs is a Defendant here.

### D. Bucher Law Commences Mass Arbitration Under the Superseded SSA and Obtains Arbitrator Rulings that the Arbitration Agreement in the Superseded SSA Is Unenforceable

In 2023, Bucher Law PLLC commenced its mass arbitration strategy against Valve, which was designed to "weaponize[]" an arbitration agreement between Valve and Defendants. (Ex. 1 at 3.) Bucher Law brought 4,991 arbitrations against Valve before the AAA. (Compl. ¶ 78.) The original 572 Defendants in this action were among the claimants in those arbitrations. (*Id.* ¶ 79.)

On July 8, 2024, in four of the arbitrations that Bucher Law had initiated—none of which involved any of these Defendants—the arbitrator concluded, at Bucher Law's urging, that the arbitration provision in the Superseded SSA was not enforceable. (Compl. ¶¶ 82-83.) The arbitrator dismissed those arbitrations. (*Id.* ¶ 84.)

### E. Bucher Law Files Consumer Antitrust Class Action in This Court

On August 9, 2024, Bucher Law and another law firm filed a putative antitrust class action

---

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR FOR JUDGMENT ON
THE PLEADINGS
(No. 2:24-CV-1717-JNW) – 5

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

against Valve in this Court, *Elliott v. Valve Corporation*, No. 2:24-cv-01218 (W.D. Wash. filed Aug. 9, 2024), naming the four dismissed claimants as plaintiffs. (Compl. ¶¶ 5, 85, 91.) Even though Bucher Law now asserts that Defendants wish to pursue arbitrations, it filed *Elliott* on behalf of a putative class of all Valve consumers, including Defendants. (*Id.*) It did not carve out users who assert arbitration rights or even any who had pending arbitrations. Bucher Law asserted claims identical to those it asserted on behalf of Defendants in arbitration. (*Id.* ¶ 92.) Even though the Superseded SSA was still in effect when it filed *Elliott*, Bucher Law alleged that it could pursue a nationwide class action because it had "won binding decisions from arbitrators rendering Valve's arbitration provision unenforceable." (*Id.* ¶ 97.) *Elliott* is thus premised on the proposition that the Superseded SSA's arbitration agreement is unenforceable as to all Steam users and therefore there is no arbitration agreement between Valve and any of its users. (*Id.*)

On December 6, 2024, this Court consolidated several related putative consumer class actions, including *Elliott*, into *Wolfire*. (*Wolfire* Dkt. 394.)

**F.      Valve Removes the Arbitration Agreement from the SSA**

On September 26, 2024, in light of those arbitral rulings that the arbitration provision was unenforceable and the *Elliott* filing, Valve exercised its right to offer its users around the world an amended SSA that removed the arbitration provision.

The Controlling SSA now provides for resolution of disputes in court.[3] (*See* Ex. 3 § 10.) It further includes a merger clause providing that it supersedes and replaces the parties' prior agreement. (*Id.* § 11.) Valve provided notice of that change to Steam users. (*See* p. 17 *infra*.) The notice explained, among other things: "[T]he updated [SSA] will become effective on November 1, 2024, unless you delete or discontinue use of your Steam account before then." (Compl. ¶ 125.)

Of the original 572 Defendants, 454 (about 80%) affirmatively accepted the Controlling SSA by November 1, 2024, either by (i) checking a box next to the text "I agree to the Updated

---

[3] This forum provision applicable to U.S. consumers in the version of the SSA updated on September 26, 2024, and the two subsequently updated versions are identical.

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR FOR JUDGMENT ON
THE PLEADINGS
(No. 2:24-CV-1717-JNW) – 6

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Steam Subscriber Agreement" then clicking a button labeled "Accept Updated SSA" under a notification regarding the updates; (ii) checking a box stating their agreement to the new SSA when making a purchase on Steam; or (iii) performing both of those actions. (Compl. ¶¶ 31, 131, 171-173.) The remaining 118 Defendants accepted the Controlling SSA by continuing to use their account after November 1, 2024. (*Id.* ¶¶ 174-183.) Of those 118 Defendants, 76 also affirmatively accepted the Controlling SSA by making a purchase after November 1, 2024 (*id.* ¶ 175), leaving just 42 who accepted solely through continued use.

### G.    Valve Files This Action to Enjoin These Arbitrations Because There Is No Agreement to Arbitrate Between the Parties

On October 18, 2024, Valve promptly commenced this action by filing a petition to enjoin Defendants' arbitrations. (Dkt. 1.) Valve sought injunctive relief to avoid the irreparable harm of being compelled to arbitrate when there was no longer any agreement to arbitrate. (*Id.* ¶ 186.)

On August 1, 2025, this Court issued an order recognizing its subject matter jurisdiction and denying the motion of five Defendants to dismiss this action. (Dkt. 76 at 1.) The Court further held that Valve must file a complaint rather than a petition and directed Valve to file a complaint. (*Id.* at 10-11.) Valve did so. Defendants responded by filing a motion to strike the Complaint in its entirety under Rule 12(f) (Dkt. 105), electing not to move to dismiss under Rule 12(b)(6).

On May 27, 2026, this Court denied Valve's request for a preliminary injunction. The Court recognized that "Valve has likely shown both assent to the [Controlling SSA] and that the document, on its face, reaches the pending arbitrations." Order at 18. But the Court concluded that, under Washington law, the forum-selection clause in the Controlling SSA is likely procedurally and substantively unconscionable, and therefore unenforceable, "as applied to these Defendants." *Id.* at 17.

