HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALVE CORPORATION,

                Plaintiff,

        v.

THOMAS ABBRUZZESE, et al.,

                Defendants.

No. 2:24-cv-1717-JNW

**PLAINTIFF VALVE CORPORATION'S REPLY BRIEF IN FURTHER SUPPORT OF ITS CROSS-MOTION TO VACATE ARBITRATION AWARDS**

PLAINTIFF VALVE CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF
ITS CROSS-MOTION TO VACATE
ARBITRATION AWARDS

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................... 1

II.   ARGUMENT ........................................................................................... 2

    A.    Vacatur Is Warranted Because Defendants Agreed to the Controlling SSA that Requires the Parties to Proceed in Court ................................... 2

        1.    Each Defendant Agreed to the Controlling SSA ........................... 2

        2.    The Controlling SSA Is Not Unconscionable ............................... 3

        3.    There Was No Agreement To Arbitrate Even if the Forum Provision Was Unconscionable. ..................................................... 6

        4.    The Arbitrator Had No Authority To Determine That She Could Proceed in the Face of a Dispute Over Whether or Not the SSA Which Contained An Arbitration Agreement Governed ............... 6

        5.    Valve Did Not "Accept" the Arbitrator's Jurisdiction or Waive Rights Under the Controlling SSA ................................................. 7

        6.    Valve Did Not Breach the Implied Covenant of Good Faith and Fair Dealing ................................................................................. 8

        7.    There Is No Basis for Any Claim of Estoppel Here ...................... 9

    B.    The Massive Attorneys' Fee Award Violated Due Process; Valve Had No Opportunity to Review the Billing Records Offered to Support that Award .................................................................................................... 10

    C.    The Attorneys' Fee Awards Were Arbitrary and Irrational, Including Because They Were Up to 729 Times Larger Than the Trebled Damages ............................................................................................... 11

III.  CONCLUSION ...................................................................................... 12

PLAINTIFF VALVE CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF
ITS CROSS-MOTION TO VACATE
ARBITRATION AWARDS - i

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

# TABLE OF AUTHORITIES

Page(s)

## CASES

*A.C. ex rel. Carbajal v. Nintendo of America Inc.*,
No. C20-1694 TSZ,
2021 WL 1840835 (W.D. Wash. Apr. 29, 2021)................................................................ 3

*American Pipe & Construction Co. v. Utah*,
414 U.S. 538 (1974).......................................................................................................... 5

*Astronics Electronic Systems Corp. v. MAGicALL, Inc.*,
No. 22-35645
2023 WL 3451682 (9th Cir. May 15, 2023) .................................................................... 11

*Bassett v. Electronic Arts Inc.*,
No. 13-CV-04208 (MKB)(SMG)
2015 WL 1298644 (E.D.N.Y. Feb. 9, 2015),
*report and recommendation adopted*, 93 F. Supp. 3d 95 (E.D.N.Y. 2015)................... 3, 4

*Bischoff v. DirecTV, Inc.*,
180 F. Supp. 2d 1097 (C.D. Cal. 2002) ............................................................................ 7

*Chun Ping Turng v. Guaranteed Rate, Inc.*,
371 F. Supp. 3d 610 (N.D. Cal. 2019) .............................................................................. 7

*Cobb v. Ironwood Country Club*,
233 Cal. App. 4th 960 (2015) ............................................................................................ 8

*Coinbase, Inc. v. Suski*,
602 U.S. 143 (2024).......................................................................................................... 6

*Contour IP Holding, LLC v. GoPro, Inc.*,
No. 3:17-cv-04738-WHO,
2021 WL 1022854 (N.D. Cal. Mar. 17, 2021).................................................................. 9

*Costco Wholesale Corp. v. International Brotherhood of Teamsters, Local No. 542*,
850 F. App'x 467 (9th Cir. 2021) .................................................................................... 10

*Fortune, Alsweet & Eldridge, Inc. v. Daniel*,
724 F.2d 1355 (9th Cir. 1983) .......................................................................................... 8

*Haider v. Lyft, Inc.*,
No. 20-cv-2997 (AJN),
2021 WL 3475621 (S.D.N.Y. Aug. 6, 2021)..................................................................... 4

*Hoffman v. Cargill Inc.*,
236 F.3d 458 (8th Cir. 2001) .......................................................................................... 10

PLAINTIFF VALVE CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF
ITS CROSS-MOTION TO VACATE
ARBITRATION AWARDS - ii

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Ireland-Gordy v. Tile, Inc.*,
    No. 25-403,
    2026 WL 594859 (9th Cir. Mar. 3, 2026).............................................................................. 7

