HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALVE CORPORATION,

          Plaintiff,

    v.

THOMAS ABBRUZZESE, *et al.*,

          Defendants.

Case No.  2:24-cv-1717-JNW

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT AND/OR FOR JUDGMENT ON THE PLEADINGS

NOTED ON MOTION CALENDAR:
July 16, 2026

Defendants ("Consumer-Defendants"), through undersigned counsel, reply to Petitioner Valve Corporation's ("Valve") Opposition To Defendants' Motion To Dismiss And/Or For Judgment On The Pleadings ("Opp.").

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

## TABLE OF CONTENTS

I. Introduction.................................................................................................. 1

II. Argument .................................................................................................... 2

    A.   Valve's procedural objections offer only delay, not a basis to avoid the
        merits. ................................................................................................ 2

    B.   Consumer-Defendants' Motion does not depend on facts outside the
        pleadings. ........................................................................................... 6

    C.   Valve's response relies on inapposite case law. .............................. 8

        1. Valve demonstrates meaningful choices it could have offered, but denied,
            Consumer-Defendants. .................................................................. 8

        2. Valve cites numerous cases where courts enforce terms at the time of
            contracting, not subsequent unilateral modifications............................ 10

    D.   Washington does not recognize California's "nonessential recreation"
        affirmative defense to unconscionability—nor would it be applicable. ........ 12

    E.   Valve offers no meaningful rebuttal to the Consumer-Defendants' estoppel
        and waiver arguments. ..................................................................... 13

## I. INTRODUCTION

Two months ago this tribunal asked what would stop Valve from amending the SSA again— "a third time, a fourth time, a fifth time, going back and forth between federal court and arbitration." Valve offered no limiting principle then, and offers none now. Valve asks this Court to bless a regime that will deny these Consumer-Defendants a definite forum and permit megacorporations to use their monopoly power to shift would-be litigants back and forth between court and arbitration *ad nauseum*, deferring justice forever. As detailed in our opening brief, many, many time-honored legal doctrines prevent this result. Valve offers no effective rebuttal to any of them.

Valve compelled the arbitration it now seeks to enjoin. No case cited by Valve shares that posture or permits a unilateral amendment to escape the arbitrations that party compelled. Valve argues "Taking Defendants' argument to its logical extreme, by successfully moving to compel arbitration, a business would be permanently estopped from ever entering into a new agreement without an arbitration provision." This Court need not reach such extremes to rule a unilateral change, routed around counsel, designed with knowledge of and in response to disfavored outcomes in the arbitrations, with no penalty-free opt-out, is unconscionable as to claims that were encompassed within the compelled class and which were commenced prior to the amendment.

Choosing to enforce arbitration against a putative class is not a casual choice. It's an "irrevocable" one. 9 U.S. Code § 2.  To the extent this court's decisions cause megacorporations to think carefully about whether to emulate Valve's choices—to add arbitration clauses, to make those arbitrations individual, to compel arbitration against putative classes reflexively, and to delegate questions to

individual arbitrators thus risk inconsistent and burdensome results—that's a good thing.

## II. ARGUMENT

### A. Valve's procedural objections offer only delay, not a basis to avoid the merits.

Valve filed this action asking the Court to answer what it called a "simple legal question." Compl. ¶1. Now the Court has held Valve unlikely to succeed on the core theory underlying its claims, Valve asks the Court not to answer that question—not because Consumer-Defendants' failure-to-state-a-claim defense has been waived or because Valve has suffered any prejudice, but because Valve prefers Consumer-Defendants answer first and present the same defense again under Rule 12(c).

That is a detour, not a procedural defect. Rule 12(h)(2) preserves the defense. The Court's June 4 order set a response deadline; it did not prohibit the dispositive motion the Court had identified as the proper vehicle for resolving Valve's claims. And the parties had already conferred about the Complaint's defects before Consumer-Defendants filed the Motion; when Consumer-Defendants offered to confer again before Valve responded, Valve declined and filed its opposition instead.

None of Valve's objections change the issue, the pleading, or the governing law. Accepting them would merely require an answer, another motion, and another round of briefing before the Court reaches the same legal question now fully presented. The Federal Rules do not require that pointless duplication, and Valve identifies no reason for the Court to permit it.

