HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALVE CORPORATION,

                    Plaintiff,

        v.

THOMAS ABBRUZZESE, et al.,

                 Defendants.

No. 2:24-cv-1717-JNW

**PLAINTIFF VALVE CORPORATION'S REPLY BRIEF IN FURTHER SUPPORT OF ITS CROSS-MOTION TO VACATE ARBITRATION AWARDS**

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS
CROSS-MOTION TO VACATE ARBITRATION
AWARDS

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................1

II.     ARGUMENT................................................................................................................3

    A.  Vacatur Is Warranted Because Defendants Agreed to the Controlling SSA That
        Requires the Parties to Proceed in Court ..........................................................3

        1.  The Arbitrator Did Not and Could Not Decide Which Agreement
            Governs ...............................................................................................3

        2.  Each Defendant Agreed to the Controlling SSA .......................................4

        3.  There Is No Agreement to Arbitrate Even if the Forum Provision in
            the Controlling SSA Is Unenforceable ..........................................................4

        4.  The Controlling SSA Is Not Unconscionable..............................................5

        5.  Valve Did Not Breach the Implied Covenant of Good Faith and Fair
            Dealing..................................................................................................7

        6.  The Arbitration Agreement Was Not Irrevocable ......................................8

        7.  Valve Did Not "Accept" the Arbitrator's  Jurisdiction or Waive
            Rights Under the Controlling SSA ..........................................................8

        8.  There Is No Basis for Estoppel ...................................................................10

    B.  The Arbitrator's Ruling Manifestly Disregards the Law......................................10

    C.  The Attorneys' Fee Awards Were Arbitrary and Irrational..................................12

III.    CONCLUSION.............................................................................................................13

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS
CROSS-MOTION TO VACATE ARBITRATION
AWARDS - i

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## TABLE OF AUTHORITIES

**Cases**

*Bassett v. Electronic Arts Inc.*,
No. 13-CV-04208 (MKB)(SMG),
2015 WL 1298644 (E.D.N.Y. Feb. 9, 2015),
*report and recommendation adopted*, 93 F. Supp. 3d 95 (E.D.N.Y. 2015).........................5

*Bischoff v. DirecTV, Inc.*,
180 F. Supp. 2d. 1097 (C.D. Cal. 2002) ........................................................................8, 9

*Burnett v. Pagliacci Pizza, Inc.*,
470 P.3d 486 (Wash. 2020).................................................................................................6

*Chun Ping Turng v. Guaranteed Rate, Inc.*,
371 F. Supp. 3d 610 (N.D. Cal. 2019) ...............................................................................9

*Cobb v. Ironwood Country Club*,
233 Cal. App. 4th 960 (2015) .............................................................................................7

*Coinbase, Inc. v. Suski*,
602 U.S. 143 (2024).............................................................................................................3

*Contour IP Holding, LLC v. GoPro, Inc.*,
No. 3:17-cv-04738-WHO,
2021 WL 1022854 (N.D. Cal. Mar. 17, 2021)..................................................................10

*Fortune, Alsweet & Eldridge, Inc. v. Daniel*,
724 F.2d 1355 (9th Cir. 1983) ...........................................................................................9

*Haider v. Lyft, Inc.*,
No. 20-cv2997 (AJN),
2021 WL 3475621 (S.D.N.Y. Aug. 6, 2021).....................................................................6

*Ireland-Gordy v. Tile, Inc.*,
No. 25-403,
2026 WL 594859 (9th Cir. Mar. 3, 2026)..........................................................................8

*Kellogg v. National Railroad Passenger Corp.*,
504 P.3d 796 (Wash. 2022)................................................................................................9

*Leegin Creative Leather Products, Inc. v. PSKS, Inc.*,
551 U.S. 877 (2007).....................................................................................................10, 11

*LN Management, LLC v. JP Morgan Chase Bank, N.A.*,
957 F.3d 943 (9th Cir. 2020) .............................................................................................4

*Martin v. Yasuda*,
829 F.3d 1118 (9th Cir. 2016) ...........................................................................................9

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS
CROSS-MOTION TO VACATE ARBITRATION
AWARDS - ii

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Mason v. Washington State*,
No. C17-186 MJP,
2017 WL 6026937 (W.D. Wash. Dec. 5, 2017) ...............................................................4

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022)...........................................................................................................9

*Pilon v. Discovery Communications, LLC*,
769 F. Supp. 3d 273 (S.D.N.Y. 2025)...............................................................................7

