# EXHIBIT 27

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST
NEW YORK, NY 10001
———
TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

DIRECT DIAL
212-735-3529
DIRECT FAX
917-777-3529
EMAIL ADDRESS
MICHAEL.MCTIGUE@SKADDEN.COM

FIRM/AFFILIATE OFFICES
————
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
————
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

September 27, 2024

**VIA ELECTRONIC MAIL**

Heather Santo
Vice President
American Arbitration Association
SantoH@adr.org

Victoria Chandler
Director of ADR Services
American Arbitration Association
VictoriaChandler@adr.org

Krista Peach
Assistant Vice President
American Arbitration Association
peachk@adr.org

Jill Roettger
Manager of ADR Services
American Arbitration Association
jillroettger@adr.org

> RE:    *Individual Claimants v. Valve Corporation*, Case No. 01-23-0004-3600

Dear Ms. Santo, Ms. Chandler, Ms. Peach, and Ms. Roettger:

We write on behalf of Respondent Valve Corporation ("Valve") to request that the AAA administratively close the above-referenced arbitration proceedings. The AAA no longer has jurisdiction over these cases because an AAA arbitrator ruled the arbitration agreement in Valve's Steam Subscriber Agreement ("SSA") under which these cases were brought is unenforceable, and Valve then removed the arbitration agreement from the SSA. The updated SSA provides:

> All disputes and claims between you and Valve (including any dispute or claim that arose before the existence of this or any prior agreement) shall be commenced and maintained exclusively in any state or federal court located in King County, Washington, having subject matter jurisdiction. You and Valve hereby consent to the exclusive jurisdiction of such courts and waive any objections as to personal jurisdiction or venue in such courts.

(*See* Ex. A § 10.)

In addition, counsel for the claimants in these matters, Bucher Law PLLC ("Claimants' Counsel"), filed a putative class action complaint on August 9, 2024, citing the previous AAA rulings on unenforceability and asserting that the arbitration agreement in the prior version of the SSA is unenforceable as to all members of a nationwide putative class, including all of the Claimants in these arbitrations, Complaint ¶ 14, *Elliott v. Valve Corporation*, No. 2:24-cv-01218 (W.D. Wash. filed Aug. 9, 2024).  As such, each Claimant's claims against Valve are still being pursued by their chosen counsel—just in a different forum (federal court), which Claimants' Counsel has stated is the superior forum for resolution.[1]

Accordingly, Valve respectfully requests that the AAA close these proceedings. Valve will reimburse Claimants' Counsel for all filing fees they have paid in these arbitrations, and will also pay all AAA fees incurred to date.

Respectfully,

/s/ *Michael W. McTigue Jr.*

Michael W. McTigue Jr.

cc:    Neil Currie, Vice President, American Arbitration Association
       All counsel of record

---

[1]   *See* Complaint ¶¶ 176–177, *Elliott v. Valve Corporation*, No. 2:24-cv-01218 (W.D. Wash. filed Aug. 9, 2024) (ECF No. 1) ("The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendant . . .  This class action is superior to any other method for the fair and efficient adjudication of this legal dispute . . . [I]t is highly impracticable for such Class members to individually attempt to redress the wrongful anticompetitive conduct alleged herein.").

2

# INTERNAL EXHIBIT
# INTENTIONALLY OMITTED

# EXHIBIT 28

### SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST

NEW YORK, NY 10001-8602

———

TEL: (212) 735-3000

FAX: (212) 735-2000

WWW.SKADDEN.COM

DIRECT DIAL
212-735-3529
DIRECT FAX
917-777-3529
EMAIL ADDRESS
MICHAEL.MCTIGUE@SKADDEN.COM

FIRM/AFFILIATE OFFICES
————
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WILMINGTON
————
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

<u>CONFIDENTIAL</u>

September 27, 2024

**<u>VIA ELECTRONIC MAIL</u>**

Arbitrator Janice L. Sperow
Sperow ADR Services, APC
4305 Beverly Drive
La Mesa, CA 91941
janicesperow@sperowadr.com

RE:    *Brady Paul & 23 Other Individual Claimants v.*
*Valve Corp.*: Notice of Communication to AAA [1]

Dear Arbitrator Sperow:

We write on behalf of Valve Corporation to advise you of the attached communication sent to the AAA affecting the arbitrations pending before you. For the reasons set forth therein, there should be no further proceedings in these matters.

Sincerely,

/s/ *Michael W. McTigue Jr.*

Michael W. McTigue Jr.

cc:    All counsel of record

---

[1]    The full list of 24 arbitrations is set forth in <u>Appendix A</u> hereto.

Arbitrator Sperow
September 27, 2024
Page 2

## Appendix A: List Of All Cases

| Case Number | Claimant Name |
|---|---|
| 01-23-0005-3478 | Brady Paul |
| 01-23-0005-3479 | Thomas Abbruzzese |
| 01-23-0005-3480 | Jeremy Kirkwood |
| 01-23-0005-3481 | Gavin Borchers |
| 01-23-0005-3483 | Jeff Ramirez Ochoa |
| 01-23-0005-3484 | Simon Savlas |
| 01-23-0005-3485 | Zachary Parsley |
| 01-23-0005-3487 | Kevin Montes |
| 01-23-0005-3488 | Robert Lewis |
| 01-23-0005-3489 | Carson Plaisance |
| 01-23-0005-3490 | Carter Baker |
| 01-23-0005-3491 | Anthony Galatolo |
| 01-23-0005-3492 | Caleb Orella |
| 01-23-0005-3493 | Collin Evans |
| 01-23-0005-3494 | Jose Aranda |
| 01-23-0005-3496 | Hugh Phillips |
| 01-23-0005-3498 | David Antolic |
| 01-23-0005-3499 | James Davis |
| 01-23-0005-3500 | Jared Myers |
| 01-23-0005-3501 | Alexander Brumley |
| 01-23-0005-3502 | Nicholas Tynes |
| 01-23-0005-3503 | Timothy Pablo Penaranda |
| 01-23-0005-3504 | Vincent Keegan |
| 01-23-0005-3505 | Alexander Schlosser |

# Exhibit 1

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST

NEW YORK, NY 10001

———

TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

FIRM/AFFILIATE OFFICES
————
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
————
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
212-735-3529
DIRECT FAX
917-777-3529
EMAIL ADDRESS
MICHAEL.MCTIGUE@SKADDEN.COM

September 27, 2024

**VIA ELECTRONIC MAIL**

Heather Santo
Vice President
American Arbitration Association
SantoH@adr.org

Victoria Chandler
Director of ADR Services
American Arbitration Association
VictoriaChandler@adr.org

Krista Peach
Assistant Vice President
American Arbitration Association
peachk@adr.org

Jill Roettger
Manager of ADR Services
American Arbitration Association
jillroettger@adr.org

RE:    *Individual Claimants v. Valve Corporation*, Case No. 01-23-0004-3600

Dear Ms. Santo, Ms. Chandler, Ms. Peach, and Ms. Roettger:

We write on behalf of Respondent Valve Corporation ("Valve") to request that the AAA administratively close the above-referenced arbitration proceedings. The AAA no longer has jurisdiction over these cases because an AAA arbitrator ruled the arbitration agreement in Valve's Steam Subscriber Agreement ("SSA") under which these cases were brought is unenforceable, and Valve then removed the arbitration agreement from the SSA. The updated SSA provides:

> All disputes and claims between you and Valve (including any dispute or claim that arose before the existence of this or any prior agreement) shall be commenced and maintained exclusively in any state or federal court located in King County, Washington, having subject matter jurisdiction. You and Valve hereby consent to the exclusive jurisdiction of such courts and waive any objections as to personal jurisdiction or venue in such courts.

(*See* Ex. A § 10.)

In addition, counsel for the claimants in these matters, Bucher Law PLLC ("Claimants' Counsel"), filed a putative class action complaint on August 9, 2024, citing the previous AAA rulings on unenforceability and asserting that the arbitration agreement in the prior version of the SSA is unenforceable as to all members of a nationwide putative class, including all of the Claimants in these arbitrations, Complaint ¶ 14, *Elliott v. Valve Corporation*, No. 2:24-cv-01218 (W.D. Wash. filed Aug. 9, 2024).  As such, each Claimant's claims against Valve are still being pursued by their chosen counsel—just in a different forum (federal court), which Claimants' Counsel has stated is the superior forum for resolution.[1]

Accordingly, Valve respectfully requests that the AAA close these proceedings. Valve will reimburse Claimants' Counsel for all filing fees they have paid in these arbitrations, and will also pay all AAA fees incurred to date.

Respectfully,

/s/ *Michael W. McTigue Jr.*

Michael W. McTigue Jr.

cc:    Neil Currie, Vice President, American Arbitration Association
       All counsel of record

---

[1]    *See* Complaint ¶¶ 176–177, *Elliott v. Valve Corporation*, No. 2:24-cv-01218 (W.D. Wash. filed Aug. 9, 2024) (ECF No. 1) ("The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendant . . .  This class action is superior to any other method for the fair and efficient adjudication of this legal dispute . . . [I]t is highly impracticable for such Class members to individually attempt to redress the wrongful anticompetitive conduct alleged herein.").

2

# INTERNAL EXHIBIT
# INTENTIONALLY OMITTED

# EXHIBIT 29

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST

NEW YORK, NY 10001-8602

———

TEL: (212) 735-3000

FAX: (212) 735-2000

WWW.SKADDEN.COM

FIRM/AFFILIATE OFFICES
————
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WILMINGTON
————
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
212-735-3529
DIRECT FAX
917-777-3529
EMAIL ADDRESS
MICHAEL.MCTIGUE@SKADDEN.COM

CONFIDENTIAL

October 19, 2024

**VIA ELECTRONIC MAIL**

Arbitrator Janice L. Sperow
Sperow ADR Services, APC
4305 Beverly Drive
La Mesa, CA 91941
janicesperow@sperowadr.com

> RE:    *Brady Paul & 23 Other Individual Claimants v.*
> *Valve Corp.*: Petition to Enjoin Arbitrations[1]

Dear Arbitrator Sperow:

We write on behalf of Respondent Valve Corporation ("Valve") to inform this Tribunal that Valve filed a petition in the United States District Court for the Western District of Washington against all claimants in these arbitrations ("Claimants") to enjoin them from continuing to pursue their arbitrations because there is no agreement to arbitrate between the parties. The Petition to Enjoin Arbitrations and accompanying Memorandum of Points and Authorities in Support of Petition to Enjoin Arbitrations are attached hereto as **Exhibits 1 and 2**.

The issues this Tribunal requested briefing on in its October 15, 2024 Order are now properly before the Western District of Washington. Respectfully, this Tribunal should immediately stay these proceedings and defer to the federal court, which has exclusive jurisdiction over the threshold issue of whether there is an agreement to arbitrate. While we do not believe a conference or formal motion is necessary, to the extent this Tribunal believes one is, we ask that this letter be considered as a request for a conference and/or to be deemed such a motion. Valve's

---

[1]    The full list of 24 arbitrations is set forth in Appendix A hereto.