On June 4, 2026, this Court denied Defendants' motion to strike, admonishing that the motion was in essence a "motion to dismiss" and expressing concern about using Rule 12(f) motions "as delay tactics." (Dkt. 172, at 2 (citation omitted)). The Court ordered that "Defendants

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR FOR JUDGMENT ON
THE PLEADINGS
(No. 2:24-CV-1717-JNW) – 7

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*must answer* the Complaint within fourteen (14) days of this Order. *See* Fed. R. Civ. P. 12(a)(4)(A)." (*Id.* at 3.) Defendants instead filed this Motion.

## III.   ARGUMENT

### A.   The Motion Should Be Stricken Or Denied As Improper

#### 1.   Defendants' Motion Violates This Court's Direct Order to Answer the Complaint

The Court should strike or deny Defendants' Motion because it violates the Court's order to answer the complaint. Specifically, the Court's order denying Defendants' Rule 12(f) motion to strike the Complaint commanded that "Defendants *must answer* the Complaint within fourteen (14) days of this Order. *See* Fed. R. Civ. P. 12(a)(4)(A)." (Dkt. 172, at 3.) Contrary to Defendants' contention, the Court did not "direct[] Consumer-Defendants to respond to the Complaint within fourteen days" (Mot. 4); instead, it expressly required an "answer."

The Court's citation to Rule 12(a)(4)(A) confirms that an answer was required. Under that rule, when a court denies a motion under Rule 12, "the *responsive pleading* must be served within 14 days after notice of the court's action." Fed. R. Civ. P. 12(a)(4)(A). "Responsive pleading" means an answer. *See* Fed. R. Civ. P. 7(a). "[A] motion to dismiss is not deemed a responsive pleading." *Wight v. US W. Commc'ns, Inc.*, 2005 WL 1126934, at *3 (W.D. Wash. May 12, 2005); *accord Morrison v. Mahoney*, 399 F.3d 1042, 1047 (9th Cir. 2005). Defendants' Motion thus violates this Court's order.

Defendants' counsel may be reluctant to answer the Complaint because they may not be able to communicate with various Defendants to formulate responses to Valve's allegations or they might not have confirmation that they can act in this proceeding on their behalf. (*See* Hrg. on Mot. for Prelim. Inj. at 6:5 (May 19, 2026) (stating Bucher Law represents "most" of the Defendants).) On May 18, 2026, Mr. Bucher appeared in this action on behalf of numerous Defendants and former Defendants. (Dkt. 159.) Yet Mr. Bucher or his co-counsel have admitted in arbitrations that they are unable to contact many of those individuals. (Dkts. 139, 160; *see also* Compl. ¶¶ 40-49; Dkts. 12, 39 (Valve motion for leave to provide court-approved statements to Defendants who had

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR FOR JUDGMENT ON
THE PLEADINGS
(No. 2:24-CV-1717-JNW) – 8

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

communicated with Valve that they were confused, did not know they had filed an arbitration, or wanted to end their arbitrations).)

### 2.    Defendants' Successive Rule 12 Motion Violates the Federal Rules of Civil Procedure

The Court should also strike or deny Defendants' successive Rule 12 Motion because it is not permitted by the Federal Rules. Under Rule 12(g)(2), "a party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." "'Rule 12(g)'s consolidation requirement applies not only to Rule 12(b) defenses, but also to a motion for a more definite statement under Rule 12(e) *and to a motion to strike under Rule 12(f)*.'" *Smith v. Snohomish Cnty.*, 2025 WL 3469883, *2 (W.D. Wash. Dec. 3, 2025) (quoting 2 Moore's Federal Practice — Civil § 12.21). Having chosen to move under Rule 12(f) without success, Defendants cannot now file another motion under Rule 12.

Defendants may argue that their successive motion is "harmless," citing *In re Apple iPhone Antitrust Litigation*, 846 F.3d 313 (9th Cir. 2017), *aff'd sub nom. Apple Inc. v. Pepper*, 587 U.S. 273 (2019). But *Apple* is distinguishable. There, Apple moved to dismiss for lack of subject matter jurisdiction and to add a necessary defendant, and plaintiffs filed a series of amended pleadings in response to court orders requiring addition of the other defendant and allegations supporting Article III standing. *See* 846 F.3d at 319-20. It was only after the fourth pleading, in which the plaintiffs finally alleged "sufficient injury to confer Article III standing," that Apple's Rule 12(b)(6) arguments were ripe for decision. *Id.* at 320. Under those circumstances, those arguments "may not have been late-filed within the meaning of Rule 12(g)(2)" at all given the jurisdictional issues with the prior pleadings. *Id.*; *Coles Valley Church v. Oregon Land Use Bd. of Appeals*, 2021 WL 1950181, at *8 (D. Or. May 14, 2021) (distinguishing *In re Apple* because it "involved successive motions to dismiss each filed after the plaintiff amended their complaint"); *accord, e.g.*, *Robbins v. PlushCare, Inc.*, 2022 WL 2988344, at *1 & n.3 (N.D. Cal. July 28, 2022)

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR FOR JUDGMENT ON
THE PLEADINGS
(No. 2:24-CV-1717-JNW) – 9

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

(quoting same in denying successive motion to dismiss); *see also Netskope, Inc. v. Fortinet, Inc.*, 2026 WL 629800, at *2 (N.D. Cal. Mar. 6, 2026) (permitting motion to dismiss directed at second amended complaint that mooted defendant's first motion).