*Jeffery v. Weintraub*,
    32 Wash. App. 536 (Ct. App. 1982) .................................................................................... 5

*Kellogg v. National Railroad Passenger Corp.*,
    504 P.3d 796 (Wash. 2022)................................................................................................. 7

*Martin v. Yasuda*,
    829 F.3d 1118 (9th Cir. 2016) ............................................................................................ 8

*Morgan v. Sundance, Inc.*,
    596 U.S. 411 (2022).......................................................................................................... 8

*Move, Inc. v. Citigroup Global Markets, Inc.*,
    840 F.3d 1152 (9th Cir. 2016) .......................................................................................... 11

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950).......................................................................................................... 11

*Pilon v. Discovery Communications, LLC*,
    769 F. Supp. 3d 273 (S.D.N.Y. 2025)................................................................................ 8

*Saucedo v. Experian Information Solutions, Inc.*,
    No. 1:22-cv-01584-ADA-HBK,
    2023 WL 4708015 (E.D. Cal. July 24, 2023) .................................................................... 7

*Saunders v. Lloyd's of London*,
    113 Wash. 2d 330 (1989).................................................................................................... 9

*SCPS LLC v. Kind Law*,
    No. CV 25-3255-MWF (SSCx),
    2026 WL 96898 (C.D. Cal. Jan. 8, 2026) ..................................................................... 4, 7

*Skillern v. Peloton Interactive, Inc.*,
    No. 21 CIV. 6808 (ER),
    2022 WL 3718279 (S.D.N.Y. Aug. 29, 2022)................................................................... 7

*Swanson v. U.S. Forest Service*,
    87 F.3d 339 (9th Cir. 1996) ............................................................................................... 1

*Tadych v. Noble Ridge Construction, Inc.*,
    200 Wash. 2d 635 (2022).................................................................................................... 5

*Torgerson v. One Lincoln Tower, LLC*,
    166 Wash. 2d 510 (2009), *as corrected* (July 16, 2009) ...................................................... 3

*Trudeau v. Google LLC*,
    816 F. App'x 68 (9th Cir. 2020) ........................................................................................ 8

PLAINTIFF VALVE CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF
ITS CROSS-MOTION TO VACATE
ARBITRATION AWARDS - iii

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Trudeau v. Google LLC*,
  349 F. Supp. 3d 869 (N.D. Cal. 2018),
  *aff'd*, 816 F. App'x 68 (9th Cir. 2020)................................................................... 6

*USA v. Trent*,
  No. 16-CR-00178-CRB-1,
  2020 WL 1812214 (N.D. Cal. Apr. 9, 2020) .......................................................... 8

*Williams v. County of Alameda*,
  26 F. Supp. 3d 925 (N.D. Cal. 2014) ..................................................................... 1

*Zuver v. Airtouch Communications, Inc.*,
  153 Wash. 2d 293 (2004)........................................................................................ 5

**STATUTES**

15 U.S.C. § 15(a) ........................................................................................................ 11

PLAINTIFF VALVE CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF
ITS CROSS-MOTION TO VACATE
ARBITRATION AWARDS - iv

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## I.    INTRODUCTION

The McSorley Defendants' Response ("Opp.")[1] confirms that vacatur is proper:[2]

***Once the McSorley Defendants Agreed to the Controlling SSA[3] the Arbitrator Had No Authority to Proceed.*** The McSorley Defendants claim they are not bound by the Controlling SSA because Valve purportedly gave vague notice, failed to secure their consent, and denied them a meaningful choice. None of that is supported by the record:

- Valve gave conspicuous notice in several forms.

- This Court held that Valve has "likely shown assent" as to 17 of the 19 McSorley Defendants. Dkt. 169, at 17 (the "Order"). The other two assented in a manner that the Court held bound users to the Controlling SSA.

- Steam users could reject the Controlling SSA and retain their purchased game licenses by pausing their Steam use while they completed their arbitrations.

The McSorley Defendants retained the right to litigate their claims against Valve in court under the Controlling SSA.

The McSorley Defendants advance equitable grounds for ignoring their assent to the Controlling SSA. All of these arguments are premised on the fiction that Valve arbitrated with the McSorley Defendants for years and then, inexplicably, presented them with the Controlling SSA. But the Controlling SSA was presented in September 2024, and the McSorley Defendants' arbitral hearings took place long after—between July 2025 and February 2026. The SSA amendment was precipitated by the McSorley Defendants' own counsel, who obtained arbitral rulings declaring the

---

[1] The McSorley Defendants seek to incorporate by reference arguments from other filings. (Opp. 3 n.1.) That is "wholly improper." *Williams v. Cnty. of Alameda*, 26 F. Supp. 3d 925, 947 (N.D. Cal. 2014); *see also Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 345 (9th Cir. 1996).