**1. Valve's requested relief would require pointless procedural duplication.**

Valve mistakes sequence for waiver. At most, Consumer-Defendants' earlier Rule 12(f) motion affects the procedural vehicle for presenting failure to state a claim; it does not eliminate the defense. Rule 12(h)(2) expressly preserves that defense for assertion in an answer, a Rule 12(c) motion, or at trial. Regardless of what happens to the present Motion, Consumer-Defendants may raise the same legal issue and the Court must eventually decide it. *In re Apple iPhone Antitrust Litigation*, 846 F.3d 313, 318 (9th Cir. 2017).

*Apple* addresses the question of sequence. The Ninth Circuit recognized rigidly requiring an answer followed by a Rule 12(c) motion can produce "unnecessary and costly delays" contrary to Rule 1. *Id.* at 318–19. The Ninth Circuit permits successive Rule 12(b)(6) arguments when the motion was not filed for an abusive purpose, the opposing party suffered no prejudice, and deciding the motion would expedite the case. *Id.* at 319–20. In those circumstances, requiring the defendant to answer, reassert the same defense, and submit the same issue under Rule 12(c) would delay resolution "for no apparent purpose." *Id.* at 320.

That is the situation here. Valve has fully briefed the defense and identifies no prejudice from the Motion's timing or procedural label. Nor does Valve identify anything that would change after an answer. Consumer-Defendants would answer and then present the same legal arguments under Rule 12(c). The parties would repeat the briefing, and the Court would confront the same complaint and the same legal question at a later date.

Nothing suggests Consumer-Defendants filed the Motion to delay this case. They filed it within the fourteen-day period set by the Court's June 4 order, and the Motion seeks a ruling on the merits of the legal question presented in Valve's

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
COMPLAINT AND/OR FOR JUDGMENT ON THE PLEADINGS –
Page 3

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Complaint. Dkt.172 at 3 and 175. Deciding that question now advances the "just, speedy, and inexpensive determination" of the action. Fed.R.Civ.P. 1.

Valve emphasizes *Apple* reviewed the district court's decision for harmless error. Opp.9–10. But that distinction does not support striking or denying this Motion. *Apple* expressly recognized the inefficiency of insisting on an answer and a later Rule 12(c) motion, endorsed the district courts that had avoided that detour, and held consideration of the defense caused no harm where the plaintiff had a full opportunity to respond. 846 F.3d at 318–20.

**2. The June 4 order did not adjudicate the defense or prohibit the dispositive  motion the Court had identified as the proper vehicle.**

Valve next treats the Court's direction that Consumer-Defendants "must answer" within fourteen days as an order barring any intervening dispositive motion. Opp.8–9; Dkt.172 at 3.

Context matters. The Court had just denied Consumer-Defendants' motion to strike because "[a] motion to dismiss or for a more definite statement is the proper vehicle for that relief, not a motion to strike." Dkt.172 at 2. That instruction followed two earlier orders likewise directing the parties toward a dispositive motion. The Court first explained that if Consumer-Defendants' arguments went to the merits rather than jurisdiction, "the appropriate response would be to address those arguments through a Rule 12(b)(6) or summary judgment motion." Dkt.58 at 7. The Court later stated the substantive question, once presented through a civil complaint, was "better addressed through a motion to dismiss or other dispositive motion after full briefing on the merits." Dkt.76 at 10.

Consumer-Defendants followed that guidance.

The direction to answer, accompanied by a citation to Rule 12(a)(4)(A), set the ordinary deadline following disposition of the earlier Rule 12 motion. Dkt.172

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

at 3. It did not decide the Rule 12(b)(6) defense, declare that defense waived, or prohibit the Court from considering a dispositive motion. Consumer-Defendants met their fourteen-day deadline in filing this motion.

Valve's reliance on *Wight v. US West Communications, Inc.*, 2005 WL 1126934 (W.D. Wash. May 12, 2005) does not establish otherwise. *Wight* observes a motion to dismiss is not a "pleading" under Rule 7(a) while addressing a plaintiff's right to amend under Rule 15(a). *Id.* at *3. Consumer-Defendants do not contend their Motion is an answer. The question here is different: whether the Court should decide a preserved defense that is fully briefed now or require an answer and the same motion under Rule 12(c). *Apple*, not *Wight*, answers that question.

**3. Section 5.6's purpose was served, and Valve declined the opportunity to serve it again.**

Valve's certification objection elevates form over substance. Before Consumer-Defendants filed their Rule 12(f) motion, counsel conferred with Valve on September 25, 2025, about the defects in the Complaint and the possibility of a Rule 12(b) motion. Consumer-Defendants certified counsel had "held a meet and confer with Plaintiff's counsel before filing any Rule 12(b) motion to dismiss pursuant to" Section 5.6 and had "provided Valve every opportunity to avoid this motion or a Rule 12(b) motion." Dkt.105 at 1.