*Ramirez v. Ghilotti Bros.*,
941 F. Supp. 2d 1197 (N.D. Cal. 2013) .............................................................................5

*Saucedo v. Experian Information Solutions*,
No. 1:22-cv-01584-ADA-HBK,
2023 WL 4708015 (E.D. Cal. July 24, 2023) ...................................................................8

*Saunders v. Lloyd's of London*,
779 P.2d 249 (Wash. 1989)..............................................................................................10

*SCPS LLC v. Kind Law*,
No. CV 25-3255-MWF (SSCx),
2026 WL 96898 (C.D. Cal. Jan. 9, 2026) .........................................................................8

*Shivkov v. Artex Risk Solutions, Inc.*,
974 F.3d 1051 (9th Cir. 2020) ...........................................................................................8

*Skillern v. Peloton Interactive, Inc.*,
No. 21 Civ. 6808 (ER),
2022 WL 3718279 (S.D.N.Y. Aug. 29, 2022)...................................................................9

*Sobot v. Clean the World Foundation Inc.*,
No. 22-cv-1846 (TSC),
2024 WL 4119389 (D.D.C. Sep. 9, 2024) .........................................................................8

*Swanson v. U.S. Forest Service*,
87 F.3d 339 (9th Cir. 1996) ...............................................................................................1

*Trudeau v. Google LLC*,
816 F. App'x 68 (9th Cir. 2020) ........................................................................................7

*United States v. Apple, Inc.*,
791 F.3d 290 (2d Cir. 2015)..............................................................................................11

*United States v. Brewbaker*,
87 F.4th 563 (4th Cir. 2023) ............................................................................................11

*USA v. Trent*,
No. 16-cr-00178-CRB-1,
2020 WL 1812214 (N.D. Cal. Apr. 9, 2020) ....................................................................9

| | |
|---|---|
| PLAINTIFF VALVE CORPORATION'S REPLY BRIEF IN FURTHER SUPPORT OF ITS CROSS-MOTION TO VACATE ARBITRATION AWARDS - iii | **CORR CRONIN LLP**<br>1015 Second Avenue, Floor 10<br>Seattle, Washington 98104-1001<br>Tel (206) 625-8600<br>Fax (206) 625-0900 |

*Valve Corp. v. Rothschild*,
     No. 2:23-cv-01016-JNW,
     2026 WL 352890 (W.D. Wash. Feb. 9, 2026)......................................................................4

*Williams v. County of Alameda*,
     26 F. Supp. 3d 925 (N.D. Cal. 2014) ...............................................................................1

*Zunum Aero, Inc. v. Boeing Co.*,
     No. 2:21-cv-00896-JLR,
     2024 WL 5517128 (W.D. Wash. June 14, 2024)............................................................12

**Statutes**

15 U.S.C. § 15...............................................................................................................................12

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS
CROSS-MOTION TO VACATE ARBITRATION
AWARDS - iv

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## I.    INTRODUCTION

The Dasteel Defendants'[1] Response ("Opp.") confirms that vacatur is proper:[2]

***Once the Dasteel Defendants Agreed to the Controlling SSA,[3] the Arbitrator Had No Authority to Proceed.*** The Dasteel Defendants claim they are not bound by the Controlling SSA because Valve purportedly gave vague notice, failed to secure their consent, and denied them a meaningful, fair choice. None of that is supported:

- Valve gave conspicuous notice in several forms.
- This Court held that Valve has "likely shown assent" as to three of the four Dasteel Defendants. Order 17. The remaining Defendant assented in a manner that the Court held bound users to the Controlling SSA.
- Steam users could reject the Controlling SSA and retain their purchased game licenses by pausing their Steam use while they completed their arbitrations.
- The Dasteel Defendants retained the right to litigate their claims against Valve in court under the Controlling SSA.

The Dasteel Defendants advance equitable grounds for ignoring their assent to the Controlling SSA. All of these arguments are premised on the fiction that Valve arbitrated with the Dasteel Defendants for years and then, inexplicably, presented them with the Controlling SSA. But the Controlling SSA was presented in September 2024, and the Dasteel Defendants' arbitral hearings took place long after—between August 25 and October 13, 2025. The amendment to the SSA was precipitated by the Dasteel Defendants' own counsel, who obtained rulings from

---

[1] Capitalized terms are defined in the Cross-Motion ("Mot."). Internal citations are omitted and all emphasis is added. Exhibits to the Reply Declaration of Blake Marks-Dias, dated July 20, 2026 ("Reply Decl."), are identified as "Reply Ex."