Arbitrator Sperow
October 18, 2024
Page 2

submission of this letter is under a full reservation of rights as these arbitrations should be closed because there is no longer an agreement to arbitrate.

Sincerely,

/s/ *Michael W. McTigue Jr.*

Michael W. McTigue Jr.

cc:    All counsel of record

Arbitrator Sperow
October 18, 2024
Page 3

### Appendix A: List Of All Cases

| Case Number | Claimant Name |
|---|---|
| 01-23-0005-3478 | Brady Paul |
| 01-23-0005-3479 | Thomas Abbruzzese |
| 01-23-0005-3480 | Jeremy Kirkwood |
| 01-23-0005-3481 | Gavin Borchers |
| 01-23-0005-3483 | Jeff Ramirez Ochoa |
| 01-23-0005-3484 | Simon Savlas |
| 01-23-0005-3485 | Zachary Parsley |
| 01-23-0005-3487 | Kevin Montes |
| 01-23-0005-3488 | Robert Lewis |
| 01-23-0005-3489 | Carson Plaisance |
| 01-23-0005-3490 | Carter Baker |
| 01-23-0005-3491 | Anthony Galatolo |
| 01-23-0005-3492 | Caleb Orella |
| 01-23-0005-3493 | Collin Evans |
| 01-23-0005-3494 | Jose Aranda |
| 01-23-0005-3496 | Hugh Phillips |
| 01-23-0005-3498 | David Antolic |
| 01-23-0005-3499 | James Davis |
| 01-23-0005-3500 | Jared Myers |
| 01-23-0005-3501 | Alexander Brumley |
| 01-23-0005-3502 | Nicholas Tynes |
| 01-23-0005-3503 | Timothy Pablo Penaranda |
| 01-23-0005-3504 | Vincent Keegan |
| 01-23-0005-3505 | Alexander Schlosser |

# INTERNAL EXHIBIT INTENTIONALLY OMITTED

# EXHIBIT 30

**AMERICAN ARBITRATION ASSOCIATION**

| Individual Claimants, | |
|---|---|
| v. | *Brady Paul & 23 Other Individual Claimants v. Valve Corp.*: Case No. 01-23-0005-3478;[1] |
| Valve Corporation, | |
| Respondent. | |

24 claimants in these arbitrations ("Claimants") apparently dispute whether the current Steam Subscriber Agreement ("SSA") is valid because they continue to pursue these arbitrations under a prior version of the SSA.[2] The Supreme Court's unanimous decision in *Coinbase v. Suski* requires that "**a court, not an arbitrator**, must decide whether the parties' first agreement was superseded by their second." 144 S. Ct. 1186, 1195 (2024) (emphasis added). Nevertheless, Claimants refuse to seek relief in a court.

As a result, Valve filed a petition in the United States District Court for the Western District of Washington naming each Claimant as a respondent and seeking to enjoin them from continuing to pursue their arbitrations because there is no agreement to arbitrate (the "Injunction Action"). (*See* Attachments A and B.) Respectfully, this Tribunal should immediately stay these proceedings and defer to the federal court in the Injunction Action, which has exclusive jurisdiction over the threshold issue of whether there is an agreement to arbitrate.

Valve makes this submission in response to your case management order dated October 21, 2024, under a full reservation of rights, as these arbitrations should be closed because there is no longer an agreement to arbitrate.

### Introduction

Claimants cannot continue to pursue these arbitrations because there is no agreement to arbitrate between the parties.

---

[1] The full list of the 24 arbitrations before the Tribunal is set forth in Appendix A hereto.

[2] Valve uses the term "apparently" here because Claimants' Counsel has yet to provide the results from this Tribunal's Order that he inquire whether Claimants wish to proceed with these arbitrations.

Claimants are users of Valve's video game platform, Steam.

Claimants' counsel, Bucher Law PLLC ("Bucher Law"), launched several thousand arbitrations against Valve, invoking the arbitration agreement in the SSA between Valve and Steam users that was in effect at the time.[3] An arbitrator in four of those arbitrations ruled that the SSA's arbitration agreement was not enforceable. Bucher Law then filed a putative nationwide class action against Valve in federal court based on the premise that Valve's arbitration agreement was unenforceable as to the entire class of all Steam users in the United States, **including Claimants here**. *See* Complaint, *Elliott v. Valve Corporation*, No. 2:24-cv-01218 (W.D. Wash. filed Aug. 9, 2024) (Dkt. 1).

Valve removed the arbitration agreement and class action waiver from the SSA.[4] Now, the current SSA (the "Current SSA") provides that all claims and disputes between Valve and Steam users must proceed exclusively in court, including claims and disputes that arose before Valve implemented the Current SSA. Under well-settled law, a forum selection clause like this applies to accrued claims, including pending claims, where, as here, the clause expressly provides for retroactive effect.

Claimants have agreed—or will soon agree—to the Current SSA, which does not contain an agreement to arbitrate. Yet despite his clients' agreement to resolve all disputes exclusively in court, and despite basing a nationwide class action on the argument that the arbitration agreement in Valve's prior SSA was not enforceable (and making arguments to that effect in that case), Bucher Law is continuing to push forward with these arbitrations without any indication that each Claimant has consented to his vexatious tactics.

Under controlling Supreme Court precedent, whether the Superseded SSA (with its arbitration agreement) or the Current SSA (without an arbitration agreement) governs is a decision

---

[3] When an individual creates a Steam account, the individual and Valve enter a Steam Subscriber Agreement governing the customer relationship between them. (Lynch Decl. ¶ 3.)

[4] The prior version of the SSA that included an arbitration agreement and class action waiver is referred to herein as the "Superseded SSA."

solely for a court. *See Coinbase, Inc. v. Suski*, 144 S. Ct. 1186 (2024) (holding that the court, not the arbitrator, decides which of two contracts controls when assessing arbitrability). As there is no longer an arbitration agreement, Valve has asked the federal court in the Injunction Action to enjoin Claimants from pursuing their arbitrations. *See, e.g.*, *Oppenheimer & Co. v. Mitchell*, 2023 WL 2428404, at *6 (W.D. Wash. Mar. 9, 2023) (enjoining defendant from pursuing arbitration when contract did not permit arbitration). Claimants will remain free to pursue their claims in court, in Bucher Law's new *Elliott* class action, in another parallel and virtually identical class action pending in the same court, *In re Valve Antitrust Litigation*, No. 2:21-cv-00563- JNW ("*Wolfire*"), or otherwise.

## I.    STATEMENT OF FACTS

### A.    Valve and Steam Users Agree to the SSA, Which at One Time Included an Arbitration Provision

When individuals create a Steam account, they must agree to the SSA. (Lynch Decl. ¶ 3.)[5] Valve periodically updated the SSA since it was first implemented in 2003. In 2012, Valve added to the SSA a class action waiver and an arbitration agreement providing that, with limited exceptions, "you and Valve agree to resolve all disputes and claims between us in individual binding arbitration" with the AAA. (Lynch Decl. ¶ 4, Ex. A § 11(A).)

### B.    Plaintiffs in *Wolfire* Commence Consumer Antitrust Class Action Against Valve

In 2021, a video game developer and seven consumer plaintiffs brought a putative class action in the Western District of Washington against Valve asserting violations of the federal antitrust laws, *Wolfire Games LLC v. Valve Corp.*, No 2:21-cv-00563 (W.D. Wash. filed Apr. 27, 2021) ("*Wolfire* Action"). Valve moved to compel arbitration of the consumer claims under the Superseded SSA. In response, the consumer plaintiffs in that action challenged the enforceability of the arbitration agreement on unconscionability grounds. The court granted the motion but

---

[5] All references to "Ex." followed by a numbered exhibit refer to exhibits filed in connection with the Fuchs Declaration. All references to "Ex." followed by a lettered exhibit refer to exhibits filed in connection with the Declaration of Scott Lynch ("Lynch Decl."). These declarations are included in Attachment B to this brief.

declined to address the unconscionability challenge. The court explained that "the question of unconscionability should be determined in arbitration." *See Wolfire Games, LLC v. Valve Corp.*, 2021 WL 4952220, at *2 (W.D. Wash. Oct. 25, 2021). The *Wolfire* Action was stayed as to the seven individual consumer plaintiffs, none of which are Claimants. (*Id.*)

**C.      Bucher Law Commences Mass Arbitration Under the Superseded SSA**

In 2023, Bucher Law commenced its mass arbitration strategy against Valve, which was designed—in Mr. Bucher's own words—to "weaponize[]" an arbitration agreement between Valve and Claimants. (Ex. 1 at 3.) In a video used as part of his online marketing blitz to recruit claimants, Mr. Bucher stated that arbitration was preferable to a class action. Mr. Bucher tried to convince Steam users to join his arbitration plan by stating that it was "good news" that Valve had an arbitration agreement because "on average consumers in arbitration recover hundreds of times more than in a class action." (Crack, "hi its will from bucher law," *YouTube* (July 12, 2023), *available at* https://www.youtube.com/watch?v=3w_pbejggn8.)

On July 12, 2023, Bucher Law sent Valve a letter threatening to bring purported antitrust claims on behalf of 44,903 individuals. (Fuchs Decl. ¶ 2.) The allegations contained in Bucher Law's letter were apparently modeled on those made in the *Wolfire* Action. After threatening arbitrations asserting antitrust claims on behalf of thousands of claimants, Bucher Law made an outrageous settlement demand to Valve that far exceeded any conceivable recovery. (*Id.*) Valve did not acquiesce to Bucher Law's demand, and on October 2, 2023, Bucher Law submitted 997 demands for arbitration against Valve to the AAA and threatened Valve with filing 18,204 more such demands. (Fuchs Decl. ¶ 3.) In November and December 2023, Bucher Law submitted thousands of additional demands for arbitration against Valve to the AAA. (Fuchs Decl. ¶ 4.) Bucher Law is currently pursuing 5,028 arbitrations before the AAA. Claimants here are all named as respondents in the Injunction Action. (*Id.* ¶ 6; Ex. 4.)