This is also not a case where successive Rule 12 motions were brought against "subsequent amended complaints." *Coles Valley Church*, 2021 WL 1950181, at *8. Valve's operative Complaint is the same pleading that Defendants sought to strike under Rule 12(f). Filing successive Rule 12 motions against the same pleading is exactly what Rule 12(g) prohibits.

Defendants' alternative framing of the Motion as seeking judgment on the pleadings under Rule 12(c) is also improper. A motion for judgment on the pleadings is "procedurally premature" and must be dismissed if it is filed before defendants answer the operative complaint. *Law. for Fair Reciprocal Admission v. United States*, 141 F.4th 1056, 1074 (9th Cir.) (affirming dismissal of Rule 12(c) motion filed "before Defendants answered the amended complaint"), *cert. denied*, 146 S. Ct. 890 (2025); *accord Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005); *Moore v. Fed. Nat'l Mortg. Ass'n*, 2012 WL 424583, at *1 & n.3 (W.D. Wash. Feb. 9, 2012) (dismissing pre-answer motions for judgment on the pleadings as premature). Here, Defendants have never answered Valve's Complaint.

### 3. Defendants Filed Their Motion Without Conferring in Violation of This Court's Civil Chambers Procedures

The Court should also strike or deny Defendants' Motion because their counsel failed to meet and confer with Valve prior to making the motion. Section 5.6 of this Court's Civil Chambers Procedures provides that "the parties must meet and confer before filing any Rule 12(b) motion to dismiss" and that any filed Rule 12(b) motion "must include a certification of conferral." Defendants ignored these requirements, simply filing the Motion with no notice at all. As another court in this District put it, "[t]he Court's meet-and-confer requirement is not a meaningless formality, nor is it optional." *Doe v. G6 Hosp. Prop. LLC*, 817 F. Supp. 3d 1074, 1082 (W.D.

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR FOR JUDGMENT ON
THE PLEADINGS
(No. 2:24-CV-1717-JNW) – 10

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Wash. 2025). Defendants failed to engage in this dialogue here, as their lack of certification confirms.

### B.    Defendants' Unconscionability Arguments Depend On Purported Facts Outside The Pleadings

If the Court reaches the merits of the Motion, it should deny it. "Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). "A determination of whether a contract is unconscionable requires a consideration of facts that are beyond" the pleadings. *Cazares*, 2006 WL 149106, at *6 n.4. Accordingly, courts regularly deny motions to dismiss based on assertions of unconscionability where they are reliant on information outside the pleading. *See, e.g.*, *Teed v. Chen*, 2022 WL 16839496, at *5 (N.D. Cal. Nov. 9, 2022) (defendants' "unconscionability argument is unavailing at this stage because the question of whether a contract is unconscionable exceeds the scope of a 12(b)(6) motion"); *Ramos v. Citimortgage, Inc.*, 2009 WL 86744, at *7 (E.D. Cal. Jan. 8, 2009) ("consideration of . . . claim that [defendant's] loan is unconscionable is premature" at the pleading stage); *Alaska Airlines, Inc. v. Carey*, 2008 WL 743946, at *2 (W.D. Wash. Mar. 18, 2008) (denying motion to dismiss; "at the 12(b)(6) stage, it cannot be concluded that a motion to dismiss is appropriate" on grounds that contract is unconscionable). Although Defendants contend that whether a contract term is unconscionable "is a question of law," neither case they cite dismissed a contract claim at the pleading stage. *See Tadych v. Noble Ridge Constr., Inc.*, 200 Wash. 2d 635, 641 (2022) (summary judgment); *Adler v. Fred Lind Manor*, 103 P.3d 773, 781-82 (Wash. 2004) (resolving motion to compel under summary judgment standard). To be sure, as discussed below, Defendants' arguments can be rejected as a matter of law; but they cannot succeed at the Rule 12(b)(6) stage because they depend on evidence—which Valve contends is irrelevant and contests—that is outside the Complaint.

Defendants rely on the Court's initial Order on Valve's motion for a preliminary injunction. But courts routinely deny motions to dismiss where—as here—the court has already denied a

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR FOR JUDGMENT ON
THE PLEADINGS
(No. 2:24-CV-1717-JNW) – 11

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

motion for a preliminary injunction based on the same claims. That is because the "standard on a motion to dismiss is quite different from the standard for granting a preliminary injunction." *L ALD LLC v. Gray*, 2025 WL 2210401, at *4 (S.D. Cal. Aug. 4, 2025); *see also Cal. Council of Blind v. Weber*, 758 F. Supp. 3d 1054, 1058 (N.D. Cal. 2024) ("denial of the requested injunction on the motion for a preliminary injunction does not dictate the outcome" on motion to dismiss because court applies different standards); *Hanginout, Inc. v. Google, Inc.*, 54 F. Supp. 3d 1109, 1136 (S.D. Cal. 2014) (similar).

As shown below, Defendants repeatedly rely on purported facts outside the Complaint to support their unconscionability arguments. These arguments are not appropriate for a motion to dismiss; the Court should deny the Motion.