[2] Capitalized terms have the meanings ascribed to them in the Cross-Motion ("Mot."). Internal citations are omitted and all emphasis is added. "Reply Ex." refers to exhibits to the Reply Declaration of Blake Marks-Dias, dated July 15, 2026 ("Marks-Dias Reply Decl.").

[3] The SSA has been amended twice since September 26, 2024, with the most recent amendment in April 2026. These subsequent amendments do not affect the legal rights of U.S. citizens and are not relevant. The SSA as of September 26, 2024, and the subsequently amended versions are referred to collectively as the "Controlling SSA."

PLAINTIFF VALVE CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF
ITS CROSS-MOTION TO VACATE
ARBITRATION AWARDS - 1

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Superseded SSA's arbitration agreement unenforceable and then filed a putative nationwide class action premised on those rulings. In view of those developments, Valve exercised its amendment rights under the SSA and updated it to remove the arbitration agreement. Valve notified all users worldwide of these updates, including the McSorley Defendants. It also notified counsel for the McSorley Defendants and offered to reimburse any AAA fees they paid. These actions were not inconsistent or inequitable; Valve acted in good faith to restore order to a dispute resolution process that the McSorley Defendants' counsel had thrown into chaos.

***The Arbitrator Violated Valve's Due Process Rights and Issued an Arbitrary and Irrational Award.*** The Arbitrator issued massive attorneys' fees awards without letting Valve challenge the amount or nature of the fees, violating basic due process. Even worse, the Arbitrator's attorneys' fee award is grossly disproportionate to Defendants' damages (up to 729 times damages after trebling), and padded with hundreds of hours of work admittedly performed for other claimants and clerical tasks. That windfall is wholly incompatible with a statutory provision limiting recovery to "reasonable attorney's fees." It is arbitrary and irrational.

## II.    ARGUMENT

### A.    Vacatur Is Warranted Because Defendants Agreed to the Controlling SSA that Requires the Parties to Proceed in Court

#### 1.    Each Defendant Agreed to the Controlling SSA

The McSorley Defendants purport to contest whether they "explicitly agreed" to the Controlling SSA's updated terms. (Opp. 12), but the Court has held otherwise:

- Eighteen "affirmatively accepted the [Controlling] . . . SSA" prior to November 1, 2024 "through the Pop-Up Notice, [a] . . . purchase-screen check box, or both." Order 17; (Mot. 5; Marks-Dias Reply Decl. ¶ 21). The Court already concluded that these Defendants "likely assented" to the Controlling SSA. Order 17-18, 23 n.9.

- The remaining Defendant agreed when redeeming a Steam Key after November 1, 2024. (Mot. 5-6; Marks-Dias Reply Decl. ¶ 22.) This Defendant likewise assented in the very manner that the Court concluded was sufficient to bind users. Order 17-18,

PLAINTIFF VALVE CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF
ITS CROSS-MOTION TO VACATE
ARBITRATION AWARDS - 2

23 n.9.[4] He also assented through continued use of Steam as of November 1, 2024. (Dkt. 80 ¶¶ 25-28 & Ex. C (Lynch Decl.).)

   2. The Controlling SSA Is Not Unconscionable

The McSorley Defendants argue that the Controlling SSA is "procedurally and substantively unconscionable." (Opp. 13.) That is incorrect.

***No Procedural Unconscionability.*** "Procedural unconscionability is determined in light of the totality of the circumstances, including (1) the manner in which the parties entered into the contract, (2) whether the parties had a reasonable opportunity to understand the terms, and (3) whether the terms were "hidden in a maze of fine print." *Torgerson v. One Lincoln Tower, LLC*, 166 Wash. 2d 510, 518-19 (2009), *as corrected* (July 16, 2009).

*First*, the manner of contract formation was fair. Valve informed the McSorley Defendants' counsel about the changes the day after it first started presenting notice. (Dkt. 80 ¶¶ 10, 12 (Lynch Decl.).) Although the McSorley Defendants contend they were given "no real . . . chance to review," (Opp. 14), that is wrong: Valve gave them more than 30 days to decide whether to accept. The parties entered into the bilateral agreement through "conventional clickwrap mechanisms" that this Court and other courts routinely hold are binding. Order 18.