Valve made its position clear at the outset of that conference: none of the issues Consumer-Defendants raised would cause Valve to amend the Complaint. Counsel nevertheless reviewed the Complaint's allegations in an effort to narrow the issues for the Court. Valve received notice of the contemplated dismissal arguments, had an opportunity to amend, declined to do so, and confirmed further conferral would not avoid motion practice.

Valve now faults Consumer-Defendants for not conducting another conference. Opp.10–11. But after Valve raised that objection—and before Valve filed its opposition—Consumer-Defendants offered to confer "about any issue that can be narrowed or resolved before Valve responds." July 1, 2026 Letter at 1. Consumer-Defendants reiterated they would confer promptly if Valve believed further discussion could narrow any issue. *Id*. at 3. Valve did not accept the offer. It filed a 24-page opposition instead.

**B.     Consumer-Defendants' Motion does not depend on facts outside the pleadings.**

Valve suggests this Court must deny Consumer-Defendants' Motion because doing so would require it to consider "purported facts outside the proceedings." Opp.11. But the law allows the Court to decide whether a contract is legally enforceable based on a complaint and its exhibits. And here, Valve's Complaint provides the Court with sufficient information to dismiss this case.

Courts can and do reach unconscionability determinations in deciding on a motion to dismiss. *See Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1004–05 (9th Cir. 2010)(affirming finding of procedural and substantive unconscionability at the 12(b)6 stage); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1135–38 (N.D. Cal. 2018); *cf. Ting v. AT&T*, 319 F.3d 1126, 1135 (9th Cir.2003)(ruling an agreement is unconscionable raises a question of law); *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 689 (9th Cir. 2024)(denying motion to compel arbitration upon finding arbitration agreement unconscionable). A determination of unconscionability can be based solely on reference to the agreement's characteristics alone—for example, whether it's a contract of adhesion, whether the "terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce [them]," whether "the arbitration provision was

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

presented on a take-it-or-leave-it basis," and whether changed terms can apply retroactively. *See id.* at 680-83.

Courts can go beyond the pleadings when deciding motions to dismiss. "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Federal courts may also "take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue." *United States v. S. California Edison Co.*, 300 F. Supp. 2d 964, 973 (E.D. Cal. 2004).

Valve argues Consumer-Defendants "repeatedly rely on purported facts outside the Complaint to support their unconscionability arguments." Opp.12. But Valve does not and cannot cite actual examples of facts Consumer-Defendants reference that fall outside the scope of a motion to dismiss. Valve cites two specific items it believes are beyond consideration and is wrong on both.

The first relates to the counsel's expenditure.[1] But the facts Consumer-Defendants reference come straight from Valve's Complaint, which pleads the PC Gamers' lawyers needed a "$6.5 million investment" and ultimately the "amount was $10,129,000" according to SEC filings. *See* Complaint, Dkt.78, ¶¶3 and 15, n.6. And to the extent this Tribunal has any doubt significant money was spent arbitrating, it can take judicial notice that Arbitrators McSorley and Dasteel

---

[1] Opp.18 ("Defendants argue that 'the millions invested by their counsel in filing fees, experts, attorneys, and the software infrastructure to pursue claims repeatedly' (Mot. 14-15), should also be part of the unconscionability analysis. But those expenditures are not alleged in the Complaint.").

awarded $1.4 million and $3.1 million in combined fees and costs. *See* Dkt.167 at 8, Dkt.170 at 26.

The second relates to Valve's withdrawing of claims here to successfully confirm awards in state court.[2] But other court proceedings, and Valve's withdrawals in this one, are subject to judicial notice and also properly before the Court at the pleadings stage. *S. California Edison Co.*, 300 F. Supp. 2d at 973.

**C.      Valve's response relies on inapposite case law.**

Valve relies on cases significantly distinct from the present case to support its misguided arguments.

**1.      Valve demonstrates meaningful choices it could have offered, but denied, Consumer-Defendants.**

Where Nintendo console purchasers could opt out of otherwise mandatory arbitration provisions "by providing written notice to Nintendo within 30 days of purchase," the court found no procedural unconscionability because the minor plaintiff "had a meaningful choice to accept the delegation provision, to **opt out** of the arbitration clause (including the delegation provision), or to reject the entire EULA and **return his Nintendo Switch**." *A.C. ex rel. Carbajal v. Nintendo of Am. Inc.* 2021 WL 1840835 at *1 and *3 (W.D. Wash. Apr. 29, 2021)(emphasis added). Subsequent cases recognize *Nintendo* found the "**opportunity to opt out** of an arbitration clause provided meaningful choice[.]" *Rutherford v. Cent. Bank of Kansas City*, 2024 WL 3992630, at *4 (W.D. Wash. Aug. 29, 2024)(emphasis added). And Nintendo would have refunded what the plaintiff paid for the game console were he to return it. That claimant thus had two meaningful choices to avoid the imposed forum: either obtain a full refund or opt-out of the arbitration clause.