[2] The Dasteel Defendants seek to incorporate by reference arguments from other filings. (Opp. 4 n.1.) This request is "wholly improper." *Williams v. Cnty. of Alameda*, 26 F. Supp. 3d 925, 947 (N.D. Cal. 2014); *see also Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 345 (9th Cir. 1996).

[3] The SSA has been amended twice since September 26, 2024. These subsequent amendments do not affect the legal rights of U.S. users and are not relevant. The SSA as of September 26, 2024, and the subsequently amended versions are referred to collectively as the "Controlling SSA."

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS
CROSS-MOTION TO VACATE ARBITRATION
AWARDS - 1

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Arbitrator Dasteel declaring the Superseded SSA's arbitration agreement unenforceable (despite now seeking to enforce it) and then filed a putative nationwide class action premised on those rulings. In view of those developments, Valve exercised its amendment rights under the SSA and updated it to remove the arbitration agreement. Valve notified all users worldwide of these updates, including the Dasteel Defendants. It also notified counsel for the Dasteel Defendants and offered to reimburse any AAA fees. These actions were not inconsistent or inequitable; Valve acted in good faith to restore order to a dispute resolution process that the Dasteel Defendants' counsel had thrown into chaos.

*The Arbitrator's Ruling Manifestly Disregards the Law.* The Arbitrator's ruling that Section 6.4 of the 2011 Microsoft SDA—a *vertical* agreement—constitutes a *per se* unlawful price-fixing agreement manifestly disregards settled antitrust law. The Arbitrator applied the *per se* rule because the agreement purportedly "has horizontal effects." This ruling flouted Supreme Court authority that "a restraint is horizontal not because it has horizontal effects, but because it is a horizontal agreement." (Mot. 17.) The Dasteel Defendants do not dispute this manifest disregard of law. They also do not refute that because the Arbitrator found no price impact affecting competing *products*, there can be no actionable price fixing.

*The Arbitrator's Fee Awards Were Arbitrary and Irrational.* The Arbitrator's attorneys' fee awards are grossly disproportionate to the Dasteel Defendants' damages (between 4,085 and 14,723 times damages after trebling). They include a 1.1 multiplier even though the Dasteel Defendants prevailed on only one distinct, severable issue, and are padded with hundreds of hours of work admittedly performed for different claimants. The Dasteel Defendants dispute none of this. That windfall renders the Awards arbitrary and irrational.

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS
CROSS-MOTION TO VACATE ARBITRATION
AWARDS - 2

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## II.    ARGUMENT

### A.    Vacatur Is Warranted Because Defendants Agreed to the Controlling SSA That Requires the Parties to Proceed in Court

#### 1.    The Arbitrator Did Not and Could Not Decide Which Agreement Governs

The Dasteel Defendants argue that disqualified arbitrator Janice Sperow ruled that their disputes were arbitrable and that Valve cannot challenge that order. But Ms. Sperow was removed by the AAA and replaced by the Arbitrator.[4] (Marks-Dias Decl. ¶¶ 12-13.) The Arbitrator concluded that "it is for a court to decide whether [Valve's amendment] has the effect of depriving me of jurisdiction." (Reply Ex. 32; *see also* Mot. 6.)

The determination as to which agreement governs was neither Ms. Sperow's nor the Arbitrator's to make. Under *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024), the Court must decide that dispute. Order 16 n.6. The Dasteel Defendants argue that the Superseded SSA delegates to the arbitrator decisions concerning arbitrability. But *Coinbase* rejected this argument. 602 U.S. at 150 (court must decide even where there is a "delegation clause in the first contract").

The Dasteel Defendants argue that Valve "consented" to jurisdiction before the AAA and "asked" Ms. Sperow to decide which agreement controls. Nonsense. Valve reserved its rights after providing notice of the update to the SSA. (Marks-Dias Decl. ¶¶ 9-10, 15-16.) And Valve consistently asserted that a court must decide which agreement controls. (Reply Decl. ¶ 7; Reply Exs. 29-31.) The Dasteel Defendants contend that Valve challenged the Arbitrator's authority only after the awards issued. Not so. Valve challenged the AAA's jurisdiction beginning on September 27, 2024, nearly a year before the Dasteel Defendants' first final merits hearing began and well over a year before the Arbitrator issued an interim award. (Marks-Dias Decl. ¶¶ 9, 16, 22; Reply Decl. ¶¶ 5-7, Reply Exs. 27-28.)

---

[4] The Dasteel Defendants do not request that this Court confirm Ms. Sperow's order, nor could they.