4

**D.    Bucher Law Seeks and Obtains Arbitrator Rulings that
the Arbitration Agreement in the Superseded SSA Is Unenforceable**

On July 8, 2024, in four of the arbitrations Bucher Law initiated (not involving Claimants), the arbitrator concluded, at Bucher Law's urging, that the arbitration provision in the Superseded SSA was not enforceable. (Fuchs Decl. ¶¶ 7-13.) The arbitrator dismissed those arbitrations. (*Id.*)

**E.    Bucher Law Files a Consumer Antitrust Class
Action that Includes All Claimants in These Arbitrations**

On August 9, 2024, Bucher Law and another law firm, Hagens Berman Sobol Shapiro LLP ("Hagens"), filed a putative antitrust class action against Valve in federal court, naming the four dismissed claimants as plaintiffs (the "*Elliott* Action"). The *Elliott* Action purports to be brought on behalf of a putative class of all Valve consumers, including Claimants. (Compl., *Elliott v. Valve Corporation,* No. 2:24-cv-01218 (W.D. Wash. filed Aug. 9, 2024) (Dkt. 1) ("*Elliott* Dkt. 1") ¶ 167.) Substantively, it asserts claims identical to those Bucher Law is asserting purportedly on behalf of Claimants in these arbitrations. (*See generally id.*) Even though the Superseded SSA in effect at the time *Elliott* was filed included an arbitration agreement, Bucher Law and Hagens alleged in *Elliott* that they could pursue a class action on behalf of a nationwide class in court because they had "won binding decisions from arbitrators rendering Valve's arbitration provision unenforceable." (*Id.* ¶ 13.) Those "binding decisions" are the decisions rendered on July 8, 2024. In short, the *Elliott* case is entirely premised on the Superseded SSA's arbitration agreement being unenforceable as to all Steam users. (*Id.*)

**F.    Valve Removes the Arbitration Agreement from the SSA**

Accepting the arbitrator's finding that the arbitration provision was unenforceable, on September 26, 2024, Valve removed the arbitration provision from the SSA, which now provides:

> You and Valve agree that all disputes and claims between you and Valve (including any dispute or claim that arose before the existence of this or any prior agreement) shall be commenced and maintained exclusively in any state or federal court located in King County, Washington, having subject matter jurisdiction.

(Ex. B § 10.) The Current SSA includes a merger clause providing that it supersedes and replaces

5

the parties' prior agreement. (*Id.* § 11.) The notice Valve provided to Steam users about the amendments to the SSA is described in detail below.

At least 19 of the 24 Claimants before this Tribunal affirmatively accepted the Current SSA by (i) checking a box next to the text "I agree to the Updated Steam Subscriber Agreement" then clicking a button labeled "Accept Updated SSA" under a notification regarding the updates, (ii) checking a box stating their agreement to the new SSA when making a purchase on Steam or funding their Steam Wallets, or (iii) in both of those ways. (Lynch Decl. ¶¶ 22-25; Ex. C.) The remaining 5 Claimants will accept the Current SSA through continued use of Steam by November 1, 2024, if they do not delete or discontinue use of their account before then. (Lynch Decl. ¶ 26.)

G.    **Bucher Law Represents to a Federal
Court that the Current SSA Applies to All Claimants**

Bucher Law and Hagens ("Proposed Class Counsel") recently moved to be appointed interim co-lead class counsel in the *Elliott* Action. In doing so, they represented that Valve had "remove[d] the arbitration provision from its terms of use, along with the associated class action waiver." (Plaintiffs' Motion to Appoint Hagens Berman Sobol Shapiro LLP and Bucher Law PLLC as Interim Co-Lead Class Counsel, *Elliott v. Valve Corporation,* No. 2:24-cv-01218 (W.D. Wash. filed Oct. 2, 2024) (Dkt. 25) ("*Elliott* Dkt. 25") at 5.) In the next sentence, Proposed Class Counsel represented: "As a result, Valve consumers are authorized to proceed in federal court and seek collective relief through the class action vehicle." (*Id.*)

H.    **Bucher Law Continues to Prosecute Arbitrations**

Notwithstanding its admission that Claimants no longer have an agreement to arbitrate with Valve (and that the previous arbitration agreement was unenforceable), Bucher Law has refused to dismiss Claimants' arbitrations, contending that the Superseded SSA is still operative. (Fuchs Decl. ¶¶ 16-22.) It is unknown whether (but certainly it is unlikely that) each Claimant has authorized Bucher Law to take this position. Reiterating its administrative role, the AAA has

6

declined to administratively close the arbitrations absent a court order. (Ex. 5.) Accordingly, Valve

brought its petition to enjoin the arbitrations.

## II.     THE CURRENT SSA CONTROLS; VALVE AND CLAIMANTS ARE NOT REQUIRED TO ARBITRATE

### A.     Supreme Court Authority Requires that a Court Decide Which Agreement Is Controlling

As an initial matter, whether the Current or Superseded SSA governs is a question

exclusively for a court—not this Tribunal—to decide. In *Coinbase*, the parties disagreed as to

which of two agreements applied to individuals' claims. The first agreement contained a clause

delegating disputes as to arbitrability to an arbitrator. The second agreement contained a forum

selection clause providing that all such disputes must be decided by a court. Because the parties

disputed which agreement applied, they also disputed whether arbitrability was for an arbitrator or

a court to decide. *Coinbase,* 602 U.S. at 145.

The unanimous Court held that "a court, not an arbitrator, must decide whether the parties'

first agreement was superseded by their second." *Coinbase*, 602 U.S. at 152. The Court explained:

> Arbitration is a matter of contract and consent, and we have long
> held that disputes are subject to arbitration if, and only if, the parties
> actually agreed to arbitrate those disputes. Here, then, before either
> the delegation provision or the forum selection clause can be
> enforced, a court needs to decide what the parties have agreed to—
> *i.e.*, which contract controls.

*Id.* at 145. Here, as in *Coinbase*, only a court may decide which agreement controls as between the

Superseded SSA and the Current SSA.

Bucher Law has previously raised several arguments to the AAA and AAA arbitrators

seeking to avoid the necessary conclusion under *Coinbase* that a court must resolve these issues,

and they all miss the mark. **First**, Bucher Law has attempted to distinguish *Coinbase* because

Claimants here dispute the existence of a second agreement. That does not matter. Under *Coinbase*,

contract formation issues are for a court to decide. *See Lopez v. Thyssenkrupp Supply Chain Servs.,*

*Na Inc.*, No. 23-CV-03368-VC, 2024 WL 3211492, at *1 (N.D. Cal. June 28, 2024) ("tk Supply

presented two arbitration agreements that **might** govern this dispute. A court must decide which one applies." (emphasis added)); *see also Williams v. Experian Info. Sols. Inc.*, No. CV-23-01076-PHX-DWL, 2024 WL 3876171, at *16 (D. Ariz. Aug. 20, 2024) (rejecting argument that "once parties form an arbitration agreement that contains a delegation clause, any dispute over whether that agreement was later modified or superseded is a gateway question that has been delegated to the arbitrator"). After all, as *Coinbase* and the long line of cases before it make clear, "[a]rbitration is a matter of contract and consent," 144 S. Ct. at 1191, and if the parties no longer consent to arbitration, then an arbitrator may not decide disputes between them.

**Second**, Bucher Law has argued that *Coinbase* does not apply because Claimants initiated these proceedings before the Current SSA took effect, and the Federal Arbitration Act ("FAA") limits courts to decisions that "bookend" the arbitrations. But *Coinbase* drew no such distinction. And the notion that a court's authority is generally limited to decisions that "bookend" an arbitration is inapposite here. That axiom is typically employed where a party seeks **interlocutory** review of an arbitrator's decision. By contrast, if a court "conclude[s] that a dispute is not arbitrable, it ha[s] the power [to] enjoin [ongoing] arbitration if appropriate." *AT & T Mobility LLC v. Smith*, No. 11-CV-5157, 2011 WL 5924460, at *3 (E.D. Pa. Oct. 7, 2011) (enjoining pending arbitrations that exceeded scope of arbitration agreement); *see also AT&T Mobility LLC v. Bernardi*, 2011 WL 5079549, at *12 (N.D. Cal. Oct. 26, 2011) (same). Valve does not seek from a court an interlocutory review of any decision by this Tribunal. To the contrary, the "bookend" doctrine supports Valve's argument because Valve asks a court to make the independent, **threshold determination**—which under *Coinbase* is reserved for a court—that the parties no longer have a binding arbitration agreement and, thus, that these arbitrations must be enjoined.

**Third**, Bucher Law has tried to invoke the "time-of-filing" rule for diversity jurisdiction to claim that jurisdiction for this arbitration was established at the time that Valve purportedly compelled these cases to arbitration in the *Wolfire* Action. There is no legal basis for this argument because the "time-of-filing" rule "measures all challenges to subject-matter jurisdiction premised

8

upon **diversity of citizenship** against the state of facts that existed at the time of filing." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004) (emphasis added). Federal courts routinely dismiss cases throughout the litigation process if the basis for federal court jurisdiction is no longer applicable. *See, e.g.*, *Washington Env't Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013) ("Although Defendants did not advance these objections below, we may consider them here, since a jurisdictional defect is a non-waivable challenge that may be raised at any time during the proceedings, including on appeal."). This dispute has nothing to do with diversity jurisdiction. Factually, this argument also fails because the court in the *Wolfire* Action did not compel **these Claimants** to arbitration.  No. C21-0563, 2021 WL 4952220 (W.D. Wash. Oct. 25, 2021). The court compelled arbitration only as to the seven named consumer plaintiffs in that action, *id.* at *1, none of whom are Claimants.

**Finally**, Bucher Law has argued that the Superseded SSA empowers arbitrators to decide any objections with respect to the existence of the arbitration agreement. But the Supreme Court says that is incorrect.  The petition in *Coinbase* raised this same argument (Attachment C at 40 (Coinbase Br.) (quoting AAA Consumer R-14)), and the Supreme Court rejected it.

B.      <u>**The Superseded SSA is Unenforceable on Its Own Merits**</u>

Even if this Tribunal were to consider whether the Current SSA or the Superseded SSA governs, as an initial matter, the Superseded SSA is unenforceable. On July 8, 2024, at Bucher Law's urging, an arbitrator dismissed four of the arbitrations that Bucher Law initiated after determining that the Superseded SSA was unenforceable. (Fuchs Decl. ¶¶ 7-13.) Indeed, Bucher Law has boasted that it "won binding decisions from arbitrators rendering Valve's arbitration provision unenforceable," and the putative class action it brought is premised on that fact. (*Elliott* Dkt. 1 ¶ 13.) Valve has accepted the arbitrator's finding that the arbitration provision in the Superseded SSA was unenforceable by removing the arbitration provision from the Current SSA. The Superseded SSA thus cannot provide a basis for Claimants to continue to pursue these arbitrations.

C.    **The Current SSA Is Valid and Fully Enforceable**

The Current SSA is valid and enforceable. Parties to existing contracts may freely agree to new agreements that become binding "if the offeree's actions clearly evince acceptance of the offeror's modifications." *United Fin. Cas. Co. v. Coleman*, 173 Wash. App. 463, 473 (2012). For online transactions, "mutual assent turns on whether the consumer had reasonable notice of the terms of service agreement." *Grant v. T-Mobile USA, Inc*., 2024 WL 3510937, at *3 (W.D. Wash. July 23, 2024). If "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id.* at *4. "[E]mails followed by continued use is [also] sufficient to establish assent." *Sadlock v. Walt Disney Co*., 2023 WL 4869245, at *12 (N.D. Cal. July 31, 2023).