### C. The Complaint Should Not Be Dismissed Based on Procedural Unconscionability

Defendants argue that Valve's contract claims should be dismissed because the forum provision in the Controlling SSA is procedurally unconscionable. But this determination is highly fact-specific and cannot be made on the face of the pleading. "Procedural unconscionability is determined in *light of the totality of the circumstances*, including (1) the manner in which the parties entered into the contract, (2) whether the parties had a reasonable opportunity to understand the terms, and (3) whether the terms were hidden in a maze of fine print." *Torgerson v. One Lincoln Tower, LLC*, 166 Wash. 2d 510, 518-19 (2009), *as corrected* (July 16, 2009). The allegations in the Complaint do not establish that the forum provision in the Controlling SSA is procedurally unconscionable (and it is not).

### 1. The Complaint Presents No Basis to Conclude that the Forum Provision of the Controlling SSA Is Procedurally Unconscionable

Courts, including Washington courts and other courts in the Ninth Circuit, hold that a contract governing a "nonessential recreational activity" cannot be procedurally unconscionable because "the consumer always has the option of forgoing the activity." *See Bassett v. Elec. Arts Inc.*, 2015 WL 1298644, at *11 (E.D.N.Y. Feb. 9, 2015), *report and recommendation adopted*, 93

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR FOR JUDGMENT ON
THE PLEADINGS
(No. 2:24-CV-1717-JNW) – 12

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

F. Supp. 3d 95 (E.D.N.Y. 2015) (agreement not unconscionable even though plaintiff could not access online features of games he purchased without agreeing to terms); *see also A.C. ex rel. Carbajal v. Nintendo of Am. Inc.*, 2021 WL 1840835, at *3 (W.D. Wash. Apr. 29, 2021) (plaintiff "had a meaningful choice to accept the delegation provision, to opt out of the arbitration clause (including the delegation provision), or to reject the entire [user agreement] and return his Nintendo"); *In re iPhone Application Litig.*, 2011 WL 4403963, at *8 (N.D. Cal. Sep. 20, 2011) (iPhone gaming apps "are nonessential recreational activities," creating "difficulties" for challenging Apple's terms "both with respect to the procedural and substantive element of unconscionability"); *Bauer v. Atlantis Events, Inc.*, 2014 WL 12603112, at *3 (C.D. Cal. Mar. 5, 2014) (cruise cancellation policy was not unconscionable since plaintiffs could have forgone cruise or "booked another type of vacation"), *aff'd*, 645 F. App'x 545 (9th Cir. 2016); *Adkins v. Facebook, Inc.*, 2019 WL 3767455, at *2 (N.D. Cal. Aug. 9, 2019) ("fatal to finding oppression here," Facebook's social media service "is not one of life's necessities"); *DeAsis v. YMCA of Yakima*, 183 Wash. App. 1018, 2014 WL 4376038, at *5-6 (Wash. Ct. App. Sep. 4, 2014) (rejecting argument that a health club membership agreement was a procedurally unconscionable contract of adhesion because "a health club is not essential"). Video games are non-essential recreational activities. *Bassett*, 2015 WL 1298644, at *11; *Nintendo*, 2021 WL 1840835, at *3.

Defendants seek to distinguish *In re iPhone Application Litigation* by arguing that it concerned "free or trivially priced apps," and seek to distinguish *Bassett* as involving online features of a video game, thus, neither case involved a consumer surrendering "an entire paid-for library." (Mot. 17.) However, neither of those cases discussed the value of the apps or prices paid, indicating it was not a consideration for those courts. Nor do Defendants dispute that both of those cases and the instant action all involve video games, which are nonessential recreational activities. That Defendants might have had a game library—a fact not alleged in the Complaint and therefore not properly considered at this stage—does not change that calculus because there is no legal obligation to make licensed video games "available in perpetuity." *Leong*, 2010 WL 1641364, at

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR FOR JUDGMENT ON
THE PLEADINGS
(No. 2:24-CV-1717-JNW) – 13

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*10.[4]

### 2. The Complaint Presents No Basis to Conclude that the Controlling SSA's Adhesive Structure Renders the Forum Provision Procedurally Unconscionable

Defendants cannot show based on the Complaint that the manner in which the parties entered into the Controlling SSA renders the forum selection clause unconscionable. The Complaint alleges the parties entered into the bilateral agreement through a "Pop-up Notice" or "purchase-screen check box" that the Court referred to as "conventional clickwrap mechanisms." Order at 18. This Court and other courts routinely enforce agreements entered into through these means. *Id*.

For Defendants who accepted the Controlling SSA through continued use of Steam, Defendants argue that "[s]ilence in response to a coerced ultimatum is not assent." (Mot. 15.) However, users of online services may manifest assent if they continue to use a service after receiving notice of updated terms. *See, e.g.*, *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 289-90 (S.D.N.Y. 2025) (claimant assented where he "continued to subscribe to and use [service]" after receiving notice of updated agreement); *Sadlock v. Walt Disney Co.*, 2023 WL 4869245, at *12 (N.D. Cal. July 31, 2023) ("[E]mails followed by continued use is sufficient to establish assent."); *Tile, Inc.*, 2026 WL 594859, at *1-5 (similar); *Goggins v. Amazon.com Inc.*, 2025 WL 2782872, at *10 (W.D. Wash. Sep. 30, 2025) (Whitehead, J.) (compelling arbitration under updated agreement where Amazon provided notice of the modification and plaintiff accessed the Advantage homepage and "[a]t no point" "discontinue[d] membership in the Advantage program"). The Complaint alleges that Defendants continued use here after receiving notice (Compl. ¶ 131), an allegation which must be "taken as true." *Patterson v. Van Arsdel*, 883 F.3d 826, 829 (9th Cir. 2018).