The McSorley Defendants contend they "had no real choice" but to agree. (Opp. 14); *see also* Order 20-21. But "for nonessential activities, the consumer always has the option of forgoing the activity." *Bassett v. Elec. Arts Inc.*, 2015 WL 1298644, at *11 (E.D.N.Y. Feb. 9, 2015), *report and recommendation adopted*, 93 F. Supp. 3d 95 (E.D.N.Y. 2015). Video games "are nonessential recreational activities." *See id.*; *accord A.C. ex rel. Carbajal v. Nintendo of Am. Inc.*, 2021 WL 1840835, at *3 (W.D. Wash. Apr. 29, 2021).

---

[4] The Court addressed 454 defendants who affirmatively accepted the Controlling SSA before it became effective on November 1, 2024, including 17 McSorley Defendants. Defendant DePalma also affirmatively agreed before that date. (Marks-Dias Reply Decl. ¶ 21.) Defendant Ventures affirmatively agreed after that date but did so through the same method as those 454 defendants. (*Id.* ¶ 22.)

PLAINTIFF VALVE CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF
ITS CROSS-MOTION TO VACATE
ARBITRATION AWARDS - 3

The McSorley Defendants complain that they had to "give up their entire Steam accounts" or "surrender[]" arbitration rights. (Opp. 14, 16); *see also* Order 20. But they *could* have kept their Steam accounts and continued arbitrating under the Superseded SSA, so long as they forwent using those accounts during their arbitrations. (Dkt. 80 ¶¶ 10, 12 (Lynch Decl.).) And even if they had to relinquish their games (they did not), that would be irrelevant. *See Bassett*, 2015 WL 1298644, at *11 (requirement that plaintiff consumer enter into arbitration agreement after making video game purchase, despite allegedly being unable to return purchase, did not render agreement unconscionable).

*Second*, the notices gave the McSorley Defendants a reasonable opportunity to understand the forum provision's terms. *See* (Mot. 4-6); Order 4-9.

*Third*, Valve did not bury the forum provision in a maze of fine print. (Opp. 13.) Rather, Valve's notices identified in plain language the core change—that all disputes must proceed in court. Order 5-8; Part II.A.1, *supra*. The email, Pop-Up, and blog post notices also each linked to the full agreement. And the forum clause appeared in the same size and font as the other key provisions in the paragraph, which is clearly labeled "APPLICABLE LAW/JURISDICTION." (Dkt. 80 Ex. B § 10 (Lynch Decl.).)

The McSorley Defendants complain that Valve presented its notice of the Controlling SSA directly to Steam users. But Valve gave written notice to the McSorley Defendants' counsel *the day after* the update. (Reply Ex. 22.) In any event, the McSorley Defendants "cite no authority for the proposition that an amendment to a company's terms of service may constitute a prohibited communication with a represented party." *Haider v. Lyft, Inc.*, 2021 WL 3475621, at *3 (S.D.N.Y. Aug. 6, 2021); *see also SCPS LLC v. Kind Law*, 2026 WL 96898, at *9 (C.D. Cal. Jan. 8, 2026) (rejecting challenge to agreement based on notice directly to consumers). It would be "unworkable in practice" to force companies to carve out represented users from communications presenting updates to user agreements in the ordinary course of business. *Haider*, 2021 WL 3475621, at *3. That "would essentially freeze" businesses' contracts in place. *Id.*

PLAINTIFF VALVE CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF
ITS CROSS-MOTION TO VACATE
ARBITRATION AWARDS - 4

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*No Substantive Unconscionability.* A provision is substantively unconscionable when it is "[s]hocking to the conscience," "monstrously harsh," or "exceedingly calloused." *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wash. 2d 293, 303 (2004). "A contract provision becomes substantively unconscionable when it eliminates otherwise established statutory rights and is one sided, benefiting the contract drafter, is also not prominently set out in the contract, is not negotiated or bargained for, and provides no benefit to the affected party." *Tadych v. Noble Ridge Constr., Inc.*, 200 Wash. 2d 635, 645-46 (2022).

The McSorley Defendants have not lost any statutory rights. They may pursue their claims in court. Indeed, they may participate in *Wolfire*, which their counsel has deemed "superior to any other method for the fair and efficient adjudication of this legal dispute." Complaint ¶ 46, *Elliot v. Valve Corporation*, No. 2:24-cv-01218 (W.D. Wash. Aug. 9, 2024). Nor will the McSorley Defendants' claims become time-barred: the McSorley Defendants are putative class members in *Wolfire*, which remains pending and tolls the limitations period for all putative class members. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552-53 (1974).