---

[2] *See* Opp.23 ("Defendants also contend that Valve has treated the Superseded SSA 'as valid in one proceeding and a nullity in another" because it has sought to confirm arbitration awards in state court. (Mot. 29.) Again, this argument goes outside the four corners of the Complaint.'").

Facebook offers a free service "and anyone who does not like the terms of service can go elsewhere." *Adkins v. Facebook, Inc.*, 2019 WL 3767455, at *2 (N.D. Cal. Aug. 9, 2019). With no money invested, no refund or remedy is needed, the user can simply stop or use a different service.

Valve now contends Consumer-Defendants could have retained their licenses and continued arbitrating "by pausing use of Steam until their arbitrations concluded"—an "allegation [that] must be accepted as true." Dkt.181 at 2, 15. But Valve identifies no such allegation. Valve's "pause" theory is absent from the Complaint and foreclosed by the exhibits Valve attached to it.  The notices pleaded at ¶¶125, 178, and 179 said only the updated SSA would take effect on November 1, 2024, "unless you delete or discontinue use of your Steam account before then." Valve did not say discontinuance could be temporary, licenses would survive it, or use could resume after arbitration.

While Valve argues "[t]his meant" a pause was enough, §8(B) states "[y]our failure to cancel your Account prior to the effective date of the amendment will constitute your acceptance of the amended terms." Compl.¶ 176 (quoting Ex. 4 §8(B)). And Valve's position *in the complaint* is that because "[n]o Defendant deleted or requested to delete" an account before November 1, consumers who paused without canceling accepted—not rejected—the update. Valve cannot argue around its own contract and complaint.[3] Compl. ¶182.

Contrast Valve's unwritten "pause use indefinitely" shadow-option with the clear, meaningful options *Nintendo* presented to either opt-out or return the product for a full-refund. The Consumer-Defendants had already made an

---

[3] Valve's merger argument is difficult to parse. But if it's unconscionable to explicitly remove the cases from arbitration in this manner, it also unconscionable to remove them via a general merger clause that purported to undo and supersede all prior agreements. Court's look to the effect, not the mechanism, in determining substantive unconscionability. Moreover, this would not dislodge claimants' waiver and estoppel arguments.

investment in and fully paid for their Steam PC games catalog, yet were offered, Valve now contends, the non-explicit option to "pause" and resume use years later once their arbitration concluded. No refund. No opt out. Holding Consumer-Defendants' investment hostage—be it for years or forever—is a source of unconscionability.

### 2. Valve cites numerous cases where courts enforce terms at the time of contracting, not subsequent unilateral modifications.

The other cases cited by Valve—all also unreported—feature courts enforcing the terms in place at the formation of the contract.

The console gamer in the New York case *Bassett v. Elec. Arts Inc.* was held to the original terms of service in force when he bought eight games. *Bassett*, 2015 WL 1298644 at *1 (E.D.N.Y. Feb. 9, 2015). "[H]ad he elected to do so, plaintiff could have familiarized himself with the applicable terms of service agreements **before purchasing** any of defendant's games." *Id.* (emphasis added). Moreover, Bassett could keep and play all eight games purchased from the defendant, in perpetuity, but could not play them online against other players without agreeing to the defendant's terms. In contrast, Valve seeks to undo the terms the Consumers-Defendants agreed to at purchase and, if they refuse, asks them to forswear any and all use of their perpetually licensed games, not just online play.

Prospective cruise-goers in *Bauer v. Atlantis Events, Inc.* were also held to their original terms, under California law. They knowingly agreed to restrictive refund terms, then cancelled shortly before the trip and only received a partial refund as agreed, chose to pay their fares under the terms in force at the time of their payment and were bound by them. 2014 WL 12603112, at *3 (C.D. Cal. Mar. 5, 2014).