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS
CROSS-MOTION TO VACATE ARBITRATION
AWARDS - 3

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**2.      Each Defendant Agreed to the Controlling SSA**

The Dasteel Defendants suggest there is some dispute as to whether they "explicitly agreed" to the Controlling SSA (Opp. 15), but the Court has held otherwise:

- Three Dasteel Defendants "affirmatively accepted the [Controlling] . . . SSA" prior to November 1, 2024 "through the Pop-Up Notice, [a] . . . purchase screen check box, or both." Order 17; Mot. 4. The Court concluded that these individuals "likely assented." Order 17-18, 23 n.9.[5]

- Kevin Montes explicitly agreed when making a purchase on Steam after November 1, 2024. (Mot. 5.) Thus, he likewise assented in the manner the Court deemed sufficient. Order 17-18, 23 n.9. Montes also assented through continued use of Steam as of November 1, 2024. (Dkt. 80 ¶¶ 24-28 & Ex. C.)[6]

**3.      There Is No Agreement to Arbitrate Even if the Forum Provision in the Controlling SSA Is Unenforceable**

There was no agreement to arbitrate even if the forum provision in the Controlling SSA is unenforceable. That is because the Dasteel Defendants agreed to the Controlling SSA, which extinguished the Superseded SSA and its arbitration agreement. (Mot. 7-8.) The Dasteel Defendants do not address and thus concede this point. *See LN Mgmt., LLC v. JP Morgan Chase Bank, N.A.*, 957 F.3d 943, 950 (9th Cir. 2020) ("Failure to respond meaningfully in an answering brief to an appellee's argument waives any point to the contrary."); *Valve Corp. v. Rothschild*, 2026 WL 352890, at *2 (W.D. Wash. Feb. 9, 2026) (Whitehead, J.) (treating "failure to respond" as "concession"); *Mason v. Washington State*, 2017 WL 6026937, at *3 (W.D. Wash. Dec. 5, 2017)

---

[5] The Court addressed 454 defendants who had accepted the Controlling SSA before it became effective on November 1, 2024, including three Dasteel Defendants. Although Defendant Montes explicitly agreed after that date, there is no indication that the Court's ruling hinged on this temporal distinction.

[6] The Controlling SSA is referred to as the "Current SSA" in the Declarations of Scott Lynch (Dkts. 80, 162, and 185).

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS
CROSS-MOTION TO VACATE ARBITRATION
AWARDS - 4

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

(similar); *Ramirez v. Ghilotti Bros, Inc.*, 941 F. Supp. 2d 1197, 1210 & n.7 (N.D. Cal. 2013) (similar). The Awards must be vacated on this basis alone.

### 4.    The Controlling SSA Is Not Unconscionable

The Controlling SSA is enforceable and not unconscionable.

***No Procedural Unconscionability.*** The Dasteel Defendants establish none of the requirements to show procedural unconscionability.

*First*, the Dasteel Defendants do not, and cannot, show unconscionability based on the manner in which the parties entered into the Controlling SSA. They assert that the agreement is a "non-negotiable clickwrap," (Opp. 11), but concede that courts routinely enforce such agreements entered into through the exact same means, (Mot. 9). They assert that they had to "give up their entire Steam accounts" or "surrender[]" arbitration rights. (Opp. 11, 13); Order 20. But they ignore Valve's authority holding the consumer always has the option of forgoing playing video games. (Mot. 9.)

Further, Valve's notices (Mot. 10)—which the Opposition disregards—are clear: the Dasteel Defendants *could* have kept their Steam accounts and continued arbitrating under the Superseded SSA. (Dkt. 80 ¶¶ 10, 12.) Indeed, the Dasteel Defendants do not deny that some Steam users, like Ryan Lally, did just that. (Mot. 10 n.8.) And even if the Dasteel Defendants had to relinquish their games (and they did not), that would be irrelevant. *See Bassett v. Elec. Arts Inc.*, 2015 WL 1298644, at *11 (E.D.N.Y. Feb. 9, 2015) (requirement that consumer enter into arbitration agreement after making video game purchase, despite allegedly being unable to return purchase, did not render agreement unconscionable), *report and recommendation adopted*, 93 F. Supp. 3d 95 (E.D.N.Y. 2015).