1.    **Valve Properly Provided Widespread
and Repeated Notice of the Current SSA**

Valve provided conspicuous notice of the terms of the Current SSA to all users. For notice to be "reasonably conspicuous," it must be "displayed in a font size and format such that [a] court can fairly assume that a reasonably prudent Internet user would have seen it." *Grant*, 2024 WL 3510937, at *4. "The presence of a hyperlink must be readily apparent, customarily by using of a contrasting font color (typically blue)." *Open Book Theatre Co. v. Brown Paper Tickets, LLC*, 2024 WL 4230479, at *3 (S.D. Cal. Sept. 18, 2024). Updates to dispute resolution agreements are sufficiently conspicuous when they are called out and not buried or difficult to discern. *Sadlock*, 2023 WL 4869245, at *12. Valve's notice more than met these requirements in several ways:

- **Electronic Mail**. Beginning on September 26, 2024, Valve provided email notice to all U.S. customers (including all Claimants) of the change in Valve's SSA, sending the notice to the email address of record for their Steam accounts. The email, only two paragraphs long and hyperlinking in blue to the updated Steam Subscriber Agreement, specifically called out changes to the dispute resolution provision, providing: "[t]he updated dispute

10

resolution provisions are in Section 10 and require all claims and disputes to proceed in court and not in arbitration." (Lynch Decl. ¶¶ 9-10.)

- **In-Client Pop-Up.** Beginning on September 26, 2024, Valve provided notice of the update through a pop-up that appeared when users logged into the Steam client. The pop-up contained the same text and blue hyperlinks as the email. It enabled users to agree to the Current SSA by checking a box stating: "I agree to the Updated Steam Subscriber Agreement" and then clicking, "Accept Updated SSA." (*Id.* ¶¶ 11-13.) Importantly, users who chose not to accept the Current SSA could simply "X" out of the pop-up notice without agreeing to the Current SSA. (*Id.* ¶ 14.)

- **Blog Post.** Beginning on September 26, 2024, Valve published a blog post on Steam providing notice of the amended SSA. The blog post, again hyperlinking in blue to the Current SSA, stated, "We've eliminated the requirement that disputes be resolved by individual arbitration." Instead, if informal resolution did not work, "the updated SSA now provides that any disputes are to go forward in courts instead of arbitration." (*Id.* ¶¶ 15-16.)

- **Steam Website.** The Current SSA has been online from September 26, 2024, to the present, in 10 languages. (*Id.* ¶ 7); *see* https://store.steampowered.com/subscriber _agreement/.

When users clicked on the hyperlinks in any of the various notices or otherwise visited the SSA page on the Steam website, they saw a banner at the top of the Current SSA, set apart in a box outlined in red, prominently announcing: "Valve has updated the Steam Subscriber Agreement. The updates affect your legal rights, including how disputes and claims between you and Valve are resolved. Among other things, the new dispute resolution provisions in Section 10 require that all disputes and claims proceed in court and not in arbitration. Please review carefully." (*Id.* ¶ 6.)

The notices were consistent with the modification requirements set out in the Superseded SSA. The Superseded SSA provided: "This Agreement may at any time be mutually amended by your explicit consent to changes proposed by Valve." (Ex. A § 8(A).) The email notice and pop-up explained, in turn, "This updated Steam Subscriber Agreement will become effective

11

immediately when you agree to it, including when you make most purchases, fund your Steam wallet, or otherwise accept it." (Lynch Decl. ¶¶ 9, 11.)

The Superseded SSA also provided for amendment through notice and continued use:

> Valve may amend this Agreement … unilaterally at any time in its sole discretion. In this case, you will be notified by e-mail of any amendment to this Agreement made by Valve at least [thirty] (30) days before the effective date of the amendment. You can view the Agreement at any time at http://www.steampowered.com/. Your failure to cancel your Account prior to the effective date of the amendment will constitute your acceptance of the amended terms.

(Ex. A § 8(B).) It went on to explain that if the user did not agree to the amendment, they could cancel their Steam account or cease using the service. (*Id.*) Consistent with these terms, the email notice and pop-up also provided: "[T]he updated [SSA] will become effective on November 1, 2024, unless you delete or discontinue use of your Steam account before then." (Lynch Decl. ¶¶ 9,11.) Individually and collectively, the notices Valve provided Claimants were more than reasonably conspicuous and made it clear that the arbitration provision and class action waiver were being removed.

### 2. Claimants Agreed to The Current SSA

Clicking a button to indicate acceptance of terms constitutes unambiguous assent where users are provided adequate notice that their click signifies assent. *See Open Book*, 2024 WL 4230479, at *4; *see also Briggs v. Serv. Corp. Int'l*, 2023 WL 2075958, at *4 (W.D. Wash. Feb. 17, 2023) ("Acceptance may be manifested expressly, such as by checking a box or clicking on a button"). Assent is unambiguous under such circumstances because it involves a "forced confrontation with the terms and forced decision to accept or reject them." *Open Book*, 2024 WL 4230479, at *4.

Valve's pop-up notice included two separate "forced confrontation[s]" and "forced decision[s]"—one checkbox and one button that plainly indicated the user was agreeing to the Current SSA. If the user did not agree, they could simply "X" out of the pop-up. (Lynch Decl. ¶ 14.) Moreover, when a user made a purchase or funded his or her "Steam wallet"—an account a

12

user can prefund to purchase any game or make purchases within a game—the user was presented with a box to check affirming his or her acceptance of the Current SSA. (*Id.* ¶¶ 19-20.) At least 19 of the 24 Claimants have unambiguously accepted the Current SSA by checking the box in the pop-up, while making purchases, or while funding their Steam Wallet. (*Id.* ¶¶ 22-24; Ex. C.)

Even those Claimants who do not check "accept" on the pop-up or while purchasing or funding their Steam Wallet will manifest assent to the Current SSA on November 1, 2024, unless they discontinue use of Steam. Users manifest assent if they continue to use a service after receiving notice of updated terms. *See, e.g.*, *Sadlock*, 2023 WL 4869245, at *12 ("emails followed by continued use is sufficient to establish assent"); *Dlugolecki v. PeopleConnect, Inc.*, 2020 WL 13587803, at *2 (C.D. Cal. Nov. 9, 2020) (finding users manifested assent by continuing to use an online service where they received email notice that "continued use" would "constitute your acceptance of all changes"); *West v. Uber Techs.*, 2018 WL 5848903, at *5 (C.D. Cal. Sept. 5, 2018) ("Courts have found that when consumers receive emails such as this one, continued use of the service or product constitutes assent to the updated terms"). Here, the email and pop-up notice informed users, consistent with the terms of the Superseded SSA, that the Current SSA would become effective November 1 unless they deleted or discontinued use of their account. (Lynch Decl. ¶¶ 9, 11.) To the extent Claimants have not and will not delete their account, they will manifest assent by November 1 unless they discontinue use of Steam. (Valve will not delete any user's account unless they request it.) Because Valve provided reasonably conspicuous notice and Claimants manifested or will manifest assent, the Current SSA is the parties' enforceable agreement (or soon will be).

### 3. Under the Current SSA, Disputes Between Claimants and Valve Must be Resolved in Court

Under the Current SSA, the parties no longer have any agreement to arbitrate. A dispute resolution provision in an updated agreement is enforceable with respect to accrued and already asserted claims so long as the updated agreement provides for retroactive effect. In *Dasher v. RBC*

13

*Bank (USA)*, 745 F.3d 1111, 1127 (11th Cir. 2014), for example, the court concluded that a new agreement without an arbitration clause superseded and applied retroactively to foreclose arbitration under a prior agreement containing an arbitration clause. Although the claim was originally asserted when the agreement had an arbitration clause, the court reasoned that the parties "expressed their clear and definite intent to execute [the new agreement] to supersede [the prior agreement]," and that intent controlled. *Id.* at 1117. Notably, the court rejected the argument that "there is…no statutory authorization permitting parties to *remove* arbitration from an existing controversy." *Id.* 1125. The court reasoned that, because "arbitration is simply a matter of contract," courts "should simply enforce the parties' agreements, whether that means adding a retroactively applicable arbitration provision *or* removing it." *Id.*

Similarly, in *Ingram Micro Inc. v. Signeo Int'l, Ltd.*, 2014 WL 3721197 (C.D. Cal. July 22, 2014), the court enjoined an arbitration "because subsequent agreements both superseded the 2011 Program Agreement, the only contract containing an arbitration provision, and extinguished any claims arising from the 2011 Program Agreement." *Id.* at *3. Indeed, courts consistently apply amended dispute resolution provisions retroactively when the agreement plainly articulates that intent. *See, e.g.*, *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 2021 WL 2350814, at *4 (C.D. Cal. Apr. 20, 2021) (enforcing agreement revised two years after suit filed); *Laster v. T-Mobile USA, Inc.*, 2008 WL 5216255, at *6 (S.D. Cal. Aug. 11, 2008) (holding that agreement that "retrospectively modif[ied] the original service contract after the present litigation had already begun" nonetheless applied); *Enderlin v. XM Satellite Radio Holdings, Inc.*, 2008 WL 830262, at *7 (E.D. Ark. Mar. 25, 2008) (collecting cases applying amended agreements to ongoing litigation); *Goetsch v. Shell Oil Co.*, 197 F.R.D. 574, 577 (W.D.N.C. 2000) (compelling individual arbitration based on terms of provision that had been revised to add a class waiver after the commencement of litigation and holding that new agreement applies where "[t]he agreement clearly provides for retroactive effect").

The Current SSA applies to "all disputes and claims between [the user] and Valve

14

(including any dispute or claim that arose before the existence of this or any prior agreement)." (Ex. B § 10.) It also provides: "This Agreement…constitutes and contains the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior oral or written agreements." (*Id.* § 11.) It specifically states, "If you were a Subscriber before [September 24, 2024], [this Agreement] replaces and supersedes your existing agreement with Valve." (*Id.*) Therefore, even though Claimants had already initiated their arbitrations at the time they agreed to the Current SSA, they agreed that the Current SSA would replace and supersede the agreement to arbitrate and apply retroactively to their claims. Bucher Law admitted as much when it asserted purported class claims on behalf of *all* Valve consumers in the *Elliott* Action and claimed they now have the right to proceed in court under the Current SSA. (*See Elliott* Dkt. 25 at 5.)

The parties therefore no longer have any agreement to arbitrate. As "[a]rbitration is a matter of contract and consent, and…disputes are subject to arbitration if, and only if, the parties actually agreed to arbitrate those disputes," Valve has no obligation to arbitrate and the arbitrators have no authority to continue arbitration proceedings. *Coinbase*, 602 U.S. at 145.