---

[4] Defendants contend that *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224 (2007), concluded that a contract for non-essential activity was not unconscionable because alternative sources were available. (Mot. 16.) But *Belton* confirmed that "when the challenged term is in a contract concerning a nonessential recreational activity, the consumer always has the option of simply forgoing the activity." 151 Cal. App. 4th at 1245.

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR FOR JUDGMENT ON
THE PLEADINGS
(No. 2:24-CV-1717-JNW) – 14

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

### 3. The Complaint Presents No Basis to Conclude that Valve's Opt-Out Was Illusory

Defendants cannot show based on the Complaint alone that they lacked a meaningful choice whether to enter into the Controlling SSA. (Mot. 13-15.) In its Order, the Court concluded that Defendants could likely show that "[t]o reject the [Controlling] SSA, the consumer had to abandon the only tangible benefit offered to her by Valve: access to her Steam account and the game license(s) she had already bought." Order at 20.[5] But the Complaint alleges otherwise: Valve's email and pop-up notices specified that Steam users could reject the proposed modifications *and* retain the licenses they had purchased to use games on Steam by discontinuing use of Steam: "[T]he updated [SSA] will become effective on November 1, 2024, unless you delete or discontinue use of your Steam account before then." (Compl. ¶ 125.)[6] This meant that Defendants could keep their Steam accounts and continue arbitrating under the Superseded SSA. The only condition was that they forego using those accounts while their arbitrations were ongoing.

In any event, as explained above, a user always has the option to forgo a nonessential recreational activity such as playing video games. (*See supra* Part III.C.1.) It is neither procedurally nor substantively unconscionable to offer licensed video games subject to conditions, including potential termination of the license. *See, e.g.*, *Leong*, 2010 WL 1641364, at *10. There is thus no legal obligation to make licensed video games "available in perpetuity." *Id.* For example, in *Leong*, the plaintiffs purchased a license to play an online video game, and the user agreement made clear that the purchaser did not own any of the software, game data, or characters. *Id.* at *6. The court rejected the plaintiffs' argument that the agreement's terms permitting the developer to

---

[5] In the Order, the Court concluded that the forum provision in the Controlling SSA was likely procedurally unconscionable because Defendants would have been required to agree to it or "abandon . . . an average of more than $3,000" worth of game licenses. Order at 20-21. The Complaint alleges nothing about Defendants' Steam licenses. That number is derived from a disputed declaration from Defendants' counsel that is outside the pleadings; it cannot be considered on a motion to dismiss.

[6] Section 8(B) of the Superseded SSA did not create "ambiguity in the rejection terms" Order at 20, and in fact clarified in its concluding sentence that "[i]f you don't agree to the amendments or to any of the terms in this Agreement, your only remedy is to cancel your Account *or to cease use of the affected Subscription(s)*." (Ex. 4 § 8(B).)

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR FOR JUDGMENT ON
THE PLEADINGS
(No. 2:24-CV-1717-JNW) – 15

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

cancel or revoke the user's license were unconscionable under California law. *Id.* at \*10. The Ninth Circuit affirmed, explaining that the plaintiffs' "allegations are insufficient to show that they forfeited any property or money" when their accounts were terminated: "the game's user agreement, which each user must accept prior to playing the game, states that users do not own the game software or data." *Leong*, 462 F. App'x at 689; *see also McKee v. Audible, Inc.*, 2017 WL 4685039, at \*14 (C.D. Cal. July 17, 2017) (although Amazon and Audible "provide users credits as part of their Audible subscription, and those credits may be effected negatively should a user wish to terminate its membership," "[t]hat reality does not render the arbitration provision unconscionable"). The same is true here.

Defendants seek to distinguish *Leong* on the grounds that the consumer there failed to pay a monthly subscription fee and thus, there was nothing "shocking" about nonpaying users' accounts being cancelled. (Mot. 18.) But the court reasoned not that the terminations rested on nonpayment of the fee, but that the plaintiffs' "allegations [were] insufficient to show that they forfeited any property or money" when their accounts were terminated: "the game's user agreement, which each user must accept prior to playing the game, states that users do not own the game software or data." 462 F. App'x at 689. The same is true here. The Superseded SSA explicitly states that Valve grants users "a non-exclusive license and right." (Ex. 4, § 2(A).)

Software and other modern digital products are typically licensed to customers under conditions, including the possibility of updated terms or cancellation. Unlike other goods, they are not sold outright, so there is no transfer of property ownership. Indeed, such license agreements are "ubiquitous" and "license agreements, rather than sales, have become the predominate form of the transfer of rights to use copyrighted software material." *Adobe Sys. Inc. v. Christenson*, 809 F.3d 1071, 1078 (9th Cir. 2015). Valve's licensing of content available on the Steam platform fits squarely within this long-standing framework. As both the Superseded and Controlling SSA make clear, Steam subscribers do not purchase "title or ownership" of a video game for all time. Rather, they purchase only a license to play that game on the Steam platform subject to certain conditions,

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR FOR JUDGMENT ON
THE PLEADINGS
(No. 2:24-CV-1717-JNW) – 16

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

including acceptance of the terms governing use of Steam. (*See* Exs. 3-4.) Valve provided users more than 30 days to decide whether to accept the Controlling SSA. Even if users deleted or stopped using their Steam accounts, they received the full benefit of their bargain by having the opportunity to play their licensed games while they remained active Steam users.