The forum provision is also not "one-sided" based on the attorneys' fees the McSorley Defendants claim to have expended or the result of their Arbitrations. Unconscionability is assessed "at the time the contract is made." *Jeffery v. Weintraub*, 32 Wash. App. 536, 544 (Ct. App. 1982). Enforcing the forum provision would not have been one-sided *when the parties entered into the Controlling SSA*—by November 2, 2024. (Dkt 80 ¶¶ 24-27 & Ex. C (Lynch Decl.); Marks-Dias Reply Decl. ¶ 22.)

The day after the modification, Valve requested that the AAA close the Arbitrations. (Dkt. 81 ¶ 21 & Ex. 4; Reply Ex. 23.) But the Arbitrator permitted the Arbitrations to proceed. (Reply Ex. 25.) Accordingly, Valve promptly brought this action to enjoin the Arbitrations pending resolution of the threshold jurisdictional issue. Valve again requested that the Arbitrator stay the Arbitrations. (Marks-Dias Decl. ¶ 5.) At that time, the Arbitrator had issued no merits rulings and the McSorley Defendants' counsel had yet to incur over 96% of their claimed legal fees. (Marks-Dias Reply Decl.

PLAINTIFF VALVE CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF
ITS CROSS-MOTION TO VACATE
ARBITRATION AWARDS - 5

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

¶ 16.) The McSorley Defendants' counsel, moreover, was and is proceeding on contingency and with litigation funding, dispelling any claim of financial prejudice. (Reply Exs. 27-28.) By pressing forward, the McSorley Defendants took the risk that any subsequent proceedings could be nullified.

By contrast, forcing Valve to defend arbitrations and a parallel putative class action—proceedings the McSorley Defendants' own counsel has called "overlapping"—would be manifestly unfair.

3.    There Was No Agreement To Arbitrate
Even if the Forum Provision Was Unconscionable

Even if the forum provision is unenforceable (and it is not), there is no agreement to arbitrate and the Awards must be vacated. The McSorley Defendants formed a new contract with Valve—the Controlling SSA. Order 17. That new bilateral contract contains a merger clause providing that it "supersedes" prior agreements, including the Superseded SSA and its arbitration agreement. (Dkt. 80 Ex. B § 11 (Lynch Decl.).) *See, e.g.*, *Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 878-79 (N.D. Cal. 2018) (enforcing updated arbitration clause retroactively to accrued claims even though prior agreement stated that "changes [to the terms] will not apply retroactively" because new terms "extinguished" the prior agreement between the parties), *aff'd*, 816 F. App'x 68 (9th Cir. 2020).

4.    The Arbitrator Had No Authority To Determine That She Could Proceed in
the Face of a Dispute Over Whether or Not the SSA Which Contained An
Arbitration Agreement Governed

Once the McSorley Defendants agreed to the Controlling SSA, the Arbitrator had no authority to proceed. (Mot. 3-6.) Nor could the Arbitrator decide that the Superseded SSA governed and the Controlling SSA did not: *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024), is unequivocal that only a court can decide that dispute. This Court confirmed that "this Court, not the arbitrators, decides which of two competing contracts governs." Order 16, n.6. The McSorley Defendants wrongly characterize the Motion as an "impermissible direct appeal" from the Arbitrator's (erroneous) ruling that *Coinbase* did not apply. (Opp. 23.) That was never the Arbitrator's decision to make.

Valve is also not petitioning the Court to "decide again" issues it determined in *Wolfire*. (Opp. 23.) The Court's 2021 order compelling seven other consumer plaintiffs to arbitration under a

PLAINTIFF VALVE CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF
ITS CROSS-MOTION TO VACATE
ARBITRATION AWARDS - 6

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

different, earlier version of the SSA predated (i) the April 2023 effective date of the Superseded SSA, the agreement under which the McSorley Defendants proceeded to arbitration; (ii) the McSorley Defendants' counsel securing a ruling in 2024 that the Superseded SSA was unenforceable; (iii) counsel's putative class action based on those rulings; and (iv) the Controlling SSA, which requires disputes to proceed in court. It is that *new* agreement that Valve seeks to enforce for the *first* time.