The plaintiff in *DeAsis v. Young Men's Christian Ass'n of Yakima* was held to a liability waiver he agreed to when he first joined a gym, before being injured nine months later by YMCA's negligence. 183 Wash. App. 1018 (2014). He had not invested hundreds or thousands in exercise equipment for his home; rather he was paying for access to the YMCA's equipment, one month at a time. Even if this case addressed a change to contract terms after some period of use (as with the Steam users), which it does not, DeAsis could immediately forego future months of access, join a different gym, or exercise outside, and lose nothing. He received the access he paid for under the original terms he bargained for.

If these cases stand for anything, it is that courts enforce terms in force at the time the contract was made. There is a fundamental difference between enforcing what parties agreed to at the time of the bargain and forcing unilateral changes partway through performance.

In nearly all cases cited by Valve where a court approves a forum change at all, the plaintiff commenced litigation *after* the new terms were in place: *Ireland-Gordy v. Tile, Inc.* 2026 WL 594859 (agreement change in 2023, class action in 2024); *Goggins v. Amazon.com Inc.* 2025 WL 2782872 (agreement amended 2022, class action 2024); *Trudeau v. Google LLC* 349 F. Supp. 3d 869 (agreement updated 2017 with an opt-out option, lawsuit filed 2018); *Peters v. Amazon Services LLC* 2 F. Supp. 3d 1165 (agreed to new terms 2012, lawsuit filed 2013), etc.

Two of Valve's dozens of cases seem to concern the prospect of post-litigation changes. In *SCPS LLC v. Kind Law,* the company revised its terms to switch the arbitration forum from the American Arbitration Association ("AAA") to ADR Chambers on June 28, 2024. 2026 WL 96898, at *9-10 (C.D. Cal. Jan. 8, 2026). Claimants began sharing notices of dispute with SCPS LLC on June 19, 2024, but the court found their lawyers at Kind Law did not file demands for arbitration with

the AAA until August of 2024, around two months after the new terms had taken effect. *Id.* at *1 and 2.

Valve cites *Wu v. Uber Techs., Inc.* to justify its decision to bypass counsel. 186 N.Y.S.3d 500, 507 (N.Y. Sup. Ct. 2022). But in *Wu,* Uber had not yet learned it was sued when it changed terms due to COVID's impact on its mail processing. While Uber improperly contacted Wu by email and through its app to change its terms to require arbitration, the court declined sanctions because Wu "fail[ed] to establish that Uber had actual knowledge of Wu's legal representation when the January 2021 Email was sent." *Id.* at 542.

After years of engaging in the very arbitral forum it chose, Valve now seeks to reverse course and cut its losses. This attempt bears little resemblance to *SCPS LLC*'s forum change, which occurred before arbitration demands were filed. And unlike Uber's ignorance of Wu's claims, Valve asserts its attempt to alter the arbitration agreement here was **a response to** the arbitration litigation, claiming "[i]n the wake of changed circumstances, Valve modified the SSA to remove its arbitration agreement." Opposition, p.22. Uber's counsel's ignorance allowed them to narrowly escape sanctions; Valve's counsel's knowledge and intent mandate unconscionability.

**D.**  **Washington does not recognize California's "nonessential recreation" affirmative defense to unconscionability—nor would it be applicable.**

As stated in Consumer-Defendants's opening briefing, Washington hasn't adopted California's doctrine concerning recreational goods. But even if it did, it's not relevant.  Consumer-Defendants were forced to sacrifice their constitutionally protected rights of petition—not a future opportunity to pay for fun. As the Washington Appellate Court has ruled when Valve attempted to interfere with the

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
COMPLAINT AND/OR FOR JUDGMENT ON THE PLEADINGS –
Page 12

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Consumer-Defendant's cases by suing their counsel, "in representing their clients, the Bucher Defendants were exercising [the Consumer-Defendants'] constitutional rights under the Washington State Constitution, in addition to the United States Constitution." These consumers were forced to give up not trivial recreation but the forum in which they were litigating (and sometimes won) their antitrust claims.

Even the cases cited by Valve do not support California's doctrine on these facts. The California plaintiffs of *In re iPhone Application Litigation* could not identify any injury from having their personal information tracked, and so did not have standing to bring a case against Apple. 2011 WL 4403963 (N.D. Cal. Sep. 20, 2011). The holding was not based on whether iPhone app use is nonessential, but on the plaintiffs' lack of economic harm. *Id*. at *5, *11, and was later abrogated in the same district in a case that was actually reported, holding injury to privacy is "actual injury." *In re Facebook, Inc., Consumer Priv. User Profile Litig*., 402 F. Supp. 3d 767, 785–86 (N.D. Cal. 2019). Tried again today, a court would consider this harm in an unconscionability argument.