*Second*, the Dasteel Defendants do not show that they lacked a reasonable opportunity to understand the terms. Valve gave the Dasteel Defendants conspicuous notice of the Controlling SSA. (Mot. 12.) Although not required, Valve informed the Dasteel Defendants' counsel about the

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS
CROSS-MOTION TO VACATE ARBITRATION
AWARDS - 5

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

changes the day after it started presenting notice and gave their clients over 30 days to decide whether to accept them. (Dkt. 80 ¶¶ 10, 12.)

*Third*, the Dasteel Defendants argue that Valve "hid[]" the terms of the amendment "behind ambiguous language" (Opp. 11) but that is absurd. Valve's notices explained in plain language that all disputes must proceed in court. Order 5-8; (Part II(A)(2), *supra*; Mot. 12.) This case bears no resemblance to *Burnett v. Pagliacci Pizza, Inc.*, 470 P.3d 486 (Wash. 2020) (Opp. 11-13). There, an arbitration requirement was buried at page 18 of a 23-page handbook that plaintiff was given only *after* signing his employment agreement. *Burnett*, 470 P.3d at 495-97.

The Dasteel Defendants complain that Valve presented its notice of the Controlling SSA directly to Steam users. (Opp. 15-16.) But they do not contest that Valve gave written notice to their counsel *the day after* the update. (Ex. 23.) Nor do they try to distinguish Valve's authority, which establishes that a business may communicate directly with a consumer to update its user agreement, even amid pending litigation. (Mot. 11.) A rule otherwise would be "unworkable in practice" and would "essentially freeze" businesses' contracts in place. *Haider v. Lyft, Inc.*, 2021 WL 3475621, at *3 (S.D.N.Y. Aug. 6, 2021).

***No Substantive Unconscionability.*** The Dasteel Defendants establish none of the requirements to show substantive unconscionability.

*First*, the Dasteel Defendants do not dispute—and thus concede—that they retained all statutory rights. (Mot. 13.)

*Second*, the Dasteel Defendants argue that the Controlling SSA's forum selection provision is one-sided because it forced them to "discard months of victorious effort" and "hundreds of thousands of dollars in awarded costs and fees." (Opp. 12.) Yet they do not dispute that unconscionability is assessed "at the time the contract is made" (Mot. 13)—here, on or before November 1, 2024, for all Defendants except Defendant Montes, and December 26, 2024, for Defendant Montes (Dkt. 80 ¶¶ 24-28 & Ex. C.). Nor do they dispute that when they entered into the Controlling SSA, (i) their counsel had yet to incur the overwhelming majority of their claimed

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS
CROSS-MOTION TO VACATE ARBITRATION
AWARDS - 6

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

expenses; (ii) they were more than one year from their final merits hearings; (iii) no award was even on the horizon let alone issued; or (iv) their counsel was then-proceeding—and would thereafter proceed—on contingency and with litigation funding, dispelling any claim of financial prejudice. (Mot. 13-14.)

By contrast, forcing Valve to concurrently defend arbitrations and a parallel putative class action—proceedings that the Dasteel Defendants' own counsel has called "overlapping"—was manifestly unfair. (*Id.* at 14.) The suggestion that Valve "loses nothing" of significance by being forced to arbitrate (Opp. 12) ignores the harm from such a wasteful, inefficient process.

*Third*, the Dasteel Defendants omit that they obtained real benefit from the amendment: the ability to proceed in the forum that their own counsel—and class counsel in *Wolfire*—had argued was superior. (Mot. 14-15.)

### 5. Valve Did Not Breach the Implied Covenant of Good Faith and Fair Dealing

The Dasteel Defendants accuse Valve of breaching the implied covenant of good faith and fair dealing. (Opp. 13-14.) But their principal authority, *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960 (2015), addresses unilateral amendments; its reasoning "does not extend to mutual modifications." *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 295 (S.D.N.Y. 2025); *accord Trudeau v. Google LLC*, 816 F. App'x 68, 70 n.1 (9th Cir. 2020). Here, the parties mutually agreed to modify the SSA.

The Dasteel Defendants' bad faith claims are also unfounded. Valve adopted the Controlling SSA to restore order: the Dasteel Defendants' counsel was asserting the same claims simultaneously before the AAA and this Court. (*See* Part I, *supra*.) The Dasteel Defendants' counsel has acknowledged to arbitrators that it is forum shopping by prosecuting separate actions—arbitrations and a putative class action—for the same claimants in two different forums. Counsel has even said that it may withdraw arbitrations and proceed in court if it is dissatisfied with any arbitral ruling. (Reply Decl. ¶ 11.) Counsel has since withdrawn certain arbitrations on

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS
CROSS-MOTION TO VACATE ARBITRATION
AWARDS - 7

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

the eve of hearing and requested unexplained "stay[s]" of others. (*Id.* ¶ 12.) Valve enacted its amendment to ensure all parties' disputes could be adjudicated in one forum through an orderly, final, and binding process.