The contrary arguments that Bucher Law has made to other arbitrators are unavailing. For example, Bucher Law has argued that Valve amended the SSA unilaterally. For the reasons set forth above, however, Valve did not amend the SSA unilaterally. Rather, Valve and Claimants bilaterally agreed to the terms of a new agreement, the Current SSA—or soon will agree—after Claimants would have had an opportunity to opt out by deleting or otherwise discontinuing use of their accounts. *See Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 881 (N.D. Cal. 2018) (amendment to terms is not "unilateral" where business provides notice and requires customers "to accept or decline"), *aff'd*, 816 F. App'x 68 (9th Cir. 2020). And parties to a contract are free to alter their terms **at any time**. *E.g.*, *Sobot v. Clean the World Found. Inc.*, No. 22-CV-1846 (TSC), 2024 WL 4119389, at *3 (D.D.C. Sept. 9, 2024) (noting "parties are free to modify a contract at any time by mutual consent" (cleaned up)).

Bucher Law has also argued that (1) Valve is judicially estopped from taking the position that

15

the Superseded SSA is unenforceable, since it previously filed a motion to compel arbitration pursuant to the Superseded SSA in the *Wolfire* Action and (2) Valve's subsequent participation in these arbitrations ratified the Superseded SSA, regardless of its enforceability. That argument misses the point that Valve's motion to compel arbitration and participation in these proceedings was based on a different agreement—the Superseded SSA. In addition, as noted above, Valve did not move to compel **these Claimants** to arbitration, but rather seven different individuals. Since the Current SSA went into effect, Valve has consistently expressed its view that these arbitrations cannot continue.

Bucher Law has argued that the Superseded SSA has a "survival of terms" clause, which mandates that the arbitration provision survives termination of the agreement by either party. Courts have rejected this argument. *See, e.g.*, *Warren v. Smart Choice Payments, Inc.*, 306 Or. App. 634, 640–42 (2020) (concluding that a survival clause did not preclude a subsequent agreement from replacing an arbitration agreement because of an integration clause).

Respectfully, there is no authority to continue these proceedings and this Tribunal should immediately close or stay them, deferring to the federal court in the Injunction Action, which has exclusive jurisdiction over the threshold issue of whether there is an agreement to arbitrate.

Respectfully,

*s/* Michael W. McTigue Jr.
Michael W. McTigue Jr.
Meredith Slawe
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
meredith.slawe@skadden.com
michael.mctigue@skadden.com

*Attorneys for Valve Corporation*

16

## Appendix A: List of All Cases

| Case Number | Claimant Name |
|---|---|
| 01-23-0005-3478 | Brady Paul |
| 01-23-0005-3479 | Thomas Abbruzzese |
| 01-23-0005-3480 | Jeremy Kirkwood |
| 01-23-0005-3481 | Gavin Borchers |
| 01-23-0005-3483 | Jeff Ramirez Ochoa |
| 01-23-0005-3484 | Simon Savlas |
| 01-23-0005-3485 | Zachary Parsley |
| 01-23-0005-3487 | Kevin Montes |
| 01-23-0005-3488 | Robert Lewis |
| 01-23-0005-3489 | Carson Plaisance |
| 01-23-0005-3490 | Carter Baker |
| 01-23-0005-3491 | Anthony Galatolo |
| 01-23-0005-3492 | Caleb Orella |
| 01-23-0005-3493 | Collin Evans |
| 01-23-0005-3494 | Jose Aranda |
| 01-23-0005-3496 | Hugh Phillips |
| 01-23-0005-3498 | David Antolic |
| 01-23-0005-3499 | James Davis |
| 01-23-0005-3500 | Jared Myers |
| 01-23-0005-3501 | Alexander Brumley |
| 01-23-0005-3502 | Nicholas Tynes |
| 01-23-0005-3503 | Timothy Pablo Penaranda |
| 01-23-0005-3504 | Vincent Keegan |
| 01-23-0005-3505 | Alexander Schlosser |

# INTERNAL EXHIBIT
# INTENTIONALLY OMITTED

# EXHIBIT 31

**AMERICAN ARBITRATION ASSOCIATION**

| | |
|---|---|
| Individual Claimants, | |
| v. | *Brady Paul & 24 Other Individual Claimants v. Valve Corp.*: Case No. 01-23-0005-3478[1] |
| Valve Corporation, | |
| Respondent. | |

### RESPONDENT VALVE CORPORATION'S REPLY IN FURTHER SUPPORT OF ITS REQUEST TO DISMISS OR STAY

**I.    Introduction:  Bucher Law's Position and Valve's Motion**

Valve Corporation ("Valve") submits this reply brief in support of its request to dismiss or stay these proceedings under a full reservation of rights.

These arbitrations should be closed because there is no longer an agreement to arbitrate between Claimants and Valve. As of November 1, 2024, all claimants have accepted the Current SSA, which requires proceeding with these claims in court. But Bucher Law, who ostensibly represents those Claimants, continues to contend that Claimants dispute whether the Current SSA is valid and continues to pursue these arbitrations on their behalf under the Superseded SSA. In light of indications that Claimants have not authorized Bucher Law to continue these arbitrations, this Tribunal ordered Bucher Law to conduct a survey of its clients.  According to Bucher Law's representations, **of the 22 that supposedly want to proceed in arbitration, 11 never even responded to Bucher Law's survey—yet Bucher Law is treating that non-response as authorization to proceed with arbitration.** That treatment is particularly unwarranted because all 11 of these Respondents affirmatively accepted the Current SSA, indicating that they have agreed to proceed in court. Moreover, Bucher Law admitted in correspondence with this Tribunal on October 29, 2024 that this survey was "rendered out of date just hours" after being circulated

---

[1] The full list of the 25 arbitrations before the Tribunal is set forth in Appendix A hereto.

by Bucher Law because of Valve's filing of the Injunction Action. Thus, this survey does not reflect Claimants' positions after they were informed of the facts set out in the Injunction Petition, much of which Valve suspects has not been communicated previously.

There is also now evidence from many claimants represented by Bucher Law that they have not given their authorizations to proceed with their arbitrations. After claimants were served with Valve's Petition seeking to stay these arbitrations, many wrote to Valve variously stating that (i) they did not understand the proceedings — many believed they were plaintiffs or participants in a class action, rather than claimants in an arbitration; (ii) they agreed to the Current SSA that contains no agreement to arbitrate; and/or (iii) they want to withdraw their arbitrations. The court should address those issues before Bucher Law may be permitted to proceed to merits hearings on behalf of uninformed and unwilling Claimants.

In any event, Bucher Law's Response fails to rebut the proposition that, under *Coinbase v. Suski*, 144 S. Ct. 1186, 1195 (2024), a court must decide whether the Current SSA is valid (to the extent Claimants even dispute that proposition). A federal court is already poised to decide that issue. *See Valve Corporation v. Abbruzzese et al.*, Case No. 2:24-cv-01717-JNW (W.D. Wash.).

II.    **Additional Statements of Fact**

A.    **Each Claimant has Accepted the Current SSA**

All 24 Claimants proceeding in these arbitrations have accepted the Current SSA: 19 Claimants affirmatively accepted the Current SSA by clicking on the pop-up message containing the agreement or by making a purchase with their Steam account. The remaining five Claimants manifested their assent to the Current SSA by continuing to maintain their Steam accounts after November 1, 2024.[2]

---

[2] Those remaining Claimants who did not check "accept" on the pop-up or while purchasing or funding their Steam Wallet manifested assent to the Current SSA as of November 1, 2024, as they have not deleted or discontinued use of Steam. Users manifest assent if they continue to use a service after receiving notice of updated terms. *See, e.g.*, *Sadlock*, 2023 WL 4869245, at *12 ("[E]mails followed by continued use is sufficient to establish assent"); *Dlugolecki v. PeopleConnect, Inc*., 2020 WL 13587803, at *2 (C.D. Cal. Nov. 9, 2020) (finding users manifested assent by continuing to use an online service where they received email notice that "continued use" would "constitute

**B.**    **Bucher Law Continues to Prosecute the Arbitrations, Despite Lack of Authorization And Directions to the Contrary from Claimants**

Notwithstanding its admission that Claimants no longer have an agreement to arbitrate with Valve—and that the previous arbitration agreement was unenforceable—Bucher Law has refused to dismiss Claimants' arbitrations, contending that the Superseded SSA is still operative. But several Claimants have indicated that they do not agree with that position taken on their behalf.

Since Valve began serving individual Respondents[3] with process in the Injunction Action, Valve and its counsel have received many unsolicited communications from Respondents on a near-daily basis, expressing anxiety and confusion about the pending arbitrations, uncertainty about who their attorney is, and a desire to end their involvement in litigation with Valve. Examples of these communications include the following messages:

- "Is there any way I could simply remove myself from the legal proceedings entirely? I no longer wish to pursue my case against Valve, and regret my original decision to join what I thought was a class action being served on some legal basis, rather than the fraudulent behavior I now believe it is. Please let me know what I can do to respond to these summons and/or withdraw from these legal proceedings entirely." Declaration of Blake Marks-Dias in Support of Petitioner's *Ex Parte* Motion Seeking Leave to Provide Communication to Respondents, dated November 4, 2024 ("Marks-Dias Decl.") at 12-13) (Attachment B).

- "I am sending this to all 3 sides of this party so there is no miscommunication or any I did not receive that email or response. I … herby remove myself from any all court proceedings and retract my class action suit and involvement in this case. I am writing this email of my own free will and because i have no actual way to contact the attorney that hold my case on Bucher Law Firm side which is why i am sending this email to all parties involved. I [hereby] at this point agree to user agreement put in place by Steam (Valve Corp.). I do not wish to be contacted about any of this any further as i have more urgent matters in life that need tending to." Marks-Dias Decl. at 16-17 (Attachment B) (correspondence copied to

---

your acceptance of all changes"); *West v. Uber Techs.*, 2018 WL 5848903, at *5 (C.D. Cal. Sept. 5, 2018) ("Courts have found that when consumers receive emails such as this one, continued use of the service or product constitutes assent to the updated terms").

[3] "Respondents" refers to the 624 claimants with arbitrations pending before merits arbitrators who are respondents to Valve's Petition filed in the Western District of Washington.

3

Bucher Law).)

- "I read the summons as thoroughly as I was able, and the events detailed within came as a great shock to me -- at this point in time, I no longer have any interest in further association with Bucher Law, or in pursuing a claim against Valve Corporation. However, I have been informed by Bucher that terminating him as my attorney immediately would leave the summons unresolved, and retaining him for the limited purpose of negotiating an end to my involvement in the arbitration and this case (or hiring another attorney to do so on my behalf) would incur fees that I am not currently equipped to deal with. Considering this and the fact that this is the first court case I have ever been involved in, I would like to humbly request additional time to respond to the summons while I seek counsel to determine what my options are in this scenario." Marks-Dias Decl. at 20-21 (Attachment B).