Regardless, courts enforce modified consumer contracts where there is no option to reject the new terms and continue using the service. *See, e.g.*, *Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 857 n.9 (W.D. Wash. 2023) (rejecting contention that plaintiffs did not consent through continued use where terms "expressly provide that users' 'continued use of Alexa' after any modifications to that agreement 'constitutes [their] acceptance of the terms' therein"), *aff'd*, 2024 WL 2206454 (9th Cir. May 16, 2024). At the time Defendants purchased any game license, they did so with full notice that continued use of that license was contingent on agreeing to the SSA and any future amendments. (Ex. 3 § 8(B).) The Complaint alleges that Defendants had a reasonable opportunity to understand the terms of the forum provision in the Controlling SSA based on the notices provided. (Compl. ¶¶ 114-129); *see also Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 864 (9th Cir. 2017) (action button next to a hyperlinked consumer agreement was "in sufficient proximity to give" plaintiff "a 'reasonable opportunity to understand' that he would be bound by additional terms").

Valve also presented the choice to Defendants in clear terms. The forum provision in the Controlling SSA was not hidden in a maze of fine print. As the Complaint explains, Valve's notices expressly called out the core change reflected in the forum provision—that, under the Controlling SSA all disputes must proceed in court—(i) in a concise email notice, (ii) in a pop-up notice on the Steam platform, (iii) on a banner to the Controlling SSA presented after the new agreement was launched, and (iv) through a blog post on the Steam platform. (Compl. ¶¶ 114-129.) The notices each linked to the Controlling SSA and the forum clause was in the same size font as the other key provisions and clearly labeled "APPLICABLE LAW/JURISDICTION." (*Id.*; Ex. 3. § 10); *see Torgerson*, 166 Wash. 2d at 520 (enforcing similarly formatted and presented provision).

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR FOR JUDGMENT ON
THE PLEADINGS
(No. 2:24-CV-1717-JNW) – 17

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Defendants argue that "the millions invested by their counsel in filing fees, experts, attorneys, and the software infrastructure to pursue claims repeatedly" (Mot. 14-15), should also be part of the unconscionability analysis. But those expenditures are not alleged in the Complaint. Moreover, unconscionability is determined "at the time the contract was formed." *See M.A. Mortensen Co. v. Timberline Software Corp.*, 998 P.2d 305, 315 (Wash. 2000). Funds that their counsel—who are not parties to the SSA—voluntarily spent, possibly without their clients' authorization (Compl. ¶¶ 40-49), in the months and years *after* their clients agreed to the Controlling SSA are entirely irrelevant.

### 4.      Valve Did Not Bypass Counsel to Obtain Assent

Valve amended the SSA at the same time for all Steam users around the world. Defendants argue that "Valve's method of obtaining assent creates an independent procedural defect" because Valve communicated the amendment to its "adversaries" who were represented by counsel of record. (Mot. 19.) This Court also found that the claimed procedural unconscionability was compounded by Valve "push[ing]" the amendment past Defendants' lawyers. Order at 22. These purported facts outside of the Complaint are not properly considered on a motion to dismiss. Nothing on the face of the Complaint indicates that Defendants agreed to the Controlling SSA before they had an opportunity to consult with their counsel. To the contrary, the Complaint alleges that although no additional notice was required, Valve notified Defendants' counsel of the update the day after Valve rolled it out. (Compl. ¶¶ 135, 161-163; Dkt. 362.)

In any event, there is nothing improper—let alone procedurally unconscionable—about a business communicating directly with its entire consumer base to present a universally applicable update to its user agreement, even where there is pending litigation. *See, e.g.*, *Wu v. Uber Techs., Inc.*, 186 N.Y.S.3d 500, 541 (Sup. Ct. Bronx Cnty. 2022) (claimants' "submissions are also devoid of any attempt to demonstrate that the January 2021 Pop-Up constitutes an unauthorized ex parte communication violative of Rule 4.2."), *aff'd*, 197 N.Y.S.3d 1 (App. Div. 2023), *aff'd*, 260 N.E.3d 1060 (N.Y. 2024); *SCPS LLC*, 2026 WL 96898, at *9 (rejecting contention that businesses went

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR FOR JUDGMENT ON
THE PLEADINGS
(No. 2:24-CV-1717-JNW) – 18

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

"around counsel's back" to obtain assent to updated agreement).

Large companies "may face a number of lawsuits at any given time," and it would be "unworkable in practice" to force companies to carve out represented users from communications presenting updates to user agreements in the ordinary course of business. *Haider v. Lyft, Inc.*, 2021 WL 3475621, at *3 (S.D.N.Y. Aug. 6, 2021). Defendants "cite no authority for the proposition that an amendment to a company's terms of service may constitute a prohibited communication with a represented party," and to prohibit such communications "would essentially freeze" businesses' contracts in place. *Id.*

### 5.    The Complaint Presents No Basis to Conclude that the Controlling SSA's Forum Provision Is Substantively Unconscionable

In its Order, the Court concluded that "[t]he retroactive forum clause is likely substantively unconscionable as applied to Defendants." Order at 27. This conclusion relied on factual contentions that are outside of the Complaint and thus may not be considered in resolving this Motion. In any event, Valve respectfully submits that the forum provision in the Controlling SSA is not substantively unconscionable.