### 5. Valve Did Not "Accept" the Arbitrator's Jurisdiction or Waive Rights Under the Controlling SSA

The McSorley Defendants argue that Valve originally "accepted" the AAA's jurisdiction. (Opp. 7.) But that is of no moment. The parties thereafter agreed to resolve their disputes in court through the Controlling SSA. (Mot. 4-6; Dkt. 80 ¶¶ 24-28 & Ex. C (Lynch Decl.); Dkt. 162 ¶¶ 2-4 & Ex. D (Suppl. Lynch Decl).) A uniform body of case law confirms that an amended dispute resolution provision is enforceable with respect to claims already asserted in another forum. *See*, *e.g.*, *Ireland-Gordy v. Tile, Inc.*, 2026 WL 594859, at *1-5 (9th Cir. Mar. 3, 2026); *SCPS LLC*, 2026 WL 96898, at *9-10; *Saucedo v. Experian Info. Sols.*, *Inc.*, 2023 WL 4708015, at *6 (E.D. Cal. July 24, 2023). As this Court concluded, the Controlling SSA, "by its terms, reaches the pending arbitrations." Order 17.

Nor did Valve waive its rights under the Controlling SSA by moving to compel seven *other* consumers to arbitrate under an August 2020 version of the SSA. (Opp. 17-18.) Valve did not demand arbitration as to these McSorley Defendants. *See Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1113 (C.D. Cal. 2002) ("[T]o hold that defendant can no longer assert its right to compel arbitration simply because it did not assert that right in another case is absurd."); *see also Skillern v. Peloton Interactive, Inc.*, 2022 WL 3718279, at *4 (S.D.N.Y. Aug. 29, 2022) (similar); *Chun Ping Turng v. Guaranteed Rate, Inc.*, 371 F. Supp. 3d 610, 620 (N.D. Cal. 2019) (similar). And, as noted above, the version of the SSA that was the subject of that June 2021 motion was itself superseded by the Superseded SSA. Waiver requires the "voluntary relinquishment of a *known* right." *Kellogg v. Nat'l R.R. Passenger Corp.*, 504 P.3d 796, 810 (Wash. 2022). Valve could not have "waived" its

PLAINTIFF VALVE CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF
ITS CROSS-MOTION TO VACATE
ARBITRATION AWARDS - 7

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

right to litigate under the Controlling SSA "that did not yet exist." *USA v. Trent*, 2020 WL 1812214, at *1 (N.D. Cal. Apr. 9, 2020).

The McSorley Defendants point to nothing showing that Valve relinquished this right through "inconsistent" conduct (Opp. 17) after the Controlling SSA was adopted. Valve notified the AAA of the Controlling SSA *within a day* of its adoption and requested that the AAA close all arbitrations, including those brought by the McSorley Defendants. (Reply Ex. 23.) Valve then commenced this action to enjoin the McSorley Defendants' Arbitrations and promptly requested a stay pending resolution of the action. (Mot. 6-7.) After the Arbitrator refused, Valve arbitrated under protest. (*Id.* at 7; Marks-Dias Decl. ¶ 7.) That is the antithesis of waiver.

That sequence of events is nothing like those in *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) (Opp. 18), and *Martin v. Yasuda*, 829 F.3d 1118, 1125-26 & n.4 (9th Cir. 2016) (Opp. 10, 17), where defendants litigated in court for months and then moved to compel arbitration under *existing* agreements. Similarly, in *Fortune, Alsweet & Eldridge, Inc. v. Daniel*, 724 F.2d 1355, 1357 (9th Cir. 1983) (Opp. 10), a defendant "voluntarily participated" in arbitration for months before denying the arbitrator's authority without any good faith rationale.

### 6. Valve Did Not Breach the Implied Covenant of Good Faith and Fair Dealing

The McSorley Defendants accuse Valve of breaching the implied covenant of good faith and fair dealing. (Opp. 8-11.) But their principal authority, *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960 (2015), addressed unilateral amendments; its reasoning "does not extend to mutual modifications." *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 295 (S.D.N.Y. 2025); *accord Trudeau v. Google LLC*, 816 F. App'x 68, 70 n.1 (9th Cir. 2020). Here, the parties mutually agreed to modify the SSA.

In any event, the McSorley Defendants' bad faith claims are unfounded. Valve adopted the Controlling SSA to restore order: the McSorley Defendants' counsel was asserting the same claims simultaneously before the AAA and this Court. (*See* Part I, *supra*.) The McSorley Defendants' counsel has acknowledged to arbitrators that it is forum shopping by prosecuting the arbitrations and

PLAINTIFF VALVE CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF
ITS CROSS-MOTION TO VACATE
ARBITRATION AWARDS - 8

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

an overlapping putative class action on behalf of the same claimants in two different forums. Counsel has even said that it may withdraw arbitrations and proceed in court if it is dissatisfied with any arbitral ruling. (Marks-Dias Reply Decl. ¶ 14.) Counsel has since withdrawn certain arbitrations on the eve of hearing and requested unexplained "stay[s]" of others. (*Id.* ¶ 15.) Valve enacted its amendment to assure all parties their disputes could be adjudicated in one forum through an orderly, final, and binding process. That is not bad faith conduct; it is sensible and consumer-friendly conduct.