But perhaps the biggest reason the recreational activity doctrine wouldn't be applicable, even in California, is "California case law is quite clear that unilateral modifications to arbitration agreements that purport to apply to already-pending disputes render the contract illusory." *SCPS LLC,* 2026 WL 96898 at *9. So a California court would dispense with this case by finding Valve's new agreement illusory rather than unconscionable, but the result is the same—we don't enforce the unilateral mid-litigation change.

**E.    Valve offers no meaningful rebuttal to the Consumer-Defendants' estoppel and waiver arguments.**

Valve argues it didn't "act 'inconsistently': it merely acted in response to new circumstances." But Valve's complaint admits Arbitrator Dasteel's order came

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
COMPLAINT AND/OR FOR JUDGMENT ON THE PLEADINGS –
Page 13

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

down on "July 8, 2024," yet Valve waited until "September 26, 2024" to change its terms. Complaint at 113. All the while Valve was litigating *these cases* in arbitration and affirmatively seeking to enforce the terms of the Pre-2024 SSA. Dkt. 95-1. Valve argues *Morgan v. Sundance, Inc.* is distinguishable because the "defendant moved to compel arbitration only after litigating in court against that plaintiff for months." But Valve, too, waited months, continuing to litigate in arbitration after the Arbitrator Dasteel ruling. That waives Valve's claim here.

Valve also acted inconsistently in the years following the filing of this case and unilateral change of terms. When Valve wins underlying arbitrations, Valve dismisses the cases against those Consumer-Defendants and then takes the affirmative step of **confirming** the awards issued pursuant to the Pre-2024 SSA. *See, e.g.*, Dkt.160. In confirming awards, Valve has adopted the position those awards are enforceable under the Pre-2024 SSA, despite having argued the exact opposite for those very same Consumer-Defendants here.

While Valve could have confirmed those awards *here*, where the litigation was already ongoing, Valve attempts to obscure its conduct by withdrawing those claims and confirming in front of yet another tribunal. But this Court need not pretend the dismissed Consumer-Defendants did not face subsequent confirmations. As addressed above, notice of other court filings and decisions fall squarely within the scope of judicial notice appropriate for a motion to dismiss.

Valve admits it "has sought to confirm those awards and voluntarily dismissed those Defendants from this action to avoid re-litigation." That is, Valve confirmed those awards to avoid precisely what it seeks to force the Consumer-Defendants with winning and unresolved claims to do: relitigate their claims. When Valve argues that choice is "not inconsistent," Valve seems to conflate "consistency of legal reasoning" with "consistently doing what benefits Valve." Judicial estoppel

is concerned with the former, not the latter. Valve chose to confirm its wins rather than adopt the consistent legal position that the arbitrators lack authority. Valve must now live with that choice, and take its arbitration wins with its losses, as the Consumer-Defendants have done.

DATED this 16th day of July, 2026.

BUCHER LAW PLLC

By: */s William Ward Bucher IV*

William Ward Bucher IV
(*pro hac vice* admitted)
202-997-3029
1000 Brickell Ave
STE 715 - Mailbox 1004
Miami, FL 33131
Tel. 202.997.3029
E: will@bucherlawfirm.com


BAILEY DUQUETTE P.C.

William R. Burnside, WSBA #36002
800 Fifth Ave, Suite 101-800
Seattle, Washington 98104
T: 206.353.8021
E: will@baileyduquette.com

*Attorneys for Defendants*


*I certify that this motion contains less than 4,200 words under Local Rule W.D. Wash. LCR 7(e).*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I caused a true and correct copy of the foregoing Defendants' Reply In Support Of Motion To Dismiss Complaint And/Or For Judgment On The Pleadings served upon counsel of record herein, as follows:

Blake Marks-Dias, WSBA No. 28169
1015 Second Avenue, Floor 10                                    ☒ Via Electronic Service
Seattle, Washington 98104
(206) 625-8600 Phone
(206) 625-0900 Fax
E: bmarksdias@corrcronin.com

Michael W. McTigue Jr., *Admitted Pro Hac Vice*
Meredith C. Slawe, *Admitted Pro Hac Vice*
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
E: michael.mctigue@skadden.com
E: meredith.slawe@skadden.com

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Dated: July 16, 2026 at Seattle, Washington.

*s/ William R. Burnside*
William Burnside, WSBA No. 36002

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
COMPLAINT AND/OR FOR JUDGMENT ON THE PLEADINGS –
Page 16

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869