### 6.    The Arbitration Agreement Was Not Irrevocable

The Dasteel Defendants posit that an arbitration agreement cannot be revoked once "performance commences." (Opp. 14.) But the parties did not "revoke" the Superseded SSA; they replaced it with the Controlling SSA. Defendants were "free to modify" their subscriber agreement with Valve "at any time" by "mutual consent." *Sobot v. Clean the World Found. Inc.*, 2024 WL 4119389, at *3 (D.D.C. Sep. 9, 2024). That is what they did.

*Shivkov v. Artex Risk Solutions, Inc.*, 974 F.3d 1051 (9th Cir. 2020) (Opp. 14), does not hold that an arbitration agreement survives where, as here, the parties mutually agree to a new agreement that removes the arbitration provision.

### 7.    Valve Did Not "Accept" the Arbitrator's Jurisdiction or Waive Rights Under the Controlling SSA

The Dasteel Defendants argue that Valve originally "consented to" the AAA's jurisdiction. (Opp. 16.) But that is of no moment. The parties thereafter agreed to resolve their disputes in court through the Controlling SSA. (Mot. 3-5; Dkt. 80 ¶¶ 24-28 & Ex. C.) Case law confirms that an amended dispute resolution provision is enforceable with respect to claims already asserted in another forum. *See, e.g.*, *Ireland-Gordy v. Tile, Inc.*, 2026 WL 594859, at *1-5 (9th Cir. Mar. 3, 2026); *SCPS LLC v. Kind Law*, 2026 WL 96898, at *9-10 (C.D. Cal. Jan. 9, 2026); *Saucedo v. Experian Info. Sols., Inc.*, 2023 WL 4708015, at *6 (E.D. Cal. July 24, 2023). As this Court concluded, the Controlling SSA "reaches the pending arbitrations." Order 17.

Nor did Valve waive its rights under the Controlling SSA by having moved years earlier to compel seven other consumers to arbitrate under an August 2020 version of the SSA. (Opp. 17-18.) Valve did not demand arbitration as to the Dasteel Defendants. *See Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d. 1097, 1113 (C.D. Cal. 2002) ("[T]o hold that defendant can no longer assert its

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS
CROSS-MOTION TO VACATE ARBITRATION
AWARDS - 8

right to compel arbitration simply because it did not assert that right in another case is absurd."); *see also Skillern v. Peloton Interactive, Inc.*, 2022 WL 3718279, at *4 (S.D.N.Y. Aug. 29, 2022) (similarly); *Chun Ping Turng v. Guaranteed Rate, Inc.*, 371 F. Supp. 3d 610, 620 (N.D. Cal. 2019) (similarly). In the Dasteel Defendants' words, *Wolfire* plaintiffs were "*different*" individuals who "are not parties to this proceeding" and so any effort to conflate them with the Dasteel Defendants is an "intentional effort at misdirection." (Opp. 9.) Moreover, the version of the SSA that was the subject of that June 2021 motion was itself superseded by the Superseded SSA. Waiver requires the "voluntary relinquishment of a *known* right." *Kellogg v. Nat'l R.R. Passenger Corp.*, 504 P.3d 796, 810 (Wash. 2022). Valve could not have "waived" its right to litigate under the Controlling SSA before it existed. *See, e.g.*, *USA v. Trent*, 2020 WL 1812214, at *1 (N.D. Cal. Apr. 9, 2020).

The Dasteel Defendants point to nothing showing that Valve relinquished this right through "inconsistent" conduct (Opp. 16) after the Controlling SSA was adopted in September 2024. Valve notified the AAA of the Controlling SSA *within a day* of its adoption and requested that the AAA close all arbitrations, including the Dasteel Defendants' Arbitrations. (Reply Decl. ¶¶ 4-6; Reply Ex. 27; Marks-Dias Decl. ¶ 58, Ex. 23.) Valve then commenced this action to enjoin the Dasteel Defendants' Arbitrations and promptly requested a stay pending its resolution. (Mot. 6-7.) After the Arbitrator refused, Valve arbitrated under protest. (*Id.* at 7; Marks-Dias Decl. ¶¶ 9-11, 15-16.) That is the antithesis of waiver.