- "My 17 year old son … was served a summons in the above mentioned civil action. … He is a minor and our wish is to not be involved in any further legal proceedings. I am uncertain on how we need to proceed to be excluded or removed from this. Please advise." Marks-Dias Decl. at 26-27 (Attachment B).

- "I am one of the 624 people named in the petition to enjoin arbitrations you guys are a representing Valve for. … I no longer wish to be involved in it after reading the petition … I have reached out to Will Bucher and he says if I drop my arbitration claim now then I'll need to hire another lawyer at my own expense to negotiate with you to remove me from the federal action, or I can pay him a bunch of money to do it. Rather than doing either of those things (I don't really have a lot of money and can't afford either of those) I thought I'd just reach out and ask directly. I intend to tell him to drop the arbitration case. Can I please be removed from the federal action when I do? I will send you whatever supporting documentation you need." Marks-Dias Decl. at 3-31 (Attachment B).

- "I got the Counter Lawsuit Documents from whatever is happening with the class action lawsuit that I forgot I even joined. I don't know whats really going on nor do I want to continue with what im doing. I saw ad's on this when I was 14/15 and signed up because I didn't really know what was going on and thought 'free money'. Is there anything that I can do?" Marks-Dias Decl. at 34-35 (Attachment B).

- I am in receipt of the SUMMONS IN A CIVIL ACTION 2:24-cv-01717-LK dated October 24, 2024. . . . I would concur with the statement listed in the Petition on Page 9, Section 4, that I, "...appear to have been misled about what they signed up for, believing it was a class action or class action settlement that didn't exist".

4

> I would further concur with the statement listed in the Petition on Page 9, Section 6, that I, "apparently (and perhaps unwittingly) retained Bucher Law to bring claims against Valve".
>
> I have already accepted the Current SSA during the recent purchase of a new game on the Steam platform.
>
> I will gladly release and cease any claim brought by me or on my behalf in this matter (case) if I can be removed as a Defendant in this case and released from any and all judgements for relief and liability that may result from a settlement or verdict in this case. Marks-Dias Decl. at 36-37 (Attachment B).

Bucher Law has apparently ignored these and other claimants' wishes and attempted to strong-arm others into continuing the arbitrations. Some clients who have attempted to withdraw from these arbitrations report that Bucher Law told them that they must pay substantial fees to Bucher Law or some other firm to terminate their arbitration and end their involvement in this action, notwithstanding Valve's assurances to Bucher Law that Valve will reimburse AAA fees, and notwithstanding Bucher Law's ethical obligations to follow client directives.[4] Individuals who appear to be Respondents have also posted on websites such as reddit.com (in the Valve, Steam, and Legal Advice subreddits) expressing similar confusion and concern. *See* Marks-Dias Decl. at 50-75 (Attachment B). One Respondent contacted the arbitrator in their pending arbitration seeking guidance. (Marks-Dias Decl. at 76-80) (Attachment B). Notwithstanding these communications unequivocally stating that Respondents did not wish to pursue their arbitrations, Bucher Law continues to pursue these arbitrations purportedly on their behalf.

To address Claimants' uncertainty, on November 4, 2024, Valve filed an emergency *Ex Parte* Motion Seeking Leave To Provide Communication to Respondents in the Western District of Washington. (Attachment A).  Valve's goal in filing the emergency motion is to prevent any further harm to claimants who are represented by Bucher Law but apparently have no way of

---

[4] Valve has not responded to any of these Respondents. Valve has requested permission from the Court to respond by stating, among other things: "If you terminate your arbitration against Valve, then (1) a court ruling on Valve's petition will no longer be necessary with respect to you, (2) Valve will reimburse you or your counsel for any American Arbitration Association fees you paid in that arbitration, and (3) Valve will voluntarily dismiss you from its court proceeding." (Attachment A, Exhibit 1.)

5

engaging in communications with their counsel, or who have been told by counsel to find a new lawyer.

### C.      Numerous Claimants Did Not Respond To Bucher Law's Survey

During the October 14, 2024 Status Conference, Valve voiced its concern that Claimants have not authorized Bucher Law to proceed with these arbitrations. This Tribunal ordered Bucher Law to communicate directly with its clients and report back to this Tribunal on whether the Claimants actually wanted to proceed in arbitration.

Although Bucher Law resisted providing the results of its survey, on October 31, 2024, following this Tribunal's directive, Bucher Law informed Valve and this Tribunal that (i) 2 Claimants are "requesting a stay," (ii) 11 Claimants did not complete the survey but (Bucher Law claims) are nonetheless "proceeding in arbitration," and (iii) 11 Claimants completed the survey and are "proceeding with arbitration." (Attachment C).  Bucher Law admitted that this survey was "rendered out of date just hours later" by Valve's filing the petition after Bucher Law had already circulated the survey to Claimants filing the Injunction Action. (Attachment D.)

### D.      Numerous Arbitrators Have Stayed Proceedings

Contrary to Bucher Law's statement that "arbitrators have been swift in Rejecting Valve's arguments" (Response at 10-11), as of the date of this submission, no fewer than eleven arbitrators have stayed proceedings before them in deference to the pending Injunction Action or pending further briefing and a hearing on the issue.  For example, one AAA arbitrator in a similar posture to this Tribunal explained:

> "Given the clear ruling in *Coinbase*, there is little question that these arbitration proceedings must be STAYED pending the District Court's ruling on Respondent's October 18, 2024 Petition to Enjoin Arbitration."

(Attachment E at 4.) This arbitrator explained:

> "[W]here there are two contracts between the parties, one of which contains a mandatory arbitration provision, and the other of which does not and provides, instead for court action . . . [,] it is the Courts, not the Arbitrators, that have exclusive jurisdiction to determine

6

which of the two contracts prevails."

Also, in an order provided to you by email on November 6, 2024, another arbitrator—the same arbitrator that held that the Superseded SSA was unenforceable at Bucher Law's urging—ordered a stay of proceedings on November 7, 2024 because:

> "I do not have jurisdiction to decide whether the purported amendments to Claimants' subscriber agreements are valid. . . . Accordingly, the arbitrations in the matters before me are hereby suspended pending resolution of these jurisdictional issues by a court of appropriate jurisdiction." (Attachment F at 6).

### III.    Bucher Law's Arguments Are Unpersuasive

#### A.    The Supreme Court's *Coinbase* Precedent Requires That A Court Decide Which Agreement Is Controlling

As Valve's opening brief explained, whether the Current SSA or Superseded SSA governs is a question exclusively for a court—not this Tribunal—to decide. Bucher Law's contention that *Coinbase* is inapplicable because Claimants dispute the existence of the second agreement is a difference without a distinction. Under *Coinbase* or otherwise, threshold questions regarding the formation of an arbitration agreement are for a court to decide. *See Lopez v. Thyssenkrupp Supply Chain Servs., Na Inc.*, No. 23-CV-03368-VC, 2024 WL 3211492, at \*1 (N.D. Cal. June 28, 2024) (defendant "presented two arbitration agreements that **might** govern this dispute. A court must decide which one applies." (emphasis added)). Indeed, that is the case even where an agreement contains a delegation clause. *Reichert v. Rapid Invs., Inc.*, 826 Fed. App'x 656, 658 (9th Cir. 2020) ("Notwithstanding any delegation clause in the [a]greement, challenges to the existence of a contract as a whole must be determined by the court prior to ordering arbitration." (citation omitted)).[5] (*See also* Valve's Op. Br. at 8.)

---

[5] *See also, e.g.*, *Williams v. Experian Info. Sols. Inc.,* No. CV-23-01076-PHX-DWL, 2024 WL 3876171, at \*16 (D. Ariz. Aug. 20, 2024) (rejecting argument that "once parties form an arbitration agreement that contains a delegation clause, any dispute over whether that agreement was later modified or superseded is a gateway question that has been delegated to the arbitrator").

Bucher Law's other argument—*i.e.*, that *Coinbase* shouldn't apply to agreements made after litigation has already started—also finds no logical or legal support. Valve's opening brief explains that a court's jurisdiction does not hinge on such timing: the law has always been that if a court "conclude[s] that a dispute is not arbitrable, it ha[s] the power [to] enjoin [ongoing] arbitration if appropriate," no ifs or ands. *AT & T Mobility LLC v. Smith*, No. 11-CV-5157, 2011 WL 5924460, at \*3 (E.D. Pa. Oct. 7, 2011) (enjoining pending arbitrations that exceeded scope of arbitration agreement); *see also AT&T Mobility LLC v. Bernardi*, 2011 WL 5079549, at \*12 (N.D. Cal. Oct. 26, 2011) (same). (*See also* Valve's Op. Br. at 8.)

### B.    The Current SSA Requires That A Court Resolve Claimants' Disputes

Under the Current SSA, the parties no longer have an agreement to arbitrate. Bucher Law, however, argues that Valve is judicially and equitably estopped from taking the position that the Superseded SSA is unenforceable, since it previously filed a motion to compel arbitration pursuant to the Superseded SSA in the *Wolfire* Action. As Valve's opening brief explains, this fails to acknowledge that Valve's motion to compel in *Wolfire* was based on a different agreement—the Superseded SSA. (*See* Valve's Op. Br. at 16.) As Valve's opening brief sets forth, Bucher Law's argument that the Superseded SSA has a "survival of terms" clause fares no better. Courts have rejected this argument. *See, e.g.*, *Warren v. Smart Choice Payments, Inc.*, 306 Or. App. 634, 640-42 (2020) (survival clause did not preclude a subsequent agreement with integration clause from replacing an arbitration agreement).

### C.    No Authority Supports Bucher Law's "Time-of-Filing" Argument

Bucher Law invokes the "time-of-filing" rule for diversity jurisdiction to claim that jurisdiction for this arbitration was established at the time that Valve purportedly compelled seven other Steam subscribers (none of whom are Claimants here) to arbitration in *Wolfire*. But this dispute has nothing to do with diversity jurisdiction. In any event, federal courts routinely dismiss pending cases if a basis for federal jurisdiction is no longer present. *See, e.g.*, *Washington Env't Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013) ("a jurisdictional defect is a non-waivable

8

challenge that may be raised at any time during the proceedings, including on appeal"). (*See also* Valve's Op. brief at 9.)

### D. Claimants Did Not Authorize Bucher Law To Assert That The Current SSA Is Invalid

The communications that Valve is receiving from Respondents make it crystal clear that Bucher Law is not in actual communication with many (or perhaps any) of its clients. Bucher Law's clients do not understand the nature of the proceedings being prosecuted on their behalf, but many understand that they accepted the Current SSA and have no intention of proceeding in arbitration. Yet, Bucher continues to prosecute arbitrations on their behalf. For example, one claimant confirmed on October 25, 2024 in writing to Bucher Law and Valve that he agreed to the Current SSA and that he no longer wishes that his arbitration proceed. Yet, the next day, Bucher Law filed a brief on that claimant's behalf identical to the Response Bucher Law filed before this Tribunal.