Courts find substantive unconscionability where terms are "one-sided or overly harsh"—*i.e.*, where terms are "[s]hocking to the conscience," "monstrously harsh," or "exceedingly calloused." *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wash. 2d 293, 303 (2004). "A contract provision becomes substantively unconscionable when it eliminates otherwise established statutory rights and is one sided, benefiting the contract drafter, is also not prominently set out in the contract, is not negotiated or bargained for, and provides no benefit to the affected party." *Tadych*, 200 Wash. 2d at 645-46.

*First*, the Controlling SSA is not impermissibly one-sided. Substantive unconscionability is assessed "at the time the contract is made." *Jeffery v. Weintraub*, 32 Wash. App. 536, 544 (Ct. App. 1982); *see also M.A. Mortensen*, 998 P.2d at 315 (same; examining term in software license). Therefore, the question is whether enforcing that provision would have been one-sided *when the*

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR FOR JUDGMENT ON
THE PLEADINGS
(No. 2:24-CV-1717-JNW) – 19

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*parties entered into the agreement*—for most Defendants, on or around November 1, 2024. Nothing in the Complaint suggests that it was. In its Order, the Court appeared to rest its holding on the state of the pending arbitration proceedings "[a]s of the briefing on this motion" for preliminary injunction or "[b]y the time of oral argument" on the motion, rather than at the time of contract formation in fall of 2024. Order at 10; *see also id.* at 24, 26 (Defendants pursued claims in arbitration "to the verge of relief" and "to the brink of judgment or past it"). That conclusion applies an erroneous timeframe for purposes of the unconscionability analysis and relies on facts outside the Complaint.

Moreover, a dispute resolution provision in an amended agreement is enforceable as to pending claims if the provision, like the one in the Controlling SSA, expressly provides for retroactive effect. For example, the plaintiff in *Saucedo* had not agreed to arbitrate before filing a putative class action lawsuit in court, but he later accepted an arbitration agreement. The court enforced that agreement as applied to the pending litigation, explaining that "[t]he Ninth Circuit consistently upholds the enforceability of the retroactivity of arbitration clauses." 2023 WL 4708015, at *6 (collecting cases). Other courts have reached similar conclusions. For example, in *Newhall v. Chase Home Fin., LLC*, 2010 WL 4387517 (D.N.J. Oct. 28, 2010), a consumer agreed to an arbitration agreement containing a forum-selection clause after filing a lawsuit. *Id.* at *2, *6. The court granted a transfer pursuant to the forum-selection clause, *id.*, and the transferee court compelled arbitration, *see Newhall v. Chase Home Fin., LLC*, 2010 WL 8759340, at *2 (M.D. Fla. Dec. 22, 2010).

Courts apply the same rationale to amendments that remove an arbitration clause or that change the arbitral forum for pending disputes. In *Dasher v. RBC Bank (USA)*, 745 F.3d 1111 (11th Cir. 2014), the Eleventh Circuit enforced a post-litigation update to a contract that removed the contract's arbitration clause. The court rejected the argument that parties could not contract to "*remove* from arbitration an existing controversy." *Id.* at 1125 (emphasis in original). In *SCPS LLC*, the court enforced an amendment that changed the arbitral forum for disputes after arbitration

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR FOR JUDGMENT ON
THE PLEADINGS
(No. 2:24-CV-1717-JNW) – 20

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

claimants had already submitted notices of dispute with the forum specified in the original agreement. 2026 WL 96898 at *10-11. The court explained that "the result would be the same even if the [claimants] had assented [to the updated agreement] *after* initiating arbitrations with the AAA"— that is, if the arbitrations were already pending. *Id.* at *9. The Ninth Circuit recently enforced an updated arbitration agreement that changed the arbitral forum for the plaintiffs' pending claims from AAA to JAMS. *See Tile, Inc.*, 2026 WL 594859, at *1-5.[7]

*Second*, the forum provision in the Controlling SSA does not eliminate any established statutory rights. It permits Defendants to proceed in court. Nor does it extinguish claims through operation of statutes of limitations. Defendants are putative class members in *Wolfire*, which remains pending before the Court and tolls the statute of limitations for all putative class members, including Defendants; there is no risk that their claims will become time-barred if the Controlling SSA is enforced. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552-53 (1974) (holding that pending class action tolls statute of limitations for absent class members). In sum, enforcing the parties' mutually agreed retroactive forum selection clause that requires Defendants to proceed in court (and consistent with their counsel's representations in *Elliott* that a class action is a superior method to resolve their claims) would not "shock the conscience" or be "monstrously harsh" or "exceedingly calloused."

### D.    Equity Does Not Defeat Valve's Complaint

#### 1.    Valve Has Not Waived Any Argument

Defendants assert that Valve waived its right to litigate in court because "Valve knew of the right it now asserts" and "then acted inconsistently with any right to insist on disputes being resolved in court." (Mot. 27.) Even if this fact-based argument were appropriately considered on a motion to dismiss—and it is not—it is wrong.

In 2021, Valve filed its motion to compel arbitration in *Wolfire* concerning seven

---

[7] *See* Declaration of Steve Klinkner, Ex. B § 25.C, Ex. E § XVII.B, Ex. I at 23, *Ireland-Gordy v. Tile, Inc.*, No. 3:23-cv-04119-RFL, Dkt. No. 34.