The McSorley Defendants also argue that "Valve's 2025 amendment was a bad faith update to the parties' existing arbitration agreement." (Opp. 8-9.) But Valve has not made any argument about the 2025 amendment. After the McSorley Defendants agreed to the Controlling SSA, the parties no longer had an agreement to arbitrate. (Dkt. 80 ¶¶ 24-28 & Ex. C (Lynch Decl.); Dkt. 162 ¶¶ 2-4 & Ex. D (Suppl. Lynch Decl.); Part II.A.1, *supra*).) The September 18, 2025, update to the SSA did not change that: it did not further "modify the dispute resolution provision for U.S. customers and is not relevant to this petition." Lynch Decl. in Supp. of Pet. to Vacate Arbitration Award n.1, *Valve Corp. v. Birenbaum*, No. 2:25-cv-01975 (W.D. Wash. Oct. 10, 2025), Dkt. 2. Thus, it does not matter whether the McSorley Defendants assented to the 2025 amendment: in any event, there is no arbitration agreement.

### 7.    There Is No Basis for Any Claim of Estoppel Here

The McSorley Defendants invoke judicial and equitable estoppel (Opp. 18-21), but these arguments rest on the false premise that Valve has unfairly "shift[ed] positions," (*id.* at 19). Valve reacted to new circumstances set in motion by the McSorley Defendants' own counsel. *See, e.g.*, *Contour IP Holding, LLC v. GoPro, Inc.*, 2021 WL 1022854, at *3 (N.D. Cal. Mar. 17, 2021) (no judicial estoppel where "the facts underlying [party's] position changed"); *Saunders v. Lloyd's of London*, 779 P.2d 249, 255 (Wash. 1989) (equitable estoppel requires an act that is both "inconsistent" and inequitable).

The McSorley Defendants contend without basis that Valve "misled" courts by seeking to confirm arbitration awards. (Opp. 20.) Since adopting the Controlling SSA, Valve has arbitrated

PLAINTIFF VALVE CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF
ITS CROSS-MOTION TO VACATE
ARBITRATION AWARDS - 9

under a full reservation of rights where arbitrators refused to issue stays. (Mot. 7.) Valve has won 134 out of 164 proceedings where final awards were issued (Marks-Dias Reply Decl. ¶ 11), and has sought to confirm awards to avoid wasteful relitigation of meritless claims. (*Id.*) In petitions to confirm, Valve has explained that it had "disputed" that the respondents "could proceed in arbitration" but that arbitrators proceeded over that objection. (*See, e.g.*, Reply Ex. 26.)

**B.    The Massive Attorneys' Fee Award Violated Due Process; Valve Had No Opportunity to Review the Billing Records Offered to Support that Award**

By awarding fees based on evidence Valve had no opportunity to address, the Arbitrator violated Valve's due process rights. The McSorley Defendants argue that Valve is not entitled to due process. (Opp. 26.) But their purported authority, *Hoffman v. Cargill Inc.*, 236 F.3d 458 (8th Cir. 2001), merely found that an arbitration was not "fundamentally unfair" based on facts unique to that case, including arbitrator selection protocols and discovery procedures. *Id.* at 462. *Hoffman* does not hold that arbitrating parties lack basic due process protections. *Id.* Such a holding would contradict Ninth Circuit authority. *See Costco Wholesale Corp. v. Int'l Bhd. of Teamsters, Loc. No. 542*, 850 F. App'x 467, 468 (9th Cir. 2021) ("fundamental fairness" applies to arbitrations).

The McSorley Defendants argue "there is no allegation that the arbitrator refused to hear evidence or argument contesting an award of fees." (Opp. 26.) This mischaracterizes Valve's position as a complaint centering on the December and February briefing schedules. Valve's Motion focuses on the Arbitrator's failure to let Valve respond to the fee submissions for the October Awards. The McSorley Defendants do not dispute that Valve was denied an opportunity to address those submissions. Nor could they: the Arbitrator closed the proceedings hours after the October Claimants submitted their fee application, (Dkt. 122 Exs. 11, 17), over Valve's objection and despite Valve's repeated request for an opportunity to respond (Dkt. 122 Ex. 8, Ex. 10 at 49). This error applies equally to Defendants here because the October Awards were for "time devoted to" the McSorley Defendants' Arbitrations. (Mot. 2.)