In *Morgan v. Sundance, Inc.*, 596 U.S. 411, 415 (2022), and *Martin v. Yasuda*, 829 F.3d 1118, 1125-26 & n.4 (9th Cir. 2016) (Opp. 16-17), defendants litigated in court for months and then moved to compel arbitration under existing agreements. Similarly, in *Fortune, Alsweet & Eldridge, Inc. v. Daniel*, 724 F.2d 1355, 1357 (9th Cir. 1983) (per curiam) (Opp. 8), a defendant "voluntarily participated" in arbitration hearings for months before denying the arbitrator's authority.

---

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS
CROSS-MOTION TO VACATE ARBITRATION
AWARDS - 9

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

### 8.    There Is No Basis for Estoppel

The Dasteel Defendants invoke judicial and equitable estoppel (Opp. 17-21), but these arguments rest on the false premise that Valve has unfairly "shift[ed] positions" (*id.* at 19). Valve reacted to new circumstances set in motion by the Dasteel Defendants' own counsel. *See, e.g.*, *Contour IP Holding, LLC v. GoPro, Inc.*, 2021 WL 1022854, at *3 (N.D. Cal. Mar. 17, 2021) (no judicial estoppel where "the facts underlying [party's] position changed"); *Saunders v. Lloyd's of London*, 779 P.2d 249, 255 (Wash. 1989) (equitable estoppel requires an act that is both "inconsistent" and inequitable).

The Dasteel Defendants contend without basis that Valve "misled" courts by seeking to confirm arbitration awards. (Opp. 19-20.) Since adopting the Controlling SSA, Valve has arbitrated under a full reservation of rights where arbitrators refused to issue stays. (Mot. 6.) Valve has won 134 out of 164 proceedings where final awards were issued (Reply Decl. ¶ 9), and has sought to confirm awards to avoid wasteful relitigation of meritless claims. In its petitions to confirm, Valve explained that it had "disputed" respondents' right to "proceed in arbitration" but that arbitrators proceeded over that objection. (Reply Ex. 33.)

### B.    The Arbitrator's Ruling Manifestly Disregards the Law

The Awards must also be vacated because the Arbitrator recognized and then ignored controlling federal antitrust law. The Dasteel Defendants argue that the Arbitrator "correctly applied the law when he found that Valve and Microsoft engaged in a horizontal price-fixing agreement." (Opp. 24.) But the Arbitrator found that the 2011 Microsoft SDA was a "vertical agreement." (Mot. 16.) Accordingly, under governing Supreme Court authority the Arbitrator himself recognized and on which he purported to rely, the rule of reason—not the *per se* standard—applied. *See Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 882 (2007) ("[V]ertical price restraints are to be judged by the rule of reason.") (cited at Dkt. 147-1, Ex. A at 14 (Award)). Yet the Arbitrator applied the *per se* standard, ignoring this authority.

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS
CROSS-MOTION TO VACATE ARBITRATION
AWARDS - 10

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

The Dasteel Defendants do not even defend the Arbitrator's reasoning that Section 6.4 of the 2011 Microsoft SDA, though a vertical agreement, constituted horizontal price fixing because it had "horizontal effects." (Dkt. 147-1, Ex. A at 8 (Award); Opp. 24.) Nor could they. The Supreme Court has held that horizontal effects do not render a restraint horizontal and thus do not trigger review under the *per se* standard. (Mot. 17.) Valve cited this authority to the Arbitrator and he ignored it.

The Dasteel Defendants contend that Valve relied on *United States v. Brewbaker*, 87 F.4th 563 (4th Cir. 2023), for a legal principle that "has not been adopted by other circuits." (Opp. 24.) That is wrong. Valve cited *Brewbaker* for the settled proposition that the Supreme Court has "rejected applying the *per se* rule to vertical restraints." (Mot. 16.) The Arbitrator ignored that law and applied the *per se* rule to what he found to be a vertical agreement.

The Dasteel Defendants cite *United States v. Apple, Inc.*, 791 F.3d 290 (2d Cir. 2015), to argue that there is a split of authority regarding whether a "hybrid" agreement can be subject to the *per se* standard. But that case did not involve a so-called "hybrid" agreement at all. And the Court applied the *per se* rule because it found there was a ***horizontal*** agreement between competing publishers of electronic books. *Id.* at 323. Here the Arbitrator found that the 2011 Microsoft SDA was vertical.