Bucher Law's survey indicates that these arbitrations should not proceed. Two Claimants do not wish to proceed with their arbitrations. Of the remaining 22, 11 did not respond to the survey. In view of the communications Valve is receiving from claimants on a near-daily basis, there is no basis to assume that these non-responses mean that Claimants have authorized Bucher Law to proceed in these arbitrations on their behalf. The fact that Bucher Law still cannot contact nearly half the Claimants in this proceeding—even when ordered to do so by the Tribunal—confirms that further harm will be inflicted if these proceedings are not immediately stayed. Importantly, of these 11 Claimants that apparently did not respond to Bucher Law's survey, 10 of them accepted the Current SSA before Bucher Law provided his survey results to this Tribunal. *See infra* at 1 n. 2.

Even as to the other 11 Claimants, the survey does not show that Bucher Law has authorization to proceed on their behalf in these arbitrations under the Current SSA, particularly because Bucher Law admitted in correspondence with this Tribunal on October 29, 2024 that this survey was "rendered out of date just hours later" by Valve filing the Injunction Action. The correspondence from claimants who have reached out to Valve suggests that those claimants may not

9

even have understood what was being asked of them in the survey.

At a minimum, Bucher Law should be compelled to obtain certifications under oath from each Claimant that they wish to proceed with their arbitration by challenging the applicability of the Current SSA notwithstanding the fact that the Current SSA provides that their dispute must be resolved exclusively in court.

*    *    *

As Valve has contended throughout this litigation, this Tribunal does not have the authority to continue these proceedings at this point given the facts as they are, and this Tribunal should immediately close or stay these proceedings in deference to the federal court in the Injunction Action, which has exclusive jurisdiction over the threshold issue of whether there is an agreement to arbitrate.

DATE: November 8, 2024

Respectfully,

_s/_ Michael W. McTigue Jr.
Michael W. McTigue Jr.
Meredith C. Slawe
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Attorneys for Valve Corporation*

10

**Appendix A: List of All Cases**

| Case Number | Claimant Name |
| --- | --- |
| 01-23-0005-3478 | Brady Paul |
| 01-23-0005-3479 | Thomas Abbruzzese |
| 01-23-0005-3480 | Jeremy Kirkwood |
| 01-23-0005-3481 | Gavin Borchers |
| 01-23-0005-3483 | Jeff Ramirez Ochoa |
| 01-23-0005-3484 | Simon Savlas |
| 01-23-0005-3485 | Zachary Parsley |
| 01-23-0005-3487 | Kevin Montes |
| 01-23-0005-3488 | Robert Lewis |
| 01-23-0005-3489 | Carson Plaisance |
| 01-23-0005-3490 | Carter Baker |
| 01-23-0005-3491 | Anthony Galatolo |
| 01-23-0005-3492 | Caleb Orella |
| 01-23-0005-3493 | Collin Evans |
| 01-23-0005-3494 | Jose Aranda |
| 01-23-0005-3496 | Hugh Phillips |
| 01-23-0005-3498 | David Antolic |
| 01-23-0005-3499 | James Davis |
| 01-23-0005-3500 | Jared Myers |
| 01-23-0005-3501 | Alexander Brumley |
| 01-23-0005-3502 | Nicholas Tynes |
| 01-23-0005-3503 | Timothy Pablo Penaranda |
| 01-23-0005-3504 | Vincent Keegan |
| 01-23-0005-3505 | Alexander Schlosser |

# INTERNAL EXHIBIT
# INTENTIONALLY OMITTED

# EXHIBIT 32

AMERICAN ARBITRATION ASSOCIATION

CONSUMER RULES AND MASS ARBITRATION SUPPLEMENTARY RULES

| In Re Valve Corporation | ORDER SUSPENDING PROCEEDINGS PENDING COURT DETERMINATION OF JURISDICTIONAL ISSUES |
|---|---|

**Procedural Posture**

On December 21, 2021, a class action complaint was filed in the United States District Court for the Western District of Washington alleging that Respondent Valve Corporation violated the antitrust laws causing injury to the purchasers of video games offered for sale on Respondent's online platform. After denying a motion to dismiss an amended class action complaint on May 6, 2022, the District Court granted in part Respondent's motion to compel arbitration. The Court found an arbitration agreement to exist and, therefore, compelled arbitration of all consumer disputes. The court ruled that any claims challenging jurisdiction in connection with the arbitration agreement must be determined by the arbitrator due to a broad delegation clause in the AAA rules incorporated into the parties' arbitration agreement.

I was appointed arbitrator for 25 of the hundreds (now tens of thousands) of arbitrations demands filed by formerly putative class members. Claimants John Elliott, Javier Rovira, Bradly Smith, and Recardo Camargo were putative member of the class with arbitration demands before me. The parties filed cross-motions to dismiss these demands. On July 8, 2024, I granted these Claimants' motions to dismiss the arbitrations for lack of jurisdiction. For Claimants Camargo and Smith, I found Claimant's demand for injunctive relief under California law to seek a public injunction and that the arbitration agreement's bar of such relief unenforceable under the McGill rule. By the express terms of the parties' arbitration agreement, the entire arbitration agreement was, therefore, unenforceable, and all Claimant's claims must be adjudicated in court. For Claimants Elliott and Rovira, I found that Respondent failed to provide adequate notice of a fundamental change in dispute resolution procedures so that the arbitration agreements were invalid as to them.

On August 9, 2024, former Claimants Elliott, Rovira, Smith and Camargo filed a putative class action in United States District Court for the Western District of Washington. The claims made in the putative class action are

ORDER SUSPENDING PROCEEDINGS PENDING COURT DETERMINATION OF JURISDICTIONAL ISSUES - 1

nearly identical to the claims made by these Claimants in their dismissed arbitrations before me and the 21 remaining arbitrations before me.  The class allegations broadly include "*All persons and entities who, directly or through an agent, purchased a PC game on the Steam Store, or purchased an in-game product from a game distributed on the Steam Store, in the United States and its territories. Excluded from the Class are Defendant and its employees, parents, and subsidiaries*."  In addition, the putative class action included a putative subclass consisting of "*All persons and entities who, directly or through an agent, purchased a PC game on the Steam Store, or purchased an in-game product from a game distributed on the Steam Store, in California. Excluded from the Class are Defendant and its employees, parents, and subsidiaries*."

By letter, dated September 27, 2024, Respondent contended these arbitrations should be dismissed for lack of jurisdiction because Respondent either had amended its subscriber agreements to eliminate arbitration of existing and future disputes or would do so in the near future due to its right under the subscriber agreement to unilaterally amend the agreement's terms.  By letters dated October 23, 2024, Claimants objected to the dismissal of these actions. Claimants Pharaun Potts, Jeremiah Dieujuste, Kiley Borba and Bridgette Marie McBride conditionally asked that their cases be suspended so they could participate in the Elliot putative class action.  Claimants Andrew Butler, Gavin Baker, Greg Smith, Jacob Zide, James McDonald, Joe Rios, Luis Sotillet Rojas, Manfred Dentice, Mark Williams Jr., Maurice Castro, Michael Patterson, Mitchell Pakosz, Riley Chapman, Samuel Roberts, Stephanie Blomstrom, Gordon Huckaby, and Raciel Diaz objected to dismissal of their individual arbitrations and requested I order an information exchange to challenge the validity of the purported amendments to the subscriber agreement and the potential application of those amendments to their pending cases.

On November 6, 2024, Respondent submitted a reply brief in which it reiterated its contention that all Claimants had either agreed to the removal of the arbitration agreement or must be deemed to having done so by continuing to use Respondent's application after November 1, 2024.  Moreover, Respondent contends I lack jurisdiction to make any determination regarding the existence of the revised subscriber agreement and its potential application to the pending arbitrations based on the Supreme Court's recent decision in *Coinbase v. Suski*, 144 S. Ct. 1186 (2024).  In *Coinbase,* the Court held that where there are two contracts between the parties, one including an arbitration provision with a delegation provision and one without an arbitration provision, "before either the delegation provision or the forum selection clause can be enforced, a court needs to decide what the parties have agreed to—*i.e.,*

ORDER SUSPENDING PROCEEDINGS PENDING COURT DETERMINATION OF JURISDICTIONAL ISSUES - 2

which contract controls" the dispute. On October 18, 2024, Respondent filed an application in the District Court for the Western District of Washington to enjoin these proceedings. I have not been informed of any decision by the District Court on Respondent's application for an injunction.

**Discussion**

There are two fundamental jurisdictional questions here. First, there is the question of who has jurisdiction to determine whether Respondent's various attempts to amend the subscriber agreements with Claimants to retroactively delete the arbitration provision are valid. The original delegation clause provided as follows: "YOU AND VALVE AGREE TO RESOLVE ALL DISPUTES AND CLAIMS BETWEEN US IN INDIVIDUAL BINDING ARBITRATION. THAT INCLUDES, BUT IS NOT LIMITED TO, ANY CLAIMS ARISING OUT OF OR RELATING TO: (i) ANY ASPECT OF THE RELATIONSHIP BETWEEN US; (ii) THISAGREEMENT; OR (iii) YOUR USE OF STEAM, YOUR ACCOUNT OR THE SOFTWARE. IT APPLIES REGARDLESS OF WHETHER SUCH CLAIMS ARE BASED IN CONTRACT, TORT, STATUTE, FRAUD, UNFAIR COMPETITION, MISREPRESENTATION OR ANY OTHER LEGAL THEORY." Further, the original subscriber agreement provided "The arbitration will be governed by the Consumer Arbitration Rules (or the Commercial Arbitration Rules, if the Consumer Arbitration rules are inapplicable) of the American Arbitration Association ("AAA") as modified by this Agreement." Rule 14 of the AAA Consumer Rules provides: "*(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." And "(b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.*" Under the version of the subscriber agreement in effect at the time these arbitrations were filed, I had authority to determine all disputes between the parties, including questions of arbitrability.

However, the purported amendment to the dispute resolution provisions of the subscriber agreement provides: "*You and Valve agree that disputes and claims between you and Valve (including any dispute or claim that arose before the existence of this or any prior agreement) shall be commenced and maintained exclusively in any state or federal court located in King County, Washington, having subject matter jurisdiction.*" The purported amendment

ORDER SUSPENDING PROCEEDINGS PENDING COURT DETERMINATION OF JURISDICTIONAL ISSUES - 3

vests in the courts exclusive jurisdiction to resolve all disputes.  As the Supreme Court noted in *Coinbase*, "[j]ust as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." (Internal citation omitted.)  Because nothing in the purported amendment to the dispute resolution provision of the subscriber agreement gives me the power to determine whether the amendment is valid, I lack jurisdiction to make that determination.