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR FOR JUDGMENT ON
THE PLEADINGS
(No. 2:24-CV-1717-JNW) – 21

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

consumers—none of whom is a Defendant here. Three years later, Defendants' counsel sought and obtained rulings from an arbitrator that the arbitration provision in a subsequent version of the SSA (*i.e.*, not the same SSA that the Court applied in *Wolfire*) was unenforceable. Defendants' counsel then used those rulings to file a putative class action on behalf of a nationwide class. (Compl. ¶¶ 82-84, 89-92.) In the wake of changed circumstances, Valve modified the SSA to remove its arbitration agreement. (*Id.* ¶¶ 112-113.) There is nothing inconsistent about that. Valve could not have acted inconsistently to "waive" its rights under the Controlling SSA before it took effect. *See, e.g.*, *Cruz*, 2009 WL 2180489, at *3 ("A party cannot waive a right that it does not yet have."). The changed circumstances, engineered by Defendants' counsel, and the fact that this matter involves different consumers from *Wolfire*, distinguish this case from *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), where a defendant moved to compel arbitration only after litigating in court against that plaintiff for months while the arbitration agreement was in place. *Id.* at 417.

### 2.   Equitable Estoppel is Inapplicable

Defendants' contention that Valve is equitably "estopped from arguing that no agreement to arbitrate exists" is likewise unfounded. (Mot. 29.) Equitable estoppel requires acts that are inconsistent and inequitable. *See Saunders*, 113 Wash. 2d at 340. Valve has not taken inconsistent positions. Valve filed its motion *before* an arbitrator ruled that the Superseded SSA was unenforceable, *before* a new class action was filed based on those rulings, and *before* Valve removed the arbitration provision. (Compl. ¶¶ 63-66, 82-83, 112-113.) Taking Defendants' argument to its logical extreme, by successfully moving to compel arbitration, a business would be permanently estopped from ever entering into a new agreement without an arbitration provision.

### 3.   Judicial Estoppel is Inapplicable

Defendants argue that Valve is judicially estopped from enforcing the forum provision in the Controlling SSA. That is wrong. As explained above, Valve's positions are not "clearly inconsistent." (Mot. 30.) Valve reacted to changed circumstances set in motion by Defendants' counsel. *See, e.g.*, *Contour IP*, 2021 WL 1022854, at *3 (no judicial estoppel where "the facts

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR FOR JUDGMENT ON
THE PLEADINGS
(No. 2:24-CV-1717-JNW) – 22

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

underlying [party's] position changed").

Defendants also contend that Valve has treated the Superseded SSA "as valid in one proceeding and a nullity in another" because it has sought to confirm arbitration awards in state court. (Mot. 29.) Again, this argument goes outside the four corners of the Complaint. Regardless, certain arbitrations proceeded over Valve's objection during the pendency of Valve's motion to enjoin and concluded with a complete victory for Valve. As such, Valve has sought to confirm those awards and voluntarily dismissed those Defendants from this action to avoid re-litigation of meritless claims on which Valve has already prevailed. This is also not inconsistent.

**E.    The Motion Should Be Denied Even if the Forum Provision Is Unenforceable**

The Motion should be denied even if the forum provision in the Controlling SSA is deemed unenforceable. As the Complaint alleges, Defendants formed a new contract with Valve—the Controlling SSA. That new bilateral contract contains a merger clause providing that it "constitutes and contains the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior oral or written agreements." (Ex. 3 § 11 (Controlling SSA).) Consequently, the mutually agreed Controlling SSA superseded and extinguished the Superseded SSA—and with it, the arbitration agreement in the Superseded SSA. *See Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 879 (N.D. Cal. 2018) (enforcing updated arbitration clause retroactively to accrued claims even though prior agreement stated that "changes [to the terms] will not apply retroactively" because new terms "extinguished" the prior agreement between the parties), *aff'd*, 816 F. App'x 68 (9th Cir. 2020); *Peters v. Amazon Servs. LLC*, 2 F. Supp. 3d 1165, 1173 (W.D. Wash. 2013) (enforcing updated agreement that "contains an integration clause"), *aff'd*, 669 F. App'x 487 (9th Cir. 2016); *Thiele v. Merrill Lynch, Pierce, Fenner & Smith*, 59 F. Supp. 2d 1067, 1072 (S.D. Cal. 1999) (holding that although arbitration clause in new agreement was unenforceable that did not revive arbitration clause in superseded agreement).

**IV.    CONCLUSION**

Valve respectfully requests that the Court strike or deny Defendants' Motion and order that

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR FOR JUDGMENT ON
THE PLEADINGS
(No. 2:24-CV-1717-JNW) – 23

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Defendants comply with the Court's order directing them to answer the Complaint.

DATED: July 9, 2026

I certify that this memorandum contains 8,381 words, in compliance with the Local Civil Rules.

CORR CRONIN LLP

*s/ Blake Marks-Dias*
Blake Marks-Dias, WSBA No. 28169
1015 Second Avenue, Floor 10
Seattle, Washington 98104
(206) 625-8600 Phone
(206) 625-0900 Fax
bmarksdias@corrcronin.com

Michael W. McTigue Jr., *Admitted Pro Hac Vice*
Meredith C. Slawe, *Admitted Pro Hac Vice*
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Attorneys for Plaintiff Valve Corporation*

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR FOR JUDGMENT ON
THE PLEADINGS
(No. 2:24-CV-1717-JNW) – 24

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900