The McSorley Defendants misconstrue Valve's argument as an attempt to judge the Arbitrator's conduct against the rules of federal procedure and evidence. (Opp. 28.) Valve is not

PLAINTIFF VALVE CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF
ITS CROSS-MOTION TO VACATE
ARBITRATION AWARDS - 10

claiming the Arbitrator violated procedural or evidentiary rules. The Arbitrator's error warrants vacatur because it deprived Valve of due process. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (an "elementary" requirement of due process is the "opportunity to present [] objections"). *Astronics Elec. Sys. Corp. v. MAGicALL, Inc.*, 2023 WL 3451682, at *1 (9th Cir. May 15, 2023) (Opp. 28), did not consider an arbitrator's receipt of *ex parte* evidence or issues of fundamental fairness.

The McSorley Defendants attempt to factually distinguish *Move, Inc. v. Citigroup Glob. Markets, Inc.*, 840 F.3d 1152, 1158 (9th Cir. 2016). But they ignore the teachings of that case and others cited by Valve and left unaddressed: (i) an arbitration award must be vacated if the hearing is not fundamentally fair and (ii) a hearing is not fundamentally fair if a party is not afforded an opportunity to respond to arguments and evidence. (Mot. 13.) Because Valve was not afforded an opportunity respond to the evidence supporting the overwhelming majority of the amount awarded to the McSorley Defendants, the hearings were not fundamentally fair and the Awards must be vacated.

### C. The Attorneys' Fee Awards Were Arbitrary and Irrational, Including Because They Were Up to 729 Times Larger Than the Trebled Damages

The McSorley Defendants contend that the Award was "careful" and "reasoned." (Opp. 30.) Nonsense. Because the Arbitrator refused to permit Valve to respond to the fee submissions underlying the October Awards, Valve was unable to describe the myriad ways in which the McSorley Defendants' counsel inappropriately inflated their request. The end result: awarded fees that are up to 2,051 times the actual damages. (Mot. 9.) These astronomical figures are an impermissible "'windfall'" for lawyers (*id.*), and fall well outside the permitted "reasonable attorney's fee," 15 U.S.C. § 15(a). This is especially true since the timesheets abound with entries for work unattributable to the McSorley Defendants' Arbitrations (including entries corresponding to work on arbitrations that their counsel lost) and for clerical tasks. (Mot. 9-12.)

The McSorley Defendants do not dispute that they sought and obtained recovery for work spent on other claimants' cases. Nor do they dispute that their counsel *lost* many of those cases. And

PLAINTIFF VALVE CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF
ITS CROSS-MOTION TO VACATE
ARBITRATION AWARDS - 11

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

they do not dispute that their time entries are replete with entries for clerical tasks such as "setting up logistics," "[c]orrespondence with [claimant] re: hearing availability," and "uploading final transcripts." (Marks-Dias Decl. ¶ 45.) None of this work is recoverable under the Sherman Act or the Superseded SSA under which the Arbitrations proceeded. As such, the fee awards manifestly disregard the law, rendering the entirety of the Awards arbitrary and irrational. (Mot. 11-13.)

The hourly rates applied by the Arbitrator were likewise excessive. The McSorley Defendants' counsel claims that its fledgling law firm—under ten attorneys—is entitled to rates comparable to those of "top-tier firms" because Will Bucher "started his career" as a junior associate at Debevoise. (Opp. 30.) But one attorney's employment history does not transform a small local practice into a top-tier firm, nor does it justify rates far exceeding those charged by comparable practitioners in Albany, where Bucher Law was then based. Unsurprisingly, the McSorley Defendants cite no authority for their position.

### III.    CONCLUSION

Valve requests that the Awards be vacated.

PLAINTIFF VALVE CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF
ITS CROSS-MOTION TO VACATE
ARBITRATION AWARDS - 12

DATED: July 15, 2026

I certify that this memorandum contains 4,200 words pursuant to the parties' May 11, 2026 Stipulation. (Dkt. 153.)

CORR CRONIN LLP

*/s/ Blake Marks-Dias*
Blake Marks-Dias, WSBA No. 28169
1015 Second Avenue, Floor 10
Seattle, Washington 98104
(206) 625-8600 Phone
(206) 625-0900 Fax
bmarksdias@corrcronin.com

Michael W. McTigue Jr., *Pro Hac Vice*
Meredith C. Slawe, *Pro Hac Vice*
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Attorneys for Plaintiff Valve Corporation*

PLAINTIFF VALVE CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF
ITS CROSS-MOTION TO VACATE
ARBITRATION AWARDS - 13