Even if there were some open question about how to analyze "hybrid" restraints, the Supreme Court is clear that an open question is itself a reason the *per se* rule cannot apply. As the Court stated, "a *per se* rule is appropriate ***only*** after courts have had considerable experience with the type of restraint at issue and ***only*** if they can predict with confidence that the restraint would be invalidated ***in all or almost all instances*** under the rule of reason." *Leegin*, 551 U.S. at 878. By applying the *per se* rule to an agreement he expressly found to be "vertical," Arbitrator Dasteel manifestly disregarded that settled rule as well.

Moreover, the Dasteel Defendants fail to refute Valve's independent ground for vacatur: the Arbitrator did not find that Microsoft and Valve fixed prices of ***competing products***, as is

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS
CROSS-MOTION TO VACATE ARBITRATION
AWARDS - 11

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

required to establish price fixing. To the contrary, the Dasteel Defendants tacitly concede that the Arbitrator found that the 2011 Microsoft SDA only affected Microsoft's pricing of its own games. (Opp. 24.) The Dasteel Defendants argue that Valve and Microsoft compete, but that misses the point because a price-fixing agreement must affect prices of competing products. Nothing in the testimony the Dasteel Defendants cite, or in the Awards, reflects any such price impact, nor could it: the 2011 Microsoft SDA affects only Microsoft games, not competing products (e.g., Microsoft games *and* Valve games).

### C.    The Attorneys' Fee Awards Were Arbitrary and Irrational

The Dasteel Defendants contend the Awards were "reasoned" (Opp. 27.) They were not. The Arbitrator awarded more than $3.1 million in fees, costs, and interest on total combined damages of $449.25 (Mot. 18)—nearly 7,000 times the total recovery, with attorneys' fees alone running between 4,085 and 14,723 times the trebled damages (*id.*). These figures are an impermissible "'windfall'" for lawyers (*id.*), and well outside what is rational under a statute that permits only a "reasonable attorney's fee," 15 U.S.C. § 15(a).

This is especially true given that the Dasteel Defendants won on only a distinct, segregable issue and lost the overwhelming majority of their claims—a point their Opposition does not contest. Rather than adjust fees downward to reflect that lopsided outcome, the Arbitrator increased them by 10%. (Mot. 19-20.) The Dasteel Defendants claim this increase was reasonable because Valve's counsel had, in an unrelated case for a different client, requested a 1.5 multiplier. (Opp. 26-27.) But in that matter, counsel sought a multiplier because of the high number in dispute—nearly $200 million in damages, pre-trebling. Plaintiff Zunum Aero. Inc's Motion for Post-Trial Relief, *Zunum Aero, Inc. v. Boeing Co.,* 2024 WL 5517128 (W.D. Wash. June 14, 2024). Here, the Dasteel Defendants' collective damages are a mere $449.25. (Marks-Dias Decl. ¶ 41.)

The Dasteel Defendants do not dispute that they sought and obtained recovery for work spent on other claimants' cases, or that their counsel *lost* many of those cases. (Mot. 20-21.) None of this work is recoverable under the Sherman Act or the Superseded SSA under which the

---

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS
CROSS-MOTION TO VACATE ARBITRATION
AWARDS - 12

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Arbitrations proceeded. As such, the fee awards manifestly disregard the law, rendering the entirety of the Awards arbitrary and irrational. (*Id*.)

The hourly rates the Arbitrator applied were likewise excessive. The Dasteel Defendants' counsel claims that its fledgling law firm—under ten attorneys—is entitled to rates comparable to those of "large national firms" because Will Bucher "started his career" as a junior associate at Debevoise. (Opp. 28.) But one attorney's employment history does not transform a small local practice into an elite international firm, nor does it justify rates far exceeding those charged by comparable practitioners in Albany, where Bucher Law was then based. The Dasteel Defendants cite no authority for that proposition.

## III.   CONCLUSION

Valve requests that the Awards be vacated.

DATED: July 20, 2026

I certify that this memorandum contains 4,186 words pursuant to the parties' May 12, 2026 Stipulation. (Dkt. 156.)

CORR CRONIN LLP

*s/ Blake Marks-Dias*
Blake Marks-Dias, WSBA No. 28169
1015 Second Avenue, Floor 10
Seattle, Washington 98104
(206) 625-8600 Phone
(206) 625-0900 Fax
bmarksdias@corrcronin.com

Michael W. McTigue Jr., *Pro Hac Vice*
Meredith C. Slawe, *Pro Hac Vice*
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Attorneys for Plaintiff Valve Corporation*

PLAINTIFF VALVE CORPORATION'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS
CROSS-MOTION TO VACATE ARBITRATION
AWARDS - 13

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900