Second, assuming the amendment to the subscriber agreement is valid, the next question is who has jurisdiction to determine whether the amended dispute resolution agreement acts to retroactively deprive me of jurisdiction in these arbitrations.  Although the facts in *Coinbase* did not concern the effect of a subsequent agreement on an existing arbitration proceeding, the question here, like in *Coinbase,* is which contract controls resolution of a particular dispute.  Accordingly, assuming Respondent has successfully amended its dispute resolution clause, it is for a court to decide whether that amendment has the effect of depriving me of jurisdiction to resolve the pending matters in arbitration.

ORDER SUSPENDING PROCEEDINGS PENDING COURT DETERMINATION OF JURISDICTIONAL ISSUES - 4

**Order**

Unless ordered otherwise by a court, I do not have jurisdiction to decide whether the purported amendments to Claimants' subscriber agreements are valid or whether, if valid, the amendments act to eliminate arbitral jurisdiction to resolve the pending claims. Accordingly, the arbitrations in the matters before me are hereby suspended pending resolution of these jurisdictional issues by a court of appropriate jurisdiction.[1] The parties are ordered to submit a joint report of the status of relevant court proceedings no later than 90 days from the date of this Order. Claimants' request for a document exchange is denied.

Dated this 7th day of November 2024.

_____
Jeffrey H. Dasteel

---

[1] Four Claimants proposed that their claims be conditionally suspended so that they may participate in the Elliot class action. Respondent has not stated its position on Claimants' proposal. Because I am suspending all matters pending resolution of the two jurisdictional questions discussed above it is unnecessary for me to take further action on these four Claimants' proposal at this time.

ORDER SUSPENDING PROCEEDINGS PENDING COURT DETERMINATION OF JURISDICTIONAL ISSUES - 5

# EXHIBIT 33

FILED
2025 FEB 24 09:00 AM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 25-2-06159-1 SEA

SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

VALVE CORPORATION,

                Petitioner,

      v.

ALFREDO GONZALEZ,

                Respondent.

No. _____

**VALVE CORPORATION'S PETITION TO CONFIRM ARBITRATION AWARD PURSUANT TO RCW 7.04A.220 AND FOR A JUDGMENT PURSUANT TO RCW 7.04A.250**

Valve Corporation ("Valve") requests an order pursuant to RCW 7.04A.220 confirming the Award of Arbitrator issued by American Arbitration Association ("AAA") Arbitrator Michael F. Saydah in Valve's favor, dated January 7, 2025 (the "Final Award," as corrected, the "Final Corrected Award"),[1] in the matter *Gonzalez v. Valve Corporation dba Steam*, AAA Case No. 01-23-0005-3839 (the "Arbitration").[2] Valve also requests that the Court enter judgment in accordance with the Final Award pursuant to RCW 7.04A.250.

---

[1] Valve has concurrently filed a motion to seal the Final Award to request limited redactions of confidential information. The Final Award will be attached as Exhibit 1 to the Declaration of Blake Marks-Dias filed herewith, dated February 24, 2025 ("Decl." and exhibits thereto "Ex."). Until the motion to seal is resolved, this exhibit will be a placeholder slipsheet in the public docket.

[2] Valve will be filing a motion to consolidate this Petition with petitions to confirm arbitration awards in 22 similar arbitrations presided over by the same arbitrator. Consolidation will streamline the proceedings and avoid unnecessary cost or delay because the awards are in all material respects identical and the petitions request the same relief.

VALVE CORPORATION'S
PETITION TO CONFIRM
ARBITRATION AWARD – 1

**Corr Cronin LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## I.    STATEMENT OF FACTS

Valve is a corporation organized under the laws of Washington State with its principal place of business in King County, Washington. (Decl. ¶ 2.)

On October 2, 2023, Respondent Alfredo Gonzalez ("Respondent") filed a demand for arbitration against Valve with the AAA alleging anticompetitive practices regarding prices on Valve's digital gaming platform, Steam. (Ex. 1 at 7-8.) Respondent asserted claims under Sections 1 and 2 of the Sherman Act, the Washington Consumer Protection Act, and California Unfair Competition Law. (*Id.* at 7-8.) Respondent also asserted a claim for breach of contract based on the allegation that Valve did not satisfy an alleged contractual obligation to pay arbitration fees. (*Id.* at 8.)

While the parties disputed whether Respondent could proceed in arbitration, the arbitrator permitted the Arbitration to proceed.[3] (Decl. ¶ 4.)

Following a multi-day arbitration hearing, on January 7, 2025, Arbitrator Saydah issued the Final Award in the Arbitration. (Decl. ¶ 5.)

On January 8, 2025, the AAA transmitted the Final Award to the parties. (Decl. ¶ 6.)

On February 17, 2025, the arbitrator issued an Award Modification, correcting a typographic error in the Final Award, thus creating the Final Corrected Award. (Decl. ¶ 8; Ex. 2.)

On February 18, 2025, the AAA transmitted the Award Modification to the parties. (Decl. ¶ 9.)

---

[3] On October 18, 2024, Valve filed a Petition to Enjoin Arbitrations in an action in the Western District of Washington captioned *Valve Corporation v. Abbruzzese*, 2:24-cv-01717 (the "Petition"). The Petition seeks to enjoin arbitrations brought by Respondent and 623 other claimants represented by the same counsel against Valve. The relief sought in the Petition as to Respondent is now moot.

VALVE CORPORATION'S
PETITION TO CONFIRM
ARBITRATION AWARD – 2

**Corr Cronin LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

The arbitrator found in the Final Corrected Award that (i) "there is no antitrust violation under either Section 1 or Section 2 of the Sherman Antitrust Act" and (ii) "there is no violation under the California Unfair Competition Law, nor is there a violation under the Washington State Unfair Competition Law." (Ex. 1 at 27.) Consequently, Respondent is "not entitled to recover any antitrust violation damages or unfair competition damages." (*Id.*) The arbitrator further found that Valve did not breach its contractual obligations to Respondent. (*Id.* at 28.)

The final binding award was as follows:

> Claimant [Respondent here] takes nothing for the alleged Sherman Act violations, takes nothing for the alleged Unfair Competition Law violations under California State Law and Washington State Law and take nothing for the alleged breach of the funding requirements of the arbitration agreement under the breach of contract theory.

> Lastly, any breach of warranty claim for damage to computer hardware caused by a game is denied pursuant to the Limitation of Liability paragraph in the SSA.[4]

> All issues submitted for decision have been decided. This Binding Award is in full settlement of all claims and counterclaims submitted to this Arbitration.

(Ex. 1 at 29.)[5]

---

[4] "SSA" is defined as the Steam Subscriber Agreement in place "at the time [Respondent] signed up on Steam's platform." (Ex. 1 at 2.)

[5] Although not relevant to the merits of the arbitrator's decision, the Final Corrected Award incorrectly states that Valve agreed the relevant product market was PC games and the relevant geographic market was the United States. Those were assertions made by Respondent, not Valve, and Valve disputed Respondent's proposed product and geographic market definitions, as shown by the testimony and evidence presented at the hearing. The Final Corrected Award also incorrectly states that Valve's expert offered a calculation of Valve's market share; in fact, Valve's expert testified only about what market share would be if Respondents' proposed product market (PC games) definition were accepted and the geographic market were worldwide.

VALVE CORPORATION'S
PETITION TO CONFIRM
ARBITRATION AWARD – 3

**Corr Cronin LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## II.    STATEMENT OF ISSUES

Whether the Court should enter an order confirming Arbitrator Saydah's Final Corrected Award and enter judgment in accordance with the Final Corrected Award.

## III.    EVIDENCE RELIED UPON

This petition is based upon the Declaration of Blake Marks-Dias, dated February 24, 2025, along with the exhibits thereto.

## IV.    ARGUMENT AND LEGAL AUTHORITY

### A.    The Final Corrected Award Should Be Confirmed Under RCW 7.04A.220

The Final Corrected Award should be confirmed. Under the Washington Uniform Arbitration Act, "[a]fter a party to [an] arbitration proceeding receives notice of an award, the party may file a motion with the court for an order confirming the award." RCW 7.04A.220. "[T]he court shall issue such an order unless the award is modified or corrected under RCW 7.04A.200 or 7.04A.240 or is vacated under RCW 7.04A.230." *Id.*

On January 8, 2025, Valve and Respondent received notice of the Final Award, and on February 18, 2025, Valve and Respondent received notice of the Award Modification. (Decl. ¶¶ 6, 9.) The Final Corrected Award has not been modified under RCW 7.04A.200 or 7.04A.240 or vacated under RCW 7.04A.230. (Decl. ¶ 11.) Accordingly, Valve is entitled to entry of an order confirming the Final Corrected Award.

### B.    Valve Is Entitled to a Judgment in Conformity with the Final Corrected Award

Valve is entitled to a judgment in accordance with the Final Corrected Award. Upon granting an order confirming an award, the Court "shall enter a judgment in conformity with the order." RCW 7.04A.250. The court has "a mere ministerial duty to reduce the award to judgment," *Price v. Farmers Ins. Co. of Wash.*, 133 Wn. 2d 490, 497 (1997), and cannot "go behind the face of the award," *id.* at 496-97.

VALVE CORPORATION'S
PETITION TO CONFIRM
ARBITRATION AWARD – 4

**Corr Cronin LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

# V.   CONCLUSION

For the foregoing reasons, Valve respectfully requests that the Court grant this Petition to confirm the Final Corrected Award and enter judgment in conformity therewith.

DATED: February 24, 2025

I certify that this memorandum contains 802 words, in compliance with the Local Civil Rules.

CORR CRONIN LLP

s/ Blake Marks-Dias
Blake Marks-Dias, WSBA No. 28169
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
(206) 625-8600 Phone
(206) 625-0900 Fax
bmarksdias@corrcronin.com

*Of Counsel*

Michael W. McTigue Jr.
Meredith C. Slawe
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Attorneys for Petitioner Valve Corporation*

VALVE CORPORATION'S
PETITION TO CONFIRM
ARBITRATION AWARD – 5

## CERTIFICATE OF SERVICE

I hereby certify that on the below date, I caused a true and correct copy of the

foregoing document to be served on the parties listed below via electronic mail:

William Bucher
Bucher Law PLLC
Counsel for Respondent: Alfredo Gonzalez
will@bucherlawfirm.com
202-997-3029
350 Northern Blvd
STE 324 -1519
Albany, NY 12204-1000


DATED February 24, 2025 at Seattle, Washington.


_s/ Melinda R. Sullivan_
Melinda R. Sullivan, Legal Assistant
Corr Cronin LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104
Phone: (206) 625-8600
Email: msullivan@corrcronin.com

VALVE CORPORATION'S
PETITION TO CONFIRM
ARBITRATION AWARD – 6

**Corr Cronin LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900